**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOHN NAWARA,

Plaintiff,

v.

COUNTY OF COOK, a unit of local Government; THOMAS DART, in his individual and official capacity as Sheriff of Cook County, Illinois,

Defendants.

Case No. 17-cv-02393

Judge Rebecca R. Pallmeyer

**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING DEFENDANTS AND REQUIRING DEFENDANTS TO ALLOW PLAINTIFF TO RETURN TO WORK**

Plaintiff, JOHN NAWARA, through his undersigned counsel, moves this Court for issuance of a Temporary Restraining Order and a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendants from requiring Plaintiff to sign blank HIPPA release forms for his medical records, which is in clear violation of the American with Disabilities Act ("ADA"), and ordering Defendants to put Plaintiff back to work. In support, Plaintiff states:

1. On March 29, 2017, Plaintiff filed a federal civil rights lawsuit in part because Defendants have and continue to violate the ADA by refusing to allow Plaintiff to return to work because he will not sign blank HIPPA release forms. (Dkt. 1, Complaint, attached hereto as Exhibit 1.)[1]

[1] Defendants have not ordered Plaintiff to see their doctor for a "fitness for duty evaluation," but even if they did, such an order would violate the ADA as stated below.

2. Case law is clear that the medical inquiries provision of the ADA protects all employees, even if they are not disabled. *See Wright v. Ill. Dep't of Children & Family Servs*., 798 F.3d 513, 522 (7th Cir. 2015) (citing in part U.S. Equal Emp't Opportunity Comm'n, *Enforcement Guidance: Disability–Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)* (July 27, 2000), http://www.eeoc.gov/policy/docs/guidance-inquiries.html (noting that "the use of the term 'employee' in this provision reflects Congress's intent to cover a broader class of individuals and to prevent employers from asking questions and conducting medical examinations that serve no legitimate purpose").

3. The Americans with Disabilities Act specifically prohibits employers from "requir[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A).

4. The EEOC guidelines also state that any employee has a right to challenge a disability-related inquiry or medical examination that is not "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *see also Wright*, 798 F.3d at 524 ("[T]he district court correctly determined that the evidence submitted at trial was insufficient to establish, as a matter of law, that requiring Ms. Wright to undergo a fitness-for-duty evaluation was consistent with business necessity."); *Pennsylvania State Troopers Ass'n v. Miller*, 621 F. Supp. 2d 246, 259, 265 (M.D. Pa. 2008) ("While a general medical reporting requirement might pass muster under the ADA if the employer demonstrates that it is a vital component of the employer's operation, FR 1-2.11(A) falls

short of this threshold. PSP's motion for summary judgment will be granted to the extent that it asserts that . . . ensuring members' fitness for duty qualify as business necessities. . . . PSP has failed to demonstrate that FR 1-2.11(A) is both vital to these business necessities and narrowly tailored to further them. PSTA's motion for summary judgment seeking declaratory and injunctive relief will therefore be granted.”).

5. Defendants ordered Plaintiff to sign blank HIPPA release forms for his medical records, which Plaintiff refused to do because he reasonably believed that it was a violation of the ADA and a violation of the law. *See Wright*, 798 F.3d at 522; 42 U.S.C. § 12112(d)(4)(A); *see also Hydraulics, Inc. v. Industrial Com'n*, 329 Ill.App.3d 166, 171 (2 Dist. 2002) (“*Ex parte* communications between an injured worker's health care provider(s) and the employer or their legal representative(s) are prohibited. . . .”); *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill.App.3d 581, 588 (1 Dist. 1986) (upholding contempt order against attorney for *ex-parte* communications with plaintiff's medical providers, and holding: “we join the growing number of courts which have found that public policy strongly favors the confidentiality of the physician-patient relationship and thereby prohibits, because of the threat posed to the sanctity of that relationship, extra-judicial, *ex parte* discussion of a patient's medical confidences”).

