**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF COOK, a unit of local Government; THOMAS DART, in his individual and official capacity as Sheriff of Cook County, Illinois,<br><br>Defendants. | Case No.<br><br>Plaintiff Demands Trial By Jury |

**COMPLAINT**

Plaintiff JOHN NAWARA, through his undersigned counsel, respectfully submits Plaintiff's Complaint against Defendants and states as follows:

**Nature of the Action**

1. Plaintiff JOHN NAWARA brings this action for violations of the American With Disabilities Act, 42 U.S.C. §§ 12101-12213 (2000) ("ADA") (Count I) and violations of his civil rights under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988 (Count II).

2. Plaintiff seeks injunctive relief because Defendants' actions have and continue to cause irreparable harm to Plaintiff.

3. Plaintiff also seeks declaratory, compensatory, and equitable relief.

**Jurisdiction and Venue**

4. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 29 U.S.C. § 626(c).

5. Further, venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b) and (c), as Plaintiff and all Defendants either reside in this district or have their principle place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

**Administrative Proceedings**

6. On or about March 24, 2017, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA and retaliation.

**Parties**

7. Plaintiff JOHN NAWARA ("Nawara") is a citizen of the United States who resides in Cook County, Illinois.

8. Plaintiff Nawara was hired by Cook County through the Sheriff's Office in on September 28, 1998. Plaintiff Nawara is currently an employee of the Sheriff's office.

9. From approximately 2002 to 2007, Plaintiff Nawara was a member of the Special Operations Response Team (SORT), which was a highly elite and specialized unit in the jail.

10. Plaintiff had an exemplary record with the Sheriff's Office and was selected to serve in the elite SORT Unit based on their record of superior job performance, which was above reproach.

11. At all relevant times, Plaintiff satisfactorily fulfilled his assigned duties.

12. For the last 5 years Plaintiff Nawara has had an excellent attendance record and had not called in sick or used any medical time prior to being placed on unpaid leave as alleged herein.

13. Plaintiff Nawara satisfactorily performed his duties without incident. In fact, Plaintiff Nawara has met and exceeded his direct supervisors' expectations.

14. Defendant COOK COUNTY is a municipality incorporated under the laws of the State of Illinois. Cook County administers itself through departments, one of which is the COOK COUNTY SHERIFF'S OFFICE ("Sheriff's Office"). At all relevant times, Defendant Cook County, through the Sheriff's Office, has been continuously engaged in an industry affecting commerce.

15. Cook County is named as a necessary party as the indemnifier for the Cook County Sheriff's Office.

16. At all relevant times, Defendant THOMAS DART ("Dart") served in the elected position of Sheriff of Cook County, Illinois. Dart was at all relevant times hereto the final decision maker and policy maker in the Sheriff's Office. Defendant Dart is sued in his official and individual capacities.

### *Facts Related to All Claims*

17. On September 28, 2016, Plaintiff was assigned to the basement of Cermak Hospital to monitor detainees. A fight broke out between two inmates. Plaintiff and two other officers were able to break up the fight without incident, and after breaking up the fight, contacted a supervisor pursuant to protocol, advising the supervisor of the situation.

18. Superintendent Jones-Hayes (female), responded, and in a very insulting, provoking and demeaning manner, hit Plaintiff in his chest with her finger several times. She also spoke to Plaintiff in a condescending tone of voice.

19. Nothing warranted her assault and battery of hitting Plaintiff in the chest with her finger several times.

20. Jones-Hayes again hit Plaintiff in the chest with her finger several times, at which time Plaintiff took a step back, feeling trapped, and told her keep her hands off of him, and that it was very unprofessional.

21. Superintendent Jones-Hayes acknowledged that she had offended Plaintiff.

22. Jones-Hayes also disparaged Plaintiff in front of detainees.

23. Plaintiff complained about Jones-Hayes' conduct towards him to the other employees, including the sergeant that was present.

24. The very next day, Plaintiff was transferred to external operations away from his regular assignment with no explanation.

