**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br>v.<br><br>COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 17-cv-2393<br><br>Hon. Rebecca R. Pallmeyer |

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME the Defendants, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY ("DEFENDANTS")[1] by and through their attorneys, SCHARF BANKS MARMOR LLC, and responds to Plaintiff's First Amended Complaint as follows:

1. Plaintiff JOHN NAWARA brings this action for violation of the American With Disabilities Act, 42 U.S.C. §§ 12010-12213 (2000) ("ADA") (Count I), violations of his civil rights under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988 (Count II), violations of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, as amended (Count III) and violations of the Illinois Whistleblower Act ("IWA") (740 ILCS § 174/15) (Count IV).

**ANSWER:** **Defendants admit Plaintiff brings this action pursuant to alleged violations of the Americans With Disabilities Act, 42 U.S.C. §§ 12010-12213 (2000) ("ADA") (Count I), alleged violations of his civil rights under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988 (Count II), alleged violations of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, as amended (Count**

[1] Pursuant to this Court's Order of September 19, 2017, Thomas Dart, in his individual capacity, was dismissed from this lawsuit.

**III) and alleged violations of the Illinois Whistleblower Act ("IWA") (740 ILCS § 174/15) (Count IV). Defendants deny that any such violations occurred.**

2. Plaintiff seeks injunctive relief because Defendants' actions have and continue to cause irreparable harm to Plaintiff.

**ANSWER: Defendants admit Plaintiff seeks injunctive relief. Defendants deny Plaintiff is entitled to injunctive relief and deny all remaining allegations in this paragraph.**

3. Plaintiff also seeks declaratory, compensatory, and equitable relief.

**ANSWER: Defendants admit Plaintiff seeks declaratory, compensatory, and equitable relief but deny Plaintiff is entitled to any relief and deny all remaining allegations in this paragraph.p**

**Jurisdiction and Venue**

4. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1343, and 29 U.S.C. § 626(c).

**ANSWER: Defendants admit that this Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1343, and 29 U.S.C. § 626(c).**

5. This Court has supplemental jurisdiction over Plaintiff's Illinois Whistleblower Act claim (Count IV) pursuant to 28 U.S.C.A. § 1367, as it is part of the same case or controversy as the federal claims.

**ANSWER: Defendants admit this Court has supplemental jurisdiction over Plaintiff's Illinois Whistleblower Act claim (Count IV) pursuant to 28 U.S.C.A. § 1367, as it is part of the same case or controversy as Plaintiff's federal claims. Defendants deny all remaining allegations in this paragraph.**

6. Further, venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b) and (c), as Plaintiff and all Defendants either reside in this district or have their principle place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

**ANSWER: Defendants admit that venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b) and (c), as Plaintiff and all Defendants either reside in this district or have their principal place of business in this district. Defendants deny all remaining allegations in this paragraph.**

**Administrative Proceedings**

7. On or about March 24, 2017, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA and retaliation. On June 2, 2017, Plaintiff filed an amended charge with the EEOC to include class allegations as to Defendants' violation of the ADA.

**ANSWER: Defendants admit that Plaintiff filed charges with the EEOC. Defendants deny they violated the ADA or engaged in any retaliation.**

**Parties**

8. Plaintiff JOHN NAWARA ("Nawara") is a citizen of the United States who resides in Cook County, Illinois.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation.**

9. Plaintiff Nawara was hired by Cook County through the Sheriff's Office in [sic] on September 28, 1998. Plaintiff Nawara is currently an employee of the Sheriff's office.

**ANSWER: Defendants admit that Plaintiff Nawara began employment with the Cook County Sheriff's Office on September 28, 1998 and is currently an employee of the Cook County Sheriff's Office. Defendants deny all remaining allegations in this paragraph.**

10. From approximately 2002 to 2007, Plaintiff Nawara was a member of the Special Operations Response Team (SORT), which was a highly elite and specialized unit in the jail.

**ANSWER: Defendants admit that Plaintiff Nawara was previously a member of the SORT but lacks knowledge or information concerning the specific dates. Defendants deny all remaining allegations in this paragraph.**

11. Plaintiff had an exemplary record with the Sheriff's Office and was selected to serve in the elite SORT Unit based on their record of superior job performance, which was above reproach.

**ANSWER: Denied.**

12. At all relevant times, Plaintiff satisfactorily fulfilled his assigned duties.

**ANSWER: Denied.**

13. For the last 5 years, Plaintiff Nawara has had an excellent attendance record and had not called in sick or used any medical time prior to being placed on unpaid leave as alleged herein.

**ANSWER: Denied.**

14. Plaintiff Nawara satisfactorily performed his duties without incident.

**ANSWER: Denied.**

15. Plaintiff Nawara has met his direct supervisors' expectations.

**ANSWER: Denied.**

16. Plaintiff Nawara exceeded his supervisor' expectations.

**ANSWER: Denied.**

17. Defendant COOK COUNTY is a municipality incorporated under the laws of the State of Illinois. Cook County administers itself through departments, one of which is the COOK COUNTY SHERIFF'S OFFICE ("Sheriff's Office"). At all relevant times, Defendant Cook County, through the Sheriff's Office, has been continuously engaged in an industry affecting commerce.

**ANSWER: Denied.**

18. Cook County is named as a necessary party as the indemnifier for the Cook County Sheriff's Office.

**ANSWER: Admitted.**

19. At all relevant times, Defendant THOMAS DART ("Dart") served in the elected position of Sheriff of Cook County, Illinois. Dart was at all relevant times hereto the final decision maker and policy maker in the Sheriff's Office. Defendant Dart is sued in his official and individual capacities.

**ANSWER:** **Defendants admit only that Sheriff Dart was sworn in as Sheriff on December 1, 2006 and has served as Sheriff since that date. Plaintiff's allegation that Dart was the final policymaker calls for a legal conclusion and therefore does not require an answer. To the extent an answer is required, it is denied. Defendants deny all remaining allegations in the paragraph, including that Defendant Dart is being sued in his individual capacity, as this Court has dismissed Sheriff Dart in his individual capacity in its Order on September 19, 2017.**

20. Defendant KAREN JONES-HAYES ("Jones-Hayes) is sued in her individual capacity. Defendant Jones-Hayes is a Superintendent in the Cook County Sheriff's Office Department of Corrections.

**ANSWER:** **Admitted.**

21. At all relevant times hereto, Defendant Jones-Hayes has served in the position of Superintendent at the discretion and pleasure of the Sheriff. Defendant Jones-Hayes is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein. The Sheriff delegated final policy making authority to Defendant Jones-Hayes with regard to her acts and conduct alleged herein.

**ANSWER:** **Defendants admit that Defendant Karen Jones-Hayes has been employed as a Superintendent in the Cook County Sheriff's Office Department of Corrections since July 2016. Defendants deny all remaining allegations in this paragraph.**

22. Defendant Jones-Hayes acted under color of law.

**ANSWER:** **This allegation calls for a legal conclusion and therefore does not require an answer. To the extent an answer is required, denied.**

23. Defendant MATTHEW BURKE ("Burke") is sued in his individual capacity. Defendant Burke is the Chief of Staff for the Cook County Sheriff's Office Department of Corrections.

