# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN NAWARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 17-cv-2393 |
| | ) | |
| COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities, | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF ELIZABETH SCANNELL**

I, Elizabeth Scannell, pursuant to 28 U.S.C. § 1746, depose and state the following based on my personal and first-hand knowledge:

1. I am over 18 years of age and am employed as an Assistant General Counsel at the Cook County Sheriff's Office ("CCSO") with responsibility for employment matters.

2. I have been employed by the CCSO since September of 2014.

3. In my position as Assistant General Counsel, I am familiar with the Sheriff's orders and/or general orders, rules, regulations, policies, custom and practices, including the CCSO Record Retention policies and processes for extracting CCSO electronic communications.

4. In my role as an attorney for the CCSO, I have reviewed and analyzed emails sent and received by Karyn Williams while she was employed as the Executive Director of the Department of Human Resources for the CCSO.

5. Ms. Williams was hired by the CCSO on July 11, 2016.

6. On April 30, 2016, Ms. Williams resigned from her employment with the CCSO.



**Exhibit 1**

7. Before and after Ms. Williams's resignation on April 30, 2018, the CCSO made multiple requests that Ms. Williams return documents related to her employment with the CCSO. Ms. Williams and her counsel, Dana Kurtz, have affirmatively refused to return these documents to the CCSO. In her refusal to return these documents, Ms. Kurtz has claimed that they are protected by the attorney-client privilege.

8. Upon information and belief, Ms. Williams remains in possession of documents related to her employment at the CCSO.

9. I participated in and have personal knowledge of the search of the documents and emails gathered from Ms. Williams's Cook County email account.

10. While Ms. Williams was employed by the CCSO, she was assigned and used the email address karyn.williams@cookcountyil.gov.

11. The Cook County Bureau of Technology, at the request of the CCSO, executed a query of Ms. Williams's Cook County email account for all electronic communication from April 2017 through the present. This query was generated, in part, in response to litigation and document requests for communications concerning the fiscal year 2018 budget cycle.

12. During my review and analysis of Ms. Williams's emails, I identified numerous instances in which Ms. Williams sent the CCSO's confidential information and documents to the private email address karynklw@aol.com. Upon information and belief, this private email address belongs to and is controlled by Ms. Williams.

13. Based on the belief that Ms. Williams may have sent confidential information and documents to one or more private email addresses, the CCSO conducted multiple searches of electronically stored information from Ms. Williams's Cook County email account.

14. The following are examples of emails the CCSO believes Ms. Williams sent to her private email address without the permission of the CCSO. These documents are filed under seal because they contain sensitive confidential information of the CCSO. To the extent these documents contain attorney-client privileged information, they have been redacted and will be made available to the Court for *in-camera* inspection.

15. Attached is an email from Ms. Williams's CCSO email address to karynklw@aol.com on November 3, 2017. Email attached as Exhibit A, filed under seal. This email contains attorney-client privileged and deliberative work product concerning the Sheriff's Office budget and operational needs.

16. Attached is an email from Ms. Williams's CCSO email address to karynklw@aol.com on November 8, 2017. Email attached as Exhibit B. This email contains attorney-client privileged communication from the Sheriff's Legal Department and explicitly concerns ongoing litigation.

17. Attached is an email from Ms. Williams's CCSO email address to karynklw@aol.com on November 8, 2017. Email attached as Exhibit C. This email contains attorney-client privileged communication from the Sheriff's Legal Department explicitly containing legal advice and recommendations to the Department of Human Resources.

18. Attached is an email from Ms. Williams's CCSO email address to karynklw@aol.com on November 29, 2017. Email attached as Exhibit D. This email includes attorney-client privileged communication with the CCSO Legal Department related to personnel matters that I understand resulted in litigation, wherein Dana Kurtz is counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

FURTHER DECLARENT SAYETH NOT

Dated this 6 day of July 2018.

Elizabeth Scannell

# EXHIBIT A
# FILED UNDER SEAL

**From:** Karyn Williams (Sheriff) <(Sheriff)>
**Sent:** 11/8/2017 6:00:54 PM
**To:** karynklw@aol.com
**Cc:**
**Subject:** FW: All Hands on Deck Litigation Request

---

**From:** Karyn Williams (Sheriff)
**Sent:** Wednesday, November 8, 2017 1:58 PM
**To:** Katherine Christy (Sheriff); Adriana Morales (Sheriff)
**Cc:** Patricia Horne (Sheriff); Rebecca Reierson (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** RE: All Hands on Deck Litigation Request

[redacted]

---

**From:** Katherine Christy (Sheriff)
**Sent:** Wednesday, November 8, 2017 12:36 PM
**To:** Adriana Morales (Sheriff)
**Cc:** Patricia Horne (Sheriff); Karyn Williams (Sheriff); Rebecca Reierson (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** RE: All Hands on Deck Litigation Request

[redacted]

---

**From:** Adriana Morales (Sheriff)
**Sent:** Wednesday, November 8, 2017 12:21 PM
**To:** Katherine Christy (Sheriff)
**Cc:** Patricia Horne (Sheriff); Karyn Williams (Sheriff); Rebecca Reierson (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** Re: All Hands on Deck Litigation Request

[redacted]

Adriana Morales
Executive Director
Cook County Sheriff's Office
Court Services
773-674-3082
Adriana.morales@cookcountyil.gov

On Nov 8, 2017, at 11:23 AM, Katherine Christy (Sheriff) <Katherine.Christy@cookcountyil.gov> wrote:

> [redacted]
>
> [redacted]
>
> Kate Christy
> (312) 603-5094

**Exhibit B**

**From:** Karyn Williams (Sheriff) <(Sheriff)>
**Sent:** 11/8/2017 5:58:49 PM
**To:** karynklw@aol.com
**Cc:**
**Subject:** FW: Exempt employees

---

**From:** Karyn Williams (Sheriff)
**Sent:** Tuesday, November 7, 2017 6:34 PM
**To:** Katherine Christy (Sheriff)
**Subject:** RE: Exempt employees

[redacted]

Sent from my Verizon 4G LTE smartphone

-------- Original message --------
From: "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
Date: 11/7/17 5:08 PM (GMT-06:00)
To: "Elli Montgomery (Sheriff)" <Elli.Montgomery@cookcountyil.gov>, "Jane Gubser (Sheriff)" <Jane.Gubser@cookcountyil.gov>, "Elizabeth A Scannell (Sheriff)" <Elizabeth.Scannell@cookcountyil.gov>, "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
Cc: "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>
Subject: RE: Exempt employees

[redacted]

---

**From:** Elli Montgomery (Sheriff)
**Sent:** Tuesday, November 7, 2017 5:06 PM
**To:** Katherine Christy (Sheriff); Jane Gubser (Sheriff); Elizabeth A Scannell (Sheriff); Karyn Williams (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff)
**Subject:** Re: Exempt employees

[redacted]

Elli Petacque Montgomery LCSW, MS
Director of Mental Health Advocacy
Office of the Sheriff, Cook County Department of Corrections
773-674-4825

---

**From:** Katherine Christy (Sheriff)
**Sent:** Tuesday, November 7, 2017 4:50:15 PM
**To:** Elli Montgomery (Sheriff); Jane Gubser (Sheriff); Elizabeth A Scannell (Sheriff); Karyn Williams (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff)
**Subject:** RE: Exempt employees

[redacted]

Thanks,
Kate
Assistant General Counsel
(312) 603-5094
(312) 282-2713 (cell)

**Exhibit C**

**From:** Elli Montgomery (Sheriff)
**Sent:** Tuesday, November 7, 2017 4:46 PM
**To:** Jane Gubser (Sheriff); Katherine Christy (Sheriff); Elizabeth A Scannell (Sheriff); Karyn Williams (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff)
**Subject:** Re: Exempt employees

[redacted]

Elli Petacque Montgomery LCSW, MS
Director of Mental Health Advocacy
Office of the Sheriff, Cook County Department of Corrections
773-674-4825

---

**From:** Jane Gubser (Sheriff)
**Sent:** Tuesday, November 7, 2017 12:44:35 PM
**To:** Katherine Christy (Sheriff); Elli Montgomery (Sheriff); Elizabeth A Scannell (Sheriff); Karyn Williams (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff)
**Subject:** Re: Exempt employees

[redacted]

Jane Gubser, Psy.D.
Chief of Programs
Cook County Sheriff's Office
Department of Corrections
773.674.3568
312.718.9741

---

**From:** Katherine Christy (Sheriff)
**Sent:** Tuesday, November 7, 2017 12:26:13 PM
**To:** Elli Montgomery (Sheriff); Elizabeth A Scannell (Sheriff); Karyn Williams (Sheriff)
**Cc:** Jane Gubser (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** RE: Exempt employees

[redacted]

---

**From:** Elli Montgomery (Sheriff)
**Sent:** Tuesday, November 7, 2017 12:20 PM
**To:** Elizabeth A Scannell (Sheriff); Karyn Williams (Sheriff); Katherine Christy (Sheriff)
**Cc:** Jane Gubser (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** Re: Exempt employees

[redacted]

Elli Petacque Montgomery LCSW, MS
Director of Mental Health Advocacy
Office of the Sheriff, Cook County Department of Corrections
773-674-4825

---

**From:** Elizabeth A Scannell (Sheriff)
**Sent:** Tuesday, November 7, 2017 11:37:31 AM

**To:** Elli Montgomery (Sheriff); Karyn Williams (Sheriff); Katherine Christy (Sheriff)
**Cc:** Jane Gubser (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** RE: Exempt employees

[redacted]

**Beth Scannell**
**Assistant General Counsel**
Cook County Sheriff's Office
50 W. Washington, Room 704
Chicago, Illinois 60602
Phone: 312.603.3979

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney-client and/or work product privileges. If you are not the intended recipient of this message or if this message has been addressed to you in error, please alert the sender immediately by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments. Thank you.

---

**From:** Elli Montgomery (Sheriff)
**Sent:** Tuesday, November 7, 2017 11:30 AM
**To:** Karyn Williams (Sheriff); Elizabeth A Scannell (Sheriff)
**Cc:** Jane Gubser (Sheriff)
**Subject:** Exempt employees

[redacted]

Elli Petacque Montgomery LCSW, MS
Director of Mental Health Advocacy
Office of the Sheriff, Cook County Department of Corrections
773-674-4825

**From:** Karyn Williams (Sheriff) <(Sheriff)>
**Sent:** 11/29/2017 6:08:24 PM
**To:** karynklw@aol.com
**Cc:**
**Subject:** Fwd: Update on Deputy Lieutenants
**Attachments:** image001.png

---

Sent from my Verizon 4G LTE smartphone

-------- Original message --------
From: "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
Date: 11/29/17 5:06 PM (GMT-06:00)
To: "Helen Burke (Sheriff)" <Helen.Burke@cookcountyil.gov>, "Thomas Nelligan (Sheriff)" <Thomas.Nelligan@cookcountyil.gov>, "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>, "Zelda Whittler (Sheriff)" <Zelda.Whittler@cookcountyil.gov>, "Dana Wright (Sheriff)" <Dana.Wright@cookcountyil.gov>
Subject: Fwd: Update on Deputy Lieutenants

[redacted]

Sent from my Verizon 4G LTE smartphone

-------- Original message --------
From: "Shelitha Beacham (Sheriff)" <Shelitha.Beacham@cookcountyil.gov>
Date: 11/29/17 5:01 PM (GMT-06:00)
To: "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
Cc: "Michele Morris (Sheriff)" <Michele.Morris@cookcountyil.gov>
Subject: Update on Deputy Lieutenants

[redacted]

[redacted]

Thanks,

Shelitha Beacham

**Exhibit D**

Director, Bureau of Human Resources

Cook County Sheriff's Office

South Campus - (773) 674-8170

3026 S. California Ave, Office 104

Chicago, Illinois 60608

*Life is 10% what life does to you, and 90% how you choose to respond to it. Whatâ€™s your response going to be? Thatâ€™s all about the work of life.*

Cook County SHERIFF THOMAS J DART

The contents of this email message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and its attachments. Do not deliver, distribute, copy or save this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

**From:** Karyn Williams (Sheriff) <(Sheriff)>
**Sent:** 11/29/2017 7:28:18 PM
**To:** karynklw@aol.com
**Cc:**
**Subject:** Fwd: Update on Deputy Lieutenants
**Attachments:** image001.png

---

Sent from my Verizon 4G LTE smartphone

-------- Original message --------
From: "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>
Date: 11/29/17 5:27 PM (GMT-06:00)
To: "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
Cc: "Helen Burke (Sheriff)" <Helen.Burke@cookcountyil.gov>, "Thomas Nelligan (Sheriff)" <Thomas.Nelligan@cookcountyil.gov>, "Zelda Whittler (Sheriff)" <Zelda.Whittler@cookcountyil.gov>, "Dana Wright (Sheriff)" <Dana.Wright@cookcountyil.gov>
Subject: Re: Update on Deputy Lieutenants

[redacted]

Sent from my iPhone

On Nov 29, 2017, at 5:06 PM, Karyn Williams (Sheriff) <Karyn.Williams@cookcountyil.gov> wrote:

> [redacted]
>
> Sent from my Verizon 4G LTE smartphone
>
> -------- Original message --------
> From: "Shelitha Beacham (Sheriff)" <Shelitha.Beacham@cookcountyil.gov>
> Date: 11/29/17 5:01 PM (GMT-06:00)
> To: "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
> Cc: "Michele Morris (Sheriff)" <Michele.Morris@cookcountyil.gov>
> Subject: Update on Deputy Lieutenants
>
> [redacted]
>
> [redacted]

[redacted]

Thanks,

Shelitha Beacham

Director, Bureau of Human Resources

Cook County Sheriff's Office

South Campus - (773) 674-8170

3026 S. California Ave, Office 104

Chicago, Illinois 60608

*Life is 10% what life does to you, and 90% how you choose to respond to it. Whatâ€™s your response going to be? Thatâ€™s all about the work of life.*

Cook County SHERIFF THOMAS J DART

The contents of this email message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and its attachments. Do not deliver, distribute, copy or save this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

# EXHIBIT 2

**Non-Disclosure and Confidentiality Agreement**

As an employee of the Cook County Sheriff's Office, I may have access to and become acquainted with information of a confidential nature including but not limited to personnel, law enforcement and/or corrections information, proprietary information or information related to legal actions. Such information may include (but not be limited to) information acquired from the Sheriff of Cook County, the Sheriff's Executive Office, Legal Affairs Department, Personnel Department, Office of Professional Review, the Sheriff's employees and agents, former employees and any and all documents and information reviewed, received, obtained or generated as a result of my employment ("Confidential Information"). As a condition of my employment, I agree that I will not disclose any of the aforesaid Confidential Information, directly or indirectly, or use or copy such information in any manner either during the term of my employment or at any time thereafter except as required in the course of my employment. I further agree that work-related, confidential information may be handled, viewed and/or discussed only with those Cook County Sheriff's Office employees who have been authorized, as part of their work responsibilities, to handle, view and/or discuss such information. In addition, I agree this work-related, confidential information should not be discussed in open areas such as elevators, hallways, lobbies or any other open forum where unauthorized persons may be present. No information about any current or past employee of the Sheriff's Office may be verbally communicated to any person via telephone without authorization. I understand that all requests for information regarding current or former Sheriff's Office employees, including but not limited to, employment verifications, must be received in writing and may be responded to only by those Sheriff's Office employees given authorization to provide such information. If I obtain confidential information beyond my normal work responsibilities or become aware that such confidential information is being improperly released, I agree to immediately notify the Sheriff's Department of Labor Affairs. Finally, all documents, including but not limited to files, records, reports, correspondence, memos and the like, relating to my employment, whether prepared by me or which may otherwise come into my possession shall become the exclusive property of the Cook County Sheriff's Office and immediately must be returned to the Cook County Sheriff's Office at the request of the Cook County Sheriff of the Cook County Sheriff's Legal Affairs Department and/or upon the termination of my employment. In the event I receive a request for this information either in a Freedom of Information Request or in another form, I agree to forward such request to the Cook County Sheriff's Office Legal Affairs Department, 50 W. Washington, Suite 704, Chicago, IL 60602.

Any violation of this Confidentiality Agreement may result in disciplinary action, up to and including termination.

I attest with my signature that I have read and understand this Confidentiality Agreement and acknowledge my responsibility to adhere to the terms of this Agreement. I further understand that if I violate this agreement, I may be disciplined up to and including termination.

Karyn C Williams
Acknowledgement (Print Name)

[signature]
Acknowledgement (Sign Name)

6-2-16
Date

**Exhibit 2**

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br>v.<br><br>COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 17-cv-2393<br><br>Hon. Rebecca R. Pallmeyer |

**DECLARATION OF KATHERINE CHRISTY**

I, Katherine Christy, pursuant to 28 U.S.C. § 1746, depose and state the following based on my personal and first-hand knowledge:

1. I am over 18 years of age and am employed as an Assistant General Counsel at the Cook County Sheriff's Office ("CCSO") with responsibility for employment matters.

2. I have been employed by the CCSO since July 25, 2016.

3. In my role as an attorney for the CCSO, I oversee employment litigation matters pending against CCSO and provide counsel and advice to CCSO departments concerning employment matters.

4. I am familiar with the facts and circumstances concerning John Nawara's claims in this case.

5. As numerous documents reflect, I have had repeated communications with Karyn Williams concerning Mr. Nawara's legal claims. Throughout the time that Ms. Williams was the Executive Director of the Department of Human Resources, I also had many conversations with



Exhibit 3

her about highly confidential employment matters, including legal aspects of Fitness for Duty examinations and other policy matters.

6. The Executive Director of Human Resources is the highest-ranking individual in the Department of Human Resources at the CCSO. As the Executive Director, Ms. Williams had responsibilities pertaining to the development of an array of policies, including those related to processing FFD referrals, and directing Human Resources employees on various aspects of processing FFD referrals.

7. The following are examples of attorney-client communications about the Nawara matter as well as issues related to this case that involved Ms. Williams in 2017 and 2018. (Because these are subject to the attorney-client communication privilege, these documents have been redacted. Full versions of these documents will be made available to the Court for *in-camera* inspection.)

8. On February 10, 2017, Karyn Williams was included on an attorney-client privileged email from Nicholas Scouffas, General Counsel to Sheriff Dart, regarding fitness for duty guidelines, an issue central to the present lawsuit. Redacted email attached as Exhibit A.

9. On April 3, 2017, Karyn Williams was included on an attorney-client privileged email from an Assistant General Counsel from the CCSO related to an EEOC charge filed Nawara in care of Kurtz Law Offices, Ltd. On the same day, Ms. Williams was also included in a series of attorney-client privileged emails regarding Nawara and directly related to the instant case. The redacted emails are attached as Exhibits B(1) and B(2) hereto.

10. On April 7, 2017, Karyn Williams was included on an attorney-client privileged email chain consisting of emails regarding Nawara directly relating to the instant case. Redacted emails attached as Exhibit C hereto.



**Exhibit 3**

11. On April 7, 2017 and April 10, 2017, Karyn Williams was included in, and provided responses to, an attorney-client privileged email chain consisting of emails regarding Nawara directly related to the instant case and with a subject line of "Request from Legal." Redacted emails attached as Exhibit D hereto.

12. On April 10, 2017, I sent an attorney-client privileged email to Karyn Williams regarding the Nawara matter, and including a demand email from Dana Kurtz related to Mr. Nawara's claims. Redacted emails attached as Exhibit E hereto.

13. Upon review of Karyn Williams's emails regarding the Nawara matter, the CCSO located an email from Ms. Williams on April 12, 2017 in which she referred to locating a John Nawara file as "High priority." Email attached as Exhibit F hereto.

14. On April 21, 2017, Karyn Williams initiated an attorney-client privileged email chain to me and Nicholas Scouffas, General Counsel to Sheriff Dart, regarding Fitness for Duty matters, an issue central to the present lawsuit, after Nurse Shelby asked Ms. Williams for advice about a "FFD Letter." Redacted emails attached as Exhibit G hereto.

15. On May 26, 2017, I included Karyn Williams on an attorney-client privileged email chain consisting of emails regarding Nawara directly related to the instant case. Redacted emails attached as Exhibit H hereto.

16. Upon review of Karyn Williams's emails regarding the Nawara matter, the CCSO located an email on August 18, 2017 in which Defendant Winifred Shelby forwarded to Karyn Williams an attorney-client privileged email regarding the Nawara Complaint approximately three minutes after Ms. Shelby received it. Redacted emails attached as Exhibit I hereto.



**Exhibit 3**

17. On August 23, 2017, I included Karyn Williams on an attorney-client privileged email regarding Nawara directly related to the instant case, to which Ms. Williams responded. Redacted emails attached as Exhibit J hereto.

18. On December 18, 2017, Karyn Williams was included on attorney-client privileged emails regarding Nawara directly related to the instant case. Redacted emails attached as Exhibit K hereto.

I declare under penalty of perjury that the foregoing is true and correct.

FURTHER DECLARENT SAYETH NOT

Dated this 6th day of July 2018.

Katherine Christy



Exhibit 3

**From:** Nicholas Scouffas (Sheriff) <Nicholas.Scouffas@cookcountyil.gov>
**Sent:** Friday, February 10, 2017 9:00 PM
**To:** Karyn Williams (Sheriff); Rebecca Reierson (Sheriff)
**Cc:** Elisabeth Glick (Sheriff); Katherine Christy (Sheriff); Jennifer Black (Sheriff)
**Subject:** Fitnss for Duty Guidelines for Department Heads and Supervisors
**Attachments:** FFD Management Guidelines_Final Draft 2.10.17.pdf; FFD Management Guidelines_Final Draft 2.10.17.docx

Karyn and Beca,

[redacted]

Nicholas Scouffas
General Counsel
Cook County Sheriff's Office
50 W. Washington, 7th Floor
Chicago IL 60602
312-603-8856 (office)
312-550-4153 (cell)
nicholas.scouffas@cookcountyil.gov

---

From: Nicholas Scouffas (Sheriff)
Sent: Friday, February 10, 2017 3:02 PM
To: Nicholas Scouffas (Sheriff)
Subject:

Nicholas Scouffas
General Counsel
Cook County Sheriff's Office
50 W. Washington, 7th Floor
Chicago IL 60602



Exhibit A

312-603-8856 (office)
312-550-4153 (cell)
nicholas.scouffas@cookcountyil.gov

| | |
|---|---|
| **From:** | "Thomas Nelligan (Sheriff)" <Thomas.Nelligan@cookcountyil.gov> |
| **To:** | "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov> |
| **CC:** | "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov> |
| **Subject:** | New EEOC Charge - Privileged and Confidential |
| **Date:** | 2017-04-03 09:45:33 -0500 |
| **Attachments:** | 440-2017-02814._NAWARA.pdf |

[redacted]

Thomas Nelligan
Assistant General Counsel
Office of the Sheriff of Cook County
thomas.nelligan@cookcountyil.gov
Phone: 312-603-6455

ATTORNEY/CLIENT PRIVILEGE E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney-client and/or work product privileges. If you are not the intended recipient of this message or if this message has been addressed to you in error, please alert the sender immediately by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments. Thank you.

**Exhibit B(1)**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Statement on reverse before completing this form

ENTER CHARGE NUMBER
☐ IDHR
x EEOC 440-2017-02814

EEOC and ILLINOIS DEPARTMENT OF HUMAN RIGHTS
*(State or local Agency, if any)*

| NAME *(Indicated Mr., Ms., or Mrs.)* | | HOME TELEPHONE NO. *(Include Area Code)* |
|---|---|---|
| JOHN NAWARA | | 630-323-9444 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| c/o Kurtz Law Offices, Ltd., 32 Blaine Street | Hinsdale Illinois 60521 | DuPage |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NO. EMPLOYEES/MEMBERS | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| COOK COUNTY SHERIFF'S OFFICE | Over 500 | (312)603-6450 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | |
| 50 W. Washington, Chicago, IL 60602 | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*
☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ AGE X RETALIATION X DISABILITY ☐ OTHER *(Specify)*

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE *(Month, day, year)*

THE PARTICULARS ARE *(If additional space is needed, attached extra sheet(s))*

See attached particulars.

RECEIVED EEOC
MAR 24 2017
CHICAGO DISTRICT OFFICE

☐ I also want this charge filed with the EEOC.
I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

I declare under penalty of perjury that the foregoing is true and correct.

March 22, 2017 — John A. Nawara
Date — Charging Party *(Signature)*

SIGNATURE OF COMPLAINANT
John A. Nawara

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)
3/22/17 Karen L. Moreno

Official Seal
Karen L Moreno
Notary Public State of Illinois
My Commission Expires 10/04/2017

*Nawara v. CCSO*

THE PARTICULARS ARE:

1. Within the last 300 days, Respondent has discriminated against me in violation of the American with Disabilities Act, 42 U.S.C. § 12112(d)(4)(A).

2. I am male.

3. I was hired by Respondent on September 28, 1998. From approximately 2002 to 2007, I was a member of the Special Operations Response Team, which was a highly elite unit in the jail. For the last 5 years I have had an excellent attendance record and have not called in sick. I have satisfactorily performed my duties without incident. In fact, I have met and exceeded my direct supervisors' expectations.

4. On September 28, 2016, I was assigned to the basement of Cermak Hospital to monitor detainees. A fight broke out between two inmates. I and two other officers were able to break up the fight without incident. We contacted a supervisor per protocol and advised them of the situation. Superintendent Jones-Hayes (female), in a very insulting, provoking and demeaning manner, hit me in my chest with her finger several times. She also spoke to me in a condescending tone of voice. Nothing warranted her assault and battery of hitting me in the chest with her finger several times. She again hit me in the chest with her finger several times, at which time I took a step back, feeling trapped, and told her keep her hands off of me, and that it was very unprofessional. Superintendent Jones-Hayes acknowledged that she had offended me. Jones-Hayes also disparaged me in front of detainees. I complained about her conduct to the other employees, including the sergeant that was present.

5. The next day, I was transferred to external operations away from my regular assignment with no explanation.

6. On October 13, 2016, I filed a formal complaint with my supervisor regarding Jones-Hayes' harassment and assault and battery of me.

7. On November 18, 2016, Respondent ordered me to appear to Human Resources. Ms. Shelby and Ms. Reierson met with me. They asked me if I had threatened another employee; I responded: "no," as I had not threatened any employee. I was not provided with any complaint or any indication that anyone had complained about me. Moreover, I was told that this was not an O.P.R. (Office of Professional Review) review, which is the division that investigates officer misconduct.

8. Respondent, through the above HR representatives, directed me to sign blank HIPPA release forms for my medical records, which I refused because I reasonably believe that it is a violation of the ADA.

THE PARTICULARS ARE (continued):

9. Respondent told me that I could not return to work until I signed the HIPPA forms, which I believed was and is an unlawful request.

10. As a result, I have been forced to use my benefit time that is "on the books," *i.e.*, medical/sick, personal, compensation, holidays, and vacation. I have also been threatened with disciplinary action and that charges may be brought seeking my termination. I have been denied special assignments, transfers to more desirable units, and training, as well as promotional opportunities as a result of Respondent's unlawful order for me to sign blank HIPPA release forms for my medical records.

11. The Americans with Disabilities Act specifically prohibits employers from "require[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability". 42 U.S.C. § 12112(d)(4)(A).

