**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN NAWARA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Case No. 17-cv-2393 |
| | ) | |
| COUNTY OF COOK, a unit of local Government, | ) | Hon. Rebecca R. Pallmeyer |
| THOMAS DART, in his individual and official | ) | |
| capacity as Sheriff of Cook County, Illinois, | ) | |
| KAREN JONES-HAYES, MATTHEW BURKE, | ) | |
| REBECCA REIERSON, and WINIFRED | ) | |
| SHELBY, in their individual capacities, | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT AND RELATED DOCUMENTS ........ 1

A. THE SEPTEMBER 28, 2016 INCIDENT BETWEEN NAWARA AND JONES-HAYES ...... 2

B. NAWARA'S MEETING WITH DEFENDANTS REIERSON AND SHELBY OF THE HR DEPARTMENT, AND THEIR DECISION TO REFER HIM FOR A FITNESS FOR DUTY EXAM ........ 2

C. NAWARA'S MONTHS-LONG REFUSAL TO SIGN THE HIPAA FORMS ........ 3

D. RETALIATION ALLEGATIONS ........ 4

STANDARD OF REVIEW ........ 5

ARGUMENT ........ 6

I. PLAINTIFF'S ADA CLAIM (COUNT I) SHOULD BE DISMISSED BECAUSE THE HIPAA RELEASE FORMS DID NOT VIOLATE THAT STATUTE. ........ 6

II. PLAINTIFFS SECTION 1983 FIRST AMENDMENT RETALIATION CLAIM (COUNT II) SHOULD BE DISMISSED BECAUSE IT IS ENTIRELY INADEQUATELY PLEAD. ........ 10

III. PLAINTIFF'S TITLE VII CLAIM (COUNT III) SHOULD BE DISMISSED BECAUSE THERE ARE INSUFFICIENT ALLEGATIONS OF AN ADVERSE EMPLOYMENT ACTION AND BECAUSE PLAINTIFF DID NOT ENGAGE IN A PROTECTED ACTIVITY. ........ 17

IV. COUNT IV UNDER THE ILLINOIS WHISTLEBLOWER ACT SHOULD BE DISMISSED BECAUSE THERE WAS NOTHING UNLAWFUL ABOUT ASKING PLAINTIFF TO SIGN THE MEDICAL RELEASE FORMS AT ISSUE. ........ 22

V. COUNT V MUST BE DISMISSED BECAUSE THERE IS NO ONGOING CASE OR CONTROVERSY AND THE MERIT BOARD ACT DOES NOT APPLY TO THIS CASE. ...... 24

A. DECLARATORY RELIEF IS UNAVAILABLE HERE BECAUSE PLAINTIFF EVENTUALLY PARTICIPATED IN THE FFD PROCESS AND HAS RETURNED TO WORK, THUS THERE IS NO ONGOING CASE OR CONTROVERSY TO BE RESOLVED. ........ 25

B. COUNT V ALSO SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE A CAUSE OF ACTION THAT WOULD WARRANT DECLARATORY RELIEF. ..... 26

1. THE MERIT BOARD ACT ONLY APPLIES TO "DISCIPLINE" AND DOES NOT APPLY TO THE FFD PROCESS OR THE DETERMINATION THAT PLAINTIFF'S ABSENCES WERE UNAUTHORIZED. ..... 27

2. PLAINTIFF HAS NOT ALLEGED A VIOLATION OF HIS DUE PROCESS RIGHTS ..... 28

CONCLUSION ..... 30

# TABLE OF AUTHORITIES

***Cases:***

*Adusumilli v. Discover Fin. Servs., Inc.*, 1999 U.S. Dist. LEXIS 6580 (N.D. Ill. Apr. 19, 1999) .......... 17

*Alcorn v. City of Chicago*, 2018 U.S. Dist. LEXIS 126034 (N.D. Ill. July 27, 2018) .......... 11

*Alford v. Kendall Cnty. Dep't of Health*, 2008 U.S. Dist. LEXIS 96547 (N.D. Ill. Nov. 24, 2008) .......... 21

*Alvarez v. Baker*, 2016 U.S. Dist. LEXIS 130207 (N.D. Ill. Sept. 23, 2016) .......... 13

*Alvarez v. Smith*, 558 U.S. 87 (2009) .......... 25

*Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643 (7th Cir. 2017) .......... 5

*Argyropoulos v. City of Alton*, 539 F.3d 724 (7th Cir. 2008) .......... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5, 13

*Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013) .......... 13

*Bell v. Lane*, 657 F. Supp. 815 (N.D. Ill. 1987) .......... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5

*Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998) .......... 19, 23

*Bless v. Cook Cnty. Sheriff's Office*, 2015 U.S. Dist. LEXIS 24607 (N.D. Ill. Feb. 27, 2015) .......... 11

*Bolanos v. Ne. Ill. Univ.*, 2017 U.S. Dist. LEXIS 1313 (N.D. Ill. Jan. 4, 2017) (Pallmeyer, J.) .......... 20

*Brown v. William Rainey Harper College*, 2017 U.S. Dist. LEXIS 121333 (N.D. Ill. Aug. 1, 2017) (Pallmeyer, J.) .......... 14, 18, 19, 20, 21

*Brownfield v. City of Yakima*, 612 F.3d 1140 (9th Cir. 2010) .......... 19, 23

*Brownlee v. Catholic Charities of the Archdiocese of Chi.*, 2017 U.S. Dist. LEXIS 27425 (N.D. Ill. Feb. 28, 2017) .......... 16

*Burruss v. Cook Cnty. Sheriff's Office*, No. 08 C 6621 (N.D. Ill., filed Nov. 18, 2008) .......... 4, 10-17, 18, 23

*Buttitta v. City of Chicago*, 9 F.3d 1198 (7th Cir. 1993) ........................................................ 29

*Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014) ................................................ 16

*Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595 (8th Cir. 1998) ........................... 23

*Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012)............................................................ 18

*Collymore v. City of New York*, 2018 U.S. Dist. LEXIS 100326
(S.D.N.Y. June 14, 2018)..................................................................................... 12

*Crawford Supply Group, Inc. v. LaSalle Bank, N.A.*, 2010 U.S. Dist. LEXIS 4691
(N.D. Ill. Jan. 21, 2010) (Pallmeyer, J.)............................................................... 5

*Deen v. Darosa*, 414 F.3d 731 (7th Cir. 2005) ................................................. 28, 29

*Diadenko v. Folino*, 890 F. Supp. 2d 975 (N.D. Ill. 2012) ........................................ 15-16

*Doherty v. City of Chicago*, 75 F.3d 318 (7th Cir. 1996) ........................................... 12

*Foggey v. City of Chicago*, 2018 U.S. Dist. LEXIS 18225 (N.D. Ill. Feb. 5, 2018) ................ 10

*Freelain v. Village of Oak Park*, 888 F.3d 895 (7th Cir. 2018)......................................... 23

*Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2007)................................................. 10

*Gee v. City of Lawrence*, 2009 U.S. Dist. LEXIS 37444 (S.D. Ind. May 1, 2009) .................. 19

*Ghiles v. City of Chi. Heights*, 2016 U.S. Dist. LEXIS 17685 (N.D. Ill. Feb. 12, 2016) .......... 16

*Giaccio v. City of New York*, 2005 U.S. Dist. LEXIS 642 (S.D.N.Y. Jan. 19, 2005)................ 14

*Glapion v. CSX Transp. Inc.*, 2010 U.S. Dist. LEXIS 11203 (N.D. Ill. Feb. 9, 2010).............. 19

*Grassel v. Dep't of Educ. of N.Y.*, 2017 U.S. Dist. LEXIS 39683
(E.D.N.Y. Mar. 20, 2017)....................................................................................... 7

*Green v. Joy Cone Co.*, 278 F. Supp. 2d 526 (W.D. Pa. 2003) ............................................ 7

*Green v. Mansour*, 474 U.S. 64 (1985)............................................................................ 25

*Hernandez v. Cook Cnty. Sheriff's Office*, 2014 U.S. Dist. LEXIS 45956
(N.D. Ill. Apr. 3, 2014) ........................................................................................ 10

*Hrobowski v. Henderson*, 2000 U.S. Dist. LEXIS 7293

(N.D. Ill. May 24, 2000) (Pallmeyer, J.)....................24, 28

*Kidwell v. Eisenhauer*, 679 F.3d 957 (7th Cir. 2012)....................15

*Little v. Ill. Dep't of Pub. Health*, 2017 U.S. Dist. LEXIS 196697
(N.D. Ill. Nov. 30, 2017)....................18

*Longstreet v. Ill. Dep't of Corr*., 276 F.3d 379 (7th Cir. 2002)....................15

*Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919 (N.D. Ill. 1999)....................6

*Medlin v. Rome Strip Steel Co*., 294 F. Supp. 2d 279 (N.D.N.Y. 2003)....................7

*Miller v. DuPage County*, 2018 U.S. Dist. LEXIS 133083 (N.D. Ill. Aug. 8, 2018)....................13

