**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF COOK, a unit of local Government; THOMAS DART, in his individual and official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities,<br><br>Defendants. | Case No. 1:17-cv-02393<br><br>Judge Rebecca R. Pallmeyer |

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS' REPLY TO**
**DEFENDANTS' SECOND MOTION TO DISMISS**

Plaintiff John Nawara, through his undersigned counsel, respectfully submits this Sur-Reply to Defendants' Reply to Defendants Second Motion to Dismiss Plaintiff's Amended Complaint, and in support states:

1. On November 1, 2018, the Court granted Plaintiff's oral motion for leave to file a sur-reply (Dkt. 133) because Defendants made new arguments in their reply brief that were not made in their motion to dismiss.

2. Defendants' second motion to dismiss, and even more so, Defendants' reply brief (Dkt. 132) read like a motion for summary judgment, which is improper at this stage of the proceedings. All of the factual arguments that Defendants make must be rejected and not considered. Again, the question is whether or not Plaintiff has stated a claim, not whether those claims can be proven at this point. Defendants' reply is writ with factual arguments that are not proper on a motion to dismiss. Defendants continually keep twisting and turning and changing their theory of defenses in this case. For example, when Plaintiff filed his TRO, Defendants maintained that it was only Defendants Reierson and Shelby that made the decision to order Plaintiff for a

fitness for duty evaluation (*see* Dkt. 8-3 ¶¶ 6-8), and that this decision was made only after the meeting when they called Plaintiff into Human Resources to ask him if he had threatened another employee to which he stated: "no" (*see* Dkt. 8-3, ¶ 20; Dkt. 89 ¶ 44). Now, Defendants have changed their story to try to obtain a tactical advantage and twist the facts to try to get Plaintiff's claims dismissed.

3. Defendants make several arguments that are simply factually and legally frivolous, false, and in error in their reply brief that should be stricken and not considered. For example:

a. Defendants argue: "Plaintiff's only ADA complaint is that he was told to sign a HIPAA release for his medical records allegedly before a decision had been made to send him for a fitness for duty exam." (Dkt. 132 at 1.) This is clearly not the case and not supported by the allegations in the Second Amended Complaint ("SAC"), which include but are not limited allegations that Plaintiff was not given notification of any complaint or allegations against him, and that "Defendants Shelby and Reierson refused to provide him with any information and told him that he had to sign two (2) HIPAA release forms that were blank" (¶ 45), "according to Defendant Matthew Burke, no decision had been made as to whether or not Defendants were going to order Plaintiff for a fitness for duty examination," (¶ 51); "Defendant Reierson admits that Officer Nawara was placed on administrative leave with no pay because he would not sign the HIPAA release forms," (¶ 52); "The ADA specifically prohibits employers from 'requir[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability.' 42 U.S.C. § 12112(d)(4)(A)," (¶ 53); "The EEOC guidance also states that 'Any employee, therefore, has a right to challenge a disability-related inquiry or medical examination that is not job-related and consistent with business necessity.' https://www.eeoc.gov/policy/docs/ guidance-inquiries.html," (54); "The order given to Plaintiff to sign blank HIPAA release forms for his medical records

violates the ADA," (55); "Defendants' medical inquiry at issue is not vital to its business," (56). The list of allegations goes on.

b. Defendants then go on to assert that the suggestion that Defendants had not made the decision to order Plaintiff for a fitness-for-duty evaluation prior to the November 18, 2016 meeting is "based on an utterly irrational and contradictory theory of the facts that the Court need not credit." (Dkt. 132 at 1.) However, it is based on Defendants' own admissions from their declarations that were filed with this Court in response to Plaintiff's TRO, and their own admissions to Plaintiff. For example, Defendant Burke admits that the decision was not made to order Plaintiff for a fitness for duty until ***after*** the November 18, 2016 meeting. In his declaration, Burke admits that he requested that a meeting be held with Officer Nawara to "determine whether a fitness for duty evaluation was appropriate. . . ." (Dkt. 8-2 ¶ 9.) Reierson also admits that she had not made the decision to order Plaintiff for a FFD until after the November 18, 2016 meeting. (Dkt. 88-1, Ex. 4 ¶ 18 ("Prior to speaking with Superintendent Jones-Hayes and Mr. Nawara, I did not believe there was enough information to refer Mr. Nawara to CorVel for a FFD evaluation.").)

