**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF COOK, a unit of local Government; THOMAS DART, in his individual and official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 17C 2393<br><br>The Honorable Rebecca R. Pallmeyer<br>Judge, Presiding |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION**
**TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff John Nawara, by and through his attorneys, for his Response to the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, states:

**STANDARD ON MOTION TO DISMISS**

On a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The purpose of a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Moreover, a complaint will survive a 12(b)(6) motion if it "narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *United States*

*Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623, 626 (7th Cir. 2003) (citations omitted). Plaintiff is not required to present evidence in his complaint. *Hunt v. Dart*, 07 C 6003, 2010 WL 300397, *4 (N.D. Ill. Jan. 22, 2010) ("Even after *Twombly* and *Iqbal*, a plaintiff doesn't have to come forward with evidence to survive a motion to dismiss."). "On a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The defendant's reliance on *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730 (7th Cir. 2002), for the proposition that "documents attached to a motion to dismiss are considered part of the pleadings" is misplaced. *188 LLC* was a contract case. In that case, the plaintiff attached a copy of the contract to its complaint. The defendant attached a missing page of the contract to its motion to dismiss. The 7th Circuit stated:

> This is a narrow exception to the general rule that when additional evidence is attached to a motion to dismiss, the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 … or exclude the documents attached to the motion to dismiss and continue under Rule 12. (citation omitted). While narrow, this exception is aimed at cases interpreting, for example, a contract. (citation omitted).

*188 LLC*, at 735 *citing Levenstein v. Salafsky*, 164 F. 3d 345, 347 (7th Cir. 1998). The case here is not based on a written contract, the documents attached to the defendants' motion to dismiss must be excluded.

## ARGUMENT

### I. PLAINTIFF STATES A CAUSE OF ACTION FOR VIOLATION OF THE ADA

The Americans with Disabilities Act ("ADA") prohibits employees from "require[ing] a medical examination and shall not make inquiries of an employee as to whether such employee is

an individual with a disability or as to the nature of the severity of the disability." 42 U.S.C. § 12112(d)(4)(A).

Here, without any explanation or reason, Defendants told Plaintiff that he was required to sign a blank HIPAA form in order to release his medical records to CCSO for review. (Dkt. 89 ¶45). The HIPPA form given to Plaintiff states that "any healthcare provider or facility who treats/treated me for my medical condition or medical illness ("Identified Health Care Providers") may disclose the above-described information to a Disability Management Case Manager for Cook County employed by CorVel Corporation." (Dkt. 104-1, Page 7).

Plaintiff did not have a "medical condition or medical illness" and Defendants did not narrow down or discuss the scope of the release for any "medical condition or medical illness." (Dkt. 89 ¶¶56-58). Further, Defendants did not discuss or relay any "above-described information," but instead told Plaintiff that all of his medical information, whether mental or physical, and across his whole life, would be subject to the release. (Dkt. 104-1, Page 7). Even more troubling was the fact that the HIPAA release also states that "the information disclosed pursuant to this authorization may no longer be protected by the federal health privacy rule (otherwise known as HIPAA) and may be subject to re-disclosure by the recipient." (Dkt. 104-1, Page 7).

Because Plaintiff did not sign this form he was suspended without pay. (Dkt. 89 ¶63). The CCSO's acts were in violation of the ADA's provision prohibiting medical inquiries without a valid business reason. *See Pennsylvania State Troopers Ass'n v. Miller*, 621 F. Supp. 2d 246, 253 (M.D. Pa. 2008) (finding that the defendants' failure to proffer a valid business reason for a fitness for duty exam violated the ADA); *see also Schlegel v. Berks Area Reading Transp. Auth.*, No. CIV.A. 01-6055, 2003 WL 21652173, at *4 (E.D. Pa. Jan. 9, 2003) (denying defendant's motion

for summary judgment and finding a genuine issue of fact as to whether defendants had a valid business reason for its medical inquiry).

Defendants' requirement that Plaintiff sign a release to allow his employer to collect, review, and disseminate his medical records is a direct violation of the ADA. *See Varley v. Highlands School District*, 2007 WL 3020449 (W.D. Pa., October 11, 2007) (The court cited EEOC's guidance that "in most circumstances, an employer cannot ask for an employee's complete medical records because they are likely to contain information unrelated to the disability at issue."); *see also* ¶720 THE AMERICANS WITH DISABILITIES ACT, 2006 WL 2053662 (discussing *EEOC v. Cummins Power Generation*, No. 0:14-cv-03408-SRN-SER, where the EEOC found that a blanket medical release as part of a fitness-for-duty examination was a violation of the ADA. Specifically, the EEOC found that there was a violation when the employer "required the employee to agree to the disclosure of all information concerning medical care, advice, treatment, or supplies provided to me, and all information related to or forming the basis of any medical, mental health and/or substance abuse evaluation, recommendations and/or determinations.").

There is no evidence, and in fact, the Second Amended Complaint alleges otherwise, that the medical inquiry was "consistent with a business necessity." (Dkt. 89 ¶¶56, 58). Even if the reason for the meeting and the blank HIPAA release was related to the incident with Defendant Jones-Hayes, it is suspicious that Defendants waited nearly two months to speak with Plaintiff Nawara, and still, at that point, had not determined that a fitness for duty examination was necessary. (*See* Dkt. 89 at ¶ 51.)

Plaintiff alleges that Defendants did not state that Plaintiff required to undergo a fitness for duty exam. (Dkt. 89 ¶59). Plaintiff alleges that Defendants had not decided whether a fitness for

duty exam was required, and that Defendants did not state any incident, reason, or scope as to why his medical information was needed. (*See* Dkt. 89 at ¶¶ 45-51.) All that was asked of Plaintiff and the only discussion that Defendants had with Plaintiff was that he had to sign the form and release his medical information. (*Id*.). The HIPAA release form does not "trump" the well-pled allegations in the Second Amended Complaint. It is against the law for Defendants to make a medical inquiry without first having a valid business reason. *See Pennsylvania State Troopers Ass'n v. Miller*, 621 F. Supp. 2d 246, 253 (M.D. Pa. 2008) (finding that the defendants' failure to proffer a valid business reason for a fitness for duty exam violated the ADA).

