UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| JOHN NAWARA, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 17-cv-2393 |
| COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities, | ) Hon. Rebecca R. Pallmeyer |
|     Defendants. | ) |

## **DEFENDANTS' MOTION FOR SANCTIONS**

Pursuant to 28 U.S.C. § 1927 and this Court's inherent authority as explained in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) and more recently in *Fuery v. City of Chicago*, 900 F.3d 450 (7th Cir. 2018), Defendants Thomas Dart, Karen Jones-Hayes, Matthew Burke, Rebecca Reierson, and Winifred Shelby ("Defendants") hereby move for sanctions against Dana Kurtz, the Kurtz Law Firm Ltd. (collectively "Kurtz"), and Plaintiff John Nawara ("Plaintiff") as a result of gross misconduct concerning the dual representation of Plaintiff and Karyn Williams, the former Executive Director of the Cook County Sheriff's Office ("CCSO").

*Introduction and Background Facts*

It was exactly a year ago – December 2017 – that Karyn Williams engaged Dana Kurtz and her firm as her attorneys (8/27/18 Kurtz Declaration, ¶7, Dkt. 108-9), a wholly improper arrangement that set the stage for this Motion for Sanctions. For months thereafter, Kurtz had secret access to information held by an executive level employee of the Cook County Sheriff's Office, *at the same time* that Kurtz was representing John Nawara ("Plaintiff") – whose case complained about the *potential* for improper access to his own confidential health information, and named as defendants the Sheriff and two of Karyn Williams's own subordinates in the HR

department at the CCSO. (*See* Amended Cplt. Dkt. 89). At no time in those months did Kurtz disclose the Williams relationship to the Defendants or to the Court, as the law and ethical rules set forth in the Motion to Disqualify (Dkt. 88) plainly required.

When the CCSO finally learned of the engagement in April 2018, Defendants acted soberly and deliberately, notifying Kurtz on May 25, 2018 of the legal and ethical problems they saw, and inviting her to provide an explanation that might avoid having to file a disqualification motion. (5/25/18 Marmor Ltr., Ex. 1). Rather than responding in kind, Kurtz embarked on a strategy of utter denial – arguing vociferously that Williams had no confidential information and had shared no such information with her lawyers. (6/1/18 Kurtz Ltr., Ex. 2). Despite plain evidence to the contrary, Kurtz persisted in this absurd argument in response to the Motion for Disqualification, filing sworn declarations from Kurtz herself as well as Williams that simply were not credible. (Plf. Rsp. Br. Dkt. 108-1 and 108-5, 108-9). After Defendants were able to show even more evidence that Williams *was* directly involved both with the Nawara matter specifically, and with Fitness for Duty ("FFD") policy in general (Defs. Reply Br. Exs. 1-3, Dkts. 119-1, 119-2, and 119-3) Kurtz and Williams changed their tune.

The sworn Declarations proffered by Kurtz and Williams with the Response brief can fairly be described as false. Those Declarations and the arguments advanced by Kurtz simply ignored the evidence that had been provided with the opening Motion, and falsely declared over and over again that there was no such evidence. (Resp. at 1, 5, 8, 9, 11, 13, 17, Dkt. 108-1; Reply at 4-14). Likewise, Kurtz's claim that she and her firm had received nothing from Williams was flatly belied by her own admissions about returning a copy set of over a hundred pages of documents that Williams wrongly had taken, but retaining handwritten notes under a suspect claim of privilege. (*Id.*) In short, there was no credible or reasonable basis for Kurtz to make the factual assertions contained in the Response. Likewise, the effort in the Response to misdirect the Court with the

2

wrong legal standards – and the decision to ignore the "appearance of impropriety" standard – demonstrates that Kurtz had no colorable basis on which to resist the Motion. (*See* Reply at 14-16; 18-21).

The falsehoods and lack of colorable arguments in the Response all were driven home by the entirely unnecessary Sur-reply and Williams's sworn Declaration, which Kurtz filed on November 13, 2018. Williams, all of a sudden, somehow remembered specific conversations with and about in-house legal counsel at the CCSO from as far back as April of 2017 – giving the lie to her previous sworn protestations that she knew and remembered nothing. (Sur-Reply at 7-10, Dkt. 140; Williams Dec., Dkt. 140-2 (both now under seal, see Dkt. 150 and 153)). The very act of providing the content of these conversations to Kurtz was a blatant violation of Williams's Confidentiality Agreement and an intentional usurpation of the attorney-client communications privilege. Even worse, Kurtz chose to file the offending Sur-Reply and Declaration publicly – without warning, without leave of Court, and without a thought for the rights of the Sheriff or for the proper administration of justice.

