

FILED LS
2/21/2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NAWARA, | ) | |
| | ) | |
| Plaintiff | ) | No. 1:17-cv-02393 |
| v. | ) | |
| | ) | Judge Pallmeyer |
| COUNTY OF COOK et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DANA L. KURTZ'S RESPONSE
## IN OPPOSITION TO MOTION FOR SANCTIONS

## TABLE OF CONTENTS

I.      Introduction .......................................................................................... 1

II.     Procedural Background .......................................................................... 4

III.    The relevant legal standards on Defendants' motion for sanctions ..... 7

IV.     Kurtz did not engage in sanctionable misconduct in this case ........... 8

        A.      Motions for disqualification are viewed with caution
                because of their risk of harassment ..................................... 8

        B.      Non-frivolous argument existed that the substantial relationship
                test did not apply because Kurtz' representation of Nawara was
                not adverse to her representation of Williams ...................... 9

        C.      Non-frivolous argument existed to distinguish non-precedential
                case law on which Defendants relied ................................... 13

        D.      Kurtz properly consulted with Williams as her attorney regarding
                Williams' claim which is not related to Nawara's claim ....... 17

V.      Kurtz did not unreasonably and vexatiously multiply these proceedings   20

## TABLE OF AUTHORITIES

28 U.S.C. §1927 ... 7, 20

Fed. R. Evid. 407 ... 15

Rule 83.50, Local Rules of the U.S. District Court for the Northern
District of Illinois ... 1, 10

Rule 1.7, ABA Model Rules of Professional Conduct ... 1, 11

Rule 1.9, ABA Model Rules of Professional Conduct ... 1, 2, 10-11

Rule 4.2, ABA Model Rules of Professional Conduct ... 17, 20

Rule 4.4, ABA Model Rules of Professional Conduct ... 17-18, 20

Rule 26(a)(1), Federal Rules of Civil Procedure ... 2, 6

Restatement (Third) of the Law Governing Lawyers § 99 (2000) ... 17

*Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1982) ... 12

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ... 7-8, 20

*Coburn v. DaimlerChrysler Services*, 289 F. Supp. 2d 960
(N.D. Ill. 2003) ... 15-17

*Donohoe v. Consolidated Operating & Prod. Corp.*, 691 F. Supp. 109
(N.D.Ill. 1988) ... 12

*Erhart v. BofI Holding, Inc.*, 2017 WL 588390 (S.D. Cal. Feb. 14, 2017) ... 18

*Freeman v. Chicago Musical Instr. Co.*, 689 F.2d 715 (7th Cir. 1982) ... 8, 9

*Grochocinski v. Mayer, Brown & Maw*, 719 F.2d 785 (7th Cir. 2013) ... 8

*Guillen v. City of Chicago*, 956 F. Supp. 1416 (N.D. Ill. 1997) ... 8

*Hill v. Shell Oil Co.*, 209 F. Supp. 2d 876 (N.D. Ill. 2002) ... 17

*Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531 (2004) ... 18

*LaSalle National Bank v. County of Lake*, 703 F.2d 252 (7th Cir. 1983) ... 10

*Owen v. Wangerin*, 985 F.2d 312 (7th Cir. 1993) .................................................. 8

*Ridge Chrysler Jeep, LLC v. Daimler Chrysler Serv.*,
    2003 U.S. Dist. LEXIS 21754 (N.D. Ill. 2003) .................................... 15-17

*Robin v. Katten, Muchin, Zavis, Pearl & Galler*, 1986 WL 7079
    (N.D.Ill. June 13, 1986) ....................................................................... 8, 9

*Schiessle v. Stephens*, 717 F.2d 417 (7th Cir. 1983) .................................... 10

*Spina v. Forest Preserve of Cook Co.*, 2001 U.S. Dist. LEXIS 19146
    (N.D. Ill. 2001) ............................................................................... 15

*Stopka v. Alliance of Am. Insurers*, 1996 WL 204324
    (N.D.Ill. April 25, 1996) ..................................................................... 8

*Terrebone, Ltd. v. Murray*, 1 F. Supp. 2d 1050 (E. D. Cal. 1998) ............... 12-13

*Watkins v. Trans Union, LLC*, 869 F.3d 514 (7th Cir. 2017) ........................ 2, 10, 13

*Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221
    (7th Cir. 1978) ............................................................................... 10

*Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037
    (W. D. Mo. 1984) ........................................................................... 13, 15

## I.    Introduction

Non-frivolous argument existed here that Motion Respondent Dana L. Kurtz should not have been disqualified as John Nawara's counsel in this action. Kurtz's representation of Nawara was unrelated to any representation by her of the Cook County Sheriff's Office, because Kurtz has never represented the Sheriff's Office. Instead, Kurtz represents Karyn Williams, a former human resources officer in the Sheriff's Office on Williams' own employment dispute **against** the Sheriff's Office, which dispute is unrelated to Nawara's claims here. Further, Kurtz's representation of Williams and Nawara were not adverse to one another.

Defendants sought to extend the standard for disqualification beyond Seventh Circuit precedent, which deals with an attorney's prior representation of that attorney's current adversary. Defendants ignored that Kurtz never represented the Defendants. They further ignored the current versions of Rule 1.7 and 1.9 of the ABA Model Rules of Professional Conduct, which are the ethical rules that govern Kurtz's conduct before this Court pursuant to Local Rule 83.50 of the U.S. District Court for the Northern District of Illinois. A non-frivolous argument existed that Kurtz's representation of Nawara was proper under current Model Rules 1.7 and 1.9.

Non-frivolous argument also existed to distinguish the non-precedential case law relied upon by Defendants. Based on facts known to Kurtz in responding in opposition to the motion to disqualify, Williams did not make any adverse employment decision regarding Nawara and did not seek the advice of counsel regarding any contemplated adverse employment action regarding Nawara. Williams' claims against Defendants are separate and distinct from Nawara's claims against Defendants. Williams is a former

employee of the Sheriff's Office. Nawara is a current employee of the Sheriff's Office who was placed on unpaid administrative leave after refusing a demand for him to sign a blank HIPAA release form. Nawara's action is not a putative class action and Williams does not seek to join any such putative class or join forces with Nawara here.

Non-frivolous argument also existed to rebut Defendants' "appearance of impropriety" argument (*e.g.*, Dkt. 88 at 9, 11; Dkt. 119 at 14-18), which was predicated on an obsolete ethics standard, *see*, Canon 9, ABA Model Code. In 1983, the ABA replaced its Model Code with the Model **Rules**. In 2011, the Northern District of Illinois adopted the Model Rules, not the Model Code, as its governing standard. Local Rule 83.50. The current Model Rules "clarified and narrowed the contours" of the rule for disqualification. *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017). The old "appearance of impropriety" standard relied upon by Defendants in support of their motion, no longer exists in the Model Rules, which is the ethical standard employed by the Northern District. *Watkins*, 869 F.3d at 520 (the "2002 revisions to Rule 1.9 deleted the lingering reference to 'appearance of impropriety' originally housed in Canon 9 because it was no longer helpful to the analysis of questions arising under this Rule...." (citation and quotation omitted)). Non-frivolous argument existed that the current ethical standard embodied by the Model Rules did not require the disqualification of Kurtz.

