## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NAWARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 2393 |
| | ) | |
| COUNTY OF COOK, a unit of local | ) | Judge Rebecca R. Pallmeyer |
| Government, THOMAS DART, in his | ) | |
| official capacity as Sheriff of Cook County, | ) | |
| Illinois, KAREN JONES-HAYES, MATTHEW | ) | |
| BURKE, REBECCA REIERSON, and | ) | |
| WINIFRED SHELBY, in their individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM ORDER AND OPINION

Plaintiff John Nawara filed this case in 2017 after the Cook County Sheriff's Office ("CCSO") placed him on unpaid leave from his position as a correctional officer. Nawara's suspension followed his refusal to sign Health Insurance Portability and Accountability Act ("HIPAA") forms that would have permitted any of his health care providers to release all of his medical records to CCSO. (Second Am. Compl. [89] § 55.) The County claims that the forms were given to Nawara as part of a fitness-for-duty ("FFD") examination and that this "FFD examination could not go forward without his medical records." (Dfs.' Memo. in Support of MTD [104], at 3.) Consequently, because he refused to execute the HIPAA waiver, Nawara was placed on unpaid administrative leave. Nawara has a much different view of events. He alleges that the blank forms violate the ADA and were given to him for two separate retaliatory reasons: first, for his participation in a lawsuit against Sherriff Dart Thomas Dart, *see Burruss v. Cook Co. Sheriff's Office*, No. 08-cv-6621 (N.D. Ill); and second, because he filed a complaint against his supervisor, Defendant Karen Jones-Hayes, for harassing, assaulting, and battering him. Nawara also alleges that he was subsequently retaliated against for refusing to sign the HIPAA forms. All Defendants

move to dismiss Nawara's Second Amended Complaint [89] pursuant to FED. R. CIV. P. 12(b)(6). For the reasons explained here, the motions are granted in part and denied in part.

## BACKGROUND

At this stage in the proceedings, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Cannici v. Vill. of Melrose Park,* 885 F.3d 476, 479 (7th Cir.), *cert. denied*, 139 S. Ct. 288 (2018).

Plaintiff John Nawara began working for CCSO in September 1998. (Second Am. Compl. [89] ¶ 10.) From 2002 to 2007, he was a correctional officer on a special team in the Cook County Jail called the Special Operations Response Team ("SORT"). (*Id.* at ¶ 11.) After members of SORT supported a candidate who challenged Sheriff Dart in the 2006 Cook County primaries, SORT was disbanded. Twenty-one members of SORT, including Nawara, sued CCSO, Cook County, Sherriff Dart, First Executive Assistant Scott Kurtovich, and several other Defendants for retaliation. (*Id.* at ¶¶ 100, 101).[1] A jury found for Plaintiffs and against Defendants Cook County and Kurtovich in September 2012. *Burruss v. Cook Cty. Sheriff's Office*, No. 08 C 6621, 2013 WL 3754006, at *3 (N.D. Ill. July 15, 2013). *See also id.* at *9, *18 (denying, in relevant part, Defendants' judgment notwithstanding the verdict).

Despite the disbanding of SORT, Nawara never ceased to work for CCSO. By late 2016, he had been "assigned to the basement of Cermak Hospital to monitor detainees." (Second Am. Compl. [89] ¶ 32.) On September 28, 2016, Plaintiff Nawara was on duty in that role when "[a] fight broke out between two inmates." (*Id.* at ¶ 32.) After breaking up the fight, Nawara "and two other officers" called their supervisor, Defendant Jones-Hayes, "advising [her] . . . of the situation." (*Id.* at ¶¶ 32–33.) Jones-Hayes came to the site of the incident, where Nawara alleges that she

---

[1]     For background, see *Burruss v. Cook Cty. Sheriff's Office*, No. 08-cv-6621, 2011 WL 856635 (N.D. Ill. Mar. 9, 2011) and *Burruss v. Cook Cty. Sheriff's Office*, No. 08-cv-6621, 2013 WL 3754006, at *3 (N.D. Ill. July 15, 2013).

"responded in a very insulting, provoking and demeaning manner, hit[ting] Plaintiff in his chest with her finger several times . . . [and] sp[eaking] to Plaintiff in a condescending tone of voice." (*Id.* at ¶¶ 33, 35.)[2] Nawara "took a step back, feeling trapped, and told her to keep her hands off of him, and that it was very unprofessional." (*Id.* at ¶ 35.) Nawara alleges that he "complained about Defendant Jones-Hayes' conduct towards him to the other employees, including the sergeant that was present." (*Id.* at ¶ 39.) The day after the incident with Jones-Hayes, Nawara was moved from his post at Cermak to "external operations." (*Id.* at ¶ 40.) In external operations, he "was assigned to transport detainees"; in that role, he was in contact with detainees, other employees, and carried a firearm. (*Id.* at ¶ 41.) He does not allege any change in pay as a result of the reassignment.

On October 13, Nawara "filed a formal complaint with his supervisor regarding Defendant Jones-Hayes' harassment and assault and battery of him." (*Id.* at ¶ 42.) On November 18, he was called into the Human Resources office, where he met with Defendants Winifred Shelby, an Occupational Health Specialist for Human Resources ("HR") at CCSO, and Rebecca Reierson, the Leave and Absence Manager at HR. Plaintiff alleges that Defendant Matthew Burke, Chief of Staff for the CCSO Department of Corrections, "stated that" he requested that Shelby and Reiersen meet with Nawara "'and determine whether a fitness for duty evaluation was appropriate.'" (*Id.* at ¶ 51.) The Second Amended Complaint does not explain to whom, nor when, Burke made this statement.

In the meeting, Shelby and Reierson asked Nawara whether he had threatened another employee. He denied doing so, and Shelby and Reierson told Nawara that "this was 'not an

---

2       In the formal complaint Nawara later filed regarding the incident, he explained that Jones-Hayes took issue with the way an inmate was "cuffed." (Ex. 7 to Dfs.' Memo. in Supp. of MTD [104-1], at PageID # 1337 ("In a very insulting, provoking and demeaning action Supt. Jones-hayes pushes her finger into my chest several times as she says, in a very condescending tone of voice, 'Why isn't this inmate cuffed behind the back.' She pointed to a detainee that was not either of the detainees that were involved in the altercation.").)

O.P.R. (Office of Professional Review) matter'"; Nawara alleges that OPR is the "division that investigates officer misconduct." (*Id.* at ¶¶ 44–48.) Shelby and Reierson did not notify Nawara of the existence of any "complaint or allegations against him," but they did ask him to "sign two (2) HIPAA release forms that were blank." (*Id.* at ¶ 45.) Nawara characterizes this request as a demand from Sheriff Dart.[3] He alleges that by giving him these blank forms, Defendants violted the Americans with Disabilities Act ("ADA"), 42 U.S.C. ¶ 12112(d)(4)(A), and retaliated against him both for his participation in the *Burruss* suit and for his complaint against Jones-Hayes. Nawara did not sign the forms and, instead, contacted an attorney. (*See* Second Am. Compl. [89] ¶¶ 70, 79.) Defendants assert that nsist that Nawara was being referred for an FFD exam and that the HIPAA forms were a required part of that process.

