UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NAWARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 2393 |
| | ) | |
| COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities, | ) ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendant's motion for an award of sanctions [156] is granted. Because the court is uncertain about the nature and scope of the sanction to be imposed, the court will hear brief argument on those issues at the next status conference, now set for November 13, 2019.

**STATEMENT**

Plaintiff John Nawara alleges in this lawsuit that the Cook County Sheriff violated his rights under the Americans with Disabilities Act by requiring him to execute a HIPAA waiver form for purposes of a fitness-for-duty assessment. As the case progressed through discovery and motion practice, Cook County lawyers learned that Nawara's former counsel, Attorney Dana Kurtz, had also agreed to represent Karyn Williams, who was Executive Director of Human Resources for the Sheriff's Office, and who had been identified by Defendants as a person involved with ordering the fitness-for-duty referral. Kurtz's representation of Williams was obviously improper, Defendants argue. At a minimum, Defendants asserted, Kurtz's "secret representation" of Ms. Williams raised the appearance of impropriety. They moved to disqualify Ms. Kurtz, but Kurtz resisted the motion for months, suggesting that there was no conflict. On the eve of the court's ruling on the motion to disqualify, Ms. Kurtz evidently at last recognized the need to withdraw—but not before filing a sur-reply brief that, Defendants assert, improperly disclosed privileged material.

Defendants now move for sanctions. They contend that Attorney Kurtz concealed her representation of Williams improperly, and as a result of that representation, had "secret access to information held by an executive level employee" of the Sheriff at the same time that Kurtz was representing Nawara. (Motion for Sanctions [156] at 1.) They note that Nawara named as Defendants the Sheriff and two of Williams's subordinates, but not Williams—who was involved in the decisions regarding Nawara's fitness-for-duty evaluation. In resisting the motion to disqualify Attorney Kurtz, Kurtz and Williams herself filed declarations downplaying Williams's involvement in decisions concerning Nawara and access to confidential information. Materials submitted by Defendant rebut those declarations. For all of those reasons, Defendants assert,

the motion to disqualify should not have been necessary, and Cook County taxpayers should be reimbursed for the time and effort Cook Count attorneys devoted to litigating that motion. Defendants also seek restrictions on Ms. Williams's testimony and on Plaintiff's contact with Ms. Kurtz.

**An Award of Sanctions is Appropriate**

The relevant statute, 28 U.S.C. § 1927, authorizes the court to hold an attorney personally liable for "excess costs, expenses, and attorneys' fees reasonably incurred because of" the attorney's "unreasonabl[e] and vexatious[ ]" conduct.[1] Defendants here purport to challenge five aspect of Kurtz's alleged misconduct,[2] but their Section 1927 argument can be boiled down to a single, straightforward proposition: Respondent Kurtz's refusal to acknowledge an obvious conflict of interest, which was so unreasonable as to demonstrate objective bad faith, forced Movants to incur funds investigating and litigating the issue.

The conduct requirement of Section 1927 is satisfied by "objective bad faith." *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 659 (7th Cir. 2017). There is no "litmus test for determining what constitutes bad faith, though more than mere negligence is required." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013). An attorney demonstrates objective bad faith when she pursues "a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Matter of Lisse*, 921 F.3d 629, 641 (7th Cir. 2019) (quoting *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1082 (7th Cir. 2018)). Put differently, an attorney "runs afoul of § 1927" if she, for example, "(1) 'act[s] in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice'; or (2) files a claim that lacks "a plausible legal or factual basis [or] justification." *Webb v. Frawley*, 906 F.3d 569, 583 (7th Cir. 2018) (quoting *Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993)). Subjective bad faith is also sufficient to satisfy this standard, but it is not necessary. Lisse, 921 F.3d at 641.

Defendants liken this case to *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983), and *Terrebonne, Ltd. of California v. Murray*, 1 F. Supp. 2d 1050 (E.D. Cal. 1998), both of which involved the award of fees against lawyers who were disqualified due to conflicts of interest. In summary: *Analytica* held that a meritless, multi-year campaign opposing a disqualification motion demonstrated objective bad faith and justified an award of fees and expenses. *Terrebone*, although factually complex and distinguishable from this case, held that an attorney who concealed his representation of the plaintiff in order to obtain privileged information from the defendant demonstrated subjective bad faith, a requirement for an award of sanctions in the Ninth Circuit.

---

[1] The court also has inherent power to issue monetary sanctions, but this '"is a residual authority, to be exercised sparingly' and only when other rules do not provide sufficient basis for sanctions." *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 614 (7th Cir. 2006) (quoting *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 390-91 (7th Cir.2002)).

[2] Specifically, Movants write that the conduct they challenge "consists of (1) representing Ms. Williams given her executive position and relationship to this case; (2) failing to seek leave of the Court before doing so; (3) challenging the disqualification motion without a colorable legal basis to do so; (4) filing patently false declarations; and (5) filing a wholly improper and unnecessary Sur-Reply whose only real purpose was to harm the Defendants and undermine the legal rights of the CCSO." (Defs.' Motion for Sanctions [156] at 8.)

As Plaintiff and his attorney sees things, an award under Section 1927 is inappropriate so long as the attorney whose conduct is assessed had a "not frivolous" argument opposing disqualification. In support of this argument, Plaintiff cites *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013). In *Grochocinski*, the Seventh Circuit concluded the district court did not abuse its discretion in denying sanctions against an attorney whose objections to disqualification were "not frivolous." *Id.* at 799 (quoting the district court's holding). Respectfully, a holding that the district court did not abuse its discretion in denying sanctions is not tantamount to a holding that to award them would be error. In any event, *Grochocinski* does not present a standard for determining what is a non-frivolous argument against disqualification in these circumstances; to the contrary, the Seventh Circuit stated that there is "no single litmus test for determining what constitutes bad faith." *Id.*

Although Ms. Kurtz's eleventh-hour withdrawal eliminated the need for a formal ruling, there can be little doubt that this court concluded that disqualification was warranted. The conflict of interest presented here was one that a "reasonably careful attorney would have [recognized] after appropriate inquiry," *cf. Lisse*, 921 F.3d at 641, and her continued representation of Nawara under these circumstances was in objective bad faith. Under controlling authority, this court need not also find subjective bad faith. Ms. Kurtz's arguments to the contrary are unsupported by the case law.

