**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOHN NAWARA,

Plaintiff,

v.

COUNTY OF COOK, a unit of local Government; THOMAS DART, in his individual and official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON and WINIFRED SHELBY in their individual capacities,

Defendants.

Case No. 1:17-cv-02393

Judge Rebecca R. Pallmeyer

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY ON PLAINTIFF'S ADA CLAIMS**

Plaintiff, John Nawara ("Nawara"), pursuant to Federal Rule of Civil Procedure 56(a), moves this Honorable Court for the entry of partial summary judgment as to liability on Count I of Plaintiff's ADA claims against Cook County and the Cook County Sheriff's Office. In support of this motion, Plaintiff's submits his Local Rule 56.1(a)(3) Statement of Uncontested Facts ("Stmt."), and states:

## *I. NATURE OF THE MOTION*

This motion seeks partial summary judgment as to liability on Plaintiff's ADA claims. There is no genuine issue of material of fact and Nawara is entitled to summary judgment on this issue.

As the Court noted in its Memorandum Opinion and Order of March 28, 2018, "the question is whether anyone, at CCSO or otherwise, was entitled under the ADA to request [Nawara's] entire medical history for purposes of [a fitness for duty] examination." (3/28/19

Order, p. 13, Doc. 187). The answer is a resounding **No.**"

This Court found that "the forms in question in this case are broad medical release forms that are untailored for any specific type of fitness for duty exam." (*Id*., p. 14). The Court recognized that the ADA "only permits limited medical inquiries." (*Id*., p. 13). The Sheriff's Office violated the ADA when it required Nawara to authorize the release to the Sheriff's Office of all of his medical records and information. The Sheriff's Office cannot articulate legal justification for such a broad release that plainly violates the ADA.

## *II. SUMMARY OF UNCONTESTED FACTS*

Nawara was hired by the Sheriff's Office on September 28, 1998 and is currently employed by the Sheriff's Office (Stmt. ¶ 11). From September 28, 1998 until 2019, when he received a promotion to the position of Police Officer, Nawara was a Correctional Officer for the Cook County Department of Corrections (*Id*. ¶ 12).

On September 28, 2016, Nawara was assigned to guard detainees in the basement of Cermak Hospital at 2800 South California Avenue, Chicago, IL 60608 (*Id*. ¶ 13). Cermak Hospital is part of Cook County Jail and provides medical services to incarcerated detainees (*Id*.).

In a Complaint Register dated September 28, 2016, defendant Jones-Hayes complained about an incident involving Nawara that occurred on September 28, 2016, at 10:45 a.m. in the basement control and staging area of Cermak Hospital (*Id*. ¶ 14). Jones-Hayes claims she tapped Nawara on the shoulder and asked him why all the detainees in the staging area were not cuffed (*Id*.). Jones-Hayes claims that after her hand touched his shoulder, Nawara began screaming (*Id*). Jones-Hayes claims that Nawara cursed and showed "rage" (*Id*. ¶ 15).

Nawara was never disciplined as a result of the September 28, 2016 incident (*Id*.). On

September 29, 2016, Nawara was transferred to External Operations (*Id*. ¶ 15). He worked in External Operations until November 18, 2016 (*Id*.). Nawara's duties in External Operations required him to carry a firearm (*Id*.).

That same day, September 29, 2016, Matthew Burke sent a memorandum to Karyn Williams, the Executive Director of HR, requesting that Nawara be evaluated for fitness for duty (*Id*. ¶ 16). A fitness for duty exam is where an employee meets with an independent doctor to be evaluated for his/her fitness to perform their job functions for the Sheriff's Office (*Id*. ¶ 17).

HR would receive a referral, typically from an employee's department or from the Office of Professional Review (*Id*. ¶ 18). The employee would meet in HR with Reierson, the Leave and Absence Manager, and Shelby, the occupational nurse (*Id*.). Both Reierson and Shelby would decide whether the employee could return to work or if the employee would be required to undergo a fitness for duty exam (*Id*. ¶ 19).

On or about November 18, 2016, Nawara was told by his supervisor to report to HR (*Id*. ¶ 20). On November 18, 2016, Nawara met with Reierson and Shelby (*Id*. ¶ 21). Reierson and Shelby ordered a fitness for duty exam for Nawara (*Id*. ¶ 22).

