**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br>v.<br><br>COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 17-cv-2393<br><br>Hon. Rebecca R. Pallmeyer |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ADJUDICATE DEFENDANTS' CLAIM OF PRIVILEGE OVER DOCUMENTS PREVIOUSLY PRODUCED IN DISCOVERY**

The question before this Court is whether Plaintiff must destroy inadvertently produced communications because they contain attorney-client privileged communications. (See Dkt. 237 (under seal).) Contrary to Plaintiff's exceptionally narrow view of what constitutes privileged material, these communications all were made privately with counsel in pursuit of legal advice for the purpose of responding to allegations made by Plaintiff's union and later in the course of this litigation. The should be deemed privileged, they should not be used at trial, and they should be destroyed.

**I. The Emails Communications All Are Protected by the Attorney Client-Privilege and/or Attorney Work Product Doctrine and Inadvertently Were Produced in the Course of ESI Production.**

The privileged communications Defendants at issue consist of two email chains. The first chain contains December 2016 emails between Defendant Rebecca Reierson and the Sheriff's Office's in-house counsel, Peter Kramer in response to allegations raised by Plaintiff's union about a purported video of the altercation between Plaintiff and Defendant Jones-Hayes. (Dkt. 237 at

CCSO_1040-1053). Those allegations arose after a November 18, 2018 email from the union's counsel, Nicole Chaney, asserting various legal claims concerning Nawara's FFD referral. (See CCSO_1675 (Kramer email to Reierson forwarding the union's claims), Ex. A.) In December, as part of the process by which the CCSO addressed those claims, Reierson emailed Mark Robinson, a union representative about an allegation that some video (which no one ever has been able to identify) existed relating to the incident between Jones-Hayes and Nawara. Robinson asserted his belief that in-house counsel Kramer had the alleged video (although he also downplayed the importance of the video, noting that the FFD referral was not actually based on the incident with Jones-Hayes but rather Nawara's behavior at HR in November 2016). The initial emails between Reierson and Robinson copied other union representatives as well as union lawyer Chaney.

Significantly, after this initial exchange, Reierson dropped all of the non-CCSO personnel on the original emails and proceeded to communicate only with Mr. Kramer, the CCSO's in-house counsel. These are the communications that Defendants contend are subject to the attorney-client communication. As discussed further below, in context these were attorney-client communications made for the purpose of obtaining advice about how to address the allegations by the union – which, it should be noted, the union ultimately chose not to pursue. (*See* Defendants' Motion *in Limine* No. 5, Dkt. 241-1 at 9).

The second email chain at issue is between the Sheriff's Office's general counsel, Nicholas Scouffas, and Reierson in response to and in anticipation of Plaintiff's counsel's legal claims and by-then asserted threats of a lawsuit.[1] (*Id.* at CCSO_1081-1085.) Plaintiff's motion does not specifically address this set of communications or his reasons for contending privilege had been waived. Defendants contend these emails are privileged both as attorney-client communications

[1] One email is from the Legal Department's project manager sent at the direction of the general counsel. (CCSO_1082.)

to follow up on allegations made by Plaintiff and his counsel and as attorney work product in anticipation of litigation. Defendants' inadvertent production does not waive the privilege and Plaintiff and his counsel must destroy them. *See* Fed. R. Civ. P. 26(b)(5)(B).

All of these communications concern an allegation that Plaintiff never substantiated and indeed abandoned over a year ago: that there was some video that someone had seen of the altercation between Jones-Hayes and Nawara. As more fully explained in Defendants' Motion *in Limine* No. 8 (Dkt. 241-1 at 12-17), and in the attached June 20, 2019 letter to Plaintiff's counsel (Ex. B at 2), there is no basis for this allegation to be made at trial, and there certainly is no reason to permit attorney-client communications made in an effort to determine if the alleged video ever existed to be used in this case.

## II. Plaintiff's Citations to General Principles do Not Support a Finding that These Communications are Not Privileged.

Plaintiff's arguments that these communications are not privileged ignore the context in which they were made. Plaintiff argues that the attorney-client privilege does not apply because they do not seek legal advice. While it is true that the emails do not explicitly state that they seek legal advice, all were sent to attorneys addressing legal claims lodged against the Sheriff's Office and involve the question of how to respond to claims being raised by lawyers adverse to the Sheriff's Office. *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, 2016 U.S. Dist. LEXIS 72756, *6 (N.D. Ill. June 3, 2016) (the privilege applies to confidential communications that contain "legal advice or reveal confidential information on which the client seeks advice"). The boilerplate caselaw cited by Plaintiff does not change this conclusion.