6. Defendants told Plaintiff that he could not return to work until he signed the HIPPA release forms, which Plaintiff believed was and is an unlawful request. Because of Defendants' unlawful suspension of Plaintiff and refusal to allow him to return to work without legal justification, Plaintiff has and continues to suffer

irreparable harm, including but not limited to: Plaintiff will or has run out of personal time to use and will be suspended without pay; Plaintiff has been denied training and lateral transfers, as well as the ability to apply for and receive promotions as a result of Defendants' unlawful suspension of him because he will not sign a blank HIPPA release, which violates the ADA. Defendants have threatened to bring charges seeking Plaintiff's termination. Despite being informed that their actions violate the ADA, Defendants have refused to put Plaintiff back to work or provide any information that would suggest that their order for Plaintiff to sign blank HIPPA release forms complies with the ADA.

7. Plaintiff has repeatedly requested that he be allowed to return to work to no avail, including the following:

a. On November 18, 2016, when Defendants ordered Plaintiff to Human Resources, and Plaintiff was told that he needed to sign the blank HIPPA release forms, Plaintiff and his Union representative advised Defendants in effect that such a request was unlawful and/or improper and that Plaintiff would not sign the forms.

b. On December 21, 2016, Plaintiff, through his counsel, advised Defendants, through its agents and employees in Human Resources, as well as Defendants' counsel, Peter Kramer, that he believed the order for him to sign blank HIPPA release forms was unlawful and requested to be reinstated back to work with his time reinstated as well. (Exhibit 2, 12/21/16 Kurtz Email.) Defendants did

not respond to the December 21, 2016 correspondence from Plaintiff, through his counsel.

c. On January 31, 2017, Plaintiff again through his counsel, requested to be reinstated and advised Defendants that the order for him to sign blank HIPPA releases violated the ADA. (Exhibit 3, 1/31/17 Kurtz Email.) Defendants did not respond.

d. On March 1, 2017, Defendants sent Plaintiff a letter suggesting that he had not responded to them regarding him signing the HIPPA release forms, when in fact he did respond, on both December 21, 2016 and January 31, 2017, through counsel. (Exhibit 4, 3/1/17 Sheriff's Letter.)

e. On March 8, 2017, Plaintiff again responded through his counsel, and provided Defendants with case law, stating that the order to Plaintiff Nawara to sign the HIPPA release for his medical records is unlawful and violates the ADA. Case law is clear that the medical inquiries provision of the ADA protects all employees, even if they are not disabled. *See Wright v. Ill. Dep't of Children & Family Servs*., 798 F.3d 513 (7th Cir. 2015). Plaintiff requested that the order for him to sign the HIPPA release forms be rescinded and that he be allowed to return to work. (Exhibit 5, 3/8/17 Kurtz Email.)

f. On March 13, 2017, Reierson responded stating, in relevant part, that "[Plaintiff's] absence will be deemed unauthorized subjecting him to possible discipline including termination" if he did not sign the HIPPA release and return it to Defendants. (Exhibit 6, 3/13/17 Kurtz Email String, including 3/13/17 Sheriff's Email.)

g. On March 13, 2017, Plaintiff, through his counsel, responded to Reierson's email, explaining further why Defendants' order and suspension of Officer Nawara is unlawful, stating in part (see full email attached hereto as Exhibit 6):

> . . . . the Sheriff's position to require Officer Nawara (or any other employee) to complete a medical release form so that the Sheriff's Office can obtain that individuals private medical records is unlawful and in violation of the ADA. An employer cannot order an employee to complete a HIPPA or medical release form so that the employer can obtain ***the employee's own medical records***, which is what you have ordered Officer Nawara to do. This is not the proper or legal way to go about ordering a "fitness for duty." In addition, the law requires that in order for an employee to be ordered to see the employer's selected doctor for a fitness for duty evaluation, ***there must be a business necessity***. *Wright v. Illinois Dept. of Children and Family Services*, 798 F.3d 513, 523 (C.A.7 (Ill.),2015).