25. On October 13, 2016, Plaintiff filed a formal complaint with his supervisor regarding Jones-Hayes' harassment and assault and battery of him.

26. On November 18, 2016, Respondent ordered Plaintiff to appear to Human Resources.

27. Winifred Shelby and Rebecca Reierson, in Human Resources, met with Plaintiff. They asked him if he had threatened another employee; Plaintiff responded: "no," as he had not.

28. Plaintiff was not given any notification of any complaint or allegations against him, and Defendants, through Winifred Shelby and Rebecca Reierson, refused to provide him with any information and told him that he had to sign two (2) HIPAA release forms that were blank.

29. Plaintiff was not provided with any complaint or any indication that anyone had complained about him. Moreover, Plaintiff was told by Shelby and Reierson that this was not an O.P.R. (Office of Professional Review) matter. O.P.R. is the division that investigates officer misconduct.

30. Defendant Dart, through the above HR representatives, ordered Plaintiff to sign blank HIPPA release forms for his medical records, which Plaintiff refused because he reasonably believed that it is was violation of the ADA.

31. Defendant Dart, through the above HR representatives, told Plaintiff that he could not return to work until he signed the HIPPA release forms, which Plaintiff believed was and is an unlawful request.

32. The Americans with Disabilities Act specifically prohibits employers from "require[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A).

33. The EEOC guidance also states that "Any employee, therefore, has a right to challenge a disability-related inquiry or medical examination that is not job-related and consistent with business necessity."

34. Defendants' order to Plaintiff to sign blank HIPPA release forms for his medical records violates the ADA.

35. Defendants cannot show that the medical inquiry at issue is vital to its business and is narrowly formulated to prevent unnecessary intrusion into Plaintiff's medical information.

36. Defendants request for Plaintiff to sign blank HIPPA releases for his medical records or for the purpose of conducting a fitness for duty examination was not job related, consistent with business necessity, or justified by any legitimate concern about the safety of Defendants' employees, inmates, or the public at large.

37. Defendants have not disclosed to Plaintiff any asserted purpose and cannot show that the medical inquiry serves any asserted purpose.

38. The request for Plaintiff to sign blank HIPPA release forms is also in violation of Plaintiff's privacy rights and unlawful.

39. Defendants placed Plaintiff on an unpaid suspension because he would not sign the blank HIPPA forms.

40. As a result, Plaintiff has been forced to use his personal time that is "on the books," *i.e.*, medical/sick, personal, compensation, holidays, and vacation.

41. Defendants have also threatened Plaintiff with disciplinary action and that charges may be brought seeking his termination. Plaintiff has also been denied special assignments, transfers to more desirable units, and training, as well as promotional opportunities as a result of Defendants' unlawful order for him to sign a blank HIPPA release for his medical records.

42. On December 21, 2016, Plaintiff, through his counsel, advised Defendants, through its agents and employees in Human Resources, as well as Defendants' counsel, Peter Kramer, that he believed the order for him to sign blank HIPPA release forms was unlawful and requested to be reinstated back to work with his time reinstated as well.

43. Defendants did not respond to the December 21, 2016 correspondence from Plaintiff, through his counsel.

44. On January 31, 2017, Plaintiff again through his counsel, requested to be reinstated and advised Defendants that the order for him to sign blank HIPPA releases violated the ADA.

45. Defendants did not respond.

Case: 1:17-cv-02393 Document #: 1 Filed: 03/29/17 Page 8 of 20 PageID #:8

46. On March 1, 2017, Defendants sent Plaintiff a letter suggesting that he had not responded to them regarding him signing the HIPPA release forms, when in fact he did respond, on both December 21, 2016 and January 31, 2017, through counsel.

47. On March 8, 2017, Plaintiff again responded through his counsel, and provided Defendants with case law, stating that the order to Plaintiff Nawara to sign the HIPPA release for his medical records is unlawful and violates the ADA. Case law is clear that the medical inquiries provision of the ADA protects all employees, even if they are not disabled. *See Wright v. Ill. Dep't of Children & Family Servs*., 798 F.3d 513 (7th Cir. 2015). Plaintiff requested that the order for him to sign the HIPPA release forms be rescinded and that he be allowed to return to work.