**ANSWER:** **Admitted.**

24. At all relevant times hereto, Defendant Burke has served in the position of Chief of Staff at the discretion and pleasure of the Sheriff. Defendant Burke is a final policy maker and decision maker for the Sheriff's Office and with regard to his acts and conduct alleged herein. The Sheriff delegated final policy making authority to Defendant Burke with regard to his acts and conduct alleged herein.

**ANSWER: Defendants admit that Defendant Matthew Burke has been employed as the Chief of Staff for the Cook County Department of Corrections since June 2014. Defendants deny all remaining allegations in this paragraph.**

25. Defendant REBECCA REIERSON ("Reierson") is sued in her individual capacity. Defendant Reierson is the Leave and Absence Manager for the Bureau of Human Resources of the Cook County Sheriff's Office.

**ANSWER: Admitted.**

26. At all times relevant hereto, Defendant Reierson was delegated with final policy making authority with regard to her acts and conduct alleged herein.

**ANSWER: Denied.**

27. Defendant Reierson acted under color of law.

**ANSWER: This allegation calls for a legal conclusion and therefore does not require an answer. To the extent an answer is required, denied.**

28. Defendant WINIFRED SHELBY ("Shelby") is a sued in her individual capacity. Defendant Shelby is an Occupational Health Specialist for the Bureau of Human Resources of the Cook County Sheriff's Office.

**ANSWER: Admitted.**

29. At all times relevant hereto, Defendant Shelby was delegated with final policy making authority with regard to her acts and conduct alleged herein.

**ANSWER: Denied.**

30. Defendant Shelby acted under color of law.

**ANSWER: This allegation calls for a legal conclusion and therefore does not require an answer. To the extent an answer is required, denied.**

### *Facts Related to All Claims*

31. On September 28, 2016, Plaintiff was assigned to the basement of Cermak Hospital to monitor detainees. A fight broke out between two inmates. Plaintiff and two other officers were able to break up the fight without incident, and after breaking up the fight, contacted a supervisor pursuant to protocol, advising the supervisor of the situation.

**ANSWER: Denied.**

32. Defendant Jones-Hayes (female) responded and in a very insulting, provoking and demeaning manner, hit Plaintiff in his chest with her finger several times. She also spoke to Plaintiff in a condescending tone of voice.

**ANSWER: Denied.**

33. Nothing warranted her assault and battery of hitting Plaintiff in the chest with her finger several times.

**ANSWER: Defendants deny Defendant Jones-Hayes committed assault or battery and deny all remaining allegations in this paragraph.**

34. Defendant Jones-Hayes again hit Plaintiff in the chest with her finger several times, at which time Plaintiff took a step back, feeling trapped, and told her keep her hands off of him, and that it was very unprofessional.

**ANSWER: Denied.**

35. Defendant Jones-Hayes acknowledged that she had offended Plaintiff.

**ANSWER: Defendants admit only that Defendant Jones-Hayes acknowledged that Plaintiff overreacted and apologized to Plaintiff in order to diffuse the situation and Plaintiff's inappropriate reaction. Defendants deny all remaining allegations in this paragraph.**

36. Defendant Jones-Hayes acknowledged that she touched Plaintiff.

**ANSWER: Defendants admit only that Defendant Jones-Hayes touched Plaintiff lightly on his shoulder to get his attention. Defendants deny all remaining allegations in this paragraph.**

37. Defendant Jones-Hayes also disparaged Plaintiff in front of detainees.

**ANSWER: Denied.**

38. Plaintiff complained about Defendant Jones-Hayes' conduct towards him to the other employees, including the sergeant that was present.

**ANSWER: Defendants admit Plaintiff began screaming and using profane language about Defendant Jones-Hayes but deny all remaining allegations in this paragraph.**

39. The very next day, Plaintiff was transferred to external operations away from his regular assignment with no explanation.

**ANSWER: Defendants admit only that Plaintiff was transferred to External Operations. Defendants deny all remaining allegations in this paragraph.**

40. While Plaintiff was assigned to external operations, Plaintiff had contact with other employees and detainees. Plaintiff also was assigned to transport detainees. Plaintiff was also allowed to carry his firearm.

**ANSWER: Defendants admit that while Plaintiff was assigned to External Operations, he had contact with other employees, that he may have been assigned to transport inmates at times, and that he was allowed to carry a firearm. Defendants deny all remaining allegations in this paragraph.**

41. On October 13, 2016, Plaintiff filed a formal complaint with his supervisor regarding Defendant Jones-Hayes' harassment and assault and battery of him.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation.**

42. On November 18, 2016, Defendants ordered Plaintiff to appear to Human Resources.

**ANSWER: Defendant Shelby admits only that Plaintiff was asked to meet with Human Resources and that such meeting took place on November 18, 2016. Defendant Shelby denies all remaining allegations in this paragraph.**

**Defendant Reierson admits only that she asked the Department of Corrections to coordinate a time at which she and Defendant Shelby could meet with Plaintiff and that such meeting occurred on November 18, 2016. Defendant Reierson denies all remaining allegations in this paragraph.**

**Defendants Dart, Burke, and Jones-Hayes lack knowledge or information sufficient to form a belief about the truth of this allegation. Defendants deny all remaining allegations in this paragraph.**

43. Defendants Shelby and Reierson met with Plaintiff. They asked him if he had threatened another employee; Plaintiff responded: "no," as he had not.

**ANSWER:** **Defendant Shelby admits that she and Defendant Reierson met with Plaintiff on November 18, 2016, asked Plaintiff if there had been an incident with Jones-Hayes, and that Plaintiff denied there had been any such incident. Defendant Shelby denies all remaining allegations in this paragraph.**

**Defendant Reierson admits she and Defendant Shelby met with Plaintiff on November 18, 2016, that Shelby generally asks the majority of the questions in meetings with employees during the fitness for duty referral process, and that Plaintiff denied any such incident with Jones-Hayes. Defendant Reierson denies all remaining allegations in this paragraph.**

44. Plaintiff was not given any notification of any complaint or allegations against him, and Defendants Shelby and Reierson refused to provide him with any information and told him that he had to sign two (2) HIPAA release forms that were blank.

**ANSWER:** **Denied.**

45. Plaintiff was not provided with any complaint or any indication that anyone had complained about him.

**ANSWER:** **Denied.**

46. Plaintiff was told by Defendants Shelby and Reierson that this was not an O.P.R. (Office of Professional Review) matter.