12. Respondent cannot show that the medical inquiry at issue is vital to its business and is narrowly formulated to prevent unnecessary intrusion into my medical information. Respondent has not disclosed to me any asserted purpose, and cannot show that the medical inquiry serves any asserted purpose. The request is also in violation of my privacy rights and unlawful.

13. The respondent has violated the ADA.

14. The Respondent also retaliated against me in violation of Title VII for engaging in protected activity after I complained about harassment (assault and battery) by my supervisor (female).

**From:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
**To:** "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
**CC:** "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>, "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>
**Subject:** FW: Fitness for Duty - Ofc. J. Nawara
**Date:** 2017-04-03 10:46:34 -0500
**Attachments:** Fitness_for_Duty_-_Ofc._J._Nawara_Sept._2016.pdf

---

[redacted]

---

**From:** Matthew Burke (Sheriff)
**Sent:** Monday, April 03, 2017 10:21 AM
**To:** Katherine Christy (Sheriff)
**Subject:** Fw: Fitness for Duty - Ofc. J. Nawara

[redacted]

Matt Burke
Chief of Staff
Cook County Department of Corrections
773-674-7921 (ph)

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

---

**From:** Mary McQuillan (Sheriff)
**Sent:** Thursday, September 29, 2016 4:11 PM
**To:** Karyn Williams (Sheriff)
**Cc:** Nneka Jones Tapia (Sheriff); Tarry Williams (Sheriff); Matthew Burke (Sheriff)
**Subject:** Fitness for Duty - Ofc. J. Nawara

Karyn,

Attached, please find a request for a Fitness for Duty Evaluation for Ofc. John Nawara, JDE#378032, Cermak 7-3/7. Please be aware that Ofc. Nawara is being transferred to External Operations, 6-2/7, per Article U SEAM, effective Sunday, 10/02/16.

Thank you,

Mary B. McQuillan
Executive Assistant to the Executive Director
Cook County Department of Corrections
Office (773) 674-4465
Mary.McQuillan@cookcountyil.gov

*COOK COUNTY DEPARTMENT OF CORRECTIONS*
*MEMORANDUM*

| | | |
|---|---|---|
| **TO:** | **Karyn Williams, Executive Director**<br>Bureau of Human Resources | **DATE:** 09/29/16 |
| **FROM:** | Matthew Burke, Chief of Staff | |
| **SUBJECT:** | **Fitness for Duty** | |

Pursuant to the attached documentation, I am requesting that Ofc. John Nawara, JDE#378032, Cermak, 7-3 Shift Detail 7, be evaluated for fitness for duty.

C: Nneka Jones Tapia, Executive Director
Tarry Williams, DOC Chief of Operations

I certify, that no political reasons or factors were considered in any decision I made or action I took relating to this employment action. Further, I do not know of, or have any reason to believe that, anyone else considered or took action based on political reasons or factors with respect to this employment action.

**SIGNATURE**

**Dawn Ertler (Sheriff)**

| | |
|---|---|
| **From:** | Karen Jones-Hayes (Sheriff) |
| **Sent:** | Thursday, September 29, 2016 2:59 PM |
| **To:** | Dawn Ertler (Sheriff) |
| **Subject:** | Incident with Officer Nawara, John |

Hi Dawn,

I just wanted to touch on the incident that occurred on yesterday with myself and Officer John Nawara. On a daily basis I walk this unit engaging and talking with detainees and staff alike however, yesterday was an eye opening moment. Officer Nawara exuded such rage in his demeanor as I gave him a job related directive, that I felt it was important I inform all my superiors in the event of any future issues.

***Superintendent Karen Jones-Hayes***
***Cook County Department of Corrections- Cermak***
***2650 South California Ave. Chicago, Illinois 60608***
***Office: 773-674-3813***
***Email: Karen.Jones-Hayes@cookcountyil.gov***

**This transmission may contain confidential or privileged information, intended only for use by the individual or entity to which the transmission is addressed. If you are not the intended recipient, you are hereby notified that any disclosure, dissemination, copying or distribution of this transmission is strictly prohibited. Please treat this and all other documents from the Cook County Sheriff's Department as LAW ENFORCEMENT SENSITIVE / FOR OFFICIAL USE ONLY. Further distribution of this document is restricted to law enforcement agencies, intelligence agencies and Department of Defense organizations only, unless prior approval of the Cook County Sheriff's Department has been obtained. Keep in mind that this document, or any segment thereof, may not be released to any media sources. Do not disseminate, which includes forwarding the contents of this message, without the approval of the sender.**

**From:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
**To:** "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
**CC:** "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>, "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>
**Subject:** RE: Fitness for Duty - Ofc. J. Nawara - Privileged and Confidential
**Date:** 2017-04-03 13:29:57 -0500
**Importance:** high

---

Ladies

[redacted]

Thanks

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Katherine Christy (Sheriff)
**Sent:** Monday, April 03, 2017 10:47 AM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** FW: Fitness for Duty - Ofc. J. Nawara

[redacted]

---

**From:** Matthew Burke (Sheriff)
**Sent:** Monday, April 03, 2017 10:21 AM
**To:** Katherine Christy (Sheriff)
**Subject:** Fw: Fitness for Duty - Ofc. J. Nawara

[redacted]

Matt Burke
Chief of Staff
Cook County Department of Corrections
773-674-7921 (ph)

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

---

**From:** Mary McQuillan (Sheriff)
**Sent:** Thursday, September 29, 2016 4:11 PM
**To:** Karyn Williams (Sheriff)
**Cc:** Nneka Jones Tapia (Sheriff); Tarry Williams (Sheriff); Matthew Burke (Sheriff)
**Subject:** Fitness for Duty - Ofc. J. Nawara

Karyn,

Attached, please find a request for a Fitness for Duty Evaluation for Ofc. John Nawara, JDE#378032, Cermak 7-3/7. Please be aware that Ofc. Nawara is being transferred to External Operations, 6-2/7, per Article U SEAM, effective Sunday, 10/02/16.

Thank you,

Mary B. McQuillan
Executive Assistant to the Executive Director
Cook County Department of Corrections
Office (773) 674-4465
Mary.McQuillan@cookcountyil.gov

**Exhibit B(2)**

**From:** "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
**To:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
**CC:** "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>, "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>
**Subject:** RE: Fitness for Duty - Ofc. J. Nawara - Privileged and Confidential
**Date:** 2017-04-03 13:48:40 -0500
**Embedded:** unnamed

---

[redacted]

---

**From:** Katherine Christy (Sheriff)
**Sent:** Monday, April 03, 2017 1:30 PM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** RE: Fitness for Duty - Ofc. J. Nawara - Privileged and Confidential
**Importance:** High

Ladies

[redacted]

Thanks

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Katherine Christy (Sheriff)
**Sent:** Monday, April 03, 2017 10:47 AM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** FW: Fitness for Duty - Ofc. J. Nawara

[redacted]

---

**From:** Matthew Burke (Sheriff)
**Sent:** Monday, April 03, 2017 10:21 AM
**To:** Katherine Christy (Sheriff)
**Subject:** Fw: Fitness for Duty - Ofc. J. Nawara

[redacted]

Matt Burke
Chief of Staff
Cook County Department of Corrections
773-674-7921 (ph)

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

---

**From:** Mary McQuillan (Sheriff)
**Sent:** Thursday, September 29, 2016 4:11 PM
**To:** Karyn Williams (Sheriff)
**Cc:** Nneka Jones Tapia (Sheriff); Tarry Williams (Sheriff); Matthew Burke (Sheriff)
**Subject:** Fitness for Duty - Ofc. J. Nawara

Karyn,

Attached, please find a request for a Fitness for Duty Evaluation for Ofc. John Nawara, JDE#378032, Cermak 7-3/7. Please be aware that Ofc. Nawara is being transferred to External Operations, 6-2/7, per Article U SEAM, effective Sunday, 10/02/16.

Thank you,

Mary B. McQuillan
Executive Assistant to the Executive Director
Cook County Department of Corrections
Office (773) 674-4465
Mary.McQuillan@cookcountyil.gov

**From:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
**To:** "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
**CC:** "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>, "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>
**Subject:** Re: Fitness for Duty - Ofc. J. Nawara - Privileged and Confidential
**Date:** 2017-04-03 14:00:17 -0500

---

[redacted]

Get Outlook for iOS

---

**From:** Rebecca Reierson (Sheriff)
**Sent:** Monday, April 3, 2017 1:48:40 PM
**To:** Katherine Christy (Sheriff)
**Cc:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** RE: Fitness for Duty - Ofc. J. Nawara - Privileged and Confidential

[redacted]

---

**From:** Katherine Christy (Sheriff)
**Sent:** Monday, April 03, 2017 1:30 PM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** RE: Fitness for Duty - Ofc. J. Nawara - Privileged and Confidential
**Importance:** High

Ladies

[redacted]

Thanks

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Katherine Christy (Sheriff)
**Sent:** Monday, April 03, 2017 10:47 AM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** FW: Fitness for Duty - Ofc. J. Nawara

[redacted]

---

**From:** Matthew Burke (Sheriff)
**Sent:** Monday, April 03, 2017 10:21 AM
**To:** Katherine Christy (Sheriff)
**Subject:** Fw: Fitness for Duty - Ofc. J. Nawara

[redacted]

Matt Burke
Chief of Staff
Cook County Department of Corrections
773-674-7921 (ph)

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

---

**From:** Mary McQuillan (Sheriff)
**Sent:** Thursday, September 29, 2016 4:11 PM
**To:** Karyn Williams (Sheriff)
**Cc:** Nneka Jones Tapia (Sheriff); Tarry Williams (Sheriff); Matthew Burke (Sheriff)
**Subject:** Fitness for Duty - Ofc. J. Nawara

Karyn,

Attached, please find a request for aFitness for Duty Evaluation for Ofc. John Nawara, JDE#378032, Cermak 7-3/7. Please be aware that Ofc. Nawara is being transferred to External Operations, 6-2/7, per Article U SEAM, effective Sunday, 10/02/16.

Thank you,

Mary B. McQuillan
Executive Assistant to the Executive Director
Cook County Department of Corrections
Office (773) 674-4465
Mary.McQuillan@cookcountyil.gov

**From:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
**To:** "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
**CC:** "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>, "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>, "KEVIN FREY (States Attorney)" <kevin.frey@cookcountyil.gov>
**Subject:** RE: TRO - NAWARA
**Date:** 2017-04-07 14:44:49 -0500

---

[redacted]

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Rebecca Reierson (Sheriff)
**Sent:** Friday, April 07, 2017 2:44 PM
**To:** Katherine Christy (Sheriff)
**Cc:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff); KEVIN FREY (States Attorney)
**Subject:** RE: TRO - NAWARA

[redacted]

---

**From:** Katherine Christy (Sheriff)
**Sent:** Friday, April 07, 2017 2:40 PM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff); KEVIN FREY (States Attorney)
**Subject:** TRO - NAWARA
**Importance:** High

[redacted]

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

**Exhibit C**

**From:** "Karyn Williams (Sheriff)" <MAILER-DAEMON>
**To:** Winifred Shelby (Sheriff);Rebecca Reierson (Sheriff)
**Subject:** RE: Request from Legal
**Date:** 2017-04-10 12:59:36 -0500

---

Thank you.

---

**From:** Winifred Shelby (Sheriff)
**Sent:** Monday, April 10, 2017 12:48 PM
**To:** Karyn Williams (Sheriff); Rebecca Reierson (Sheriff)
**Subject:** RE: Request from Legal

The agency has confirmed RN coverage for us on Wednesday.

Thanks!

Winifred Shelby, RN, CCM
Occupational Health Specialist
Cook County Sheriff's Office
3026 S. California, Building 2
Chicago, Illinois, 60608
Office (773) 674-8535
Fax (773) 674-8212
winifre d.shelby@ cookcountyil.gov

**Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete the original message and destroy all copies.

---

**From:** Winifred Shelby (Sheriff)
**Sent:** Monday, April 10, 2017 10:23 AM
**To:** Karyn Williams (Sheriff); Rebecca Reierson (Sheriff)
**Subject:** RE: Request from Legal

Okay, I will let you know when I get a response back from the agency.

Thanks!

Winifred Shelby, RN, CCM
Occupational Health Specialist
Cook County Sheriff's Office
3026 S. California, Building 2
Chicago, Illinois, 60608
Office (773) 674-8535
Fax (773) 674-8212
winifred.shelby@ cookcountyil.gov

**Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete the original message and destroy all copies.

---

**From:** Karyn Williams (Sheriff)
**Sent:** Monday, April 10, 2017 10:16 AM
**To:** Winifred Shelby (Sheriff); Rebecca Reierson (Sheriff)
**Subject:** RE: Request from Legal

[redacted]

---

**From:** Winifred Shelby (Sheriff)
**Sent:** Monday, April 10, 2017 10:03 AM
**To:** Karyn Williams (Sheriff); Rebecca Reierson (Sheriff)
**Subject:** RE: Request from Legal

[redacted]

**Exhibit D**

Thanks!

Winifred Shelby, RN, CCM
Occupational Health Specialist
Cook County Sheriff's Office
3026 S. California, Building 2
Chicago, Illinois, 60608
Office (773) 674-8535
Fax (773) 674-8212
winifred.shelby@cookcountyil.gov

**Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete the original message and destroy all copies.

---

**From:** Karyn Williams (Sheriff)
**Sent:** Friday, April 07, 2017 4:03 PM
**To:** Winifred Shelby (Sheriff); Rebecca Reierson (Sheriff)
**Subject:** FW: Request from Legal

Winifred,
Please keep Rebecca and I in the loop. If you feel uncomfortable, at any time, regarding requests from the attorney, please me know. Thanks

---

**From:** Katherine Christy (Sheriff)
**Sent:** Friday, April 7, 2017 3:13 PM
**To:** KEVIN FREY (States Attorney); Winifred Shelby (Sheriff)
**Cc:** Karyn Williams (Sheriff); Rebecca Reierson (Sheriff)
**Subject:** RE: Request from Legal

[redacted]

---

**From:** KEVIN FREY (States Attorney)
**Sent:** Friday, April 07, 2017 3:13 PM
**To:** Winifred Shelby (Sheriff); Katherine Christy (Sheriff)
**Cc:** Karyn Williams (Sheriff); Rebecca Reierson (Sheriff)
**Subject:** RE: Request from Legal

[redacted]

Assistant State's Attorney Kevin Frey
Deputy Supervisor, Labor and Employment Section
500 Richard J. Daley Center
50 West Washington
Chicago, Illinois 60602
(312) 603-3362
Fax: (312) 603-3000

---

**From:** Winifred Shelby (Sheriff)
**Sent:** Friday, April 07, 2017 3:12 PM
**To:** Katherine Christy (Sheriff)
**Cc:** Karyn Williams (Sheriff); Rebecca Reierson (Sheriff); KEVIN FREY (States Attorney)
**Subject:** RE: Request from Legal

[redacted]

Thanks!

Winifred Shelby, RN, CCM
Occupational Health Specialist
Cook County Sheriff's Office
3026 S. California, Building 2
Chicago, Illinois, 60608
Office (773) 674-8535
Fax (773) 674-8212
winifred.shelby@cookcountyil.gov

**Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please

contact the sender by reply email and delete the original message and destroy all copies.

---

**From:** Katherine Christy (Sheriff)
**Sent:** Friday, April 07, 2017 3:01 PM
**To:** Winifred Shelby (Sheriff)
**Cc:** Karyn Williams (Sheriff); Rebecca Reierson (Sheriff); KEVIN FREY (States Attorney)
**Subject:** Request from Legal
**Importance:** High

[redacted]

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

**From:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
**To:** "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
**Subject:** FW: John Nawara
**Date:** 2017-04-10 14:45:42 -0500
**Importance:** high
**Attachments:** HIPAA_Release_form_given_to_John_to_sign.pdf
**Inline-Images:** image002.png; image001.jpg

---

Karyn

[redacted]

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Rebecca Reierson (Sheriff)
**Sent:** Wednesday, December 21, 2016 5:15 PM
**To:** Katherine Christy (Sheriff); Nicholas Scouffas (Sheriff)
**Subject:** FW: John Nawara
**Importance:** High

---

**From:** Dana Kurtz [mailto:DKurtz@kurtzlaw.us]
**Sent:** Wednesday, December 21, 2016 2:49 PM
**To:** Rebecca Reierson (Sheriff); Winifred Shelby (Sheriff)
**Cc:** Peter.Kramer@cookcounty.gov
**Subject:** John Nawara
**Importance:** High

Ms. Reierson and Ms. Shelby,

I have been retained by John Nawara to represent him with respect to potential claims he has against the Sheriff's Office and other possible individual defendants.

I understand that you placed him on leave and ordered that he cannot return to work until he completes the attached HIPAA authorization form. On what legal basis or policy provision do you and the Sheriff's office have to order him to complete this form for his personal medical records? Officer Nawara (and I) believe that such an order is unlawful.

Officer Nawara has not been given any notification of any complaint or allegations against him. You also refused to provide him with any information other than he was being ordered to sign the HIPAA release form.

Further, Officer Nawara did file a harassment complaint against Superintendent Jones-Hayes as a result of an incident in which she put her hands on him and acted in a threatening and offensive manner.

As a result of the above actions taken against Officer Nawara and the unlawful order that he cannot return to work, he has been forced to use his vacation time. He has also lost out on advancement and training opportunities. We are requesting that he be immediately reinstatement and allowed to return to work, as well as his vacation and time that he has had to use be reinstated. We are also requesting that the Sheriff immediately send a notification to Superintendent Jones-Hayes to have no further contact with Officer Nawara and to cease and desist from the harassment against him.

I look forward to hearing from you before the close of business Friday, December 24, 2016.

Sincerely,

*Dana*

Dana L. Kurtz, Esq.

KURTZ LAW OFFICES, LTD

www.kurtzlaw.us
32 Blaine Street, Hinsdale, Illinois 60521

**Exhibit E**

Office: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us

RATED BY Super Lawyers
*Selected by Super Lawyers from 2013 – 2016*

**THIS IS A CONFIDENTIAL COMMUNICATION**: The preceding e-mail message contains information that is confidential. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender at 630.323.9444. Unauthorized use, dissemination, distribution or reproduction of this message is strictly prohibited.

*Making a difference in the lives of others, every way we can. Please visit and support www.lmsdr.org.*

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

# HIPAA AUTHORIZATION FOR DISCLOSURE OF PROTECTED HEALTH INFORMATION

I, ______________________________, authorize the Independent medical exam or fitness for duty exam physician to disclose protected health information ("PHI") about me as described below in this Authorization:

1. With this authorization, I allow all medical records and information to be released and reviewed that relates to my fitness for duty exam.

2. Any health care provider or facility who treats/treated me for my medical condition or medical illness ("Identified Health Care Providers") may disclose the above-described information to a Disability Management Case Manager, for Cook County, employed by CorVel Corporation.

3. This disclosure is made for the purposes of your fitness for duty examination as requested by your employer, Cook County.

4. I understand that the Identified Health Care Providers are not conditioning my treatment, payment, enrollment, or eligibility for benefits on whether I agree to sign this authorization.

5. I understand that the information disclosed pursuant to this authorization may no longer be protected by the federal health privacy rule (otherwise known as HIPAA) and may be subject to re-disclosure by the recipient.

6. I understand that I have the right to revoke this authorization in writing at any time by sending a letter to the Privacy Officer of the Identified Health Care Providers for my medical condition or medical illness as described above, and that the effective date of my revocation will be the date the Privacy Officer receives it. I further understand that any revocation will be effective only to the extent that Identified Health Care Providers has not already taken action in reliance on this authorization.

7. This authorization allows for the release of medical records produced as the result of treatment provided prior to the date of expiration of this authorization.

8. This Authorization shall expire one year from the date of my signature to this authorization, below.

______________________________ ______________________

Printed Name (of person giving authorization) Social Security Number

______________________________ ______________________

Signature of person giving authorization Date

Signed ______________________________

***(If applicable, Power of Attorney, Guardian or Conservator. Attach copy of document granting authority.)***

This document contains confidential information of a claimant and may not be disclosed or duplicated without the prior written consent of CorVel.

**From:** "Karyn Williams (Sheriff)" <MAILER-DAEMON>
**To:** Veronica Valentin (Sheriff);Deondre Rutues (Sheriff)
**Cc:** Willette Lindsey (Sheriff)
**Subject:** locate file-high priority
**Date:** 2017-04-12 11:43:46 -0500

---

Current employee-John Nawara

Please locate file and deliver to Willette. Let me know when you locate it. High priority. thanks

**Exhibit F**

**From:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
**To:** "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>, "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>
**CC:** "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
**Subject:** RE: confidential & privileged-The FFD Letter [redacted]
**Date:** 2017-04-21 14:20:51 -0500

---

[redacted]

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Karyn Williams (Sheriff)
**Sent:** Friday, April 21, 2017 1:52 PM
**To:** Katherine Christy (Sheriff); Nicholas Scouffas (Sheriff)
**Cc:** Rebecca Reierson (Sheriff)
**Subject:** RE: confidential & privileged-The FFD Letter [redacted]

[redacted]

---

**From:** Katherine Christy (Sheriff)
**Sent:** Friday, April 21, 2017 1:44 PM
**To:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff)
**Cc:** Rebecca Reierson (Sheriff)
**Subject:** RE: confidential & privileged-The FFD Letter [redacted]

[redacted]

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Katherine Christy (Sheriff)
**Sent:** Friday, April 21, 2017 1:43 PM
**To:** Karyn Williams (Sheriff); Nicholas Scouffas (Sheriff)
**Cc:** Rebecca Reierson (Sheriff)
**Subject:** RE: confidential & privileged-The FFD Letter [redacted]

[redacted]

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Karyn Williams (Sheriff)
**Sent:** Friday, April 21, 2017 1:41 PM
**To:** Nicholas Scouffas (Sheriff); Katherine Christy (Sheriff)
**Cc:** Rebecca Reierson (Sheriff); Winifred Shelby (Sheriff)
**Subject:** confidential & privileged-The FFD Letter [redacted]

[redacted]

---

**From:** Winifred Shelby (Sheriff)
**Sent:** Thursday, April 20, 2017 1:56 PM
**To:** Karyn Williams (Sheriff)
**Subject:** The FFD Letter

[redacted]

**Exhibit G**

Winifred Shelby, RN, CCM
Occupational Health Specialist
Cook County Sheriff's Office
3026 S. California, Building 2
Chicago, Illinois, 60608
Office (773) 674-8535
Fax (773) 674-8212
winifred.shelby@cookcountyil.gov

**Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete the original message and destroy all copies.

**From:** "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
**To:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
**CC:** "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>, "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
**Subject:** RE: nawara - privileged and confidential
**Date:** 2017-05-26 11:23:47 -0500

---

[redacted]

---

**From:** Katherine Christy (Sheriff)
**Sent:** Friday, May 26, 2017 11:23 AM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff); Karyn Williams (Sheriff)
**Subject:** Re: nawara - privileged and confidential
**Importance:** High

[redacted]

---

**From:** Katherine Christy (Sheriff)
**Sent:** Wednesday, May 24, 2017 2:44 PM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff)
**Subject:** RE: nawara - privileged and confidential

[redacted]

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Katherine Christy (Sheriff)
**Sent:** Friday, May 12, 2017 9:33 AM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff)
**Subject:** nawara - privileged and confidential

[redacted]

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

**Exhibit H**

**From:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
**To:** "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
**CC:** "Nicholas Scouffas (Sheriff)" <Nicholas.Scouffas@cookcountyil.gov>, "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
**Subject:** Re: nawara - privileged and confidential
**Date:** 2017-05-26 11:24:57 -0500

---

Thanks

---

**From:** Rebecca Reierson (Sheriff)
**Sent:** Friday, May 26, 2017 11:23 AM
**To:** Katherine Christy (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff); Karyn Williams (Sheriff)
**Subject:** RE: nawara - privileged and confidential

Sorry, yes.

---

**From:** Katherine Christy (Sheriff)
**Sent:** Friday, May 26, 2017 11:23 AM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff); Karyn Williams (Sheriff)
**Subject:** Re: nawara - privileged and confidential
**Importance:** High

Hi
We really need to hear from you on this. It is critical to our litigation. Did you make the referral? Thank you.

---

**From:** Katherine Christy (Sheriff)
**Sent:** Wednesday, May 24, 2017 2:44 PM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff)
**Subject:** RE: nawara - privileged and confidential

Hi Beka
Just verifying if you made the referral to OPR?

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

---

**From:** Katherine Christy (Sheriff)
**Sent:** Friday, May 12, 2017 9:33 AM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Nicholas Scouffas (Sheriff)
**Subject:** nawara - privileged and confidential

Hi Beka
I just left you a voicemail. Please call me with any questions.
Thanks

Katherine Christy
Assistant General Counsel
Cook County Sheriff's Office
50 W. Washington Street, #704
Chicago, IL 60602
(312) 603-5094

**From:** "Winifred Shelby (Sheriff)" <Winifred.Shelby@cookcountyil.gov>
**To:** "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>, "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
**Subject:** FW: Lawsuit Notification: Nawara v Cook County, et al 17-cv-02393
**Date:** 2017-08-18 09:02:54 -0500
**Attachments:** Representation_Agreement.pdf; Document_22_Nawara_6.23.17_Pl_First_Amended_Complaint.pdf

---

FYI

Winifred Shelby, RN, CCM
Occupational Health Specialist
Cook County Sheriff's Office
3026 S. California, Building 2
Chicago, Illinois, 60608
Office (773) 674-8535
Fax (773) 674-8212
winifred.shelby@cookcountyil.gov

**Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete the original message and destroy all copies.

---

**From:** Dawn D'amico (Sheriff)
**Sent:** Friday, August 18, 2017 9:00 AM
**To:** Winifred Shelby (Sheriff)
**Subject:** Lawsuit Notification: Nawara v Cook County, et al 17-cv-02393

[redacted]

**Dawn D'Amico**
**Executive Assistant**
**Cook County Sheriff's Office**
**Legal Department**
**50 W. Washington, #704**
**Chicago, IL 60602**
**(312) 603-3396**
**Fax (312) 603-4420**

**The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney-client and/or work product privileges. If you are not the intended recipient of this message or if this message has been addressed to you in error, please alert the sender immediately by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments. Thank you.**

**Exhibit I**

**OFFICE OF THE STATE'S ATTORNEY**
COOK COUNTY, ILLINOIS

Kimberly M. Foxx
State's Attorney

500 RICHARD J. DALEY CENTER
CHICAGO, ILLINOIS 60602
(312) 603-5440

Date:

[redacted]

[redacted]

Name Signature Date

CONTACT INFORMATION:

Email Address:

Home Phone:

Cell Phone:

Work Phone:

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF COOK, a unit of local Government; THOMAS DART, in his individual and official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities,<br><br>Defendants. | Case No. 1:17-cv-02393<br><br>Judge Rebecca R. Pallmeyer<br><br>Plaintiff Demands Trial By Jury |

**FIRST AMENDED COMPLAINT**

Plaintiff JOHN NAWARA, through his undersigned counsel, respectfully submits Plaintiff's First Amended Complaint against Defendants and states as follows:

**Nature of the Action**

1. Plaintiff JOHN NAWARA brings this action for violations of the American With Disabilities Act, 42 U.S.C. §§ 12101-12213 (2000) ("ADA") (Count I), violations of his civil rights under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988 (Count II), violations of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, as amended (Count III) and violations of the Illinois Whistleblower Act ("IWA") (740 ILCS § 174/15) (Count IV).