*Mitchell v. City of Plano*, 2018 U.S. Dist. LEXIS 135133 (N.D. Ill. Aug. 10, 2018)....................17

*Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978)....................10, 12

*Montano v. City of Chicago*, 535 F.3d 558 (7th Cir. 2008)....................14

*Morrow v. Carolina Urologic Research Ctr., LLC*, 2014 U.S. Dist. LEXIS 135344
(D.S.C. July 30, 2014)....................21

*Nolan v. City of Chicago*, 2017 U.S. Dist. LEXIS 19582 (N.D. Ill. Feb. 13, 2017)....................21

*N. Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449 (7th Cir. 1998)....................8

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*,
2018 U.S. Dist. LEXIS 35569 (N.D. Ill. Mar. 5, 2018)....................13

*Quad/Med Claims, LLC v. Liberty Mut. Ins. Co.*, 2013 U.S. Dist. LEXIS 136580
(E.D. Wis. Sept. 24, 2013)....................25, 26

*Rene v. Lidestri Foods, Inc*., 2010 U.S. Dist. LEXIS 122246 (D.N.J. Nov. 17, 2010)....................21

*Sanders v. City of Chicago*, 2000 U.S. Dist. LEXIS 1753 (N.D. Ill. Feb. 15, 2000)....................17

*Sarafin v. Sears, Roebuck & Co.*, 446 F. Supp. 611 (N.D. Ill. 1978)....................25

*Sardiga v. N. Trust Co.*, 948 N.E.2d 652 (Ill. App. 1st Dist. 2011)....................22, 23

*Schlessinger v. Chi. Housing Auth.*, 2012 U.S. Dist. LEXIS 163030
(N.D. Ill. Nov. 13, 2012)....................16

*Scott v. McCoy*, 2011 U.S. Dist. LEXIS 128858 (N.D. Ill. Nov. 7, 2011)....................25

*Selective Ins. Co. v. Phusion Projects, Inc.*, 836 F. Supp. 2d 731 (N.D. Ill. 2011) .................. 25

*Shoun v. Best Formed Plastics, Inc.*, 28 F. Supp. 3d 786 (N.D. Ind. 2014) ............................ 7-8

*Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720 (7th Cir. 2003) ................................................... 19

*Smart v. Ball State Univ.*, 89 F.3d 437 (7th Cir. 1996) ............................................................ 12

*Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883 (7th Cir. 1989) ........................................ 12

*Sweeney v. City of Decatur*, 2017 IL App (4th) 160492 ................................................... 22, 23

*Taylor v. Bd. of Educ.*, 2014 IL App (1st) 123744 ................................................................. 22

*Tomanovich v. City of Indianapolis*, 457 F.3d 656 (7th Cir. 2006) .......................................... 19

*Valle v. City of Chi.*, 2018 U.S. Dist. LEXIS 133833 (N.D. Ill. Aug. 8, 2018) ........................ 12

*Vickers v. Powell*, 493 F.3d 186 (D.C. Cir. 2007) ............................................................. 24, 28

*Weiler v. Vill. of Oak Lawn*, 2016 U.S. Dist. LEXIS 12364 (N.D. Ill. Feb. 2, 2016) ............... 15

*Wheeler v. Piazza*, 2018 U.S. Dist. LEXIS 23182 (N.D. Ill. Feb. 13, 2018) ........... 14-15, 16-17

*Whitlow v. Bradley Univ.*, 2017 U.S. Dist. LEXIS 17964 (C.D. Ill. Feb. 8, 2017) .................. 20

*Willowbrook v. Olech*, 528 U.S. 562 (2000) ............................................................................ 28

*Wilson v. Civil Town of Clayton*, 839 F.2d 375 (7th Cir. 1988) ................................................. 6

*Wuerffel v. Cook Cnty. Sheriff's Office*, 2016 U.S. Dist. LEXIS 55723
(N.D. Ill. Apr. 27, 2016) ........................................................................................... 11

*Yassan v. J. P. Morgan Chase & Co.*, 708 F.3d 963 (7th Cir. 2013) ......................................... 6

*188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730 (7th Cir. 2002) .................................................... 5

***<u>Statutes</u>:***

28 U.S.C. § 2201 ....................................................................................................................... 25

42 U.S.C. § 1983 ....................................................................................................................... 10

42 U.S.C. § 12112(a) ................................................................................................................... 6

42 U.S.C. § 12112(b)(3) .............................................................................................................. 7

42 U.S.C. § 12112(d)(4) ....................................................................................................7, 9
42 U.S.C. § 12112(d)(4)(A)....................................................................................................7
42 U.S.C. § 12112(d)(4)(B) ....................................................................................................9
42 U.S.C. § 12112(d)(4)(C) ....................................................................................................7, 9
42 U.S.C. § 2000e-2(a)(1)....................................................................................................19
55 ILCS 5/3-7002 *et seq.* ....................................................................................................24
55 ILCS 5/3-7012 ....................................................................................................27
55 ILCS 5/3-7011 ....................................................................................................27
740 ILCS 174/15(b) ....................................................................................................22, 23
740 ILCS 174/20....................................................................................................22, 23, 24

## INTRODUCTION

This lawsuit stems from a September 28, 2016 incident between Plaintiff John Nawara ("Nawara"), a correctional officer with the Cook County Department of Corrections ("CCDOC"), and his then-commanding officer, Defendant Karen Jones-Hayes ("Jones-Hayes"). Defendants move to dismiss the Second Amended Complaint ("SAC") because none of the counts states a cause of action.

- Count I, for violation of the Americans With Disabilities Act ("ADA"), must be dismissed because the HIPAA release forms that Nawara was asked to sign in order to proceed with his Fitness for Duty ("FFD") examination were entirely proper under the law.

- Count II, for First Amendment retaliation, should be dismissed because it fails to plead critical elements of such a cause of action; it fails adequately to specify the conduct of individual defendants sufficient to state a cause of action as to any of them; and it fails to allege plausible causation.

- Count III, for Title VII retaliation, fails to plead either that Nawara was subjected to an adverse employment action, or that the activity for which he suffered retaliation falls within the protection of Title VII's prohibition against discrimination based on a protected class of race, color, gender, religion or national origin.

- Count IV, for violation of the Illinois Whistleblower Act, fails to plead that the alleged First Amendment retaliation was the result of Nawara's whistleblowing activity (causation); and fails to establish that any retaliation occurred within the meaning of that law because the HIPAA release forms were not improper.

- Finally, Count V entirely fails to state a claim for declaratory relief because the conduct at issue is not ongoing; the Merit Board Act does not apply to this case; and the SAC establishes that Nawara received all the process he was due.

## FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT AND RELATED DOCUMENTS

This section provides the material facts alleged in the SAC, along with reference to documents explicitly cited or referred to in the SAC that can be deemed incorporated by such references.

### A. THE SEPTEMBER 28, 2016 INCIDENT BETWEEN NAWARA AND JONES-HAYES.

On September 28, 2016, Nawara was supervising detainees who were waiting for medical treatment in the basement of the Cermak Health Facility when a fight broke out between two detainees. (SAC ¶ 32). Nawara's "supervisor," Jones-Hayes, was called to the scene. (*Id.* ¶¶ 32-33). Nawara alleges that Jones-Hayes hit him in his chest with her finger several times and spoke to him in a "condescending tone of voice." (*Id.* ¶ 33). Nawara was assigned to a different part of the Cook County jail the next day. (*Id.* ¶ 40). Nawara claims he made a "formal complaint" about Jones-Hayes over two weeks thereafter, on October 13, 2016. (*Id.* ¶ 42).

### B. NAWARA'S MEETING WITH DEFENDANTS REIERSON AND SHELBY OF THE HR DEPARTMENT, AND THEIR DECISION TO REFER HIM FOR A FITNESS FOR DUTY EXAM.

On November 18, 2016, Nawara was ordered to appear at the Sheriff's Human Resources ("HR") department. (*Id.* ¶ 43). Nawara met with Defendant Rebecca Reierson, the Leave and Absence Manager, and Defendant Winifred Shelby, an Occupational Health Specialist, both for the "Bureau" of Human Resources of the Cook County Sheriff's Office. (*Id.* ¶¶ 26, 29, 44). They asked if he had threatened another employee, told him this was not an OPR (Office of Professional Review) matter, and ultimately ordered him to sign "blank HIPAA release forms for his medical records." (*Id.* ¶¶ 44-49). These HR professionals told Nawara he would not be permitted to return to work unless he signed the HIPAA release forms. (*Id.* ¶¶ 49-50).

The SAC makes clear that as of this meeting on November 18, 2016, no decision had been made as to whether Nawara would be sent for an FFD examination. (*Id.* ¶ 51). It was up to the HR department employees to make that determination. (*Id.*) Oddly, the SAC goes on to say that "Defendants did not order Plaintiff to appear for a fitness for duty" and asserts that the legal violation in this case is asking him to sign the HIPAA forms and placing him on

"administrative leave" until he agreed to sign the forms. (*Id.* ¶¶ 59, 62-63, 65). Of course, as the ensuing correspondence between the parties (Exs. 1-5) – all of which is referenced in the SAC and thus may be considered here[1] – makes clear, the whole purpose of signing the HIPAA forms was to complete an FFD examination. Nawara's FFD examination could not go forward without his medical records.