c. Defendants argue that "Plaintiff would have this Court construe the SAC as alleging that the *very first and only thing* that Defendants Reierson and Shelby did when Plaintiff arrived at the November 18, 2016 meeting was demand that Plaintiff release his medical records to them – and that they made this demand without any explanation why Plaintiff's medical records were being requested." (Dkt. 132 at 1-2.) However, here is how the SAC (Dkt. 89) reads, which is absolutely plausible and will be born out with discovery and depositions:

> 43. On November 18, 2016, Defendants ordered Plaintiff to appear to Human Resources.
>
> 44. Defendants Shelby and Reierson met with Plaintiff. They asked him if he had threatened another employee; Plaintiff responded: "no," as he had not.

45. Plaintiff was not given any notification of any complaint or allegations against him, and Defendants Shelby and Reierson refused to provide him with any information and told him that he had to sign two (2) HIPAA release forms that were blank.

46. Plaintiff was not provided with any complaint or any indication that anyone had complained about him.

47. Defendants Shelby and Reierson told Plaintiff that this was "not an O.P.R. (Office of Professional Review) matter."

48. O.P.R. is the division that investigates officer misconduct.

49. Defendant Dart, through Defendants Burke, Shelby, and Reierson, ordered Plaintiff to sign blank HIPAA release forms for his medical records, which Plaintiff refused because he reasonably believed that it is was violation of the ADA.

50. Defendant Dart, through Defendants Burke, Shelby, and Reierson, told Plaintiff that he could not return to work until he signed the HIPAA release forms, which Plaintiff believed was and is an unlawful request.

51. As of this meeting on November 18, 2016, and according to Defendant Matthew Burke, no decision had been made as to whether or not Defendants were going to order Plaintiff for a fitness for duty examination. Defendant Burke stated that he requested Shelby, and Reierson "meet with Officer Nawara and determine whether a fitness for duty evaluation was appropriate."

There is nothing in the least bit contradictory in these allegations. It is one thing to ask an employee if they threatened someone, and another to say that they are being sent for a fitness for duty. In fact, Reierson admits (as alleged in the SAC, which is taken from her own declaration) that "Officer Nawara was placed on administrative leave with no pay because he would not sign the HIPAA release forms." (¶ 52.) This is consistent with what Reierson told Nawara, which was that he could not return to work until he signed the HIPAA release forms. (Dkt. 89 ¶ 50.)

d. Defendants ague that "[t]he SAC itself provides the first indication that Plaintiff's factual claim makes no sense," referring to Plaintiff's combined allegations as to what happened in the November 18, 2016 meeting, but again twisting them in some

contorted way (e.g., suggesting that Plaintiff claims that he was handed the HIPAA forms to sign right when he walked in the meeting without any discussion. (Dkt. 132 at 2.) If we are going to argue what "factual claim makes no sense," (Dkt. 132 at 2), *i.e.*, factual disputes, which again are not proper on a motion to dismiss, but presented here to prove the point, then the argument could be made for the fact that it makes no sense that Defendants made the decision to send Nawara for a FFD based on what Reierson claims happened in the meeting, which is that Nawara "denied that there had been a confrontation" and that he was "clenching his fists and jaw throughout the meeting," (*see* Dkt. 8-3 ¶¶ 18, 19), which is disputed.

e. Defendants also attach to their reply an email from the Union attorney, which should be stricken as it is improper on a motion to dismiss, arguing that because the Union attorney referred to a "Fitness-for-Duty" in the subject line of her email that proves that it was decided[1] (and more importantly discussed) in that November 18, 2016 meeting that Nawara was being ordered for a fitness for duty. Such a leap requires a lot of assumptions that are not evidence and improper on a motion to dismiss, including the assumption that Plaintiff was aware of the email, which he was not; that Defendants Shelby and Reierson did not communicate with the Union attorney after the meeting; that the Union attorney was not making an assumption based on other facts. There are all kinds of factual scenarios that could explain that email.