Defendants fail to cite to any cases from the Seventh Circuit or Illinois to support their argument that the medical release forms are not an improper medical inquiry, only citing to *Greene v. Joy Cone Co.*, 278 F. Supp. 2d 526, 540 (W.D. Pa. 2003), which found that the defendant's standard medical release form, included in their application materials given to the plaintiff to sign in the pre-offer stage of employment, did not violate the ADA because the form did not actually request any information as to the plaintiff's medical history. Opposite to *Greene*, Plaintiff Nawara was required, under the threat of discipline, to release all of his medical records to his employer without any restrictions, scope, reason, or connection to a business necessity. Further, Plaintiff Nawara had no assurances and, in fact, the release he was being forced to sign allowed the dissemination of his medical records, thus destroying any HIPAA protections he previously had.

Defendants do not cite any Seventh Circuit case law to support their argument that the request of medical records is allowed if done in connection with a permissible medical examination or inquiry, and, in fact, cite to two cases where the defendants' motion for summary judgment was denied as to the plaintiff's impermissible medical examination/inquiry claim. *See Medlin v. Rome Strip Steel Co.*, 294 F. Supp. 2d 279, 293-94 (N.D.N.Y 2003) (Denying the defendant's motion for

summary judgment because there were genuine issues of material fact as to whether the disclosure of the results of the plaintiff's Functional Capacity Evaluation violated the ADA); *see also Grassel v. Dep't of Educ. of N.Y.*, 2017 U.S. Dist. LEXIS 39683, at *24-25 (E.D.N.Y. Mar. 20, 2017) (same).

Defendants' argument that the Plaintiff did not have to leave the forms in blank, is not an argument based on the pleadings and is improper under Rule 12(b)(6). It is not Plaintiff's job to make sure that Defendants' forms do not violate the law. Plaintiff specifically told the Defendants that he was not signing the forms because they violated his civil rights. If anything, this supports Plaintiff's claims that Defendants were very aware of the illegality of their actions.

Defendants cannot, at the pleading stage, ask the Court to conclude that the Defendants' retroactively assigned purpose, for their request to sign the blank HIPAA forms, was valid. The Plaintiff has pled that at the time when Plaintiff was ordered to appear at Human Resources, there was absolutely no discussion of a fitness for duty examination and Defendants gave zero reason for demanding that Plaintiff sign away his HIPAA rights. Any discussion now of a fitness for duty examination is pretext. Viewed in the light most favorable to the Plaintiff, the facts alleged in the Second Amended Complaint show that Defendants had no valid business reason for making the medical inquiry. Defendants' Motion to Dismiss must be denied.

## II. PLAINTIFF HAS PROPERLY PLED A SECTION 1983 RETALIATION CLAIM

A defendant is liable under Section 1983 for discrimination or retaliation that deprives a party of fundamental rights secured by the United States Constitution. 42 U.S.C. § 1983. The First Amendment of the Constitution protects public employees from retaliation based on their political beliefs and affiliations. *See Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004) ("[P]ublic employees may not be made to suffer adverse job actions because of their political beliefs."). Also,

the First Amendment protects employees from retaliation for speech constituting a public concern. *See Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 777 (N.D. Ill. 2014) ("[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.").

In order to bring a First Amendment retaliation claim, a plaintiff must allege that: "(1) [his] speech was constitutionally protected; (2) [he has] suffered a deprivation likely to deter free speech; and (3) [his] speech was at least a motivating factor in [Defendants'] actions." *Spalding*, 24 F. Supp. 3d at 775. Further, a public employee's speech is protected if "(1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Id.*

Plaintiff alleges that Defendants have retaliated "against employees who opposed the Sheriff politically, engaged in protected conduct by complaining about political discrimination and retaliation, and denying employees the right to be free from political retaliation, was and became the custom and practice of the Sheriff's Office." (Dkt. 89, ¶ 120.) Plaintiff alleges that "Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by denying him promotions, denying him training, denying him special assignments, refusing to return him to work, and subjecting him to other adverse terms and conditions of his employment in violation of the First Amendment and treating him in an overall disparate manner." (*Id.* ¶ 122.)

### A. Plaintiff Has Sufficiently Pled that CCSO Had a Custom or Policy of Retaliating Against Former SORT Officers who Participated in *Burruss*

Defendants' argument that Plaintiff failed to allege that a deprivation of the Plaintiff's constitutional rights resulted from a custom or policy of that entity, is wrong. Plaintiff ***does*** sufficiently plead that the Cook County's Sheriff Office has a widespread and consistent practice

of retaliating against those officers, including Plaintiff, and the many other former SORT officers, who were a part of the *Burruss* case. (*See*, Dkt. 89 ¶¶100-107).

Plaintiff has also properly pled that each of the individual Defendants were final policy makers and were delegated with policy-making authority in regards to their actions enunciated in the Second Amended Complaint. (See, Dkt. 89 ¶¶20-31). Despite Defendants' attempts to downplay those facts and allegations specifically discussed in the Second Amended Complaint, the Court must take each of these well-pled facts as true and examine the facts in a light most favorable to Plaintiff. *See Jackson*, 176 F.3d 971, 977-78 (7th Cir. 1999).

Plaintiff alleges that "Defendant has a custom and practice of retaliating against employees that have filed lawsuits against the Sheriff's Office, or employees that have made complaints of discrimination, harassment, or retaliation." (Dkt. 89 ¶ 107.) Further, Plaintiff alleges that "retaliating against employees who opposed the Sheriff politically, engaged in protected conduct by complaining about political discrimination and retaliation, and denying employee the right to be free from political retaliation, was and became the custom and practice of the Sheriff's Office." (*Id.* ¶ 120.) Plaintiff is not obligated to specifically allege all facts to make out a *prima facie* case of political retaliation under Federal Rule of Civil Procedure 8. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*citing Twombly*, 550 U.S. at 555) ("[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests."); *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-513 (2002); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (holding no heightened pleading standard in Section 1983 civil rights cases).