Moreover, these documents never had to be filed at all. Kurtz had decided to withdraw from the case and indeed found new counsel for Plaintiff days before the Sur-Reply and Declaration were filed. (Sur-Reply at 1 and 16, Dkt. 140; Motion to Withdraw, Dkt. 141). On November 5, 2018 – *three days* before the Sur-Reply originally was due – Kurtz served a Notice of Attorneys' Lien on counsel in this case, laying claim to all costs expended by her firm in this matter in the event of a judgment or settlement in this case, and demonstrating that she knew she and her firm would not remain in the case at least by this date. (11/5/18 Notice of Lien, Ex. 3). On November 9, 2018, Kurtz sought an extension of time to file the Sur-Reply – until Monday, November 12, 2018 – on the grounds that "Plaintiff's counsel was unexpectedly pulled off working

3

on this matter to handle" other matters. (Supplement to Motion for Extension of Time, Dkt. 138 at ¶3). This, too, appears to be a falsehood.

The Sur-Reply, which was not filed until November 13th, without prior leave of Court, tells a different – and significant – story: that the filing was delayed in order to obtain new declarations that were attached to that filing. (Sur-Reply Dkt. 140 at ¶1, under seal). The Sur-Reply also relayed that Plaintiff had reluctantly retained new counsel and contended that the Motion to Disqualify was moot. (*Id.*) As the Court is well aware, the Sur-Reply attacked the Defendants' motives for filing the Motion to Disqualify and attached and referenced the new Williams Declaration. All of this conduct, as Defendants' counsel argued at the November 14, 2018 hearing, demonstrated that there was no substantial purpose other than embarrassment, delay, or burden to Defendants on the part both of Kurtz, in violation of Rule of Professional Conduct 4.4(a). (11/14/18 Hrg. Tr. at 7-10, Ex. 4). Williams also plainly was motivated by malice in submitting her Declaration. (*Id.* at 7). In short, the only purpose of the filing was to harm the Defendants.

As the Court observed on November 14, 2018, it was "undisputable for quite some time" that Kurtz had to withdraw from this case. (11/14/18 Hrg. Tr. At 13, Ex. 4). As detailed below, the obvious and usual sanction in such a situation is payment of the costs of pursuing the motion itself. Those amount to $62,248.00 and are comprised of 309 hours of attorney time, 59.5 of paralegal time, and 19 hours of law clerk time (redacted invoices attached as Ex. 5, filed under seal). Both the hourly rates ($185 for lawyers; $65 for paralegals) and the amount of time expended on the Motion are plainly reasonable and indeed are well below either market rates or the usual rates charged by Scharf Banks Marmor, LLC, counsel for Defendants. In addition, Kurtz and the Kurtz firm should be barred from obtaining any costs or fees per the Lien the firm filed in light of their reprehensible behavior in this case.

4

It also has become painfully obvious that Karyn Williams has no regard for the truth or her contractual obligations to the CCSO. The only way to protect against further lies and improper disclosures by Ms. Williams in this case is to preclude Plaintiff from conferring with her or calling her as a witness in this case. Such a sanction is particularly warranted here because Plaintiff and his counsel took so long to concede what was obvious at the outset, that the dual representation at the same firm prejudiced the Defendants. Indeed, the Sur-Reply makes clear that Plaintiff resisted a change of counsel up until days before that final and unwarranted brief was filed, making Williams's and her counsel's misconduct possible.