Defendants' motion to disqualify was further based on the premise that Williams had confidential information regarding the Sheriff's Office that could be detrimental to its defense of Nawara's claims. However, Kurtz is unaware of any such testimony that Williams could offer on behalf of Nawara. Williams was not listed as a witness by Nawara in his Rule 26(a)(1) disclosures. Kurtz and Williams both aver that Williams has

2

not shared any such information related to this case with Kurtz. The documents sent by Kurtz on behalf of Williams to the Sheriff's Office in July 2018 relate to Williams' claims, not Nawara's claims, and have no bearing on this action. Williams further averred she was unaware of any testimony she could provide that would be adverse to Nawara's claims here.

Defendants do not seek only to sanction Kurtz. They also seek a prohibition against any conferrals between Nawara or his current counsel and Williams. In this sense, the motion to disqualify was not based on anything Kurtz did, but instead on knowledge that Defendants insist Williams may in the future impart to others, knowledge that Williams has denied or does not remember, and of which Kurtz is unaware. In this sense, a non-frivolous argument existed that disqualification of Kurtz was unwarranted.

Much of the material in support of Defendants' motion for disqualification was provided to the Court in camera or served upon Kurtz in redacted form. Kurtz had (and still has) no idea what the redactions conceal. Only this Court was given unredacted copies of that material, not Kurtz. See, Declaration of Dana L. Kurtz, Exhibit "A" hereto. It would be a violation of due process to enter sanctions against Kurtz based on materials this Court has reviewed, but which were not provided to Kurtz.

Although this Court commented at hearing on November 1, 2018 regarding its review of the parties' submissions, including emails that had been redacted from Kurtz's view, Kurtz has received no confidential information from Williams about the Nawara claim, as both Kurtz and Williams have averred. Dkt. 108-5, 108-9.

In light of the court's comments on November 1, 2018, and still without having seen the redacted materials, Kurtz and Nawara elected to retain new counsel and

withdraw Kurtz's appearance. On November 9, 2018, pursuant to leave of court granted (Dkt. 133), Kurtz filed a sur-reply on Nawara's behalf to address misstatements contained in Defendants' reply, and which notified the court and Defendants that Nawara was retaining new counsel, rendering the motion to disqualify moot, and that a motion for substitution of appearances was forthcoming. On November 13, 2018, Kurtz filed the motion to substitute appearances on behalf of Nawara. On November 14, 2018, the court granted both the motion to disqualify counsel and the motion to substitute appearances.

Based on the facts and circumstances here, it would be an abuse of discretion to enter sanctions against Kurtz in this action because Kurtz did not engage in bad faith or willful misconduct in opposing the motion to disqualify or unreasonably and vexatiously multiply the proceedings in this action. Instead, based on the facts known to Kurtz, the governing law and the rules of legal ethics, non-frivolous argument existed for opposing the motion to disqualify Kurtz as counsel for Plaintiff in this case.

## II.    Procedural Background

On March 29, 2017, Nawara, an employee of the Cook County Sheriff's Office, commenced this action, represented by Kurtz. Dkt. 1. In this action, Nawara alleges that the Defendants unlawfully placed him on unpaid leave in response to his refusal to sign blank HIPAA releases for his medical records and that Defendants further retaliated against him for participating in a previous court proceeding against the Sheriff's Office, *Burruss et al. v. Cook County Sheriff's Office et al.*, Case No. 08-cv-06621 (N.D. Ill). Dkt. 83-1. In this action, Nawara brings claims, *inter alia*, for violation of the Americans with Disabilities Act, 42 U.S.C. §1983, his First Amendment rights, and Title VII retaliation. Dkt. 83-1.

Separate and apart from Nawara's claims against the Cook County Sheriff's Office, Williams retained Kurtz to represent her with respect to her own employment dispute against the Cook County Sheriff's Office, while Williams was still employed with that office. Dkt. 108-5, ¶16. On April 16, 2018, Kurtz appeared on behalf of Williams as her attorney at an interrogation of Williams by the Office of Professional Review ("OPR") of the Sheriff's Office. Dkt. 108-5, ¶16. There was nothing secret about that representation, as Kurtz appeared at the Sheriff's Office in plain view as Williams' attorney. None of that interrogation concerned any act or omission by her for any adverse employment action taken against Nawara. On April 30, 2018, before OPR completed its investigation, the Sheriff's Office terminated Williams' employment. Dkt. 108-5, ¶18. As a result, Kurtz's representation of Williams expanded to Williams' own claims arising out of her own employment and the termination of her own employment. Dkt. 108-5, ¶19.

On July 6, 2018, Defendants filed a motion to disqualify Kurtz as counsel for Nawara in this action. Dkt. 76. Defendants supported their motion with some records that were heavily redacted from what was served upon Kurtz and from the public file. Kurtz does not know what is shown by the redacted portions of those records.

On July 10, 2018, counsel for Defendants submitted to the court for its *in camera* review what was represented to be "a whole series of privileged communications between Williams and counsel for the CCSO...." *See*, Tr., July 10, 2018, Exhibit "B" hereto, at 7:12-14. Kurtz does not know if the submission on July 10, 2018 constitutes the unredacted versions of the records attached to the motion for disqualification, or whether it contains additional documents. Either way, the full extent of what was provided to the court for its review was never provided to Kurtz. *See*, Exhibit "A" hereto.

On August 27, 2018, Kurtz filed on Nawara's behalf a response in opposition. Dkt. 108. On September 26, 2018, Defendants filed a reply in support of their motion. Dkt. 119.

At hearing on November 1, 2018, the court stated, based on its review of the motion papers including the material submitted under seal and not disclosed to Kurtz, that Williams was "one who we would expect in the ordinary course or it appears we would expect in the ordinary course would have something to say about this case." November 1, 2018 Tr. at 2:18-20, Dkt. 140-1. In response to Kurtz's argument that Williams was not involved in making any adverse employment decision against Nawara, the court further stated, "her name is all over the documents, including emails in which this very incident are addressed and discussed, as though we need her to sign off and approve on whatever that decision might be. . . . It may not have been true that she had decision-making power, but certainly somebody assumed she did and asked her to bless these things. That's what's on the emails." *Id*. at 2:24-3:2, 4:11-13.

On November 1, 2018, this court also expressed concern about Kurtz examining Williams adversely as a witness in Nawara's action while also representing Williams in Williams' own case. *Id*. at 8:10-18. The court further had stated, "It's really hard for me to see circumstances in which it's appropriate for the lawyer who represents her to also be on the other side of this case." Id. at 3:3-6. However, based on the facts known to Kurtz, Williams is not anticipated to be a witness in this action. Nawara did not disclose Williams pursuant to Fed. R. Civ. P. Rule 26(a)(1), as a person with discoverable information about this action. Kurtz further obtained confirmation that Williams is unaware of any evidence adverse to Nawara in his action here. Dkt. 140-2, ¶8.