Plaintiff Nawara did not attach the HIPAA forms to his Complaint, but copies of the two forms appear as exhibits to Defendants' Memorandum in Support of their Motion to Dismiss [104].[4] One form, the "HIPAA Authorization for Disclosure of Protected Health Information" ("Disclosure Form"), appears as an attachment to an email sent by Nawara's then-attorney, Dana Kurtz, to Reierson, Shelby, and Peter Kramer, whom Plaintiff identifies as "Defendants' counsel." (Ex. 2 to Dfs.' Memo. in Support of MTD [104-1], at PageID # 1312; Second. Am. Compl. ¶ 70.) The top of the Disclosure Form provides: "I, _____, authorize the Independent medical exam or fitness for duty exam physician to disclose protected health information ('PHI') about me as described below in this Authorization." (Ex. 2 to Defendants' Memorandum in Support of Motion to Dismiss [104-1], at PageID # 1312.) The form goes on to authorize disclosure and review of

---

[3] Plaintiff alleges that "Defendant Dart, through Defendants Burke, Shelby, and Reierson, ordered Plaintiff to sign blank HIPAA release forms for his medical records," (Second Am. Compl. [89] ¶ 49), and that "Defendant Dart, through Defendants Burke, Shelby, and Reierson, told Plaintiff that he could not return to work until he signed the HIPAA release forms." (*Id.* at ¶ 50.)

[4] Plaintiff objects to the court's consideration of these documents, but does not suggest the forms are incorrect or falsified in any way. His objection to making them part of the record on this ruling is overruled, as explained in the discussion section below.

"all medical records and information . . . that relates to my fitness for duty exam" and to permit "[a]ny health care provider or facility . . . [to] disclose the above-described information to a Disability Management Case Manager, for Cook County, employed by CorVel Corporation." (*Id.*) The form also states that the undersigned "understand[s] that the information disclosed pursuant to this authorization may no longer be protected by the federal health privacy rule . . . and may be subject to re-disclosure by the recipient." (*Id.*) In total, the Disclosure Form states three times that it relates to a fitness for duty exam. (Ex. 2 to Defendants' Memorandum in Support of Motion to Dismiss [104-1], at PageID # 1312.)

The second form is much broader in scope than the Disclosure Form. It appears in Exhibit 3 to Defendants' Memorandum in Support of their Motion to Dismiss [104], as one of two attachments to a letter from Rebecca Reierson to Nawara dated February 28, 2017. The first attachment is the Disclosure Form described above. The second is an "Authorization to Release Healthcare Information" form ("Release Form"). (Ex. 3 to Dfs.' Memo. in Support of MTD [104-1], at PageID # 1316.) The Release Form is a typical HIPAA form, with spaces for the person who completes it to provide a name, date of birth, and Social Security number. CCSO's address is identified on the form as the party to receive released records, but there is a blank space ermitting the patient to designate the person/parties who are authorized to release information to CCSO. Where the form states, "This request and authorization applies to: . . . ," the person completing it is given three options: He or she may (1) describe specific information pertaining to particular "treatment, condition, or dates"; (2) permit the release of all healthcare information; or (3) describe some "other" scope of the authorization. On the form sent from Reierson to Nawara, the "[a]ll healthcare information" box is pre-selected. (*Id.*)

Plaintiff Nawara never signed these forms. As a result, he alleges, he was "denied special assignments, transfers to more desirable units, and training, as well as promotional opportunities."

(Second Am. Compl. [89] ¶ 69.)[5]  Nawara did, at some point, see "an independent doctor and obtain[ ] a report" that found him fit for duty with no restrictions.  (Second Am. Compl. [89] ¶¶ 77–78.)  He provided Defendants[6] with a copy of the report on March 17, 2017, but Defendants insisted that he needed to sign their HIPAA forms.  (Id. at ¶¶ 79–80.)  After Nawara stood by his refusal to sign the forms, he was placed on unpaid leave,[7] effective retroactively to November 18, 2016.  (Id. at ¶¶ 65, 93.)  While he was on unpaid leave, Nawara used up all of his personal time off.  (Id. at ¶¶ 40, 74.)

Nawara eventually underwent an FFD exam by CCSO's chosen doctor in August 2017, after he "agreed to and signed a revised HIPAA release that ensured his medical records did not go to the Sheriff's Office or Sheriff's personnel."  (Id. at ¶ 91(b).)  On September 16, 2017, the "FFD examiner issued a report" finding Nawara "fit to return to duty, without restrictions," and he was released from unpaid leave on September 27.  (Id. at ¶¶ 92–93.)  He alleges that the retaliation against him has continued since he returned to work.  "On or about January 29, 2018, Plaintiff received notice that he was being ordered to appear before OPR as an accused based

---

[5]     Plaintiff makes similar allegations about being denied opportunities in two other paragraphs in his Complaint.  (See Second Am. Compl. [89] ¶ 114 ("Plaintiff has and continues to suffer irreparable harm as a result of Defendants [sic] conduct and refusal to return him back to work without valid or legal justification, including but not limited to running out of personal time, being denied training, lateral transfers to special assignments, and promotional opportunities for advancement of his career, and being threatened with disciplinary action and charges seeking his termination."); id. at ¶ 122 ("Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by denying him promotions, denying him training, denying him special assignments, refusing to return him to work, and subjecting him to other adverse terms and conditions of his employment in violation of the First Amendment and treating him in an overall disparate manner.").)

[6]     The Second Amended Complaint does not specify to which of the Defendants he sent the letter.  It simply states that he "provided the report to Defendants."  (Second Am. Compl. at ¶ 78.)

[7]     Defendants argue that Nawara was not suspended, but that he took an unauthorized unpaid absence.  (Dfs.' Memo. in Support of MTD [104], at 27.)  The court will refer to his unpaid time away for work as an unpaid leave, without attaching any legal significance to the term.

on Defendant Jones-Hayes making false allegations against him in regards to the incident on September 28, 2016." (*Id.* at ¶ 98.)[8]  He further alleges that neither OPR nor CCSO has responded to the complaint he filed against Defendant Jones-Hayes.  (*Id.* at ¶ 98.)

Plaintiff filed a charge of discrimination with the EEOC on March 24, 2017.  That charge noted a "cause of discrimination based on" retaliation and disability.  (*See* Ex. 6 to Dfs.' Memo. in Supp. of MTD [104], at PageID ## 1327, 1333.)  He filed this lawsuit on March 29, 2017.  (Second Am. Compl. [89] ¶ 81.)  Count I of Plaintiff's Second Amended Complaint alleges that Cook County and the CCSO violated § 12112(d)(4) of the ADA when they requested that Nawara sign HIPAA forms providing them authorization to request "all healthcare information" for Nawara.  42 U.S.C. § 12112(d)(4).  (Ex. 3 to Df.'s MTD [104-1], at PageID # 1316.)  Count II charges all Defendants with violation of the First Amendment, pursuant to 42 U.S.C. §§ 1983 and 1988 for allegedly requesting the HIPAA releases in retaliation for Plaintiff's participation in *Burruss*.  Count III alleges that the CCSO violated Title VII by requesting the HIPAA release in retaliation for Nawara's interaction with Jones-Hayes, in violation of Title VII, 42 U.S.C. § 2000e-3.  Count IV charges all Defendants with violation of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/15.  Finally, Count V seeks a declaratory judgment against all Defendants for violation of the Cook County Sheriff's Merit Board Act, 55 Ill. Comp. Stat. 5/3-7001 et seq., and for the violation of both the Illinois and United States Constitutions.  Defendants now move to dismiss all counts against all Defendants.