The court concludes sanctions are warranted.

**Scope of Award Requires Further Analysis**

The precise scope of those sanctions is a more difficult question. Defendants have asked that the court award all of the fees incurred in litigating the disqualification motion, as did the courts in *Analytica* and *Terrebone*. Kurtz argues, without authority, that an award of attorneys' fees should be limited to expenses that Cook County incurred after she filed her objection to the motion for disqualification.

Defendants also ask that the court exercise its inherent authority to bar Plaintiff Nawara from conferring with Karyn Williams or calling her as a witness. Defendants argue that such a sanction is necessary because Williams has disregarded her confidentiality obligations to Cook County, has made untruthful statements to the court, and have exchanged substantial amounts of information with Ms. Kurtz. (Defs.' Mot. for Sanctions [156] at 14.)

"A district court may impose sanctions under its inherent authority 'where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (quoting *Tucker v. Williams*, 682 F.3d 654, 661–62 (7th Cir. 2012)). This inherent authority permits the court to penalize conduct that may not violate a statute or rule and to select a punishment not authorized by a statute or rule. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–50 (1991). Still, courts must be circumspect when considering using their inherent authority to impose sanctions. "Because of their very potency," the Supreme Court has said, "inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Any sanction imposed when the court resorts to its inherent powers must be "proportionate to the gravity of the offense." *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008).

In *Fuery*, 900 F.3d at 453, the Seventh Circuit upheld a district court's decision to reverse a jury verdict for plaintiff (Ms. Kurtz's client) and enter judgment for defendant, as a sanction for Mr. Kurtz's repeated violations of *in limine* rulings. In *Chamberlain Grp., Inc. v. Lear Corp.*, 270

3

F.R.D. 392, 393–94 (N.D. Ill. 2010), the district court ordered an award of fees and barred testimony from a former contractor for defendant who had anonymously provided information to the plaintiff in its patent dispute with defendant ("it is generally 'an improper litigation tactic to use a disgruntled employee to secretly obtain non-public internal business documents from an opposing party.," *id*. at 398 (quoting *Glynn v. Edo Corp*., No. JFM-07-01660, 2010 WL 3294347, at *5 (D. Md. Aug. 20, 2010)). And in *Harris Davis Rebar, L.L.C. v. Structural Iron Workers Local Union No.1, Pension Tr. Fund*, No. 17 C 6473, 2019 WL 447622, at *2 (N.D. Ill. Feb. 5, 2019), defendant's counsel received thousands of confidential and privileged documents from one of the plaintiff's former executives, conduct the court found violated ABA Model Rules of Professional Conduct 4.4(b)[3] and 4.2.[4] Judge Lee ordered the documents destroyed, barred defendant from using information derived from them, and required defendant to pay attorneys' fees associated with the sanctions motion; he declined, however, to disqualify counsel or bar defendant from calling the former executive as a witness.

The court exercised similar discretion in *Tomasian v. C.D. Peacock*, No. 09 C 5665, 2012 WL 2590493 (N.D. Ill. July 3, 2012), a case that bears resemblance to this one. In *Tomasian*, 2012 WL 2590493, at *1, an employment discrimination case, plaintiff's attorney spoke to the defendant's former HR manager and assured her he would represent her at an upcoming deposition related to the plaintiff's suit if the defendant accused her of violating an employee separation agreement. *Id*. at *2. On learning about this undisclosed assurance, defendant moved to disqualify plaintiff's counsel and bar the former manager from testifying at trial. *Id*. at *1. The court declined to disqualify plaintiff's counsel, but did so for reasons that distinguish this case: the *Tomasian* plaintiff and former HR manager had consented to the dual representation, the HR manager was not a current employee of the defendant, the attorney withdrew from that representation, and the attorney had not received any confidential information. *Id*. at *4–9. The court also declined to use its inherent powers to bar the former HR manager from testifying, saying that "[e]ven had [she] divulged confidential or privileged information to [the attorney], we fail to see . . . how this would disqualify her from providing any relevant information she might possess." *Id*. at *11.

Whatever the merit of awarding a sanction against Ms. Kurtz herself, Nawara objects to any sanction against him personally. (Pl.'s Resp. to Defs.' Mot. for Sanctions [174] at 3–6.). He contends that sanctioning him will not discourage Ms. Kurtz from engaging in future misconduct. He contends it would be unjust to bar him from conferring with Williams, who is no longer employed by the Sheriff; Rule 4.2 does not restrict engaging with former employees so long as the nothing privileged or confidential is communicated. Third, Nawara asserts that Defendant's contention that Williams has already disclosed confidential information and cannot be trusted to testify truthfully is mere speculation. Nawara also challenges any restriction on his or his attorney's contacting or communicating with Kurtz.

---

[3] Rule 4.4(b): "A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender."

[4] Rule 4.2: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

4

The circumstances in this case are troubling, and the court is uncertain whether such restrictions are necessary. The court will entertain argument on this question and on the appropriate award of attorneys fees, to be scheduled at the next status conference.

ENTER:

Dated: September 30, 2019

REBECCA R. PALLMEYER
United States District Judge