Reierson and/or Shelby provided Nawara with two forms to sign for the release of his medical records (*Id*.). A copy of the forms is attached as Exhibits 2 and 3 to Plaintiff's Statement of Uncontested Facts (*Id*. ¶ 23). Reierson and/or Shelby told Nawara that he could not complete the fitness for duty process and would not be able to return to work unless he signed and returned both forms to HR (*Id*. ¶ 24).

Nawara refused to sign the forms because he believed the forms were unlawful and violated his privacy rights (*Id*. ¶ 25). Nawara did not believe it was lawful for the Sheriff's Office to require him to sign forms that authorized, without limitation, the release of all of his

medical records and medical information to the Sheriff's Office (*Id*).

The first form entitled "AUTHORIZATON TO RELEASE HEALTHCARE INFORMATION" authorized, without limitation, the release of Nawara's entire medical information to the Sheriff's Office (*Id*. ¶ 26). The form states: "This request and authorization applies to" and is followed by three boxes (*Id*). The box for "All healthcare information" is checked on the form that was provided to Nawara (*Id*). The form is not limited as to scope, time or provider (*Id*). Much of the form is blank (*Id*).

On November 18, 2016, Dr. Kneka Jones Tapia, the Executive Director of the Department of Corrections, sent a memo to Richard Brogan, Superintendent for External Operations stating that Nawara is not permitted to work until he has been released by HR (*Id*. ¶ 27). Effective November 18, 2016, Nawara had to use his own time to get paid (*Id*. ¶ 28). Nawara could only return to work if HR received a report from a physician indicating that he was fit for duty (*Id*.).

On November 30, 2016, Reierson sent a letter to Nawara stating*:*

> On 11/18/16 you were informed by the Occupational Health Nurse for the Sheriff's Office, Winifred Shelby, that you were required to undergo a Fitness for Duty (FFD) evaluation before returning to active duty. You took the ***forms*** in order to review them prior to signing and have failed to return them to Ms. Shelby… ***These signed documents must be returned*** to Ms. Shelby by Monday, 12/5/16, so the FFD evaluation process can begin. If they are not received by that date, it will be determined that you are not participating in the process and your time off of work from 11/18/16 will be unauthorized. Further, you are not able to return to work until you have completed the FFD process.

(Stmt., ¶ 28 (emphasis added)).

The "forms" referenced in Reierson's November 30, 2016 letter are same forms attached as Exhibits 2 and 3 to Plaintiff's Statement (*Id*. ¶ 30). On December 21, 2016, Nawara's attorney at the time, Dana Kurtz, sent Reierson and Shelby an email informing them that she had been

retained to represent Nawara and stating that the release form was illegal (*Id.* ¶ 31). On February 28, 2017, Reierson sent a letter to Nawara stating *inter alia*:

> The signed waiver documents given to you on November 18, 2016 must be returned to Ms. Shelby by Wednesday, March 8, 2017 to the FFD evaluation process can proceed. This is the last notification you will receive. If the forms are not received by March 8, 2017, your time off work (November 18, 2016-present) will be deemed unauthorized. Further, you are not able to return to work until you have completed the FFD process.
>
> I have enclosed another copy of the forms for your convenience…

(*Id.* ¶ 32).

Exhibits 2 and 3 are the same forms referenced and included in Reierson's February 28, 2017 letter (*Id.* ¶ 33). On March 13, 2017, Kurtz sent Reierson an email stating *inter alia*:

> Officer Nawara has been placed on an unpaid leave, and is burning his sick and vacation time to his detriment, which he will run out soon, because he would not sign a HIPPA medical release form for his own medical records without limitation of time, scope, or any other limitations…
>
> [T]he Sheriff's position to require Officer Nawara (or any other employee) to complete a medical release form so that the Sheriff's Office can obtain that individuals medical records is unlawful and in violation of the ADA.

(*Id.* ¶ 34).

On or about March 8, 2017, Nawara obtained a Fitness for Duty Evaluation from Dr. Robin Kroll, a Board Certified Police and Public Safety Psychologist (*Id.* ¶ 35). Dr. Kroll found that Nawara was **"Fit-For-Duty"** and recommended that "he return to work with no restrictions (*Id.*). On March 17, 2017, Nawara provided the Sheriff's Office with Dr. Kroll's report sending an email to Reierson stating:

> See attached report from Dr. Kroll, who is an independent doctor and not my doctor. I am requesting to be put back to work effective immediately and all of the time I have had to burn be reinstated. I feel the order for me to sign a blank HIPPA release was unlawful and violates the American with Disabilities Act and is in retaliation for my prior suit…

(*Id.* ¶ 36).