*First*, Plaintiff's case law does not support the bald proposition that communications conveying facts cannot be privileged. (Dkt. 235 at ¶ 10 (citing to *ChampionsWorld, LLC v. U.S. Soccer Fed'n*, 276 F.R.D. 577, 589 (N.D. Ill. 2011); *Sapia v. Bd. Of Educ. Of City of Chicago*, 351

F. Supp. 3d 1125, 1132 (N.D. Ill. 2019)).) In *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981), the Supreme Court held that *communications* concerning facts are privileged, even when facts themselves are not. *See id.* ("A fact is one thing and a communication concerning that fact is an entirely different thing."); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619-20 (7th Cir. 2009) (communications in connection with a factual investigation related to legal services are privileged); *Toyo Tire & Rubber Co.*, 2016 U.S. Dist. LEXIS 72756 at *6-9 (email communications concerning underlying facts are privileged); *Carr v. Fed. Bureau of Prisons*, 2017 U.S. Dist. LEXIS 106489, *10 (S.D. Ind. July 10, 2017) (emails seeking information to enable attorneys to give sound advice are privileged). If "such communications were discoverable, the exception for underlying facts would swallow the rule protecting attorney-client communications." *Toyo Tire & Rubber Co.*, 2016 U.S. Dist. LEXIS 72756 at *8. The *Toyo Tire* court rejected the argument that emails were not privileged simply because they concerned underlying facts. *Id.* at *7-8. Even though the emails there relayed discoverable facts obtained through settlement negotiations, because they were transmitted for the purpose of obtaining legal advice, they were deemed privileged. *See id.* at *10 (noting that the appropriate way to discover the facts would be during a deposition). Likewise, the communications here are privileged because they shared facts to obtain legal advice, which ultimately was provided in the later emails.

Here, Defendants consistently satisfied to their obligation to provide facts related to Plaintiff's spurious claim of spoliation, including by producing all videos from the relevant area recorded on the date of Plaintiff's altercation. (*See, e.g.*, See CCSO's Second Supplemental Responses and Objections to Plaintiff's Notice of Inspection and Request to Produce at 3, Ex. C; Defendants 11/14/17 Discovery Responses (Doc. Request # 21), 7/30/18 Interrogatory Answers (Interrogatories ## 1, 3, & 4), and 6/25/18 (Doc. Request # 43), Ex. D; *see also* 6/20/19 Marmor

Ltr. to Linden at 2, Ex. B (objecting to Plaintiff's Rule 30(b)(6) notice to depose individual(s) about allegedly missing video footage; that deposition never was pursued).) The privileged communications at issue here do not establish any actual facts of significance to this case, as Plaintiff has conceded. (*See* Plaintiff's 6/25/18 Answers to Defendants' Third Set of Interrogatories, at 2, Ex. E (refusing to answer interrogatory regarding allegations of spoliation as irrelevant and on privilege grounds). And neither *ChampionsWorld* nor *Sapia* come close to suggesting that emails between clients and their attorney conveying beliefs about underlying potential facts, and responses to demands, in response to legal claims are not privileged.

*Second*, Plaintiff's assumption that these communications would have been made without the protection of privilege is meritless. (Dkt. 235 at ¶ 11 (citing *Fisher v. United States*, 25 U.S. 391, 403 (1976); *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir. 1980)).) The communications between Reierson and counsel would not have taken place absent the union's and later Plaintiff's counsel's mistaken allegations. Moreover, Defendant Reierson's deliberate exclusion of Plaintiff's union representatives from the following conversation with counsel demonstrates her intent that the ensuing communications be only with in-house counsel for the purpose of responding to allegations that had been made to her.

*Third*, Plaintiff claims that these conversations were to obtain business advice – but does not say what business advice they provide. (Dkt. 235 at ¶ 13 (citing *Smith v. Board of Education of the City of Chicago*, 2019 U.S. Dist. LEXIS 102326 (N.D. Ill. June 19, 2019)).) The decision to refer Nawara for a FFD examination already had been made. The communications at issue These communications all were made in response to legal claims asserted first by the union and later by Dana Kurtz about the validity of the referral. Plaintiff nonetheless contends that there is some presumption in the law that an in-house counsel's input is to be deemed business rather than

legal advice. (Dkt. 235 at ¶ 13). No such presumption exists and there is no indication that these communications have anything to do with the CCSO's business.[2] The *Smith* court merely stated that "there is no presumption that a company's communications with counsel are privileged." 2019 U.S. Dist. LEXIS 102326 at *3. The court did not find that the presumption went the other way. Likewise, the court only addressed disciplinary conversations that occurred prior to any legal claims made against the company. The present situation is markedly different where all of these emails took place in response to legal claims, not merely to address potential litigation risk of possible future claims.