(Exhibit 6, 3/13/17 Kurtz Email.)

h. In a final effort to be returned to work, Plaintiff saw an independent doctor and obtained a report as to his fitness for duty. The doctor issued a report stating that Plaintiff is fit for duty and recommended

that he return to work with no restrictions. (Exhibit 7, Doctor's Report, CONFIDENTIAL, *filed in camera*.)

i. On March 17, 2017, Plaintiff provided the report of the independent doctor to Defendants, through their Human Resources representatives, and directly to Reierson, stating:

> See attached report from Dr. Kroll, who is an independent doctor and not my doctor. I am requesting to be put back to work effective immediately and all of the time I have had to burn be reinstated. I feel the order for me to sign a blank HIPPA release was unlawful and violates the American with Disabilities Act and is in retaliation for my prior suit against the Sheriff's Office, in which the jury found that the Sheriff violated my and other officer's First Amendment rights, and retaliated against us because of our political support for the opponent to Sheriff Dart, and because of my complaints of harassment by the supervisor. Please confirm that I can come back to work and that all of my time will be reinstated, and that I will not be subject to any further harassment or retaliation.
>
> I look forward to hearing from you today, so that I can return to work on Monday.

(Exhibit 8, 3/17/17 Nawara Email.)

j. On March 18, 2017, Plaintiff emailed Defendants requesting that Defendants "Please provide the general order or policy that requires me to sign a HIPPA release for my medical records." (Exhibit 9, 3/18/17 Nawara Email.) Defendants have not responded to this email and have not identified any general order or policy of the

Sheriff's office that would require Plaintiff to sign blank HIPPA release forms or be sent to a fitness for duty examination (after signing such forms).

k. On March 24, 2017, Plaintiff filed a charge of discrimination and retaliation with the EEOC because Defendants refused to allow him to come back to work and refused to rescind the suspension without pay, despite being advised that the order for Plaintiff to sign the blank HIPPA release violates the ADA.

l. Plaintiff has repeatedly requested that he be allowed to return to work to no avail.

8. Defendants have refused to allow Plaintiff to return to work without any justification or explanation, as there is no justification or valid business necessity.

9. Plaintiff has no mental, physical, or emotional issues. There is no reason or belief to find that Plaintiff should be subjected to a medical inquiry. (Exhibit 7, Doctor's Report, CONFIDENTIAL, *filed in camera*.)

10. Defendants' policy of requiring employees to sign blank HIPPA release forms violates the ADA.

11. Here, Defendants did not order Plaintiff to see their own doctor for a fitness for duty evaluation, but only ordered him to sign blank HIPPA release forms. Even if Defendants had ordered Plaintiff to see their doctor for a fitness for duty evaluation, Defendants' policy of requiring fitness for duty evaluations is not consistent with any business necessity.

***Standard for Temporary Restraining Order***

12. A temporary restraining order (TRO) is an emergency remedy that is used to maintain the status quo in a certain set of circumstances or environment. *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1082 (C.D. Ill. 2001). TROs are analyzed and assessed with the same elements as any preliminary injunctive relief in Illinois. *Crue*, 137 F. Supp. 2d at 1083. A TRO has three basic elements: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) that no adequate remedy at law exists; and (3) that the movant will suffer irreparable harm if the injunction is not granted. *Id.*; *see also Duct–O–Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994). Once these three threshold elements are met, the court balances the harm to the plaintiff if not granted and the harm to defendant if granted. *See YourNetDating, Inc. v. Mitchell*, 88 F. Supp. 2d 870, 871 (N.D. Ill. 2000); *see also Crue*, 137 F. Supp. 2d at 1083.

13. The movant must first show that there is a likelihood of success on the underlying litigation. The court analyzes this element just as it sounds - by examining the elements of the underlying claim. *See Duct-O-Wire Co.*, 31 F.3d at 509 (analyzing the elements for tortious interference of existing and prospective contractual relations to find that the movant has a likelihood of success). The court must find that there is a likelihood of success beyond a preponderance of the evidence to satisfy this element. *YourNetDating, Inc.*, 88 F. Supp. 2d at 872.