48. On March 13, 2017, Reierson responded stating in relevant part that "[Plaintiff's] absence will be deemed unauthorized subjecting him to possible discipline including termination" if he did not sign the HIPPA release and return it to Defendants.

49. In a final effort to be returned to work, Plaintiff saw an independent doctor and obtained a report as to his fitness for duty.

50. The doctor issued a report stating that Plaintiff is fit for duty and recommended that he return to work with no restrictions.

51. On March 17, 2017, Plaintiff provided the report to Defendants, through their Human Resources representatives, and directly to Reierson, stating:

> See attached report from Dr. Kroll, who is an independent doctor and not my doctor. I am requesting to be put back to work effective immediately and all of the time I have had to burn be reinstated. I feel the order for me

to sign a blank HIPPA release was unlawful and violates the American with Disabilities Act and is in retaliation for my prior suit against the Sheriff's Office, in which the jury found that the Sheriff violated my and other officer's First Amendment rights, and retaliated against us because of our political support for the opponent to Sheriff Dart, and because of my complaints of harassment by the supervisor. Please confirm that I can come back to work and that all of my time will be reinstated, and that I will not be subject to any further harassment or retaliation.

I look forward to hearing from you today, so that I can return to work on Monday.

52. Despite Plaintiff providing additional information and evidence that there was no basis to order him to sign blank HIPPA release forms, and that an independent medical doctor recommended that Plaintiff be returned to work with no restrictions, Defendants have not allowed Plaintiff to return to work.

53. On March 24, 2017, Plaintiff filed a charge of discrimination and retaliation with the EEOC.

54. Plaintiff has repeatedly requested that he be allowed to return to work to no avail.

55. Defendants have refused to allow Plaintiff to return to work without any justification or explanation, as there is no justification or valid business necessity.

56. Plaintiff also requested from Defendants the identification of the policy or general order that would cover Defendants' request for Plaintiff to sign a blank HIPPA release or even order him to see their designated doctor for a fitness for duty. Defendants failed to respond to this request as well.

57. Plaintiff has no mental, physical, or emotional issues. There is no reason or belief to find that Plaintiff should be subjected to a medical inquiry.

58. Defendants have also singled Plaintiff out because he complained about Jones-Hayes' assault and battery of him.

59. Defendants' policy of requiring employees to sign blank HIPPA release forms violates the ADA.

60. Here, Defendants did not order Plaintiff to see their own doctor for a fitness for duty evaluation, but only ordered him to sign blank HIPPA release forms. Even if Defendants had ordered Plaintiff to see their doctor for a fitness for duty evaluation, Defendants' policy of requiring fitness for duty evaluations is not consistent with any business necessity.

***Plaintiff's Participation In Other Protected Activity***

61. On November 18, 2008, Plaintiff participated in a federal civil rights lawsuit based on political retaliation for his support and perceived support of the political opponent to Defendant Dart (in the 2006 primary election). Plaintiff was a named Plaintiff in the case entitled: *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08-cv-06621 (N.D. Ill.).

62. On September 4, 2012, a federal jury found that Defendant Cook County Sheriff's Office and Defendant Dart in his official capacity, along with Scott Kurtovich, who was the First Executive Assistant in the Sheriff's Office, violated the 21 plaintiffs'

First Amendment rights under the United States Constitution in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.).

63. The jury awarded $1,560,000 in compensatory (not including back pay or front pay) and punitive damages to the 21-plaintiff employees of the Sheriff's Office.

64. Defendants filed a post-trial motion to vacate the verdict, which the District Court denied. The District Court upheld the jury's verdict, and held in relevant part: "The County is liable under section 1983, just as Kurtovich is individually, because the jury found that the County made an official decision to disband SORT in retaliation against Plaintiffs. . . . The court therefore will not set aside the jury's liability findings against Defendants." *Burruss v. Cook County Sheriff's Office*, 2013 WL 3754006, at *9 (N.D.Ill. 2013).