**<u>ANSWER:</u> Defendant Shelby and Reierson admit they told Plaintiff during their meeting on November 18, 2016 that their meeting was not for the purposes of disciplining Plaintiff. Defendants deny all remaining allegations in this paragraph.**

47. O.P.R. is the division that investigates officer misconduct.

**<u>ANSWER:</u> Defendants admit that the Office of Professional Review (O.P.R.) is the department within the Cook County Sheriff's Office that investigates allegations of employee misconduct. O.P.R. is comprised of a group of trained investigators who conduct criminal and administrative investigations based upon complaints or allegations made against Cook County Sheriff's Office employees. *See* Cook County Sheriff's Website, at http://www.cookcountysheriff.org/OPR/OfficeOfProffessionalReview_main.html.**

48. Defendant Dart, through Defendants Burke, Shelby, and Reierson, ordered Plaintiff to sign blank HIPPA release forms for his medical records, which Plaintiff refused because he reasonably believed that it is was violation of the ADA.

**<u>ANSWER:</u> Denied.**

49. Defendant Dart, through Defendants Burke, Shelby, and Reierson, told Plaintiff that he could not return to work until he signed the HIPPA release forms, which Plaintiff believed was and is an unlawful request.

**<u>ANSWER:</u> Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation concerning Plaintiff's belief. Defendants deny all remaining allegations in this paragraph.**

50. As of this meeting on November 18, 2016, and according to Defendant Matthew Burke, no decision had been made as to whether or not Defendants were going to order Plaintiff for a fitness for duty examination. Defendant Burke stated that he requested Human Resources "meet with Officer Nawara and determine whether a fitness for duty evaluation was appropriate."

**ANSWER: Defendants admit that prior to the meeting on November 18, 2016, Mr. Burke had not made a decision as to whether Plaintiff would be ordered for a fitness for duty examination, and that, consistent with Cook County Sheriff's Office practice, Mr. Burke requested that Human Resources meet with Plaintiff to determine whether a fitness for duty evaluation was appropriate. Defendants deny all remaining allegations in this paragraph.**

51. Defendant Reierson admits that Office Nawara was placed on administrative leave with no pay because he would not sign the HIPPA release forms.

**ANSWER: Denied.**

52. The ADA specifically prohibits employers from "requir[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A).

**ANSWER: Defendants state that this paragraph quotes a portion of the Americans With Disabilities Act, which speaks for itself.**

53. The EEOC guidance also states that "Any employee, therefore, has a right to challenge a disability-related inquiry or medical examination that is not job-related and consistent with business necessity." https://www.eeoc.gov/policy/docs/guidance-inquiries.html.

**ANSWER: Defendants state that this paragraph quotes a portion of EEOC guidance from the EEOC website.**

54. The order given to Plaintiff to sign blank HIPPA release forms for his medical records violates the ADA.

**ANSWER: Defendants deny Plaintiff was ordered to sign a blank HIPPA release. Defendants deny all remaining allegations in this paragraph.**

55. Defendants' medical inquiry at issue is not vital to its business.

**ANSWER: Denied.**

56. Defendants' medical inquiry is not narrowly formulated to prevent unnecessary intrusion into Plaintiff's medical information.

**ANSWER: Denied.**

57. Defendants' request for Plaintiff to sign blank HIPPA releases for his medical records was not job related, consistent with business necessity, or justified by any legitimate concern about the safety of Defendants' employees, inmates, or the public at large.

**ANSWER: Denied.**

58. Defendants have not ordered Plaintiff to appear for a fitness for duty.

**ANSWER: Denied.**

59. To the extent Defendants might order Plaintiff to appear for a fitness for duty, such an order would not be job related, consistent with business necessity, or justified by any legitimate concern about the safety of Defendants' employees, inmates, or the public at large.

**ANSWER: Denied.**

60. Defendants have not disclosed to Plaintiff any asserted purpose and cannot show that the medical inquiry serves any asserted purpose.

**ANSWER: Denied.**

61. The request for Plaintiff to sign blank HIPPA release forms is also in violation of Plaintiff's privacy rights and unlawful.

**ANSWER: Defendants deny Plaintiff was asked to sign a "blank" HIPPA form and deny all remaining allegations in this paragraph.**

62. Defendants placed Plaintiff on an unpaid suspension because he would not sign the blank HIPPA forms.

**ANSWER: Denied.**

63. Plaintiff worked from September 28, 2016 to November 18, 2016 without incident, including transporting inmates and being allowed to carry a firearm.

**ANSWER: Defendants admit that while Plaintiff worked in External Operations, he may have transported inmates at times and that he was allowed to carry a firearm. Defendants lack knowledge or information sufficient to form a belief about the truth of the remainder of this allegation.**

64. It was not until Plaintiff refused to sign the HIPPA release forms did Defendants place Plaintiff on administrative leave without pay.

**<u>ANSWER:</u> Denied.**

65. As a result of Defendants placing Plaintiff on administrative leave without pay, Plaintiff was forced to use his personal time that is "on the books," *i.e.*, medical/sick, personal, compensation, holidays, and vacation. Plaintiff is currently not receiving any pay.

**<u>ANSWER:</u> Denied. Plaintiff is currently back at work and receiving pay.**

66. Defendants have also threatened Plaintiff with disciplinary action and that charges may be brought seeking his termination.

**<u>ANSWER:</u> Defendants admit only that on March 13, 2017 Ms. Reierson sent an email to Dana Kurtz, Plaintiff's counsel, stating that Mr. Nawara had been ordered to complete a Fitness for Duty evaluation, that he had not returned the HIPAA waiver forms as part of the Fitness for Duty process, and that if he did not return the forms within the next 7 days, Mr. Nawara would be considered to not be engaged in the Fitness for Duty process and his absence would be deemed unauthorized, which would subject him to possible discipline, including termination. Defendants deny all remaining allegations in this paragraph.**

67. Plaintiff has also been denied special assignments, transfers to more desirable units, and training, as well as promotional opportunities as a result of Defendants' unlawful order for him to sign a blank HIPPA release for his medical records.

**<u>ANSWER:</u> Denied.**

68. On December 21, 2016, Plaintiff, through his counsel, advised Defendants, through its agents and employees in Human Resources, as well as Defendants' counsel, Peter Kramer, that he believed the order for him to sign blank HIPPA release forms was unlawful and requested to be reinstated back to work with his time reinstated as well.

**<u>ANSWER:</u> Defendants admit only that Plaintiff's counsel sent an email to two defendants in this case, Ms. Shelby and Ms. Reierson, and also to Mr. Kramer on December 21, 2016. Defendants deny all remaining allegations in this paragraph.**

69. Defendants did not respond to the December 21, 2016 correspondence from Plaintiff, through his counsel.

**ANSWER:** **Denied.**

70. On January 31, 2017, Plaintiff, again through his counsel, requested to be reinstated and advised Defendants that the order for him to sign blank HIPPA releases violated the ADA.

**ANSWER:** **Defendants admit only that Plaintiff's counsel sent an email to Ms. Reierson, Ms. Shelby and Mr. Kramer on January 31, 2017. Defendants deny all remaining allegations in this paragraph.**

71. Defendants did not respond.

**ANSWER:** **Denied.**

72. On March 1, 2017, Defendants sent Plaintiff a letter suggesting that he had not responded to them regarding him signing the HIPPA release forms, when in fact he did respond, on both December 21, 2016 and January 31, 2017, through counsel.