2. Plaintiff seeks injunctive relief because Defendants' actions have and continue to cause irreparable harm to Plaintiff.

3. Plaintiff also seeks declaratory, compensatory, and equitable relief.

**Jurisdiction and Venue**

4. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 29 U.S.C. § 626(c).

5. This Court has supplemental jurisdiction over Plaintiff's Illinois Whistleblower Act claim (Count IV) pursuant to 28 U.S.C.A. § 1367, as it is part of the same case or controversy as the federal claims.

6. Further, venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b) and (c), as Plaintiff and all Defendants either reside in this district or have their principle place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

**Administrative Proceedings**

7. On or about March 24, 2017, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA and retaliation. On June 2, 2017, Plaintiff filed an amended charge with the EEOC to include class allegations as to Defendants' violation of the ADA.

**Parties**

8. Plaintiff JOHN NAWARA ("Nawara") is a citizen of the United States who resides in Cook County, Illinois.

9. Plaintiff Nawara was hired by Cook County through the Sheriff's Office in on September 28, 1998. Plaintiff Nawara is currently an employee of the Sheriff's office.

10. From approximately 2002 to 2007, Plaintiff Nawara was a member of the Special Operations Response Team (SORT), which was a highly elite and specialized unit in the jail.

11. Plaintiff had an exemplary record with the Sheriff's Office and was selected to serve in the elite SORT Unit based on their record of superior job performance, which was above reproach.

12. At all relevant times, Plaintiff satisfactorily fulfilled his assigned duties.

13. For the last 5 years, Plaintiff Nawara has had an excellent attendance record and had not called in sick or used any medical time prior to being placed on unpaid leave as alleged herein.

14. Plaintiff Nawara satisfactorily performed his duties without incident.

15. Plaintiff Nawara has met his direct supervisors' expectations.

16. Plaintiff Nawara exceeded his supervisors' expectations.

17. Defendant COOK COUNTY is a municipality incorporated under the laws of the State of Illinois. Cook County administers itself through departments, one of which is the COOK COUNTY SHERIFF'S OFFICE ("Sheriff's Office"). At all relevant times, Defendant Cook County, through the Sheriff's Office, has been continuously engaged in an industry affecting commerce.

18. Cook County is named as a necessary party as the indemnifier for the Cook County Sheriff's Office.

19. At all relevant times, Defendant THOMAS DART ("Dart") served in the elected position of Sheriff of Cook County, Illinois. Dart was at all relevant times hereto the final decision maker and policy maker in the Sheriff's Office. Defendant Dart is sued in his official and individual capacities.

20. Defendant KAREN JONES-HAYES ("Jones-Hayes") is sued in her individual capacity. Defendant Jones-Hayes is a Superintendent in the Cook County Sheriff's Office Department of Corrections.

21. At all relevant times hereto, Defendant Jones-Hayes has served in the position of Superintendent at the discretion and pleasure of the Sheriff. Defendant Jones-Hayes is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein. The Sheriff delegated final policy making authority to Defendant Jones-Hayes with regard to her acts and conduct alleged herein.

22. Defendant Jones-Hayes acted under color of law.

23. Defendant MATTHEW BURKE ("Burke") is sued in his individual capacity. Defendant Burke is the Chief of Staff for the Cook County Sheriff's Office Department of Corrections.

24. At all relevant times hereto, Defendant Burke has served in the position of Chief of Staff at the discretion and pleasure of the Sheriff. Defendant Burke is a final policy maker and decision maker for the Sheriff's Office and with regard to his acts and

conduct alleged herein. The Sheriff delegated final policy making authority to Defendant Burke with regard to his acts and conduct alleged herein.

25. Defendant REBECCA REIERSON ("Reierson") is sued in her individual capacity. Defendant Reierson is the Leave and Absence Manager for the Bureau of Human Resources of the Cook County Sheriff's Office.

26. At all times relevant hereto, Defendant Reierson was delegated with final policy making authority with regard to her acts and conduct alleged herein.

27. Defendant Reierson acted under color of law.

28. Defendant WINIFRED SHELBY ("Shelby") is a sued in her individual capacity. Defendant Shelby is an Occupational Health Specialist for the Bureau of Human Resources of the Cook County Sheriff's Office.

29. At all time relevant hereto, Defendant Shelby was delegated with final policy making authority with regard to her acts and conduct alleged herein.

30. Defendant Shelby acted under color of law.

***Facts Related to All Claims***

31. On September 28, 2016, Plaintiff was assigned to the basement of Cermak Hospital to monitor detainees. A fight broke out between two inmates. Plaintiff and two other officers were able to break up the fight without incident, and after breaking up the fight, contacted a supervisor pursuant to protocol, advising the supervisor of the situation.

32. Defendant Jones-Hayes (female) responded and in a very insulting, provoking and demeaning manner, hit Plaintiff in his chest with her finger several times. She also spoke to Plaintiff in a condescending tone of voice.

33. Nothing warranted her assault and battery of hitting Plaintiff in the chest with her finger several times.

34. Defendant Jones-Hayes again hit Plaintiff in the chest with her finger several times, at which time Plaintiff took a step back, feeling trapped, and told her keep her hands off of him, and that it was very unprofessional.

35. Defendant Jones-Hayes acknowledged that she had offended Plaintiff.

36. Defendant Jones-Hayes acknowledged that she touched Plaintiff.

37. Defendant Jones-Hayes also disparaged Plaintiff in front of detainees.

38. Plaintiff complained about Defendant Jones-Hayes' conduct towards him to the other employees, including the sergeant that was present.

39. The very next day, Plaintiff was transferred to external operations away from his regular assignment with no explanation.

40. While Plaintiff was assigned to external operations, Plaintiff had contact with other employees and detainees. Plaintiff also was assigned to transport detainees. Plaintiff was also allowed to carry his firearm.

41. On October 13, 2016, Plaintiff filed a formal complaint with his supervisor regarding Defendant Jones-Hayes' harassment and assault and battery of him.

42. On November 18, 2016, Defendants ordered Plaintiff to appear to Human Resources.

43. Defendants Shelby and Reierson met with Plaintiff. They asked him if he had threatened another employee; Plaintiff responded: "no," as he had not.

44. Plaintiff was not given any notification of any complaint or allegations against him, and Defendants Shelby and Reierson refused to provide him with any information and told him that he had to sign two (2) HIPAA release forms that were blank.

45. Plaintiff was not provided with any complaint or any indication that anyone had complained about him.

46. Plaintiff was told by Defendants Shelby and Reierson that this was not an O.P.R. (Office of Professional Review) matter.

47. O.P.R. is the division that investigates officer misconduct.

48. Defendant Dart, through Defendants Burke, Shelby, and Reierson, ordered Plaintiff to sign blank HIPPA release forms for his medical records, which Plaintiff refused because he reasonably believed that it is was violation of the ADA.

49. Defendant Dart, through Defendants Burke, Shelby, and Reierson, told Plaintiff that he could not return to work until he signed the HIPPA release forms, which Plaintiff believed was and is an unlawful request.

50. As of this meeting on November 18, 2016, and according to Defendant Matthew Burke, no decision had been made as to whether or not Defendants were going to order Plaintiff for a fitness for duty examination. Defendant Burke stated that he requested Human Resources "meet with Officer Nawara and determine whether a fitness for duty evaluation was appropriate."

51. Defendant Reierson admits that Officer Nawara was placed on administrative leave with no pay because he would not sign the HIPPA release forms.

52. The ADA specifically prohibits employers from "requir[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A).

53. The EEOC guidance also states that "Any employee, therefore, has a right to challenge a disability-related inquiry or medical examination that is not job-related and consistent with business necessity." https://www.eeoc.gov/policy/docs/guidance-inquiries.html.

54. The order given to Plaintiff to sign blank HIPPA release forms for his medical records violates the ADA.

55. Defendants' medical inquiry at issue is not vital to its business.

56. Defendants' medical inquiry is not narrowly formulated to prevent unnecessary intrusion into Plaintiff's medical information.

57. Defendants' request for Plaintiff to sign blank HIPPA releases for his medical records was not job related, consistent with business necessity, or justified by any legitimate concern about the safety of Defendants' employees, inmates, or the public at large.

58. Defendants have not ordered Plaintiff to appear for a fitness for duty.

59. To the extent Defendants might order Plaintiff to appear for a fitness for duty, such an order would not be job related, consistent with business necessity, or justified by any legitimate concern about the safety of Defendants' employees, inmates, or the public at large.

60. Defendants have not disclosed to Plaintiff any asserted purpose and cannot show that the medical inquiry serves any asserted purpose.

61. The request for Plaintiff to sign blank HIPPA release forms is also in violation of Plaintiff's privacy rights and unlawful.

62. Defendants placed Plaintiff on an unpaid suspension because he would not sign the blank HIPPA forms.

63. Plaintiff worked from September 28, 2016 to November 18, 2016 without incident, including transporting inmates and being allowed to carry a firearm.

64. It was not until Plaintiff refused to sign the HIPPA release forms did Defendants place Plaintiff on administrative leave without pay.

65. As a result of Defendants placing Plaintiff on administrative leave without pay, Plaintiff was forced to use his personal time that is "on the books," *i.e.*,

medical/sick, personal, compensation, holidays, and vacation. Plaintiff is currently not receiving any pay.

66. Defendants have also threatened Plaintiff with disciplinary action and that charges may be brought seeking his termination.

67. Plaintiff has also been denied special assignments, transfers to more desirable units, and training, as well as promotional opportunities as a result of Defendants' unlawful order for him to sign a blank HIPPA release for his medical records.

68. On December 21, 2016, Plaintiff, through his counsel, advised Defendants, through its agents and employees in Human Resources, as well as Defendants' counsel, Peter Kramer, that he believed the order for him to sign blank HIPPA release forms was unlawful and requested to be reinstated back to work with his time reinstated as well.

69. Defendants did not respond to the December 21, 2016 correspondence from Plaintiff, through his counsel.

70. On January 31, 2017, Plaintiff, again through his counsel, requested to be reinstated and advised Defendants that the order for him to sign blank HIPPA releases violated the ADA.

71. Defendants did not respond.

72. On March 1, 2017, Defendants sent Plaintiff a letter suggesting that he had not responded to them regarding him signing the HIPPA release forms, when in fact he did respond, on both December 21, 2016 and January 31, 2017, through counsel.

73. On March 8, 2017, Plaintiff again responded through his counsel, and provided Defendants with case law, stating that the order to Plaintiff Nawara to sign the HIPPA release for his medical records is unlawful and violates the ADA. Case law is clear that the medical inquiries provision of the ADA protects all employees, even if they are not disabled. *See Wright v. Ill. Dep't of Children & Family Servs*., 798 F.3d 513 (7th Cir. 2015). Plaintiff requested that the order for him to sign the HIPPA release forms be rescinded and that he be allowed to return to work.

74. On March 13, 2017, Defendant Reierson responded stating in relevant part that "[Plaintiff's] absence will be deemed unauthorized subjecting him to possible discipline including termination" if he did not sign the HIPPA release and return it to Defendants.

75. In a final effort to be returned to work, Plaintiff saw an independent doctor and obtained a report as to his fitness for duty.

76. The doctor issued a report stating that Plaintiff is fit for duty and recommended that he return to work with no restrictions.

77. On March 17, 2017, Plaintiff provided the report to Defendants, through their Human Resources representatives, and directly to Defendant Reierson, stating:

> See attached report from Dr. Kroll, who is an independent doctor and not my doctor. I am requesting to be put back to work effective immediately and all of the time I have had to burn be reinstated. I feel the order for me to sign a blank HIPPA release was unlawful and violates the American with Disabilities Act and is in retaliation for my prior suit against the Sheriff's Office, in which the jury found that the Sheriff violated my and

> other officer's First Amendment rights, and retaliated against us because of our political support for the opponent to Sheriff Dart, and because of my complaints of harassment by the supervisor. Please confirm that I can come back to work and that all of my time will be reinstated, and that I will not be subject to any further harassment or retaliation.
>
> I look forward to hearing from you today, so that I can return to work on Monday.

78. Despite Plaintiff providing additional information and evidence that there was no basis to order him to sign blank HIPPA release forms, and that an independent medical doctor recommended that Plaintiff be returned to work with no restrictions, Defendants have not allowed Plaintiff to return to work.

79. On March 24, 2017, Plaintiff filed a charge of discrimination and retaliation with the EEOC.

80. Plaintiff has repeatedly requested that he be allowed to return to work to no avail.

81. Defendants have refused to allow Plaintiff to return to work without any justification or explanation, as there is no justification or valid business necessity.

82. Plaintiff also requested from Defendants the identification of the policy or general order that would cover Defendants' request for Plaintiff to sign a blank HIPPA release or even order him to see their designated doctor for a fitness for duty. Defendants failed to respond to this request as well.

83. Plaintiff has no mental, physical, or emotional issues.

84. There is no reason or belief to find that Plaintiff should be subjected to a medical inquiry.

85. Defendants have also singled Plaintiff out because he complained about Defendant Jones-Hayes' assault and battery of him.

86. Defendants' policy of requiring employees to sign blank HIPPA release forms violates the ADA.

87. Here, Defendants did not order Plaintiff to see their own doctor for a fitness for duty evaluation, but only ordered him to sign blank HIPPA release forms.

88. Even if Defendants had ordered Plaintiff to see their doctor for a fitness for duty evaluation, Defendants' policy of requiring fitness for duty evaluations is not consistent with any business necessity.

***Plaintiff's Participation In Other Protected Activity***

89. On November 18, 2008, Plaintiff participated in a federal civil rights lawsuit based on political retaliation for his support and perceived support of the political opponent to Defendant Dart (in the 2006 primary election). Plaintiff was a named Plaintiff in the case entitled: *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08-cv-06621 (N.D. Ill.).

90. On September 4, 2012, a federal jury found that Defendant Cook County Sheriff's Office and Defendant Dart in his official capacity, along with Scott Kurtovich, who was the First Executive Assistant in the Sheriff's Office, violated the 21 plaintiffs'

First Amendment rights under the United States Constitution in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.).

91. The jury awarded $1,560,000 in compensatory (not including back pay or front pay) and punitive damages to the 21-plaintiff employees of the Sheriff's Office.

92. Defendants filed a post-trial motion to vacate the verdict, which the District Court denied. The District Court upheld the jury's verdict, and held in relevant part: "The County is liable under section 1983, just as Kurtovich is individually, because the jury found that the County made an official decision to disband SORT in retaliation against Plaintiffs. . . . The court therefore will not set aside the jury's liability findings against Defendants." *Burruss v. Cook County Sheriff's Office*, 2013 WL 3754006, at *9 (N.D.Ill. 2013).

93. The jury in the *Burruss* case found that Defendants' Director Scott Kurtovich violated federal law and the First Amendment to the United States Constitution by retaliating against Plaintiffs.

94. Despite this finding and the District Court's affirmation of the jury's verdict, Defendants did not discipline or terminate Scott Kurtovich's employment from the Sheriff's Office. Instead, after the jury's verdict, Defendant Dart promoted Scott Kurtovich to be the Director over the Training Academy and in charge of training, including training on the Sheriff's policy on political discrimination and retaliation in the workplace.

95. Plaintiff is also being singled out and retaliated against because of his participation in the civil rights lawsuit.

**COUNT I**

**(ADA – Disability Discrimination**
**v. Cook County and the Cook County Sheriff's Office)**

96. Plaintiff realleges and incorporates by reference paragraphs 1-95 above as if fully set forth herein.

97. The Americans with Disabilities Act specifically prohibits employers from "require[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A).

98. The EEOC guidance also states that "Any employee, therefore, has a right to challenge a disability-related inquiry or medical examination that is not job-related and consistent with business necessity."

99. Defendants' order to Plaintiff to sign blank HIPPA release forms for his medical records violates the ADA.

100. Defendants cannot show that the medical inquiry at issue is vital to its business and is narrowly formulated to prevent unnecessary intrusion into Plaintiff's medical information.

101. Defendants have not disclosed to Plaintiff any asserted purpose and cannot show that the medical inquiry serves any asserted purpose.

102. Plaintiff has and continues to suffer irreparable harm as a result of Defendants conduct and refusal to return him back to work without valid or legal justification, including but not limited to running out of personal time, being denied training, lateral transfers to special assignments, and promotional opportunities for advancement of his career, and being threatened with disciplinary action and charges seeking his termination.

103. Defendants' policy of requiring employees to sign blank HIPPA releases for medical records violates the ADA.

104. Defendants have a policy, custom and practice of violating the ADA.

105. Defendants' conduct caused Plaintiff damages, including but not limited to: loss of income, back pay, front pay, emotional pain and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

A. All benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A temporary restraining order finding that Defendants' policy of requiring employees to sign blank HIPPA release forms violates the ADA;

D. A temporary restraining order finding that Defendants' policy of requiring employees to sign blank HIPPA release forms and sending them for a fitness for duty evaluation that is not consistent with any business necessity violates the ADA;

E. A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

F. A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2000);

G. A declaratory judgment that Defendant's actions violate Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111-12117;

H. That this Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

I. An award of reasonable attorneys' fees, costs, and litigation expenses; and

J. Such other relief as this Court may deem just or equitable.

**COUNT II**

**(42 U.S.C. § 1983, First Amendment v. All Defendants)**

106. Plaintiff realleges and incorporates by reference paragraphs 1- 95 above as if fully set forth herein.

107. At all times relevant hereto, Defendants acted as employees, supervisors, and final policymakers for the Sheriff's Office.

108. The conduct of Defendants, specifically retaliating against employees who opposed the Sheriff politically, engaged in protected conduct by complaining about political discrimination and retaliation, and denying employees the right to be free from political retaliation, was and became the custom and practice of the Sheriff's Office.

109. By Defendants' actions, Plaintiff suffered compensable injury and harm as a result of the denial of rights guaranteed to him pursuant to the First Amendment to the United States Constitution.

110. Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by denying him promotions, denying him training, denying him special assignments, refusing to return him to work, and subjecting him to other adverse terms and conditions of his employment in violation of the First Amendment and treating him in an overall disparate manner.

111. Defendants have acted under color of state law at all material times hereto.

112. The conduct of Defendants violated Plaintiff's rights to free speech and free association as secured by the First Amendment to the Constitution.

113. Defendants are aware that it is unlawful to retaliate or discriminate against someone because of their political affiliation and/or perceived political affiliation.

114. Defendants know that employees must be treated equally regardless of their political affiliation and/or perceived political affiliation.

115. On September 4, 2012, a federal jury found that Defendant Cook County Sheriff's Office and Defendant Dart in his official capacity, along with Scott Kurtovich, who was the First Executive Assistant in the Sheriff's Office, violated the 21 plaintiffs' First Amendment rights under the United States Constitution in the case of *Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08 C 6621 (N.D. Ill.). The jury awarded $1,560,000 in compensatory (not including back pay or front pay) and punitive damages to the 21-plaintiff employees of the Sheriff's Office. Defendants filed a post-trial motion to vacate the verdict, which the District Court denied. The District Court upheld the jury's verdict, and held in relevant part: "The County is liable under section 1983, just as Kurtovich is individually, because the jury found that the County made an official decision to disband SORT in retaliation against Plaintiffs. . . . The court therefore will not set aside the jury's liability findings against Defendants."

116. The jury in the *Burruss* case found that Defendants' Director Scott Kurtovich violated federal law and the First Amendment to the United States Constitution by retaliating against Plaintiffs.

117. Despite this finding and the District Court's affirmation of the jury's verdict, Defendants in this case have not disciplined or terminated Scott Kurtovich's employment from the Sheriff's Office.

118. Defendants did not discipline or terminate Scott Kurtovich's employment despite Defendant Dart's own "written policy" that political retaliation will not be tolerated in the Sheriff's Office and will be subject to termination.

119. Instead, after the jury's verdict, Defendant Dart promoted Scott Kurtovich to be the Director over the Training Academy and in charge of training, including training on the Sheriff's policy on political discrimination and retaliation in the workplace.

120. The actions of the Defendants in violating Plaintiff's and other employees' Constitutional rights under the First Amendment were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

121. Defendants' conduct caused Plaintiff damages, including but not limited to: loss of income, back pay, front pay, emotional pain and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. All wages and benefits Plaintiff would have received but for the First Amendment violations, including but not limited to back pay, front pay, pre-judgment interest, and restoration of job assignments;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants' conduct;

C. A permanent injunction enjoining Defendants from engaging in the practices complained of herein;

D. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1983;

E. A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1983;

F. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G. Punitive damages against Defendant Dart in his individual capacity;

H. An award of reasonable attorneys' fees, costs, and litigation expenses; and

I. Such other relief as the Court may deem just or equitable.

## COUNT III

**(Plaintiff v. Defendant Cook County Sheriff's Office)**
**(Title VII – Retaliation)**

122. Plaintiff realleges and incorporates by reference paragraphs 1- 95 above as if fully set forth herein.

123. Plaintiff Nawara was subjected to retaliatory treatment in retaliation for his complaints about Defendant Jones-Hayes' assault and battery of him, which she acknowledged she knew Plaintiff was offended.

124. Defendant has engaged in a policy, pattern, and practice of retaliating and condoning retaliation against employees who complain of harassment, sexual harassment, discrimination, and retaliation.

125. By engaging and condoning retaliatory conduct, Defendant discriminated against Plaintiff in violation of 42 U.S.C. § 2000e-3, as amended.

126. Defendants' conduct caused Plaintiff damages, including but not limited to: loss of income, back pay, front pay, emotional pain and suffering, humiliation, degradation, inconvenience, lost benefits, loss of job advancement, future pecuniary losses, attorneys' fees and expenses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

A. All wages and benefits Plaintiff would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

D. A permanent injunction requiring the Defendant adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

E. The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. Punitive damages as allowed by law;

G. An award of reasonable attorneys' fees, costs, and litigation expenses; and

H. Such other relief as the Court may deem just or equitable.

**COUNT IV**

**(Plaintiff v. All Defendants)**
**(Violation of the Illinois Whistleblower Act)**

127. Plaintiff restates and realleges by reference paragraphs 1-95 above as though fully set forth herein against all Defendants.

128. As set forth above, Plaintiff participated in court proceedings (*Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08-cv-06621 (N.D. Ill.)) and disclosed information that he reasonably believed was a violation of state or federal law, rule or regulation.

129. Plaintiff also complained that forcing him to sign a HIPPA release was unlawful.

130. After Plaintiff complained, Defendants then placed Plaintiff on an unpaid leave in retaliation.

131. Defendants retaliated against Plaintiff by forcing him to sign a blank HIPPA form, placing him on unpaid suspension, and forcing him to use vacation and personal days.

132. Each Defendant made, took part in, assisted in, and/or participated in the decision to retaliate against Plaintiff.

133. Plaintiff Nawara had reasonable cause to believe that the information disclosed was a violation of state or federal law, rule or regulation.

134. Plaintiff Nawara was subjected to retaliation in violation of rights guaranteed to him by the Illinois Whistleblower Act, 740 ILCS § 174/15, and he has suffered substantial losses as a result, including, but not limited to, lost wages and benefits, mental and emotional anguish and embarrassment and humiliation.

**WHEREFORE**, Plaintiff respectfully requests:

A. All wages and benefits Plaintiff would have received but for the discrimination and retaliation, including but not limited to back pay, front pay, pre-judgment interest, and restoration of job assignments;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants' conduct;

C. A permanent injunction enjoining Defendants from engaging in the practices complained of herein;

D. The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E. Punitive damages as allowed by law;

F. An award of reasonable attorneys' fees, costs, and litigation expenses; and

G. Such other relief as the Court may deem just or equitable.

Respectfully submitted,

JOHN NAWARA

***s/Dana L. Kurtz***

One of Plaintiff's Attorneys

*Electronically filed on June 8, 2017*

Dana L. Kurtz, Esq. (6256245)
Heidi Karr Sleper, Esq. (6287421)
KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois 60521
Phone: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us
Email: hsleper@kurtzlaw.us

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies and states that the attached document was served on the attorneys of record by electronic service via the Court's ECF System on June 23, 2017.

Kevin Frey kevin.frey@cookcountyil.gov

***s/Dana L. Kurtz***

______________________________

Dana L. Kurtz

**From:** "Karyn Williams (Sheriff)" <MAILER-DAEMON>
**To:** Katherine Christy (Sheriff);Rebecca Reierson (Sheriff)
**Subject:** RE: Nawara HIPAA waiver - Privileged and Confidential
**Date:** 2017-08-23 14:14:19 -0500

---

[redacted]

Sent from my Verizon 4G LTE smartphone

-------- Original message --------
From: "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
Date: 8/23/17 2:05 PM (GMT-06:00)
To: "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
Cc: "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
Subject: FW: Nawara HIPAA waiver - Privileged and Confidential

[redacted]

---

**From:** KATHLEEN ORI (States Attorney)
**Sent:** Friday, August 18, 2017 12:01 PM
**To:** Katherine Christy (Sheriff)
**Cc:** KEVIN FREY (States Attorney)
**Subject:** Fw: Nawara HIPAA waiver

[redacted]

Kathleen Cunniff Ori
Assistant State's Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602
Direct: (312) 603-4635
Fax: (312) 603-3000

---

**Exhibit J**

**From:** karyn.williams@cookcountyil.gov
**To:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>, "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
**Subject:** RE: Nawara HIPAA waiver - Privileged and Confidential
**Date:** 2017-08-23 14:14:34 -0500
**Importance:** normal

---

[redacted]

Sent from my Verizon 4G LTE smartphone

-------- Original message --------
From: "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>
Date: 8/23/17 2:05 PM (GMT-06:00)
To: "Rebecca Reierson (Sheriff)" <Rebecca.Reierson@cookcountyil.gov>
Cc: "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
Subject: FW: Nawara HIPAA waiver - Privileged and Confidential

**From:** "Gregory Shields (Sheriff)" <Gregory.Shields@cookcountyil.gov>
**To:** "Sharon Little (Sheriff)" <Sharon.Little@cookcountyil.gov>
**CC:** "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>, "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
**Subject:** RE: Personnel Memorandum #16-793 Ofc. J. Nawara
**Date:** 2017-12-18 16:59:42 -0600

---

[redacted]

Greg Shields
Executive Director
2323 s.Rockwell 6th fl
Chicag. Il 60608
773-843-7319 Office
773-843-7323 Dispatch

-------- Original message --------
From: "Sharon Little (Sheriff)" <Sharon.Little@cookcountyil.gov>
Date: 12/18/17 4:50 PM (GMT-06:00)
To: "Gregory Shields (Sheriff)" <Gregory.Shields@cookcountyil.gov>
Cc: "Katherine Christy (Sheriff)" <Katherine.Christy@cookcountyil.gov>, "Karyn Williams (Sheriff)" <Karyn.Williams@cookcountyil.gov>
Subject: FW: Personnel Memorandum #16-793 Ofc. J. Nawara

[redacted]

*Sharon Little,*
*Deputy Director – Labor Relations*
*CCSO Bureau of Human Resources*
*3026 S. California – Bldg. 2 Room 102*
*Chicago, Illinois 60608*
*773.674.6224*

---

**From:** Mary McQuillan (Sheriff)
**Sent:** Thursday, September 29, 2016 4:22 PM
**To:** Karen Jones-Hayes (Sheriff); Nancy Ortiz (Sheriff); Richard Brogan (Sheriff); Tracey Cannamore (Sheriff)
**Cc:** Jerome Graber (Sheriff); Lisa Schmilke (Sheriff); Alexis Herrera (Sheriff); CCSO Staffing (Sheriff); Daniel Moreci (Sheriff); Debbie Boecker (Sheriff); DOC SheriffNet; Finola Keegan (Sheriff); Helen Cohn (Sheriff); Marilyn Martinez (Sheriff); Mario Reyes (Sheriff); Mark Robinson (Sheriff); Matthew Burke (Sheriff); Michael Holmes (Sheriff); Michael Miller (Sheriff); Nneka Jones Tapia (Sheriff); Robert Egan (Sheriff); Robert Lyles (Sheriff); Sean Lynch (Sheriff); Sharon Little (Sheriff); Stephen Bouffard (Sheriff); Teresa Brown (Sheriff); Trisa Davis (Sheriff); Debra Munizzi (Sheriff); Tarry Williams (Sheriff); CCSO NWS; Shelitha Beacham (Sheriff); Wendy Bernard (Sheriff); Amar Patel (Sheriff); Jill McArdle (Sheriff); Karyn Williams (Sheriff); Michele Payne (Sheriff); Theresa Olson (Sheriff); Jeff Johnsen (Sheriff); Jane Gubser (Sheriff)
**Subject:** Personnel Memorandum #16-793 Ofc. J. Nawara

Attached, please find a copy of Personnel Memorandum #16-793, which is effective Sunday, October 2, 2016.