### C. Nawara's Months-long Refusal to Sign the HIPAA Forms.

Nawara refused to sign the forms, and instead retained an attorney, who almost immediately began communicating with Defendants about Nawara's belief that requiring him to execute the medical release forms was unlawful. (*Id.* ¶¶ 70-76). Nawara and his attorney repeatedly were informed that Nawara's continued refusal to execute the medical release forms prevented the FFD examination from going forward, and that, as a result, his status of paid administrative leave would have to be changed to unpaid status because the leave was unauthorized. (*Id.* ¶¶ 45, 50, 52, 63; Ex. 3 (February 28, 2017 letter from Reierson to Nawara) ("The time you have been off of work since November 18, 2016 is only authorized if you are participating in the FFD process . . . If the forms are not received by March 8, 2017, your time off work (November 18, 2016-present) will be deemed unauthorized.")).

Nawara filed the present lawsuit on March 29, 2017. On April 3, 2017, he sought a temporary restraining order and preliminary injunction to require the CCSO, among other things, to reinstate him back to work without undergoing the FFD process. (Dkt. #5). Ultimately, Nawara permitted the FFD process to proceed by having his medical records sent directly to the third-party medical examiner retained by the CCSO to perform the FFD evaluation. (SAC ¶ 91).

---

[1] *See* Appendix A, which identifies the paragraphs in the SAC in which each piece of correspondence is referenced.

Nawara was cleared for duty by the FFD examiner on September 16, 2017, and he returned to his job on September 27, 2017. (*Id.* ¶¶ 92-93).

The FFD examiner's conclusions are quoted at some length in the SAC. The examiner believed that Officer Nawara should have been subjected to discipline rather than being sent for an FFD examination because, in her view, allowing Nawara to remain on duty in the weeks between the incident and the decision by HR to send him for an FFD examination somehow meant he was not a threat to employees or detainees at the time of the incident. (*Id.* ¶ 92). However, the examiner also conceded that it "is not my role to fact-find." (*Id.*) Her conclusion thus was limited to the view that almost a full year *after* the incident (a delay mostly caused by Nawara himself), Nawara was fit for duty. (*Id.*)

### D. Retaliation Allegations.

Nawara contends that the real reason he was instructed to sign "blank" HIPAA forms in November 2016 was in retaliation for his participation in the *Burruss* lawsuit[2] between 2008 and 2012. (*Id.* ¶¶ 100-101, 106). Nawara predicates his § 1983 First Amendment retaliation claim in Count II (SAC ¶¶ 118-133) on this allegation. He nowhere alleges that any of the individual Defendants knew about that lawsuit or his participation in it. Nor does he allege that he alone was required to sign the "blank" HIPAA forms about which he complains. Nawara also alleges that he was instructed to sign the HIPAA forms in retaliation for having filed a complaint against Jones-Hayes on October 13, 2016. This is the basis for his Title VII retaliation claim in Count II (SAC ¶¶ 134-138). Nawara alleges nowhere in the SAC that he is a member of any protected class under Title VII, and specifically asserts that he is not disabled. (*Id.* ¶ 85).

---

[2] *Burruss v. Cook Cnty. Sheriff's Office*, No. 08 C 6621 (N.D. Ill., filed Nov. 18, 2008).

Nawara also contends that he was "singled out" for filing a complaint against Jones-Hayes, but again fails to provide any allegation that any Defendant had any knowledge of such a complaint. (*Id.* ¶ 87).

**STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. A motion to dismiss must be granted where the factual allegations of a complaint are insufficient "'to raise a right of relief above a speculative level,'" and the court is unable "'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Crawford Supply Group, Inc. v. LaSalle Bank, N.A.*, 2010 U.S. Dist. LEXIS 4691, *9-10 (N.D. Ill. Jan. 21, 2010) (Pallmeyer, J.) (quoting *Twombly*, 550 U.S. at 555 and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In deciding a Rule 12(b)(6) motion, the court may usually consider only the complaint itself. All facts alleged in the complaint are taken as true, and the plaintiff is given "the benefit of any reasonable and favorable inferences from those allegations." *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 646 (7th Cir. 2017). "But [i]t is . . . well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (internal quotation marks and citations omitted). Pursuant to this rule, Defendants submit Exhibits 1-7 with their motion to dismiss. All of the submitted documents are central to Nawara's claims arising out of the September 28, 2016

incident and his objections to Defendants' subsequent demand that he undergo an FFD examination and execute certain medical release forms in connection therewith, as discussed in ¶¶ 32-99 of the SAC. *See Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999) (documents that were part of the "chain of correspondence" in which the parties engaged "within a short period of time," relating to the transaction or events giving rise to the plaintiff's claims may be considered as central to the plaintiff's claim).

All of these documents are referenced in the SAC (as shown in Appendix A, attached), and therefore may be attached to Defendants' motion to dismiss and considered by the Court. *See Yassan v. J. P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013).

## ARGUMENT

As shown below, all five counts of the SAC should be dismissed for failure to provide Defendants with adequate notice of the alleged claim and/or for failure to allege a legally sufficient or factually plausible claim for relief.

### I. PLAINTIFF'S ADA CLAIM (COUNT I) SHOULD BE DISMISSED BECAUSE THE HIPAA RELEASE FORMS DID NOT VIOLATE THAT STATUTE.

Count I of the SAC alleges that the CCSO[3] violated the ADA. Nawara does not allege a violation of the general prohibition against discrimination found in the statute, *see* 42 U.S.C. § 12112(a), nor does he claim he is disabled. (*See* SAC ¶ 85). Instead, Nawara alleges that the CCSO violated the prohibition against medical examinations and inquiries found in 42 U.S.C. § 12112(d)(4). Nawara relies on subparagraph (A), which prohibits an employer from requiring

[3] The SAC refers to both Sheriff Dart and the CCSO. This Court previously dismissed Nawara's claims against Sheriff Dart in his individual capacity. *See* Dkt. ## 39, 52. Thus, references in the SAC to Sheriff Dart should be construed as references to the CCSO. *See Wilson v. Civil Town of Clayton*, 839 F.2d 375, 382 (7th Cir. 1988) (official capacity claims are the equivalent of claims against the entity). To avoid any confusion with the dismissed individual capacity claims against Sheriff Dart, Defendants will refer herein only to the CCSO.

a medical examination or from making "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Nawara contends that the CCSO violated § 12112(d)(4)(A) by "order[ing]" him "to sign blank HIPAA release forms for his medical records." (SAC ¶ 111). This allegation does not state a legally viable claim for three reasons.

*First*, the medical release forms are not themselves an improper medical examination or inquiry. *See Green v. Joy Cone Co.*, 278 F. Supp. 2d 526, 540 (W.D. Pa. 2003) (medical release form "does not come under the definition of a prohibited medical inquiry, as it does not ask any questions about an individual's medical history or [ ] limitations," and does not "force a person to identify [his] disability").

*Second*, requesting release of medical records is allowed if it is in connection with a permissible medical examination or inquiry. *See* 42 U.S.C. § 1211(d)(4)(C); *Medlin v. Rome Strip Steel Co*., 294 F. Supp. 2d 279, 293-94 (N.D.N.Y 2003) ("Section 12112(d) provides [ ] for the release of confidential medical information to supervisors or managers involved in the decision making process with respect to a particular employee"); *Grassel v. Dep't of Educ. of N.Y.*, 2017 U.S. Dist. LEXIS 39683, at *24-25 (E.D.N.Y. Mar. 20, 2017) (medical information form used as part of fitness for duty psychological examination did not violate § 12112(d)(4)); *cf. Green*, 278 F. Supp. 2d at 541-42 (holding that requiring job applicant to execute medical release forms prior to job offer is permissible so long as the employer complies with 42 U.S.C. § 12112(b)(3) by using the release form to obtain the medical records only after an offer of employment is made).[4]

[4] The SAC does not allege any facts to suggest the medical records sought by the HIPAA release forms would not be kept confidential as required by § 12112(d)(4)(C). *See, e.g., Shoun v. Best Formed Plastics,*

Here, Nawara claims bizarrely that he was not ordered to appear for an FFD examination, but this flies in the face of the fact that he was asked to execute the medical release forms *in connection with* the CCSO's decision to refer him for an FFD examination. (*Compare* SAC ¶¶ 59, 89 *with* Ex. 3). The HIPAA release form Nawara was asked to execute states on its face that it is part of the FFD process: "1. With this authorization, I allow all medical records and information to be released and reviewed that relates to my fitness for duty exam." This form was given to Nawara as indicated in the January 31, 2017 email from his counsel (Ex. 2), and is also attached to the February 28, 2017 letter from Defendant Reierson to Nawara (Ex. 3). "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998); *see also Bell v. Lane*, 657 F. Supp. 815, 817 (N.D. Ill. 1987) (stating that "where exhibits attached to a complaint negate its allegations, a court is not required to credit the unsupported allegations").[5] Nawara's allegation that the forms were blank when he was asked to sign them (*e.g.*, SAC ¶¶ 45, 89) means he must have seen the forms during the meeting, and, of course, thereafter. (*See* Ex. 3). He thus knew he was being referred for an FFD examination.