f. What is clear is that there is a question of fact about when and why Plaintiff was ordered for a FFD. Certainly the facts could bear out in discovery that Plaintiff showed no signs of anger, that even if he did, that would not justify a FFD examination, that the HIPAA forms violate the ADA by being a demand for unlimited medical records to be

[1] It is irrelevant what Defendants may or may not have decided in the meeting, especially on a motion to dismiss.

produced to one's employer and without limitation, and that there was no business necessity for the FFD, and that the FFD was retaliatory for Plaintiff's political affiliation, protected activity in participating in the *Burruss* litigation, and for his complaints of harassment by Jones-Hayes, and his filing of an OPR complaint against her for her harassment and assault and battery of him.

g. Defendants also argue that Plaintiff's claims are implausible because "HIPAA form itself states that the medical records and information sought to be released through the form were those that 'relate[ ] to my *fitness for duty exam.*'" (Dkt. 132 at 5.) The release at issue that Defendants ordered Plaintiff to sign is similar to the release that the EEOC filed suit over in *EEOC v. Cummings*. (Exhibit 1, Complaint in *EEOC v. Cummings*.) The EEOC noted that the release that the plaintiff was ordered to sign required that the plaintiff agree to the disclosure of "all information concerning medical care, advice, treatment, or supplies provided to me," and "all information related to or forming the basis of any medical, mental health and/or substance abuse evaluation, recommendations and/or determinations." (Exhibit 1, ¶ 17.) Ultimately, the EEOC settled the *Cummings* case. *See EEOC v. Cummings,* 14-cv-03408-SRN-SER (Dkt. 66.) Here, Defendants had ordered Plaintiff to sign 2 HIPAA release forms, one that was blank was "to release healthcare information of the patient named above to: Cook County Sheriff's Office, Winifred Shelby. . . .":

I request and authorize ______________________ to
release healthcare information of the patient named above to:

Name: ____________ Cook County Sheriff's Office
Address: ____________ Winifred Shelby, RN, COM, South Campus Bldg. 2
3026 South California Avenue
City: ____________ Chicago, IL 60608

(Exhibit 2, Release given to Nawara.)

The other had very broad language as well that referenced "all medical records and information" and "[a]ny health care provider or facility who treats/treated me for my medical condition or medial illness." (Exhibit 3, Release given to Nawara.) Plaintiff Nawara, like the plaintiff in *Cummings* told the Sheriff's Office that the release needed to be narrowed in scope because the information sought was sensitive, personal, and private information, and Nawara objected to the extent that the release(s) were not proper in scope and did not identify the proper person to whom the information would go. *See* Exhibit 1, *EEOC v. Cummings,* Compl. ¶ 25.) Here, ultimately, the Sheriff's Office agreed to modify the HIPAA release to be narrowly tailored (*see* Exhibit 4, Redline of Release), and with that Plaintiff agreed to sign the release and participated in a retaliatory fitness for duty, over his objection, so that he could return to work, reserving his claims that the FFD was retaliatory and violated the ADA.

4. Defendants also argue for the first time in their reply that "Plaintiff Has No 'Business Necessity' Claim Related to the FFD Because He Failed to Raise That Argument to the EEOC and Thus Did Not Exhaust His Remedies." This argument is frivolous. The EEOC Charge specifically states: "Respondent cannot show that the medical inquiry at issue is ***vital to its business and is narrowly formulated*** to prevent unnecessary intrusion into my medical information. Respondent has not disclosed to me any asserted purpose, and cannot show that the medical inquiry serves any asserted purpose. The request is also in violation of my privacy rights and unlawful." (Dkt. 125, Page 56 of 56 PageID #:2022, EEOC Charge ¶ 12.) This allegation is sufficient to put Defendants on notice that Plaintiff claimed before the EEOC and claims now that there was no business necessity for the alleged FFD request. Even if these allegations were not in the EEOC charge, which it is, the ADA claim based on whatever theory is reasonably related to Plaintiff's ADA Charge filed with the EEOC. *See Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) ("We have held that Title VII is to "be construed and applied broadly. . . .").