Plaintiff has given Defendants fair notice "of what the claim is and the grounds upon which it rests." Not only did Plaintiff allege that Defendants consistently retaliated against those who

spoke out against Defendant Dart politically, but also alleged that Defendants consistently retaliated against employees who filed complaints of discrimination and retaliation, and against those officers that were formerly members of SORT and plaintiffs in the *Burruss* trial, insofar that it created a widespread custom and practice. More so, Plaintiff alleged that ever since he spoke out against the retaliatory practices of the Sheriff's Office and Defendant Dart and participated in the *Burruss* trial, specifically calling out the Sheriff's Office for acts of discrimination and retaliation, the Sheriff's Office retaliated against him by denying him training, promotions, special assignments, and, ultimately, suspending him without pay. (Dkt. 89 ¶¶ 63, 68, 93, 98, 106, 107, 122, 133.)

In short, after the *Burruss* case, Defendants continually found ways to retaliate against Nawara for his conduct there and against Defendant Dart. *See Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 n. 6 (7th Cir. 1996) (recognizing the principle that summary judgment is inappropriate when record would permit reasonable trier of fact to find that employer "waited in the weeds" for years looking for an opportunity to fire employee). Under the notice-pleading requirements of *Twombly*, the allegations simply have to put Defendants on notice of Plaintiff's claims, which Plaintiff's Second Amended Complaint does.

Defendants' argument that "the CCSO's treatment of [*Burruss* defendant Scott] Kurtovich after the *Burruss* verdict is not another act of political retaliation" (Dkt. 104 at 11) rings hollow. While this is not the only evidence that Plaintiff will rely upon throughout the stages of this litigation, it is clear evidence of Defendants' bias and retaliation against the plaintiffs in *Burruss* and, specifically, Plaintiff Nawara. The fact that Defendant CCSO initiated an OPR investigation against Plaintiff in regards to an unsubstantiated complaint (Dkt. 89 at ¶¶ 98-99), but failed to

discipline Kurtovich, who admitted to and was found to have violated CCSO policy and the United States Constitution in *Burruss* (I*d*. at ¶ 104), are well-pled facts supporting Plaintiff's claims.

In fact, Scott Kurtovich was promoted to Director of the Training Academy and put in charge of training employees on the Sheriff's various policies including the Sheriff's policy on political discrimination and retaliation. (*Id*. at 105) The treatment of Plaintiff Nawara, in light of the fact that Defendants condoned (and rewarded) the actions of Scott Kurtovich, supports the allegations in Plaintiff's Second Amended Complaint – that there is a custom and widespread practice of retaliating against Sheriff's employees who complain about discrimination and retaliation, and specifically, those who participated in the *Burruss* case.

Defendants misquote *Bless v. Cook County Sheriff's Office*, 2015 U.S. Dist. LEXIS 24607, *24 (N.D. Ill. Feb. 27, 2015), where the court found that the plaintiff could not maintain a *Monell* claim because the only discriminatory act the plaintiff cites is "his own termination." The plaintiff in *Bless* amended his complaint and in the defendant's second attempt to dismiss the plaintiff's *Monell* claim the court found that "Bless has stated a race-discrimination claim under *Monell* against the Sheriff's Office." *Bless v. Cook Cty. Sheriff's Office*, No. 13-CV-4271, 2016 WL 958554, at *8 (N.D. Ill. Mar. 8, 2016).

Further, Plaintiff also alleges that each individual Defendant had been delegated policy-making authority in regards to those actions alleged in the Second Amended Complaint (*see* Dkt. 89 ¶¶ 22, 25, 27, 30). *See Gaylor v. Cobbs*, 319 F.Supp.2d 865, 872 (N.D. Ill. 2004) ("[plaintiff] also claims that each of defendants had some policymaking authority and that the behavior of the defendants represented an improper departmental custom pursuant to *Monell*. . . . This is sufficient to successfully state a claim for relief."). It is already known from the *Burruss* case, and evidence will similarly be borne out through discovery, that the individually named Defendants are

policymakers within the Sheriff's office. Nonetheless, Plaintiff is not required to present such evidence on a motion to dismiss, and this Court must construe the well-pled facts as true. "On a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer*, 416 U.S. at 236).

### B. The Second Amended Complaint Clearly Puts Defendants on Notice of Specific Retaliation

Defendants argue that Plaintiff failed to "specify what the alleged retaliation consists of." *See* Dkt. 104 at 12. Plaintiff has, however, alleged a pattern of retaliation consisting of being forced to sign blank HIPAA release forms in violation of the ADA (Dkt. 89 at ¶ 55), being denied special assignments, transfers to more desirable units, training, and promotional opportunities (*Id*. at ¶ 69), not being allowed to return to work despite undergoing a fitness for duty examination (*Id*. at ¶ 82), being suspended without pay for over ten months (*Id*. at ¶ 93), being subject of an unfounded OPR investigation (*Id*. at ¶ 98), and by denying Plaintiff promotions, training, special assignments, and refusing to return him to work (*Id*. at ¶ 122). These properly pled allegations are not "vague and conclusory" but allege specific adverse actions sufficient to put Defendants on notice of the cause of action. *See supra* at 12; *see also M.W. v. Doe 1*, 2012 WL 3717790, *4 (N.D. Ill. Aug. 27, 2012) ("[E]ven if some of Plaintiff's allegations are conclusory in nature—as Defendants argue—Plaintiff's overall allegations put Defendants on notice of the type of claim he is bringing.").