All of Kurtz's misconduct in this case occurred on the heels of a long list of transgressions in other cases before the Northern District of Illinois. (See Mot. For Disqualification, Dkt. 88 at 16, and Reply, Dkt. 119 at 21-24). Time and again, the courts have sanctioned Kurtz, and time and again she has failed to learn any lesson from those sanctions. It was and remains extraordinary that the most recent Seventh Circuit judgment about Kurtz's conduct came down *while* the Motion to Disqualify was pending. In that decision, Judge Rovner noted the wisdom of the warning provided in *Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 909-10 (7th Cir. 2015) that "Kurtz's unwillingness to conform her conduct to requirements laid down by judicial orders or rules of procedure is unlikely to change unless courts respond firmly." *Fuery v. City of Chicago*, 2018 U.S. App. LEXIS 22531 (7th Cir. 2018). This Court already has responded in part, granting the Motion to Disqualify and permitting this Motion for Sanctions. (11/14/18 Order, Dkt. 145; see also 11/14/18 Hrg. Tr. at 15, Ex. 4). Defendants ask that this Motion be granted to achieve the ends that the Seventh Circuit now twice has urged on trial courts faced with Kurtz's misconduct.[1]

---

[1] Although Defendants refrain from asking for it as an additional sanction, they note that other courts when faced with analogous misconduct have considered referring and in fact have referred such cases to state bar disciplinary authorities – and the Court has the authority *sua sponte* to do so. *See, e.g.*, *Deese v. Springfield Thoracic & Cardiovascular Surgeons, S.C.*, 183 F.R.D. 534, 538 (C.D. Ill. 1998) (directing the Clerk of the Court to send a copy of sanctions order and opinion for discovery violations to the IARDC); *Terrebonne,*

5

## LEGAL STANDARD AND AUTHORITY FOR GRANTING SANCTIONS

This Court has discretion to issue sanctions under both 28 U.S.C. §1927 and its inherent authority to ensure the sound administration of justice.[2] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) (review for abuse of discretion of sanctions issued under a district court's inherent powers); *Fuery v. City of Chicago*, 900 F.3d 450, 454, 468-69 (7th Cir. 2018) (court did not abuse its discretion and acted within its inherent powers by *sua sponte* ordering judgment in favor of the defendants and overriding jury verdict as sanction for Kurtz's contumacious misconduct); *Kapco v. C&O Enterprises*, 886 F.2d 1485, 1491 (7th Cir. 1989) (abuse of discretion standard applies to sanctions issued under § 1927); *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 843-44 (N.D. Ill. 2015) (discussing standards for issuing award of fees under § 1927 and under the Court's inherent authority).

Under Section 1927, this Court may order an attorney who "unreasonably and vexatiously" multiplies proceedings to pay the "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927. Conduct that demonstrates either subjective or objective bad faith satisfies the "unreasonable and vexatious" standard under §1927. *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). Here, there is ample evidence of subjective bad faith, but the Court need not reach such a conclusion for purposes of §1927 sanctions – objective bad faith is sufficient. Objective bad faith does not require "malice or ill-will; reckless indifference to the law will qualify." *Id.* "If a lawyer pursues a path that a reasonably careful

---

*Ltd. v. Murray*, 1 F. Supp. 2d 1050, 1053 (E.D. Cal. 1998) (noting the ability under local rules in that district to refer a matter to disciplinary body).

[2] Section 1927 provides that "Any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Kapco*, 886 F.2d at 1491 (citation and internal quotations omitted).

Section 1927 permits additional sanctions to be imposed on counsel even after such counsel has been disqualified. *See, e.g.*, *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269-70 (7th Cir. 1982) ("the district court was entitled to find that [counsel] had acted in bad faith in opposing the motion to disqualify, and therefore to award [defendant] its fees and expenses."); *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1344-45 (9th Cir. 1985) (sanctions ordered for the amount opposing party spent on trial preparations due to attorney's failure to timely disclose himself as a witness which necessitated disqualification); *Terrebonne, Ltd. v. Murray*, 1 F. Supp. 2d 1050, 1066-68, 1077 (E.D. Cal. 1998) (sanctioning law firm for opposing disqualification based on improper access to confidential information and finding bad faith).

A second source of the Court's ability to grant this motion (and to impose additional sanctions) is the "inherent authority to sanction those who show 'willful disobedience of a court order,' act in 'bad faith, vexatiously, wantonly, or for oppressive reasons,' for fraud on the court, delay, disruption or 'hampering enforcement of a court's order.'" *Fuery*, 900 F.3d at 463 (quoting *Chambers*, 501 U.S. at 43); *see also Chambers* at 48 ("the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."); *Fuery v. City of Chicago*, 2016 US Dist. LEXIS 135086 at *38 ("the Court is required to make a finding of actual bad faith, willfulness, or fault to support sanctions under its inherent authority.") *Intellect Wireless*, 87 F. Supp. 3d at 844 ("District courts have the inherent power to sanction litigants and their attorneys for 'bad faith conduct or willful disobedience of a court's orders.'") (Citation omitted).