6

On November 1, 2018, Kurtz sought leave to file a sur-reply on Nawara's behalf in opposition to Defendants' motion to disqualify. This court granted leave for Nawara to file a sur-reply and for Defendant to file a sur-response in further support of their motion. Tr. at 8:25-9:2, Dkt. 133, 140-1. On November 9, 2018, Kurtz filed a sur-reply on Nawara's behalf, which stated inter alia that "Plaintiff has agreed to retain new counsel to represent him, and will be filing a motion to substitute their appearance, thus making Defendants' motion to disqualify moot." Dkt. 140, at 1-2.

Although Defendants moved to seal the sur-reply and one of its exhibits under seal, Dkt. 150, they did not submit a sur-response in further support of their motion, that motion having been mooted by Nawara's representation in his sur-reply that new counsel had been retained. On November 13, 2018, a motion for substitution of appearances and to withdraw Kurtz's appearance was filed on behalf of Nawara. Dkt. 141. On November 14, 2018, this Court granted both the motion to disqualify Kurtz and the motion for substitution of appearances. Dkt. 145.

### III. The relevant legal standards on Defendants' motion for sanctions

On December 14, 2018, Defendants filed a motion for sanctions against Kurtz under 28 U.S.C. § 1927 and this Court's inherent authority under *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991). Under 28 U.S.C. §1927, "Any attorney . . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Although Defendants state in conclusory fashion that Kurtz engaged in subjective bad faith under §1927, they do not set forth any purported examples but make an

overarching general assertion without any factual support or citation, thereby making it impossible to guess the basis of their conclusion. Defendants then proceed under an objective standard. The inherent authority under *Chambers* is "limited to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." *Grochocinski v. Mayer, Brown & Maw*, 719 F.2d 785, 799 (7th Cir. 2013) It is not argued that Kurtz willfully disobeyed any order of this Court. In fact, this Court granted Kurtz leave to file a sur-reply. Under *Chambers*, "more than mere negligence is required" to show bad faith. *Id*. Accordingly, under these standards, sanctions are improper if there is an argument in opposition to disqualification that is "not frivolous." *Id*.

## IV. Kurtz did not engage in sanctionable misconduct in this case

### A. Motions for disqualification are viewed with caution because of their risk of harassment

Attorney disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993); *Freeman v. Chicago Musical Instr. Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982). As the Seventh Circuit has stated, motions to disqualify should be "viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722. As it further has been held, "both judicial opinions and the Rules of Professional Conduct themselves recognize that motions for disqualification 'should be viewed with extreme caution for they can be misused as techniques of harassment.'" *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997); *see also Stopka v. Alliance of Am. Insurers,* 1996 WL 204324, *2 (N.D.Ill. April 25, 1996).

By its very nature, a motion for disqualification seeks to deprive a litigant of his chosen legal advisor. *Guillen*, 956 F. Supp at 1421; *Robin v. Katten, Muchin, Zavis, Pearl*

8

& *Galler,* 1986 WL 7079, at *6 (N.D.Ill. June 13, 1986); *see also Freeman,* 689 F.2d at

722 ("A disqualification of counsel, while protecting the attorney-client relationship, also

serves to destroy a relationship by depriving a party of representation of their own

choosing."). Through their motion for disqualification, Defendants sought to deprive

Nawara of his chosen legal counsel, one who has been successful against the Sheriff's

Office in other cases, including those before this Court, including for Nawara directly,

*see Burruss et al. v. Cook County Sheriff's Office et al.*, Case No. 08-cv-06621 (N.D. Ill),

in which Nawara was a plaintiff before this Court.

Given that disqualification motions are viewed with extreme caution, Kurtz was

not required under pain of sanctions to come forward with a prior instance in which a

court blessed the continued representation of a client under the particular facts and

circumstances here, as Defendants would have it. Instead, absent binding precedential

authority to the contrary, it was entirely proper for Kurtz to oppose the motion on behalf

of her client and urge the court to exercise its discretion against disqualification, where

Kurtz's representation of Nawara was not adverse to Kurtz's representation of any other

current or former client. Indeed, in the absence of binding precedential authority under

the current Model Rules or Seventh Circuit case law that required the disqualification of

Kurtz under the facts and circumstances of this case, it would have been a dereliction of

Kurtz's duties to her client, Nawara, **not** to oppose the motion to disqualify his choice of

counsel. Therefore, this Court should not award sanctions here.

> **B.** **Non-frivolous argument existed that the substantial
> relationship test did not apply because Kurtz's representation
> of Nawara was not adverse to her representation of Williams**

In support of their motion to disqualify, Defendants asserted the "substantial

relationship" test that was applied in *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir. 1983). However, Defendants ignore the crucial predicate to that test. Kurtz had no prior representation of a former client who is now adverse to Nawara. Thus, a non-frivolous argument existed that the "substantial relationship" test should have no application here.

Schiessle is part of a line of cases that addresses an attorney's representation of a current client who is adverse to the attorney's former client. *See, e.g., Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 223 (7th Cir. 1978) ("*where an attorney represents a party in a matter in which the adverse party is that attorney's former client*, the attorney will be disqualified if the subject matter of the two representations are "substantially related") (emphasis supplied); *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir. 1983) (same). Although older Seventh Circuit cases addressed the disqualification issue under the defunct ABA Model Code, *see, Westinghouse*, 588 F.2d at 224; *LaSalle*, 703 F.2d at 255; the Seventh Circuit now addresses it under the current ABA Model Rules where, as here, they are the governing standard for legal ethics at the District Court level. *See, Watkins*, 869 F.3d at 520; N.D. Ill. Local Rule 83.50 (applying ABA Model Rules).

As the Seventh Circuit held in *Watkins*, given that the current Model Rules "clarified and narrowed the contours of an older federal common-law rule for attorney disqualification," 869 F.3d at 519, and given that the current Rule 1.9 "deleted the lingering reference to 'appearance of impropriety,'" reliance on *LaSalle* and other federal precedents that pre-date the adoption of the Model Rules as the governing ethical standard "is not persuasive." 869 F.3d at 524. Therefore, non-frivolous argument existed in opposition to any supposed appearance of impropriety standard or any expansion of

10

the substantial relationship test beyond the narrowed contours of the Model Rules.

Under Model Rule 1.7, a conflict of interest exists if "representation of one client will be directly adverse to another client" or there is "significant risk" it will be "materially limited by the lawyer's responsibility to another"; however, if the lawyer reasonably believes she can provide competent and diligent representation to both clients, who give informed consent in writing, and does not involve a claim by one client against another client, the representation can proceed. Under Model Rule 1.9(a), a lawyer may not represent a client in the same or a substantially related matter where that client's "interests are materially adverse to the interests of [a] former client," unless the former client gives informed consent in writing. Under Model Rule 1.9(c), a lawyer who has formerly represented a client may not use information relating to that former representation "to the disadvantage of the former client. . . ."