## DISCUSSION

I.    **Legal Standard**

On a motion to dismiss, the court must determine whether a complaint "state[s] a claim to relief that is plausible on its face."  *Kanter v. Barr*, No. 18-1478, 2019 WL 1219564, ___ F.3d ___,

---

[8]      The Second Amended Complaint does not say whether Nawara ever did, in fact, appear in front of the OPR.

at *3 (7th Cir. Mar. 15, 2019) (quoting *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Forgue*, 873 F.3d at 966 (quoting *Iqbal*, 556 U.S. at 678). In considering a motion to dismiss, the court "construe[s] the second amended complaint in a light most favorable to [Nawara]." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019).

## II.     Claims against Sheriff Dart

This court dismissed Plaintiff's claims against Sheriff Dart in his individual capacity on September 19, 2017. (*See* Minute Entry [39] (granting in part and denying in part Defendants' motion to dismiss the original complaint); Transcript [52], at 8:6–9 (confirming that Dart is dismissed in his individual capacity).) The Second Amended Complaint makes no new allegations against Sheriff Dart. All claims against him in his individual capacity are again dismissed. Plaintiff also alleges that Sherriff Dart is liable, in his official capacity, for Constitutional violations. A successful claim against Dart in his official capacity would simply render Defendant Cook County liable. *Estate of Sims*, 506 F.3d at 514. Thus, the claim against Dart in his official capacity is redundant.

## III.    The Court's Consideration of Documents Attached to Defendants' Motion to Dismiss

"A plaintiff is under no obligation to attach to her complaint documents upon which her action is based." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Thus, when a Defendant attaches documents to a 12(b)(6) motion to dismiss, the court typically "must either convert the 12(b)(6) motion into a motion for summary judgment under [FED. R. CIV. P.] 56 and proceed in accordance with the latter rule, or exclude the documents

attached to the motion to dismiss and continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Certain circumstances, however, permit a defendant to introduce documents for the court's consideration through its motion to dismiss. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *See Venture*, 987 F.2d at 431. "Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (upholding a district court's consideration of an Agreement quoted in, but not attached to, a complaint, when that Agreement was attached to Defendants' motion to dismiss). Here, Defendants attach a series of correspondence between Nawara's counsel, Reierson, Shelby, and Peter Kramer.[9] Attached to that correspondence are two medical release forms—the Disclosure Form and the Release Forms described above. (*See* Exs. 1–5 to Dfs.' Memo. in Supp. of MTD [104-1].) Defendants also attach Nawara's EEOC Charge of Discrimination, his Amended Charge of Discrimination, and the internal complaint that Nawara filed with CCSO regarding the incident with Jones-Hayes. (*See* Exs. 6–7 to Dfs.' Memo. in Supp. of MTD [104-1].) The court concludes, contrary to Plaintiff's assertions, that it is appropriate to consider these exhibits during the motion to dismiss stage.

In *Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963 (7th Cir. 2013), the Seventh Circuit upheld the district court's consideration of a document attached to a defendant's motion to dismiss. In that case, an at-will employee was terminated from his job. In return for twenty-five weeks of severance pay, the employee "agreed to sign a release" discharging the employer from "all liability for any claims or potential claims relating to [the plaintiff's] employment." *Id.* at 966. He later sued the employer, referencing the release in his complaint without attaching it as an exhibit. The defendant then attached a copy of the release to its motion to dismiss, and the district court "relied heavily on the text of the release" when it granted the motion to dismiss. *Id.* at 975.

---

[9]     Kramer appears to have been the County's counsel at the time.

The Seventh Circuit held that "because [the Plaintiff employee's] complaint repeatedly referenced the release, it was proper for the district court to consider the text of the release in dismissing the case." *Id.*

The Seventh Circuit came to a different conclusion on a different set of facts in *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). There, the Seventh Circuit upheld a district court's decision *not* to consider a defendant's attachments to a motion to dismiss. The Plaintiff in *Levenstein* had attached documents to his complaint filed against three officials of his prior University-employer. The defendants responded by filing a motion to dismiss, to which they attached "a raft of other documents." *Id.* The Seventh Circuit explained that the exception permitting a district court to consider new documents on a motion to dismiss is a "narrow" one, "aimed at cases interpreting, for example, a contract," and "not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein*, 164 F.3d at 347.

This case is much more similar to *Yassan*. The medical disclosure forms are repeatedly referred to by Nawara in his Complaint; he makes allegations about the contents of those releases, calling them "blank," and they lie at the heart of his allegations. The "formal complaint" he filed with CCSO also forms a central part of this case, and Plaintiff himself quotes from and cites the complaint in his response brief. (Second Am. Compl. [89] ¶ 42; Pl.'s Resp. to Dfs.' MTD [154], at 20.) The charge and amended charge Plaintiff filed with the EEOC are less-central to Plaintiff's claim, but he again appears to forego his opposition to those exhibits when he cites the EEOC Charge document in his brief. (*See* Pl.'s Resp. to Dfs.' MTD [154], at 21.). On these grounds, the court will consider the contents of the medical releases, Nawara's formal complaint, and his EEOC charges, without converting this motion to one for summary judgment. The court declines to consider the contents of the correspondence attached to Defendants' brief, however, because the correspondence between the parties is not central to Nawara's claims.

## IV.    ADA

The Americans with Disabilities Act of 1990 § 12112(d)(4) prohibits employers subject to the ADA from inquiring about employees' medical histories, except in certain circumstances:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A).  An employer "may make inquiries into the ability of an employee to perform job-related functions."  *Id.* at § 12112(d)(4)(B).  These regulations regarding requests for information protect "[a]ll employees, regardless of whether they have a qualifying disability under the ADA."  *Wright v. Illinois Dep't of Children & Family Servs.*, 798 F.3d 513, 522 (7th Cir. 2015). Plaintiff alleges that Defendants Cook County and CCSO violated the ADA when they required him to sign the HIPAA medical releases.

Defendants argue that the signing of HIPAA forms is not a medical examination or inquiry under the terms of § 12112(d)(4), and therefore falls outside of the scope of the ADA.  The court agrees that the two forms, themselves, do not constitute an examination—they do not require, nor are they required for, Plaintiff to attend any appointment or to submit to any testing.  The court does consider the forms to constitute an inquiry within the meaning of § 12112(d)(4), however. CCSO required the forms in order for Nawara to "go forward" with his FFD examination.  (Df.'s Memo. in Support of MTD [104], at 3.  *See id.* at 8 (noting that "[t]he HIPAA release form Nawara was asked to execute states on its face that *it is part of the FFD process*") (emphasis added).) Without the broad medical releases signed, Plaintiff Nawara was placed on unpaid leave. (Second Am. Compl. [89] ¶ 63; Df.'s Memo. in Support of MTD [104], at 23.)  Thus, the court concludes that the HIPAA forms were part of CCSO's inquiry into Plaintiff Nawara's fitness for duty, and therefore fall within the scope of the ADA.