On March 18, 2017, Reierson responded to Nawara's March 17, 2017 email:

> … the document attached [Dr. Kroll's Report] is insufficient to allow your return to work. Please return the signed release documents as previously instructed so we can begin the proper fitness for duty procedure.

(*Id.* ¶ 37).

The "signed release documents" referenced in Reierson's March 18, 2017 email are the same releases attached as Exhibits 1 and 2 to Plaintiff's Statement (*Id.* ¶ 38). Reierson acknowledged that she had no basis to disagree with what Dr. Kroll wrote (*Id.* ¶ 39). Reierson testified that that Dr. Kroll's report was not sufficient "[b]ecause it wasn't conducted by an independent doctor as far as we were aware." (*Id.*). The Sheriff's Office Law Department made the decision not to accept Dr. Kroll's fitness for duty evaluation (*Id*).

On August 17, 2017, Nawara signed a "HIPAA Authorization for Disclosure of Protected Health Information" for the release of his medical records and information to CorVel Corporation "that relates to [his] fitness for duty exam." (*Id.* ¶ 40). Unlike the release provided by the Sheriff's Office, the CorVel release executed on August 17, 2017, the Sheriff's Office would only receive a copy of the "Independent Medical Exam—not Nawara's medical records (*Id.*).

The Sheriff's Office used CorVel as a third party administrator to select an independent provider to conduct fitness for duty examinations (*Id.* ¶ 41). On September 8, 2017, CorVel sent Nawara a letter informing him that he was scheduled for a two-day Fitness for Duty Exam with the Isaac Ray Forensic Group on September 11th and 12th, 2017 (*Id.* ¶ 42). In a report dated September 16, 2017, Psychologist Diana Goldstein found Nawara "fit to return to duty without restrictions." (*Id.* ¶ 43).

On September 26, 2017, the Sheriff's Office authorized Nawara to return to work on September 27, 2017 with no restrictions (*Id*. ¶ 44). From November 2016 until September 27, 2017, Nawara lost more than $50,000 in pay and benefits as a direct result of not being allowed to work (*Id*. ¶ 45). From November 2016, until approximately April or May 2017, Nawara was forced to use accrued benefit time in order to receive a paycheck (*Id*. ¶ 46).

In or about April or May 2017, Nawara's accrued benefit time ran out, and he received no pay from the Sheriff's Office from approximately April or May of 2017 until he was authorized to return to work on or about September 27, 2017 (*Id*., ¶ 46). Nawara would have voluntarily submitted himself for a fitness for duty exam with a provider chosen by CorVel in November 2016 had the Sheriff's Office not required him to sign the release forms (*Id*., ¶ 46)

## ***III. LAW***

Rule 56(a) provides:

> **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--***or the part of each claim or defense--on which summary judgment is sought.*** The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(Fed. R. Civ. P. 56(a)) (emphasis added).

A motion for partial summary judgment is decided under the same standards as a motion for summary judgment. *Nvidia Corp. v. Fed. Ins. Co.*, 2005 WL 2230190, at *6 (N.D.Ill. Sept. 6, 2005). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually

exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In responding to a summary judgment motion, the non-moving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir.1996). A genuine issue of material fact is not demonstrated by the mere existence of some alleged factual dispute between the parties or by some metaphysical doubt as to the material facts. *See*, *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 933 (7th Cir.1997). Rather, a genuine issue of material fact exists only if a fair-minded jury could return a verdict for the non-moving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir.2000).

The ADA prohibits employers subject to the ADA from inquiring about employees' medical histories, except under certain limited circumstances:

> A covered entity shall not require a medical examination and shall not make inquires of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

(42 U.S.C. § 12112(d)(4)(A); *Wright v. Illinois Dep't of Children & Family Servs.*, 798 F.3d 513, 522 (7th Cir. 2015); Court's 3/28/19 Opinion, p. 11, Doc. 187).

The Sheriff's Office bears the burden of establishing that the inquiry is "consistent with business necessity… [and] must show that the asserted business necessity is vital to the business, as opposed to a mere expediency." *Wright*, 798 F.3d at 523. The burden of proving business necessity "is quite high." *Id*. The above regulation pertaining to requests for information protect "[a]ll employees, regardless of whether they have a qualifying disability under the ADA." *Wright*, 798 F.3d at 522; Court's 3/28/19 Opinion, p. 11.