## III. Plaintiff Fails to Show that Defendants Waived Privilege.

Plaintiff makes two arguments that the Sheriff's Office waived privilege: (1) that they were shared with Plaintiff's union representatives and (2) they were intentionally produced because one document contains a redaction. (Dkt. 235 at ¶ 5.) Plaintiff's facts and assumptions are wrong. As even a cursory review of the emails demonstrates, only the first two emails in the December 2016 chain were with union representatives – Reierson removed them from her private emails with counsel. Thus, prior to Defendants' inadvertent production in this case, they were not shared with any third party. (*See* Dkt. 235 at ¶ 5 (citing CCSO_1040, 1041, 1042, 1043, 1044, 1046, 1048, 1049, 1050, 1051 and 1053).) As for the claim that the production was not inadvertent, the basis for such a claim is too thin to be credited.

The most obvious inference from the redacted email is that Plaintiff should have been on alert that Defendants did not intend to disclose privileged information. Even had Plaintiff assumed

[2] While not addressed in Plaintiff's Motion and without any case law cited, Plaintiff's counsel's January 21, 2020 email states that decisions about discipline and firings are business related rather than legal. (*See* Dkt. 235 at ¶ 3.) Even if that were the law, Plaintiff never was fired and has admitted that the FFD process was not disciplinary. (10/2/19 Nawara Dep. Tr. at 158:18-159:6, Ex. F.) None of these communications discuss discipline at all.

that emails preceding the redaction on CCSO_1046 were intentionally disclosed, it is apparent that subsequent emails without the redaction were not. (See CCSO_1044, 1048, 1050, 1052.) Instead, of notifying Defendants' counsel, Plaintiff instead assumed that all of these emails were intentionally produced only to put Defendants on notice of their disclosure by including them in his exhibit list.[3] (See Dkt. 235 at ¶ 5.) Because Plaintiff long ago abandoned the spoliation claim – and indeed engaged in no deposition discovery or motion practice whatsoever on the topic – Defendants had no occasion to examine its ESI production on this issue. (*See* Ex. E; *see also* Plaintiff's Surreply to Motion to Disqualify, Dkt. 140 at 14.) Had they been presented to Defendants sooner, or if Plaintiff had asked about Reierson's correspondence with counsel during her deposition, Defendants would have objected and this question could have been addressed at that time. Indeed, when Plaintiff's counsel asked Reierson questions about her communications with general counsel Scouffas as well as other in-house counsel, Defendants objected. (*See, e.g.*, 9/20/19 Reierson Dep. Tr. at 25:24-28:21; 114:13-115:14; 145:22-146:6; 154:9-21 (objecting to "any content of conversations with Mr. Scouffas" and repeatedly instructing Reierson not to answer questions blatant inquiries about what advice she had been provided by in-house counsel), Ex. G.) And neither Peter Kramer nor any of the union representatives on the emails at issue ever were named by any party as a witness in this case. The unfortunate fact is that these documents merely fell through the cracks of a very large ESI review and production, and the privileged portions were missed in the redaction process. Accordingly, there was no waiver.

[3] Defendants moved *in limine* to bar reference to and exhibits regarding claims by Plaintiff's union and the alleged spoliation of video evidence on substantive grounds and because these communications are privileged. (*See* Defs. MILs Nos. 5, 8, 21, Dkt. 241-1.)

## CONCLUSION

For the foregoing reasons Defendants request that this Court deny Plaintiff's Motion and order that all copies of the documents contained in Dkt. 237 in Plaintiff's or his counsel's possession be destroyed promptly.

Respectfully submitted,

THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, MATTHEW BURKE, REBECCA REIERSON, and WINIFED SHELBY,

/s/ Sarah R. Marmor
Sarah R. Marmor
Suzanne Milne Alexander
Morgan G. Churma
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Ph. 312-726-6000
smarmor@scharfbanks.com
salexander@scharfbanks.com
mchurma@scharfbanks.com

**CERTIFICATE OF SERVICE**

I certify that on January 26, 2020, I caused to be filed the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ADJUDICATE DEFENDANTS' CLAIM OF PRIVILEGE OVER DOCUMENTS PREVIOUSLY PRODUCED IN DISCOVERY using the Court's CM/ECF system, which will send e-mail notification of the filing to all counsel of record. This document is available for viewing and downloading via the CM/ECF system.

/s/ Sarah R. Marmor