14. Plaintiff's TRO here is based on the ADA violation or ordering Plaintiff to sign blank HIPPA release forms. *See EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1090 (5th Cir. 1987) (holding that irreparable injury is presumed from the very fact that the statute has been violated); *Smallwood v. National Can Co.*, 583 F.2d 419, 420-21 (9th Cir. 1978) (same). Defendants request for Plaintiff to sign blank HIPPA releases for his medical records or for the purpose of conducting a fitness for duty examination[2] is not job related, consistent with business necessity, or justified by any legitimate concern about the safety of Defendants' employees, inmates, or the public at large.

15. The second element required, looks at whether the Plaintiff will be made whole at the end of a trial and upon being awarded money damages. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). An "inadequate remedy of law" is not one that is "wholly ineffectual, [but one that is] seriously deficient as a remedy for the harm suffered." *Roland Mach. Co.*, 749 F. 2d at 386. The court has found four main reasons that a damages remedy can be inadequate: (1) the damage award may come too late to save a plaintiff's business; (2) the plaintiff may not be able to finance his lawsuit against the defendant without the revenues from his business that the defendant is threatening to destroy; (3) damages may be unobtainable from the defendant because he may become insolvent; and (4) the nature of the plaintiff's loss may make damages very difficult to calculate. *Id*. Further, when a plaintiff is requesting an equitable remedy, it can be found that a remedy at law is inefficient. *See Crue*, 137 F. Supp. 2d at 1090 (finding any remedy at law inadequate because the plaintiffs were not seeking money damages and only requested that they be allowed to speak freely under the First Amendment); *see*

[2] To date, Defendants have not ordered Plaintiff to see their doctor and even if they did, such an order would violate the ADA because there is no legal or factual justification for ordering Plaintiff to a fitness for duty, other than retaliation against him for complaining about Defendants' supervisor's assault and battery of Plaintiff.

*also Cooper v. Salazar*, 196 F.3d 809, 817 (7th Cir. 1999) (finding remedy at law inadequate because the plaintiffs were seeking that policies and procedures of the defendant were in violation of their due process rights and whether this was found true or not, a remedy at law would not make the plaintiff whole).

16. Here, there is no adequate remedy. By the time this motion is heard, Plaintiff will be or is already not receiving pay because he has had to use all of his personal accrued time. He will not be able to afford financing a lawsuit against Defendants, and he will likely be subject to charges seeking his termination based on Defendants' threat to do so if he does not sign the HIPPA release forms. *See, e.g.*, 42 U.S.C. § 12112(d)(4)(A); *Wright*, 798 F.3d at 524; *Hydraulics, Inc.*, 329 Ill.App.3d at 171; *Petrillo*, 148 Ill.App.3d at 588.

17. Even if Plaintiff were required to show irreparable harm over and above the showing that Defendants are in violation of the ADA, irreparable harm exists here in that Plaintiff Nawara will not be able to finance his lawsuit, much less his day to day life, without income from his employment, and the nature of the plaintiff's loss (from being denied training, special assignments, and promotional opportunities) will make damages very difficult to calculate. *See Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (C.A.Ill. 1984). Additionally, the ADA violation and embarrassment suffered due to being harassed and found "unfit for duty" would be murky at best. This is much better remedied in equity.

18. Moreover, the remedy at law is inadequate because what is requested by Plaintiff is much better suited for a court of equity. Similar to *Crue* and *Cooper*, Plaintiff Nawara is seeking equitable relief. He is seeking, among other things, a declaration that the order for him to sign blank HIPPA release is a violation of the ADA. This, in and of

itself, would be difficult to monetize. Similar to *Cooper*, where the court found inadequacy because the plaintiffs did not request legal relief on the underlying claims of discrimination, 196 F.3d at 817, Nawara is requesting equitable relief in order to restrain Defendants from keeping him from returning to work.