65. The jury in the *Burruss* case found that Defendants' Director Scott Kurtovich violated federal law and the First Amendment to the United States Constitution by retaliating against Plaintiffs.

66. Despite this finding and the District Court's affirmation of the jury's verdict, Defendants did not discipline or terminate Scott Kurtovich's employment from the Sheriff's Office. Instead, after the jury's verdict, Defendant Dart promoted Scott Kurtovich to be the Director over the Training Academy and in charge of training, including training on the Sheriff's policy on political discrimination and retaliation in the workplace.

67. Plaintiff is also being singled out and retaliated against because of his participation in the civil rights lawsuit.

## COUNT I

**(ADA – Disability Discrimination**
**v. Cook County and the Cook County Sheriff's Office)**

68. Plaintiff realleges and incorporates by reference paragraphs 1-67 above as if fully set forth herein.

69. The Americans with Disabilities Act specifically prohibits employers from "require[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A).

70. The EEOC guidance also states that "Any employee, therefore, has a right to challenge a disability-related inquiry or medical examination that is not job-related and consistent with business necessity."

71. Defendants' order to Plaintiff to sign blank HIPPA release forms for his medical records violates the ADA.

72. Defendants cannot show that the medical inquiry at issue is vital to its business and is narrowly formulated to prevent unnecessary intrusion into Plaintiff's medical information.

73. Defendants have not disclosed to Plaintiff any asserted purpose and cannot show that the medical inquiry serves any asserted purpose.

74. Plaintiff has and continues to suffer irreparable harm as a result of Defendants conduct and refusal to return him back to work without valid or legal justification, including but not limited to running out of personal time, being denied training, lateral transfers to special assignments, and promotional opportunities for advancement of his career, and being threatened with disciplinary action and charges seeking his termination.

75. Defendants' policy of requiring employees to sign blank HIPPA releases for medical records violates the ADA.

76. Defendants have a policy, custom and practice of violating the ADA.

77. Defendants' conduct caused Plaintiff damages, including but not limited to: loss of income, back pay, front pay, emotional pain and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

A. All benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A temporary restraining order finding that Defendants' policy of requiring employees to sign blank HIPPA release forms violates the ADA;

D. A temporary restraining order finding that Defendants' policy of requiring employees to sign blank HIPPA release forms and sending them for a fitness for duty evaluation that is not consistent with any business necessity violates the ADA;

E. A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

F. A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2000);

G. A declaratory judgment that Defendant's actions violate Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111-12117;

H. That this Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

I. An award of reasonable attorneys' fees, costs, and litigation expenses; and

J. Such other relief as this Court may deem just or equitable.

**COUNT II**

**(42 U.S.C. § 1983, First Amendment v. All Defendants)**

78. Plaintiff realleges and incorporates by reference paragraphs 1-67 above as if fully set forth herein.

79. At all times relevant hereto, Defendants acted as employees, supervisors, and final policymakers for the Sheriff's Office.

80. The conduct of Defendants, specifically retaliating against employees who opposed the Sheriff politically, engaged in protected conduct by complaining about

political discrimination and retaliation, and denying employees the right to be free from political retaliation, was and became the custom and practice of the Sheriff's Office.

81. By Defendants' actions, Plaintiff suffered compensable injury and harm as a result of the denial of rights guaranteed to him pursuant to the First Amendment to the United States Constitution.

82. Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by denying him promotions, denying him training, denying him special assignments, refusing to return him to work, and subjecting him to other adverse terms and conditions of his employment in violation of the First Amendment and treating him in an overall disparate manner.

83. Defendants have acted under color of state law at all material times hereto.

84. The conduct of Defendants violated Plaintiff's rights to free speech and free association as secured by the First Amendment to the Constitution.