**ANSWER:** **Defendants admit only that Ms. Reierson sent Plaintiff a letter dated February 28, 2017 regarding the Fitness For Duty evaluation, unreturned HIPAA forms, and the absence of a response from Plaintiff to a November 30, 2016 letter from Defendant Shelby. Defendants admit the February 28, 2017 letter was attached to an email dated March 1, 2017. Defendants deny all remaining allegations in this paragraph.**

73. On March 8, 2017, Plaintiff again responded through his counsel, and provided Defendants with case law, stating that the order to Plaintiff Nawara to sign the HIPPA release for his medical records is unlawful and violates the ADA. Case law is clear that the medical inquiries provision of the ADA protects all employees, even if they are not disabled. *See Wright v. Ill. Dep't of Children & Family Servs*., 798 F.3d 513 (7th Cir. 2015). Plaintiff requested that the order for him to sign the HIPPA release forms be rescinded and that he be allowed to return to work.

**ANSWER:** **Defendants admit only that Plaintiff's counsel sent an email to Ms. Reierson, Ms. Shelby and Mr. Kramer on March 8, 2017 citing the case *Wright v. Ill. Dep't of Children & Family Servs*., 798 F.3d 513 (7th Cir. 2015). Defendants deny all remaining allegations in this paragraph, including that *Wright* is applicable to the present case, and**

**aver that fitness for duty evaluations for employees who work in law enforcement and public safety positions are allowed by law under the ADA.**

74. On March 13, 2017, Defendant Reierson responded stating in relevant part that "[Plaintiff's] absence will be deemed unauthorized subjecting him to possible discipline including termination" if he did not sign the HIPPA release and return it to Defendants.

**ANSWER: Defendants admit only that Ms. Reierson sent an email on March 13, 2017 to Dana Kurtz, Plaintiff's counsel, and that Plaintiff has quoted a portion of a sentence from that letter correctly, if out of context. Defendants deny all remaining allegations in this paragraph.**

75. In a final effort to be returned to work, Plaintiff saw an independent doctor and obtained a report as to his fitness for duty.

**ANSWER: Defendants admit that Plaintiff sent Ms. Reierson a report titled "Fitness for Duty Evaluation" from Dr. Robin Kroll, Psy.D. Defendants deny all remaining allegations in this paragraph.**

76. The doctor issued a report stating that Plaintiff is fit for duty and recommended that he return to work with no restrictions.

**ANSWER: Defendants admit that Plaintiff sent Ms. Reierson a report titled "Fitness for Duty Evaluation" from Dr. Robin Kroll, Psy.D. Defendants deny all remaining allegations in this paragraph.**

77. On March 17, 2017, Plaintiff provided the report to Defendants, through their Human Resources representatives, and directly to Defendant Reierson, stating:

> See attached report from Dr. Kroll, who is an independent doctor and not my doctor. I am requesting to be put back to work effective immediately and all of the time I have had to burn be reinstated. I feel the order for me to sign a blank HIPPA release was unlawful and violates the American with Disabilities Act and is in retaliation for my prior suit against the Sheriff's Office, in which the jury found that the Sheriff violated my and other officer's First Amendment rights, and retaliated against us because of our political support for the opponent to Sheriff Dart, and because of my complaints of harassment by the supervisor. Please confirm that I can come

> back to work and that all of my time will be instated, and that I will not be subject to any further harassment or retaliation.
>
> I look forward to hearing from you today, so that I can return to work on Monday.

**ANSWER: Defendants admit only that Plaintiff sent an email to Ms. Reierson and Mr. Kramer on March 17, 2017, and that Paragraph 77 quotes that email. Defendants deny all remaining allegations in this paragraph.**

78. Despite Plaintiff providing additional information and evidence that there was no basis to order him to sign blank HIPPA release forms, and that an independent medical doctor recommended that Plaintiff be returned to work with no restrictions, Defendants have not allowed Plaintiff to return to work.

**ANSWER: Denied. Plaintiff is currently returned to work.**

79. On March 24, 2017, Plaintiff filed a charge of discrimination and retaliation with the EEOC.

**ANSWER: Defendants admit that Plaintiff filed charges with the EEOC. Defendants deny they violated the ADA or engaged in any retaliation.**

80. Plaintiff has repeatedly requested that he be allowed to return to work to no avail.

**ANSWER: Denied.**

81. Defendants have refused to allow Plaintiff to return to work without any justification or explanation, as there is no justification or valid business necessity.

**ANSWER: Denied.**

82. Plaintiff also requested from Defendants the identification of the policy or general order that would cover Defendants' request for Plaintiff to sign a blank HIPPA release or even order him to see their designated doctor for a fitness for duty. Defendants failed to respond to this request as well.

**ANSWER: Denied.**

83. Plaintiff has no mental, physical, or emotional issues.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation.**

84. There is no reason or belief to find that Plaintiff should be subjected to a medical inquiry.

**ANSWER: Denied.**

85. Defendants have also singled Plaintiff out because he complained about Defendant Jones-Hayes' assault and battery of him.

**ANSWER: Denied.**

86. Defendants' policy of requiring employees to sign blank HIPPA release forms violates the ADA.

**ANSWER: Defendants deny they require employees to sign "blank" HIPPA forms and deny all remaining allegations contained in this paragraph.**

87. Here, Defendants did not order Plaintiff to see their own doctor for a fitness for duty evaluation, but only ordered him to sign blank HIPPA release forms.

**ANSWER: Denied.**

88. Even if Defendants had ordered Plaintiff to see their doctor for a fitness for duty evaluation, Defendants' policy of requiring fitness for duty evaluations is not consistent with any business necessity.

**ANSWER: Denied.**

***Plaintiff's Participation In Other Protected Activity***

89. On November 18, 2008, Plaintiff participated in a federal civil rights lawsuit based on political retaliation for his support and perceived support of the political opponent to Defendant Dart (in the 2006 primary election). Plaintiff was a named Plaintiff in the case entitled: *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08-cv-06621 (N.D. Ill).

**ANSWER: Defendants admit only that Plaintiff was a named Plaintiff in the case entitled: *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08-cv-06621 (N.D. Ill). Defendants deny all remaining allegations in this paragraph.**

90. On September 4, 2012, a federal jury found that Defendant Cook County Sheriff's Office and Defendant Dart in his official capacity, along with Scott Kurtovich, who was the First

Executive Assistant in the Sheriff's Office, violated the 21 plaintiffs' First Amendment rights under the United States Constitution in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al*., Case No. 08 C 6621 (N.D. Ill.).