Thank you,

Mary B. McQuillan
Executive Assistant to the Executive Director
Cook County Department of Corrections
Office (773) 674-4465
Mary.McQuillan@cookcountyil.gov

**Exhibit K**

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br>v.<br><br>COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 17-cv-2393<br><br>Hon. Rebecca R. Pallmeyer |

**DECLARATION OF REBECCA REIERSON**

I, Rebecca Reierson, pursuant to 28 U.S.C. § 1746, depose and state the following based on my personal and first-hand knowledge:

1. I am over 18 years of age and am employed as the Leave and Absence Manager for the Department of Human Resources ("Human Resources") at the Cook County Sheriff's Office ("CCSO").

2. I have been employed with the CCSO since August of 2016.

3. Karyn Williams was my supervisor from the time that I began working at the CCSO until April 2018, when she left the CCSO.

4. My responsibilities in the CCSO include managing and executing the fitness for duty ("FFD") evaluation process for employees within the CCSO.

5. The FFD process typically is initiated by a referral from a department head based upon an incident or incidents involving the referred employee. It is up to the Human Resources



Exhibit 4

department to decide whether to send a referred employee for a FFD based on our evaluation of the situation.

6. During 2016 and 2017 I responded to FFD referrals by working with the Occupational Health Nurse, Winifred Shelby, and together we would decide whether an employee should be referred for a FFD evaluation.

7. After reviewing pertinent documentation, Nurse Shelby and I would typically first speak with the individual or individuals who have knowledge of the incident that led to the FFD referral to Human Resources.

8. After speaking with individuals with knowledge, Nurse Shelby and I would meet with the referred employee to determine is a FFD evaluation should be conducted.

9. Since I began working at the CCSO through the present, upon referral from Human Resources, FFD evaluations are conducted through the CorVel Corporation ("CorVel"), an independent, third-party administrator.

10. If Nurse Shelby and I decided a FFD evaluation should be conducted, we would discuss with the employee the process for completing the evaluation.

11. During 2016 and 2017, the practice of the CCSO when an employee is referred for a FFD evaluation is that the employee is placed on a leave of absence. The employee may use any benefit time (i.e. vacation, personal, or sick time) he or she has accrued while on this leave of absence.

12. Upon a determination that a FFD evaluation should be conducted by CorVel, an initial step included obtaining medical records for use by CorVel.

13. In order to obtain medical records for CorVel, Nurse Shelby would provide a referred employee two forms to execute: one form entitled "HIPAA Authorization for Disclosure

of Protected Health Information" and second form entitled "Authorization to Release Healthcare Information."

14. The "HIPAA Authorization for Disclosure of Protected Health Information" form authorizes CorVel's evaluating doctor to release the results of the FFD evaluation to the CCSO.

15. The second "Authorization to Release Healthcare Information" form sought to authorize the referred employee's medical providers to release their relevant medical records to the CCSO for transmittal to CorVel and the evaluating doctor.

16. On September 29, 2016, Ms. Williams forwarded to me by email a memorandum referring Correctional Officer John Nawara to be considered for a FFD evaluation as a result of a September 28, 2016 incident involving Superintendent Karen Jones-Hayes and Mr. Nawara. Attached as Exhibit A hereto.

17. After receiving the referral and being directed by Ms. Williams to process the referral of Mr. Nawara, I made efforts to discuss the September 28, 2016 incident with Superintendent Jones-Hayes.

18. Prior to speaking with Superintendent Jones-Hayes and Mr. Nawara, I did not believe there was enough information to refer Mr. Nawara to CorVel for a FFD evaluation and reported as much to Ms. Williams.

19. On November 8, 2016, Ms. Williams inquired as to whether I had updated the Department of Corrections regarding the Nawara FFD referral. See Exhibit B hereto.

20. On November 16, 2016, Nurse Shelby and I had a telephone conversation with Superintendent Jones-Hayes regarding the September 28, 2016 incident. Attached as Exhibit C hereto is a memorandum of that phone conversation which accurately reflects the information she provided regarding the incident.

21. On November 18, 2016, Nurse Shelby and I met in person with Mr. Nawara. During the November 18, 2016 meeting, Nurse Shelby and I asked Mr. Nawara about the incident with Superintendent Jones-Hayes.

22. Mr. Nawara raised his voice and spoke in an angry tone towards Nurse Shelby and me. Mr. Nawara showed additional signs of anger by clenching his fists and jaw throughout the meeting.

23. During the meeting, outside of Mr. Nawara's presence, Nurse Shelby and I discussed whether Mr. Nawara should be referred to CorVel for a FFD evaluation. We decided a FFD evaluation should be conducted based on the (1) information provided by Superintendent Jones-Hayes on November 16th; (2) Mr. Nawara's angry, aggressive, and short-tempered demeanor during our November 18th meeting; (3) my belief that Mr. Nawara was not cooperative or forthcoming during our November 18th meeting; and (4) the requirements that correctional officers ensure the safety of and security of staff, detainees, and the public inside the Cook County Jail.

24. We informed Mr. Nawara at the November 18, 2016 meeting that he was being referred for a FFD evaluation. We provided him with the "HIPAA Authorization for Disclosure of Protected Health Information" and the "Authorization to Release Healthcare Information" forms described above. Officer Nawara refused to sign the forms during the meeting and hastily left upon receipt of the forms.

25. On November 30, 2016, I sent a letter to Mr. Nawara advising him that he could begin completion of the FFD process by executing and returning the "HIPAA Authorization for Disclosure of Protected Health Information" and the "Authorization to Release Healthcare Information" forms by December 5, 2016. In the letter, I advised Mr. Nawara that if he failed to

participate in the FFD process, his time off work dating back to November 18, 2016 would be considered unauthorized. Attached as Exhibit D hereto.

26. On December 21, 2016, I received an email from counsel for Mr. Nawara, Dana Kurtz, attaching the HIPAA release to the email and entitling the pdf document "HIPAA Release form given to John to sign.pdf." Ms. Kurtz claimed that ordering Mr. Nawara to execute the HIPAA authorization was unlawful. Attached as Exhibit E hereto.

27. On February 28, 2017, I sent another letter to Mr. Nawara again advising him that he needed to engage in the FFD process and may begin by executing the "HIPAA Authorization for Disclosure of Protected Health Information" and the "Authorization to Release Healthcare Information" forms – which I included with the letter – by March 8, 2017. In this letter, I also advised Mr. Nawara that failure to execute and return the forms by March 8, 2017 his time off work dating back to November 18, 2017 may be deemed unauthorized. Attached as Exhibit F hereto.

28. On March 17, 2017, Mr. Nawara attached in an email a report dated March 8, 2017 purporting to be from an "independent" doctor who found him to be fit for duty and recommended that he be returned to work. Attached as Exhibit G hereto.

29. On March 18, 2017, I responded to Mr. Nawara's March 17th email by stating that the report he sent was insufficient to allow him to return to work. I also requested that Mr. Nawara return the "HIPAA Authorization for Disclosure of Protected Health Information" and the "Authorization to Release Healthcare Information" forms to begin the FFD process in compliance with the CCSO's and CorVel's procedures. Attached as Exhibit H hereto.

30. While I was not named as a Defendant in this action initially, it is my understanding that Mr. Nawara initiated the present lawsuit by filing a Complaint on March 29, 2017.

31. It is my understanding that on April 3, 2017, Mr. Nawara filed a motion in this case for a temporary restraining order.

32. It is my understanding that the First Amended Complaint naming me as a defendant was filed on June 23, 2017.

33. It is my understanding that Mr. Nawara eventually agreed to the FFD evaluation process by working directly with CorVel and signed the "HIPAA Authorization for Disclosure of Protected Health Information" on August 17, 2017 to do so. Attached as Exhibit I hereto.

34. On August 25, 2017, it is my understanding that Nurse Shelby sent a referral form to CorVel. Exhibit J hereto.

35. It is my understanding that on September 27, 2017 Mr. Nawara was released to return to work following a recommendation that he was fit for duty by the evaluating doctor arranged through CorVel. See memorandum attached as Exhibit K hereto.

36. Mr. Nawara is currently employed with the CCSO as a correctional officer.

37. Throughout the time from when I first received the referral from Ms. Williams to determine whether Mr. Nawara should undergo a FFD evaluation until Mr. Nawara was released to return to work I regularly kept Ms. Williams informed about Mr. Nawara's FFD process.

38. During weekly meetings, Ms. Williams and I discussed Mr. Nawara and the advice I received from legal counsel for the CCSO. Ms. Williams's practice was to take notes during these meetings and, upon information and belief, these notes likely contain information about Mr. Nawara's FFD process. Additionally, given Mr. Nawara's failure to comply with or initiate the FFD process and the subsequent filing of this lawsuit, Mr. Nawara was a subject of conversation with Ms. Williams during 2016 and 2017.

39. I have reviewed Ms. Kurtz's June 1, 2018 letter to Sarah Marmor addressing Ms. Kurtz's representation of Karyn Williams and it is not accurate that Ms. Williams "did not review or consider any aspect of Plaintiff Nawara's referral...." Ms. Williams's involvement regarding Mr. Nawara's FFD process was not solely procedural.

I declare under penalty of perjury that the foregoing is true and correct.

FURTHER DECLARENT SAYETH NOT

Dated this 6TH day of July 2018.

Rebecca Reierson

**Dana Kurtz**

| | |
|---|---|
| **From:** | Dana Kurtz |
| **Sent:** | Wednesday, December 21, 2016 2:49 PM |
| **To:** | Rebecca.Reierson@cookcountyil.gov; Winifred.Shelby@cookcountyil.gov |
| **Cc:** | Peter.Kramer@cookcounty.gov |
| **Subject:** | John Nawara |
| **Attachments:** | HIPAA Release form given to John to sign.pdf |
| **Importance:** | High |

Ms. Reierson and Ms. Shelby,

I have been retained by John Nawara to represent him with respect to potential claims he has against the Sheriff's Office and other possible individual defendants.

I understand that you placed him on leave and ordered that he cannot return to work until he completes the attached HIPAA authorization form. On what legal basis or policy provision do you and the Sheriff's office have to order him to complete this form for his personal medical records? Officer Nawara (and I) believe that such an order is unlawful.

Officer Nawara has not been given any notification of any complaint or allegations against him. You also refused to provide him with any information other than he was being ordered to sign the HIPAA release form.

Further, Officer Nawara did file a harassment complaint against Superintendent Jones-Hayes as a result of an incident in which she put her hands on him and acted in a threatening and offensive manner.

As a result of the above actions taken against Officer Nawara and the unlawful order that he cannot return to work, he has been forced to use his vacation time. He has also lost out on advancement and training opportunities. We are requesting that he be immediately reinstatement and allowed to return to work, as well as his vacation and time that he has had to use be reinstated. We are also requesting that the Sheriff immediately send a notification to Superintendent Jones-Hayes to have no further contact with Officer Nawara and to cease and desist from the harassment against him.

I look forward to hearing from you before the close of business Friday, December 24, 2016.

Sincerely,

*Dana*

Dana L. Kurtz, Esq.



**Exhibit E**

KURTZ LAW OFFICES, LTD

www.kurtzlaw.us
32 Blaine Street, Hinsdale, Illinois 60521
Office: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us

RATED BY Super Lawyers

*Selected by Super Lawyers from 2013 – 2016*

**THIS IS A CONFIDENTIAL COMMUNICATION**: The preceding e-mail message contains information that is confidential. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender at 630.323.9444. Unauthorized use, dissemination, distribution or reproduction of this message is strictly prohibited.

*Making a difference in the lives of others, every way we can. Please visit and support www.lmsdr.org.*

**HIPAA AUTHORIZATION FOR DISCLOSURE OF PROTECTED HEALTH INFORMATION**

I, ____________________________, authorize the Independent medical exam or fitness for duty exam physician to disclose protected health information ("PHI") about me as described below in this Authorization:

1. With this authorization, I allow all medical records and information to be released and reviewed that relates to my fitness for duty exam.

2. Any health care provider or facility who treats/treated me for my medical condition or medical illness ("Identified Health Care Providers") may disclose the above-described information to a Disability Management Case Manager, for Cook County, employed by CorVel Corporation.

3. This disclosure is made for the purposes of your fitness for duty examination as requested by your employer, Cook County.

4. I understand that the Identified Health Care Providers are not conditioning my treatment, payment, enrollment, or eligibility for benefits on whether I agree to sign this authorization.

5. I understand that the information disclosed pursuant to this authorization may no longer be protected by the federal health privacy rule (otherwise known as HIPAA) and may be subject to re-disclosure by the recipient.

6. I understand that I have the right to revoke this authorization in writing at any time by sending a letter to the Privacy Officer of the Identified Health Care Providers for my medical condition or medical illness as described above, and that the effective date of my revocation will be the date the Privacy Officer receives it. I further understand that any revocation will be effective only to the extent that Identified Health Care Providers has not already taken action in reliance on this authorization.

7. This authorization allows for the release of medical records produced as the result of treatment provided prior to the date of expiration of this authorization.

8. This Authorization shall expire one year from the date of my signature to this authorization, below.

____________________________________ Printed Name (of person giving authorization)

____________________ Social Security Number

____________________________________ Signature of person giving authorization

____________________ Date

Signed ____________________________________
***(If applicable, Power of Attorney, Guardian or Conservator. Attach copy of document granting authority.)***

This document contains confidential information of a claimant and may not be disclosed or duplicated without the prior written consent of CorVel.

| | |
|---|---|
| **From:** | "Karyn Williams (Sheriff)" <MAILER-DAEMON> |
| **To:** | Rebecca Reierson (Sheriff) |
| **Subject:** | FW: Fitness for Duty - Ofc. J. Nawara |
| **Date:** | 2016-09-29 16:17:22 -0500 |
| **Attachments:** | Fitness_for_Duty_-_Ofc._J._Nawara_Sept._2016.pdf |

Hi Rebecca,
Please process. Thanks in advance.

**From:** Mary McQuillan (Sheriff)
**Sent:** Thursday, September 29, 2016 4:12 PM
**To:** Karyn Williams (Sheriff)
**Cc:** Nneka Jones Tapia (Sheriff); Tarry Williams (Sheriff); Matthew Burke (Sheriff)
**Subject:** Fitness for Duty - Ofc. J. Nawara

Karyn,

Attached, please find a request for a Fitness for Duty Evaluation for Ofc. John Nawara, JDE#378032, Cermak 7-3/7. Please be aware that Ofc. Nawara is being transferred to External Operations, 6-2/7, per Article U SEAM, effective Sunday, 10/02/16.

Thank you,

Mary B. McQuillan
Executive Assistant to the Executive Director
Cook County Department of Corrections
Office (773) 674-4465
Mary.McQuillan@cookcountyil.gov

**Exhibit A**

| | |
|---|---|
| **From:** | "Karyn Williams (Sheriff)" <MAILER-DAEMON> |
| **To:** | Rebecca Reierson (Sheriff) |
| **Subject:** | FW: Fitness for Duty - Ofc. J. Nawara |
| **Date:** | 2016-11-08 16:12:37 -0600 |
| **Attachments:** | Fitness_for_Duty_-_Ofc._J._Nawara_Sept._2016.pdf |

Have you updated the DOC clients? Please advise. Thanks

**From:** Mary McQuillan (Sheriff)
**Sent:** Thursday, September 29, 2016 4:12 PM
**To:** Karyn Williams (Sheriff)
**Cc:** Nneka Jones Tapia (Sheriff); Tarry Williams (Sheriff); Matthew Burke (Sheriff)
**Subject:** Fitness for Duty - Ofc. J. Nawara

Karyn,

Attached, please find a request for a Fitness for Duty Evaluation for Ofc. John Nawara, JDE#378032, Cermak 7-3/7. Please be aware that Ofc. Nawara is being transferred to External Operations, 6-2/7, per Article U SEAM, effective Sunday, 10/02/16.

Thank you,

Mary B. McQuillan
Executive Assistant to the Executive Director
Cook County Department of Corrections
Office (773) 674-4465
Mary.McQuillan@cookcountyil.gov

Exhibit B

Information provided by Supt. Jones-Hayes
Telephone Conversation w/ Rebecca Reierson and Winifred Shelby
November 16, 2016

A new policy was generated for the safety and security of all staff had been issued for the basement of Cermak; all detainees had to be cuffed in back and while in the staging area they had to be shackled in order to prevent harm to officers and potentially other detainees. On 9/29/16 Supt. Hayes along with Sgt. Conley entered the basement and found the door to Basement Control 1 that was supposed to be secured was unlocked and open. I pointed the concern out to the Sgt. and instructed him that the officers were to be disciplined for not following the directive established for the security of this area. As I entered the area; all of the officer's backs were to me. Officer Nawara was the first officer closest to the door so I tapped him on his shoulder and leaned in to see his face and glanced at his name tag. I then commented, "You work for Cermak?" At that time officer Gannon responded," yes Supt. I know you know me" and I replied," yes I do". I asked, Officer Gannon who was the other officer on the computer and she told me it was an officer from Division 11 typing a report; the purpose of that question was to reiterate the policy that states no one should be in Basement control that is not assigned there. I began to speak with the officers about why the policies and why they were generated for that area. I then stepped to look into the staging area an observed many detainees were not in compliance with the orders established.

Many of the detainees were not cuffed, or were cuffed in front. Supt. Hayes asked," Why are the detainees not cuffed and shackled as required by the policy for Cermak?" Officer Nawara did not turn around or respond. Hayes then touched Nawara on the shoulder and asked if he heard her and he got in her face and yelled at the top of his lungs "Don't touch me! Don't fucking touch me lady!" over and over again. Officer Nawara displayed extreme rage towards her (his body trembled as he screamed at her with his fist clinched). Supt. Hayes left the area and stood in staging to regain her composure, because he startled her. After answering the detainee's questions in the staging area went into the ER, after telling Officer Nawara to cuff and shackle the detainees that were not already.

Moments later, Officer Nawara entered the ER screaming in the Supt's face, "You see, You see, this fucking inmate jumped in my face because you want him shackled." She exited the ER asking Sgt. Conley to find out what was the officer talking about. She saw a detainee in the back of staging away from everyone and asked him to come forward. After some prodding he reluctantly came forward and said that he didn't want to be cuffed by Nawara because he was crazy. She and the sergeant watched the Officer as he shackle the detainee. Supt. quickly began to exit the area and Officer Nawara began stating, "What are you going to do follow me around all day and help me do my fucking job?" He continued to antagonize the superintendent by walking out of the area as she did.

Supt. Hayes realized that something was going on with this officer and stated maybe it was something about her presence set Nawara off. Until administration decided what was the required action to take Supt. Hayes decided to stay away from him after the incident.

Officer Nawara is now assigned to Ex-Ops so Jones does not currently have any contact with him.

Supt K. Jones-Hayes #271

SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS
3026 South California Avenue, Chicago, IL 60608
**THOMAS J. DART**
SHERIFF

November 30, 2016

C/O John Nawara
[redacted]

Re: Fitness for Duty / via: Email, First Class & Certified Mail

Dear C/O John Nawara:

On 11/18/16 you were informed by the Occupational Health Nurse for the Sheriff's Office, Winifred Shelby, that you were required to undergo a Fitness for Duty (FFD) evaluation before returning to active duty. You took the forms in order to review them prior to signing and have failed to return them to Ms. Shelby. She called and left a voicemail message for you on 11/30/16 to which you did not respond. The time you have been off of work since 11/18/16 is only authorized if you are participating in the FFD process. These signed documents must be returned to Ms. Shelby by Monday, 12/5/16, so the FFD evaluation process can begin. If they are not received by that date, it will be determined that you are not participating in the process and your time off of work from 11/18/16 will be unauthorized. Further, you are not able to return to work until you have completed the FFD process.

Your forms should be returned to Ms. Shelby in Building 2. Please contact her at 773-674-8535 if you have further questions regarding the FFD process.

Sincerely,

Rebecca Reierson
Director, HR Employee Services

Cc: Winifred Shelby

*I certify that no Political Reasons or Factors were considered in any decision I made or action I took related to this Employment Action. Further, I do not know of, or have any reason to believe that anyone else considered or took action based on Political Reasons or Factors with respect to this Employment Action.*

CCSO_000017

CCSO_000017
**Exhibit D**

SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS
3026 South California Avenue, Chicago, IL 60608
**THOMAS J. DART**
SHERIFF

February 28, 2017

[redacted]

Re: Fitness for Duty / via: Email, First Class & Certified Mail

Dear C/O John Nawara:

On November 18, 2016 you were informed by the Occupational Health Nurse for the Sheriff's Office, Winifred Shelby, that you were required to undergo a Fitness for Duty (FFD) evaluation before returning to active duty. You were referred for a fitness for duty based on an interaction you had with Superintendent Jones-Hayes in which you were alleged to have acted in an overly aggressive and threatening manner. During the meeting on November 18, 2016, you were given an Authorization to Release Healthcare Information and a HIPAA Authorization for Disclosure of Protected Health Information form which you took in order to review prior to signing. To date, you have not returned these forms to Ms. Shelby. Nurse Shelby also called you and left a voicemail message for you on November 30, 2016 . You never responded to her message. In addition, I sent you a letter on November 30, 2016 informing you that the time you have been off of work since November 18, 2016 is only authorized if you are participating in the FFD process. To date, I have not heard back from you.

The signed waiver documents given to you on November 18, 2016 must be returned to Ms. Shelby by Wednesday, March 8, 2017 so the FFD evaluation process can proceed. This is the last notification you will receive. If the forms are not received by March 8, 2017, your time off work (November 18, 2016-present) will be deemed unauthorized. Further, you are not able to return to work until you have completed the FFD process.

I have enclosed another copy of the forms for your convenience. They should be returned to Ms. Shelby at 3026 S. California Ave., Building 2, Chicago, IL 60608. Please contact her at 773-674-8535 if you have further questions regarding the FFD process.

Sincerely,

Rebecca Reierson
Bureau of Human Resources, Employee Services

Cc: Winifred Shelby

*I certify that no Political Reasons or Factors were considered in any decision I made or action I took related to this Employment Action. Further, I do not know of, or have any reason to believe that anyone else considered or took action based on Political Reasons or Factors with respect to this Employment Action.*

**Exhibit F**

**HIPAA AUTHORIZATION FOR DISCLOSURE OF PROTECTED HEALTH INFORMATION**

I, ____________________________, authorize the Independent medical exam or fitness for duty exam physician to disclose protected health information ("PHI") about me as described below in this Authorization:

1. With this authorization, I allow all medical records and information to be released and reviewed that relates to my fitness for duty exam.

2. Any health care provider or facility who treats/treated me for my medical condition or medical illness ("Identified Health Care Providers") may disclose the above-described information to a Disability Management Case Manager, for Cook County, employed by CorVel Corporation.

3. This disclosure is made for the purposes of your fitness for duty examination as requested by your employer, Cook County.

4. I understand that the Identified Health Care Providers are not conditioning my treatment, payment, enrollment, or eligibility for benefits on whether I agree to sign this authorization.

5. I understand that the information disclosed pursuant to this authorization may no longer be protected by the federal health privacy rule (otherwise known as HIPAA) and may be subject to re-disclosure by the recipient.

6. I understand that I have the right to revoke this authorization in writing at any time by sending a letter to the Privacy Officer of the Identified Health Care Providers for my medical condition or medical illness as described above, and that the effective date of my revocation will be the date the Privacy Officer receives it. I further understand that any revocation will be effective only to the extent that Identified Health Care Providers has not already taken action in reliance on this authorization.

7. This authorization allows for the release of medical records produced as the result of treatment provided prior to the date of expiration of this authorization.

8. This Authorization shall expire one year from the date of my signature to this authorization, below.

______________________________________ ____________________

Printed Name (of person giving authorization) Social Security Number

______________________________________ ____________________

Signature of person giving authorization Date

Signed ______________________________________

***(If applicable, Power of Attorney, Guardian or Conservator. Attach copy of document granting authority.)***

This document contains confidential information of a claimant and may not be disclosed or duplicated without the prior written consent of CorVel.

Cook County SHERIFF

## AUTHORIZATION TO RELEASE HEALTHCARE INFORMATION

Patient's Name: ______________________ Date of Birth: ______________________

Previous Name: ______________________ Social Security #: ______________________

I request and authorize ____________________________________________ to release healthcare information of the patient named above to:

Name: ______________ Cook County Sheriff's Office ______________

Address: ______________ Winifred Shelby, RN, CCM, South Campus Bldg. 2 ______________

City: ______________ 3026 South California Avenue ______________

Chicago, IL 60608

This request and authorization applies to:

☐ Healthcare information relating to the following treatment, condition, or dates: ______________

______________________________________________________________

X All healthcare information

☐ Other: ______________________________________________________________

**Definition:** Sexually Transmitted Disease (STD) as defined by law, RCW 70.24 et seq., includes herpes, herpes simplex, human papilloma virus, wart, genital wart, condyloma, Chlamydia, non-specific urethritis, syphilis, VDRL, chancroid, lymphogranuloma venereuem, HIV (Human Immunodeficiency Virus), AIDS (Acquired Immunodeficiency Syndrome), and gonorrhea.

☐ Yes ☐ No I authorize the release of my STD results, HIV/AIDS testing, whether negative or positive, to the person(s) listed above. I understand that the person(s) listed above will be notified that I must give specific written permission before disclosure of these test results to anyone.

☐ Yes ☐ No I authorize the release of any records regarding drug, alcohol, or mental health treatment to the person(s) listed above.

Patient Signature: ______________________ Date Signed: ______________

THIS AUTHORIZATION EXPIRES NINETY DAYS AFTER IT IS SIGNED.