*Third*, while Nawara repeatedly alleges that the release forms were "blank" when they were presented to him for signature, that allegation is irrelevant. There is no allegation that Nawara was told he had to leave the forms blank, only that he was given blank forms to sign. Moreover, there is no reason to infer from the facts alleged that Nawara's execution of "blank"

*Inc.*, 28 F. Supp. 3d 786, 788-89 (N.D. Ind. 2014) (setting forth the requirements for stating "a claim for violation of the ADA's confidentiality provisions").

[5] The SAC makes repeated reference to these forms, *see* SAC, ¶¶ 45, 49-50, 52, 55, 58, 62, 64,-65, 69-70, 72, 74-76, 80, 84, 88-89, 91, 111, 115, 141, 143, hence the propriety of citing them in this motion to dismiss.

forms would have allowed the CCSO to obtain medical information to which it would not be entitled (because it was entitled to obtain medical information as part of a valid medical examination or inquiry).

In short, the CCSO's requirement that Nawara execute medical release forms is not a legal violation if the CCSO's referral for an FFD examination was permissible. Nawara alleges that it was not, because (1) "Defendants cannot show that the medical inquiry at issue is vital to its business and is narrowly formulated to prevent unnecessary intrusion into Plaintiff's medical information" (SAC ¶ 112); (2) "Defendants have not disclosed to Plaintiff any asserted purpose and cannot show that the medical inquiry serves any asserted purpose" (*id.* ¶ 113), and possibly other reasons as well.[6] These allegations are not legally relevant to the standard set forth in 42 U.S.C. § 12112(d)(4) for when a medical examination or inquiry is permissible. *See* 42 U.S.C. § 12112(d)(4)(B) (providing, under the heading of "Acceptable examinations and inquiries," that "A covered entity may make inquiries into the ability of an employee to perform job-related functions"). While Nawara also alleges that "'[a]ny employee . . . has a right to challenge a disability-related inquiry or medical examination that is not job-related and consistent with business necessity'" (SAC ¶ 54 (quoting "EEOC guidance")), he does not allege that he ever challenged the FFD referral; only that he disputed the requirement that he sign "blank HIPAA forms." Because those forms cannot provide the basis of a cause of action, Count I should be dismissed.

[6] *See, e.g.,* SAC ¶ 45 (Nawara "was not given any notification of any complaint or allegations against him"); *id.* ¶ 46 (Nawara "was not provided with any complaint or any indication that anyone had complained about him"); *id.* ¶ 47 (Shelby and Reierson told Nawara "that this was 'not an O.P.R. (Office of Professional Review) matter'").

## II. PLAINTIFF'S SECTION 1983 FIRST AMENDMENT RETALIATION CLAIM (COUNT II) SHOULD BE DISMISSED BECAUSE IT IS ENTIRELY INADEQUATELY PLED.

Count II of the SAC alleges that all Defendants are liable under 42 U.S.C. § 1983 for retaliating against Nawara in violation of the First Amendment because of his participation in the *Burruss* case, a lawsuit brought in 2008 by Nawara and other correctional officers against the CCSO in which they alleged that the CCSO retaliated against them because of their political opposition to Sheriff Dart through their membership in the SORT team. (SAC ¶¶ 11-12, 100-10.) Nawara's threadbare allegations in Count II do not state a legally sufficient § 1983 claim for at least four reasons.

*First*, to state a § 1983 claim against a local governmental entity such as the CCSO, a plaintiff must allege that a deprivation of the plaintiff's constitutional rights resulted from a custom or policy of that entity. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff can show a custom or policy in one of three ways. *See Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002). Nawara relies on the third avenue of proving a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.*[7] Specifically, Nawara alleges that the CCSO has a widespread practice of political retaliation. (SAC ¶¶ 107, 120).

[7] A plaintiff also may show a "policy or custom" by "an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable*, 296 F.3d at 537. The SAC contains the conclusory allegations that Jones-Hayes, Burke, Reierson, and Shelby are "final policy maker[s] for the Sheriff's Office with regard to [their] acts and conduct alleged herein." SAC ¶¶ 22, 25, 27, 30. These allegations are insufficient to state a *Monell* claim against the CCSO under the "person with final policymaking authority" prong. *See Foggey v. City of Chicago*, 2018 U.S. Dist. LEXIS 18225, *22-23 (N.D. Ill. Feb. 5, 2018) ("A final policymaker has the authority to make policy, laws, or rules for the conduct of government; a person who merely implements existing law—rather than creating it—does not act with policymaking authority.") (internal quotation marks and citations omitted). In Illinois, a sheriff has final policy-making authority. *Hernandez v. Cook Cnty. Sheriff's Office*, 2014 U.S. Dist. LEXIS 45956, *3 (N.D. Ill. Apr. 3, 2014). None of the individual Defendants are the Sheriff, and hence the decisions challenged by Nawara were not made by an official with final policy-making authority.

This allegation, however, is wholly conclusory. The only fact alleged to support it is the jury verdict in favor of the *Burruss* plaintiffs. (*Id.* ¶ 127). A single past act of political retaliation is not sufficient to state a plausible claim of a widespread practice. *See Alcorn v. City of Chicago*, 2018 U.S. Dist. LEXIS 126034, *53 (N.D. Ill. July 27, 2018) ("To successfully plead a 'widespread practice' claim, Plaintiff must allege facts showing that at least more than one instance of the alleged conduct occurred to establish that a practice in fact exists."). As the court held in *Bless v. Cook County Sheriff's Office,* 2015 U.S. Dist. LEXIS 24607, *24 (N.D. Ill. Feb. 27, 2015), where the plaintiff also made allegations about the *Burruss* case, that one case cannot give rise to an inference of a widespread practice sufficient to support a *Monell* claim because *Burruss* involved the "actions of a single employee in a separate division of the CCSO." *See also Wuerffel v. Cook Cnty. Sheriff's Office*, 2016 U.S. Dist. LEXIS 55723, *16-17 (N.D. Ill. Apr. 27, 2016) (same).

The only additional allegation in the SAC to support Nawara's *Monell* claim is that the CCSO did not discipline or terminate the employment of Scott Kurtovich, one of the individual defendants found liable in the *Burruss* case. (SAC ¶¶ 128-131.) But the CCSO's treatment of Kurtovich after the *Burruss* verdict is not another act of political retaliation. *Bless,* 2015 U.S. Dist. LEXIS 24607, *24 (allegation that the CCSO failed to reprimand the employee found liable in *Burruss* held insufficient to support a *Monell* claim against the CCSO in later political retaliation case, stating "[t]he particular way the CCSO chose to approach the fallout from the *Burruss* decision does not imply that retaliation is 'permanent' at the CCSO or is 'well settled as to constitute a custom or usage with the force of law'") (citation omitted). The *Burruss* matter is

still only one instance of political retaliation and cannot be used to establish widespread practice. Accordingly, Nawara's § 1983 *Monell* claim against the CCSO should be dismissed.[8]

*Second*, Count II fails to specify what the alleged retaliation consists of, other than to assert in a conclusory fashion that Nawara was denied promotions, training, and special assignments; was not permitted to return to work; and was subjected to "other adverse terms and conditions of his employment." (SAC ¶ 122). These allegations are too generalized and vague to support a legally adequate claim. *See, e.g.*, *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996) (to invoke the protection of the Constitution under § 1983, "something more than a conclusory allegation is necessary").[9]

"[N]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). An adverse job action includes only those actions that cause "a materially adverse change in the terms or conditions of her employment." *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989). Nawara's retaliation allegations do not provide sufficient detail for the Court to plausibly infer that the actions in question were sufficiently adverse to be actionable. *See, e.g., Collymore v. City of New York*, 2018 U.S. Dist. LEXIS 100326, *20 (S.D.N.Y. June 14, 2018 ) ("Plaintiff's conclusory allegations that she was denied training opportunities essential to her job are insufficient to demonstrate that she suffered an adverse employment action . . . because Plaintiff

---

[8] Nawara's failure to allege an underlying First Amendment deprivation against the individual Defendants, as discussed below, is an additional reason why he has failed to state a *Monell* claim. *See Valle v. City of Chi.*, 2018 U.S. Dist. LEXIS 133833, *14 (N.D. Ill. Aug. 8, 2018) (no *Monell* claim if there is no legally sufficient constitutional violation alleged against the individuals whose conduct is at issue).