5. Just because Defendants repeatedly try to pigeonhole Plaintiff's claims to only being about the HIPAA release form, it is not. Plaintiff also claims that the FFD was in violation of the ADA (and retaliatory) as well. Even just looking at the FFD evaluation that was ultimately done, that alone provides evidence that the FFD ultimately ordered by Defendants, whenever it was ordered, violated the ADA and there was not business necessity for the FFD. Defendants' own chosen doctor, Dr. Goldstien, found in relevant part the following:

> I have been presented with no evidence from Officer Nawara's 18+ year history with the County that he has experienced chronic (i.e., longstanding and pervasive) anger management difficulties on the job, or any other particular difficulties, for that matter. According to him, his last suspension was in 2006, pertaining to a situation involving a disagreement over a unit lockdown, and he ultimately prevailed in arbitration. Related, he denied that other verbal and written discipline he has received over the years related to anger management difficulties, *per se*. I have similarly been presented with no evidence that the 9/29/16 incident was perceived as an anger management problem by administration *at the time*; Officer Nawara was not subjected to discipline, nor was he pulled from working or sent for a fitness for duty examination; it is reasonable to infer that had concerns about Officer Nawara's emotional state been significant at that time, one or both would have occurred. Yet Officer Nawara was returned to the very same assignment the next day, and worked two other units before ultimately being sent to a fourth assignment, where he would be interacting with both detainees and the general public, and required to carry a firearm. It is my understanding (and I have been presented no evidence to the contrary) that Officer Nawara worked all assignments following the 9/29/16 incident, without difficulty, for another approximate six weeks before being pulled from the job and mandated to a fitness for duty examination on 11/18/16.
>
> As a fitness examiner, this set of facts places me in a difficult position; **the County's own actions suggest Officer Nawara was <u>not</u> deemed a threat to the safety of coworkers, detainees, or the general public**. The only reasonable alternative explanation—if in fact the incident occurred as Supt. Jones-Hayes described (it is not my role to fact-find and settle this apparent *he-said/she-said*)—is that management failed to discipline or otherwise act appropriately at the time of the incident, and this was simply a missed opportunity for intervention. **Finally, I would be remiss if I did not express my concerns about the timing of this examination being requested on 11/18/16, not only so remotely in time from the incident itself on 9/29/16, but following a formal complaint being filed by Officer Nawara in the interim.**
>
> It is my opinion that there is presently no evidence that Officer Nawara's work conduct on 9/29/16—whatever that conduct may have been—arose directly from mental illness, cognitive impairment, or any medical condition or its treatment. It is similarly my opinion that he suffers from no mental illness, cognitive impairment, or medical condition that may impair his capacity to do his job at the present time. As

> such, it is my opinion that Officer Nawara does not pose a safety risk to himself or others (coworkers, detainees, or the public), and that he is fully capable of safely and effectively carrying out the essential functions of his job. I currently find Officer Nawara fit to return to duty, without restrictions.

(Exhibit 5, Dr. Goldstein Evaluation, filed under seal.)

6. Defendants also repeat their disputed factual argument on Plaintiff's *Monell* claim. Defendants try to argue that "Plaintiff's conclusory allegation that the individual Defendants had final policymaking authority is insufficient to state a plausible *Monell* claim." (Dkt. 132 at 16.) However, there is no question based on the allegations in Plaintiff's SAC that Defendants Jones-Hayes, Chief of Staff Burke, Reierson, and Shelby were involved in the retaliation against Plaintiff. It is also clear that Plaintiff will be able to prove in discovery (based on past cases including admissions by Defendants in the *Burruss* case) that superintendents, the Chief of Staff, and Reierson and Shelby were delegated with policy making authority. (Dkt. 89 ¶¶ 21-30.)