The cases cited by Defendants do not support their conclusions that Plaintiff failed to allege what retaliation he was subjected to. *See, e.g., Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996) ("[T]here must be sufficient facts pleaded to allow the court and the defendants to understand the gravamen of the plaintiff's complaint.") The court in *Doherty* found that "Ms. Doherty nowhere has alleged that the decision maker knew of her non-affiliation with the

Democratic Party, or that anyone with the favored political affiliation received zoning certification under similar circumstances." *Id.*

Here, it is quite the opposite for Plaintiff Nawara. Defendants were very aware of Nawara's involvement in *Burruss* and Defendant CCSO has most certainly treated others, such as Scott Kurtovich and several others that Plaintiff will point to in discovery, much more favorably. (Dkt. 89 ¶¶ 129-131.) The rest of Defendants' case law discuss adverse actions under Title VII, *i.e.*, *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996); *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989). A First Amendment retaliation claim, however, requires that the plaintiff has "suffered a deprivation likely to deter free speech." *See Spalding*, 24 F. Supp. 3d at 775. Defendants suspended Plaintiff without pay, and have not compensated him for that time, which is clearly an adverse action under any case law, including Title VII. As stated above, Defendants' acts, as alleged, have deterred Plaintiff's right to free speech. As such, and in accordance with the analysis above, it is evident that Plaintiff has properly specified those instances of retaliation he had suffered at the hands of his employer and the Defendants' motion to dismiss must be denied.

### C. Plaintiff Has Sufficiently Put the Individual Defendants on Notice of their Involvement in the Retaliation Against Plaintiff

Defendants argue that Plaintiff failed to properly notify Defendants of the cause of action under Count II because he "engage[d] in group pleading." *See* Dkt. 104 at 13. The Second Amended Complaint pleads specific allegations, and those allegations specifically address the actions of each individual Defendant or all Defendants if they acted collectively or in concert. *See, e.g.*, Dkt. 89 ¶ 33 ("Defendant Jones-Hayes (female) responded and in a very insulting, provoking and demeaning manner, hit Plaintiff in his chest with her finger several times. She also spoke to Plaintiff in a condescending tone of voice."), (*Id.* ¶ 51). ("Defendant Burke stated that he requested

Shelby and Reierson meet with Officer Nawara"), (*Id.* ¶¶ 43-44) (Defendants requiring Plaintiff to appear at Human Resources and meet with Shelby and Reierson), (*Id.* ¶ 45) ("…Shelby and Reierson refused to provide [Nawara] with any information and told him he had to sign two (2) HIPAA release forms that were blank."), (*Id.* ¶ 135) (Defendant Jones-Hayes committed assault and battery against Plaintiff and "acknowledged she knew Plaintiff was offended.").

Under § 1983, individual liability may attach when "supervisors [] know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Morfin v. City of East Chicago,* 349 F.3d 989, 1001 (7th Cir. 2003) (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992–93 (7th Cir. 1988). An individual can be held liable under § 1983 when "he caused or participated in an alleged constitutional deprivation." *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986), as such, individuals can be liable "if they: (1) participated directly in the alleged constitutional deprivations; (2) acted or failed to act with reckless disregard of Joyner's constitutional rights; or (3) directed the conduct that violated [the plaintiff]'s constitutional rights or knew of it and consented to it. *Joyner v. Snyder*, No. 06-3062, 2007 WL 3253390, at *3 (C.D. Ill. Nov. 2, 2007), *citing Rascon*, 803 F.2d at 274; *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir. 1982). Thus, individual liability under § 1983 is not limited to whether the defendant was "personally involved", and liability can arise for condoning, approving, or turning a blind eye to what others did.

Despite the specifically pled acts, Plaintiff is not required, at this stage of the litigation, to establish personal involvement with ***each and every instance of retaliation***. *See Harris v. Illinois*, 753 F. Supp. 2d 734, 739 ("Although Harris may not be able to establish [the individual defendants'] personal involvement in each instance of retaliation or discrimination she complains

of, drawing all inferences in her favor at this stage, she has sufficiently alleged that [the individual defendants] were involved in some capacity in the actions at issue."). Defendants may be held liable for their failure to act, their inaction, or for condoning the retaliatory acts pled. *See Clinkscales v. Sheahan*, 1998 WL 292402, *2 (N.D. Ill. May 19, 1998) ("A supervisory official 'participates' in the deprivation if he 'acts or fails to act with deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation occurs at [his] direction or with [his] knowledge and consent;'" and "[s]upervisors act with 'deliberate, reckless indifference' if they 'know about [their subordinates'] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'"), citing *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) and *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988). Furthermore, Plaintiff may ascribe acts to Defendants collectively at this stage of proceedings. *See Gonzalez v. Babasa*, 02 C 6857, 2003 WL 21196245, * 2 (N.D. Ill. May 19, 2003).

Defendants' cited case law does not rebut these premises. For example, in *Miller v. DuPage County*, the plaintiff, an inmate at the DuPage County Jail, brought a claim for "deliberate indifference" under § 1983 which requires the defendant be "aware of a substantial risk of serious injury to [the plaintiff] but nevertheless failed to take appropriate steps to protect him from a known danger." No. 18 C 2072, 2018 WL 3753313, at *3 (N.D. Ill. Aug. 8, 2018). In *Miller*, the plaintiff failed to plead these specific elements and, thus, the court dismissed his claims. *Id.*; *see also Alvarez v. Baker*, No. 14 C 4208, 2016 WL 5341803, at *6 (N.D. Ill. Sept. 23, 2016) (Another deliberate indifference case where the plaintiff claimed "that fifteen people failed to provide medical care without providing any details about who did what when, and what they knew when they did it.").

Further, Defendants misinterpret *Bank of Am., N.A. v. Knight*, which stated that "[a] contention that 'the defendants looted the corporation'—without any details about who did what—is inadequate." 725 F.3d 815, 818 (7th Cir. 2013); *see also Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, No. 17 C 923, 2018 WL 1156246, at *2 (N.D. Ill. Mar. 5, 2018) ("Opus alleges that all the individual defendants improperly acquired trade secrets from Opus and absconded with it. It is unclear whether Opus is alleging that each defendant acquired the same information and absconded with it in the same fashion."). The Second Amended Complaint goes into far more detail than both *Bank of America* and *Opus*. Plaintiff Nawara has gone into detail about who was involved in what aspect of the retaliation and has properly pled the details of the ordeal. Any details or facts that have not been pled will be borne out of discovery, which is supported by the case law above.