A federal court also may tailor sanctions based on the conduct and the disciplinary history of the attorney, as the Seventh Circuit has noted concerning Kurtz herself. *See Fuery*, 900 F.3d at

7

463-68 ("the district court was also entitled to examine . . . the modus operandi of the attorney as evidenced by her prior disciplinary history. . . . We do not see why . . . the district court could not consider Kurtz's disciplinary history. Indeed, a prior panel of our court encouraged courts to do just that.").

## ARGUMENT

**I.** **This Court Should Award Defendants Attorneys' Fees and Costs Associated with the Disqualification of Kurtz and Her Law Firm Pursuant to §1927.**

Both §1927 and this Court's inherent powers support awarding Defendants the fees and costs spent to disqualify Kurtz and her firm based on Kurtz's unreasonable and vexatious conduct. That conduct consists of (1) representing Ms. Williams given her executive position and relationship to this case; (2) failing to seek leave of the Court before doing so; (3) challenging the disqualification motion without a colorable legal basis to do so; (4) filing patently false declarations; and (5) filing a wholly improper and unnecessary Sur-Reply whose only real purpose was to harm the Defendants and undermine the legal rights of the CCSO. Under §1927, this conduct demonstrates – at a minimum – objective bad faith on the part of Kurtz and her firm.

As detailed in Defendants' Motion to Disqualify (Dkt. 88), the law requires attorneys to avoid even the appearance of impropriety. *See Coburn v. DaimlerChrysler Servs. N. Am., LLC*, 283 F. Supp. 2d 960, 967 (N.D. Ill. 2003) ("While [the attorney] took the precautions he thought were necessary, he is covered in ethical white dust."); *Ridge Chrysler Jeep, LLC v. Daimler Chrysler Servs. N. Am., LLC*, 2003 U.S. Dist. LEXIS 21754 at \*23 (N.D. Ill. 2003) (it is within a court's discretion to disqualify counsel for even the appearance of impropriety); *Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037, 1041-43 (W.D. MO 1984) (a court may find an ethical violation where there is merely a "reasonable possibility that some specifically identifiable impropriety did in fact occur.") (cited with approval in *Coburn*).

Kurtz knew from the outset of her representation in December 2017 that Williams was the Executive Director of Human Resources and that she had been named by Defendants as being involved with Plaintiff's fitness for duty referral. (Kurtz Declaration ¶6, Dkt. 108-9; Reply Br. at 11-13, Dkt. 108-1). Likewise, Williams's executive role within the Sheriff's Office put Kurtz on notice that Williams was a constituent of the CCSO who would consult with the organization's lawyers. *Id.* It thus is undisputable that Kurtz's secret representation of Ms. Williams, from the outset, raised at least the appearance of impropriety. Certainly, the nexus of Plaintiff's allegations with the Human Resources department headed by Williams, not to mention the fact that two of Williams's subordinates were named defendants in this case, would give any lawyer pause about their ability to represent both Plaintiff and Ms. Williams. Instead, Kurtz plowed ahead without any regard for the Sheriff's confidential or privileged information or the facial impropriety of her conduct.

Courts require attorneys to seek judicial guidance before undertaking a representation that might create the presumption of shared confidences which would warrant disqualification, and for good reason. *See Coburn*, 283 F. Supp. 2d at 967 ("[i]nstead of aggressively seeking to secure a new client, [the attorney] should have acted conservatively; he should have ceased all contacts and immediately sought guidance from this Court.") Kurtz's aggressive pursuit of her representation of Williams – despite Williams's clear involvement with this case and without leave of this Court, and Kurtz's refusal to back down when confronted by her impropriety – prejudiced Defendants and multiplied these proceedings. It took five months of careful investigation, intensive document review, multiple filings, and a final, gross transgression by Kurtz to get to the point of disqualification. The effort expended by Defendants was appropriate, necessary, and significant. Kurtz's own decision to move to withdraw at the last possible moment, and to change the story she'd been peddling up until that time (that Williams knew nothing and had shared no privileged

9

or Confidential Information) demonstrates the wisdom of the rule articulated in *Coburn*. Had Kurtz disclosed her proposed representation of Williams a year ago, Defendants would not have had to file a Motion to Disqualify at all or engage in the necessary pre-Motion efforts.