Although Comment 3 to Model Rule 1.9 deems matters "confidentially related" where there is "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter," there never was any such confidential relationship between the Sheriff's Office and Kurtz. The Sheriff's Office never entrusted confidential information to Kurtz with the understanding she would use it only to protect the Sheriff's Office's interests. The necessary predicate to Rule 1.9 did not exist. Therefore, non-frivolous argument existed against a presumption of shared confidences here. That presumption was established to protect the confidential relationship that the former client had with its former attorney who now represents another client adverse to its interests. "It would defeat the very purpose of the disqualification motion -- preserving client

11

confidences -- if in order to obtain disqualification any client were forced to reveal what had earlier been told to his or her lawyer." *Donohoe v. Consolidated Operating & Prod. Corp.*, 691 F. Supp. 109, 112 (N.D. Ill. 1988). Here, by contrast, those policy reasons that underlie the presumption of sharing of confidences are absent.

Here, the interests of Nawara and Williams were not adverse to one another. Nawara and Williams have employment discrimination claims against the Sheriff's Office that are distinct from one another. Compare Dkt. 83-1 (Nawara), with Dkt. 108-4, pages 3-4, and Dkt. 108-5, ¶¶16-20 (Williams). Kurtz did not disclose Williams as a possible witness on Nawara's behalf, nor did the Sheriff's Office. Williams further averred she was unaware of any testimony adverse to Nawara's claims that she could offer. Dkt. 140-2, ¶8. Accordingly, Kurtz does not know of any testimony related to Nawara's employment that Williams could offer in this action for either Nawara or Defendants. In addition, both Williams and Nawara executed waivers of any purported conflict of interest under Rule 1.7 of the Model Rules. Dkt. 140-3.

Defendants' reliance on *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1982) in support of their motion for sanctions is misplaced. *Analytica* supports Kurtz's position here. In *Analytica,* the court found that sanctions were warranted because the matter was controlled by binding Seventh Circuit authority under which the attorney was unable to deny that its current client and its former client were adversaries. 708 F.2d at 1270. Here, by contrast, no binding Seventh Circuit authority required Kurtz's disqualification under the facts and circumstances here because there was no adversarial relationship between Nawara and Williams.

In *Terrebone, Ltd. v. Murray*, 1 F. Supp. 2d 1050 (E. D. Cal. 1998), also cited to

12

by Defendants, sanctions were imposed where an attorney undertook "representation of a new client . . . whose interests presented an actual conflict of interest with a current client." *Id.* at 1053. Here, no conflict of interest existed between the representations of Nawara and Williams. Therefore, Defendants' reliance on *Terrebone* is misplaced.

### C.    Non-frivolous argument existed to distinguish non-precedential case law on which Defendants relied

Even if an appearance of impropriety standard were to remain viable under the current Model Rules and *Watkins*, non-frivolous argument existed to distinguish the case law cited to by Defendants in their motion. In *Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037 (W. D. Mo. 1984), an attorney was disqualified after being retained by the defendant airline's furloughed personnel manager who had assisted the airline's in-house counsel with investigating the plaintiffs' charges of employment discrimination, prepared a defense under in-house counsel's supervision to their charges, and was the airline's designated representative in the plaintiffs' EEOC proceedings; the plaintiffs' attorney then contacted the airline and revealed that the furloughed personnel manager had provided plaintiffs' attorney with evidence in support of the plaintiffs' claims and would be a witness on their behalf. *Id.* at 1039-40.

Here, by contrast, Kurtz is unaware of any facts showing that Williams assisted Defendants' attorneys in investigating Nawara's charges or prepared a defense to Nawara's charges under their supervision or was the Sheriff's Office's witness or designated representative in any Nawara proceeding. Kurtz does not concede, as did the attorney in the *TWA* case, that Williams provided evidence useful to support Nawara's claims at trial or that Williams would be a witness on Nawara's behalf.

Based on the Affidavits Defendants filed in opposition to Nawara's earlier motion

for TRO, Williams received a request that Nawara undergo a fitness for duty ("FFD") evaluation and forwarded it to Reierson for handling. Dkt. 8-2, 8-3. However, these were ministerial acts not disputed by Nawara in this action and were matters of record long before any disqualification issue arose.

As Reierson averred in her declaration attached to the motion for disqualification, it was the role of Reierson and nurse Winifred Shelby to decide in response to requests that were received whether the employees would undergo FFD evaluations, not Williams. Dkt. 82-2, page 82, ¶¶6-8. Based on the declaration of Reierson attached to the motion for disqualification, as well as the Affidavit of Reierson filed in opposition to Nawara's motion for TRO, Defendants further concede the following: Reierson and Shelby met with Nawara, then discussed and decided that Nawara would undergo an FFD evaluation, *not* Williams. Dkt. 82-2, pages 83-84, ¶¶17-23, Dkt. 8-3, ¶¶18, 20. Reierson and Shelby gave Nawara a blank HIPAA waiver, *not* Williams. Dkt. 78-1, ¶24, Dkt. 8-3, ¶21. Reierson told Nawara that if he did not sign the HIPAA waiver, he would be placed on unpaid leave, *not* Williams. Dkt. 82-2, pages 84-85, ¶25.

Although Attorney Katherine Christy avers she had conversations with Williams about "highly confidential employment matters" at the Sheriff's Office, she does not aver to ever having spoken with Williams about Nawara *at all*. Dkt. 82-2, pages 18-19, ¶5. Instead, Christy references a handful of email communications received by Williams that Christy claims to be related to Nawara, but without providing any context to that assertion in her declaration. The emails were provided to Kurtz in redacted form and provided only to the court in unredacted form. Kurtz does not know the contents of the redactions. Based on the facts known to Kurtz, the record here is distinguishable from the

14

one in the *TWA* case, which is not binding precedent here in any event.

The two additional emails submitted by Defendants with their reply do not change the outcome. The unredacted portion of the November 11, 2016 email, Dkt. 199-2, contains no confidential information about Nawara's claims. Instead, it repeats facts already of public record in this case. While its redacted parts may contain confidential information regarding the employment of other Sheriff's Office employees, that information continues to be withheld from Kurtz, and Defendants cannot explain how or why it is relevant to Nawara's claims.

Defendants appear to argue that the April 19, 2017 email, Dkt. 119-3, reflects a subsequent remedial measure undertaken by the Sheriff's Office following Nawara's claim. If Sheriff's Office employees are no longer required to execute blank HIPAA waivers before undergoing FFD evaluations, as Defendants suggest, that could not be confidential information, but instead information that should be generally known to the employees there. Regardless, evidence of subsequent remedial measures is inadmissible to establish culpability. *See* Fed. R. Evid. 407; *Spina v. Forest Preserve of Cook County*, 2001 U.S. Dist. LEXIS 19146, *35 (N.D. Ill. 2001). Thus, Kurtz received no tactical advantage from this email even if she had received it before Defendants filed it in the public record, which she did not.