Defendants cite only one case in support of their argument against this finding, and that case is unpersuasive.  *See Green v. Joy Cone Co.*, 278 F. Supp. 2d 526, 540 (W.D. Pa. 2003).

In *Green*, a job applicant signed a medical release form as part of a job application process. She was not hired, and she sued, arguing that the medical release authorization violated the ADA. *Id.* at 530. The statutory provisions at issue there differ slightly from those relevant in this case: Permissible medical examinations and inquiries for job applicants and job offerees are covered by § 12112(d)(2)–(3), which are not at issue here, while examinations and inquiries for current employees are governed by (d)(4). Section 12112(d)(2) prohibits employers from conducting medical examinations or making inquiries about job applicants' disabilities unless the inquiry relates to "the ability of an applicant to perform job-related functions"; this language tracks (d)(4), but (d)(2) does not include the business necessity defense of (d)(4). Section 12112(d)(3) provides that employers "may require a medical examination after an offer of employment has been made to a job applicant" only if "all entering employees are subjected to such an examination regardless of disability," and if a host of other privacy measures are followed.

> The Western District of Pennsylvania concluded that the employer's Release Form
>
> does not come under the definition of a prohibited medical inquiry, as it does not ask any questions about an individual's medical history or her limitations. . . . there is *no* evidence that Joy Cone intends to uncover information about an individual's disability or takes an individual's disability into consideration at the pre-offer stage.

*Green*, 278 F. Supp. 2d at 540 (emphasis in original). In the case before this court, however, the employer's medical inquiry was directed at an employee, not a job applicant. While all job applicants may inevitably have to undergo a medical examination if offered the job, *see* 42 U.S.C. § 12112(d)(3), Nawara was individually suspected of having a disability that impacted his ability to perform his job (thus, the referral for the FFD examination), and he was required to fill out broad medical releases on the basis of his employer's perception. The court thus finds *Green* distinguishable and determines that medical releases given to an employee, upon an employer's specific suspicion of disability, and without which an employee may not return to work, are covered by the ADA § 12112(d)(4).

To satisfy the ADA's statutory restrictions on an "inquiry," see § 12112(d)(4)(A), (B), the broad HIPAA forms that Cook County required Nawara to sign would have to be either "job related and consistent with business necessity," or inquiries "into the ability of an employee to perform job-related functions." Defendants do not specify whether they consider their forms to be permissible under sub-section (A) or (B). Instead, they simply insist that their inquiry was "permissible," failing to articulate how a request of all of Nawara's medical records would be permissible under a statute that only permits limited medical inquiries. Defendants' citation to New York district court cases does little to bolster their permissibility argument. They cite *Medlin v. Rome Strip Steel Co.*, 294 F. Supp. 2d 279, 294 (N.D.N.Y. 2003) for the proposition that "Section 12112(d) provides only for the release of confidential medical information to supervisors or managers involved in the decisionmaking process with respect to a particular employee." *Id.* That language provide no guidance in this case. The question in *Medlin* was whether confidential medical information obtained by an employer through an FFD process was wrongly disclosed to the plaintiff's co-workers, after the plaintiff had execited a limited "release authorizing the disclosure of information generated as a result of the [FFD]." *Id.*[10] In this case, there are no debates about *who* was entitled to receive of Plaintiff Nawara's medical records; rather, the question is whether anyone, at CCSO or otherwise, was entitled under the ADA to request his entire medical history for purposes of an FFD examination. *Medlin* does not help answer that question.

Similarly, *Grassel v. Dep't of Educ. of City of New York*, No. 12-CV-1016, 2017 WL 1051115, at *9 (E.D.N.Y. Mar. 20, 2017) is unpersuasive. Defendants' own parenthetical summary of that case—"medical information form used as part of fitness for duty psychological

---

[10] The *Medlin* court ultimately denied the defendant-employer's motion for summary judgment on the ADA claim, finding that there were factual questions on whether there was any disclosure of the employee's medical information and whether the plaintiff's co-workers were entitled to learn that information under § 12112(d).

examination did not violate § 12112(d)(4)"—is misleading. (Df.'s Memo. in Support of MTD [104], at 7.) The information form in *Grassel* was a questionnaire for the plaintiff to complete, covering such topics as medications, accidents, and family history. *Grassel*, 2017 WL 1051115 at *9. The plaintiff, a teacher, had been involved in multiple troubling incidents at work before the Department of Education of the City of New York asked him to submit to a psychological exam, of which the questionnaire was part, and he challenged the questionnaire as being insufficiently tailored to determine whether he was fit for duty. *Id.* The district court concluded that the questionnaire "was a reasonably effective method of assessing [the plaintiff's] capacity to teach," and that the Department of Education "had a vital business necessity to determine [the teacher's] fitness to perform his duties." *Grassel*, 2017 WL 1051115 at *10. Unlike *Grassel*, the forms in question in this case are broad medical release forms that are untailored for any specific type of fitness for duty exam. And, there is no indication in *Grassel* that the teacher was ever required to release any medical records to the defendant itself. Finally, the defendants there argued that the psychological examination was a business necessity. Defendants in this case have not articulated how or why such a broad HIPAA form is a business necessity.

Defendants' final arguments to dismiss the ADA claims are unconvincing. They argue that the medical releases need not have been "job related and consistent with business necessity" because the FFD for which they were requested was itself job related.[11] 42 U.S.C. §12112(d)(4)(A), (B). The fact that the FFD was job-related, however, does not make an inquiry into Nawara's entire medical past job-related, nor does it cabin the Release Form to FFD-related medical records. Defendants also claim that Nawara knew he was being referred for an FFD, and that therefore the HIPAA forms were permissible. Nawara's knowledge of the purpose of those release forms is not critical to his ADA claim, since he takes issue with the breadth of the

---

[11] Plaintiff Nawara does not contest the propriety of the FFD itself—he ultimately submitted to, and passed, two separate FFD examinations: one by an independent doctor, and one by the CCSO-authorized examiner.

forms. Defendants finally argue that those HIPAA releases were not, in fact, blank. (Ex. 3 to Df.'s Memo. in Support of MTD [104-1], at PageID # 1316.) This argument hardly creates a defense; from the court's review of the Release Form, it appears to seek "[a]ll healthcare information" from any medical provider, without specifying any particular time-frame or medical condition about which Cook County sought information, and would effectively permit Defendants access to a wealth of information about Nawara unrelated to his fitness for duty. (*Id.*) The fact that Nawara referred to these forms as "blank" does not defeat his ADA claim. Defendants' motion to dismiss Plaintiff's ADA claim is denied.