## *IV. THE SHERIFF'S OFFICE'S DEMANDS THAT NAWARA SIGN UNLIMITED RELEASES VIOLATE THE ADA*

The Sheriff's Office violated the ADA through its repeated demands that Nawara sign an unlimited release for his complete medical records. The Court considered the forms at issue when it denied Defendants' motion to dismiss Nawara's ADA claims (3/28/19 Memorandum Order and Opinion, p. 9, Doc. 187). The Court noted that "the forms in question in this case are broad medical release forms that are untailored for any specific type of fitness for duty exam." *Id*., p. 14. The Court further commented that the "Defendants in this case have not articulated how or why such broad HIPPA form is a business necessity." *Id*. In response to Defendants' argument that the HIPAA releases were not, in fact blank, the Court stated:

> This argument hardly creates a defense; from the court's review of the Release Form, it appears to seek '[a]ll healthcare information' from any medical provider, without specifying any particular time-frame or medical condition about which Cook County sought information, and would effectively permit Defendants access to a wealth of information about Nawara unrelated to his fitness for duty. The fact that Nawara referred to these forms as 'blank' does not defeat his ADA claim. Defendants' motion to dismiss Plaintiff's ADA claim is denied.

(*Id*., p. 15).

There is no genuine issue of material fact that the release violates the ADA. The release that Nawara was required to sign is unlimited in scope and time (Stmt., Ex. 2). The release authorizes the Sheriff's Office to receive Nawara's complete medical records without regard to the relevancy of the records for his fitness for duty examination.

The EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA shows that the form is unlawful. It provides:

> 13. How much medical information can an employer obtain about an employee when it reasonably believes that an employee's ability to perform the essential functions of his/her job will be impaired by a medical condition or that she/he will pose a direct threat due to a medical condition?

> **An employer is entitled only to the information necessary to determine whether the employee can do the essential functions of the job or work without posing a direct threat. *This means that, in most situations, an employer cannot request an employee's complete medical records because they are likely to contain information unrelated to whether the employee can perform his/her essential functions or work without posing a direct threat.***

(EEOC Enforcement Guidance: Disability–Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act, Question 13 (July 27, 2000), attached hereto as Ex. A) (emphasis added).

"The EEOC's stated position on the scope of medical inquiry is that an employer may not request an employee's complete medical records under the disguise of job-relatedness and business necessity." *Farmiloe v. Ford Motor Co.*, 277 F. Supp.2d 778, 782–83 (N.D. Ohio 2002); *Jackson v. Regal Beloit America, Inc.*, 2018 WL 3078760, at *9 (E.Dist.Ky. June 21, 2018). The Seventh Circuit has relied on EEOC Enforcement Guidance in deciding cases under the ADA. *Wright*, 798 F.3d 522-24 and footnote 25; *O'Neal v. City of New Albany,* 293 F.3d 998, 1009 (7th Cir.2002) ("We previously have recognized that, "[a]lthough not binding on this court, such administrative interpretations do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.").

The Sheriff's Office cannot, under any scenario, demonstrate that it required all of Nawara's medical records from the date he was born to determine whether he could perform his duties as a correctional officer without posing a direct threat. There is no legal justification for such a broad and unlimited release.

In *Jackson v. Regal Beloit America, Inc.*, 2018 WL 3078760 (E.Dist.Ky. June 21, 2018), based on similar facts, the district court granted the employee partial summary judgment as to liability under the ADA. Jackson worked for Regal in a position requiring her to operate a forklift. *Jackson*, 2018 WL 3078760, at *1. In 2014, Jackson was diagnosed with colon cancer and her doctor cleared her to work a couple of months later. *Id*. She returned to work and

resumed her position with no restrictions and no performance issues. *Id*.

Several months later, Regal notified Jackson that she would have to undergo a medical screening and she underwent a medical screening with Regal's contracted medical provider. *Id*. Jackson passed the screening but at the conclusion of the appointment the doctor requested Jackson to provide her medical records related to the colon cancer. *Id*. at *2. Jackson refused. *Id*. Jackson instead provided a note from her doctor stating that she could drive any type of vehicle given that she was released to go back to work without restrictions. *Id*. Regal then threatened Jackson with termination if she did not agree to provide her medical records. *Id*. at *3.