19. The third element for a TRO is the finding that the plaintiff will suffer irreparable harm if the TRO is not granted. "A harm is irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008) (reversing the district court's denial of the requested injunction). Similar to the analysis, *supra,* Nawara may be able to be made partially whole by a final judgment at trial (backpay, money damages, etc.) but, absent injunctive relief, and a return to work, he could lose his reputation, training and special assignments (which he has already lost), future promotions or transfers, and ultimately his employment, as Defendants have threatened to bring charges seeking his termination. *See Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1090 (finding irreparable harm by the "potential loss of property, employees or its entire business" regardless of whether they are granted a return of jurisdiction in their final judgment). *Girl Scouts* can compare directly to Nawara because both plaintiffs cannot be made fully whole by the final judgment. Nawara is currently, and will continue to lose more and more income and employment opportunities if he is forced to use his personal time, and is or soon will be without any pay. He has already missed out on vital training and promotional and advancement opportunities. This harm alone cannot be compensated by pure money damages, and therefore, injunctive relief is necessary. *See Girl Scouts*, 549 F.3d at 1090 and cases cited therein, including *Kinney ex rel. NLRB v. Int'l Union of Operating Eng'rs, Local 150,* 994 F.2d 1271, 1279 (7th Cir. 1993)

(noting that, from an employee's perspective, termination was an irreparable injury for which money damages were an inadequate remedy).

20. Weighing the harms to Plaintiff and Defendants, Defendants will not be harmed at all. There is no evidence that Plaintiff is unfit for duty; in fact, an independent doctor already found that he was not unfit and should be returned to work. (Exhibit 7, Doctor's Report, CONFIDENTIAL, *filed in camera*.) Moreover, Plaintiff has worked without incident since winning his federal lawsuit before this Court, in *Burruss, et al. v. Cook County Sheriff's Office, et al*., Case No. 08-cv-06621 (N.D. Ill.). (*See* Dkt. 1, ¶¶ 61-66.) Plaintiff also worked from September 28, 2016, the date of incident for which he complained about his supervisor assaulting him (Dkt. 1 ¶¶ 17-25) , through November 18, 2016, when he was told he had to sign the blank HIPPA release forms and refused because he reasonable believed that it was a violation of the law (Dkt. 1 ¶¶ 26-31). The balancing of harm greatly weighs in favor of Nawara.

21. Plaintiff seeks to maintain the status quo and attempt to undo the damage already done by Defendants. *See, e.g., Kinney ex rel. NLRB*, 994 F.2d at 1279.

22. The court entering a TRO in this case will help prevent future violations of law. *See Roe v. Cheyenne Mtn. Conf. Resort, Inc.*, 124 F.3d 1221, 1226, 1230 (10th Cir. 1997) (the purpose of injunctive relief is to prevent future violations; reversing the district court's denial of a preliminary injunction where "Plaintiff refused to sign the consent form. Alleging that some of the requirements of the Policy were so unreasonable and intrusive as to violate her legal rights").

23. Plaintiff has a strong likelihood of success on the merits of his claims; the harm suffered by Plaintiff outweighs any harm to Defendants; and the interests of justice will be served by granting of Plaintiff's Motion.

24. Plaintiff's counsel has provided Defendants' counsel with written notice of Plaintiff's motion.

WHEREFORE, for the above stated reasons, Plaintiff respectfully requests the Court enter a temporary restraining order and preliminary injunction to protect all employees' rights guaranteed under the ADA, and enter the following relief:

A. Order Defendants to reinstate Plaintiff back to work and reinstate all of his personal time that he has had to use as a result of Defendants' unlawful order for Plaintiff to sign blank HIPPA release forms, as well as the ability to apply for transfers and special assignments and training he has been denied while he has been suspended without pay;

B. Order Defendants to pay Plaintiff's attorneys' fees and costs as a result of having to file the lawsuit and this motion, especially since Plaintiff attempted to resolve this issue repeatedly with Defendants before filing this action;

C. Order Defendants to post the Court's order to ensure that Defendants do not violate the ADA in the future with respect to other employees; and

D. Grant Plaintiff such other relief that is just and equitable.

Respectfully submitted,

JOHN NAWARA

***s/Dana L. Kurtz***

__________________________
One of Plaintiff's Attorneys

Dana L. Kurtz, Esq. (6256245)
Heidi Karr Sleper, Esq. (6287421)
KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois 60521
Phone: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us
Email: hsleper@kurtzlaw.us