85. Defendants are aware that it is unlawful to retaliate or discriminate against someone because of their political affiliation and/or perceived political affiliation.

86. Defendants know that employees must be treated equally regardless of their political affiliation and/or perceived political affiliation.

87. On September 4, 2012, a federal jury found that Defendant Cook County Sheriff's Office and Defendant Dart in his official capacity, along with Scott Kurtovich,

who was the First Executive Assistant in the Sheriff's Office, violated the 21 plaintiffs' First Amendment rights under the United States Constitution in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.). The jury awarded $1,560,000 in compensatory (not including back pay or front pay) and punitive damages to the 21-plaintiff employees of the Sheriff's Office. Defendants filed a post-trial motion to vacate the verdict, which the District Court denied. The District Court upheld the jury's verdict, and held in relevant part: "The County is liable under section 1983, just as Kurtovich is individually, because the jury found that the County made an official decision to disband SORT in retaliation against Plaintiffs. . . . The court therefore will not set aside the jury's liability findings against Defendants."

88. The jury in the *Burruss* case found that Defendants' Director Scott Kurtovich violated federal law and the First Amendment to the United States Constitution by retaliating against Plaintiffs.

89. Despite this finding and the District Court's affirmation of the jury's verdict, Defendants in this case have not disciplined or terminated Scott Kurtovich's employment from the Sheriff's Office.

90. Defendants did not discipline or terminate Scott Kurtovich's employment despite Defendant Dart's own "written policy" that political retaliation will not be tolerated in the Sheriff's Office and will be subject to termination.

91. Instead, after the jury's verdict, Defendant Dart promoted Scott Kurtovich to be the Director over the Training Academy and in charge of training, including

training on the Sheriff's policy on political discrimination and retaliation in the workplace.

92. The actions of the Defendants in violating Plaintiff's and other employees' Constitutional rights under the First Amendment were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

93. Defendants' conduct caused Plaintiff damages, including but not limited to: loss of income, back pay, front pay, emotional pain and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. All wages and benefits Plaintiff would have received but for the First Amendment violations, including but not limited to back pay, front pay, pre-judgment interest, and restoration of job assignments;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants' conduct;

C. A permanent injunction enjoining Defendants from engaging in the practices complained of herein;

D. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1983;

E. A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1983;

F. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G. Punitive damages against Defendant Dart in his individual capacity;

H. An award of reasonable attorneys' fees, costs, and litigation expenses; and

I. Such other relief as the Court may deem just or equitable.

**COUNT III**
**(Plaintiff v. Defendant Cook County Sheriff's Office)**
**(Title VII – Retaliation)**

94. Plaintiff realleges and incorporates by reference paragraphs 1-67 above as if fully set forth herein.

95. Plaintiff Nawara was subjected to retaliatory treatment in retaliation for his complaints about Jones-Hayes' assault and battery of him, which she acknowledged she knew Plaintiff was offended.

96. Defendant has engaged in a policy, pattern, and practice of retaliating and condoning retaliation against employees who complain of harassment, sexual harassment, discrimination, and retaliation.

97. By engaging and condoning retaliatory conduct, Defendant discriminated against Plaintiff in violation of 42 U.S.C. § 2000e-3, as amended.

98. Defendants' conduct caused Plaintiff damages, including but not limited to: loss of income, back pay, front pay, emotional pain and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

A. All wages and benefits Plaintiff would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

D. A permanent injunction requiring the Defendant adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

E. The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. Punitive damages as allowed by law;

G. An award of reasonable attorneys' fees, costs, and litigation expenses; and

H. Such other relief as the Court may deem just or equitable.

Respectfully submitted,

JOHN NAWARA

***s/Dana L. Kurtz***

___________________________

One of Plaintiff's Attorneys

*Electronically filed on March 29, 2017*

Dana L. Kurtz, Esq. (6256245)
Heidi Karr Sleper, Esq. (6287421)
KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois 60521
Phone: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us
Email: hsleper@kurtzlaw.us