**<u>ANSWER:</u> Defendants deny that jury found against Defendant Dart in his official capacity and deny that the jury found against all Cook County Sheriff's employees and administrators in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.).**

**Defendants admit only that on September 4, 2012, a federal jury found against the Cook County Sheriff's Office and Scott Kurtovich on First Amendment claims in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.). Defendants deny that they engaged in political discrimination in connection with the *Burruss* case, and deny that paragraph 90 is a full and accurate description of the facts. Defendants deny any remaining allegations contained in paragraph 90 inconsistent with the information above.**

91. The jury awarded $1,560,000 in compensatory (not including back pay or front pay) and punitive damages to the 21-plaintiff employees of the Sheriff's Office.

**<u>ANSWER:</u> Defendants admit that the jury awarded plaintiffs in *Burruss* $1,350,000 in damages and punitive damages against Scott Kurtovich only, the Judge significantly reduced those damages pursuant to post-trial motions. Further, in the post-trial order, the District Court determined that the conduct of Kurtovich provided little support for the punitive damages award and that the conduct of at least five of the plaintiffs was so legally reprehensible that these plaintiffs were prohibited from any potential recovery. Defendants deny any remaining allegations contained in paragraph 91 inconsistent with the information above.**

92. Defendants filed a post-trial motion to vacate the verdict, which the District Court denied. The District Court upheld the jury's verdict, and held in relevant part: "The County is liable under section 1983, just as Kurtovich is individually, because the jury found that the County made an official decision to disband SORT in retaliation against Plaintiffs. . . . The court therefore will not set aside the jury's liability findings against Defendants." *Burruss v. Cook County Sheriff's Office*, 2013 WL 3754006, at *9 (N.D.Ill. 2013).

**ANSWER: Defendants deny that the Court denied the Sheriff's post-trial motion. Defendants admit that despite the Sheriff's Office intention to appeal the jury's verdict, the County Board settled the case to avoid the costs of further litigation and the case was dismissed. While the jury awarded plaintiffs $1,350,000 in damages and punitive damages against Scott Kurtovich only, the Judge significantly reduced those damages pursuant to post-trial motions. Further, in the post-trial order, the District Court determined that the conduct of Kurtovich provided little support for the punitive damages award and that the conduct of at least five of the plaintiffs was so legally reprehensible that these plaintiffs were prohibited from any potential recovery. Defendants deny any remaining allegations contained in paragraph 92 inconsistent with the information above.**

93. The jury in the *Burruss* case found that Defendants' Director Scott Kurtovich violated federal law and the First Amendment to the United States Constitution by retaliating against Plaintiffs.

**ANSWER: Defendants admit that a jury found against Scott Kurtovich in the case *Burruss* case.**

**Defendants deny that Plaintiff's allegations in this matter have any connection to *Burruss* allegations relating to Kurtovich's involvement with the decision to disband the problematic Special Operations Response Team ("SORT") within Cook County Department of Corrections ("CCDOC"). Defendants deny that they or Kurtovich engaged in political discrimination and deny that paragraph 93 represents a complete and accurate description of the facts, and admit only that, despite the Sheriff's Office intention to appeal the jury's**

**verdict, County Board settled the case to avoid the costs of further litigation and the case was dismissed. Further answering, while Defendants admit that the jury found against Kurtovich on First Amendment claims of retaliation, in post-trial Order, the District Court determined that the conduct of Kurtovich provided little support for the punitive damages award and that the conduct of at least five of the *Burruss* plaintiffs was so legally reprehensible that these plaintiffs were prohibited from any potential recovery. Defendants deny any remaining allegations inconsistent with the information provided above.**

94. Despite this finding and the District Court's affirmation of the jury's verdict, Defendants did not discipline or terminate Scott Kurtovich's employment from the Sheriff's Office. Instead, after the jury's verdict, Defendant Dart promoted Scott Kurtovich to be the Director over the Training Academy and in charge of training, including training on the Sheriff's policy on political discrimination and retaliation in the workplace.

**ANSWER: Defendants admit that Scott Kurtovich was not disciplined or terminated from the Sheriff's Office after the court entered the jury verdict in *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.).**

**Defendants deny that Plaintiff's allegations in this matter have any connection to *Burruss* allegations relating to Scott Kurtovich's involvement with the decision to disband the problematic Special Operations Response Team ("SORT") within Cook County Department of Corrections ("CCDOC"). Defendants deny that they or Scott Kurtovich engaged in political discrimination and deny that paragraph 94 represents a complete and accurate description of the facts, and admit only that, despite the Sheriff's Office intention to appeal the jury's verdict, the County Board settled the case to avoid the costs of further litigation and the case was dismissed. Defendants admit only that, despite the Sheriff's Office intent to appeal, Scott Kurtovich was not disciplined or terminated after the County Board settled the case. Further, in the post-trial Order, the District Court determined that the**

**conduct of Kurtovich provided little support for the punitive damages award and that the conduct of at least five of the *Burruss* plaintiffs was so legally reprehensible that these plaintiffs were prohibited from any potential recovery.**

**Defendants admit that Scott Kurtovich was assigned as the Director of the Training Institute of the Cook County Sheriff from July 4, 2010 until December 13, 2014, but Defendants deny the remaining allegations in the second sentence of this paragraph. Defendants deny all remaining allegations inconsistent with the information provided above.**

95. Plaintiff is also being single out and retaliated against because of his participation in the civil rights lawsuit.

**ANSWER: Denied.**

**COUNT I**

**(ADA - Disability Discrimination**

**v. Cook County and the Cook County Sheriff's Office)**

96. Plaintiff realleges and incorporates by reference paragraphs 1-95 above as if fully set forth herein.

**ANSWER: Defendants repeat and incorporate their answers provided in Paragraphs 1 through 95 above as their answer to this paragraph.**

97. The Americans with Disabilities Act specifically prohibits employers from "require[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A).

**ANSWER: Defendants state that this paragraph quotes a portion of the Americans With Disabilities Act, which speaks for itself. As this paragraph is a description of a statute, it does not require any admission from Defendants. To the extent an answer is required, Defendants deny the allegations contained in this paragraph.**

98. The EEOC guidance also states that "Any employee, therefore, has a right to challenge a disability-related inquiry or medical examination that is not job-related and consistent with business necessity."

**<u>ANSWER:</u> Defendants state that this paragraph quotes a portion of EEOC guidance from the EEOC website. As this paragraph is a description of a website, it does not require any admission from Defendants.**

99. Defendants' order to Plaintiff to sign blank HIPPA release forms for his medical records violates the ADA.

**<u>ANSWER:</u> Denied.**

100. Defendants cannot show that the medical inquiry at issue is vital to its business and is narrowly formulated to prevent unnecessary intrusion into Plaintiff's medical information.

**<u>ANSWER:</u> Denied.**

101. Defendants have not disclosed to Plaintiff any asserted purpose and cannot show that the medical inquiry serves any asserted purpose.

**<u>ANSWER:</u> Denied.**

102. Plaintiff has and continues to suffer irreparable harm as a result of Defendants conduct and refusal to return him back to work without valid or legal justification, including but not limited to running out of personal time, being denied training, lateral transfers to special assignments, and promotional opportunities for advancement of his career, and being threatened with disciplinary action and charges seeking his termination.