**Dana Kurtz**

| | |
|---|---|
| **From:** | John Nawara (Sheriff) <John.Nawara@cookcountyil.gov> |
| **Sent:** | Friday, March 17, 2017 11:57 PM |
| **To:** | Rebecca Reierson (Sheriff); Dana Kurtz |
| **Cc:** | Peter Kramer (Sheriff) |
| **Subject:** | Re: John Nawara |
| **Attachments:** | JNawara.FFD.pdf |

Dear Ms. Reierson,

See attached report from Dr. Kroll, who is an independent doctor and not my doctor. I am requesting to be put back to work effective immediately and all of the time I have had to burn be reinstated. I feel the order for me to sign a blank HIPPA release was unlawful and violates the American with Disabilities Act and is in retaliation for my prior suit against the Sheriff's Office, in which the jury found that the Sheriff violated my and other officer's First Amendment rights, and retaliated against us because of our political support for the opponent to Sheriff Dart, and because of my complaints of harassment by the supervisor. Please confirm that I can come back to work and that all of my time will be reinstated, and that I will not be subject to any further harassment or retaliation.

I look forward to hearing from you today, so that I can return to work on Monday.

Sincerely,
John A. Nawara

---

**From:** Rebecca Reierson (Sheriff)
**Sent:** Friday, March 17, 2017 4:42 PM
**To:** Dana Kurtz
**Cc:** Peter Kramer (Sheriff); John Nawara (Sheriff)
**Subject:** RE: John Nawara

Ms. Kurtz,
We have contacted our employee, Mr. Nawara, on several occasions about this issue as you are aware. A note from Mr. Nawara's own physician will not be adequate. He was previously informed that the fitness for duty evaluation will be completed by an independent physician, as is the case with all of our fitness for duty examinations. Based on Mr. Nawara's behavior in the workplace, we believe there is a clear business necessity, and we believe our HIPAA release meets legal requirements. It is not unlimited in time, as you suggest.

I indicated in my previous letter that it was necessary for us to receive Mr. Nawara's signed medical release paperwork by March 20, 2017 in order to proceed with the fitness for duty process. This will be extended until Wednesday, March 22, 2017. If the signed paperwork is not received by that date, Mr. Nawara's absences from November 2016 will be re-coded as unauthorized.



**Exhibit G**

Rebecca Reierson
Cook County Sheriff's Office
Bureau of Human Resources
3026 S. California Avenue, Building 2
Chicago, IL 60608
P (773) 674-8534
F (773) 674-8168
rebecca.reierson@cookcountyil.gov

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney-client and/or work product privileges. If you are not the intended recipient of this message or if this message has been addressed to you in error, please alert the sender immediately by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient. Do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments. Thank you.

---

**From:** Dana Kurtz [mailto:DKurtz@kurtzlaw.us]
**Sent:** Monday, March 13, 2017 10:25 AM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Peter Kramer (Sheriff); John Nawara (Sheriff)
**Subject:** RE: John Nawara
**Importance:** High

Dear Ms. Reierson,

First, I appreciate you finally responding to my email and getting back to me. We are trying to avoid litigation which is why I reached out to you and copied Peter Kramer on the email as well. However, the Sheriff's office lack of response and lack of engaging in any type of discussion is not helpful.

Second, Officer Nawara has been placed on an unpaid leave, and is burning his sick and vacation time to his detriment, which he will run out of soon, because he would not sign a HIPPA medical release form for his own medical records without limitation of time, scope, or any other limitations (setting aside that such a request is unlawful in the first place). He is also being denied promotions and other special assignments as a result as well. I have requested that his time be reinstated, also with no response from you or the Sheriff's Office. All of this has caused Officer Nawara irreparable harm and will continue to if he is not allowed to return to work and his medical and vacation time is not restored. As I have mentioned in my prior emails, we will be forced to file suit and a temporary restraining order, seeking injunctive release if this is not immediately remedied.

Third, the Sheriff's position to require Officer Nawara (or any other employee) to complete a medical release form so that the Sheriff's Office can obtain that individuals private medical records is unlawful and in violation of the ADA. An employer cannot order an employee to complete a HIPPA or medical release form so that the employer can obtain ***the employee's own medical records***, which is what you have ordered Officer Nawara to do. This is not the proper or legal way to go about ordering a "fitness for duty." In addition, the law requires that in order for an employee to be ordered to see the employer's selected doctor for a fitness for duty evaluation, ***there must be a business necessity***. *Wright v. Illinois Dept. of Children and Family Services*, 798 F.3d 513, 523 (C.A.7 (Ill.),2015). In *Wright*, the court reiterated:

An employer bears the burden of establishing that an examination is consistent with business necessity, *see Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir.2007), and that burden is "quite high," *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir.2003) (internal quotation marks omitted). An employer must "show that the asserted 'business necessity' is vital to the business," as opposed to a "mere expediency." *Id.; accord Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir.2014) (noting that an employer cannot rely on a "bare assertion that a medical examination was merely convenient or expedient"). In addition, the examination must "genuinely serve[ ] the asserted business necessity and ... must be a reasonably effective method of achieving the employer's goal." *Conroy*, 333 F.3d at 98. An employer "cannot merely rely on reasons that have been found valid in other cases but must actually show that the ... requirement contributes to the achievement of those business necessities." *Id.* at 101.
If the Sheriff's Office wants to order Officer Nawara to see a County doctor or its own selected doctor, then the Sheriff must show that it is "consistent with business necessity" and that "the asserted 'business necessity' is vital to the business,' as opposed to a 'mere expediency.'" We have been provided with ***no information*** to show that this burden has been met. Please provide me with this information, and I will consider it.

Fifth, in addition to the above, Officer Nawara has been provided ***no*** information as to who would be doing the FFD examination, nor has he been ordered to see any doctor. He was only ordered to complete a HIPPA form so that the Sheriff's Office could obtain Officer Nawara's own personal medical records, which is in violation of the ADA and violates his privacy rights.

Sixth, my additional email to which you finally responded was necessitated by the fact that your letter suggests that Officer Nawara did not respond to prior inquires. In fact, he did. He retained counsel (me) to respond for him, which we did, and received no response from the Sheriff's Office until your email below.

Finally, please let me know if a note from his doctor would suffice. Officer Nawara may be willing to provide this, but he is not going to and is not required to under the law sign a release so that his personal medical records are obtained by the Sheriff's office. Please let me know today, so that we can decide if we need to file a lawsuit and TRO, requesting injunctive relief.

Sincerely,

*Dana*

Dana L. Kurtz, Esq.

KURTZ LAW OFFICES, LTD

www.kurtzlaw.us
32 Blaine Street, Hinsdale, Illinois 60521
Office: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us

*Selected by Super Lawyers from 2013 – 2017*

**THIS IS A CONFIDENTIAL COMMUNICATION**: The preceding e-mail message contains information that is confidential. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender at 630.323.9444. Unauthorized use, dissemination, distribution or reproduction of this message is strictly prohibited.

*Making a difference in the lives of others, every way we can. Please visit and support www.lmsdr.org.*

---

**From:** Rebecca Reierson (Sheriff) [mailto:Rebecca.Reierson@cookcountyil.gov]
**Sent:** Monday, March 13, 2017 8:33 AM
**To:** Dana Kurtz
**Subject:** John Nawara

Ms. Kurtz-

During the Fitness for Duty (FFD) process, I intend to communicate directly with Mr. Nawara.

Mr. Nawara has been ordered to complete a FFD evaluation and must execute the HIPAA waiver forms in order to complete the FFD process. It is well-settled that a law enforcement agency may order an employee about whom they have fitness concerns to undergo a FFD prior to returning the employee to work.

I have provided Mr. Nawara more than ample time to complete this FFD. In fact, I first requested he sign the HIPAA in November 2016. If he does not sign and return the form within the next 7 days, by March 20, 2017, he will be considered to not be engaged in the FFD process and his absence will be deemed unauthorized subjecting him to possible discipline including termination. Your indication that our practice is unlawful is not correct or supported by the law. Therefore, his reliance on this position is not our concern and is not a reason to hold up the FFD process any further.

Rebecca Reierson
Cook County Sheriff's Office
Bureau of Human Resources
3026 S. California Avenue, Building 2
Chicago, IL 60608
P (773) 674-8534
F (773) 674-8168
rebecca.reierson@cookcountyil.gov

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney-client and/or work product privileges. If you are not the intended recipient of this message or if this message has been addressed to you in error, please alert the sender immediately by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient. Do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments. Thank you.

**Dana Kurtz**

**From:** John Nawara (Sheriff) <John.Nawara@cookcountyil.gov>
**Sent:** Saturday, March 18, 2017 12:22 PM
**To:** Rebecca Reierson (Sheriff)
**Cc:** Dana Kurtz
**Subject:** Re: John Nawara

Hello Ms. Reierson,

Please provide the general order or policy that requires me to sign a HIPPA release for my medical records. Thank you.

John A. Nawara

Get Outlook for iOS

---

**From:** Rebecca Reierson (Sheriff)
**Sent:** Saturday, March 18, 2017 11:52:36 AM
**To:** Dana Kurtz; John Nawara (Sheriff)
**Cc:** Peter Kramer (Sheriff)
**Subject:** Re: John Nawara

Officer Nawara,
Thank you for your email; however, the document attached is insufficient to allow your return to work. Please return the signed release documents as previously instructed so we can begin the proper fitness for duty procedure.

Thank you,

Rebecca Reierson
Cook County Sheriff's Office
Bureau of Human Resources
3026 S. California Avenue, Building 2
Chicago, IL 60608

P 773-674-8534
F 773-674-8168
rebecca.reierson@cookcountyil.gov

---

**From:** John Nawara (Sheriff)
**Sent:** Friday, March 17, 2017 11:57:09 PM
**To:** Rebecca Reierson (Sheriff); Dana Kurtz
**Cc:** Peter Kramer (Sheriff)
**Subject:** Re: John Nawara



**Exhibit H**

Dear Ms. Reierson,

See attached report from Dr. Kroll, who is an independent doctor and not my doctor. I am requesting to be put back to work effective immediately and all of the time I have had to burn be reinstated. I feel the order for me to sign a blank HIPPA release was unlawful and violates the American with Disabilities Act and is in retaliation for my prior suit against the Sheriff's Office, in which the jury found that the Sheriff violated my and other officer's First Amendment rights, and retaliated against us because of our political support for the opponent to Sheriff Dart, and because of my complaints of harassment by the supervisor. Please confirm that I can come back to work and that all of my time will be reinstated, and that I will not be subject to any further harassment or retaliation.

I look forward to hearing from you today, so that I can return to work on Monday.

Sincerely,
John A. Nawara

---

**From:** Rebecca Reierson (Sheriff)
**Sent:** Friday, March 17, 2017 4:42 PM
**To:** Dana Kurtz
**Cc:** Peter Kramer (Sheriff); John Nawara (Sheriff)
**Subject:** RE: John Nawara

Ms. Kurtz,
We have contacted our employee, Mr. Nawara, on several occasions about this issue as you are aware. A note from Mr. Nawara's own physician will not be adequate. He was previously informed that the fitness for duty evaluation will be completed by an independent physician, as is the case with all of our fitness for duty examinations. Based on Mr. Nawara's behavior in the workplace, we believe there is a clear business necessity, and we believe our HIPAA release meets legal requirements. It is not unlimited in time, as you suggest.

I indicated in my previous letter that it was necessary for us to receive Mr. Nawara's signed medical release paperwork by March 20, 2017 in order to proceed with the fitness for duty process. This will be extended until Wednesday, March 22, 2017. If the signed paperwork is not received by that date, Mr. Nawara's absences from November 2016 will be re-coded as unauthorized.

Rebecca Reierson
Cook County Sheriff's Office
Bureau of Human Resources
3026 S. California Avenue, Building 2
Chicago, IL 60608
P (773) 674-8534
F (773) 674-8168
rebecca.reierson@cookcountyil.gov

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## HIPAA AUTHORIZATION FOR DISCLOSURE OF PROTECTED HEALTH INFORMATION

I, JOHN A. NAWARA authorize the Independent medical exam or fitness for duty exam physician to disclose protected health information ("PHI") about me as described below in this Authorization:

1. With this authorization, I allow all medical records and information to be released and reviewed that relates to my fitness for duty exam to CorVel Corporation.

2. Any health care provider or facility who treats/treated me for my medical condition or medical illness ("Identified Health Care Providers") may disclose the above-described information to a Disability Management Case Manager, for Cook County, employed by CorVel Corporation.

3. This disclosure is made for the purposes of your Fitness for Duty Examination as requested by your employer, Cook County. Your employer will receive a copy of the Independent Medical Exam (IME). You will also receive a copy of the IME.

4. I understand that the Identified Health Care Providers are not conditioning my treatment, payment, enrollment, or eligibility for benefits on whether I agree to sign this authorization.

5. I understand that the information disclosed pursuant to this authorization may no longer be protected by the federal health privacy rule (otherwise known as HIPAA) and may be subject to re-disclosure by the recipient.

6. I understand that I have the right to revoke this authorization in writing at any time by sending a letter to the Privacy Officer of the Identified Health Care Providers for my medical condition or medical illness as described above, and that the effective date of my revocation will be the date the Privacy Officer receives it. I further understand that any revocation will be effective only to the extent that Identified Health Care Providers has not already taken action in reliance on this authorization.

7. This authorization allows for the release of medical records produced as the result of treatment provided prior to the date of expiration of this authorization.

8. This Authorization shall expire one year from the date of my signature to this authorization, below.

JOHN A. NAWARA
Printed Name (of person giving authorization)

[redacted]0028
Social Security Number

John A. Nawara
Signature of person giving authorization

08-17-2017
Date

Signed______________________________
*(If applicable, Power of Attorney, Guardian, or Conservator. Attach a copy of document granting authority.)*

This document contains confidential information of a claimant and may not be disclosed or duplicated without prior written consent of CorVel.

**CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER**

# Cook County Referral Form

Date: 08/25/2017
Employee Name: John Nawara
DOB: [redacted]
Employee Contact #: [redacted]
Home Address: [redacted]
Job Description/Occupation: Correctional Officer

Reason referring (any specific questions to address): Employee's aggressive, physically intimidating and inappropriate behavior directed toward his superior officer in response to a routine directive. In addition, weeks later, employee presented as aggressive and hostile in the human resources department.

- Looking to determine if employee is able to perform the essential functions of his job, which require he maintain composure and respond appropriately in a high stress environment, including exhibiting proper behavior toward detainees and his superior officer. Position requires this individual can diffuse disruptive behavior verbally and, if escalated, effectively and properly use limited force on problematic and combative inmates.

- Employer has concerns about anger management, including his ability to manage a detainee population without losing his temper.

Referral contact name and number:

Winifred Shelby, Occupational Health Nurse
773 674 8535

**CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER**

SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS
South Campus – 3026 S. California - Building 2, 1ST Floor, CHICAGO, IL 60608
**THOMAS J. DART**
SHERIFF
**MEDICAL DIVISION**
Bureau of Human Resources

---

JOHN NAWARA — Name
C.O. — Title

Address ____________ Phone

D.O.C/EX OPS — Department

NO — Injury on Duty Date

IT IS MY OPINION THAT THE CONDITION OF THE PERSON NAMED ABOVE IS SUCH THAT HE OR SHE CAN RETURN TO WORK ON 09/27/2017
THERFORE I HAVE ADVISED HIM/HER TO REPORT TO HIS/HER DEPARTMENT AT THIS TIME.

HOWEVER, ALL THE RESTRICTIONS (IF LISTED BELOW) ARE PER THE DISCRETION OF THE SHERIFF'S OFFICE, ONLY IF THEY CAN BE ACCOMMODATED FOR THE ABOVE JOB TITLE. (UPDATED MEDICAL DOCUMENTATION MUST BE PRESENTED WHEN THE EMPLOYEE RETURNS FOR RE-EVALUATION)

---

*******PER FFD*******
FULL DUTY
NO RESTRICTIONS

[signature]
Winifred Shelby, RN, CCM

9/26/2017
Date

RE-EVALUATION DATE NA

---

I HAVE REVIEWED THE ABOVE RESTRICTIONS AND WHILE UNDER THESE RESTRICTIONS, THIS EMPLOYEE:

☐ CAN ☐ CANNOT BE ALLOWED TO CARRY A WEAPON ON BEHALF OF THE CCSO

SIGNATURE & TITLE ______________________ DATE ____________

CCSO_000180
**Exhibit K**

# EXHIBIT 5

*COOK COUNTY DEPARTMENT OF CORRECTIONS*
*MEMORANDUM*

| | | |
|---|---|---|
| TO: | **Karyn Williams, Executive Director**<br>Bureau of Human Resources | **DATE:** 09/29/16 |
| **FROM:** | Matthew Burke, Chief of Staff | |
| **SUBJECT:** | **Fitness for Duty** | |

Pursuant to the attached documentation, I am requesting that Ofc. John Nawara, JDE#378032, Cermak, 7-3 Shift Detail 7, be evaluated for fitness for duty.

C: Nneka Jones Tapia, Executive Director
Tarry Williams, DOC Chief of Operations

I certify, that no political reasons or factors were considered in any decision I made or action I took relating to this employment action. Further, I do not know of, or have any reason to believe that, anyone else considered or took action based on political reasons or factors with respect to this employment action.

SIGNATURE

Matt Burke



CCSO_000025
Exhibit 5

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF COOK, *et al.*,<br><br>Defendants. | Case No. 17-cv-02393<br><br>Judge Rebecca R. Pallmeyer |

**PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**
**DIRECTED TO DEFENDANT THE COOK COUNTY SHERIFF'S OFFICE**

Plaintiffs JOHN NAWARA, through his undersigned counsel, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, requests Defendant produce its written responses to Plaintiff's Request for Production within thirty (30) days from the date of service of this request. These requests are continuing in nature and Defendant is required and requested to regularly supplement their answers. The instructions and definitions to be utilized in complying with this request are set forth in Plaintiff's First Request for Production.

1. All documents, including but not limited to memorandum, letters, correspondence, communications, text messages, social media, reports, notes, calendars, emails, excel, PDFs, investigation files, discipline files, supervisors files, desktop files, or my document files, OPR database, logs, and/or any other hard copy or electronic documents, relating or referring to or containing the following search terms for the following custodians, including the document in its original and native format and

**Exhibit 6**

including any electronic copies with all metadata intact, of any document related to any investigation and/or employment decision relating to Plaintiff, from January 1, 2016 to the present:

a. Custodians (or any variation of):

(1) Bryant, M. (Lieutenant, Badge No. 621)
(2) Brogan, Richard
(3) Burke, Matthew
(4) Dart, Thomas
(5) Egan, Robert
(6) Ertler, Dawn
(7) Gannon, Barbie
(8) Johnsen, Jeff
(9) Jones, Nneka
(10) Jones-Hayes, Karen
(11) Nawara, John
(12) Nolan, Rosemarie
(13) Reierson, Rebecca
(14) Rodriguez, Louise (notary)
(15) Shelby, Winifred
(16) White, Jessica
(17) OPR Server
(18) Pagani, OPR Investigator
(19) Rentas, Miriam
(20) Rivera, OPR Investigator

b. Search terms (Not case sensitive; w/ = proximity to second word):

(1) nawara
(2) "anger management"
(3) "complaint register"
(4) "fitness for duty" OR ffd
(5) "isaac ray"
(6) "unpaid leave"
(7) ADA
(8) aggressive
(9) burruss
(10) complain!

(11) corvel /50 release OR medical
(12) disability OR disable!
(13) disciplin!
(14) discrimination
(15) disposal OR destroy OR remove
(16) EEOC
(17) egan (but not Egan's email)
(18) harass!
(19) high stress
(20) hipaa OR hippa
(21) hostile
(22) IDHR
(23) inappropriate
(24) intimidating
(25) investig!
(26) kroll
(27) lawsuit
(28) leave /20 absent! OR absent! /20 leave
(29) nawara (except his emails)
(30) OPR (except OPR)
(31) political
(32) rage
(33) retaliate! OR retaliation
(34) sarocka
(35) SORT
(36) suspension OR suspend OR suspended
(37) temper
(38) terminat!
(39) "september 28"
(40) "september 28" AND video OR camera OR recording
(41) jones-hayes AND incident OR (1-40 above)
(42) rierson AND incident OR (1-40 above)
(43) shelby AND incident OR (1-40 above)
(44) burke AND incident OR (1-40 above)
(45) johnsen AND (1-40 above)
(46) jones AND (1-40 above)
(47) gannon AND (1-40 above)

Respectfully submitted,

JOHN NAWARA

***/s/Dana L. Kurtz***

Attorney for Plaintiff

Dana L. Kurtz
KURTZ LAW OFFICES, LTD.
32 Blaine Street
Hinsdale, Illinois 60521
Phone: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing **PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT THE COOK COUNTY SHERIFF'S OFFICE** was served upon all parties by electronic mail on March 2, 2018.

| | |
|---|---|
| Kathleen Ori | kathleen.ori@cookcountyil.gov |
| Nile Miller | nile.miller@cookcountyil.gov |
| | |
| Suzanne Alexander | salexander@scharfbanks.com |
| Morgan Churma | mchurma@scharfbanks.com |
| George Sax | gsax@scharfbanks.com |
| Sarah Marmor | smarmor@scharfbanks.com |
| Stephanie Scharf | sscharf@scharfbanks.com |

***/s/Dana L. Kurtz***

Dana L. Kurtz

# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NAWARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 17-cv-2393 |
| | ) | |
| COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities, | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF FABIO VALENTINI**

I, Fabio Valentini, pursuant to 28 U.S.C. § 1746, depose and state the following based on my personal and first-hand knowledge:

1. I am over 18 years of age and am employed as the Executive Director of the Office of Professional Review at the Cook County Sheriff's Office ("CCSO").

2. I have been employed by the CCSO since March 12, 2017, and as Executive Director of the Office of Professional Review ("OPR") since that time.

3. The OPR is responsible for handling, processing, and investigating allegations of misconduct against CCSO employees. In my role as Executive Director of the OPR at the CCSO, I am responsible for overseeing all investigations into those complaints of employee misconduct.

4. On or around December 19, 2017, I was informed by Joellen Bailey, Bureau Chief, that Ms. Williams had made allegations to her and allegedly had also submitted a complaint to the Office of the Independent Inspector General ("OIIG"). Ms. Bailey asked me to initiate an investigation into Ms. Williams' allegations.



Exhibit 7

5. As part of that investigation, I interviewed Ms. Williams on January 8, 2018. Additionally, we exchanged emails over the next several months.

6. On or about January 16, 2018, OPR received a formal Complaint Register against Karyn Williams alleging employee misconduct. In this Complaint Register, it was alleged that Ms. Williams had behaved inappropriately in dealing with Payroll Director Helen Cohn.

7. As Executive Director of OPR, I personally handled the investigation into Ms. Williams' complaints.

8. I also personally handled the investigation into the allegations against Ms. Williams.

9. As part of the latter investigation, I interviewed Ms. Williams on April 16, 2018. At that interview, Ms. Williams was accompanied by and represented by Ms. Dana Kurtz of the Kurtz Law Firm.

I declare under penalty of perjury that the foregoing is true and correct.

FURTHER DECLARENT SAYETH NOT

Dated this 6th day of July 2018.

__________________________

Fabio Valentini

# EXHIBIT 8

Attorney No. 10295

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**CHANCERY DIVISION**

| | | |
|---|---|---|
| STEVEN TATE, JAMES TYLKA, JOSEPH CRAWFORD, SCOTT BRATLIEN, EDWARD BYRNE, JAMES SHEAHAN, KATIE JOHNSON, BERNESSA TATE, HOPE McGEE, FRANK ARCE, SAMUEL CLEMONS, VINCE COZZOLINO, MICHAEL WRIGHT, RICHARD DOMINGUEZ, ANGELA LEWIS, SHARON WALLS, and JACK PAN, | ) | |
| Plaintiffs, | ) | |
| v. | ) | 18 CH 02749<br>Judge Mitchell |
| THOMAS J. DART, et. al. | ) | |
| Defendants. | ) | |

FILED - CH
CLERK OF THE CIRCUIT COURT
CHANCERY DIVISION
2018 MAY 15 AM 9:56

**DEFENDANTS' MOTION**
**TO DISQUALIFY PLAINTIFF'S COUNSEL, DANA KURTZ**

NOW COME the Defendants, THOMAS J. DART, ZELDA WHITTLER, MATTHEW BURKE, JOELLEN BAILEY, BRAD CURRY, TARRY WILLIAMS, HELEN BURKE, NNEKA JONES, JEFF JOHNSEN AND THE COUNTY OF COOK, by their counsel, Cook County State's Attorney, Kimberly Foxx, through her Assistant, Megan Inskeep, and in support of their motion to disqualify Plaintiff's counsel, Dana Kurtz, and her law firm from this matter, states as follows:

**BACKGROUND**

1. Plaintiffs have filed a lawsuit alleging the retaliatory discharge of various Commanders in the Cook County Sheriff's Office ("CCSO") stemming from the November 20, 2017 County-wide layoffs in response to budget cuts for the 2018 fiscal year.

**Exhibit 8**

2. Plaintiffs claim the elimination of the rank of Commander was in direct retaliation of Teamsters Local 700 filing before the Illinois Labor Relations Board in 2013 to certify Commanders, a non-Merit rank position, under the collective bargaining agreement. (L-CR-14-004) Essentially, Plaintiffs allege the Commanders were laid off because of their attempts to unionize.
3. Defendants have not yet filed responsive pleadings but deny all claims as alleged and will be filing various motions to dismiss Plaintiffs' claims in their entirety. Commanders were not a merit rank position and are not contemplated or codified in the Merit Board Statute; as such, commanders enjoy not protection under the Merit Board Statute.
4. The County of Cook and the Cook County Sheriff, Thomas Dart, the office of Sheriff, as well as various senior department heads and directors within the CCSO and the Cook County Department of Corrections (CCDOC, a division within the CCSO) are sued as defendants. Specifically the following are individually named:

| | |
|---|---|
| a. Thomas Dart | Cook County Sheriff |
| b. Zelda Whittler | Undersheriff |
| c. Matthew Burke | Chief of Staff, CCDOC |
| d. Joellen Bailey | Chief Performance Officer and Chief of Human Resources, CCSO |
| e. Brad Curry | Chief Operating Officer, CCSO |
| f. Tarry Williams | Deputy Chief Operating Officer, CCDOC |
| g. Helen Burke | Chief Legal Officer, CCSO |
| h. Nneka Jones | Executive Director, CCSO |
| i. Jeff Johnson | Chief Operating Officer, CCDOC |

5. On March 19, 2018, the Cook County State's Attorney's Office has filed appearances on behalf of the County, the Sheriff's Office, and all individually named defendants.

6. Due to the nature of the claims alleged, all department heads and directors are representative parties, duly represented by the State's Attorney's Office as counsel of record. This includes both named and unnamed parties who would provide discovery materials, and/or oral depositions in this matter.

7. Karyn Williams is the Executive Director of Human Resources for the CCSO. Conspicuously, she is not named in Plaintiffs' complaint.

8. As Executive Director of Human Resources, Williams oversaw and managed many executive levels functions within the CCSO tasked to her Department including recruitment, hiring, leave management, credentials and deputization management, risk management and terminations.

9. As Executive Director of Human Resources, Williams was involved in and knew of executive level processes and decision-making that are subject to attorney-client, work product and deliberative process privilege.

10. As Executive Director of Human Resources, Ms. Williams has information that will surely be requested in the pendency of this matter. Defense counsel had every intention of interviewing Ms. Williams, requesting documentation from Ms. Williams, disclosing Ms. Williams as a controlled and potential witness, and possibly representing Ms. Williams at any deposition she may give in this matter.