[9] They are also contradicted by the other allegations in the complaint, which state that the reason Nawara was denied special assignments, transfers to more desirable units, and training, as well as promotional opportunities, was not his participation in the *Burruss* litigation but his refusal to execute the HIPAA release forms. *See* SAC ¶ 69; *see also id.* ¶¶ 52, 63, 65 (alleging that the reason Nawara was "not permitted to return to work" was that he refused to sign the medical release forms).

has not alleged facts sufficient to support an inference that the alleged lack of training had a material impact, such as a significant diminution of material responsibilities, or denial of promotional opportunities or pay increases.").

*Third*, the lack of notice caused by Nawara's failure to sufficiently allege the retaliatory acts he suffered is compounded by the fact that he engages in group pleading. To allege a § 1983 against the individual Defendants, there must be facts alleged that plausibly suggest *each* Defendant was personally involved in the alleged retaliation. *See Miller v. DuPage County*, 2018 U.S. Dist. LEXIS 133083, *7 (N.D. Ill. Aug. 8, 2018) ("Individual-capacity liability under § 1983 requires a defendant's personal involvement in the alleged constitutional violation."). The SAC indiscriminately alleges throughout that "Defendants" have done the vaguely alleged retaliatory acts to Nawara. (*E.g.*, SAC ¶ 122). It is impossible to tell from these allegations which Defendant is alleged to have personally participated in what alleged retaliatory conduct. The collective use of "Defendants" in Count II thus deprives the individual Defendants of the basic notice to which they are entitled under Rule 8 regarding the conduct in which they are alleged to have personally engaged. "Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (finding that allegations that "the defendants looted the corporation" was insufficient because "[a]n allegation that someone looted a corporation does not propound a plausible contention that a particular person did anything wrong.").[10]

[10] *See also Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, 2018 U.S. Dist. LEXIS 35569, *7 (N.D. Ill. Mar. 5, 2018) ("[T]hough Opus need not plead with particularity, liability is personal and must put each defendant on notice of their actions. The complaint in its current form fails to provide such notice and, instead, is the kind of bare conclusions that fail the standard under *Iqbal*."); *Alvarez v. Baker*, 2016 U.S. Dist. LEXIS 130207, *19 (N.D. Ill. Sept. 23, 2016) (granting motion to dismiss where complaint did not "contain any facts that provide sufficient notice to each defendant as to what precisely

*Fourth*, Nawara fails to plead facts sufficient to establish an essential element of his First Amendment retaliation claim against either the CCSO or the individual Defendants – a causal connection between the protected conduct and the alleged retaliation acts. To state a retaliation claim for First Amendment-protected activity, a plaintiff must allege among other things that his protected First Amendment activity "was a motivating factor in the defendant's retaliation." *Brown v. William Rainey Harper College*, 2017 U.S. Dist. LEXIS 121333, *16 (N.D. Ill. Aug. 1, 2017) (Pallmeyer, J.). For purposes of *Monell* liability of the CCSO, Nawara must allege facts sufficient to support the plausible inference that the CCSO's alleged "policy or custom was the 'moving force' behind the constitutional deprivation." *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008) (citation omitted).

Nawara alleges that he participated in the *Burruss* litigation and that this participation was a motivating factor in Defendants' alleged retaliatory conduct. But all of the alleged conduct that possibly could be the conduct Nawara claims to be retaliatory occurred after September 2016, over four years after the *Burruss* lawsuit ended. Nawara does not allege any facts to support a plausible causal link between Defendants' 2016 conduct and Nawara's exercise of his First Amendment rights through his participation in the *Burruss* lawsuit in 2008-2012. Judge Dow's recent opinion dismissing the complaint in *Wheeler v. Piazza*, 2018 U.S. Dist. LEXIS 23182 (N.D. Ill. Feb. 13, 2018), is instructive on this point:

> In order to establish th[e required] causal link, Plaintiff can rely on either direct or circumstantial evidence. Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group. This circumstantial evidence must show that the protected activity and the

---

he or she is alleged to have done"); *Giaccio v. City of New York*, 2005 U.S. Dist. LEXIS 642, *24 (S.D.N.Y. Jan. 19, 2005) (dismissing complaint where there were no allegations of fact from which defendant's role or involvement in the alleged violation of the plaintiff's constitutional rights might be inferred).

> adverse action are not wholly unrelated. Suspicious timing between the protected activity and the adverse action may, on its own, be enough to raise an inference of causation between the protected speech and the alleged retaliation: but, in order to rely only on suspicious timing to raise this inference, a plaintiff must demonstrate that the adverse employment action follows close on the heels of protected expression and that the person who imposed the adverse action knew of that protected expression. There is no set time limit for determining what "close on the heels" means, but the Seventh Circuit allows "no more than a few days to elapse" between the protected activity and the adverse employment action to raise an inference of causation.

*Id.* at *12-13 (internal quotation marks and citations omitted). Judge Dow held that a nine-month gap between the speech and the alleged retaliation was "too large under Seventh Circuit precedent to sufficiently state, without more, a retaliation claim, even at the motion to dismiss stage." *Id.* at *14. Noting that suspicious timing was not an element that the plaintiff needed to prove at the motion to dismiss stage, Judge Dow nevertheless stated that the plaintiff *did* need to "give enough details about the subject-matter of the case to present a story that 'holds together,'" and that the plaintiff had failed to do so. *Id.* (internal quotation marks and citations omitted).

Among the cases Judge Dow cited in support of this discussion are *Kidwell v. Eisenhauer*, 679 F.3d 957, 966-67 (7th Cir. 2012) (collecting cases and concluding that gaps of five weeks and two months between protected speech and allegedly retaliatory employment actions "militate[d] against allowing an inference of causation based on suspicious timing"); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval was not sufficient to demonstrate causation for Title VII retaliation claim); *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (four-month gap was insufficient to establish retaliation); *Weiler v. Vill. of Oak Lawn*, 2016 U.S. Dist. LEXIS 12364 (N.D. Ill. Feb. 2, 2016) (four-month interval "is too long under governing Seventh Circuit authority to support a reasonable inference of causation without other evidence"); *Diadenko v. Folino*, 890 F. Supp. 2d

975, 989-90 (N.D. Ill. 2012) (gap of two months was too speculative to support retaliation); *Brownlee v. Catholic Charities of the Archdiocese of Chi.*, 2017 U.S. Dist. LEXIS 27425 (N.D. Ill. Feb. 28, 2017) (dismissing Title VII retaliation claim because facts did not give rise to inference of causal connection between employee's grievance and alleged retaliatory conduct); *Ghiles v. City of Chi. Heights*, 2016 U.S. Dist. LEXIS 17685 (N.D. Ill. Feb. 12, 2016) (no claim for First Amendment retaliation because a six-month delay, with no other evidence, was too large to plausibly support claim at the motion to dismiss stage); *Schlessinger v. Chi. Housing Auth.*, 2012 U.S. Dist. LEXIS 163030 (N.D. Ill. Nov. 13, 2012) (dismissing First Amendment retaliation claim because two-year time gap "defeats any inference that Defendants acted in retaliation" for the plaintiff's protected speech); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) ("[A] retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible.").

Like the complaint in *Wheeler*, "there is nothing at all in Plaintiff's factual allegations [in this case] that raises an inference that Defendants became aware of [the alleged protected activity] 'close on the heels' of the [alleged retaliatory conduct]." *Wheeler*, 2018 U.S. Dist. LEXIS 23182, *16. The alleged First Amendment activity ended in 2012 when the *Burruss* jury rendered its verdict, and the alleged retaliatory conduct in this case did not happen until after September 2016, a span of *four years*. There are no facts alleged to show the individual Defendants engaged in a pattern of retaliation stretching back in time to when Nawara participated in *Burruss*. Indeed, Nawara fails to allege that any of the actors or decision-makers involved in the implementation of any potential adverse action against him even *knew* he was a plaintiff in the *Burruss* case or a member of the SORT team that was the subject of the *Burruss*

litigation. *See Sanders v. City of Chicago*, 2000 U.S. Dist. LEXIS 1753, * 24 (N.D. Ill. Feb. 15, 2000) ("Sanders 'fails to allege that any of the actors or decision-makers involved in the implementation of those actions' at the time of those actions knew that he had filed the first EEOC charge.") (quoting *Adusumilli v. Discover Fin. Servs., Inc*., 1999 U.S. Dist. LEXIS 6580 (N.D. Ill. Apr. 19, 1999)). Nor are there any facts alleged from which Defendants' knowledge could reasonably be inferred. *See Mitchell v. City of Plano*, 2018 U.S. Dist. LEXIS 135133, *17-18 (N.D. Ill. Aug. 10, 2018) (dismissing First Amendment retaliation claim because it was not plausible that in 2015 the individual police officer defendants retaliated against the plaintiff for a complaint she raised against the police department in 2009, and when the plaintiff did not allege the officers had any involvement in the matter about which the plaintiff complained six years earlier or even knew about it).