7. Similarly, the issue of the *Monell* claim under a pattern and practice theory will also be born out with evidence of the numerous other employees that were subject to retaliation for engaging in protected activity, filing a prior lawsuit, or based on their political affiliation or non-affiliation to Defendant Dart. The fact that the Sheriff's Office has already been found liable in other cases is just one piece of that evidence. Another piece of evidence is that Kurtovich was found guilty by a jury of retaliating against employees for their political affiliation, the Sheriff violated his own policy by not disciplining Kurtovich, and by promoting Kurtovich after the verdict. Certainly this evidence, and other pieces of evidence could show "a policy-making official knew of the pattern and allowed it to continue." Seventh Circuit Pattern Jury Instructions 7.24

8. Defendants also misstate the allegations and the law on individual liability under Section 1983. Under § 1983, individual liability may attach when "supervisors [] know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Morfin v.*

*City of East Chicago,* 349 F.3d 989, 1001 (7th Cir. 2003) (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992–93 (7th Cir. 1988). An individual can be held liable under § 1983 when "he caused or participated in an alleged constitutional deprivation." *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir. 1986), as such, individuals can be liable "if they: (1) participated directly in the alleged constitutional deprivations; (2) acted or failed to act with reckless disregard of Joyner's constitutional rights; or (3) directed the conduct that violated [the plaintiff]'s constitutional rights or knew of it and consented to it. *Joyner v. Snyder*, No. 06-3062, 2007 WL 3253390, at *3 (C.D. Ill. Nov. 2, 2007), *citing Rascon*, 803 F.2d at 274; *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir. 1982). Thus, individual liability under § 1983 is not limited to whether the defendant was "personally involved" as Defendants suggest here, and liability can arise for condoning, approving, or turning a blind eye to what others did. Based on the allegations in Plaintiff's SAC, Plaintiff is entitled to prove up his claims that Defendants retaliated against him, how, and why.

9. Defendants also try to argue disputed issues of fact contrary to the allegations in Plaintiff's SAC, arguing that "Plaintiff has alleged no factual basis for inferring that any of the individual Defendants even knew about Plaintiff's participation in *Burruss* or his previous affiliation with the SORT team, let alone that they harbored negative feelings against him based on either of those things." (Dkt. 132 at 22.) However, it is plausible (and, in fact, very plausible) that each individual Defendant knew that Plaintiff was a SORT officer, knew that Plaintiff had participated in the *Burruss* litigation, and engaged in retaliation against him as a result. Plaintiff's counsel has several other cases against the Sheriff's Office, where the evidence suggests that the plaintiffs were retaliated against several years later because of the fact that they were SORT officers, not politically aligned with Dart, and participated in a lawsuit against the Sheriff's Office and Dart. Thus, Plaintiff's Section 1983 claim cannot be dismissed.

10. Defendants' reply misses the mark on Plaintiff's Title VII retaliation claim. Plaintiff claims that he was subjected to retaliation because he complained about harassment based on his

gender by his supervisor, where she physically assaulted him by poking him the chest, and demeaning him in front of inmates and other employees. (*See* Dkt. 125, Page 56 of 56 PageID #:2022, EEOC Charge.) The allegations are enough to withstand a motion to dismiss. Defendants' cited case law can be distinguished from the facts here. *See Brown v. William Rainey Harper College*, 2017 U.S. Dist. LEXIS 121333, *14-16 (N.D. Ill. Aug. 1, 2017) (Pallmeyer, J.) (A Title VI case where the plaintiff alleged retaliation due to religion, which is not a protected class, under Title VI.); *Alford v. Kendall Cnty, Dep't of Health*, 2008 U.S. Dist. LEXIS 96547 (N.D. Ill. Nov. 24, 2008) (A ruling on a Motion for Summary Judgment based on the fact that defendant's reasons or terminating plaintiff were not pretextual; *Bloom v. Palos Heights Police Department*, 2012 WL 195031, at *1-2 (N.D. Ill. Jan. 23, 2012) (discussing in detail, the plaintiff's failure to put defendants on notice that plaintiff's claims were based on sex). Plaintiff Nawara's claims are easily distinguished because he specifically claimed that he was harassed and discriminated against based on his gender, both in his EEOC Charge (Dkt. 125, Page 56 of 56 PageID #:2022) and in his SAC. (Dkt. 89.) Further, Defendants bury in a footnote an argument that Plaintiff does not plead an adverse action; however, the adverse actions include: suspending Plaintiff without pay, denying him promotions, and ordering him for a fitness for duty because he complained. Defendants also bury in the same footnote their argument that Plaintiff "fails to plausibly allege facts from which one could infer that either of those Defendants [Shelby and Reierson] knew anything about Plaintiff's complaints against Jones-Hayes." (Dkt. 132 at 23 n. 25.) However, there is no question that Defendants Shelby and Reierson knew about the incident between Jones-Hayes and Nawara. As such, it is plausible that Shelby and Reierson had knowledge of the OPR complaints and Plaintiff's claim that it was Jones-Hayes that was harassing him.