### D. The Second Amended Complaint Properly Pleads that Plaintiff's Participation in *Burruss* was a Motivating Factor in Defendants' Acts of Retaliation

Defendants argue that Plaintiff failed to plead facts sufficient to show that Plaintiff's protected speech, his participation in the *Burruss* trial and political opposition to Defendant Dart, was a motivating factor in Defendants' retaliation. *See* Dkt. 104 at 14. Defendants support their contention by solely focusing on an alleged four-year gap between the jury verdict in *Burruss* (9/4/2012) and the retaliation against Plaintiff documented in the Second Amended Complaint (9/28/16). However, this reliance is misleading. Despite the jury rendering a verdict against the Cook County Sheriff's Office as well as the individual defendants in *Burruss*, the case carried on for two more years. (*Burruss*, 2008 C 6621, N.D. Ill.).The defendants continued to file post-trial motions, were found to be in contempt on the judge's orders (11/16/12), and consistently fought against and refused to follow the verdict originally rendered until March 20, 2014 when the parties settled the case and filed a stipulation of dismissal. (*Id.*), *see Veprinsky*, 87 F.3d 881, 891 n. 6 (7th

Cir. 1996) ( "If the plaintiff has evidence from which one may reasonably infer that her former employer waited in the weeds for five or ten years and then retaliated against her for filing an EEOC charge, we see no difficulty with allowing the case to go forward."); *see also Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011) ("Deciding when the inference is appropriate cannot be resolved by a legal rule; the answer depends on context. . . . A jury, not a judge, should decide whether the inference is appropriate.").

"Suspicious timing" is not the only evidence a party can rely on to show that the protected speech is a motivating factor in the retaliation. As it is stated by Judge Dow in *Wheeler v. Piazza*, 2018 U.S. Dist. LEXIS 23182 (N.D. Ill. Feb. 13, 2018), cited by Defendants, "Plaintiff can rely on . . . suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." There are numerous examples of Defendants retaliating against the other *Burruss* plaintiffs, former members of SORT, and those that supported Sheriff Dart's political opponents. This circumstantial evidence is documented in *Michno v. Cook County Sheriff's Office, et al.,* Case No. 13-CV-7163 (N.D. Ill.); *Hernandez v. Cook County Sheriff's Office, et al.*, Case No. 13-CV-7949 (N.D. Ill.); *Maxwell v. Cty. of Cook*, No. 10 CV 00320, 2011 WL 4639530 (N.D. Ill. Mar. 17, 2011), *Zimny v. Dart*, No. 12 C 5963, 2014 WL 7176623, at *1 (N.D. Ill. Dec. 15, 2014); *Taylor v. Cook Cty. Sheriff's Office*, No. 13-CV-01856, 2015 WL 1428920 (N.D. Ill. Mar. 26, 2015); *Wuerffel v. Cook Cty. Sheriff's Office*, No. 14 C 3990, 2016 WL 1660497 (N.D. Ill. Apr. 27, 2016). These cases are evidence that the Sheriff's Office has continued to harass the SORT officers and retaliate against the *Burruss* plaintiffs since the trial ended in 2014.

Further, there are various "ambiguous written statements," such as the blank medical release form which could be construed, in a light most favorable to Plaintiff, as an attempt to

retaliate and harass Plaintiff and violate his right to privacy. Also, there are many ambiguous statements from Defendants that could be construed as circumstantial evidence of retaliation. *See* Exhibit 4 to Dkt. 78-1, Declaration of Rebecca Reierson (stating that she had not thought a fitness to duty examination was warranted or necessary prior to meeting with Plaintiff); *See also* Dkt. 89 ¶ 51.

All of the cases Defendants rely on, state that "for a suspicious-timing argument ***alone*** to give rise to an inference of causation, the plaintiff must demonstrate that an adverse employment action follows close on the heels of protected expression." Dkt. 104 at 15-16 (citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (emphasis added.); *see also Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (The plaintiff's ***only*** inference was suspicious timing.); *see also Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (same); *see also Weiler v. Vill. of Oak Lawn*, No. 14 C 4991, 2016 WL 397293, at *4 (N.D. Ill. Feb. 2, 2016) (same); *see also Diadenko v. Folino*, 890 F. Supp. 2d 975, 989-90 (N.D. Ill. 2012) (same); *Ghiles v. City of Chicago Heights*, No. 12 CV 07634, 2016 WL 561897, at *2 (N.D. Ill. Feb. 12, 2016) (same); *Schlessinger v. Chicago Hous. Auth.*, No. 12 C 3733, 2012 WL 5520848, at *8 (N.D. Ill. Nov. 13, 2012) (same); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (same); *see also Brownlee v. Catholic Charities of the Archdiocese of Chicago*, No. 16-CV-00665, 2017 WL 770997, at *1 (N.D. Ill. Feb. 28, 2017) (A Title VII claim discussing whether moving an employee's desk constituted an actionable adverse action)). These case are inapplicable to the facts of this case where far more than just suspicious timing creates the mosaic of evidence of Defendants' retaliation.

Defendants further argue that "[t]here are no facts alleged to show the individual Defendants engaged in a pattern of retaliation stretching back in time to when Nawara participated

in *Burruss*," and that none "of the actors or decision-makers involved in the implementation of any potential adverse action against [Nawara] even knew he was a plaintiff in *Burruss*." (Dkt. 104 at 16.) However, it is evident from the actions against *Maxwell, Zimny, Hernandez, Michno, Wuerffel*, as well as almost all of the SORT officers that suffered retaliation during the trial, and after the *Burruss* verdict, and many others (*see supra* at 16), that Defendants continually retaliated against those other employees that supported the Sheriff's political opponents and engaged in protected activity such as participating in a civil rights lawsuit, and that Defendants "waited in the weeds" for the perfect time to enact their retaliation against Plaintiff Nawara. *Veprinsky*, 87 F.3d at 891. Further, the specific information that each Defendant knew will be revealed through discovery and their depositions.