All of this plainly supports imposing monetary sanctions on Kurtz. Under §1927, sanctions are appropriate where a reasonable attorney would have known a course of conduct to be unsound. *Dal Pozzo*, 463 F.3d at 614. While the disqualification of Kurtz and her firm may mitigate future harm caused by Kurtz's access to confidential and privileged information, those proceedings should never have been necessary (so long as new counsel heeds the Court's admonition to have "no contact" with Kurtz), and warrant sanctions. (*See Analytica, Inc.*, 708 F.2d at 1269-70; *United States*, 766 F.2d at 1344-45; *Terrebonne, Ltd.*, 1 F. Supp. 2d at 1066-68, 1077; 11/14/18 Hrg. Tr. at 15, Ex. 4). Clear law requiring attorneys to avoid even the appearance of impropriety and to seek guidance from the court regarding potentially problematic representations would have given pause to any reasonable attorney in Kurtz's position.

Despite her long disciplinary history, Kurtz did not conform her conduct to that of a reasonably ethical attorney at the outset of her representation of Williams, and persisted in that representation even after Defendants raised their concerns in the May 25, 2018 letter, forcing Defendants to file the Motion to Disqualify. And the decision to play games at the discovery stage and avoid naming Williams as a custodian for ESI searches certainly reads as an attempt to divert attention away from Williams while Kurtz secretly was representing her – and being given the opportunity to access the CCSO's Confidential and privileged Information. (Reply Br. at 13-14, Dkt. 119). Kurtz never raised a colorable argument in the Response – or certainly in the Sur-Reply – that justified resisting the Motion. To the contrary, the Response falsely insists there was "no evidence" that Williams had privileged or Confidential Information (Dkt. 108-1 at 2), claims that were readily refuted in the Reply. (Dkt. 119.) Having to go through the exercise of proving Kurtz

10

wrong, for her to bow out only when the costs had been sunk, significantly and unreasonably multiplying and extended these proceedings at Defendants' expense.

Ordering Kurtz to reimburse the fees incurred by Defendants in pursuing the Motion to Disqualify is an appropriate sanction, well supported by case law. In *Analytica*, 708 F.2d at 1265, 1270, the Seventh Circuit upheld an award as far back as 1982 of $25,000 in attorneys' fees for prosecuting a disqualification motion based on a plaintiff firm's conflicting representations and concerns about unfair access to confidential information belonging to the defendant. There, the sanctioned law firms – like Kurtz – tried to withdraw prior to a ruling, but ultimately remained and were disqualified. *Id.* at 1266. Because the order disqualifying the firm was "correct," the court had to decide whether the firm's "insistence on litigating the question was so unreasonable that the district court judge could properly find it to be in bad faith". *Id.* at 1269. The existence of prior cases calling for disqualification and the fact that the case involved a law firm made "its stubbornness in resisting disqualification law less forgivable than if it were a lay client." *Id.*. Accordingly, the court upheld the $25,000 sanction.

In *Terrebonne*, a district court ordered approximately $22,000 in sanctions to partly offset the costs incurred in prosecuting a motion to disqualify where the court determined the disqualified counsel had engaged in deceptive and unethical practices. *Id.,* 1 F.Supp. 3d at 1076. That case bears significant similarity to this one. First, the underlying disqualification was ordered because the attorney improperly communicated with a constituent of a represented party – just as Kurtz's communications (and more) with Williams were improper – and both concealed his conduct from that party's counsel and wrongfully obtained privileged information as a result. *Id.* at 1058, 1065. The court ultimately determined that a fee award as a sanction could be determined by examining the number of hours reasonable expended on the matter multiplied by a reasonable hourly rate. *Id.*

11

at 1075, *citing Hensley v. Eckerhart*, 461 U.S. 424 (1983) (discussing what is commonly known as the "lodestar figure").

In summing up why the monetary sanctions were justified against the disqualified attorneys, the court made observations that easily could be echoed here:

> This unfortunate case is an aberration in the practice of attorneys before this court. What is of highest concern is that neither [of the attorneys] recognize that their conduct crossed the line, nor that their conduct, at a minimum, gave the appearance of conflict; and actually violated the Rules of Professional Conduct. . . . Their strenuous response to these conflict issues and the order to show cause has been, first, to categorically deny even the appearance of impropriety; then, when confronted with direct evidence, they said, perhaps we were mistaken. . . .