*Coburn v. DaimlerChrysler Services*, 289 F. Supp. 2d 960 (N.D. Ill. 2003) and *Ridge Chrysler Jeep, LLC v. Daimler Chrysler Services*, 2003 U.S. Dist. LEXIS 21754 (N.D. Ill. 2003) are companion cases that ordered disqualification based on the same set of facts. There, the administrative assistant to the in-house attorney of an auto financing company that had primary responsibility for defending a consumer class action contacted

and retained class plaintiffs' counsel "potentially with the thought of joining the plaintiffs' class in that same matter." *Ridge*, at \*16. As the court put it, "Ms. Bradley worked for Chrysler Financial, but joined forces with its enemy." *Id*. *Ridge* applied the appearance of impropriety standard in disqualifying the attorney. *Id*. at \*\*22-23.[1]

Inasmuch as Bradley was a potential class member in the case before the court, class counsel's communications with her fell within the court's jurisdiction, which led to the court's statement that counsel should have sought the court's guidance regarding communications with her. Williams, though, is not before this Court. Neither Kurtz nor Williams has any knowledge or expectation of any testimony Williams could provide here in the Nawara matter. Williams has her own employment dispute with the Sheriff's Office pending in another case before another court. *See, Dart v. Williams*, 2018 CH 09624 (Cir. Ct. Cook Co.). Therefore, Kurtz's communications with Williams regarding Williams' claims also are not before this Court and Defendants' insistence that Kurtz should have sought this Court's guidance in communicating with her confuses the nature of the individual action here and Williams' individual claims against the Sheriff's Office with the class action that was pending in *Coburn* and is without merit.

Unlike the litigant in *Ridge* and *Coburn*, Williams is not an actual or potential class member because this action is not a class action. Williams has not joined forces with the Sheriff's Office's enemy. Instead, Kurtz represents Williams in Williams' own case. Kurtz and Williams remain unaware of any connection Williams has to this case,

---

[1]While *Coburn* applied an earlier version of Rule 1.7, it construed that earlier version as not requiring an actual conflict of interest to warrant disqualification. The current version of Rule 1.7 clarifies that a "concurrent conflict of interest" is required under both Rule 1.7(a) and (b). And, as Watkins points out, that earlier version of the Model Rules had not yet completely removed the "appearance of impropriety" from its comments' scope.

other than William's receipt of a request for Nawara to undergo an FFD evaluation and her forwarding of that request to Reierson for handling, which acts were purely ministerial, undisputed facts of record and not at issue. Thus, the record here is sufficiently distinguishable from the one in *Coburn* and *Ridge*, which is not binding precedent here in any event.

### D.   Kurtz properly consulted with Williams as her attorney regarding Williams' claims which are not related to Nawara's claims

Non-frivolous argument also existed that Kurtz had not violated Rule 4.2 or 4.4 of the Model Rules. Rule 4.2 states that: "[i]n representing a client, a lawyer shall not communicate ***about the subject of the representation*** with a person the lawyer knows to be represented by another lawyer in the matter." ABA Model Rule 4.2 (emphasis supplied). Rule 4.4 states in part that a lawyer should not "use methods of obtaining evidence that violate the legal rights" of another person.

Kurtz did not violate Rule 4.2 in her conferrals with Williams because those conferrals related to Williams' own employment dispute with the Sheriff's Office for which Williams had retained Kurtz as her attorney, not the *Nawara* matter. *See* Restatement (Third) of the Law Governing Lawyers §99 (2000) (Rule 4.2 "does not prohibit communications with a represented non-client in the course of social, business, or other relationships or communications that do not relate to the matter involved in the representation."); *see also Hill v. Shell Oil Co.*, 209 F. Supp. 2d 876, 880 (N.D. Ill. 2002) (finding that everyday business discussions unrelated to the subject of the litigation "[did] not rise to the level of communication protected by Rule 4.2"). Instead, Williams sought legal representation regarding her own claims against the Sheriff's Office as a result of

17

the retaliation that she was experiencing, and these were the only discussions Williams had with Kurtz. Dkt. 108-5, ¶¶ 10-14, ¶21.

Here, by contrast, Williams has her own, distinct employment discrimination claim against the Sheriff's Office, based on a hostile work environment and retaliatory actions beginning in the summer of 2017 and Williams' complaint that the Sheriff's Office may have violated State and Federal law during the process of eliminating positions for a layoff that was published in October 2017. Dkt. 108-3, pages 3-4. Nawara's position was not eliminated in that layoff. Nawara's suit was filed in March 2017 based on the undisputed fact that he was placed on unpaid administrative leave as of November 2016 for refusing to sign a blank HIPAA waiver.

Kurtz further did not violate Rule 4.4 in obtaining from Williams records that are relevant to Williams' claims against the Sheriff's Office, Dkt. 108-3, pages 2-72, and which are unrelated to Nawara's claims here. Although the Sheriff's Office appears to contend that Williams' consultation with her own attorney about communications in support of her own distinct employment claim violates some duty of confidentiality owed by Williams to the Sheriff's Office, that is both absurd and immaterial to the distinct and unrelated claims of Nawara here. *See, Erhart v. BofI Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2017 WL 588390, *7 (S.D. Cal. Feb. 14, 2017) (finding that a confidentiality clause that prohibits a securities customer "from discussing the selling agent's misconduct with regulatory authorities" is unenforceable on grounds of federal public policy); *see also Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 540 (2004) ("The law has a long history of recognizing the general rule that certain contracts, though properly entered into in all other respects, will not be enforced, or at least will not

be enforced fully, if found to be contrary to public policy.").

Williams returned documents in her possession, all of which are related to her claims against the Sheriff's Office, at the Sheriff's Office's request in July 2018, (Dkt. 108-4), despite being under no obligation to do so. These documents are unrelated to Nawara's claims. At no point do Defendants ever even attempt to dispute this fact or explain how these documents related to Williams' claims somehow could be related to Nawara's claims. They are not. Although Defendants argue that that "all were confidential information that should have been returned in April 2018 and certainly after repeated demands from the CCSO," (Dkt. 119 at 10), non-frivolous argument existed on which to dispute that argument on Williams' behalf because they are documents that relate to Williams' own communications with the Sheriff's Office regarding Williams' own claims against the Sheriff's Office. However, that is immaterial here because Williams and her claims are not before this Court.

For purposes of this action and Nawara's claims, a non-frivolous argument existed that any purported issue regarding Williams' possession of records related to her own claims against the Sheriff's Office was an improper basis on which to seek Kurtz's disqualification here because that purported issue was unrelated to Nawara's claims. The fact remains that Kurtz's representation of Williams was not adverse to Kurtz's representation of Nawara and Defendants made no showing otherwise. The records returned by Williams to the Sheriff's Office in July 2018, Dkt. 108-4, pages 2-72, are different from the redacted records that Defendants attached to their motion for disqualification. Kurtz never has received or seen the documents submitted by Defendants for in camera review or the unredacted portions of the records that

19

Defendants attached to their motion for disqualification.

Kurtz further did not violate Rule 4.2 or 4.4 by submitting FOIA requests to the Sheriff's Office. Defendants ignore the fact that the Sheriff's Office is a public entity that is subject to FOIA. Regardless, Defendants' arguments about FOIA, Dkt. 119 at 16-18, are simply not relevant to the Seventh Circuit analysis of disqualification and all of Defendants' arguments are not only wrong, but contrary to FOIA law. *See* Decl. of Attorney Matthew Topic, Dkt. 140-3.

## V. Kurtz did not unreasonably and vexatiously multiply these proceedings

Under §1927, an attorney may be required to reimburse his adversary for attorney fees incurred because of an unreasonable and vexatious multiplication of the proceedings. However, Kurtz did not engage in any unreasonable or vexatious multiplication of the proceedings here or engage in any activity that warrants exercise of this court's authority under *Chambers*.