## V.    Retaliation

### A.    Section 1983 First Amendment Retaliation

Section 1983 creates a cause of action for violations of a person's constitutional rights. 42 U.S.C. § 1983. "In order to state a claim pursuant 42 U.S.C. § 1983, [a] plaintiff[ ] must allege that a government official, acting under color of state law, deprived them of a right secured by the Constitution or laws of the United States." *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). A plaintiff may allege a § 1983 claim against an official acting in her official capacity or her individual capacity. A plaintiff may also bring a § 1983 claim against a municipality, but only if the complaint "allege[s] that an official policy or custom not only caused [a] constitutional violation, but was 'the moving force' behind it." *Estate of Sims*, 506 F.3d at 514 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Plaintiff Nawara alleges that he was asked to sign HIPAA forms in retaliation for his political opposition to Sheriff Dart in the 2006 primary election and for his subsequent participation in the *Burruss* litigation, all in violation of his First Amendment rights.[12] Nawara also claims that he was retaliatorily suspended, denied promotions,

---

[12]    Nawara does not contend that he suffered retaliation in violation of the First Amendment as a result of the complaint he filed against Jones-Hayes. (*See* Second Am. Compl. [89] ¶ 120 ("The conduct of Defendants, *specifically retaliating against employees who opposed*

training, and special assignments, and that he suffered "other adverse terms and conditions of [ ] employment." (*Id.* at ¶ 122.) He brings this claim against Cook County, the CCSO, Sherriff Dart in his official capacity, and Jones-Hayes, Burke, Reierson, and Shelby in their individual capacities.

The First Amendment protects a public employee's right to engage in certain types of speech, including, in certain circumstances, speech as "a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). It also protects public employees from "be[ing] made to suffer adverse job actions because of their political beliefs," unless a defendant "can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004). Individuals may not be retaliated against for engaging in protected First Amendment speech. "To state a First Amendment retaliation claim, [a plaintiff] must plausibly allege that (1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to retaliate." *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Defendants argue that Plaintiff Nawara has failed to properly plead the third requirement of the First Amendment retaliation test—that is, they claim that Nawara has failed to allege sufficient facts to support a plausible inference that his participation in the *Burruss* litigation was a motivating factor behind Defendants' alleged retaliation. The court agrees.[13] Plaintiff fails to

_____

the Sheriff politically*, engaged in protected conduct by complaining about political discrimination and retaliation, and denying employees the right to be free from political retaliation, was and became the custom and practice of the Sheriff's Office.") (emphasis added); *id.* at ¶ 125 ("Defendants are aware that it is unlawful to retaliate or discriminate against someone because of their political affiliation and/or perceived political affiliation.").)

[13]     Because the court determines that Plaintiff fails to adequately plead an actionable constitutional violation, it need not exhaust its discussion of the County's *Monell* liability. "[I]f no

allege that any Defendants knew about the *Burruss* case or about Nawara's political activity leading up to that case. Drawing reasonable inferences in favor of the Plaintiff, Sherriff Dart, who was named as a Defendant in *Burrus*, knew about the case and also about Nawara's status as one of the Plaintiffs. But the Second Amended Complaint contains little more than formulaic recitations linking Dart to the alleged retaliation against Nawara. (*See* Second Am. Compl. [89] ¶ 49 ("Defendant Dart, through Defendants Burke, Shelby, and Reierson, ordered Plaintiff to sign blank HIPAA release forms for his medical records."); *id.* at ¶ 50 ("Defendant Dart, through Defendants Burke, Shelby, and Reierson, told Plaintiff that he could not return to work until he signed the HIPAA release forms.").) All other mentions of Dart in the Complaint deal with Dart's role in failing to fire Scott Kurtovich, the alleged architect of the political retaliation at issue in *Burruss*, after that litigation was complete.[14] But Plaintiff cites no legal support to establish that Dart's failure to fire Kurtovich constitutes retaliation against Nawara. Kurtovich is not named as a Defendant in this suit, and there is no allegation that Nawara was required to undergo any training or supervision from Kurtovich, or indeed, have any contact with Kurtovich since the *Burruss* litigation ended. Thus, the court fails to see how Dart's interactions with Kurtovich would establish that Dart took any retaliatory action against Plaintiff. With respect to the remaining individual Defendants, the court cannot infer that they retaliated for events of which Nawara himself has not alleged they had knowledge.

Without any direct allegations that Defendants retaliated against Nawara on the basis of his protected First Amendment activity, Plaintiff next relies on the timing between *Burruss* and the

---

constitutional violation occurred in the first place, a *Monell* claim cannot be supported." *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014)

[14] Plaintiff alleges that Dart "promoted Scott Kurtovich to be the Director over the Training Academy and in charge of training, including training on the Sheriff's policy on political discrimination and retaliation in the workplace," despite the finding of liability against Kurtovich in *Burruss*. (*Id.* at 105.) This promotion came despite "Defendant Dart's own 'written policy' that political retaliation will not be tolerated in the Sheriff's Office and will be subject to termination." (*Id.* at ¶ 130.)

alleged retaliation to establish an inference of retaliation. This court entered its order granting in part and denying in part the *Burruss* defendants' motion for judgment notwithstanding the verdict on July 15, 2013; after settlement negotiations, the court terminated the case on March 21, 2014. Nawara construes the period between *Burruss* and the beginning of Defendants' retaliation as Defendants "wait[ing] in the weeds" for the perfect moment to retaliate. *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 n.6 (7th Cir. 1996).[15] Plaintiff's reliance on *Veprinsky* case comes from a partial quotation of a footnote. (*See* Pl.'s Resp. to Dfs.' MTD [154], at 15–16 ("If the plaintiff has evidence from which one may reasonably infer that her former employer waited in the weeds for five or ten years and then retaliated against her for filing an EEOC charge, we see no difficulty with allowing the case to go forward." (quoting *Veprinsky*, 87 F.3d at 891 n.6).). The more-complete quote, however, states:

> If the plaintiff has evidence from which one may reasonably infer that her former employer waited in the weeds for five or ten years and then retaliated against her for filing an EEOC charge, we see no difficulty with allowing the case to go forward. *If, on the other hand, the plaintiff has no proof of a nexus between her protected activity and the employer's purported act of belated retaliation, we are confident that her case will be disposed of in short order.*

*Veprinsky*, 87 F.3d at 891 n.6. (emphasis added). That is precisely the circumstance in which Nawara finds himself here. He alleges no well-pleaded facts that would allow the court to infer that any individual Defendants knew of his prior protected speech, nor that they suddenly decided to begin retaliating against him two and a half years after the termination of *Burruss.* Regardless of the time that passed between the end of *Burruss* and the beginning of the alleged retaliation,

---

[15] *Veprinsky* is a Title VII case, not a First Amendment retaliation case. Though Plaintiff does not so explain, the test for First Amendment retaliation is similar to a method for establishing Title VII retaliation. *See Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 642 (7th Cir. 2013) (explaining that, in order to establish Title VII retaliation, "a plaintiff must offer evidence: (1) that he engaged in protected activity, (2) that he was subjected to an adverse employment action, and (3) that there was a causal link between the protected activity and the employment action," and citing to both a Title VII retaliation case and a First Amendment retaliation case for support.) (citing *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir.2012) (Title VII retaliation); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir.2012) (First Amendment retaliation)).

the court cannot, without more, plausibly infer that Defendants' required him to infer HIPAA forms, denied him promotions, suspended him, or took any other adverse action against him because of his prior protected First Amendment activities.