Jackson was ultimately terminated and filed an ADA claim. *Id*. Jackson claimed that Regal violated the ADA by conditioning her continued employment on Jackson submitting to a medical examination and producing medical records; displacing and being demoted for refusing to turn over all of her medical records related to her cancer treatment; and terminating her for refusing to turn over the medical records. *Id*. at *5.

An employee's unlawful medical examination/inquiry claim reduces to two essential inquiries: (1) whether the employer performed or authorized a medical examination or disability inquiry ("the regulated conduct"); and if so, (2) whether the exam/inquiry was job-related and consistent with business necessity ("the justification"). *Jackson*, 2018 WL 3078760, at *6. The Court found that "Jackson has easily carried her burden with respect to the first element" noting:

> It is undisputed that Regal required Jackson to submit to a medical examination. During that medical examination and afterwards, Regal also made a 'disability-related inquiry' by requesting Jackson's medical records related to her colon-cancer surgery. Therefore, the burden shifts to Regal to 'prov[e] that [the] medical examination' and disability inquiry were 'job-related and consistent with business necessity.'"

*Jackson*, 2018 WL 3078760, at *7, *citing Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014).

The Court rejected Regal's business necessity defense:

> Moreover, even if Regal had provided a sufficient justification for its request for a medical examination or disability inquiry, which it has not, the scope of the examination and the inquiry 'must remain appropriately narrow.' *James v Goodyear Tire & Rubber Co.*, 354 Fed.Appx. 246, 249 (6th Cir. 2009) …Therefore, 'an employer may not request an employee's complete medical records under the disguise of job-relatedness and business necessity.' *Farmiloe v. Ford Motor Co.*, 277 F.Supp.2d 778, 782-83 (N.D. Ohio 2002); *see also*, *EEOC Guidance*, Part B. 10.
>
> Here, any appropriate scope was far surpassed…Regal has put forth no rationale supporting its broad request.
>
> Put simply, Regal has failed to carry its 'burden of proving that' the medical examination or inquiry was 'job-related and consistent with business necessity.' [citation omitted] …By failing to limit the scope of the medical examination and inquiry and failing to put forth a legally valid justification for demanding it, Regal violated the ADA and the KCRA.
>
> Accordingly, Jackson is entitled to partial summary judgment in her favor on her unlawful-medical examination claim under the ADA and the KCRA. 'In order to prevail on this claim, however, [Jackson] must still establish that [she] suffered cognizable injury in fact of which the violation is a legal and proximate cause.' [Citations omitted]. Therefore, the matter of damages is best left for a jury.
>
> *Jackson*, 2018 WL 3078760, at *9-10.

Like Jackson, Nawara is entitled to summary judgment as to liability on his ADA claim. The ADA prohibited the Sheriff's Office from requiring Nawara to provide ***all*** of his medical records to the Sheriff's Office. Over and over again, the Sheriff's Office conditioned Nawara's employment on signing such a broad intrusive release. Nawara could not return to work without completing the fitness for duty examination and he was prohibited from completing the examination without signing the release.

There is no genuine issue of material fact as to the Sheriff's Office's liability under the ADA. The Sheriff's Office cannot as a matter of law justify requiring Nawara to sign a release for his complete medical records on the grounds of job-relatedness and business necessity. The Sheriff's Office did not even try to limit the intrusive release to medical records related to

Nawara's fitness for duty examination.

**WHEREFORE,** Plaintiff, John Nawara, requests that the Court grant him partial summary judgment as to liability against the Cook County Sheriff's Office and Cook County under the Americans with Disabilities Act (Count I of Plaintiff's Second Amended Complaint) and grant him any other relief the Court deems appropriate.

**JOHN NAWARA**

*s/ Richard F. Linden*
One of Plaintiff's attorneys

Richard F. Linden
312/590-0211
lindenlaw@gmail.com

Peter V. Bustamante
312/346-2072
pvbust@bustamantelaw.com

Linden & Bustamante
17 North State Street, Suite 1550
Chicago, Illinois 60602

# EXHIBIT A

*The U.S. Equal Employment Opportunity Commission*

| | | |
|---|---|---|
| | | **Number** |
| **EEOC** | ***NOTICE*** | 915.002 |
| | | **Date** |
| | | 7/27/00 |

1. SUBJECT: EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)

2. PURPOSE: This enforcement guidance explains when it is permissible foremployers to make disability-related inquiries or require medical examinations of employees.