**<u>ANSWER:</u> Denied.**

103. Defendants' policy of requiring employees to sign blank HIPPA releases for medical records violates the ADA.

**<u>ANSWER:</u> Denied.**

104. Defendants have a policy, custom and practice of violating the ADA.

**<u>ANSWER:</u> Denied.**

105. Defendants' conduct caused Plaintiff damages, including but not limited to: loss of income, back pay, front pay, emotional pay and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

**<u>ANSWER:</u> Denied.**

**COUNT II**

**(42 U.S.C. § 1983, First Amendment**

**v. All Defendants)**

106. Plaintiff realleges and incorporates by reference paragraphs 1-95 above as if fully set forth herein.

**ANSWER: Defendants repeat and incorporate their answers provided in Paragraphs 1 through 95 above as their answer to this paragraph.**

107. At all times relevant hereto, Defendants acted as employees, supervisors, and final policymakers for the Sheriff's Office.

**ANSWER: Defendants deny that Defendants Reierson and Shelby are, or were, supervisors of the Plaintiff. Plaintiff's allegations that Defendants were final policymakers calls for a legal conclusion and therefore does not require an answer. To the extent an answer is required, it is denied. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

108. The conduct of Defendants, specifically retaliating against employees who opposed the Sheriff politically, engaged in protected conduct by complaining about political discrimination and retaliation, and denying employees the right to be free from political retaliation, was and became the custom and practice of the Sheriff's Office.

**ANSWER: Denied.**

109. By Defendants' actions, Plaintiff suffered compensable injury and harm as a result of the denial of rights guaranteed to him pursuant to the First Amendment to the United States Constitution.

**ANSWER: Denied.**

110. Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by denying him promotions, denying him training, denying him special assignments, refusing to return him to work, and subjecting him to other adverse terms and conditions of his employment in violation of the First Amendment and treating him in an overall disparate manner.

**ANSWER: Denied.**

111. Defendants have acted under color of state law at all material times hereto.

**ANSWER: This allegation calls for a legal conclusion and therefore does not require an answer. To the extent an answer is required, denied.**

112. The conduct of Defendants violated Plaintiff's rights to free speech and free association as secured by the First Amendment to the Constitution.

**ANSWER: Denied.**

113. Defendants are aware that it is unlawful to retaliate or discriminate against someone because of their political affiliation and/or perceived political affiliation.

**ANSWER: Defendants admit it may be unlawful to retaliate or discriminate against someone because of their political affiliation and/or perceived political affiliation. Defendants deny any such discrimination or retaliation occurred and deny all remaining allegations in this paragraph.**

114. Defendants know that employees must be treated equally regardless of their political affiliation and/or perceived political affiliation.

**ANSWER: Defendants admit that employers may be required to treat employees equally regardless of their political affiliation and/or perceived political affiliation. Defendants deny any unequal treatment occurred and deny all remaining allegations in this paragraph.**

115. On September 4, 2012, a federal jury found that Defendant Cook County Sheriff's Office and Defendant Dart in his official capacity, along with Scott Kurtovich, who was the First Executive Assistant in the Sheriff's Office, violated the 21 plaintiffs' First Amendment rights under the United States Constitution in the case of *Burress, et al. v. Cook County Sheriff's Office, et al.,* Case No. 08 C 6621 (N.D. Ill.). The jury awarded $1,560,000 in compensatory (not including back pay or front pay) and punitive damages to the 21-plaintiff employees of the Sheriff's Office. Defendants filed a post-trial motion to vacate the verdict, which the District Court denied. The District Court upheld the jury's verdict, and held in relevant part: "The County is liable under section 1983, just as Kurtovich is individually, because the jury found that the County made an official decision to disband SORT in retaliation against Plaintiffs. . . . The court therefore will not set aside the jury's liability findings against Defendants."

**ANSWER: Defendants deny that jury found against Defendant Dart in his official capacity and deny that the jury found against all Cook County Sheriff's employees and**

**administrators in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.).**

**Defendants admit only that on September 4, 2012, a federal jury found against the Cook County Sheriff's Office and Scott Kurtovich on First Amendment claims in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.). Defendants deny that they engaged in political discrimination in connection with the *Burruss* case, and deny that paragraph 115 is a full and accurate description of the facts. The Sheriff's Office denies that the Court denied the Sheriff's post-trial motion. Defendants admit that despite the Sheriff's Office intention to appeal the jury's verdict, the County Board settled the case to avoid the costs of further litigation and the case was dismissed. While the jury awarded plaintiffs $1,350,000 in damages and punitive damages against Scott Kurtovich only, the Judge significantly reduced those damages pursuant to post-trial motions. Further, in the post-trial order, the District Court determined that the conduct of Kurtovich provided little support for the punitive damages award and that the conduct of at least five of the plaintiffs was so legally reprehensible that these plaintiffs were prohibited from any potential recovery. Defendants deny any remaining allegations contained in paragraph 115 inconsistent with the information above.**

116. The jury in the *Burruss* case found that Defendants' Director Scott Kurtovich violated federal law and the First Amendment to the United States Constitution by retaliating against Plaintiffs.

**ANSWER: Defendants admit that a jury found against Scott Kurtovich in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.). Defendants deny that Plaintiff's allegations in this mater have any connection to *Burruss* allegations relating to Scott Kurtovich's involvement with the decision to disband the**

**problematic Special Operations Response Team (SORT) within Cook County Department of Corrections (CCDOC). Defendants deny that they or Scott Kurtovich engaged in political discrimination and deny that Paragraph 116 represents a complete and accurate description of the facts and admit only that, despite the Sheriff's Office intention to appeal the jury's verdict, the County Board settled the case to avoid the costs of further litigation and the case was dismissed. While the jury awarded plaintiffs $1,350,000 in damages and punitive damages against Scott Kurtovich only, the Judge significantly reduced those damages pursuant to post-trial motions. Further, in the post-trial order, the District Court determined that the conduct of Kurtovich provided little support for the punitive damages award and that the conduct of at least five of the plaintiffs was so legally reprehensible that these plaintiffs were prohibited from any potential recovery. Defendants deny any remaining allegations contained in paragraph 116 inconsistent with the information above.**

117. Despite this finding and the District Court's affirmation of the jury's verdict, Defendants in this case have not disciplined or terminated Scott Kurtovich's employment from the Sheriff's Office.