11. Upon information and belief, Karyn Williams was recently interviewed by the Office of Professional Responsibility (OPR) regarding her position as

Director of Human Resources for the CCSO. Plaintiff's counsel in the present case of *Tate v. County*, Dana Kurtz, represented Ms. Williams at the OPR hearing.

12. Additionally, Kurtz has recently indicated to the CCSO she represents Williams with regards to Williams' recent termination from the CCSO.

13. Upon information and belief, Dana Kurtz has had communications with Ms. Williams as Director of Human Resources for the CCSO that directly relate to the subject matter of the present case, specifically the Commander layoffs.

14. Upon information and belief, Dana Kurtz has become privy to information which would be deemed confidential by the Cook County Sheriff's Office.

15. Dana Kurtz is well aware of the executive level position Williams held at the CCSO and that the position involves policy making, confidentiality and a fiduciary duty to the CCSO.

16. On multiple occasions, Kurtz Law has sued Rosemarie Nolan, the former Director of the CCSO Personnel Department (the smaller pre-cursor to the Department of Human Resources). In four lawsuits, Kurtz has sued Nolan in both individual and official capacities as the Executive Director of the Personnel Department supporting the latter claim in each lawsuit generally as follows:

> At all times relevant hereto, Defendant Nolan has served at the discretion and pleasure of the Sheriff. Defendant Nolan is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein. The Sheriff delegated final policy making authority to Defendant Nolan with regard to her acts and conduct alleged herein.[1]

---

[1] Those four lawsuits filed in the Unites States District Court, Northern District of Illinois are:

17. In all four lawsuits and other matters, the SAO identified Nolan as an executive level employee and under the control of the SAO because she served as Director of the Personnel Department.

18. Additionally, in at least three cases, Kurtz has deposed Nolan in her capacity as Director of the Personnel Department. In all depositions, Nolan was represented by the SAO or Special State's Attorneys representing both Nolan and the CCSO in the litigation. The depositions, some in cases still pending, were taken to establish and understand the executive level role Nolan had in the CCSO.

19. Kurtz has sued the CCSO numerous times, more than 20 individual lawsuits, regarding employment related matters.

**LEGAL STANDARD**

20. The American Bar Associations Model Rules on Ethics state that a lawyer shall not communicate with a person the lawyer knows to be represented by another lawyer in the matter. (ABA Model Rules 4.2.)

21. The Illinois Rules of Professional Conduct state that a lawyer shall not unlawfully obstruct another party's access to evidence. (IRPC, 3.4.)

22. A motion to disqualify counsel requires a two-step analysis where a court (1) considers whether there is an ethical violation and if so, then, (2) determines whether disqualification is appropriate to remedy the violation. *alfaCTP Sys. v. Nierman*, 2016 WL 687281, at *4 (N.D. Ill. Feb. 19, 2016).

---

1:13-cv-04271 Bless v. Cook County Sheriff's Office et al filed 06/07/13. This care remains PENDING.
1:13-cv-07163 Michno v. Cook County Sheriff's Office et al filed 10/04/13. This care remains PENDING.
1:13-cv-07949 Hernandez v. Cook County Sheriff's Office et al filed 11/05/13. This care remains PENDING.
1:15-cv-06404 Hower v. Cook County Sheriff's Office et al filed 07/22/15

## ARGUMENT

23. Plaintiff's counsel is a seasoned attorney and well aware of representative parties, such as department heads and directors, and their representation through counsel.

24. Though not individually named, Karyn Williams, as the Director of Human Resources, would clearly be a key witness in this case in her official capacity as the Executive Director of Human Resources. The Cook County State's Attorney's Office by law, 55 ILCS 5/3-9005(a)(4), and fact represents the CCSO, Sheriff Dart, all executive level employees and generally all employees (save, here, the present plaintiffs who are suing the Sheriff) in all litigation filed against them.

25. In any lawsuit naming the Sheriff and/ or the Sheriff's Office, the CCSAO routinely identifies executive directors as being within the control group and under the control of the defense counsel as they have done in the 20 plus lawsuits filed by Kurtz. Requested depositions of CCSO employees are served by notice to the CCSAO and the CCSAO produces those employees as direct clients.

26. The present litigation involves CCSO's executive level decisions in reducing the CCSO's budget in light if the 2018 fiscal year budget crisis resulting from the Cook County Board of Commissioners' rescission of the Sweetened Beverage Tax. Plaintiffs claim the decisions to eliminate their position within the Cook County Department of Corrections was made in retaliation for protected activities and against Illinois law.

27. Williams, in her capacity as Executive Director of Human Resources, has information regarding the forced layoffs and may have information regarding efforts by the CCSO to avoid layoffs through other cost-saving measures, including the possibility of consolidating Human Resource functions with Cook County.

28. Given the present litigation and the numerous pending employment related matters involving the CCSO, Kurtz knew or should have known that Williams held an executive level position within the CCSO, one requiring confidentiality and possession of privileged information, and thus a member of the control group and under the representation of the CCSAO.

29. Any documentation, including but not limited to emails or interoffice memorandum that Ms. Williams may have shared with Plaintiff's counsel either of her own accord or at counsel's request, is the property of the CCSO, not of Ms. Williams personally, and disclosure of such information may be a violation of the confidentiality and privileged nature of those documents.

30. It would be highly inappropriate and unethical for Plaintiff's counsel to use information obtained from a represented CCSO executive director in the prosecution of the instant case, *Tate v Dart*, especially given Kurtz's clear understanding of the CCSO and through the multiple lawsuits she has filed against the CCSO.

31. By communicating directly with and, in fact, representing, Karyn Williams, Plaintiff's counsel has violated the ABA rules, IRPC rules and irreparably harmed defense counsel's ability to represent her clients and mount a defense to the allegations as pled.

32. A court may disqualify an attorney who willfully violates the rule forbidding communications with a represented party. See *Weeks v. Independent School Dist. No.* I-89, 230 F.3d 1201, 1211 (10th Cir. 2000); *Trimper v. Terminix Int'l Co.*, 82 F. Supp. 2d 1, 6 (N.D.N.Y. 2000); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1085 (S.D.N.Y. 1989). This is true even if the represented party initiated the communications. See *Shelton v. Hess*, 599 F. Supp. 905, 911 (S.D. Tex. 1984) (disqualifying an attorney who failed to terminate communications initiated by a party whom the attorney knew to be represented by counsel).

33. Disqualification is appropriate in this situation because an attorney who engages in communications with a party whom he knows to be represented by counsel has not merely committed an ethical violation, but also has potentially acquired that party's confidential information through improper means. See *Papanicolaou*, 720 F. Supp. at 1086; *Shelton*, 599 F. Supp. at 910. See also *Vill. Of Tinley Park v. Connolly,* 218 U.S. Dist. LEXIS 26279 (Defendant's attorney disqualified because attorney had previously engaged in privileged and confidential conversations with former mayor and city manager of plaintiff Village.); *Schiessle v Stephens,* 717 F. 2d 417 (1983) (one of plaintiff's attorneys disqualified because she originally represented some defendants.)

34. In this matter, the only appropriate remedy for Dana Kurtz's representation of Karyn Williams is for the Kurtz Law Office to be summarily disqualified from the present case.

WHEREFORE, the Defendants, THOMAS J. DART, ZELDA WHITTLER, MATTHEW BURKE, JOELLEN BAILEY, BRAD CURRY, TARRY WILLIAMS, HELEN BURKE, NNEKA JONES, JEFF JOHNSEN AND THE COUNTY OF COOK, respectfully request this Honorable Court enter an order:

A. Disqualifying Dana Kurtz and her law firm from the present matter of *Tate v. County;*

B. Barring Dana Kurtz and her law firm from utilizing any information provided by Karyn Williams, either orally or in writing, in the prosecution of this matter;

C. Requiring Dana Kurtz and her law firm to produce to the court for in-camera inspection and production to the defense any and all materials, emails, documents, memorandums, or notations of telephone or in-person conversations held with Ms. Williams regarding any and all issues outside of the OPR investigation; and

D. For any further relief this court deems reasonable and just.

Date: May 16, 2018

Respectfully Submitted,
KIMBERLY M. FOXX
COOK COUNTY STATE'S ATTORNEY

By: /s/ Megan Inskeep

Megan Inskeep
Assistant State's Attorney
Labor & Employment Unit
Civil Actions Bureau
536 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-1902
megan.inskeep@cookcountyil.gov

Attorney No. 10295

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**CHANCERY DIVISION**

| | | |
|---|---|---|
| STEVEN TATE, JAMES TYLKA, JOSEPH CRAWFORD, SCOTT BRATLIEN, EDWARD BYRNE, JAMES SHEAHAN, KATIE JOHNSON, BERNESSA TATE, HOPE McGEE, FRANK ARCE, SAMUEL CLEMONS, VINCE COZZOLINO, MICHAEL WRIGHT, RICHARD DOMINGUEZ, ANGELA LEWIS, SHARON WALLS, and JACK PAN, | ) | FILED - CH 2018 MAY 16 AM 9:55 CLERK OF THE CIRCUIT COURT CHANCERY DIVISION |
| Plaintiffs, | ) | |
| v. | ) | 18 CH 02749 |
| THOMAS J. DART, et. al. | ) | Hon. Judge Raymond Mitchell<br>Calendar 2 |
| Defendants. | ) | |

**NOTICE OF MOTION**

TO: Dana L. Kurtz
**Kurtz Law Offices, LTD**
32 Blaine Street
Hinsdale, Illinois 60521
dkurtz@kurtzlaw.us

On **May 23, 2018** at 10:15 **a.m.** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Judge Raymond Mitchell** in the courtroom usually occupied by him in **Room 2601**, Daley Plaza, Chicago Illinois, and present the attached **Defendants' Motion to Disqualify Plaintiff's Counsel, Dana Kurtz**.

By: /s/ Megan Inskeep
Megan Inskeep

**CERTIFICATE OF SERVICE**

I, Megan E. Inskeep, Assistant State's Attorney, hereby certify that I caused a copy of the aforementioned document to be served via Electronic mail before 5:00 p.m. on **May 16, 2018**.

/s/ Megan Inskeep

Labor & Employment Unit
Civil Actions Bureau
COOK COUNTY STATE'S ATTORNEY'S OFFICE
536 Richard J. Daley Center
50 W. Washington Street
312/603.1902
Chicago, Illinois 60602
megan.inskeep@cookcountyil.gov
ARDC 6271249

# EXHIBIT 9

SCHARF
BANKS
MARMOR LLC

333 West Wacker Drive, Suite 450
Chicago IL 60606 • (312) 726-6000
www.scharfbanks.com

**Reply directly to:**
Sarah R. Marmor
312-662-6197
SMarmor@scharfbanks.com

May 25, 2018

**VIA EMAIL**
Dana Kurtz
KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois 60521
Email: dkurtz@kurtzlaw.us

**RE: Representation of Karyn Williams and Discovery Matters**

Dear Dana:

I do not relish sending this letter. Some serious matters have arisen related to this case that need to be addressed in short order.

*First,* it has come to our attention that you represent Karyn Williams, who was until recently the Executive Director of Human Resources at the Cook County Sheriff's Office. As detailed below, it appears that your representation of Ms. Williams began before she left the Sheriff's Office and could violate Rules 4.2 and 4.4 of the Rules of Professional Conduct. Given the circumstances of this case, your representation of Ms. Williams appears to us to give rise to a motion to disqualify you from continued representation of Mr. Nawara in this case. We want, however, to give you the opportunity to address these matters before we decide whether to bring them to the Court's attention.

*Second*, your conduct with regard to the CorVel subpoena raises significant concerns that you are seeking to hide information from the Defendants in the case. We do not believe that conduct is warranted, nor do we believe you may interfere with Defendants' subpoena to CorVel. As discussed further below, you are invited to clarify your position before we resubmit the subpoena.

*Third,* we have been trying for over seven weeks to work out discovery disputes with you in this case. Rather than reach closure on those disputes, it appears that you have opted simply to

**Exhibit 9**

seek materials to which we have objected by means of FOIA requests. We have concerns about this effort to do an end-run around an orderly discovery process.

***Representation of Ms. Williams***

Documents and discovery responses in this case demonstrate that Ms. Williams has knowledge of the John Nawara matter as part of her role as the Executive Director of Human Resources at the Cook County Sheriff's Office. Indeed, Ms. Williams was the person to whom the original fitness for duty request was sent by Defendant Matthew Burke, Chief of Staff for the Department of Corrections. That request was produced to you in this case in August of 2017, (CCSO_000025), and pleadings from April 2017 in the TRO in this case put you on notice of Ms. Williams's knowledge of the Fitness for Duty referral that is central to this case. (See 4/11/17 Defs. Resp. to Motion for TRO, Dkt. #8). In addition, at various stages of this dispute, Ms. Williams had multiple conversations about Mr. Nawara's claims with internal counsel for the Sheriff's Office as well as with the State's Attorneys originally assigned to this case. Further, it is our understanding that you began representing Ms. Williams *before* her employment at the Sheriff's Office was terminated and that you have taken the position that certain materials were provided to you related to work place matters that you have refused to turn over to the Sheriff's office. We do not know the contents of those materials.

That Ms. Williams was privy to confidential and privileged personnel information was entirely consistent with her role. Indeed, Ms. Williams was subject to a Confidentiality Agreement with her employer in which she agreed as a condition of her employment that she would not disclose Confidential Information, directly or indirectly, "or use or copy such information in any manner either during the term of my employment or at any time thereafter except as required in the course of my employment." "Confidential Information" is defined in the Agreement to include:

> information of a confidential nature including but not limited to **personnel**, law enforcement and/or corrections information, **proprietary information or information related to legal actions.** Such information may include (but not be limited to) **information acquired from the Sheriff of Cook County, the Sheriff's Executive Office, Legal Affairs Department, Personnel Department, Office of Professional Review, the Sheriff's employees and agents, former employees and any and all documents and information reviewed, received, obtained or generated as a result of my employment.**

(Key phrases are highlighted). We have very significant concerns that Ms. Williams may have violated her Confidentiality Agreement with the Sheriff's Office both before and after the term of her employment ended.

Your representation of Ms. Williams under these circumstances raises serious challenges to your continued representation of Mr. Nawara in this matter. *First*, attorneys may not represent a party where an attorney's other client has provided or is likely to provide the attorney with

confidential information. *Coburn v. DaimlerChrysler Servs. N. Am., L.L.C.*, 289 F. Supp. 2d 960, 963-68 (N.D. IL 2003) (granting motion to disqualify counsel where counsel was likely to have obtained Chrysler's confidential information through the additional representation of Chrysler's former employee); *see also Garfinkel v. Mager*, 57 So. 3d 221, 224 (Fla. Dist. Ct. App. 2010) ("A party does not have the right to an attorney possessing confidential information of the adversary so as to provide the party with an unfair informational or tactical advantage."); *Gilbert v. Nat'l Corp. for Hous. P'ships*, 71 Cal. App. 4th 1240, 1254 (1999) ("[T]he importance of a client's ability to retain the attorney of his or her choice . . . must yield to the even more important public policy of maintaining the integrity of the judicial process."). The issue is whether your representation of Ms. Williams gives rise to a presumption that you unfairly have gained access to the Sheriff's confidential or privileged information.

There can be no doubt that Ms. Williams engaged in confidential and privileged communications regarding her work as Executive Director of Human Resources and employee disciplinary matters, including the Nawara dispute. Ms. Williams was Defendant Reierson's immediate supervisor and received internal confidential and attorney-client privileged information regarding Mr. Nawara's allegations. Given her close proximity and actual involvement in Mr. Nawara's inquiry and lawsuit, we expect a court would apply the presumption that confidential and privileged information could have been disclosed to you in your representation of Ms. Williams. *Coburn*, 289 F. Supp. 2d at 964 ("if a court finds that there is a substantial relationship between [the former employee's] work and claim, the court will presume that she obtained confidential information while working for Defendant and provided that confidential information to Plaintiff's counsel when she hired them to represent her."). A representation is especially problematic where, as here, one party gains an unfair advantage by receiving confidential information pursuant to his attorney's dual representations. *United States v. Floyd*, 1988 U.S. Dist. LEXIS 2047, *16 (N.D. IL 1988) ("The government and public interests in eliminating the possibility that any party will receive an unfair advantage weigh heavily in favor of disqualification.").

*Second*, your contact with and representation of Ms. Williams prior to her termination appears to violate Rule 4.2's prohibition on contact with a represented party. Rule 4.2 states that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." ABA Model Rule 4.2; *see* LR 83.50 ("Applicable disciplinary rules are the Model Rules adopted by the American Bar Association."). Comment (7) to Rule 4.2 provides that

> [i]n the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

In her capacity as Executive Director of Human Resources, Ms. Williams handled a broad range of employment related matters and had authority to affect the direction of the Sheriff's Office's disciplinary measures, including the process for fitness for duty evaluations. The present lawsuit is framed as an employment dispute over Mr. Nawara having been referred to Human Resources, the department that Ms. Williams directly supervised. Documents produced and responses in discovery in this case show Ms. Williams was both a person with knowledge of this lawsuit and a represented party in her capacity as an employee at the Sheriff's Office. (*See, e.g.*, CCSO_000025; CCSO_000130-131; NAWARA_000001; Defendant Burke's Answers to Nawara's First Interrogatories 2 & 3; Certain Defendants' Second Supplemental Responses to Plaintiff's First Request for Production to Requests 1 & 2.)

*Third*, any receipt by you of materials prepared by Ms. Williams related to and prepared during her employment at the Sheriff's Office appears to violate Rule 4.4. Rule 4.4 precludes an attorney from obtaining evidence that violates the legal rights of an organization through communications with a current or former constituent of the organization. *See* ABA Model Rule 4.4; ABA Model Rule 4.2 comment (7). Materials prepared by Ms. Williams as well as information she possessed prior to her termination relating to her senior role at the Sheriff's Office are the property of the Sheriff's Office, and Ms. Williams did not have authorization from the Sheriff's Office to provide anyone with these materials or information. As such, the Sheriff's Office has a legal right to these materials and information, and through your pre-termination representation of Ms. Williams (and perhaps thereafter), it appears that you have obtained evidence in this matter that violates the legal rights of the Sheriff's Office.

As noted above, we want to give you an opportunity to respond to these issues. If you believe the facts or law do not warrant a motion to disqualify, we would like to know the basis for your position before we bring any of this to the Court's attention.

***The CorVel Subpoenas***

I understand that you have no objection to production of documents in response to Requests 2 and 4 of the CorVel subpoena we have prepared – seeking HIPAA forms used by CorVel related to fitness for duty examinations from 2016 to the present and correspondence between you and CorVel or its agents. However, you have raised an issue with our Requests 1 and 3, which seek documents related to Mr. Nawara and/or his fitness for duty examination, and documents that were produced pursuant to any other subpoena in this case. This of course includes your previously served subpoena to CorVel. As a threshold matter, we do not understand your objection since you have placed Mr. Nawara's fitness for duty examination directly at issue in this litigation and indeed requested these very documents from CorVel yourself. Moreover, you produced medical records in this case months ago without any claim of confidentiality or other privacy issue.

Of even more concern is information we learned from counsel for CorVel – specifically that you re-wrote the HIPAA release form they proffered in such a way as to preclude the Defendants from getting the documents that CorVel is providing pursuant to your subpoena

regarding Mr. Nawara's fitness for duty exam. We understand that your revision to the form also gives you the sole right to pick and choose which of the documents that CorVel produces in response to your subpoena you will turn over to Defendants in this case. That is why we prepared our subpoena, since it appears you are trying to interfere with our access to the information you are receiving from CorVel.

Unless you can provide us with a sufficient legal basis for your objection regarding these documents, we will serve the subpoena on Thursday, May 31, 2018.

***Use of FOIA Requests While Discovery Disputes are Pending***

On May 18, 2018 my colleagues raised with you concerns about your repeated use of FOIA requests as a means of avoiding the normal discovery process in this case and making an end-run around our objections. Federal courts repeatedly have said that FOIA requests are not a substitute for discovery. *Appleton Paper, Inc. v. EPA*, 702 F.3d 1018 (7th Cir. 2012); *see Baldrige v. Shapiro*, 455 U.S. 345, 360 n.14 (1982) ("The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery"); *see also Miller v. Bell*, 661 F. 2d 623, 626 (7th Cir. 1981), cert. denied, 456 U.S. 960 (1982). The authority you have provided us on this topic merely holds that citizen – including private litigants – may use FOIA to obtain public documents; that is, there is no exception under FOIA that prohibits the release of public documents merely because those documents are sought for purposes of litigation against the governmental agency. But the fact that there is no explicit bar under FOIA to obtaining the documents in question says nothing about whether the district court should take into consideration your FOIA requests in imposing limitations on discovery in the pending litigation.

Our concern is that your FOIA requests effectively make a mockery of the efforts we are engaged in both to ensure that relevant information is provided in this case, and that our objections are managed in an orderly manner. Thus, we ask that you withdraw your pending FOIA requests to allow for the orderly management of discovery in a single proceeding.

Given the sensitivity of these matters we need a response from you by May 30, 2018.

Very truly yours,

Sarah L. Marmor/at

Sarah R. Marmor

SRM/at
cc: Heidi Sleper
Jacob Exline

# EXHIBIT 10

KURTZ LAW OFFICES, LTD

June 1, 2018

**<u>Via Electronic Mail</u>**
Sarah R. Marmor
Lynn Moffa
Scharf Banks Marmor LLC
33 West Wacker Drive, Suite 450
Chicago, IL 60606
Phone: 312-726-6000
Email: smarmor@scharfbanks.com
Email: lmoffa@scharfbanks.com

Re: *Nawara v. CCSO, et al.*,
Response to Letter of May 25, 2018 regarding "Representation of Karyn Williams and Discovery Matters"

Dear Sarah:

This letter is in response to your letter of May 25, 2018. As is discussed in more detail below, we disagree with your stance on the issues in the May 25th letter. First and foremost, Ms. Williams does not have, and has not divulged, any confidential information regarding Plaintiff Nawara and the issues surrounding his claims. Further, your concerns regarding the subpoenas are a non-issue, as all relevant, responsive documents will be produced. Finally, as was clear with the case law provided to you on May 24th, which you apparently did not read as the *Cunniff* case is directly on point, FOIAs and discovery requests are two separate and different vehicles for the request of documents and there is nothing improper about the use of either.

**Representation of Ms. Williams**

It is unclear from what evidence your belief that Ms. Williams has confidential information arises out of. The only document that even contains Ms. Williams' name that you have produced is a single memorandum from Defendant Matthew Burke to Ms. Williams (CCSO_000025). This memo has no substance, containing one sentence of barely two lines. Defendants have not produced a response by Ms. Williams and, from the documents produced and our knowledge of the case as it is, Ms. Williams had

nothing to do with Plaintiff's Fitness for Duty or any other aspect of this case. Similarly, Defendant's Response to Plaintiff's Motion for TRO (Dkt. #8) does nothing more than restate CCSO_000025 and does not allege that Ms. Williams had any role in Plaintiff's Fitness for Duty referral. Further, Defendant Burke's Answers to Nawara's First Interrogatories 2 & 3, and Certain Defendants' Supplemental Responses to Plaintiff's First Request for Production of Documents 1 & 2 neither name nor discuss Ms. Williams, despite your suggestion that they do. They only mention "Karen Jones-Hayes." Finally, neither Plaintiff nor Defendants have disclosed Karyn Williams in their Rule 26 disclosures (which Defendant supplemented on 05/08/18). The only reason we would even think to list her in a supplement Rule 26 is based on comparative evidence, in that she engaged in protected activity (e.g., complaining that the Sheriff's Office's actions were unlawful), and was subsequently retaliated against, much like Plaintiff John Nawara. She too was subject to a retaliatory OPR investigation, like Plaintiff John Nawara.

Even more so, Ms. Williams has not divulged any confidential information regarding John Nawara, because she does not have any, or regarding any other employee or aspect of the Cook County Sheriff's Office. As it states in *Coburn*, a case you cite in your letter: "disqualifying an attorney is a 'drastic measure which courts should hesitate to impose except when absolutely necessary' . . . [m]otions to disqualify should be 'viewed with extreme caution for they can be misused as techniques of harassment.'" *Coburn v. DaimlerChrysler Servs. N. Am., L.L.C.*, 289 F. Supp. 2d 960, 963–64 (N.D. Ill. 2003).

I understand the Sheriff does not want me representing employees or former employees in cases against him and his office, however, they are entitled to counsel of their choice. While the Sheriff has tried to get me disqualified on other cases against him and his office, he has been unsuccessful.

Simply put, it is incorrect that Ms. Williams has any confidential information regarding John Nawara or his fitness for duty. She does not. Similarly, there is zero

evidence that Ms. Williams has divulged anything confidential to me or any other attorney at my firm. In fact, she has not. Further, Ms. Williams has confirmed that the delivery of CCSO_000025 was merely procedural and she did not review or consider any aspect of Plaintiff Nawara's fitness for duty referral. Ms. Williams was not involved in any aspect of Plaintiff Nawara's referral, nor any other aspect of the issues surrounding this case. In fact, Ms. Williams does not even remember who Plaintiff Nawara is and did not remember his name.

Finally, the case law you cite does not support a motion to disqualify in this case. In *Coburn*, the attorney that the defendant is seeking to disqualify specifically went after the defendant employer himself ***after*** the employee came to him with her claims. *Id*. at 966-67. Also, the attorney, himself, aggressively requested that the employee sue her employer and not just the car dealership, which gave her the bad deal. *See id*. at 967 ("Bradley stated that she specifically told Vrdolyak that she wanted to sue Rochester Jeep, not Chrysler Financial.") ("Vrdolyak is, however, personally responsible for the disqualification of his law firm. He acted aggressively. This Court has previously stated that counsel ... must take a conservative rather than aggressive approach."). The *Nawara* case started long before Ms. Williams approached me and requested representation for herself based on her own claims of retaliation. There is no evidence or indication that Ms. Williams has divulged confidential information (much less that she has any confidential information at all). Therefore, there is no basis for a Motion to Disqualify.

As such, I strongly suggest you rethink any motion you might file to try to disqualify me and my firm from representing Plaintiff John Nawara, as there is no basis for it. If necessary, both Ms. Williams and I would file a declaration with the Court swearing that no confidential information has been divulged. *See Coburn*, 289 F. Supp. 2d at 967 ("Uncontradicted testimony can also rebut the presumption."). In the event we have to file a response, we will seek our fees and costs, because you now know that whatever information your clients try to claim is false, and such motion would not be brought in good faith.

**The CorVel Subpoena**

As a matter of law, under HIPPA, Plaintiff has a privacy right to all of his personal and medical records. CorVel, or any other medical provider, for that matter, cannot release HIPPA protected documents to you (or any party) without a HIPPA release. The purpose of our objections is to protect our client's privacy and his personal medical information. While we understand the relevancy and importance of his medical documents in this case, their production must be weighed against the privacy rights of Plaintiff. As such, before these documents are released to you, regardless of whether we received them from Plaintiff or through a subpoena from CorVel, we must first review them for any private or privileged information.

We have continually stated that we will produce any and all responsive documents that we receive in response to any subpoena that we send out, but those documents need to first be reviewed for privilege. On May 29, 2018, we finally received documents in response to our subpoenas from both CorVel and Isaac Ray. We will be Bates stamping and producing all of the documents that we received pursuant to the Protective Order entered in this case.