The additional allegations regarding Kurtovich are irrelevant to Nawara's § 1983 claims against the individual Defendants, not only for the reasons previously discussed for the *Monell* claim against the CCSO, but also because the individual Defendants are not alleged to have had any role or knowledge regarding the CCSO's employment decisions concerning Kurtovich. "Without any factual allegations to support this inference of causation, the Court cannot make it." *Wheeler*, 2018 U.S. Dist. LEXIS 23182, *16-17. Accordingly, Nawara has failed to allege facts sufficient to state a prima facie case of retaliation, and his § 1983 claim in Count II must be dismissed.

## III. PLAINTIFF'S TITLE VII CLAIM (COUNT III) SHOULD BE DISMISSED BECAUSE THERE ARE INSUFFICIENT ALLEGATIONS OF AN ADVERSE EMPLOYMENT ACTION AND BECAUSE PLAINTIFF DID NOT ENGAGE IN A PROTECTED ACTIVITY.

Count III of the SAC attempts to allege a Title VII claim for retaliation against the CCSO. To state a retaliation claim under Title VII, a plaintiff must allege facts that show (1) he

engaged in statutorily protected activity, (2) his employer took an adverse action against him, and (3) a causal connection existed between the protected activity and the adverse action. *Brown*, 2017 U.S. Dist. LEXIS 121333, *14-16 (Pallmeyer, J.); *see also Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). Nawara alleges that the CCSO retaliated against him for complaining about Jones-Hayes's "assault and battery of him." (SAC ¶ 135). He does not and cannot assert that his Title VII retaliation claim arises from his participation in the *Burruss* lawsuit, as Title VII creates no protected class for employees claiming to assert First Amendment rights.

The reference to an "assault and battery" is to the September 28, 2016 incident in which Jones-Hayes touched Nawara's shoulder. (*See* SAC ¶¶ 32-38). The reference to complaints made by Nawara about that "assault and battery" presumably are the complaints alleged in ¶¶ 39 and 42 of the SAC. (*See id.* ¶ 39 (claiming that Nawara complained about Jones-Hayes's "conduct towards him to the other employees, including the sergeant that was present"); and *id.* ¶ 42 (alleging that, on October 13, 2016, Nawara filed a formal complaint with his supervisor regarding Jones-Hayes's alleged "harassment and assault and battery of him")). It is impossible for the CCSO to tell, however, what "retaliatory treatment" (*id.* ¶¶ 135, 137) Nawara suffered. Without knowing what the alleged adverse employment action is, Defendants cannot defend against Nawara's claim. As a result, Count III fails to give the CCSO adequate notice of a necessary element for Nawara's Title VII claim, and should be dismissed.[11]

---

[11] The CCSO should not have to guess what the adverse employment action is. One possibility is paragraph 40's reference to Nawara being transferred to external operations after he complained about Jones-Hayes's conduct to other employees. But if the transfer is the adverse employment action, then Nawara's claim fails because a transfer to a different assignment with no resulting effect on the employee's title, pay, benefits, or job status, does not constitute an adverse employment action. *See Little v. Ill. Dep't of Pub. Health*, 2017 U.S. Dist. LEXIS 196697, *21-22 (N.D. Ill. Nov. 30, 2017) ("viewing the allegations in Plaintiff's favor, she has failed to sufficiently allege that Defendant took an adverse employment action against her because she has failed to even generally allege that Defendant's reassignment of some of her unspecified duties impacted the terms or conditions of her employment or her future career prospects"). Moreover, that transfer occurred weeks before Nawara alleges he made a

Dismissal of Nawara's Title VII claim is warranted here for another, fully dispositive, reason as well. The facts alleged by Nawara demonstrate that Nawara cannot meet the first element of his Title VII claim – the requirement that he engaged in "protected activity." While filing a formal complaint as Nawara alleges he did here (SAC ¶ 42) may constitute a protected activity for purposes of Title VII's retaliation provision, it does so *only* if "the underlying complaint asserts that the plaintiff is suffering discrimination *because of* the plaintiff's protected class." *Brown,* 2017 U.S. Dist. LEXIS 121333, *15 (emphasis added) (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)); *see also Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (employers "are prohibited from punishing employees for complaining" about "practices that violate Title VII"). A protected class for purposes of Title VII includes race, color, religion, sex, or national origin. *Gee v. City of Lawrence*, 2009 U.S. Dist. LEXIS 37444, *17 n.7 (S.D. Ind. May 1, 2009) (citing 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer. . . to . . . discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin.")).

The SAC alleges that the underlying complaint Nawara filed for which he was retaliated against was a complaint about Jones-Hayes's "harassment" (SAC ¶ 42) and her "assault and

"formal complaint" (SAC ¶ 42). *See id.* ¶ 40 (alleging Nawara was transferred the "the very next day"). Another possibility is that the adverse employment action is the FFD referral. But Burke also recommended that Nawara be evaluated for a possible FFD examination before Nawara sent his formal complaint to his supervisor. Since the SAC fails to allege that the FFD decision by Reierson and Shelby was unlawful retaliation, then the FFD requirement as a matter of law is not an adverse employment action. *See Brownfield v. City of Yakima*, 612 F.3d 1140, 1147 n.2 (9th Cir. 2010) (rejecting plaintiff's argument he was discharged in retaliation for protected ADA activity, *i.e.*, refusing an unlawful request that he submit to a medical examination because his retaliation claim "must stand or fall with his § 12112(d)(4)(A) claim;" if the referral was not unlawful, the plaintiff's retaliation claim "also fails"); *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (fitness for duty referral is not an adverse employment action). Finally, Nawara's allegation that he continues to suffer adverse employment actions, citing to his OPR interview (SAC ¶ 98) also is insufficient to allege an adverse employment action. *See Glapion v. CSX Transp. Inc.*, 2010 U.S. Dist. LEXIS 11203, *12 (N.D. Ill. Feb. 9, 2010) (holding that an investigation is not an adverse employment action).

battery of him" (*id.* ¶¶ 42, 135). Thus, Nawara's allegation is that he complained about his supervisor treating him badly. Nawara's complaint for which he suffered retaliation is not a complaint alleging any form of discrimination based on race, color, religion, sex, or national origin. In short, "Plaintiff misunderstands the scope of Title VII's protections. . . . Title VII does not protect against standoffish, rude, or unprofessional behavior from coworkers." *Whitlow v. Bradley Univ.*, 2017 U.S. Dist. LEXIS 17964, *27 (C.D. Ill. Feb. 8, 2017) (internal citations omitted).

Nawara may believe he can bring a Title VII retaliation claim because he used a CCSO "Discrimination/Harassment/Sexual Harassment Complaint Form" when he submitted his complaint about Jones-Hayes's conduct to his supervising officer. *See* Ex. 7.[12] But "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Brown*, 2017 U.S. Dist. LEXIS 121333, *15 (internal quotation marks and citation omitted). "[A] plaintiff claiming retaliation 'must not only have a subjective (sincere, good faith) belief that [she] opposed an unlawful practice; [her] belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII.'" *Bolanos v. Ne. Ill. Univ.* 2017 U.S. Dist. LEXIS 1313, *44 (N.D. Ill. Jan. 4, 2017) (Pallmeyer, J.) (citation omitted).

Nawara's written statement on the complaint form regarding the alleged "discriminatory" or "harassing" incident with Jones-Hayes did not describe any discrimination or harassment that occurred because of Nawara's race, color, gender, religion, or national origin. Instead, Nawara merely complained that he was treated by Jones-Hayes in a "very discourteous way." Ex. 7.

[12] Nawara's complaint is referenced in ¶ 42 of the SAC and therefore may be considered part of the pleadings for purposes of Defendants' motion to dismiss.

Nowhere does he say or even hint in his formal complaint (or in the SAC) that he was treated in a discourteous way *because* of his race, color, gender, religion, or national origin. *See e.g.*, *Alford v. Kendall Cnty, Dep't of Health*, 2008 U.S. Dist. LEXIS 96547 (N.D. Ill. Nov. 24, 2008) (plaintiff's complaints of "harassment" and "discrimination" to supervisor not found to be protected activity because they lacked a specific link to plaintiff's gender); *Rene v. Lidestri Foods, Inc.*, 2010 U.S. Dist. LEXIS 122246, *25-26 (D.N.J. Nov. 17, 2010) (use of the general term "harassing and unfair behavior" is insufficient where Plaintiff never alleged in any fashion that he was harassed because of his race, color, or national origin); *Morrow v. Carolina Urologic Research Ctr., LLC*, 2014 U.S. Dist. LEXIS 135344, *28-30 (D.S.C. July 30, 2014) ("The fact that Plaintiff was the only black employee is insufficient to show that her complaints were based on race."). Thus, as this Court held in *Brown*, a similar case decided on a motion to dismiss, "There are not sufficient allegations in the complaint to establish a claim of retaliation on the basis of protected activity under Title VI." *Brown*, 2017 U.S. Dist. LEXIS 121333, *14-16.