11. As to Plaintiff's IWA claim, Defendants ignore the fact that Plaintiff has alleged that he was retaliated against for his protected activity in the *Burruss* lawsuit. The evidence will be born out in discovery through admissions by Defendants, other witnesses, comparative evidence, and

other circumstantial and direct evidence that provides evidence of motive and causation. Defendants also ignore Plaintiff's protected activity of filing an OPR complaint against Jones-Hayes for her harassment of him, and the retaliation that occurred after.

12. As to Plaintiff's claim for declaratory judgment, the ongoing harm, even if Plaintiff had to prove that, is the fact that Defendants suspended Plaintiff without pay from November 18, 2016 to September 27, 2017, (Dkt. 89 ¶ 93), and have refused to compensate him for this loss. Plaintiff continues to lose seniority, be affected in bids, have his pension damaged, lose promotions and other special assignments as a result of the fact that he was suspended without pay based on Defendants' unlawful conduct that was in direct violation of the plain language of the Merit Board statute, which provides that only the Cook County Sheriff's Merit Board may, for cause, remove, demote or further suspend an officer, and *only* "upon written charges filed with the Board by the Sheriff and a hearing before the Board" for more than 30 days. 55 ILCS 5/3-7012. Plaintiff is entitled to declaratory relief as a result of Defendants' direct violation of the Merit Board Act. Here, Plaintiff brings the declaratory judgment claim under Illinois law, and as such, Illinois (not federal) law applies. *See Taylor v. Dart* ("*Taylor II*"), 2017 IL App (1st) 143684-B, ¶ 55, *appeal denied*, No. 122392, 2017 WL 4386819 (Ill. Sept. 27, 2017) (interpreting the Merit Board Act and its provisions);. *see also, e.g., D'Acquisto v. Washington*, 640 F. Supp. 594, 628 (N.D. Ill. 1986) ("even a rightfully suspended employee would appear to have a claim for some damages [including back pay] for the period between his procedurally improper suspension and his hearing")

WHEREFORE, for the above stated reasons and the reasons stated in Plaintiff's response to Defendants' motion to dismiss, Defendants' second motion to dismiss Plaintiff's complaint should be denied, and Plaintiff granted such other relief that is just and equitable.

Respectfully Submitted,

JOHN NAWARA

***/s/Dana L. Kurtz***

Attorney for Plaintiff

*Electronically filed on November 9, 2018*

Dana L. Kurtz, Esq. (6256245)
Jacob D. Exline, Esq. (6326874)
KURTZ LAW OFFICES, LTD.
32 Blaine Street
Hinsdale, IL 60521
Phone: (630) 323-9444
Fax: (630) 604-9444
Email: dkurtz@kurtzlaw.us
Email: jexline@kurtzlaw.us

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies and states that the attached documents were served on the designated attorneys by electronic service via the Court's ECF System on this November 8, 2018.

| | |
|---|---|
| Suzanne Alexander | salexander@scharfbanks.com |
| Lynn Moffa | lmoffa@scharfbanks.com |
| Morgan Churma | mchurma@scharfbanks.com |
| George Sax | gsax@scharfbanks.com |
| Sarah Marmor | smarmor@scharfbanks.com |
| Stephanie Scharf | sscharf@scharfbanks.com |

| | |
|---|---|
| Nile Miller | nile.miller@cookcountyil.gov |
| Jay Rahman | jay.rahman@cookcountyil.gov |

***/s/Dana L. Kurtz***

Dana L. Kurtz