Here, Plaintiff has properly pled that he, as well as 21 other CCSO employees, participated in the very public, and much talked about, *Burruss* trial where the defendants were found guilty and required to pay a multi-million dollar jury verdict. (Dkt. 98 ¶¶ 120-132.) Defendants then retaliated against those plaintiffs, including Nawara, because of their participation in the case and for bringing to light violations of their civil rights against the Sheriff's Office. Viewing the Second Amended Complaint in a light most favorable to Plaintiff, Plaintiff is entitled to an inference that the individual Defendants had knowledge of Nawara's protected conduct, were aware that he did not politically support Defendant Dart, and/or that they retaliated against him because he complained and participated in *Burruss*. "On a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer*, 416 U.S. at 236).

Plaintiff has properly pled a claim for retaliation under Section 1983 for violations of the First Amendment of the United States Constitution, and Defendants' Motion to Dismiss must be denied.

## III. PLAINTIFF HAS PROPERLY PLED MATERIALLY ADVERSE EMPLOYMENT ACTIONS UNDER TITLE VII

In order to bring a viable claim for retaliation under Title VII, a plaintiff must plead that his employer, discriminated against him because he "opposed…an unlawful employment practice" or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C.A. § 2000e-3(a). Retaliation under section 2000e–3(a) of Title VII is "broader" than section 2000e–2(a) (discrimination) " in the sense that retaliation may take so many forms, while § 2000e–2(a) is limited to discrimination with respect to [the worker's] compensation, terms, conditions, or privileges of employment." *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 660 (7th Cir. 2005).

The terms "materially adverse" in anti-retaliation statutes are far broader than what constitutes an "adverse action" under employment discrimination statutes, and are not limited just to discipline. The United States Supreme Court in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) held that "materially adverse [] means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (upholding the jury's verdict finding that Burlington's actions in reassigning the plaintiff from forklift duty to standard track laborer tasks and the 37-day suspension without pay amounted to retaliation); *see also Washington v. Illinois Dep't of Revenue, supra*; *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 746 (7th Cir. 2002) (the 7th circuit states that it does "not necessarily endorse the view that such an action is always required to make retaliation actionable under Title VII"); *see also, e.g.*, *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996) (reaching the conclusion that

an "adverse employment action" in the retaliation context does not require an actual employment action).

Here, Plaintiff pled materially adverse actions sufficient to put Defendants' on notice. On October 13, 2016, Plaintiff filed a formal complaint regarding Defendant Jones-Hayes' assault and battery to his supervisor and to OPR. (Dkt. 89 at ¶ 42.) Plaintiff was subsequently subjected to an OPR investigation (Dkt. 89 at ¶ 98), ordered to Human Resources (*Id*. at 43), and placed on administrative leave ***without*** pay (*id.* at 63, 66-67). This was all done in retaliation for Plaintiff's complaints against Defendant Jones-Hayes. (*Id*. at 135.) As such, it is clear that Plaintiff has properly pled a materially adverse employment action.

It is also evident that Plaintiff engaged in a protected activity for which he was retaliated against. Plaintiff pled that he complained to OPR about the harassment and the inappropriate and aggressive touching he was subjected to by Defendant Jones-Hayes. (Dkt. 89 ¶ 42.) Retaliation under Title VII requires that Nawara "engaged in statutorily protected activity and suffered an adverse action as a result of that activity." *Salentine v. Supple Rest. Grp.*, No. 18-C-950, 2018 WL 3553379, *2 (E.D. Wis. July 24, 2018); *see also Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017) (complaining about workplace harassment is protected activity under Title VII); *see also Worth v. Tyer*, 276 F.3d 249, 265 (7th Cir. 2001) (concluding that plaintiff's decision to file a police report "constitutes protected activity under Title VII").

Plaintiff, a male employee, was harassed by Defendant Jones-Hayes, a female supervisor, and assaulted, inappropriately touched, demeaned, and embarrassed in violation of Title VII. Due to his supervisor's inappropriate contact with him, Plaintiff Nawara filed a "Discrimination/Harassment/Sexual harassment Complaint Form" with OPR documenting the inappropriate contact by his female supervisor. (Ex. 7 to Dkt. 100-1.) Plaintiff also filed a charge

with the EEOC stating that "[t]he Respondent also retaliated against me in violation of Title VII for engaging in protected activity after I complained about harassment (assault and battery) by my supervisor (female)." *See* EEOC Charge. By these facts, construed in a light most favorable to Plaintiff, it is apparent that Plaintiff has properly pled a claim for retaliation under Title VII. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) ("In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense.").

## IV. PLAINTIFF'S CLAIM UNDER THE ILLINOIS WHISTLEBLOWER ACT (COUNT IV) IS PROPERLY PLED BECAUSE PLAINTIFF HAD A "REASONABLE BELIEF" THAT DEFENDANTS VIOLATED THE LAW

The Illinois Whistleblower Act (740 ILCS 174/15) ("IWA") prohibits employers from "retaliat[ing] against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(a). The IWA also prohibits an employer from, "retaliate[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). The IWA is "intended to afford relief to employees retaliated against by their employers for reporting criminal activity to government or law-enforcement agencies. There are no other requirements or exceptions written in the Act." *Brame v. City of N. Chicago*, 2011 IL App (2d) 100760, ¶ 8.

In the Second Amended Complaint, Plaintiff states that he "participated in court proceedings (*Burruss, et al. v. Cook County Sheriff's Office, et al.*, Case No. 08-cv-06621 (N.D. Ill.)) and disclosed information that he reasonably believed was a violation of state or federal law,

rule or regulation" (Dkt. 89 at ¶ 140), and that he "also complained that forcing him to sign a HIPAA release was unlawful" (*Id.* at ¶ 141). *See Milsap v. City of Chicago*, No. 16-CV-4202, 2018 WL 488270, at *9 (N.D. Ill. Jan. 19, 2018) ("In sum, Plaintiff has alleged that he reported what he perceived to be illegal conduct to the OIG, and that is enough to state a claim under section 15(b) of the IWA.").