*Id.* at 1076. Here, of course, at no point did Kurtz acknowledge that her conduct "crossed the line," even with the Sur-Reply and Williams Declaration; or that her misconduct "actually violated the Rules of Professional Conduct." And just like the *Terrebonne* lawyers, Kurtz played the denial game until it could not be sustained in light of the wealth of evidence and law to the contrary. That Kurtz has never once admitted that her conduct was improper in any way – even upon her withdrawal – is yet another reason to award sanctions here.

Defendants have submitted redacted invoices reflecting the time spent on this hard-fought matter and reflecting frankly below-market rates for their work. (Ex. 5). The fees are a reasonable figure, and Defendants ask at a minimum that Kurtz be ordered to pay them in their entirety. If the Court is inclined to do so, it also can increase the fees to reflect actual market rates for the work performed by Defendants' firm. *See Kao v. Sara Lee Corp.*, 1997 U.S. Dist. LEXIS 9003, *8-10 (N.D. Ill. 1997) (finding reasonable rate for attorneys' fees higher than discounted rate charged to union client and stating the market rate is the opportunity cost of the lawyer's time) (citing *Blum*, 465 U.S. 886 (1984); *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988); *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992)). The $185 attorney rate for County cases is well below market, and well below the usual rates charged by the firm. We have roughly

12

calculated the Laffey Matrix of hourly rates in Chicago relevant to this case to be (1) paralegal work at $165 per hour; (2) lawyers four to seven years out of law school is $379 per hour; and (3) lawyers over twenty years out of law school is $745 per hour. *See generally, Nelson v. Lis*, 2017 U.S. Dist. LEXIS 45155, *12-13 (N.D. Ill. 2017) (considering the Laffey Matrix to determine reasonable rates for fees). In *Emerson v. Dart*, Judge Shadur held and the Seventh Circuit affirmed in a similar sanctions motion that it was proper to apply a rate of $390 as being commensurate with the market. *See* 900 F.3d 469, 473 (7th Cir. 2018); *Emerson v. Dart*, No. 14 C 5898, Dkt. 76 at 2 (N.D. Ill. Jan. 10, 2017), Ex. 6.

**II.  To Avoid Further Prejudice to Defendants, Plaintiff Should be Precluded from Conferring with Ms. Williams or Calling Her as a Witness.**

In addition to monetary sanctions, Defendants ask the Court to issue an order barring Plaintiff from conferring with or calling Karyn Williams as a witness in this case. This Court's inherent authority vests it with broad powers to use its discretion when determining the appropriate sanction for improper conduct to ensure the sound administration of justice. *Chambers*, 501 U.S. at 46, 55 ("the inherent power must continue to exist to fill in the interstices" between written rules and statutes); *Fuery v. City of Chicago*, 900 F.3d at 454, 464-69; *see also, e.g.*, *Chamberlain Group, Inc. v. Lear Corp.*, 270 F.R.D 392, 400 (C.D. Ill. 2010) (barring testimony from the defendant's former employee who communicated with and sent confidential information to the plaintiff's counsel, and awarding fees). The conduct of both Plaintiff and Kurtz – who continues to represent Ms. Williams – permits this Court to bar Plaintiff and his counsel from conferring with Ms. Williams or calling her as a witness in this matter. *See id.*; *see also*, *Fuery*, 900 F.3d at 467 (agreeing that Kurtz's conduct in light of her disciplinary history permitted judgment against plaintiffs even absent a finding of plaintiff misconduct).

It is generally "an improper litigation tactic to use a disgruntled employee to secretly obtain non-public [information] from an opposing party." *Chamberlain Group*, 270 F.R.D. at 398

13

(citations and internal quotations omitted). Here, Karyn Williams has demonstrated a propensity to disregard her confidentiality obligations to the CCSO and indeed the obligation to provide truthful statements to this Court. Williams's first Declaration to this Court, attached and referred to by Plaintiff's Response opposing the Motion to Disqualify, was on its face not credible. (Dkt. 108-5). Both Defendants' Reply and Williams's second Declaration drove home that conclusion and warrant a sanction. *See* Dkt. 119 and 140-2; *see also Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr.*, 230 F. Supp 896, 909, 914 (N.D. Ill. 2017) (dismissing corporation's counterclaim under inherent authority for corporate officer's fabrication of evidence and false declaration); *Intellect Wireless,* 87 F. Supp. 3d at 845-55 (awarding attorneys' fees under § 1927 and court's inherent authority for pursuing claims supported by false declarations). Williams cannot be trusted to refrain from disclosing in this case even more privileged or otherwise Confidential Information under her Confidentiality Agreement, nor indeed can she be trusted to testify truthfully. Her malice towards her previous employer at this point is evident.