In their motion for sanctions, Defendants seek sanctions in the amount of $63,248 comprised of 309 hours of attorney time and 78.5 hours of paralegal and clerk time. A review of the invoices submitted in support of the motion, Exhibit "E" to Motion for Sanctions, shows that approximately half of that amount was incurred **before** Kurtz filed her response in opposition to the motion. In other words, approximately half of that amount, reflecting over one hundred fifty hours of attorney time and over forty hours of paralegal and clerk time, was spent in analyzing the disqualification issue and preparing and presenting the motion for disqualification to this Court for its consideration.

For this reason alone, the request for sanctions should be denied. The fact that Defendants spent over $30,000 in fees working up the disqualification issue alone

indicates it was a complicated issue that called for a response in opposition from Kurtz. If the issue were as straightforward as the motion for sanctions now makes it out to be, Defendants could not reasonably have spent so much time and effort to package it for filing. Therefore, no award of sanctions should be entered here.

Defendants' motion for disqualification was supported by documents that were heavily redacted before being served upon Kurtz. Only the court received an *in camera* submission of unredacted copies. In considering the motion for disqualification, Kurtz did not have any indication of what the redactions to those records concealed. At hearing on November 1, 2018, this Court gave some indication of what it inferred from its *in camera* review of the unredacted documents. At hearing on November 1, 2018, this Court also indicated that Kurtz would be hard-pressed to examine Williams adversely as a witness in the *Nawara* case. However, it is unlikely that the Defendants would call Williams as a witness on their behalf in this case because Williams is in litigation against Defendants in their own case against her. Further, Williams did not decide to direct Nawara to undergo an FFD evaluation, did not tell Nawara to sign a blank HIPAA waiver and did not tell him he would be placed on unpaid leave if he refused to do so. As set forth above, the Reierson declarations both in opposition to Nawara's motion for TRO and in support of the disqualification motion make plain that Reierson made those decisions and took those actions, ***not*** Williams. Regardless, also as set forth above, Kurtz sought and obtained confirmation from Williams that she was unaware of any testimony she could provide that would be adverse to Nawara.

Defendants have also refused to allow Kurtz to see these records, agreeing only to produce the invoices under an attorneys' eyes only restriction, further depriving Kurtz of

21

the ability to respond to records Defendants have sought to keep from her and Nawara.

If the court concluded that Kurtz should have withdrawn immediately upon November 1, 2018, the Court would not have granted Kurtz leave to file a sur-reply (Dkt. 133). Further, the total amount of fees incurred by Defendants after that point in time is approximately $5,000, see Exhibit "E," Motion for Sanctions, which is not reflective of an unreasonable and vexatious multiplication of the proceedings.

However, based upon the Court's comments on the record on November 1, 2018, regarding what its review of the *in camera* submission led it to likely conclude, if this Court concludes that Kurtz should have withdrawn immediately at that time and that she unreasonably and vexatiously multiplied the proceedings thereafter in failing to do so, the damages sustained by such conduct should be no greater than the fees approximating $5,000 that were incurred following November 1, 2018.

The invoices indicate very little time spent by Defendants between the time of the filing of the reply in further support of the motion to disqualify and the November 1, 2018 hearing. On November 14, 2018, the court ruled that it was "undisputable" that the record supported disqualification "for quite some time but certainly since the time of the reply memorandum." Tr., November 14, 2018 at 13:18-20, Dkt. 156-1, page 29. Again, Kurtz did not have access to the documents Defendants submitted in camera and redacted from the public record. The amount of fees incurred by Defendants after filing the reply memorandum is only approximately $6,125,[2] *see* Exhibit "E" to Motion for Sanctions, which is not reflective of an unreasonable and vexatious multiplication of the

---

[2]However, the billing entries for this period of time also appear excessive especially when Kurtz's sur-reply work was 11.2 hours, which at $185 per hour (Defendants' invoiced billing rate in Exhibit "E" to the Motion) amounts to little over $2,000.

proceedings. However, if this Court concludes that Kurtz should have withdrawn immediately upon the filing of the reply memorandum and that she unreasonably and vexatiously multiplied the proceedings thereafter in failing to do so, the damages sustained by such conduct should be no greater than the fees approximating $6,125 that were incurred following the filing of the reply memorandum.

     For the foregoing reasons, Defendants' motion for sanctions should be denied.

DANA L. KURTZ

By:\_\_\_\_ /s/ Christopher L. Gallinari_____
One of her Attorneys

Michael J. Flaherty
mflaherty@fylegal.com
Christopher L. Gallinari
cgallinari@fylegal.com
Flaherty & Youngerman, P.C.
321 South Plymouth Court, 14th Floor
Chicago, Illinois 60604
(312) 782-4700

CERTIFICATE OF SERVICE

     I hereby certify that I caused a copy of the attached document to be served upon all counsel of record in this case via ECF, before 5:00 p.m. on February 19, 2019.

/s/Christopher L. Gallinari

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NAWARA, | ) | |
| | ) | |
| **Plaintiff** | ) | **No. 1:17-cv-02393** |
| **v.** | ) | |
| | ) | **Judge Pallmeyer** |
| COUNTY OF COOK et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## DECLARATION OF DANA L. KURTZ IN SUPPORT OF HER RESPONSE
## IN OPPOSITION TO MOTION FOR SANCTIONS

I, Dana L. Kurtz, declare pursuant to 38 U.S.C. §1746, under penalty of perjury and based on personal knowledge that the following facts are true and correct to the best of my knowledge, information and belief:

1.      I am over 18 years of age and am an Illinois licensed attorney with Kurtz Law Offices, Ltd. ("KLO"). I have personal knowledge of the matters set forth below.

2.      I never have received, seen, or read any unredacted copies of any of the documents attached as Exhibits B, C and D to the Declaration of Elizabeth Scannell, Docket No. 82-2, filed in support of the motion for disqualification in this action.

3.      I never have received, seen, or read any unredacted copies of any of the documents attached as Exhibits A, B(1), B(2), C, D, E, G, H, I, J and K to the Declaration of Katherine Christy, Docket No. 82-2, filed in support of the motion for disqualification in this action.

4.      Prior to my receiving a copy of the motion for disqualification in this action after it was filed by Defendants, I did not receive, see or read a copy of the document attached as Exhibit F to the Declaration of Katherine Christy, Docket No. 82-2, filed in support of the motion for disqualification in this action.

5.      I never have received, seen, or read any unredacted copy of the document attached as Exhibit 2 to the Reply in further support of the motion for disqualification, Docket No. 119-2, in this action.

6.      Prior to my receiving a copy of the Reply in further support of the motion for disqualification after it was filed by Defendants in this action, I did not receive, see, or read a redacted copy of the document attached as Exhibit 2 to the Reply in further support of the motion for disqualification, Docket No. 119-2, in this action.

7.      Prior to my receiving a copy of the Reply in further support of the motion for disqualification after it was filed by Defendants in this action, I did not receive, see, or read a copy of the document attached as Exhibit 3 to the Reply in further support of the motion for disqualification, Docket No. 119-3, in this action.