Finally, Nawara argues that "far more than just suspicious timing creates the mosaic of evidence of Defendants' retaliation." (Pl.'s Resp. to Dfs.' MTD [154], at 17.) He points to "numerous examples of Defendants retaliating against the other *Burruss* plaintiffs, former members of SORT, and those that supported Sheriff Dart's political opponents. This alleged circumstantial evidence is documented in" six Northern District of Illinois cases, Nawara asserts, listing those cases for the first time in his responsive brief. (Pl.'s Resp. to Dfs.' MTD [154], at 16 (collecting cases).) Plaintiff's complaint does not so much cite, quote, or identify those cases, let alone provide information showing their substantive merit. Mentioning them in a reply memorandum does not constitute adequate notice to Defendants of the grounds for Plaintiff's claim. Further, Plaintiff's supposition that the court will track down and analyze each of those cases in search of "circumstantial evidence" that supports Nawara's claim misapprehends the court's role. "It is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996). Lastly, Plaintiff points to the HIPAA releases, along with a single vague statement by Defendant Burke recounted in Nawara's Complaint (Second Am. Compl. [89] ¶ 51),[16] and a statement by Defendant Reierson—not contained in the Complaint, but documented in an exhibit to Defendants' motion to file excess pages on an issue unrelated to this

---

[16]    That paragraph reads: "As of [the] meeting on November 18, 2016, and according to Defendant Matthew Burke, no decision had been made as to whether or not Defendants were going to order Plaintiff for a fitness for duty examination. Defendant Burke stated that he requested Shelby, and Reierson 'meet with Officer Nawara and determine whether a fitness for duty evaluation was appropriate.'" (Second Am. Compl. [89] ¶ 51.)

motion to dismiss.[17] These are, Plaintiff asserts, "ambiguous written statements" that support an inference of causation. (Pl.'s Resp. to Dfs.' MTD [154], at 16–17 (citing Reierson Decl., Ex. 4 to Dfs' Motion for Leave to File Memo. in Excess of Fifteen Pages in Supp. of Dfs.' Motion to Disqualify Counsel for Nawara [78-1], at PageID # 499).) But the Burke statement, at best, suggests that Shelby and Reierson called Nawara into a meeting in November 2016 to determine whether he should be referred for an FFD. And Reierson's statement merely echoes Burke's. Taken in combination with the HIPAA forms, these three "ambiguous statements" do not lead to a plausible inference that Nawara was retaliated against for his involvement in *Burruss.* Thus, Plaintiff fails to properly plead that his protected speech was a motivating factor in Defendant's alleged retaliation against him. Defendants' motion to dismiss Count II is granted as to all Defendants.

### B.   Title VII Retaliation

Plaintiff next alleges that the CCSO "subjected [him] to retaliatory treatment in retaliation for his complaints about Defendant Jones-Hayes' assault and battery of him," in violation of Title VII, 42 U.S.C. § 2000e-3. (Second Am. Compl ¶ 35.) Title VII prohibits an employer from "discriminating against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." 42 U.S.C. § 2000e-3(a). To plead a Title VII retaliation claim, a Plaintiff must establish that he was retaliated against because he "engage[d] in a[ ] statutorily-protected activity." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018). "Statutorily-protected

---

[17]    Reierson's Declaration states: "Prior to speaking with Superintendent Jones-Hayes and Mr. Nawara, I did not believe there was enough information to refer Mr. Nawara to CorVel for a FFD evaluation and reported as much to [my supervisor] Ms. Williams." (Pl.'s Resp. to Dfs.' MTD [154], at 16–17 (citing Reierson Decl., Ex. 4 to Dfs' Motion for Leave to File Memo. in Excess of Fifteen Pages in Supp. of Dfs.' Motion to Disqualify Counsel for Nawara [78-1], at PageID # 501).)

activity 'requires more than simply a complaint about some situation at work, no matter how valid the complaint might be.' . . . Rather, 'the complaint must indicate [that] discrimination occurred because of sex, race, national origin, or some other protected class.'" *Skiba*, 884 F.3d at 718 (quoting *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)).

Defendants argue that Nawara has not pleaded that he engaged in any protected activity under Title VII because none of his complaints about Jones-Hayes accused her of harassing or assaulting him on the basis of his membership in a protected class. (Dfs.' Memo. in Support of MTD [104], at 19; Dfs.' Reply Memo. in Supp. of MTD [170], at 23.) Plaintiff responds by re-casting the allegations in his Second Amended Complaint as allegations of sexual harassment, or as retaliation on the basis of sex. (Pl.'s Resp. to Dfs.' MTD [154], at 20 ("Plaintiff, a male employee, was harassed by Defendant Jones-Hayes, a female supervisor, and assaulted, inappropriately touched, demeaned, and embarrassed in violation of Title VII. Due to his supervisor's inappropriate contact with him, Plaintiff Nawara filed a 'Discrimination/Harassment/ Sexual harassment Complaint Form' with OPR documenting the inappropriate contact by his female supervisor.") (citing Ex. 7 to Dfs.' Memo. in Support of MTD [120]).) Actionable Title VII sexual harassment "arises when the [alleged] conduct has 'the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment.'" *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 657–58 (7th Cir. 2001) (quoting *Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1143 (7th Cir. 2001)). "[T]he conduct at issue must be sufficiently severe or pervasive that a reasonable person would find it hostile and that the victim subjectively sees it as abusive." *Hertzberg*, 261 F.3d at 657–58. The EEOC further explains that actionable "[h]arassment on the basis of sex" includes:

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual,

or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11.

The Second Amended Complaint contains several references to Nawara's September 28, 2016 interaction with Jones-Hayes, and to his subsequent complaints. None of those assertions give rise to a plausible inference that he complained to CCSO about sexual harassment at the hands of Jones-Hayes, nor about her berating him on the basis of his sex. Nawara alleges in his Second Amended Complaint that, on September 28, "Defendant Jones-Hayes (female) responded [to the scene] and in a very insulting, provoking and demeaning manner, hit Plaintiff in his chest with her finger several times." (Second Am. Compl. [89] ¶ 33.) She again "hit Plaintiff in the chest with her finger several times, at which time Plaintiff took a step back, feeling trapped, and told her keep her hands off of him, and that it was very unprofessional." (*Id.* at ¶ 35.) Nawara "complained about Defendant Jones-Hayes' conduct towards him to the other employees, including the sergeant that was present" at the time of the incident. (*Id.* at ¶ 39.) "On October 13, 2016, Plaintiff filed a formal complaint with his supervisor regarding Defendant Jones-Hayes' harassment and assault and battery of him." (*Id.* at ¶ 42.) Nawara alleges that he has since been "singled [ ] out because he complained about Defendant Jones-Hayes' assault and battery of him," and that Jones-Hayes had "ma[de] false allegations against him in regards to the incident on September 28, 2016." (*Id.* at ¶¶ 87, 98.) Finally, he notes that OPR has not responded to his "complaints of harassment and retaliation against him by Defendant Jones-Hayes." (*Id.* at ¶ 99.)