3. EFFECTIVE DATE: Upon receipt.

4. EXPIRATION DATE: As an exception to EEOC Order 205.001, Appendix B,Attachment 4, § a(5), this Notice will remain in effect until rescinded or superseded.

5. ORIGINATOR: ADA Division, Office of Legal Counsel.

6. INSTRUCTIONS: File after Section 902 of Volume II of the Compliance Manual.

```
7/27/00                  /s/
Date                 Ida L. Castro
                     Chairwoman
```

**DISTRIBUTION: CM Holders**

# ENFORCEMENT GUIDANCE: DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS OF EMPLOYEES UNDER THE AMERICANS WITH DISABILITIES ACT (ADA)

## TABLE OF CONTENTS


INTRODUCTION

GENERAL PRINCIPLES

- Background
- Disability-Related Inquiries and Medical Examinations of Employees

JOB-RELATED AND CONSISTENT WITH BUSINESS NECESSITY

- In General


## Notice Concerning The Americans With Disabilities Act Amendments Act Of 2008

This document was issued prior to enactment of the Americans with Disabilities Act Amendments

employee provides insufficient documentation, an employer does not have to provide reasonable accommodation until sufficient documentation is provided.

Any medical examination conducted by the employer's health care professional must be job-related and consistent with business necessity. This means that the examination must be limited to determining the existence of an ADA disability and the functional limitations that require reasonable accommodation. If an employer requires an employee to go to a health care professional of the employer's choice, the employer must pay all costs associated with the visit(s).[(59)]

The Commission has previously stated that when an employee provides sufficient evidence of the existence of a disability and the need for reasonable accommodation, continued efforts by the employer to require that the individual provide more documentation and/or submit to a medical examination could be considered retaliation.[(60)] However, an employer that requests additional information or requires a medical examination based on a good faith belief that the documentation the employee submitted is insufficient would *not* be liable for retaliation.

12. May an employer require that an **employee, who it reasonably believes will pose a direct threat, be examined by an appropriate health care professional of the employer's choice?**

Yes. The determination that an employee poses a direct threat must be based on an individualized assessment of the employee's present ability to safely perform the essential functions of the job. This assessment must be based on a reasonable medical judgment that relies on the most current medical knowledge and/or best objective evidence.[(61)] To meet this burden, an employer may want to have the employee examined by a health care professional of its choice who has expertise in the employee's specific condition and can provide medical information that allows the employer to determine the effects of the condition on the employee's ability to perform his/her job. Any medical examination, however, must be limited to determining whether the employee can perform his/her job without posing a direct threat, with or without reasonable accommodation. An employer also must pay all costs associated with the employee's visit(s) to its health care professional.[(62)]

An employer should be cautious about relying solely on the opinion of its own health care professional that an employee poses a direct threat where that opinion is contradicted by documentation from the employee's own treating physician, who is knowledgeable about the employee's medical condition and job functions, and/or other objective evidence. In evaluating conflicting medical information, the employer may find it helpful to consider: (1) the area of expertise of each medical professional who has provided information; (2) the kind of information each person providing documentation has about the job's essential functions and the work environment in which they are performed; (3) whether a particular opinion is based on speculation or on current, objectively verifiable information about the risks associated with a particular condition; and, (4) whether the medical opinion is contradicted by information known to or observed by the employer (e.g., information about the employee's actual experience in the job in question or in previous similar jobs).

13. **How much** medical information can an employer obtain about an employee when it reasonably believes that an employee's **ability to perform the essential functions** of his/her job will be impaired by a medical condition or that s/he **will pose a direct threat** due to a medical condition?

An employer is entitled only to the information necessary to determine whether the employee can do the essential functions of the job or work without posing a direct threat. This means that, in most situations, an employer cannot request an employee's complete medical records because they are likely to contain information unrelated to whether the employee can perform his/her essential functions or work without posing a direct threat.

14. May an employer require an employee to provide **medical certification that s/he can safely perform a physical agility or physical fitness test**?

Yes. Employers that require physical agility or physical fitness tests may ask an employee to have a physician certify whether s/he can safely perform the test. [(63)] In this situation, however, the employer is entitled to obtain only **a note simply stating that the employee can safely perform the test or, alternatively, an explanation of the reason(s) why the employee cannot perform the test.** An employer may not obtain the employee's complete medical records or information about any conditions that do not affect the employee's ability to perform the physical agility or physical fitness test safely.

## C. Disability-Related Inquiries and Medical Examinations Relating to Leave[(64)]