**ANSWER:** **Defendants admit that Scott Kurtovich was not disciplined or terminated from the Sheriff's Office after the court entered the jury verdict in *Burruss, et al. v. Cook County Sheriff's Office, et al*., Case No. 08 C 6621 (N.D. Ill.).**

**Defendants deny that Plaintiff's allegations in this matter have any connection to *Burruss* allegations relating to Kurtovich's involvement with the decision to disband the problematic Special Operations Response Team ("SORT") within Cook County Department of Corrections ("CCDOC"). Defendants deny that they or Kurtovich engaged in political discrimination and deny that paragraph 117 represents a complete and accurate description of the facts, and admit only that, despite the Sheriff's Office intention to appeal the jury's**

**verdict, the County Board settled the case to avoid the costs of further litigation and the case was dismissed. Defendants admit only that, despite the Sheriff's Office intent to appeal, Scott Kurtovich was not disciplined or terminated after the County Board settled the case. Further, in the post-trial Order, the District Court determined that the conduct of Kurtovich provided little support for the punitive damages award and that the conduct of at least five of the *Burruss* plaintiffs was so legally reprehensible that these plaintiffs were prohibited from any potential recovery. Defendants deny any remaining allegations in paragraph 117 inconsistent with the information above.**

118. Defendants did not discipline or terminate Scott Kurtovich's employment despite Defendant Dart's own "written policy" that political retaliation will not be tolerated in the Sheriff's Office and will be subject to termination.

**ANSWER:** **Defendants deny that Plaintiff's allegations in this matter have any connection to *Burruss* allegations relating to Kurtovich's involvement with the decision to disband the problematic Special Operations Response Team ("SORT") within Cook County Department of Corrections ("CCDOC"). Defendants deny that they or Kurtovich engaged in political discrimination and deny that paragraph 118 represents a complete and accurate description of the facts, and admit only that, despite the Sheriff's Office intention to appeal the jury's verdict, the County Board settled the case to avoid the costs of further litigation and the case was dismissed. Defendants admit that the Sheriff's Office intended to appeal the verdict, and that Scott Kurtovich was not disciplined or terminated. Defendants admit that the Sheriff's Office has a written policy that prohibits political discrimination and retaliation, and that such conduct subjects the offender to termination. Further, in the post-trial Order, the District Court determined that the conduct of Kurtovich provided little support for the punitive damages award and that the conduct of at least five of the *Burruss***

**plaintiffs was so legally reprehensible that these plaintiffs were prohibited from any potential recovery. Defendants deny any remaining allegations in paragraph 118 inconsistent with the information above.**

119. Instead, after the jury's verdict, Defendant Dart promoted Scott Kurtovich to be the Director over the Training Academy and in charge of training, including training on the Sheriff's policy or political discrimination and retaliation in the workplace.

**ANSWER: Defendants admit only that Scott Kurtovich was assigned as the Director of the Training Institute of the Cook County Sheriff from July 4, 2010 until December 13, 2014, but Defendants deny the remaining allegations of paragraph 119.**

120. The actions of the Defendants in violating Plaintiff's and other employees' Constitutional rights under the First Amendment were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

**ANSWER: Denied.**

121. Defendants' conduct caused Plaintiff damages, including but not limited to: loss of income, back pay, front pay, emotional pain and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

**ANSWER: Denied.**

**COUNT III**

**(Plaintiff v. Defendant Cook County Sheriff's Office)**

**(Title VII – Retaliation)**

122. Plaintiff alleges and incorporates by reference paragraphs 1-95 above as if fully set forth herein.

**ANSWER: Defendants repeat and incorporate their answers provided in Paragraphs 1 through 95 above as their answer to this paragraph.**

123. Plaintiff Nawara was subjected to retaliatory treatment in retaliation for his complaints about Defendant Jones-Hayes' assault and battery of him, which she acknowledged she knew Plaintiff was offended.

**ANSWER: Denied.**

124. Defendant was engaged in a policy, pattern, and practice of retaliating and condoning retaliation against employees who complain of harassment, sexual harassment, discrimination, and retaliation.

**ANSWER: Denied.**

125. By engaging and condoning retaliatory conduct, Defendant discriminated against Plaintiff in violation of 42 U.S.C. § 2000e-3, as amended.

**ANSWER: Denied.**

126. Defendants' conduct caused Plaintiff damages, including but not limited to: loss of income, back pay, front pay, emotional pay and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

**ANSWER: Denied.**

**COUNT IV**

**(Plaintiff v. All Defendants)**

**(Violation of the Illinois Whistleblower Act)**

127. Plaintiff restates and realleges by reference paragraphs 1-95 above as though fully set forth herein against all Defendants.

**ANSWER: Defendants repeat and incorporate their answers provided in Paragraphs 1 through 95 above as their answer to this paragraph.**

128. As set forth above, Plaintiff participated in court proceedings (*Burress, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08-cv-06621 (N.D. Ill.)) and disclosed information that he reasonably believed was a violation of state or federal law, rule or regulation.

**ANSWER: Defendants admit that Plaintiff was a plaintiff in *Burress, et al. v. Cook County Sheriff's Office, et al.,* Case No. 08-cv-06621 (N.D. Ill.). Defendants lack knowledge or information sufficient to form a belief about the truth of the remainder of this allegation.**

129. Plaintiff also complained that forcing him to sign a HIPPA release was unlawful.

**ANSWER: Defendants admit only that Plaintiff, through counsel, complained that "forcing him to sign a HIPPA release was unlawful." Defendants deny all remaining allegations in this paragraph.**

130. After Plaintiff complained, Defendants then placed Plaintiff on an unpaid leave in retaliation.

**ANSWER: Denied.**

131. Defendants retaliated against Plaintiff by forcing him to sign a blank HIPPA form, placing him on unpaid suspension, and forcing him to use vacation and personal days.

**ANSWER: Denied.**

132. Each Defendant made, took part in, assisted in, and/or participated in the decision to retaliate against Plaintiff.

**ANSWER: Denied.**

133. Plaintiff Navara had reasonable cause to believe that the information disclosed was a violation of state or federal law, rule or regulation.

**ANSWER: Denied.**

134. Plaintiff Nawara was subjected to retaliation in violation of rights guaranteed to him by the Illinois Whistleblower Act, 740 ILCS § 174/15, and he has suffered substantial losses as a result, including, but not limited to, lost wages and benefits, mental and emotional anguish and embarrassment and humiliation.

**ANSWER: Denied.**

## AFFIRMATIVE DEFENSES

NOW COME Defendants, by their attorneys, SCHARF BANKS MARMOR LLC, stating the following affirmative defenses to Plaintiff's claims:

1. Plaintiff's claims fail to state facts sufficient to constitute a cause of action against Defendants.

2. Plaintiff's claims are barred or limited by the applicable statute of limitations.

3. Plaintiff's claims are barred, in whole or in part, under the doctrines of waiver, laches, estoppel, or unclean hands, in that Plaintiff himself verbally threatened Defendant Jones-Hayes.

4. Any damages that Plaintiff could recover must be eliminated or reduced by his failure to mitigate damages.

5. At all times, Defendants engaged in good faith efforts to comply with the law as stated in *Kolstad v. ADA* 527 U.S. 526 (1999).

6. Defendants Thomas J. Dart, in his official capacity, and Cook County are local public entities immune from punitive damages as to Plaintiff's claims under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). Further, as to Count IV of Plaintiff's First Amended Complaint, Plaintiff is not entitled to punitive damages against Defendants as it not an available remedy under 740 ILCS 174/30.