**Use of FOIA Requests While Discovery Disputes are Pending**

On May 24, 2018, we provided multiple cases, as well as secondary sources, discussing the use of FOIAs by litigants. As such, it is our belief, which is supported by the previously-cited case law that our use of FOIAs is appropriate and does not affect the duties of either party to produce relevant documents when served with discovery requests. Similarly, all of the cases cited in your letter, *Appleton Paper, Inc. v. EPA*, 702 F.3d 1018, 1020 (7th Cir. 2012)(upholding government's refusal to respond to FOIA under the exemption covering attorney work product); *see Baldrige v. Shapiro*, 455 U.S. 345, 345-46 (1982) (finding that the confidentiality provisions of the Census Act are exempt from disclosure under both FOIA, under Exemption 3, and discovery); *see also Miller v. Bell*, 661 F. 2d 623, 626 (7th Cir. 1981) (disclosure of personal information which

"would constitute an unwarranted invasion of personal privacy" is exempt under FOIA."), refer to specific exemptions under FOIA and do not substantively hold that a court can "impose limitations of discovery in the pending litigation," as you suggest. Most significantly, the *Cunniff* case we cited for you is directly on point and discusses the cases you cite.

The duty to provide relevant documents in response to discovery requests arises from the Federal Rules of Civil Procedure and must be followed regardless of FOIA requests or whether another party already has possession of a document or has requested from another party or through another statutory vehicle.

I am more than happy to discuss any of these issues with you further, and am glad to provide clarification to the misinformation that you have regarding the above.

Sincerely,

***/s/Dana L. Kurtz***
Dana L. Kurtz

***/s/Jacob D. Exline***
Jacob D. Exline

# EXHIBIT 11

SCHARF
BANKS
MARMOR LLC

333 West Wacker Drive, Suite 450
Chicago IL 60606 • (312) 726-6000
www.scharfbanks.com

Reply directly to:
Sarah R. Marmor
312-662-6197
SMarmor@scharfbanks.com

June 29, 2018

**VIA EMAIL:** dkurtz@kurtzlaw.us
Dana Kurtz
KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois 60521

**RE: *Nawara v. Dart, et al.* – Representation of Karyn Williams**

Dear Dana:

I write in response to your June 1, 2018 letter regarding our concerns about your representation of Karyn Williams. We have carefully investigated the facts, and your assertion that Ms. Williams "does not have any" confidential information regarding Mr. Nawara "or regarding any other employee or aspect of the Cook County Sheriff's Office" is simply untrue. Ms. Williams was privy to and took part in numerous attorney-client communications regarding this lawsuit and the underlying allegations. Ms. Williams's role with respect to Mr. Nawara was not merely ministerial or "procedural" as you claim. She was the most senior decision maker in the HR department and was regularly apprised of Mr. Nawara's case and the claims at issue in this litigation, both by defendants and by the law department.

Compounding the problem, our investigation demonstrates that Ms. Williams in fact violated her Confidentiality Agreement while she still was employed as the Executive Director of the HR department. Prior to leaving her job, Ms. Williams forwarded numerous confidential employment and HR related documents to a private email address. We also are aware that for some time you and Ms. Williams refused to return certain materials that Ms. Williams took with her, arguing they were somehow protected by attorney client privilege – a rather extraordinary claim and one that underscores the problem of your continued representation of Mr. Nawara. Facts are not subject to the attorney-client privilege, yet you have taken the same position in this case – refusing to answer our most recent interrogatory seeking the identity of a person you claimed had knowledge of an alleged video in this case.

**Exhibit 11**

Under these circumstances, we feel we must proceed with a motion to disqualify, unless you are willing to voluntarily withdraw from this case. We have no desire to embarrass you or attack you personally, but the record is not one we can ignore. Ms. Williams has demonstrated no regard for the confidentiality obligations she owes to the Sheriff's Office. We cannot take the risk that your client will provide unfair access to the Sheriff Office's confidential and attorney-client privileged information on matters related to this case – if she has not done so already.

Your effort to distinguish the *Coburn* decision is not in our view well-taken. Indeed, this is a stronger case than *Coburn*, where the employee in question was an administrative assistant. Here, as we have already explained, Ms. Williams was a high-level decisionmaker within the Sheriff's Office who had regular, substantive communications about matters with her employer's legal counsel and with individual defendants who reported to her. We are prepared to provide to the Court, in-camera, documents that prove Ms. Williams had privileged conversations about Mr. Nawara's case and related matters.

Given the schedule and posture of this case, if you will not voluntarily withdraw from the case, we expect to file a motion to disqualify next week.

Very truly yours,

Sarah R. Marmor

SRM/at
cc: Heidi Sleper
Jacob Exline

# EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KELLY FUERY, DEBRA SCIORTINO, and NICOLE TOMASKOVIC, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07 C 5428 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CITY OF CHICAGO, et al., | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This case arises from an altercation on the Stevenson Expressway between Defendant William Szura, an off-duty Chicago police officer, and three women, Plaintiffs Kelly Fuery, Debra Sciortino, and Nicole Tomaskovic, who were returning home from the gay pride parade in Chicago, Illinois in June, 2007. Following the altercation, Plaintiffs sued Szura, the City of Chicago ("the City"), two Chicago police sergeants, and three state police officers seeking relief under 42 U.S.C. § 1983 and Illinois law for excessive force, false arrest, and malicious prosecution. A jury, after a trial in December 2015, found in favor of Defendants on all claims except for Tomaskovic's excessive force claim, and awarded Tomaskovic $260,000 in compensatory damages.

Now before the Court are the parties' post-trial motions. On February 3, 2016, the parties filed the first round of motions, including the City's motion [431] for judgment as a matter of law or relief from judgment pursuant to Federal Rules of Civil Procedure 50(b) and 60(b)(3), Defendant Szura's motion to join the City's motion [429], and Plaintiffs' Rule 59 motion for a new trial [432]. On February 24, Plaintiffs' trial counsel, Dana Kurtz, Heidi Sleper, and James Vanzant, filed motions to withdraw from the case and substitute Trent McCain as counsel for the

**Exhibit 12**

post-trial motions. The Court granted the motions to substitute counsel on March 1. On April 1, Plaintiffs and the state police defendants filed a stipulation [456] dismissing the Plaintiffs' post-trial motion for a new trial with respect to the state police defendants. Finally, on April 8, the City filed a renewed motion for sanctions [461], which Szura moved to join [463].

Because the Court finds that Plaintiffs' trial counsel engaged in repeated misconduct throughout the trial and that Plaintiffs actively participated in the misconduct, the Court grants and denies in part the City's motion for sanctions. The Court enters judgment in favor of the City and Szura on Tomaskovic's excessive force claim. Additionally, even though Plaintiffs were not successful on any other claim, the Court also grants the City's motion for sanctions with respect to Fuery and Sciortino's claims because both of them participated in the misconduct at trial and are equally accountable for the misconduct of their attorney. The Court denies the motion for sanctions with respect to the request for attorneys' fees, however, because the sanction of judgment is sufficiently severe to address the misconduct at trial. Further, because Plaintiffs' claims were not frivolous, Defendants rightly bear the costs of defending against those claims.

The Court denies as moot the City's motion for judgment as a matter of law and relief from judgment as well as Plaintiffs' motion for a new trial.

## LEGAL STANDARD

The City and Szura move for sanctions pursuant to Federal Rule of Civil Procedure 37, 28 U.S.C. § 1927, and the inherent powers of the Court to impose sanctions on a party that has abused the judicial process. Each of these authorities has its own standard that should be applied when analyzing potential violations, and Rule 37 and §1927 are limited to specific types of conduct. However, because the inherent authority of the Court is broader than both the rule and

the statute, and encompasses both, and the misconduct at trial was all part of a continuous course of conduct, the analysis below focuses solely on the standard associated with the inherent powers of the Court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ("[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.").

The Court's inherent authority to rectify abuses to the judicial process authorizes sanctions for certain violations. *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003) (citing *Chambers*, 501 U.S. at 49). Pursuant to its inherent authority, the Court may impose the sanction "of dismissal with prejudice (or its equivalent, judgment) if the circumstances so warrant." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993). Determination of the appropriate sanction is left to the discretion of the district court. *Id*. In determining the appropriate sanctions to impose, "the district court should consider the egregiousness of the conduct in question in relation to all aspects of the judicial process." *Dotson*, 321 F.3d at 667 (citation omitted). Dismissal or entry of judgment on behalf of a party as a sanction is a severe measure and "should be employed sparingly and only when there is a record of delay, contumacious conduct, or when other, less drastic sanctions prove unavailing." *Id*. The Seventh Circuit, while not mandating any specific test, has suggested that when determining the appropriate sanction, a court should consider the following three factors: prejudice to the defendant, prejudice to the judicial system, and deterrence and punishment. *Schilling v. Walworth Cty. Park & Planning Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986) (citing *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074 (D.C. Cir. 1986)). The Court is not required to have considered the appropriateness of lesser sanctions if the circumstances justify imposition of the entry of judgment, but the Seventh Circuit has strongly counseled district courts to consider sanctions that are more targeted at the offending

attorney before instituting the severe sanction of dismissal or judgment. *Ball v. City of Chicago*, 2 F.3d 752, 758 (7th Cir. 1993). Additionally, the Court should make efforts to warn a party and its attorney that their conduct may subject them to sanction; however the Court is not obligated to issue such a warning, especially where the conduct is particularly egregious or the party or its attorney should have known that their conduct was inappropriate. *Id.* at 756.

Finally, the Court should also consider the relevant disciplinary history of the offending party when determining the sanction. *Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 909 (7th Cir. 2015). Where that history is clear that an individual has shown an "unwillingness to conform her conduct to requirements laid down by judicial orders or rules of procedure," the Court should impose a more firm sanction than the record of the case alone supports. *Id.*

## ANALYSIS

### I. Sanctions

The City and Szura move the Court to enter judgment in their favor as a sanction for the misconduct of Plaintiffs and their attorney at trial. The Court recognizes that overturning a jury verdict and entering judgment in favor of the non-prevailing party is the most severe sanction available in litigation and should not be imposed lightly. As the factual findings below demonstrate, the conduct at issue in this case and the prior history of the offending attorney clearly establish the appropriateness of judgment as a sanction in this case.

#### a. Factual Findings

The misconduct of Kurtz, Plaintiffs' counsel, at trial was pervasive and severe. While it is possible that each individual incident, standing alone, should rightly be given the benefit of the doubt and would not merit a severe sanction, the continuous, repetitive nature of the misconduct, the fact that Plaintiffs' counsel did not improve her conduct in the face of numerous warnings,

and Plaintiffs' counsel's history of censure support the Court's finding that her conduct at trial was willful, egregious, and not entitled to a presumption of unintentionality. Additionally, the Court finds that each Plaintiff directly engaged in various acts of misconduct at trial, further warranting sanctions. The Court identifies the acts of misconduct that form the bases of its findings below.

*i. Improper Questions and Attempts to Elicit Improper Testimony*

On multiple occasions during trial, Plaintiffs' counsel asked questions that were intended to elicit testimony that was expressly barred prior to trial by the Court's rulings on the motions *in limine* ("MILs"). For example, during the direct examination of Sgt. O'Malley, Kurtz asked, "And as a sergeant, if you're responding to a call and you're advised that an officer pulled out his firearm, you're required to document that, correct?" Tr. 71:24–72:1. Defendants objected because this question was a clear attempt to elicit a response in violation of the Court's ruling on the City's first MIL, which barred evidence of the internal police investigation into Szura's actions.

Kurtz then asked O'Malley if she was upset about the decision of the judge in the Plaintiffs' criminal case. Tr. 81:24–25. This question improperly sought to elicit testimony from O'Malley regarding the criminal court judge's statements regarding the credibility of Szura and other police officers, references to which the Court barred by its ruling on the City's fourth MIL. At sidebar, Kurtz argued that she was not attempting to get into these statements through this line of questioning. Tr. 82:13–16. Kurtz argued that she was only attempting to ask O'Malley whether she was upset about the "decision in the criminal trial." Tr. 83:3–5. This is belied by the related deposition testimony, which did not explore the decision of acquittal but instead focused on the judge's statements regarding officer credibility. *See* Tr. 84:14–19. The Court

allowed Kurtz to question O'Malley about her reaction to the acquittal itself because that did not violate the MIL and did not allow her to ask about O'Malley's reaction to the judge's ruling regarding the credibility of the officers. Tr. 83:12–14.

On redirect examination of O'Malley, Kurtz again attempted to draw out testimony in violation of the MILs. Kurtz asked O'Malley, "Doesn't the Chicago Police Department have a rule or a requirement that Chicago Police Department supervisors, even in conjunction with the Illinois State Police, are required to investigate in certain situations?" Tr. 136:7–10. O'Malley responded that she is not aware of any such rule. Tr. 136:11. This question violated the Court's order on the City's first MIL by attempting to elicit testimony regarding any internal investigation of Szura. Defendants moved to strike this question at sidebar, however, the Court denied their request determining that striking the question would only draw the jury's attention to the impermissible question. Tr. 141:18–23.

Undeterred, Kurtz subsequently attempted to elicit testimony violating the same MIL by asking O'Malley, "You are aware as a supervisor that there are certain forms either you have to complete or you have to have the officer complete when there is -- in certain situations, correct?" Tr. 144:4–7. Defense counsel again objected and the Court sustained the objection. Tr. 144:8–9.

During Kurtz's direct examination of Szura she again attempted to elicit testimony barred by the City's first MIL. Specifically, she asked Szura, "What other forms did you fill out once you went back to the first district?" Tr. 201:21–22. Defendants objected and the Court sustained, instructing Kurtz again to ask the question in a way that did not violate the MILs. Tr. 201:23–25. Kurtz immediately followed this admonishment by asking another general question that likely would have elicited a response that would violate the MILs. Tr. 202:3. At this point, the Court directly intervened and asked Szura about the specific form, the Injured on Duty

("IOD") form, which the MILs did not prohibit. Tr. 202:7–18. At a subsequent sidebar, Kurtz stated that she thought that the City did not have an objection to her referring to the IOD or Tactical Response Report ("TRR"). Tr. 208:4–8. The Court reiterated to Kurtz that the Court would not permit reference to the TRR and that she should, at this point, have been familiar with the Court's rulings. Furthermore, the Court made clear to Kurtz that when she generally referred to "forms" in her questions, this could violate the MILs because there were some forms which the Court excluded and the Defendants did not know about which forms she was asking when she simply said "forms." Tr. 208:9–12. The Court also advised Kurtz against any further "dancing around or near or by the rulings on the motions in limine." Tr. 207:23–208:1. Unfortunately, the admonition did not deter Kurtz from further violations of the MILs.

Kurtz also repeatedly asked Szura about the content of various 9-1-1 calls before the Court had ruled on their admissibility and without laying a proper foundation. Tr. 161:1–2; 164:24–25; 167:10. After the Court excused the jury for lunch, the Court began to remind Kurtz that it had not yet admitted the 9-1-1 calls and Kurtz interjected, "I'm sorry, Your Honor. I completely -- no excuse, but I forgot you were going to review the 911, and I apologize. So I'll put that in my outline. I'm so sorry. I apologize." Tr. 176:9–12. This excuse is simply not credible. Minutes before the examination of Szura, the attorneys discussed this very issue with the Court. The Court stated that it had not ruled on the admissibility of the tapes because it had not received copies yet and requested Kurtz to provide copies. Kurtz stated she would send them via email, and the Court stated that it would review the tapes during the lunch break and issue a ruling that afternoon. Tr. 99:8–100:18. Despite this conversation, Kurtz claimed she forgot that the Court had not ruled on the tapes' admissibility less than two hours later.

During the direct examination of her own clients, Kurtz asked questions which were clear attempts to elicit improper testimony. Kurtz asked Fuery, "Was anyone given a field sobriety or breathalyzer on the scene that you saw?" Tr. 499:3–4. This question touched directly on an MIL and was clearly improper: the Court expressly barred any evidence related to the failure to perform a field sobriety test or breathalyzer on Szura. Following an objection by Defendants, Kurtz immediately withdrew the question and asked a proper version of the question to Fuery: "Were you ever given a breathalyzer or a field sobriety test," demonstrating she was aware of the proper way to ask this question all along. Tr. 499:9–10.

In the response to the motion for sanctions, Plaintiffs' new counsel argues "the record is clear that Plaintiffs' prior counsel was questioning *Fuery* about whether *Plaintiffs* were given breathalyzer examinations." Doc. 480 at 13. This assertion is an astonishing attempt to mischaracterize the record. The immediately preceding line of questioning was as follows:

> Q. And who spoke first, [Trooper Weyforth] or you?
> A. I told him. I said the same thing. I said [Szura had] been drinking. He was beating us up on the highway. Then he said that was impossible, that he was working all day.
> Q. Did anyone suggest or ask you if you had been drinking?
> A. I don't -- no.
> Q. Was anyone given a field sobriety or a breathalyzer on the scene that you saw?

Tr. 498:20–499:4. It is by no means "clear" that Kurtz was limiting her question to whether Plaintiffs were given breathalyzer tests. Quite the contrary, Szura is the only person who is alleged to have been drinking during this line of questioning. The direct implication is that he is the one who should have been given the field sobriety or breathalyzer test.

Kurtz also engaged in improper lines of questioning intended to garner sympathy from the jury. She asked Fuery why she was not able to pay off her entire legal bill for her criminal case, to which Fuery responded "I couldn't come up with the whole amount." Tr. 515:2. She

asked Tomaskovic "In June 2007 did you have insurance?" Tr. 935:9. Both of these questions are improper and not relevant. *See Rojas v. Town of Cicero*, No. 08 C 5913, 2011 WL 6753992, at *3 (N.D. Ill. Dec. 22, 2011) (irrelevant statements about plaintiff's financial status are improper attempt to garner sympathy). Defendants appropriately objected at the time and the Court sustained the objections. Tr. 515:3–7; 935:10–14. Kurtz had already rung the bell, however, with those questions.

Continuing with her improper tactics, during the examination of Trooper DeAvila, Kurtz directed DeAvila's attention to the first page of an exhibit and stated "If you look at the first page, on the bottom it says 'IPRA 0007.' Do you see that?" Tr. 1125:14–15. This question violated the MIL regarding references to the Independent Police Review Authority ("IPRA") investigation.[1] At sidebar Kurtz stated that she made this statement inadvertently. Tr. 1128:1–4. The City's counsel stated that Kurtz led him to believe she would conduct the examination using the City's exhibit binder which includes the same reports, with the IPRA marking removed. Tr. 1128:10–15. Kurtz replied that she did not use the City's binder because the reports she intended to use were in three separate locations, whereas Plaintiffs' binder had them all together as one exhibit. Tr. 1128:16–22. Whatever efficiency she sought to gain was clearly outweighed by the need to conduct another sidebar to address the violation of a MIL her question created. The Court finds that Kurtz's improper question was not inadvertent but the result of her continued, deliberate efforts to obtain an advantage with the jury by playing fast and loose with procedure and the Court's orders.

[1] The acronym IPRA is well-known in the greater Chicago area as the body that investigates police misconduct. There is a high-profile public debate surrounding IPRA's efficacy in rooting out police misconduct and the local media frequently discusses the many issues surrounding IPRA. It is highly likely, therefore, that the jury understood that these documents were related to such an investigation.

With the next witness, Trooper Argones, Kurtz again attempted to elicit testimony in violation of the MIL regarding the investigation. She asked, "And would you agree that Officer Szura as an involved party should have been subject to the same type of examination as the girls?" Tr. 1196:1–3. Following a sustained objection, Kurtz moved on from this line of questioning and did not return, apparently satisfied that she had sufficiently made her point to the jury that there was some sort of cover-up or conspiracy. Tr. 1196:4–10.

Kurtz also asked several questions that included impermissible hearsay in the question itself or questions designed to elicit hearsay responses. *See e.g.*, Tr. 164:24–25 ("Did you hear the [9-1-1 call] that indicated officer had his gun drawn on two subjects?"); Tr. 167:10–13 ("Q. And you've listened to the 911 calls, right? A. Yes, ma'am. Q. And you never heard anybody indicating -- MR. SCAHILL: Objection, foundation, hearsay."); Tr. 499:12–13 ("And when Senior Master Sergeant Weyforth spoke to you, do you recall anything else that he said to you?"); Tr. 747:7–9 ("Q. And what happened before this picture? A. I actually didn't know it was bleeding, and somebody told me that I had blood –"); Tr. 760:7–8 ("Q. So did somebody tell you about how long you would be in the cell?"). These are but a few examples of Kurtz's use of this improper tactic.

*ii. Failure to Properly Prepare Witnesses or Misconduct by Witnesses*

Two of the three Plaintiffs as well as Plaintiffs' expert, Joseph Stine, made statements that violated an MIL. Plaintiffs' counsel stated that they prepared all of the witnesses, including advising the witnesses of what they were not allowed to say during their testimony. Tr. 941:1–6; 943:1–13; 1521:13–18. Despite the alleged thorough preparation of these witnesses, all of them violated at least one MIL during their testimony.

During the testimony of Plaintiff Sciortino, Kurtz asked Sciortino about the time she spent in the jail cell. Sciortino, unprompted, offered that she had never been arrested or convicted before, which violated the MILs. Tr. 760:1–3. While Kurtz did not directly solicit this testimony, it was indicative of her failure to appropriately inform her clients and witnesses about the limitations on their testimony.

More concerning are the actions of Tomaskovic, who twice offered testimony in violation of the MILs—regarding her medical diagnosis, Tr. 932:3–6, and her desire to press charges against Szura, Tr. 918:24–25. When questioned by the Court regarding whether her attorney instructed her regarding what she was not permitted to say during her testimony, she first stated that her attorney did not inform her of any such limitations. The Court had the following exchange with Tomaskovic:

> THE COURT: So some things come into evidence, and then some things I've ruled based on the law can't come in. And so what I'm asking you is did your attorneys go over those things with you?
> THE WITNESS: No, not specifically.
> THE COURT: Okay.
> THE WITNESS: That I can recall. I don't remember going over and saying you can't say that I want to press charges.
> THE COURT: Okay. Was that ever told to you?
> THE WITNESS: What?
> THE COURT: Were you ever instructed by your lawyer that you weren't allowed to say that?
> THE WITNESS: No.

Tr. 938:18–939:6. At this point the Court excused Tomaskovic from the courtroom and admonished Kurtz again regarding her improper questioning and general disregard of proper procedure. Tr. 941:14–942:25. Following a brief discussion of other issues, the Court adjourned for the weekend and Kurtz left the courtroom. A few minutes later, Tomaskovic reentered the courtroom and requested to address the Court. Tr. 946:3–5. Back on the record, Tomaskovic stated that she did not understand the questions the Court asked her regarding the MILs. Tr.

946:10–19. She stated that no one spoke to her about her testimony after the Court excused her from the courtroom, but that Kurtz did in fact previously tell her there were certain things she could not talk about during her testimony despite her recent statement to the contrary. Tr. 946:23; 947:1–3; 950:2–5. When asked what these limitations were she stated, "There were stipulations in this that we were not allowed to speak of, and I believe one of them was about pressing charges, and the other one was about something about doctors, doctor diagnoses or something like that. I know there was a few others."[2] Tr. 950:8–12. The Court finds it ludicrous that after answering clear direct questions in the negative, Tomaskovic independently remembered that she did in fact receive preparation from her attorney and independently decided to go back into the courtroom to inform the Court of her error. Instead, it is much more likely that Kurtz, who immediately left the courtroom after the Court adjourned for the day, or someone working for Kurtz told Tomaskovic that her answers could lead to a mistrial and that she needed to correct this with the Court – by lying about her level of preparation. The other possible, though no less improper, explanation is that Kurtz did properly prepare Tomaskovic, yet Tomaskovic decided to ignore that preparation, deliberately offered improper testimony, and only recanted when she realized the potential for adverse consequences, including a mistrial. In either scenario, Tomaskovic acted abusively toward the judicial process.

Additionally, after Tomaskovic addressed the Court, Fuery and Sciortino asked to address the Court regarding the same topic. Tr. 952:2–953:9. Both Fuery and Sciortino stated that Kurtz instructed them regarding the MILs prior to trial. *Id*. The Court finds it unlikely that Fuery and Sciortino would have decided to come back into the courtroom to address the Court regarding this topic on their own initiative. This further supports the finding the Kurtz instructed

[2] Not surprisingly, these two topics are the very two topics about which Tomaskovic improperly testified.

her clients, including Tomaskovic, to go back into the courtroom and tell the Court they had been prepared on the MILs.

The third instance of such improper testimony came from by Plaintiffs' expert, Stine. The Court clearly ordered that Stine could not testify as to "whether Defendant Szura was acting as an officer or as a private citizen." Doc. 387 at 14. Despite this unambiguous ruling, when Sleper asked Stine, "Why is it important to announce that you are a police officer," Tr. 1519:21–22, Stine responded, "[W]hen [Szura] gets out of his car and starts walking back, he says he wants to find out what's going on. He's conducting an investigation. He's acting as a police officer . . . ." Tr. 1519:23–25. Defendants objected to this statement on the basis that it violated a MIL, and the Court held a discussion at sidebar. Tr. 1520:2–8. At the sidebar Sleper, co-counsel for Plaintiffs, stated that they did prepare the witness on the MILs. Tr. 1521:13–18. Given the failure of multiple witnesses to comply with the MILs, this defense carries no weight because it is plain to the Court that Plaintiffs' counsel placed very little importance on ensuring their witnesses actually complied and likely believed that any violations would at worst be stricken, but that the jury would have already heard the offending comment and the bell cannot be unrung. This tactic is extremely prejudicial to Defendants, unethical, and in this Court's opinion, it is exactly what happened in this case.

*iii. Communications with the Media*

Following the first day of trial the *Chicago Tribune* published an article, written by reporter Jason Meisner, about this case on their website and in print. The Court independently became aware of this article while reading the front page of the *Chicago Tribune's* website that evening, December 8th. The article included links to audio files and transcripts of 9-1-1 calls that the Court had not admitted into evidence. The article also included still shots from a "day-

in-the-life" video of Tomaskovic showing her physical condition around the time of her back surgery. The Court, concerned that these documents were provided to the *Tribune* reporter in an attempt to improperly influence the jury and to interfere with the ability of Defendants to present their case, questioned the attorneys regarding how the reporter came to possess the materials. Kurtz stated to the Court that she did not know how the reporter got the documents and that "They contacted me before the trial. I specifically declined and said: I do not want press coverage and, no, you cannot interview my clients. Mr. Meisner was downstairs yesterday. I specifically said: No comment. I do not know where they got the videos or the day in the life picture." Tr. 288:2–8. Kurtz also stated, "Your Honor, I will swear to you I did not send [the photograph] to him. I will confer with my clients, but I can also assure you that they did not either. The press has been covering this case for a long time." Tr. 289:9–12. The Court then inquired individually of each defense attorney whether they or their clients provided the materials to the press; each attorney denied doing so. Jessica Scheller, attorney for the state police defendants, also stated that the state police did not release anything to the media and that they had received no Freedom of Information Act requests related to the audio or transcripts. Tr. 289:13–291:6.