What is more, Nawara may not amend his complaint to include the missing allegations because to do so would be futile. Neither Nawara's EEOC Charge nor his Amended EEOC Charge (which the Court may consider because they are referred to in ¶¶ 7, 8 and 81 of the SAC) complained about retaliation based on a protected class. Instead, like the SAC, Nawara's EEOC charges only mention Jones-Hayes's alleged "assault and battery" and disrespectful treatment of Nawara. Ex. 6. Any attempt to allege retaliation based on a suspected class at this point in the proceedings would be barred for failure to exhaust administrative remedies. *See Nolan v. City of Chicago*, 2017 U.S. Dist. LEXIS 19582, *20 (N.D. Ill. Feb. 13, 2017) ("allowing Nolan to replead his hostile work environment claim in Count Three would be futile because that claim is

unexhausted due to his failure to invoke a protected category in his charge"). According, Count III should be dismissed with prejudice.

## IV. COUNT IV UNDER THE ILLINOIS WHISTLEBLOWER ACT SHOULD BE DISMISSED BECAUSE THERE WAS NOTHING UNLAWFUL ABOUT ASKING PLAINTIFF TO SIGN THE MEDICAL RELEASE FORMS AT ISSUE.

The Illinois Whistleblower Act provides that an employer may not retaliate against an employee "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). It also provides that an employer may not retaliate against an employee "for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation . . . ." 740 ILCS 740 ILCS 174/20. To establish a cause of action under § 174/15(b), the employee must show (1) an adverse employment action by his or her employer, (2) which was in retaliation (3) for the employee's disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation." *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, P15 (citing *Taylor v. Bd. of Educ*., 2014 IL App (1st) 123744, ¶ 52). To establish a cause of action under § 174/20, the employee must establish "(1) he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation and (2) his employer retaliated against him because of that refusal." *Sardiga v. N. Trust Co.*, 948 N.E.2d 652, 657 (Ill. App. 1st Dist. 2011). Nawara alleges he was retaliated against in violation of one or both of these provisions because of his participation in the *Burruss* litigation and because of his complaints about being forced to sign medical release forms. (SAC ¶¶ 140-141). Nawara's Whistleblower Act claim fails as a matter of law for three reasons.

*First*, regardless of whether Nawara proceeds under 740 ILCS 174/15(b) or 740 ILCS 174/20, he must show that Defendants' alleged retaliation occurred *because of* the conduct protected by those two provisions. *Sweeney*, 2017 IL App (4th) 160492, P15; *Sardiga*, 948 N.E.2d at 657, 659. Assuming Nawara's participation in the *Burruss* litigation falls under the protection of either 740 ILCS 174/15(b) or 740 ILCS 174/20, for the same reasons that Nawara has failed to plead the causation element of his First Amendment retaliation claim in Count II, Nawara also fails to allege a plausible factual basis for inferring that any alleged retaliation in violation of the Whistleblower Act occurred *because of* his participation in the *Burruss* litigation. *See supra* at pp. 14-17.

*Second*, Nawara cannot rely for his Whistleblower Act claim on his refusal to sign the medical release forms. As explained above, there was nothing unlawful about asking Nawara to sign the forms, so the act of requiring Nawara to sign the forms for an FFD process is not an adverse employment action for purposes of Nawara's claim under 740 ILCS 174/15(b). *See Freelain v. Village of Oak Park*, 888 F.3d 895, 904 (7th Cir. 2018) (rejecting police officer's claim that his employer retaliated against him by requiring a psychological evaluation because the examination could not be considered an adverse employment action, stating: "Our cases show many instances of public safety agencies requiring psychological evaluations of their employees. We have accepted these measure when they are used to determine a worker's ability to perform work functions safely."); note 11, *supra* (citing *Brownfield* and *Benningfield*); *see also Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998) (employers particularly those in the law enforcement setting, "must be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to [legal] claims"). Nor

does it constitute "a violation of a state or federal law, rule, or regulation," for purposes of Nawara's claim under 740 ILCS 174/20.

*Third*, Nawara also does not allege facts that plausibly show that the alleged retaliatory acts of being placed on unpaid suspension and forced to use vacation and personal days were *because of* Nawara's complaints about the medical release forms. The CCSO had the right to require that Nawara execute the forms to allow the FFD process to go forward, as discussed with regard to Count I. When Nawara refused, it was appropriate for the CCSO to place Nawara on unpaid leave status because of his refusal to comply with a lawful directive of his employer. *See Hrobowski v. Henderson*, 2000 U.S. Dist. LEXIS 7293 (N.D. Ill. May 24, 2000) (Pallmeyer, J.) (dismissing claim for violation of the Rehabilitation Act for terminating postal worker who refused to sign medical release in order to complete a fitness for duty); *see also Vickers v. Powell*, 493 F.3d 186 (D.C. Cir. 2007) (affirming summary judgment against plaintiff's retaliation and discrimination claims stemming from her refusal to complete a medical examination and sign blank medical release forms). In short, the CCSO's alleged placement of Nawara on unpaid suspension and forcing him to use vacation and personal days was not in response to any whistleblowing activity (disclosure of protected information to a government or law enforcement agency or refusal to participate in an activity that would result in a violation of a state or federal law, rule, or regulation), but instead was done because of Nawara's refusal to comply with a lawful order of his employer.

## V. COUNT V MUST BE DISMISSED BECAUSE THERE IS NO ONGOING CASE OR CONTROVERSY AND THE MERIT BOARD ACT DOES NOT APPLY TO THIS CASE.

Count V of the SAC appears to be an attempt to transmogrify the remedy of a declaratory judgment into relief for inadequately pleaded violations of the Cook County Sheriff's Merit Board Act, 55 ILCS 5/3-7002 *et seq.*, equal protection, and due process. Aptly titled Creation of

Remedy, 28 U.S.C. § 2201, the "Declaratory Judgments Act" permits federal courts to declare the respective rights of the parties *before* accrual of avoidable damages, but it only provides a remedy – not a new cause of action. *See* 28 U.S.C. § 2201; *Scott v. McCoy*, 2011 U.S. Dist. LEXIS 128858 at *3-4 (N.D. Ill. Nov. 7, 2011) (dismissing complaint for declaratory judgment where plaintiff failed to show damages were still accruing); *Sarafin v. Sears, Roebuck & Co.*, 446 F. Supp. 611, 615 (N.D. Ill. 1978) ("The primary purpose of the [Declaratory Judgments] Act is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued."). To achieve this limited purpose, declaratory judgment actions are only available to resolve ongoing controversies where damages have not fully accrued. *Alvarez v. Smith,* 558 U.S. 87, 93-94 (2009) (dismissing complaint for declaratory judgment regarding the adequacy of process as moot where there was no longer any controversy regarding the property interest at issue). Even if this Court entertains Count V, Nawara has not pleaded a cause of action under the Merit Board Act, equal protection, or due process warranting declaratory relief.

### A. DECLARATORY RELIEF IS UNAVAILABLE HERE BECAUSE PLAINTIFF EVENTUALLY PARTICIPATED IN THE FFD PROCESS AND HAS RETURNED TO WORK, THUS THERE IS NO ONGOING CASE OR CONTROVERSY TO BE RESOLVED.

This Court should dismiss Nawara's claim for declaratory relief because there is no ongoing case or controversy to be resolved by means of a declaratory judgment. Courts regularly dismiss declaratory judgment claims where relief would be retroactive or where the disputed conduct has ceased. *See, e.g., Alvarez*, 558 U.S. at 93-94 (2009); *Green v. Mansour,* 474 U.S. 64, 73 (1985) (holding that declaratory judgments are not available to establish the past liability of a state or state agency); *Selective Ins. Co. v. Phusion Projects, Inc.*, 836 F. Supp. 2d 731, 733-34 (N.D. Ill. 2011) (finding no controversy existed for declaratory judgment action between insurer and

insured where insurer withdrew its claim under the insurance policy); *accord Quad/Med Claims, LLC v. Liberty Mut. Ins. Co.*, 2013 U.S. Dist. LEXIS 136580 at *8-13 (E.D. Wis. Sept. 24, 2013) (dismissing complaint for declaratory judgment seeking damages without an underlying cause of action and stating the purpose of the such judgments is to settle actual controversies *before* they ripen into violations of law). Nawara's request that this Court declare as unlawful conduct by Defendants that has already occurred, entitling Nawara to back pay, would not redress any ongoing controversy and violates the purpose of the Declaratory Judgments Act. (*See* SAC ¶ 152).

Unlike typical declaratory judgment actions brought by prospective defendants, Nawara, after having already returned to work, seeks a declaration that his "suspension"[13] was unlawful. Since Nawara has returned to work after eventually completing the FFD process, any declaration that Defendants' conduct was unlawful would not affect the rights of the parties moving forward or limit the accrual of damages. There is no ongoing controversy with respect to whether Nawara is permitted to work based on his failure to participate in the FFD process. Therefore, this Court should dismiss Count V for declaratory judgment.

### B. COUNT V ALSO SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE A CAUSE OF ACTION THAT WOULD WARRANT DECLARATORY RELIEF.