Defendants argue that Plaintiff "fails to allege a plausible factual basis for inferring that any alleged relation in violation of the Whistleblower Act occurred because of his participation in the *Burruss* litigation." (Dkt. 104 at 23.) However, as discussed above, Plaintiff has pled numerous facts that, in a light most favorable to Plaintiff, would lead a reasonable jury to believe that Defendants retaliated against Plaintiff for his participation in the *Burruss* trial. Plaintiff alleged that ever since he spoke out against the retaliatory practices of the Sheriff's Office and Defendant Dart and participated in the *Burruss* trial, specifically calling out the Sheriff's Office for acts of discrimination and retaliation, the Sheriff's Office retaliated against him by denying him training, promotions, special assignments, and, ultimately, suspending him without pay. (Dkt. 89 ¶¶ 63, 68, 93, 98, 106, 107, 122, 133; *see also* Section II, *supra*.)

Defendants argue that Plaintiff cannot rely on his complaint that forcing him to sign the blank HIPAA release was unlawful because it is not "an adverse employment action." (Dkt. 104 at 23.) While Defendant's argument is wrong (*see* Section II *supra*), even if it were true, the IWA does not require that a plaintiff disclose an "adverse employment action." *See Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, 374 Ill.App.3d 630, 634 (2007) (finding that the IWA provides for recovery if an employer takes "*any action* against an employee" for making a good faith report of suspected illegal activity).

For liability under the IWA, it is required that Plaintiff disclose what he reasonably believes is a violation of State or Federal law, ***not that*** he disclose an adverse employment action. Further evidence of this is Section 30 of the IWA, which states that "[i]f an employer takes ***any action against an employee*** in violation of Section 15 or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole." 740 ILCS 174/30 (emphasis added). Again, this section states that an employer is liable for "any action" in violation of Sections 15 or 20 and not only an adverse employment action. *See Taylor v. Bd. of Educ. of City of Chicago*, 2014 IL App (1st) 123744, ¶ 52. Plaintiff has sufficiently pled that he disclosed what he reasonably believed to be a violation of the ADA and also that he participated in *Burruss* where he disclosed discrimination and retaliation against himself and the other SORT officers.

Defendants argue that the Second Amended Complaint fails to show that the "retaliatory acts of being placed on unpaid suspension and [being] forced to use vacation and personal days were because of Nawara's complaints." (Dkt. 104 at 24.) However, the Second Amended Complaint does make that exact allegation, specifically stating in paragraphs 141 and 142 that "Plaintiff also complained that forcing him to sign a HIPAA release was unlawful. After Plaintiff complained, Defendants then placed Plaintiff on an unpaid leave in retaliation." Plaintiff's Second Amended Complaint could not be clearer.

Defendants try to argue that the "CCSO had the right to require that Nawara execute the forms" and that "it was appropriate for the CCSO to place Nawara on unpaid leave status" (Dkt. 104 at 24). This argument does not address the pleadings and it does not rebut the fact that, under the IWA Plaintiff need only plead that he disclosed what he ***reasonably believed*** was a violation of State or Federal law. Plaintiff believed, and the case law supports, that he had every right to refuse to sign the blank HIPAA form to release his medical records to his employer. *See Varley v.*

*Highlands School District*, 2007 WL 3020449 (W.D. Pa., October 11, 2007) discussed in Section I, above. Plaintiff has properly pled conduct that he believed was a violation of State or Federal law.

Defendants' cited case law does not support their position. In *Hrobowski v. Henderson*, the plaintiff refused to sign a medical release after being told it was required for her fitness for duty exam. No. 97 C 5608, 2000 WL 682673, at *1 (N.D. Ill. May 24, 2000). The defendants told the plaintiff that the fitness for duty exam was necessary because of the plaintiff's "inability or unwillingness to follow instructions, repeated claims of illness due to stress, calls for ambulance assistance allegedly due to personal illness, repeated visits to the hospital emergency room during work hours allegedly due to personal illness, inappropriate and unacceptable conduct, and threatening remarks." *Id*. Quite the opposite here, Plaintiff Nawara was never told why he was required to sign a medical release, and, in fact, Defendants had not even determined that a fitness for duty was necessary or required. (Dkt. 89 ¶ 51.)

Defendants misapprehend the holding in *Vickers v. Powell*, 493 F.3d 186 (D.C. Cir. 2007). In *Vickers*, the plaintiff refused to sign a medical release form which stated that "[Recipients of the Release] are hereby authorized to furnish information from the record of the individual named below [Plaintiff] which is in the record of your facility, and release it to: [BLANK BOX]." *Id.* at 193. The court of appeals found that the plaintiff was "justified in her refusal to sign such an open-ended grant of permission to release confidential medical information." *Id.* This is nearly identical to the release form that Defendants here demanded that Plaintiff Nawara sign, which stated that "the information disclosed pursuant to this authorization may longer be protected by [HIPAA] and may be subject to re-disclosure by the recipient."

As such, in light of the case law and evidence cited above, Plaintiff has properly pled a claim under the Illinois Whistleblower Act and Defendants' Motion to Dismiss must be denied.

## V. RELIEF IS AVAILABLE UNDER COUNT V AS THERE IS AN ONGOING CASE OR CONTROVERSY DUE TO CONTINUED LOSS OF WAGES AND BENEFITS

Count V of Plaintiff's Second Amended Complaint alleges violations of the Cook County Sheriff's Office Merit Board Act, 55 ILCS 5/3-7001, *et seq*., (2000), and asks for a declaratory judgment that the actions of Defendants be found illegal and that Plaintiff be made whole and his time, wages and benefits be reinstated. *See* Dkt. 89 ¶¶ 147-152.