The free exchange of information between Kurtz and Williams during the many months that it has taken to conclude the Motion to Disqualify (beset, as it was, by the many requests for extension sought by Kurtz) has and will continue to hinder Defendants' ability to consult with their former head of Human Resources regarding this lawsuit – or indeed to challenge statements Williams might make based on her knowledge of privileged communications. (*See* Reply at 22-24, Dkt. 119 (discussing similarities between Kurtz's conduct in *Fuery* and here demonstrating how Defendants will continue to be prejudiced from Kurtz's representation of Ms. Williams); 11/14/18 Hrg. Tr. at 14, Ex. 5.) The only fair conclusion is that Plaintiff's new counsel must be barred from conferring with Williams or calling her as a witness in their case. This sanction, which is well within the Court's power to grant, will at least partially lift the stain of impropriety occasioned by Kurtz's secret representation of Williams and the malicious and bad faith decision

14

to submit a Declaration that on its face revealed attorney-client communications. Nor is this sanction excessively unfair as to Plaintiff. By Kurtz's own statements, Plaintiff only reluctantly agreed to new counsel in this case, and only at the last minute – giving Kurtz and Williams months in which to exchange information, concoct false declarations, and prejudice the Defendants.

## **CONCLUSION**

Upon learning about Kurtz's representation of Williams, Defendants sought to resolve their concerns with Kurtz without court intervention, to no avail. Kurtz doubled down on her aggressive pursuit of a clearly improper representation. And just as she gave no credence to her ethical obligations prior to representing Williams, Kurtz blazed a path of reckless indifference to the law, the ethical rules, and the Defendants' rights – culminating in dishonest and arguably perjurious declarations and the public airing of the Sheriff's privileged information. Defendants respectfully request that this Court issue sanctions against Kurtz and Plaintiff for conduct unreasonably and vexatiously multiplying these proceedings and prejudicing Defendants.

WHEREFORE Defendants respectfully request that this Court grant this Motion for Sanctions and issue the following relief:

A. Award all attorneys' fees and that Defendants incurred in prosecuting the Motion to disqualify Kurtz and the Kurtz Law Firm;

B. Order that Plaintiff and his counsel are barred from conferring with Ms. Williams or calling her as a witness in this matter; and

C. Order any other relief or sanction that this Court deems just and appropriate.

Respectfully submitted,

THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY,

/s/ Sarah R. Marmor
Stephanie A. Scharf
Sarah R. Marmor
Morgan G. Churma

SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Ph. 312-726-6000
sscharf@scharfbanks.com
smarmor@scharfbanks.com
mchurma@scharfbanks.com

## CERTIFICATE OF SERVICE

       I certify that on December 14, 2018, I filed the foregoing DEFENDANTS' MOTION FOR SANCTIONS using the Court's CM/ECF system, which will send e-mail notification of the filing to all counsel of record. These documents are available for viewing and downloading via the CM/ECF system.

                                                     /s/ Sarah R. Marmor

       Richard F. Linden
       Law Offices of Richard Linden
       17 North Wabash, Suite 400
       Chicago, IL 60602
       lindenlaw@gmail.com

       Peter Vincent Bustamante
       Law Offices of Peter V. Bustamante
       17 North State Street
       Suite 1550
       Chicago, IL 60602
       pvbust@bustamantelaw.com
       *Attorneys for John Nawara*

       Kathleen Cunniff Ori
       James Chandler
       Jay Rahman
       Megan Marie Honingford
       COOK COUNTY STATE'S ATTORNEY'S OFFICE
       50 W. Washington
       Fifth Floor
       Chicago, IL 60602
       kathleen.ori@cookcountyil.gov
       james.chandler@cookcountyil.gov
       jay.rahman@cookcountyil.gov
       megan.honingford@cookcountyil.gov
       *Attorneys for County of Cook*