8.      Prior to my receiving a copy of the motion for disqualification after it was filed by Defendants in this action, I never received, saw or read the document attached as Exhibit A to the Declaration of Elizabeth Scannell, Docket No. 82-2, filed in support of the motion for disqualification in this action.

9.      I do not know if the Defendants' submission to the Court "in camera" on July 10, 2018 constitutes the unredacted versions of the records attached to the motion for disqualification, or whether it contains additional documents. Either way, the full extent of what was provided to the court for its review was never provided to me.

FURTHER DECLARANT SAYETH NOT.

_____
DANA L. KURTZ

Dated: February 19, 2019

```
 1                IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3

 4    JOHN NAWARA,                        )
                                          )
 5                  Plaintiff,            )    Docket No. 17 C 2393
                                          )
 6          vs.                           )
                                          )
 7    COUNTY OF COOK, a unit of           )
      local government, et al.,           )    Chicago, Illinois
 8                                        )    July 10, 2018
                    Defendants.           )    8:56 a.m.
 9

10              TRANSCRIPT OF PROCEEDINGS - Motion
           BEFORE THE HONORABLE REBECCA R. PALLMEYER
11

12    APPEARANCES:

13    For the Plaintiff:       KURTZ LAW OFFICES, LTD.
                               BY:  MS. HEIDI KARR SLEPER
14                             32 Blaine Street,
                               Hinsdale, Illinois, 60521
15

16    For the Defendants:      HON. KIMBERLY M. FOXX
                               STATE'S ATTORNEY OF COOK COUNTY
17                             BY:  MS. KATHLEEN C. ORI
                               500 Richard J. Daley Center
18                             Chicago, Illinois  60602

19                             SCHARF BANKS MARMOR LLC
                               BY:  MS. SARAH R. MARMOR
20                                  MR. MORGAN G. CHURMA
                               333 West Wacker Drive, Suite 450
21                             Chicago, Illinois  60606

22

23    Court Reporter:         FRANCES WARD, CSR, RPR, RMR, FCRR
                              Official Court Reporter
24                            219 S. Dearborn Street, Suite 2144D
                              Chicago, Illinois  60604
25                            (312) 435-5561
                              frances_ward@ilnd.uscourts.gov
```

1          THE CLERK:  17 C 2393, Nawara versus County of Cook
2    on a motion.
3          MS. MARMOR:  Good morning, your Honor.
4          Sarah Marmor and Morgan Churma on behalf of
5    Sheriff Dart and the individual defendants.
6          MS. SLEPER:  Good morning, your Honor.
7          Heidi Karr Sleper on behalf of the plaintiff.
8          MS. ORI:  Good morning.
9          Kathleen Ori on behalf of Cook County.
10          THE COURT:  Okay.  We have the motion -- a couple
11    of routine motions.  Motions for leave to file excess pages
12    and to seal certain documents, those will be granted.
13          There is also plaintiff's motion for leave to file
14    a second amended complaint.  And before I grant that, I need
15    to deal with the defendants' motion to disqualify plaintiff's
16    counsel.
17          Is there a response?
18          MS. SLEPER:  Yes, your Honor.
19          I believe you probably want a written response on
20    this one, but just briefly, this has kind of become a routine
21    motion that's been filed in every case that we represent a
22    Cook County employee at this point, and they have never been
23    granted.
24          THE COURT:  Any in which -- I am sorry.  Any in
25    which your office is representing the key witness for the

1    other side?

2              MS. SLEPER:  The Cook County --

3              THE COURT:  Is there another case like this where

4    your office is representing an individual who would be the

5    key witness in support of the other side's position?

6              MS. SLEPER:  Not exactly this.  There is this

7    motion, I believe, in another case, but they have also filed

8    motions to disqualify in other cases based on other grounds.

9              THE COURT:  Exactly.  And those have been denied,

10   you are telling me.

11             MS. SLEPER:  Yes.

12             THE COURT:  Are there cases in which your office is

13   representing an individual who unquestionably would be called

14   as a witness by the defendant?

15             MS. SLEPER:  I believe -- and defense counsel can

16   correct me if I'm wrong on this.  I believe that this motion

17   relating to Karyn Williams has been filed in other cases as

18   well.

19             THE COURT:  Understood.

20             Are those other cases, cases in which Ms. Williams

21   would be the key witness that the defendant would call to

22   rebut your client's claims in those cases?

23             MS. SLEPER:  I believe that is their position in

24   those cases as well, yes.

25             MS. MARMOR:  I think that there is one case, your

1    Honor.  We actually cite it in a footnote to our motion.

2              THE COURT:  And in that case, the motion was

3    denied?

4              MS. MARMOR:  No.  It hasn't been heard yet.

5              THE COURT:  Oh, all right.

6              MS. SLEPER:  That one is still pending, yes.

7              THE COURT:  All right.

8              MS. SLEPER:  But, your Honor, I don't believe that

9    Ms. Williams would, in fact, be a key witness in this case.

10   There is no -- she came to us looking for representation

11   regarding her own claims of retaliation relating to her

12   termination.  That's how we became involved in representing

13   her.

14             We produced the documents to defense counsel that

15   Ms. Williams provided to us.

16             Based on our investigation and review of the claims

17   and even admissions in defendants' own motion, Ms. Williams

18   was not involved in the substance or decision-making of

19   Nawara's claims.  She may have been in that department, but

20   their motion states that decisions relating to the

21   fitness-for-duty examination were, in fact, made by others.

22             In any case, where there is a higher-ranking

23   individual that we represent, we always go through the

24   standard.  She has to sign a conflict waiver relating to

25   representation of other employees.  She has been advised

1    under the rules not to disclose any information that she

2    would have obtained through her position that could be

3    considered attorney-client privilege.

4           In the defendants' motion, they claim that they

5    would have been representing Ms. Williams in her own claims

6    against them.  I don't quite understand.

7           THE COURT:  No, no.  They would not be representing

8    her in any claims against them.  They would be assuming -- I

9    assume that they would be calling her as a witness with

10   respect to the client's -- your client, Mr. Nawara's, issues

11   regarding this fitness-for-duty examination.

12          MS. SLEPER:  Right.

13          THE COURT:  Which I understood she was involved in

14   the communications to him about that fitness-for-duty

15   examination.

16          MS. SLEPER:  That's not my understanding.  My

17   understanding is there was a routine form that was sent to

18   her attention, and that is the extent of it.

19          THE COURT:  She had no other involvement.  She

20   signed a routine form.

21          MS. SLEPER:  That's my understanding, is that the

22   decisions and the actual involvement were by other people.

23   She being the head of the department was the name on the form

24   that was sent.  She didn't have any actual involvement in

25   making the decision or -- she didn't have any involvement in

1    making the decision is my understanding.

2              THE COURT:  She is the head of the department, but

3    it wasn't her decision.

4              MS. SLEPER:  Right.  She was not actively involved

5    in this process.

6              THE COURT:  Out of curiosity, if the head of the

7    department doesn't make the decision, who makes the decision?

8              MS. SLEPER:  Well, I believe in their motion they

9    stated --

10             THE COURT:  No.  You know this.  I'm not asking

11   what's in the motion.