Drawing all reasonable inferences in favor of Nawara, no assertions in the Second Amended Complaint allow the court to infer that Nawara submitted a complaint against Jones-Hayes because she had sexually harassed him. His reference to her sex ("female") and the fact that she poked him in the chest do not give rise to any inference that he submitted a complaint about her for sexual harassment or sex-based discrimination. His EEOC filing corroborates as much: the EEOC filing form provides nine checkboxes providing options for a claimant to describe

22

their "cause of discrimination." Those options include race, color, sex, religion, national origin, age, retaliation, disability, and other. Plaintiff's Charge and Amended Charge both select retaliation and disability, leaving the box for sex unchecked. (*See* Ex. 6 to Dfs.' Memo. in Supp. of MTD [104].) Because Plaintiff has not alleged that he was retaliated against for complaining about harassment based on his membership in a protected class, Defendants' motion to dismiss Count III is granted.

## VI. Illinois Whistleblower Act, 740 ILL. COMP. STAT. 174/15

The Illinois Whistleblower Act, 740 ILL. COMP. STAT. 174/15 ("Whistleblower Act") prohibits an employer from "retaliat[ing] against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." *Id.* at 174/15(a). The Act also prohibits retaliation against an employee who "disclos[es] information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." *Id.* at 174/15(b). Plaintiff asserts that all Defendants have violated the Whistleblower Act by retaliating against him for his participation in *Burruss*, and for his "complain[ts] that forcing him to sign a HIPAA release was unlawful."[18] (Second Am. Compl. [89] § 141.)

The court believes Plaintiff's claim based on *Burruss* may fall within the scope of § 15(a). Defendants, however, "assum[e] [that] Nawara's participation in the *Burruss* litigation falls under the protection of either 740 [ILL. COMP. STAT.] 174/15(b) or 740 [ILL. COMP. STAT.] 174/20."[19]

---

[18] He does not assert that the alleged retaliation resulting from his complaint about Jones-Hayes violated the Whistleblower Act.

[19] Plaintiff never mentions any whistleblower claim or retaliation claim arising under § 174/20, so the court will not address that statute here.

Plaintiff does not contest that assumption. In any case, the particular sub-section of § 15 is of no consequence here, as either sub-section by its own terms would require Plaintiff to establish a causal relation between Nawara's participation in *Burruss* and the alleged retaliation. As explained above, Nawara has failed to adequately plead that Defendants took any adverse action against him because of his activity related to *Burruss*.

On the other hand, § 15(b) appears to be the only frame of analysis under the Whistleblower Act for Plaintiff's claim based on Defendants' requirement that Plaintiff sign two HIPAA waivers. That claim could generously be construed to refer to Nawara's EEOC charge alleging Defendants violated the ADA, or it could refer to his notifying Defendants that he believed their HIPAA forms violated the ADA. "[I]n order to establish a claim under section 15(b) . . ., the employee must show: '(1) an adverse employment action by his or her employer, (2) which was in retaliation (3) for the employee's disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation.'" *Runge v. Bd. of Educ. for Cmty. Unit Sch. Dist. No. 300*, 2019 IL App (2d) 180190-U, ¶ 35 (quoting *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 15).

Defendants argue that requiring Plaintiff to sign the HIPAA forms or face unpaid leave is not an adverse employment action under the § 15(b) test. Therefore, Defendants claim, they cannot have violated the Whistleblower Act. The court is less certain. First, the court does not agree that the HIPAA forms and the FFD examination support the same analysis. Plaintiff has not argued that his referral for an FFD examination was unlawful, nor has he refused to take an FFD examination; instead, he only argues that the HIPAA forms, required as *one step* of the FFD, were unlawful under the ADA. Thus, Defendants' reliance on cases like *Freelain v. Village of Oak Park*, 888 F.3d 895, 904 (7th Cir. 2018), finding an employer's requirement for a medical exam not to be a materially adverse action, is unhelpful. There, a police department ordered an officer to undergo a psychological evaluation before returning to work, after the officer "t[ook] several weeks off due to stress-related medical symptoms." *Id.* The officer sued for retaliation in violation

of the Family and Medical Leave Act and the ADA.  *Id.*  The Seventh Circuit affirmed the district court's grant of summary judgment for the defendant on this issue, reasoning that "[a] reasonable jury could not find that the village acted unreasonably by ordering [plaintiff] to undergo a fitness for duty evaluation" under these circumstances.  *Id.*  Indeed, in *Freelain*, the court held the exam to be reasonable, but no HIPAA waivers were required by the defendant employer in order for the employee to complete the exam.

Next, Defendants argue that Plaintiff's complaint fails to establish any causal connection between Nawara's complaints about the HIPAA forms and the alleged retaliatory actions against him.  Defendants themselves, however, explain that Nawara was placed on unpaid leave *because* of his refusal to sign the HIPAA forms.  (Dfs.' Memo. in Supp. of MTD [104], at 3 ("Nawara and his attorney repeatedly were informed that Nawara's continued refusal to execute the medical release forms prevented the FFD examination from going forward, and that, as a result, his status of paid administrative leave would have to be changed to unpaid status because the leave was unauthorized.").)  Plaintiff's placement on unpaid leave closely followed his complaints about the HIPAA forms violating the ADA.  This timing is sufficient for the court to plausibly infer that Nawara suffered suspension and other alleged adverse action as a result of his protest that the HIPAA forms violated the ADA.  Defendants' motion to dismiss Count IV is granted in part and denied in part.

**VII.    The Merit Board Act, the Illinois Constitution, and the United States Constitution**

Count V of Plaintiff's Complaint asks the court to enter a declaratory judgment that Defendants violated the Merit Board Act, 55 Ill. Comp. Stat 5/3-7012, and suspended Plaintiff without a hearing in violation of Article I of the Illinois Constitution and the due process clause United States Constitution.  (Second Am. Compl [89], at ¶¶ 150, 151, 152(a).)  The damages in

this case have already accrued, and Plaintiff is back at work.[20] The court will not enter a declaratory judgment here. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) (declining to enter a declaratory judgment when "[t]here [was] no claimed continuing violation of federal law, and therefore no occasion to issue an injunction."). Instead, the court construes Plaintiff's claims under the Merit Board Act, the Illinois Constitution, and the U.S. Constitution as claims for damages.

### A. Merit Board Act

Defendants argue that the Merit Board Act, 55 ILL. COMP. STAT 5/3-7001 et seq. ("MBA") is inapplicable here. Section 3-7012 of the act provides that

> no deputy sheriff in the County Police Department, [and] no full-time deputy sheriff not employed as a county police officer or county corrections officer . . . shall be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board [formed to hear such issues under the Act].