**AFFIRMATIVE DEFENSE NO. 1: Qualified Immunity**

1. Plaintiff alleges in his First Amended Complaint that Defendants retaliated against him in violation of rights guaranteed to him by the First Amendment and the Illinois Whistleblower Act, 740 ILCS § 174/15, and he alleges that he has suffered substantial losses as a result, including, but not limited to, lost wages and benefits, mental and emotional anguish and embarrassment and humiliation.

2. Defendants deny these allegations in their Answer.

3. Without waiving their denials to Plaintiff's allegations, Defendants conduct was at all times objectively reasonable and did not violate any of Plaintiff's clearly established constitutional rights. Accordingly, the Defendants are entitled to the defense of Qualified Immunity.

**AFFIRMATIVE DEFENSE NO. 2: The Illinois Local Governmental and Governmental Employees Tort Immunity Act 745 ILCS 10/1-101, et seq. ("Tort Immunity Act")**

1. Plaintiff alleges in his First Amended Complaint that Defendants retaliated against him in violation of rights guaranteed to him by the Illinois Whistleblower Act, 740 ILCS § 174/15,

and he alleges that he has suffered substantial losses as a result, including, but not limited to, lost wages and benefits, mental and emotional anguish and embarrassment and humiliation. Defendants deny these allegations in their Answer.

2. Defendant Cook County Sheriff Dart, in its official capacity, is a local public entity pursuant to 745 ILCS 10/1-206.

3. Defendants Karen Jones-Hayes, Matthew Burke, Winifred Shelby, and Karen Reierson and all Cook County and Cook County Sheriff's employees are public employees pursuant to 745 ILCS 10/1-207.

4. Defendants Cook County and Cook County Sheriff are immune from any punitive damage awards under 745 ILCS 10/2-102 of the Illinois Tort Immunity Act which provides as follows: "A local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party."

5. Defendants Cook County and Sheriff Dart are immune from Plaintiff's claims under 745 ILCS 10/2-109 of the Illinois Tort Immunity Act, which states a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.

6. Defendants are immune from Plaintiff's claims under 745 ILCS 10/2-201 of the Illinois Tort Immunity Act which provides as follows: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

7. Defendants are immune from Plaintiff's claims under 745 ILCS 10/2-204 of the Illinois Tort Immunity Act which provides as follows: "Except as otherwise provided by statute, a

public employee, as such and acting within the scope of his employment, is not liable for any injury caused by the act or omission of another person."

8. Defendants are immune from Plaintiff's claims under 745 ILCS 10/2-212 of the Illinois Tort Immunity Act which provides as follows: "The provisions of this Part 2 which define or limit the liability of a public employee in terms of his doing of an act or of his failure to act apply to public employees who function jointly, in conjunction or in collaboration with other public employees as well as to those who function singly."

9. Defendants are immune from Plaintiff's claims under 745 ILCS 10/2-213 of the Illinois Tort Immunity Act which provides as follows: "Notwithstanding any other provision of law, a public employee is not liable to pay punitive or exemplary damages in actions brought against the employee based on an injury allegedly arising out of an act or omission occurring within the scope of employment of such an employee serving in a position involving the determination of policy or the exercise of discretion when the injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even though abused."

**AFFIRMATIVE DEFENSE NO. 3: No Private Cause of Action Under the Health Insurance Portability and Accountability Act of 1996, and Fitness for Duty Was Job Related and Consistent with Business Necessity**

1. Plaintiff has alleged that Defendants violated the ADA by asking Plaintiff to sign "a blank HIPAA form."

2. Defendants have denied such allegations in their Answer.

3. The Health Insurance Portability and Accountability Act of 1996 (HIPAA) does not provide for a private cause of action. *Northwestern Mem. Hosp. v. Vill. of S. Chi. Heights Health & Welfare Fund*, 2004 U.S. Dist. LEXIS 14411 (N.D. Ill. 2004).

4. Defendants lawfully ordered Plaintiff to complete a Fitness for Duty evaluation based on fitness concerns, and, as part of this process, requested Plaintiff's medical records through a lawful and proper HIPAA authorization.

5. The HIPAA authorization form given to Plaintiff was proper, and complied with the requirements set forth in 45 CFR 164.508.

6. Further, Defendants' order that Plaintiff complete a Fitness for Duty evaluation was job related and consistent with business necessity, in that Plaintiff holds a position in law enforcement and public safety and his supervisor had relayed legitimate concerns as to Plaintiff's fitness and his threat to other employees' safety.

**AFFIRMATIVE DEFENSE NO. 4: Contributory Negligence and Willful and Wanton Conduct pursuant to Federal Rule of Civil Procedure 8(c), 735 ILCS 5/2-613(d), and 735 ILCS 5/2-1116**

1. Plaintiff pleads in his Complaint that Defendants retaliated against him for his political views, for participating in a federal lawsuit, and for complaining about behavior he believed was unlawful.

2. Plaintiff believes that he was retaliated against in violation of the First Amendment and the Illinois Whistleblower Act, and that he has suffered substantial losses as a result.

3. Defendants deny these allegations in their Answer.

4. Plaintiff is guilty of comparative fault, negligence, and/or willful and wanton conduct, in excess of 50%, which proximately caused his own injuries.

5. Plaintiff contributed to his own injuries in that he:

(a) failed to act as a reasonable prudent person in regard to his own employment in that he, among other actions, verbally threatened Defendant Jones-Hayes;

(b) failed to mitigate any damages as a result of Defendants' alleged acts; or

(c) was otherwise careless or negligent.

6. Plaintiff's refusal to comply with a proper order to complete a Fitness for Duty evaluation was the proximate cause of the monetary damages about which Plaintiff complains.

7. Plaintiff's acts or omissions have contributed to over 50% of the proximate cause of Plaintiff's injuries or, in the alternative, Defendants are entitled to a reduction of any damages recovered by Plaintiff to the extent of Plaintiff's own contributory fault, including negligent, intentional, and/or willful and wanton conduct.

WHEREFORE, Defendants prey that judgment be entered in their favor and against Plaintiff on all Counts, including for costs of defending this suit, and any other relief this Court deems necessary and proper.

**JURY DEMAND**

Defendants hereby demand a jury trial for all issues so triable.

/s/ Sarah R. Marmor
Stephanie A. Scharf
Sarah R. Marmor
George D. Sax
Suzanne M. Alexander
Morgan D. Churma
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Ph. 312-726-6000
sscharf@scharfbanks.com
smarmor@scharfbanks.com
gsax@scharfbanks.com
mchurma@scharfbanks.com
salexander@scharfbanks.com

**CERTIFICATE OF SERVICE**

I certify that on November 13, 2017, I filed the foregoing DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT using the Court's CM/ECF system, which will send e-mail notification of the filing to all counsel of record. These documents are available for viewing and downloading via the CM/ECF system.

/s/ Sarah R. Marmor