Timothy Scahill, attorney for the City, stated that he informed Kurtz of the article when he arrived in the courtroom around 8:50 a.m. on December 9th. He stated that Kurtz denied sending the materials to the *Tribune* and that she then exited the courtroom and returned a few minutes later. When she returned she told Scahill that she did not see any transcripts linked to the article. Scahill noted to the Court that the article was modified at 8:58 a.m.,[3] the same window of time Kurtz was out of the courtroom. Tr. 291:7–23.

[3] The *Tribune* website still indicates that the last modification to the article was at 8:58 a.m. on December 9, 2015. http://www.chicagotribune.com/ct-william-szura-911-calls-20151208-htmlstory.html.

Before breaking for lunch, Kurtz again stated to the Court that she did not provide the photos to the press, stating, “I did not give it to him, Your Honor, and I will swear on that. I did not give it to him.” Tr. 307:16–17. The Court then asked if she provided the press with the “day-in-the-life” photo in 2013. Kurtz stated, “I don’t think so. . . I would have to check, and I can certainly do that for Your Honor.” Tr. 308:4, 7–8. Following the lunch break, Kurtz informed the Court that she did in fact send Meisner the photo from the “day-in-the-life” video in December, 2013 but continued to deny sending him the 9-1-1 call transcript. Tr. 312:17–25. Kurtz then changed her story regarding her interaction with Meisner the prior day, stating that, “So and then last night Mr. Meisner was downstairs, and I told him that things were excluded from the case and they cannot be -- they’re not in the trial.” Tr. 316:7–10. When asked about this inconsistency with her prior statement she stated, “I actually didn’t remember. Ms. Sleper said that I -- I just remembered that I said no comment to him. So I actually did not remember telling him that. And Ms. Sleper was there, and she said that that’s what she remembered me saying to him. But I did tell him that things were excluded.” Tr. 317:24–318:4. The Court simply does not find this explanation credible.

During the same lunch break, defense counsel was able to locate, via a Google search, an electronically cached copy of the transcript attached to the article and presented this information to the Court. Tr. 313:1–5. The image of the transcript included the marking “Plaintiffs’ Exhibit 4” and appeared to be identical to the documents included as exhibits to the final pretrial order. Doc 389-2. Prior to trial, the Parties never publicly filed this version of the transcript and it was only in the possession of parties to whom Plaintiffs sent it. And while there was a version of this transcript that was attached to a publicly filed document, that version did not include the

"Plaintiffs' Exhibit 4" marking. This indicates that only a party could have provided the transcript to Meisner.

The Court consulted with the Clerk's office and determined that the Clerk's office was not in possession of the audio files and that no one had attempted to access the publicly filed version of the transcripts, indicating that the media did not independently obtain either of these items. Tr. 286:7–12.

Finally, the Court conducted individual interviews with each juror to determine if any had read the *Tribune* article and if so, whether that juror could remain impartial. One juror stated that his wife told him about the article but he did not read it. Tr. 321:2–6. Other jurors stated that one of the jurors came into the jury room in the morning and told them that the article was on the front page of the *Tribune*. *See, e.g.*, Tr. 323:18–20. After interviewing all of the jurors and determining that none had read the article, the Court determined that there was no prejudice to Defendants based on the publication. Tr. 354:18–21.

The Court was not able to conclusively determine how the transcript and audio recording came into the possession of the *Tribune*. However, in the light of the fact that the dissemination of these materials to the press would only benefit Plaintiffs and the general lack of respect and candor displayed by Plaintiffs' counsel throughout the trial, in addition to Kurtz's shifting recollection of events, the Court determines that the most likely scenario is that Kurtz or someone working at her direction provided the materials to Meisner. The Court also cannot ignore the suspicious timing of the edit to the *Tribune* article removing the link to the transcript and finds it likely that the edit occurred in response to a request from Kurtz to a contact at the *Tribune*. However, the Court finds that regardless of how the materials were provided to the media, the most egregious violation in this instance was Kurtz's dishonesty to the Court in

response to its investigation of this issue. While Defendants were not prejudiced by the content of the article, the distraction to the proceedings the publication caused did interfere with their ability to prepare and present their case and it wasted substantial resources of the Court.

*iv. Destruction of Notes*

During the cross-examination of Fuery, James Thompson, Szura's attorney, asked Fuery about a set of notes she wrote about the incident the morning after it occurred. Tr. 589:12–13. Fuery confirmed that she did write a set of notes the day after the incident. Tr. 589:14, 16. She testified that Kurtz was the first attorney with whom she met after the incident and that meeting took place within a few days. Fuery stated that she took the notes to that meeting with Kurtz and "gave them to her." Tr. 589:17. Thompson expressed surprise at this statement. Prior to this testimony, the Defendants had been under the impression that Fuery had thrown the notes out after meeting with Kurtz consistent with her deposition testimony. In an attempt to clarify, Thompson asked Fuery, "You gave them to Ms. Kurtz?" Tr. 589:19–20. Fuery responded, "Yes." Tr. 589:21. Thompson then asked, "And when you left Ms. Kurtz's office, she still had possession of those notes?" Tr. 589:22–23. Fuery responded, "I didn't need the notes anymore. I told her everything that was going on and everything that was in the notes, yes." Tr. 589:24–25. The Court then asked, "When you left her office, she had possession of the notes, is that right?" Tr. 590:7–8. Fuery responded, "Yes." Tr. 590:9. The Court excused the jury and held a hearing on the issue.

During the hearing, Kurtz first directed the Court to Fuery's deposition transcript in which she was asked if she threw the notes away, to which Fuery responded in the affirmative. Kurtz then stated that before the meeting with Fuery she "directed them to take notes of the incident for me. So that was before the meeting, and [Thompson] did not ask, you know,

whether she had a conversation with an attorney that directed her to make those notes. Those would be privileged, so I would object to this whole line of questioning on the basis of privilege." Tr. 593:12–17. At this point Scahill, attorney for the City, interjected that the prior page of the deposition contradicts Kurtz's claim of privilege in stating that Fuery drafted the notes at the suggestion of Trooper DeAvila. Kurtz responded that "I believe I had a conversation with them the day they got out of jail. I mean, this is 2007. I'll have to go back and check my notes." Tr. 594:22–24.

The Court then called Fuery back into the courtroom and questioned her regarding the notes. Fuery stated that she created the notes at the suggestion of Trooper DeAvila, that she was not instructed by Kurtz to create any notes, and that she met with Kurtz within a few days after the incident. Tr. 599:11–600:9. The Court then excused Fuery again. At this point Kurtz stated that the only set of notes she had were those that she directed Fuery to write. She stated that she spoke to Sciortino the morning after the incident and instructed her to have each of them take notes of what happened. Tr. 601:16–25. Kurtz then insisted that she was not aware of any document request for notes. Tr. 604:9–11. At that point, the Court instructed Defendants to locate the document request and the response and adjourned the trial until the afternoon. Tr. 604:19–21.

During the afternoon session, Defendants provided the document requests and responses. The Court determined that Fuery's notes were responsive to several of the requests. Tr. 607:12–609:5. At this point Kurtz stated that she had reviewed her records and determined that she instructed Plaintiffs to create a different set of notes several months after the incident, rather than days later as she had stated during the morning. Tr. 609:10–19. Kurtz also stated that she did not meet with Plaintiffs in the days immediately following the incident, but her paralegal did and

she speculated that they also met with a criminal attorney during that period. Tr. 609:20–611:20 Kurtz stated that she did not receive the notes and that the Fuery threw them away. Tr.611:22–612:1. She also stated that Fuery testified in her deposition "that she threw them away, she did not bring them to [Kurtz's] office," Tr. 616:21–22, mischaracterizing Fuery's testimony—Fuery never said that she did not bring them to Kurtz's office; in fact she said the opposite on the stand. Tr. 589:13–14.

Fuery then retook the stand and was questioned again about the notes in the presence of the jury. Thompson first asked her whether she had spoken to anyone about her testimony during the recess. Tr. 623:16–17. She stated that she had not. Tr. 623:18. He then asked her again what she did with the notes to which Fuery replied "I threw them out." Tr. 625:21. This testimony is consistent with her deposition testimony but contradicts what she had testified to earlier at trial. The Court finds it entirely possible that she would not remember exactly what she did with the notes after eight years, but finds the reversal of her testimony at trial to be highly suspicious and likely the result of improper coaching by Kurtz or someone working for her attorney during the recess.

Defense counsel next asked Fuery again about which lawyer with whom she met a few days after the incident. Fuery stated that it was not the criminal defense lawyer. Tr. 606:13–19. This again contradicts Kurtz's assertion from earlier that day that Fuery never brought the notes to her office and that she perhaps brought them to the criminal attorney's office.

The Court need not determine which set of facts is the truth. Whether Fuery gave the notes to Kurtz as she testified at trial, or threw them out after meeting with Kurtz or some other attorney as she stated during her deposition, the notes were not available to Defendants, and this prejudiced them. Furthermore, Kurtz's behavior when addressing this issue during trial was just

another example of her staking out the most favorable position to herself and only backing down, incrementally, when presented with facts that contradicted her preferred narrative. First she argued that the notes were privileged and created at her instruction in advance of her meeting with Plaintiffs in the days following the incident, next she argued that she really meant a different set of notes, and finally she argued that she did not meet with Plaintiffs for many months after the incident. Not only are these shifting explanations unfair to Defendants and deceptive to the Court, they caused the Court and Defendants to waste a great deal of time attempting to sort out the truth.

Ultimately, the Court decided to give the jury a spoliation instruction, informing them that they may assume that Fuery's notes would have been unfavorable to her if, "one, plaintiffs intentionally destroyed the evidence; and, two, plaintiffs destroyed the evidence in bad faith." Tr. 1652:11–13. Whatever effect this instruction had on the jury, it did not serve as an adequate sanction for Kurtz's shifting, misleading statements and the inconsistency of Fuery's account. The bad faith exhibited by Kurtz and Fuery in response to the inquiry at trial merits additional sanctions on top of the spoliation instruction. *See Domanus v. Lewicki*, 742 F.3d 290, 299 (7th Cir. 2014) (spoliation instruction "insufficiently harsh" where party provided inconsistent explanations regarding the availability of requested discovery materials and ultimately did not provide them).

*v. Other Misrepresentations to the Court*

Plaintiffs' counsel made several other misrepresentations to the Court throughout the trial, including misstating Federal Rule of Evidence 902(11) and misstating the Court's ruling on the MIL regarding Sciortino's shirt. While neither of these instances occurred in front of the

jury, they both tend to show the general lack of candor and respect for the judicial process that permeated Plaintiffs' counsel's behavior throughout the trial.

In their response to the motion for sanctions, Plaintiffs argue that their attorney did not willfully misrepresent Rule 902(11), but was relying upon an out of date application on her iPhone that "had not updated to the 2015 version of the rule." Doc. 480 at 12; Tr. 474:3–8; Tr. 481:17–482:12. This is a bizarre defense given the fact that Rule 902 has not been modified since December 2011. Plaintiffs would like this Court to believe that their attorney, who appears regularly in federal court, has done so, for at least four years, without consulting the most current version of the rules of evidence. This is either not truthful or a striking admission of professional incompetence.

Plaintiffs do not even address the misrepresentation of the MIL ruling in their response, but merely attempt to redirect the Court to Kurtz's second argument, that she was renewing her request that the Court bar the t-shirt. Tr. 837:3–838:8. While it is true that a party may renew such a request at trial, Kurtz did not actually make such a motion until her attempt to convince the Court that it had reserved ruling on the MIL failed. This, like many of the other missteps by Kurtz, could on its own be interpreted as an honest mistake; however, in light of everything that had occurred up to this point at trial, the Court finds that it was a dishonest attempt to obtain an advantage in raising her objection. At best it shows a lack of familiarity with the Court's rulings, which on the fourth day of trial where the Court had already admonished Kurtz numerous times regarding the motions, and is hardly a better explanation.

The above findings are not a comprehensive account of all instances of Plaintiffs' and Plaintiffs' counsel's misconduct at trial, but clearly reflect a persistent course of conduct that was not modified in the face of escalating admonishments and sanctions from the Court. The Court

also was not able to completely investigate every misrepresentation or violation of the rules during trial as this would have detracted even further from the central objective of the trial and further prejudiced Defendants. However, based on the conduct the Court observed and the numerous conflicting statements by Plaintiffs' counsel, the Court finds that Kurtz acted in bad faith in trying this case.

**b. Conclusions of Law**

The continuous, contumacious course of conduct pursued by Kurtz, and on several occasions aided by each of her clients and her co-counsel, rises to the level of severity where a sanction of judgment for the City and Szura is appropriate. The record establishes numerous instances of misconduct that prejudiced Defendants in fairly presenting their case. Kurtz, her clients, and the expert witness made numerous inappropriate statements in front of the jury that prejudiced Defendants.

The misconduct of Kurtz and Plaintiffs forced Defendants and the Court to waste substantial amounts of time throughout the trial instead of focusing on the merits of the case. Each Defendant had to respond to the Court's inquiries regarding whether they had provided the 9-1-1 tapes or transcripts to the media, the City took time during a recess to locate its document request from discovery to show the Court that they had in fact requested Plaintiffs' notes because Kurtz denied receiving such a request, and the parties spent a substantial amount of time at sidebars discussing violations of the MILs by Kurtz. All of this activity was a considerable distraction from the merits of the case and unfairly inhibited Defendants from using that time to prepare to examine witnesses or otherwise prepare for the regular trial proceedings. And all of these distractions were the result of intentional, improper actions on the part of Kurtz and Plaintiffs. The destruction of Fuery's notes additionally prejudiced Defendants. These notes,

taken less than a day after the incident in question, are highly relevant to the case and Defendants were deprived of the ability to make use of them either by the failure of Kurtz's office to retain and produce them or the destruction of them by Fuery. Either way, Kurtz and her firm had a responsibility to maintain the notes when they became aware of them, and yet they failed to do so to Defendants' detriment. *See MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 800 (N.D. Ill. 2010) ("A party has a duty to preserve evidence over which it had control and reasonably knew or could reasonably foresee was material to a potential legal action." (citations omitted)).

Although Kurtz's and Plaintiffs' actions clearly prejudiced Defendants, the Court may still impose sanctions even where there is no prejudice but the actions of the party "exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." *Barnhill*, 11 F.3d at 1368. The Court may impose sanctions pursuant to its inherent authority where the party has "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012) (collecting cases). Clumsy lawyering alone is not sufficient to warrant sanction; the Court is required to make a finding of actual bad faith, willfulness, or fault to support sanctions under its inherent authority. *See id.*; *Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005) ("Dismissal is appropriate where a party has displayed fault, bad faith, or willfulness."). This is precisely the situation presently before the Court.

The offending conduct of Kurtz throughout the trial demonstrated a clear contempt for the rules of procedure and the rulings of this Court. Rather than abide by rules with which she

disagreed and take up those rulings on appeal as necessary, Kurtz chose simply to ignore them whenever convenient to her case. Kurtz and Plaintiffs exhibited a consistent lack of candor with the Court, most notably in regards to the communications with the media, witness preparation regarding the MILs, and the creation and preservation of Fuery's notes. In each of these instances Kurtz subjected the Court to ever shifting, contradictory explanations, consistent only in their purpose to aid Kurtz at the cost of the truth. Because of the repeated, frequent nature of these violations in the face of repeated admonishments, the Court cannot simply chalk them up to "clumsy" lawyering, but finds that Kurtz acted willfully and in bad faith throughout the trial.

This conclusion, while amply supported by the record in this case alone, is further justified in light of the Kurtz's substantial disciplinary history in the courts. As detailed in *Rojas*, she has been sanctioned numerous times by the courts and has shown no indication of modifying her behavior to avoid future sanction. *See Rojas*, 775 F.3d at 909. Kurtz's misconduct in *Rojas* itself is so similar to much of the misconduct here that a brief summary is instructive. After a trial before Judge Holderman, the defendants in *Rojas* moved for a new trial pursuant to Rule 59(a), arguing that Kurtz engaged in misconduct which prejudiced their case. *Rojas*, 2011 WL 6753992, at *3. In granting the motion for a new trial, Judge Holderman found that Kurtz "engaged in a repeated pattern of misconduct, starting with inappropriate comments in her opening statement and repeated attempts to introduce inadmissible and prejudicial evidence before the jury that, taken together, prejudiced the defendants' case on the political retaliation claim." *Id*. In an instance remarkably similar to Kurtz's conduct in the present matter, the *Rojas* court found that "despite a dispute over the admissibility of testimony about Dominick lying on an employment application, Kurtz questioned Dominick on the topic in front of the jury before bringing the issue up in a sidebar." *Id*. This is nearly identical to Kurtz's tactics regarding the 9-

1-1 calls; she repeatedly asked Szura about the content of various 9-1-1 calls while fully aware that the Court had not yet ruled on their admissibility. Judge Holderman's opinion lists numerous other infractions that this Court could almost copy and paste into this order simply with changing the names of the parties.

The similarity of Kurtz's behavior in *Rojas* to her behavior in the present case clearly demonstrates that she has made no effort to change her ways and that lesser sanctions have proved unavailing. For this reason, even if a lesser sanction were sufficient to remedy her misconduct in the case at bar, entry of judgment would still be appropriate in order to send a clear message to Kurtz that she may not continue to practice law in this manner in the Northern District of Illinois and expect to obtain a judgment for her clients despite her behavior (or perhaps because of it).

Despite all of the misconduct at trial and Kurtz's prior history, Plaintiffs' counsel contends that a sanction of judgment for the City and Szura is inappropriate because it would punish Plaintiffs for the actions of their attorney. In support of this argument Plaintiffs claim that judgment in favor of the City and Szura would not be proportionate to the misconduct alleged. They state, incorrectly, that there is no claim of misconduct by Tomaskovic in the motion and that the entire motion focuses solely on misconduct of Kurtz and in small part Fuery.

First, the Defendants do allege misconduct by Tomaskovic. In violation of the MILs, Tomaskovic stated during her testimony that she wanted to press charges against Szura. Tr. 918:24–25. She then told the Court that she was given no instructions about limitations on her testimony by her attorneys. Tr. 938:18–939:6. Then, after being excused, Tomaskovic returned to the courtroom and told the Court that her attorney did in fact tell her that she could not talk about wanting to press charges but that she misunderstood the Court's questions about whether

she had been prepared by Kurtz to testify. Tr. 946:10–19. She also stated that no one told her to come back into the courtroom to make that statement. Tr. 946:20–23. The Court finds that Tomaskovic engaged in misconduct regardless of which version of her story is correct. Either she willfully disobeyed the Court's MILs or she lied to the Court about being prepared by her attorney. The Court finds that the second explanation is more likely accurate, and that it is a far more egregious violation, as dishonesty to the Court alone is sufficient to merit dismissal of a claim. *See, e.g.*, *Jackson v. Murphy*, 468 F. App'x 616, 620 (7th Cir. 2012).

Furthermore, Defendants do not only seek judgment on Tomaskovic's claims, but on all Plaintiffs' claims. Even though the jury returned verdicts in Defendants' favor on all of Fuery and Sciortino's claims, Fuery and Sciortino have filed a motion for a new trial on their claims, therefore the sanctions are not moot. Even though Plaintiffs do not address the misconduct of Sciortino and Fuery in their opposition to the motion for sanctions, the Court finds that Defendants have alleged misconduct by each of them and that these allegations are supported by the record.

Fuery and Sciortino both claim to have independently come into the courtroom to tell the Court that they were instructed on the MILs before testifying. The Court finds that they did this at the direction of their attorney. Fuery also gave contradictory testimony regarding the destruction of her handwritten notes during trial, again indicating that she engaged in impermissible discussions with her attorney during trial. Tr. 589:17–590:9, 625:21. Additionally, Sciortino, despite claiming to have been advised of the MILs, offered testimony about her lack of a criminal history that violated the MILs. Tr. 760:1–3.

However, even if Plaintiffs themselves engaged in no misconduct, judgment for Defendants would still be appropriate in this case. A court may enter judgment as a sanction

even where there is no misconduct by a party, only by her attorney. *See Ball v. City of Chicago*, 2 F.3d 752, 757 (7th Cir. 1993) (affirming sanction of dismissal where misconduct committed solely by the attorney and the party was blameless). Further, parties are bound by the actions of their attorney, particularly where they have freely chosen that counsel, like Plaintiffs have done here. *See Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1061–62 (7th Cir. 1989). Such action should not be taken lightly, but in this case, where there is a substantial record of misconduct by Kurtz and her long history of engaging in misconduct in federal litigation, the Court finds that plaintiff misconduct is not required to support a sanction of judgment for Defendants.

Plaintiffs also argue that because Plaintiffs' trial counsel, Kurtz, is no longer representing them in this case, they cannot fully respond and Kurtz is entitled to "fair notice and an opportunity to respond before sanctions could be assessed against her." Doc. 480 at 3. It is true that the Court cannot impose sanctions without notice and the opportunity to be heard. *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir. 1984). In this case both the Plaintiffs and Kurtz have been provided adequate notice and the substitution of counsel is irrelevant. First, the City initially filed the motion for sanctions during trial while Kurtz was still representing Plaintiffs. The Court denied that motion at the time; however, the Court noted that it would address the misconduct at the end of the trial. Tr. 957:21–23. Therefore, Kurtz was on notice that as part of the post-trial motions the Court would be reconsidering the appropriate sanction for her violations.

Additionally, Kurtz and Plaintiffs' other trial counsel did not withdraw their appearances until March 1, 2016 but Defendants filed their motion for judgment as a matter of law on

February 3, 2016. *See* Doc. 431. In this motion, Defendants renewed their prior motion for sanctions, putting Kurtz on notice at least three weeks prior to her withdrawing her appearance.

Finally, during the February 16, 2016 status hearing, the Court reminded Kurtz that the issue of the appropriate sanctions for her trial misconduct was still pending and that the Court was seriously considering striking the judgment and finding for Defendants on all claims. Therefore, Kurtz was clearly on notice that she and her clients were facing sanctions for the misconduct at trial.

Even if none of the above listed events occurred, Plaintiffs, who actually bear the consequences of the sanction, have not been deprived of any notice or of their opportunity to fully respond. Plaintiffs' current counsel's argument that he cannot respond to Plaintiffs' prior counsel's "actions, inactions, or subjective intent" is both inaccurate and beside the point. First, the City does not raise any examples of misconduct that are not supported by the record. The vast majority of the violations are plain on their face: hearsay statements, violations of MILs, and misleading statements to the Court. These do not require any additional information possessed solely by former counsel. The Court is not aware of what could be gained by knowing more about former counsel's "subjective intent" when carrying out these actions; the record is clear and sufficient for the Court to make the findings discussed in detail above. Additionally, the Court notes that Plaintiffs have not indicated that they have even tried to contact Kurtz to obtain information they seem to believe is necessary but unavailable. There is no reason to suspect that Kurtz would not assist in providing it when she is fully aware of the stakes. Therefore, this argument carries no weight.

Finally, Plaintiffs argue that before dismissing a case, the Court "must explicitly warn of the consequences of a specific action." Doc. 480 at 9. This misstates the law and the record in

this case. The Court is not required to warn a party that egregious misconduct will result in dismissal and regardless, the Court provided numerous warnings to Plaintiffs and their counsel in this case.

The only support Plaintiffs cite for the proposition that a warning must be given is *Graham v. Schomaker*, 215 F.3d 1329, (table) 2000 WL 717093 at *3 (7th Cir. 2000), an unpublished, non-precedential opinion, which is at odds with all other cases on this issue. The *Graham* court states that a court "must explicitly warn of the consequences of a specific action" before dismissing a case. *Id.* The actual controlling standard is that a warning is only required in cases of ordinary misconduct where the plaintiff is *pro se*. *McInnis v. Duncan*, 697 F.3d 661, 665 (7th Cir. 2012). There is no such requirement where the conduct is severe and the party is represented. *See Matter of Bluestein & Co.*, 68 F.3d 1022, 1026 (7th Cir. 1995) (citing *Ball*, 2 F.3d at 756).

Nevertheless, the Court provided numerous warnings to Kurtz that her conduct was likely to lead to sanctions, including dismissal, if she persisted. *See* Tr. 207:23–209:16, 277:11–278:8, 279:16–280:6, 296:15–296:25, 318:19–320:2, 361:15–364:25, 919:11–925:3, 1520:14–1524:23. Furthermore, in *Rojas*, the Seventh Circuit effectively warned Kurtz that continued misconduct in federal courts would be met with more severe sanctions. *Rojas*, 775 F.3d at 910. Plaintiffs and their counsel were thus on notice and amply warned that continued transgressions could lead to a severe sanction, including dismissal or judgment.

Therefore, for the reasons stated above entry of judgment in favor of the City and Szura is the appropriate sanction in this matter.

**II. Attorney's Fees**

The City and Szura also ask the Court to award attorneys' fees as a sanction. The Court declines to do so. The Court finds that entry of judgment is a sufficiently harsh sanction for the conduct at issue. Furthermore, the vast majority of attorney resources in this case were expended in defense of the non-frivolous claims brought by Plaintiffs. Under the "American Rule," parties bear the cost of the litigation absent a fee-shifting statute unless the other party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States*, 417 U.S. 116, 129, 94 S. Ct. 2157, 2165, 40 L. Ed. 2d 703 (1974). While Plaintiffs' counsel did act in bad faith at trial, Plaintiffs did not bring the underlying claims in bad faith. Therefore the Court finds it is unnecessary to award attorneys' fees to Defendants to cover costs they would have incurred regardless of Kurtz's bad faith.

**III. Szura's Motions to Join**

Szura filed two motions to join: one for the motion for judgment as a matter of law and one for the motion for sanctions. Plaintiffs opposed the former motion only in a footnote. Arguments raised only in footnotes are waived. *See Schrock v. Learning Curve Int'l, Inc.*, 744 F.Supp.2d 768, 770 (N.D. Ill. 2010) ("Undeveloped arguments and arguments raised in footnotes are waived." (citing *Goren v. New Vision Int'l*, 156 F.3d 721, 726 n. 2 (7th Cir.1998))). Additionally, even if it were not waived, Plaintiffs did not raise any similar objection on the motion for sanctions. Because the issues raised in the City's sanctions motion and motion for judgment as a matter of law are identical to those that Szura would present, a second set of motions would have been redundant and a further waste of the Court's time. Furthermore, because the City must indemnify Szura where he has been found to have been acting within the scope of his employment, the only means of giving the City meaningful relief is to enter

judgment in favor of Szura as well. Therefore, in the interest of efficiency and fairness to the City, the Court grants both of Szura's motions to join.

## IV. Remaining Post-Trial Motions

In addition to the motion for sanctions, the City filed a motion for judgment as a matter of law or relief from judgment and Plaintiffs filed a motion for a new trial. Because the Court is entering judgment in favor of the City and Szura on all of Plaintiffs' claims, the Court denies the remaining motions as moot. *See, e.g.*, *U.S. ex rel. Salmeron v. Enter. Recovery Sys., Inc.*, No. 05 C 4453, 2008 WL 3876135, at *10 (N.D. Ill. Aug. 18, 2008) (declining to review pending dispositive motions where sanction of dismissal rendered them moot), aff'd, 579 F.3d 787 (7th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the Court grants and denies in part the City's motion for sanctions and grants Szura's motion to join. The Court enters judgment in favor of the City and Szura on all claims, and denies the motion with respect to the request for attorneys' fees. The Court denies as moot the City's motion for judgment as a matter of law and Plaintiffs' motion for a new trial.

Dated: September 29, 2016

SARA L. ELLIS
United States District Judge