Adding to the perplexing nature of Nawara's request for declaratory relief is the absence of any underlying valid cause of action for which a declaratory judgment can serve as a remedy. Making conclusory statements regarding the nature of his time away from work as a

[13] It is unclear what basis Nawara has for referring to his time away from work as a suspension where the SAC directly refers to contrary correspondence Nawara had with Defendant Reierson. The letters and emails received by Nawara from Reierson clearly state that had Nawara participated in the FFD process, his absences would not have been deemed unauthorized. *See* Exs. 3, 5. Nawara controlled his own fate – at odds with the concept of suspension – when, after knowing the consequences, he refused for many months to participate in the FFD process.

"suspension" rather than, what it was, as an unauthorized absence, Nawara alleges he has a property right under the wholly inapplicable Merit Board Act. Defendants can only guess that this is an attempt to allege a cause of action under equal protection and/or due process. Even assuming Nawara had a property right that would prevent Defendants from deeming his absences unauthorized, the November 18, 2016 meeting with HR and Defendant Reierson's multiple attempts to obtain Nawara's cooperation provided all the process that was due. Since Nawara has failed adequately to plead any cause of action supporting a declaratory judgment remedy, this Court should dismiss Count V.

### 1. THE MERIT BOARD ACT ONLY APPLIES TO "DISCIPLINE" AND DOES NOT APPLY TO THE FFD PROCESS OR THE DETERMINATION THAT PLAINTIFF'S ABSENCES WERE UNAUTHORIZED.

Without alleging that the Merit Board Act even applies to him,[14] Nawara claims Defendants violated § 3-7012 of the Act by "suspending" him because the Act requires hearings for certain employees of the Sheriff's Office before they are "removed, demoted, or suspended." (SAC ¶¶ 148-50). The Merit Board Act's provisions regarding suspensions *only* relate to "disciplinary" actions by the Sheriff, and do not apply to all uncompensated absences or the FFD process. *See* 55 ILCS 5/3-7011 (referencing suspensions in the disciplinary context and requiring compliance with § 3-7012 for suspensions over 30 days). Nawara's contention that Defendants violated the Merit Board Act is wrong because Nawara's time away from work and the FFD process were not discipline covered by the Merit Board Act.

The conclusion that Nawara was not subjected to "discipline" as required for the Merit Board Act to apply comes straight from the SAC. Nawara was informed that his November 18,

[14] This presumably is an attempt to avoid reference to relevant collective bargaining agreements which provide grievance procedures and remedies for an employee who feels he is wrongly being denied pay – thereby limiting the availability of such agreements to Defendants on a motion to dismiss.

2016 meeting with HR "was not an O.P.R. (Office of Professional Review) matter" (SAC ¶ 47). The only mention of discipline is the allegation that "Defendants also *threatened* Plaintiff with disciplinary action and that charges *may be brought* seeking his termination" *Id.* ¶ 68 (emphasis added). A threat of discipline is not the same as actual discipline and cannot be enough to trigger the Act. Defendants provided Nawara ample time to demonstrate his fitness for duty and the repercussions for Nawara's failure to participate in the process were not disciplinary. More to the point, it is settled law in this Circuit that sending an employee like Nawara for an FFD examination, even if the employee loses pay or benefits in the process, is neither disciplinary nor a due process violation. *Deen v. Darosa*, 414 F.3d 731, 734-35 (7th Cir. 2005) (holding that a public employer's requirement that an employee demonstrate his fitness for duty before being allowed to return to work and receive pay is not disciplinary and "the eventual exhaustion of medical leave pay and benefits does not mean that Deen had a legitimate claim of entitlement to reinstatement to active duty.); *see also Hrobowski,* 2000 U.S. Dist. LEXIS 7293; *Vickers*, 493 F.3d 186 (both cases discussed *supra* at 24). This Court should find that the Merit Board Act does not apply and dismiss Count V of the Second Amended Complaint.

**2. PLAINTIFF HAS NOT ALLEGED A VIOLATION OF HIS DUE PROCESS RIGHTS.**

That the Merit Board Act does not apply here should end the inquiry. But even if the Court were to consider Count V further, Nawara also has not and cannot allege a valid due process claim.[15] Nawara alleges that the Merit Board Act creates a property interest in his employment and an opportunity to receive a hearing, and because there was no such hearing in

[15] Nawara also mentions equal protection in his allegations. To state an equal protection "class of one" case, a plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The SAC contains no such allegations and therefore there is absolutely no basis for Nawara's equal protection challenge.

this case Defendants deprived him of due process under the Illinois and United States Constitutions. (SAC ¶¶ 151-52). Even if the Merit Board Act created these property interests, due process does not require more process than Nawara already received for the determination whether he was fit for duty. Prior to being directed to undergo an FFD evaluation, Nawara's matter was investigated by HR and Nawara received an interview wherein he had the opportunity to address Defendants' concerns about his fitness. (SAC ¶ 43). Nawara also was informed on at least two other occasions by Defendant Reierson how to participate in the FFD process and to demonstrate his fitness for duty. *See* Exs. 3, 5.

In *Deen*, the Seventh Circuit rejected the plaintiff state police officer's due process challenge where he was refused reinstatement upon the decision that he was not fit for duty. 414 F.3d at 734-35. The plaintiff argued that he was effectively terminated without the requisite process for disciplining police officers. *Id.* at 733. However, the court found a distinction between discipline and a public employer's request that public employees demonstrate their fitness for active duty. *Id.* at 734. The Seventh Circuit held that the plaintiff

> did not have a constitutionally protected property interest in reinstatement itself, but, rather, had a more limited interest in an opportunity to establish his fitness for return to active duty, he was not owed the full complement of due process protections set forth in *Loudermill*.

*Id.* at 736; *see also Buttitta v. City of Chicago*, 9 F.3d 1198, 1201-03 (7th Cir. 1993) (finding that the Illinois Pension Code provision regarding benefits lost as a result of being found unfit for duty only creates a due process interest in an opportunity to demonstrate fitness for active duty).

Unlike the *Deen* plaintiff, Nawara here persistently refused to use the opportunity to establish he was fit for duty. Additionally, once Nawara finally did participate in the process and receive a report through the ordinary course stating he was fit for duty, he was returned to work. Nawara's case does not demonstrate a flaw in the CCSO's FFD practice, but shows that Nawara

received ample process by being given an opportunity to demonstrate his fitness and being returned to work upon completion. Count V should be dismissed for failure to state a claim upon which declaratory relief can be granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint should be granted.

Respectfully submitted,

THOMAS DART, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY

/s/ Sarah R. Marmor
Sarah R. Marmor
Lynn Moffa
Morgan G. Churma
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Ph. 312-726-6000
smarmor@scharfbanks.com
lmoffa@scharfbanks.com
mchurma@scharfbanks.com

# APPENDIX A

| | DOCUMENT |
|---|---|
| **Exhibit 1** | December 21, 2016 Email from Plaintiff's attorney to the CCSO, referred to in paragraph 70 of the SAC |
| **Exhibit 2** | January 31, 2017 email from Plaintiff's attorney to the CCSO (attaching HIPAA release form), referred to in paragraph 72 of the SAC |
| **Exhibit 3** | February 28, 2017 Letter from Defendant Reierson to Plaintiff (attaching HIPAA release form and CCSO medical release form), referred to in paragraph 74 of the SAC[16] |
| **Exhibit 4** | March 8, 2017 email from Plaintiff's counsel to the CCSO (attaching February 28, 2017 Letter from Reierson to Plaintiff), referred to in paragraph 75 of the SAC |
| **Exhibit 5** | March 13, 2017 email from Defendant Reierson to Plaintiff's counsel, referred to in paragraph 76 of the SAC |
| **Exhibit 6** | Plaintiff's EEOC Charge and Amended EEOC Charge, referred to in paragraphs 7, 8, and 81 of the SAC |
| **Exhibit 7** | Plaintiff's October 13, 2016 Discrimination/Harassment/Sexual Harassment Complaint Against Defendant Jones-Hayes, referred to in paragraph 42 of the SAC |

[16] The February 28, 2017 letter from Reierson is misidentified in paragraph 74 of the SAC as a letter sent "[o]n March 1, 2017."

**CERTIFICATE OF SERVICE**

I certify that on August 21, 2018, I caused the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** to be filed using the Court's CM/ECF system, which will send e-mail notification of the filing to all counsel of record. These documents are available for viewing and downloading via the CM/ECF system.

/s/ Lynn D. Moffa

*Service List*

Dana L. Kurtz
Heidi Karr Sleper
Jacob Exline
KURTZ LAW OFFICES, LTD.
32 Blaine
Hinsdale, IL 60521
dkurtz@kurtzlaw.us
hsleper@kurtzlaw.us
jexline@kurtzlaw.us
*Attorneys for John Nawara*

Nile N. Miller
Kathleen Cunniff Ori
Jay Rahman
COOK COUNTY STATE'S ATTORNEY'S OFFICE
500 Richard J. Daley Center
Chicago, IL 60602
nile.miller@cookcountyil.gov
kathleen.ori@cookcountyil.gov
jay.rahman@cookcountyil.gov
*Attorneys for County of Cook*