Plaintiff brings the declaratory judgment claim under Illinois law, and as such, Illinois (not federal) law applies. *See Taylor v. Dart* ("*Taylor II*"), 2017 IL App (1st) 143684-B, ¶ 55, *appeal denied*, No. 122392, 2017 WL 4386819 (Ill. Sept. 27, 2017) (interpreting the Merit Board Act and its provisions); *see also, e.g., D'Acquisto v. Washington*, 640 F. Supp. 594, 628 (N.D. Ill. 1986) ("even a rightfully suspended employee would appear to have a claim for some damages [including back pay] for the period between his procedurally improper suspension and his hearing").

Defendants argue that the issue is moot because Plaintiff is now back at work. This analysis fails to address the actually controversy – the fact that Defendants suspended Plaintiff for a total of 313 days, and have not reimbursed Plaintiff for his lost time or benefits, thus failing to make him whole. *See Holder v. Illinois Dep't of Corr.*, 751 F.3d 486, 498 (7th Cir. 2014) (finding that a case or controversy existed up until the time the plaintiff is made whole, stating that only "once a defendant offers to satisfy the plaintiff's ***entire*** demand, there is no dispute over which to litigate and thus no controversy to resolve")(emphasis added).

Plaintiff's cause of action, in Count V, is valid. Defendants did not allow Plaintiff to return to work. They demanded that he sign away his HIPAA rights and if he did not, he could not return to his employment. Defendants kept Plaintiff on this forced suspension despite the fact that he

obtained a neutral fitness for duty exam. (Dkt. 89 ¶ 77.) Defendants refused to use this examination and required it be done through a different doctor. (Dkt. 89 ¶¶77-80, 91-92). Defendants also continued to require that Plaintiff sign away his medical records. (*Id.* ¶ 80.) Finally, after Plaintiff's counsel was allowed to amend the medical release to only allow the records to be seen by the physician, Plaintiff was sent to and participated in the "fitness for duty" examination without waiving any of his claims herein. (*Id.* ¶ 91.) Defendants themselves created these requirements, demanded that Plaintiff sign the HIPAA release, and suspend Plaintiff from work until he followed their directives, despite their illegal nature. This suspension, beyond the 30 days permitted by statute, violated the Merit Board Act.

The Merit Board Act is clear in its requirements. The Act allows the Sheriff to enforce "disciplinary measures [that] may include suspension of any . . . county corrections officer . . . for any reasonable period, not exceeding 30 days, without complying with the provisions of Section 3-7012. 55 ILCS 5/3-7011 (1990). The Act continues to state that "no employee in the County Department of Corrections shall be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff." 55 ILCS 5/3-7012. Thus, Plaintiff's suspension of 313 days is in direct violation of the Merit Board Act and its requirement that any "removal, demotion, or suspension" of over 30 days be brought before the Merit Board for review.

Defendants argue that "Nawara was not subjected to discipline as required for the Merit Board Act to apply." (Dkt. 100-1 at 27.) This argument falls flat because through a direct examination of the facts and the admissions by Defendants, it is apparent that Nawara was suspended from work as punishment and as discipline for refusing to sign the blank medical release forms.

Defendants' argument that because Plaintiff was not suspended through OPR, or because they later threatened termination, creates a serious flaw in logic. Just because OPR was not involved in Plaintiff's suspension does not mean the Sheriff's Office is allowed to forego its legal obligation of filing a complaint with the Merit Board for any "removal, demotion, or suspension of over 30 days."

Defendants also brush over the real reason for Plaintiff's suspension – *i.e.*, retaliation, because he refused to sign the HIPAA medical release forms, and because he engaged in protected conduct. At that time, Plaintiff had not been informed of the need for a fitness for duty exam nor had he been told that anyone was questioning his fitness to work. After he refused to sign the blank forms, Defendants sent him home and told him not to return. It was only after Plaintiff's counsel sent an email to Defendants, that Defendants told the Plaintiff that he was required to undergo a fitness for duty before he could return to work. The fitness for duty exam is merely pretextual and Plaintiff' suspension is a violation of the Merit Board Act.

The fact is that Defendants suspended Plaintiff without pay from November 18, 2016 to September 27, 2017, (Dkt. 89 ¶ 93). They refused and to continue to refuse to compensate him for this loss. Plaintiff continues to lose seniority, be affected in bids, have his pension damaged, lose promotions and other special assignments, as a result of the fact that he was suspended without pay based on Defendants' unlawful conduct; conduct that was in direct violation of the plain language of the Merit Board statute, which provides that only the Cook County Sheriff's Merit Board may suspend an officer for more than 30 days, and *only* upon written charges filed with the Board by the Sheriff and a hearing before the Board. 55 ILCS 5/3-7012. Plaintiff is entitled to declaratory relief as a result of Defendants' direct violation of the Merit Board Act.

Because Defendants have failed to cite any law discussing the Merit Board Act and because Plaintiff has stated a valid declaratory judgment claim for a violation of the Act, Defendants' Motion to Dismiss Count V must be denied.

## CONCLUSION

**WHEREFORE**, for the above stated reasons, Plaintiff respectfully requests the Court deny Defendants' motion to dismiss, and grant Plaintiff such other relief that is just and equitable.

**JOHN NAWARA**

*s/ Peter V. Bustamante*

One of the Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies and states that the attached documents were served on the designated attorneys by electronic service via the Court's ECF System on this December 10, 2018.

| | |
|---|---|
| Suzanne Alexander | salexander@scharfbanks.com |
| Lynn Moffa | lmoffa@scharfbanks.com |
| Morgan Churma | mchurma@scharfbanks.com |
| George Sax | gsax@scharfbanks.com |
| Sarah Marmor | smarmor@scharfbanks.com |
| Stephanie Scharf | sscharf@scharfbanks.com |
| Nile Miller | nile.miller@cookcountyil.gov |
| Jay Rahman | jay.rahman@cookcountyil.gov |

*s/ Peter V. Bustamante*

Peter V. Bustamante
Richard F. Linden
Attorneys for John Nawara
17 North State Street
Suite 1550
Chicago, Illinois 60602
(312) 346-2072
pvbust@bustamantelaw.com
lindenlaw@gmail.com