12             If the head of the department -- if Ms. Williams,

13   the head of the department, doesn't make this decision about

14   the fitness-for-duty examination, who does?

15             MS. SLEPER:  The people that had the delegated

16   authority to do so.

17             THE COURT:  Oh, in other words, she delegated the

18   authority.  She was their supervisor, but she didn't make the

19   decision.  She said, you people make the decision; is that

20   right?

21             MS. SLEPER:  My understanding of this is that,

22   while she is the head of the department, this was not

23   specifically her area, and she was not involved in this

24   decision.  It was other people in the department.

25             THE COURT:  Her subordinates.

1              MS. SLEPER:  Correct.

2              THE COURT:  Response.

3              MS. MARMOR:  Your Honor, that's just,

4     unfortunately, not true.  She was not merely a figurehead.

5              The way the process works is, yes, it goes to her.

6     She did -- it's certainly true that she delegated to two of

7     the defendants in this case who reported to her to process

8     the request by Defendant Burke to consider whether or not to

9     send Mr. Nawara for a fitness-for-duty examination.  There is

10    actually correspondence back and forth about that between

11    Defendant Reierson and Ms. Williams.

12             And you may not have noticed, but we have a whole

13    series of privileged communications between Williams and

14    counsel for the CCSO, which we have available for *in camera*

15    review.  I have the envelope here.

16             But this is one of the problems here.  I mean, I

17    want to go back and say we have not been told any of the

18    things that were said today about any effort to somehow take

19    steps to protect privileged information that Ms. Williams

20    might hold.  I gave Ms. Kurtz an opportunity to give me that

21    information, and she did not.  There have been a series of

22    correspondence that started in May, because I really didn't

23    want to rush in to this Court and make this argument.

24             I do actually think it probably makes sense to get

25    some of this in writing.  I had spoken to Ms. Kurtz yesterday

1    by email and had agreed to a briefing schedule.

2              But I think what is required here is an examination

3    of the *in camera* documents that we have as well as the

4    declarations that we have provided.  One of the those

5    declarations is from Ms. Reierson, who directly reported to

6    Ms. Williams.

7              What Ms. Reierson attests to is the fact that she

8    regularly kept Ms. Williams apprised of what was going on

9    with all of the matters that she was handling, including the

10   Nawara matter, that this was an unusual matter because he was

11   refusing to sign the HIPAA forms and because his lawyer got

12   involved quite early in the process and because then there

13   was a TRO filed and then there was all of the fallout of

14   that.  And then two of this woman's direct reports got sued

15   in this case.

16             So I think the record is going to show that it's

17   just not true that she was merely a figurehead in all of

18   this.  In fact, she was named in the TRO papers as a person

19   who had knowledge of this process.

20             And as our brief points out, it's really unusual

21   and odd to us that she was never named as a defendant, that

22   they have never asked her -- named her as a custodian whose

23   materials we should review, when, in fact, her predecessor,

24   Rosemarie Nolan, who had nothing, literally nothing to do

25   with this matter, is named as a custodian and was sued

1    regularly by the Kurtz firm in similar circumstances.

2            So part of the point is, what the law speaks to is

3    really two things.

4            First, the fundamental problem that we cannot

5    invade what's now an attorney-client relationship between

6    Ms. Williams and the Kurtz firm to find out exactly what she

7    has told them, exactly what the circumstances of her

8    retention were.

9            I will point out that she retained the Kurtz firm

10   while she was still employed by the Cook County Sheriff's

11   Office, not after she left that job.  So this isn't just a

12   "Gosh, I got fired; I need some help" situation.

13           The second point is that the law and the rules

14   really speak to the appearance of impropriety.  And that is

15   what we have here, particularly, as I say, because we can't

16   unpack all of the detail of how this woman was retained or

17   the things that she may or may not have said to her counsel.

18           THE COURT:  How much time do you need to respond?

19           MS. SLEPER:  Your Honor, I believe if I could

20   get --

21           MS. MARMOR:  We agreed to 30 days.

22           THE COURT:  Thirty days is fine.  That's fine.

23           MS. MARMOR:  And Ms. Kurtz had asked me -- this

24   also relates to the motion for leave to amend the complaint,

25   but she, because I guess she has got some issues with her

```
 1    husband's medical condition, had wanted -- she proposed 21
 2    days for my reply, and we would have the same briefing
 3    schedule --
 4              THE COURT:  For the motion --
 5              MS. MARMOR:  -- on the motion to dismiss.  Sorry.
 6    I am getting ahead of myself.
 7              THE COURT:  Motion for leave to file an amended
 8    complaint.
 9              MS. MARMOR:  Yes.
10              We are not opposing the amended complaint.  We will
11    just answer or otherwise plead in 30 days.
12              THE COURT:  Okay.  So the response to the motion to
13    disqualify will be due on August 7th.  That's 30 days.  The
14    reply would be due on August 28th.  That's 21 days.  And the
15    motion for leave to file an amended complaint is granted with
16    defendant to answer or otherwise plead in 21 days.
17              MS. MARMOR:  Actually, could we have 30 days only
18    because I am literally leaving this afternoon for a week in
19    Spain?  I worked out with Ms. Kurtz that we would get 30
20    days.
21              THE COURT:  Sure.
22              MS. MARMOR:  Thank you.
23              MS. ORI:  If I could interject for Cook County?  We
24    are just the indemnitor.  But the way the amended complaint
25    is written, it looks like the claims are against Cook County.
```

1     I don't think that's the intent, but I wanted some
2     clarification on that.
3               MS. SLEPER:  It's not.  They are just listed as the
4     indemnitor.
5               THE COURT:  All right.  That's confirmed.
6               Okay.  Thank you.
7               MS. SLEPER:  Thank you, your Honor.
8               MS. MARMOR:  Oh, your Honor, there is one other
9     matter that Ms. Kurtz asked me to raise.
10              And I don't know if you knew.
11              But we have a discovery cutoff in the case that,
12    given all that's going on -- as I expressed to her, I'm
13    uncomfortable with having depositions while the motion to
14    disqualify is going on.  And, frankly, the parties are not
15    done with written and documentary discovery.
16              So what I was going to propose was that we come
17    back for status in the middle of September and just reset at
18    that point what our deadlines would be.
19              THE COURT:  That's fine.  September 12th for a
20    status.  The August 2nd status will be stricken.
21              MS. MARMOR:  Thank you, your Honor.
22              THE COURT:  And that would be 9:00 o'clock.
23              MS. MARMOR:  And, your Honor, I'm not quite sure
24    what I should do with the *in camera* documents.
25              THE COURT:  You could leave them with me right now.

1          MS. MARMOR:  Okay.  May I approach?

2          THE COURT:  Sure.

3       (Documents tendered.)

4          THE COURT:  Okay.  Thank you.

5          MS. SLEPER:  Thank you, your Honor.

6          MS. MARMOR:  Thank you.

7              *   *   *   *   *

8  I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.

9

10  /s/ Frances Ward_____July 24, 2018.
Official Court Reporter

11  F

12

13

14

15

16

17

18

19

20

21

22

23

24

25