*Id.* at § 5/3-7012. Prior to August 17, 2018, § 5/3-7011 of the MBA provided that the Sherriff could only suspend an officer as a "disciplinary measure" for "a reasonable period, not exceeding 30 days" without a Board hearing. Sheriffs—Disciplinary Proceedings—Cook County, 2018 ILL. LEGIS. SERV. P.A. 100-912 (H.B. 5303).[21] Defendants argue that Plaintiff's suspension was not disciplinary, but rather a result of his refusal to participate in the FFD process. The court

---

[20]    Plaintiff argues that his harm is ongoing because he has not yet been made whole, citing *Holder v. Illinois Dep't of Corr.*, 751 F.3d 486, 498 (7th Cir. 2014), *as corrected* (Nov. 2, 2015) for the proposition that a case or controversy exists until a Plaintiff receives make-whole relief. (Pls.' Resp. to Dfs.' MTD [154], at 25.) His citation to that case is misplaced. *Holder* did not deal with a declaratory judgment, but with a question of mootness. The Defendant had offered to pay part of Plaintiff's demand on the eve of trial. The Defendants then sought to keep the issue on which they had promised to pay from reaching trial on grounds of mootness. The Seventh Circuit found that Defendants' offer to pay was not a "full offer to pay all of what was due, but rather all of what the defendants believed was due under the defendants' theory." *Holder*, 751 F.3d at 499. Therefore, the court held that there remained a case or controversy. Here, no party here alleges that there is no longer a case or controversy. *Holder* is inapposite.

[21]    That statute was modified, effective August 17, 2018 to permit any disciplinary action but "termination or demotion" without a Board hearing. 55 ILL. COMP. STAT. ANN. 5/3-7011. The Defendants' brief, submitted on August 21, 2018, does not address this change in statute.

disagrees. Nawara's allegations give rise to a plausible inference that his suspension was discipline for his refusal to sign the CCSO's broad HIPAA waivers. (*See, for example*, Second. Am. Compl. [89] ¶ 69 (explaining that "Defendants [ ] threatened Plaintiff with disciplinary action and that charges may be brought seeking his termination" after he refused to sign the HIPAA waivers.) The fact that Nawara has not frequently used the word "discipline" in his Second Amended Complaint does not alter this conclusion, nor does Defendants' citation to *Deen v. Darosa*, 414 F.3d 731, 734–35 (7th Cir. 2005). In that case, the Seventh Circuit ruled that an officer who had been on medical leave had no property interest in reinstatement after his leave, even if staying on leave meant "the eventual exhaustion of medical leave pay and benefits." *Id.* at 734. Plaintiff Deen framed his failure to be reinstated as a termination and argued that his termination was for disciplinary reasons and not medical reasons. The court found that "Deen ha[d] not presented any evidence that the [defendant's] approach to his reinstatement from medical leave was a pretext for removing him because of misconduct." *Id.* at 735. Here, however, Plaintiff Nawara has alleged facts that allow the court to infer that his leave of absence was disciplinary. The MBA claim will not be dismissed on this ground.

Defendants make two other arguments in support of their motion to dismiss, one which the court cannot decipher, and the other which comes too late. First, they contend that Nawara fails to "alleg[e] that the Merit Board Act even applies to him," stating in a footnote: "This presumably is an attempt to avoid reference to relevant collective bargaining agreements which provide grievance procedures and remedies for an employee who feels he is wrongly being denied pay thereby limiting the availability of such agreements to Defendants on a motion to dismiss." The court cannot interpret this argument, when Defendants have mentioned neither collective bargaining agreements nor remedy exhaustion elsewhere. Second, in its reply brief [170], Defendants argue, without expounding, that the MBA lacks a private right of action. (Dfs.' Reply in Supp. of MTD [170], at 28.) While Defendants had the opportunity to raise this argument in their initial brief in support of their motion to dismiss [104], they failed to do so. The court will

not dismiss a claim on a ground on which Plaintiff has not had an opportunity to respond. Defendants' motion to dismiss Plaintiff's MBA claim is denied.

### B. Due Process

Finally, Plaintiff asserts that the MBA grants Nawara a protected property interest in his job, and that his suspension without a hearing deprived him of his due process rights under the Fourteenth Amendment to the U.S. Constitution and Article I of the Illinois Constitution. "Procedural due process in constitutional law generally involves a familiar line of inquiry: (1) is there a property or liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?" *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017).

Defendants make only one argument for the dismissal of Plaintiff's due process claims, claiming that "due process does not require more process than Nawara already received for the determination whether he was fit for duty." (Dfs.' Memo. in Supp. of MTD [104], at 29.) This "process" included what Defendants frame as an "investigat[ion] by HR and an interview wherein [Nawara] had the opportunity to address Defendants' concerns about his fitness."[22] (*Id.*) Again, Defendants rely on *Deen*, 414 F.3d, for support. That case was brought by a state police officer against the Illinois State Police ("ISP"), pursuant to the State Police Act, 20 ILL. COMP. STAT. §§ 2610/1 et seq. for Deen's alleged termination. "Under 20 [ILL. COMP. STAT.] § 2610/14, ISP officers may not be removed, demoted, or suspended except for cause, and only following the examination and hearing procedure set forth in the statute." *Deen*, 414 F.3d at 733–34. The Seventh Circuit determined that the State Police Act did not "confer[ ] [Deen] a full-fledged, constitutionally protected property interest in reinstatement to active duty, [but rather] . . . 'a property interest in being returned to the department for an opportunity to demonstrate [his] fitness

---

[22] Defendants do not attempt to frame these two steps as a Board hearing under the MBA, and nor do they claim that Nawara ever received a hearing.

for active duty.'" *Deen*, 414 F.3d at 735 (quoting *Buttitta v. Chicago*, 9 F.3d 1198, 1203 (7th Cir.1993)). *See Deen*, 414 F.3d at 735 (analyzing the process provided by the State Police Act in cases of medical leave, and determining that Deen had been given full process under the statute).

Seizing on *Deen*'s fitness for duty language, Defendants argue that Nawara, too, is limited to alleging a property interest an FFD process, and they frame Nawara as "persistently refus[ing] to use the opportunity to establish he was fit for duty." (Dfs.' Memo. in Supp. of MTD [104], at 29.) Such framing is disingenuous. Nawara did not refuse to participate in the FFD process. He had an independent doctor conduct an FFD examination, and he completed an FFD examination with the CCSO's preferred examiner after CCSO's HIPAA waiver was modified. What Nawara did refuse was CCSO's demand for broad access to his entire medical history by way of a HIPAA waiver. Also significant is the fact that in *Dean*, the plaintiff was granted a hearing in front of the ISP Medical Review Board, as required by the pertinent statute. Nawara was afforded no hearing, and Defendants simply argue that the process Nawara received was enough. Defendants' motion to dismiss Count V is denied.

## CONCLUSION

Defendants' motion to dismiss [98] is granted in part and denied in part. Defendants are directed to answer the counts that survive this ruling within 21 days. Status conference is set for May 1, 2019 at 9:00 a.m. The parties are encouraged to discuss settlement.

ENTER:

Dated:        March 28, 2019        _____
                                    REBECCA R. PALLMEYER
                                    United States District Judge