**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br>v.<br><br>COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 17-cv-2393<br><br>Hon. Rebecca R. Pallmeyer |

**DEFENDANTS THOMAS DART, MATTHEW BURKE, REBECCA REIERSON, AND WINIFRED SHELBY'S MOTIONS *IN LIMINE***

Plaintiff John Nawara has three claims remaining in this case: for violation of the Americans with Disabilities Act ("ADA") (Count I) against the CCSO based on an allegedly wrongful inquiry into a disability in connection with Nawara being sent for a Fitness for Duty examination; for violation of the Illinois Whistleblower Act (Count IV) against all defendants based on the allegation that he was punished for raising arguments about the FFD forms he was asked to complete by Defendants Reierson and Shelby; and for violation of his due process rights in connection with the Cook County Sheriff's Merit Board Act (Count V) (apparently against all defendants) based on the theory that he should have been sent for a Merit Board determination before being placed on leave pending completion of the Fitness for Duty process.

In light of the claims in this case, the exhibits and arguments defendants anticipate will be proffered by Plaintiff, and pursuant to the Federal Rules of Evidence and related case law, Defendants Thomas Dart (in his official capacity as Sheriff of Cook County), Matthew Burke,

Rebecca Reierson, and Winfred Shelby ("Defendants") hereby submit the following Motions *in Limine*.

**1. DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO BAR BLANKET REFERENCE TO "DEFENDANTS."**

There are four individual defendants (Jones-Hayes, Burke, Reierson, and Shelby) and one entity defendant (Thomas Dart in his official capacity) in this case. As a matter of law, Nawara must prove his case and any claim for damages as to each defendant separately. *See* 745 ILCS 10/2-204 ("a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person."); *Miller v. DuPage County*, 2018 U.S. Dist. LEXIS 133083, *7 (N.D. Ill. Aug. 8, 2018) ("Individual-capacity liability under § 1983 requires a defendant's personal involvement in the alleged constitutional violation."). Referring to "defendants" as a monolithic group would prejudice all of them by leading the jury to believe that a particular defendant may be liable under an improper theory of collective responsibility – and not limited to their own conduct. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed."); *see also* FED. R. EVID. 403. Thus, this Court should bar Nawara and his counsel from referring collectively to "defendants" in opening statements, examinations, in jury instructions, and in argument rather than to them individually.

The undisputed facts in this case as to Defendant Burke illustrate the need for this motion *in limine* to be granted. As Burke has testified, his only involvement in this case is that he sent a referral to HR asking them to assess whether Nawara should undergo a fitness for duty exam. (10/10/19 Burke Dep. At 97:7-99:11, Ex. A). There are no facts in this case showing that Burke

had anything to do with the medical release forms provided to Nawara, the fitness for duty ("FFD") process after the initial referral to HR, or Nawara's employment status after he refused to participate in the FFD process – and indeed, in his deposition, Burke confirmed that "[o]utside of reading the complaint," he has no "knowledge about Nawara being required to sign any medical release." (*Id.* 99:8-11.) Burke testified that he believed his "only involvement [in the FFD process] would be the referral [to HR]" and that after the referral he did not have "more to do with the [FFD] process." (*Id.* 97:7-20.) Burke's only involvement in Nawara's FFD process after the referral to HR was to help facilitate communication between Jones-Hayes and HR. (*Id.* 97:21-98:2.) He did not "know anything about what forms were used by HR for fitness for duty examinations" nor did he "have anything to do with drawing up the forms." (*Id.* at 98:3-99:11.)[1] There simply are not facts in this case to the contrary. Accordingly, any blanket reference to "defendants" by plaintiff unfairly and improperly would lump Burke into activities with which he had absolutely no involvement. This same point also applies to Defendant Jones-Hayes who, other than providing a statement to HR, had nothing to do with Nawara's FFD process or his time off work.

Pursuant to FED. R. EVID. 401 and 403, the prejudice and resulting confusion that would ensue should preclude Nawara and his counsel from referring collectively to "defendants" in opening statements, arguments, and questioning before the jury.

## 2. DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO BAR REFERENCE TO AND ANY EVIDENCE RELATED TO CLAIMS PREVIOUSLY DISMISSED FROM THIS CASE.

[1] Indeed, on this basis alone, Burke should be dismissed from this case since there is no evidence that he participated in any of the actions that allegedly violated the ADA, the Whistleblower Act, or due process.

Plaintiff must not be permitted to reference, offer evidence of, or argument about any of the claims that previously have been dismissed or barred in this case. Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "**the fact is of consequence in determining the action**." FED. R. EVID. 401; *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012) (emphasis added). Rule 402 "provides the corollary that, with certain exceptions, '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not admissible.'" *Boros*, 668 F.3d at 907. Here, evidence about the *Burruss* lawsuit, Nawara's internal complaint against Jones-Hayes, his allegations of First Amendment and Whistleblower retaliation based on *Burruss*, and his claim of violation of Title VII all is irrelevant to this case and will not present facts of consequence in determining this action because the Court already has dismissed Nawara's First Amendment, Title VII, and Whistleblower claims (the latter in part). (Dkt. 187). Likewise, there should be no evidence of or argument about the allegation that Nawara's promotion to the Sheriff's Police was delayed, as the Court denied Plaintiff's Motion for Leave to Amend his complaint to add a claim regarding failure to promote. (Dkt. 208).

Specifically, the Court dismissed Count II as against all Defendants (for First Amendment retaliation pursuant to §§ 1983 and 1988 based on the *Burruss* suit); Count III (for Title VII retaliation based on an internal complaint Nawara filed against Jones-Hayes) and part of Count IV (for Whistleblower retaliation based on Nawara's participation in the *Buress* suit). And the Court ruled that the effort to add supplemental counts relating to an alleged delay in promoting Nawara after his return to duty was too late and unrelated to this case. (9/6/19 Hrg. Tr. at 3-4, Ex. B).

Defendants request an order *in limine* that there be no testimony or documents referring to those dismissed or barred claims. Any such evidence and arguments are irrelevant to the remaining

claims in this lawsuit and any probative value this evidence might have is substantially outweighed by the danger of prejudice and juror confusion, as such evidence of "retaliation" for the *Burruss* lawsuit and/or for filing an internal complaint against Jones-Hayes would likely lead the jury to decide the case on an improper basis or would serve to offer evidence of "bad acts" against the defendants. *See* FED. R. EVID. 403, 404(b); see also *Artunduaga v. Univ. of Chi. Med. Ctr.*, 2016 U.S. Dist. LEXIS 169460, *11 (N.D. Ill.) (excluding evidence of dismissed claims as prejudicial and confusing); see also Scott v. City of Chicago, 724 F.Supp.2d 917, 927 (N.D. Ill. 2010) (excluding evidence of bad conduct discharge because it would only serve the purpose of "dirtying up" plaintiff with unrelated bad acts evidence).

Plaintiff's proposed trial exhibits 28 and 49 include reference to dismissed theories of liability. (Attached hereto as Ex. C). Both relate to the EEOC charges Plaintiff brought in 2017 and refer to Title VII in the self-serving hearsay attachments to them. Because there is no Title VII claim in this case, these documents should be inadmissible as irrelevant, hearsay, and prejudicial. Plaintiff's Exhibit No. 3 (attached as Ex. D) is the Internal Complaint filed by Nawara against Jones-Hayes – a document no defendant in this case ever saw prior to taking any action complained about in this case, and there is no evidence to the contrary – and Plaintiff's Exhibit 100 is an email from non-party Jeff Johnsen to OPR attaching Nawara's complaint register. These documents should be inadmissible for the same reasons. Finally, Plaintiff's Exhibits 8, 9, 13, 14, 45, 46, 47, and 48 are emails from Nawara and/or his former attorney, Dana Kurtz, to Reierson in which they refer to Nawara's complaint against Jones-Hayes for retaliation and/or retaliation for the *Buress* lawsuit. To the extent these documents come into evidence at all, they should be redacted and Plaintiff should be barred from making any reference to these dismissed matters before the jury. (*Compare* Ex. E to Ex. F.)

**3. DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO BAR ANY REFERENCE TO PLAINTIFF'S INTERNAL COMPLAINT.**

For the same reasons provided above, Nawara should not be permitted to make any reference before the jury to his internal complaint against Jones-Hayes (PX 3, attached hereto as Ex. D), nor should that document – and any documents referencing it – be admitted into evidence at trial. And there is an additional reason not to permit use of or reference to the internal complaint – Nawara has adduced no evidence in this case that any of the Defendants were even aware that he had filed such a complaint. (See, e.g., 9/20/19 Reierson Dep. at 94:18-21, Ex. G; 10/10/19 Burke Dep. at 115:13-116:7-10, Ex. A; 11/4/19 Jones-Hayes Dep. at 110:3-8, Ex. H; 9/25/19 Shelby Dep. at 60:11-12, Ex. I.)

The only source of the allegation that Nawara's internal complaint somehow had a bearing in the issues in this case – his FFD referral and the forms that are at issue – is hearsay correspondence from Dana Kurtz to Rebecca Reierson that was sent *after* Nawara had been referred for an FFD exam and presented with medical information release forms. *See* PX 8, Ex. J; *see also* FED. R. EVID. 801. A causal connection cannot be created after-the-fact by self-serving and inadmissible lawyer argument. For this reason, if Kurtz's and Nawara's emails come into evidence in this case, any reference to the allegation that the FFD/release forms issue was related to the internal complaint (or, for that matter, to the *Burruss* suit) must be redacted from these documents. Defendants attach hereto the exhibits in both redacted and unredacted form to show what portions should not be presented to the jury. (See Exs. E and F.) Any probative value of these allegations is far outweighed by the prejudicial effect of introducing dismissed matter and rejected theories into this case. *See* FED. R. EVID. 403.

**4. DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO BAR LEGAL ARGUMENTS MADE IN PRE-LITIGATION CORRESPONDENCE.**

For much the same reasons – hearsay and prejudice – Kurtz's references to specific case law in her correspondence with Defendant Rebecca Reierson should be dismissed. In an email dated March 13, 2017, Kurtz wrote that "the law requires that in order for an employee to be ordered to see the employer's selected doctor for a fitness for duty evaluation, there must be a business necessity," and cited to *Wright v. Illinois Dept. of Children and Family Services*, 798 F. 3d 513 (7th Cir. 2015), and again cited to *Wright* in an email to Reierson dated March 8, 2017. (PX 10, 47, 88, attached hereto as Ex. K). Plaintiff has listed these documents, without redaction, on his proposed exhibit list. These documents are, insofar as Plaintiff tries to offer them, hearsay in their entirety. They are Kurtz's out of court statements making self-serving allegations on behalf of her client. Moreover, they cannot be admitted through Plaintiff since he did not draft them and Kurtz has not even been named as a witness in this case and therefore cannot appear to lay a foundation for their admission by Plaintiff, if any.

To the extent these documents may come into evidence, they can only come in through Defendants as admissions by Nawara's agent. There is no exception to the hearsay rule that could apply to permit Nawara to enter them into evidence for the truth of the matter asserted – they are not business records, for example, since Nawara is not a business. *See* FED. R. EVID. 801, 802, 803. And there is no other exception to the hearsay rule that should apply. *See United States v. Harris*, 914 F.2d 927 (7th Cir. 1990) (statements of defendant's former attorney were admissions of defendant only because they were statements made by defendant's agent). But in whatever manner they may come into evidence, these documents must not include references to case law, pursuant to FED. R. EVID. 403. Dana Kurtz's interpretations of case law and what it means will invade the province of the jury instructions in this case and are likely to confuse the jury. The proposed redactions preserve the point that Kurtz believed there was something improper about

the FFD referral and, later, with the medical information release forms – a fair balance that protects the rights of all parties to this suit. Accordingly, Defendants ask that the redacted versions of these documents be the only ones permitted into evidence, if at all, and that Nawara be barred from referring in any way to legal authorities referenced in Kurtz's correspondence. *See Klaczak v. Consol. Med. Transp. Inc*., 2005 U.S. Dist. LEXIS 13607, *39-37 (N.D. Ill.) (excluding most of expert's report "under Rule 403 because [the expert's] assertions about the ultimate legality of various challenged practices contain various implicit legal determinations that invade the province of the Court").[2]

**5. DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO BAR USE OR REFERENCE TO ANY CORRESPONDENCE BETWEEN UNION LAWYERS AND THE CCSO REGARDING NAWARA.**

Likewise, Plaintiff should be barred from using or referring to correspondence with a union lawyer concerning his FFD referral. Plaintiff's exhibits include correspondence from a lawyer from his union, Nicole Chaney, that is hearsay and makes claims (about a "Weingarten violation" and past debates with the union) that are not at issue in this lawsuit. (See PX 91, Ex. L). Ms. Chaney has not been identified by either party as a will call or may call witness in the Pretrial Order. Nonetheless, Plaintiff includes this email from her to Peter Kramer, Mark Robinson, and Dennis Andrews who likewise have not been named as witnesses in this case. As such, the statements made by Ms. Chaney are entirely hearsay under FED. R. EVID. 801 and should not be permitted in this case.

Ms. Chaney's email also contains information that could prejudice Defendants if provided to the jury. The email refers to a potential "Weingarten Violation" and states that the FFD referral

[2] To the extent the Plaintiff argues the documents should come in as notice, the redactions are a fail way to preserve the point without prejudicing the Defendants.

was "retaliatory and unfounded." (See PX 91, Ex. L). Pursuant to this Court's ruling on the motion to dismiss, Plaintiff's remaining claims regarding the FFD process relate only to whether the medical release forms themselves were a permissible inquiry – not whether the referral for an FFD examination itself was unlawful. (Dkt. 187 at 12-15.)

Without specifying her reasoning, Ms. Chaney then goes on to make her own factual conclusions that the requested medical records "have no relationship with the 'alleged incident' and that Plaintiff is being "divested [] of pay without due process." (*Id.*) These are central issues in this case and within the sole province of the jury. Allowing Plaintiff to introduce this email would prejudice Defendants because it replaces the jury's fact-finding inquiry with the conclusions of a union lawyer who has never been deposed and who will not be a witness at trial. Moreover, despite Ms. Chaney's assertions regarding Plaintiff's FFD process, the union in fact declined to pursue this matter, making these documents inadmissible hearsay for any purpose. (*See* 10/2/19 Nawara Dep. at 158:19-159:6, Ex. NN (testifying he engaged in conversations with the union "until the point where they told me they couldn't do anything about it.").)

For the reasons stated above and on similar grounds as Motion *in Limine* No. 4 to bar Ms. Kurtz's emails, this Court should bar the use or reference of correspondence by Plaintiff's union lawyers.

**6. DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO BAR DOCUMENTS AND REFERENCE TO CONCLUSIONS REACHED BY THE COOK COUNTY SHERIFF'S OFFICE OF PROFESSIONAL REVIEW.**

Plaintiff has included on its proposed exhibit list numerous documents concerning an Office of Professional Review ("OPR") investigation into Jones-Hayes's complaint against Nawara for his behavior on September 28, 2016. Both Rebecca Reierson and Winifred Shelby – the defendants who made the decision to send Nawara for an FFD exam – testified that the reason

Nawara was sent for a fitness for duty evaluation was Nawara's demeanor and conduct in their meeting with him in HR on November 18, 2016 – and there is no testimony or evidence to the contrary in this case. (Ex. G, Reierson Dep., at 179:20-180:24; Ex. I, Shelby Dep. at 67:2-70:9). The jury thus could find the FFD referral and the process related thereto were appropriate without ever coming to a conclusion about what actually transpired on 9/28/16.

Nonetheless, Plaintiff seeks to admit Plaintiff's Exhibit numbers 68, 71-72, 79-81, 83, 86, 89-90, 111, and 117, which include questions from the OPR investigator, statements of those witnesses whom OPR chose to interview, statements from two of the parties in this case (Nawara and Jones-Hayes), various emails regarding the investigation, and a final determination by the OPR that it had "insufficient evidence" to conclude that Nawara had violated "CCSO rules, regulations and/or policies" in his altercation with Jones-Hayes on September 28, 2016. (PX 90 at CCSO_3039, Ex. M). The OPR did not consider the HR meeting at all in its proceedings, and that meeting is not part of their record.

The OPR investigation process has no probative value in this case, nor should the findings by OPR be presented to the jury. As a threshold matter, OPR investigations are different from FFD referrals – one seeks to determine if CCSO rules have been violated and if discipline should ensue; the other is non-disciplinary and seeks to determine if an employee can safely do his job in the specialized environment in which correctional officers work. Here, that distinction is even more pronounced – OPR was not tasked with examining whether Nawara's FFD referral was appropriate. Three of the four individual defendants were not interviewed at all, and many of the other witnesses in this case likewise were not interviewed. Not even all of the witnesses who were present in at the 9/28/16 altercation between Nawara and Jones-Hayes were interviewed, nor were those who spoke to Jones-Hayes immediately following the events of that day. To supplant the

jury's process of considering the evidence about the 9/28/16 altercation would be inappropriate and prejudicial to the defendants. It also could well confuse the jury, since the issue in this case is not whether in fact Nawara's or Jones-Hayes's version of the events on that day is true or not.

Courts regularly exclude OPR findings for this very reason – that evidence of OPR's findings would unfairly prejudice the defendants by allowing one or two OPR investigators to supplant the jury's role. *Lyles v. Gambino*, 2019 U.S. Dist. LEXIS 189295, *15 (N.D. Ill.) ("[T]he potential prejudice from testimony regarding the substantive findings of the OPR investigation would substantially outweigh the limited probative value of such findings for the jury."); *Delgado v. Mak*, 2008 U.S. Dist. LEXIS 27140, *5 (N.D. Ill.) (excluding internal affairs investigation because "the potential prejudice from testimony about the IAI substantially outweighs its questionable probative value").

To be clear, some aspects of the OPR files may be admissible. Specifically, the admissions of any party to the litigation, *i.e*., Jones-Hayes and Nawara. *See Delgado*, 2008 U.S. Dist. LEXIS 27140, *5 (allowing OPR testimony for impeachment and admissions of a party opponent). All other statements and conclusions are hearsay and prejudicial and should be barred. To the extent that the Court allows the OPR process to be referenced, Defendants request an instruction that the OPR investigation had nothing to do with whether or not the Fitness for Duty evaluation and accompanying forms were appropriate and had only to do with discipline for the confrontation on September 28, 2016.

## 7. DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO BAR ANY REFERENCE TO ANY DEFENDANT AS A "FINAL POLICY MAKER."

Nawara has not created any record that any of the individually named defendants in this case can be considered final policymakers for purposes of any due process liability. It is not clear

how Nawara intends to proceed with this claim, but to the extent that Plaintiff intends to impose liability on the CCSO for the actions of its employees, Nawara and his counsel should be precluded from referring to any of the Defendants as "final policymakers" for the purposes of establishing *Monell* liability.

To prove such a § 1983 claim against the CCSO, Nawara must show that a deprivation of his due process rights resulted from a custom or policy of the CCSO. *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978). A plaintiff may establish a "custom or policy" of the entity by showing that "the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). To be a final policy maker, the individual must have the "authority to make policy, laws, or rules for the conduct of government; a person who merely implements existing law—rather than creating it—does not act with policymaking authority." *Foggey v. City of Chicago*, 2018 U.S. Dist. LEXIS 18225, *22-23 (N.D. Ill. Feb. 5, 2018) (internal quotation marks omitted).

The Second Amended Complaint makes the purely conclusory, rote, and insufficient allegations that Defendants Jones-Hayes, Burke, Reierson, and Shelby are "final policy maker[s] for the Sheriff's Office with regard to [their] acts and conduct alleged herein." (SAC Dkt. 89 at ¶¶ 22, 25, 27, 30.); *See Foggey*, 2018 U.S. Dist. LEXIS 18225 at *22-23 (dismissing *Monell* claim). However, Nawara has not created any record in discovery that any Defendant made or had authority to make any policy, laws, or rules for the CCSO, much less any that would be relevant to Nawara's claims. Allowing him or his counsel to now refer to any Defendant as a "final policy maker" would prejudice Defendants and could lead the jury to believe this element of *Monell* liability has been satisfied without any evidence in the record.

**8. DEFENDANTS' MOTION *IN LIMINE* NO. 8 TO BAR ANY REFERENCE TO SPOLIATION OF EVIDENCE.**

Nawara has included many communications in his exhibit list relating only to efforts to locate an alleged video recordings of his September 28, 2016 altercation with Defendant Jones-Hayes. (See PXs 33-35, 37-39, 108-110, 113, Ex. N; Dkt. 237 (filed under seal).) These exhibits do not shed any light on Nawara's FFD process or his time away from work and appear to be listed in an effort to resurrect a long-abandoned theory that the CCSO spoliated a video recording that may have been related to this case. Nawara previously conceded that any such video – which never has been shown to have existed in the first place – is not relevant to this case and refused to provide discovery responses relating to this theory, cutting off this avenue of discovery. There is no evidence in this case that any recordings that previously existed later were deleted for the purpose of hiding adverse information or after anyone knew that litigation was imminent. Since Nawara has waived any potential spoliation claim and the undeveloped theory that there once was a video that now is gone, and because he would be unable to obtain a spoliation inference based on the record in this case, Nawara and his counsel should be barred from referencing or alluding to the destruction or spoliation of video evidence.

In written discovery in this case, Plaintiff asked for "all video recordings of the Cermak stating area and basement area on "September 28, 2016." In response, the CCSO produced all videos in their possession, custody, or control from the area near where the altercation between Nawara and Jones-Hayes took place. (See CCSO's Second Supplemental Responses and Objections to Plaintiff's Notice of Inspection and Request to Produce at 3, Ex. O.) In response, Plaintiff's counsel repeatedly asserted, without evidence, her belief that some video evidence must have existed previously and was destroyed. Defendants' discovery responses consistently explained that whatever relevant video footage that existed had been produced; that there was no other relevant footage available; that there were no video cameras located in the Cermak

emergency room or office (where the confrontations between Jones-Hayes and Nawara took place); and that in any event video footage from the holding area in Cermak where there are cameras is not retained beyond thirty days unless it involves an incident with a detainee or a special request was made. (*See* Defendants 11/14/17 Discovery Responses (Doc. Request # 21), 7/30/18 Interrogatory Answers (Interrogatories ## 1, 3, & 4), and 6/25/18 (Doc. Request # 43), Ex. P; 6/27/18 Moffa Ltr. To Kurtz, Ex. Q; and 7/19/18 Moffa Ltr. To Kurtz, Ex. R; Sheriff's Order re Video Surveillance System reflecting 30-day retention, CCSO-000453-464, Ex. S). No such request was made by Nawara, or by any CCSO employee, that might have preserved more than what the CCSO had to produce – and of course, no litigation was imminent within 30 days of the September 28, 2016 incident.

In one of many lengthy Rule 37(a) conference calls, Plaintiff's counsel claimed that she "knew of a witness who supposedly saw a video of the incident at issue between Plaintiff Nawara and Defendant Jones-Hayes" on "September 28, 2016." (6/27/18 Moffa Ltr. To Kurtz, Ex. Q). Defendants were skeptical of this claim, not the least because there are no cameras in the area where the alleged incident occurred. Accordingly, to try to get to the bottom of this allegation, Defendants served Plaintiff with an interrogatory on May 22, 2018 asking Plaintiff to:

> Identify the person or persons that Plaintiff's counsel alleged during a phone conversation with Defendants' counsel on May 18, 2018 had viewed a video recording showing any interaction between Plaintiff Nawara and Defendant Jones-Hayes on or about September 28, 2016. . . .

(Defendants' Third Set of Interrogatories, Ex. T). In response, Plaintiff flatly refused to disclose the identity of this supposed person, hiding behind a wholly spurious privilege objection and claiming that the identity of this supposed witness was not relevant to the litigation:

> Plaintiff objects to this request **as it calls for attorney client and attorney work product information, and is not relevant to any claims or defenses at this point in this**

> **litigation**, and poses a safety risk to an employee that could be subject to retaliation for such disclosure.

(Plaintiff's 6/25/18 Answers to Defendants' Third Set of Interrogatories, at 2, Ex. U). Defendants objected to this absurd position and made their position clear that there was no wrongly withheld or destroyed video relevant to this case. (Moffa 6/27/18 and 7/9/18 Ltrs., Exs. Q and R). Notably, no motion to compel ever was filed by Plaintiff and he never amended his written discovery responses or disclosures on this subject. Driving the point home, in the now sealed Surreply to the Motion to Disqualify Kurtz, Nawara expressly stated that this was not a matter that Plaintiff would seek to pursue. (Dkt. 140 at 14.) No discovery was sought thereafter on this topic in this case, and Defendants rightly considered the matter put to rest.

Defendants made this position and the relevant history clear to Nawara's new counsel by letter of June 20, 2019 after receiving a since-withdrawn 30(b)(6) notice for a deponent who could testify about video retention and destruction at the CCSO. (Notice, Ex. V). Counsel responded by describing all of the facts above, and concluded that given this record, "the effort to depose people about videos no one has ever seen, that no one has ever been able to establish existed, and which cannot be said to have had relevant information is a complete waste of time". (6/20/19 Marmor Ltr. To Linden, emphasis added, Ex. W). Plaintiff did not pursue any 30(b)(6) deposition thereafter, and never moved to compel anything on this topic – once again, Defendants considered the matter to be over. Given these facts, Nawara has waived any argument regarding any allegedly deleted video recordings and allowing him or his counsel to argue or suggest that there was any spoliation of video evidence would prejudice Defendants with no probative purpose.

Permitting Nawara and his counsel to reference the alleged destruction of video recordings obviously would be prejudicial and unfair to the defendants in this case under Federal Rule of Evidence 403 – Plaintiff abandoned this theory and refused to provide discovery responses to

substantiate his counsel's claims. Nor is there any basis under Federal Rule of Evidence 401 to admit such evidence because there is no basis on which to permit a spoliation claim or inference. Assuming there was a video, mere destruction of a video, standing alone, would not warrant an inference that it contained information adverse to Defendants. *See Norman-Nunnery v. Madison Area Tech. College*, 625 F.3d 422, 428 (7th Cir. 2010). Rather, the destruction must have been for the "purpose of hiding adverse information" favoring a plaintiff's claims after the destroying party "knew, or should have known, that litigation was imminent." *Id; see also also Miksis v. Howard*, 106 F.3d 754, 762-763 (7thCir. 1997) (party seeking adverse inference must prove that other party intentionally destroyed evidence in bad faith); *Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983) (The Seventh Circuit "requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence" to support a missing or destroyed evidence instruction); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.,* 2013 WL 5377164 (S.D. Ill. Sept. 25, 2013) (no violation of duty to preserve where litigation was not imminent and information was destroyed in accordance with defendant's standard retention policies).

There is no evidence in this case that any defendant, or anyone at the CCSO, intentionally destroyed any video footage or considered that a video of the incident contained information adverse to Defendants or which would favor Nawara's claims. Nonetheless, Nawara's proposed exhibits include internal CCSO communications concerning efforts to obtain video evidence over 6 weeks after the 9/28/16 incident. (*See, e.g.*, PX 35 (CCSO_966 (11/18/16 emails between Burke and Reierson confirming that video footage would only be stored for 30 days); PX 113 (CCSO_1117 (February 2017 emails between Reierson and Jones-Hayes showing that Reierson had been trying to locate videos and referencing the 30 day retention policy)). The 30-day period

for the September 28, 2016 incident elapsed well before Nawara's November 18, 2016 referral for an FFD – and thus before anyone could have suspected litigation over his FFD might ensue. Moreover, deposition testimony confirmed that there are no cameras that would have recorded the interactions between Jones-Hayes and Nawara in the office next to the Cermak waiting room. (11/4/19 Jones-Hayes Dep. at 94:1-6, Ex. H; 10/30/19 Turrise Dep. at 49:4-20, Ex. X). No one has testified that they saw any videos, favorable to Nawara or not, other than those produced in this litigation.

Any missing video footage would not be relevant to any of the claims in this lawsuit. Nawara's only remaining claims involve conduct after the September 28, 2016 incident – his referral for an FFD based on a subsequent outburst in HR and not being permitted to work until he completed the FFD process. Since Defendant Reierson was unable to locate any recordings of the September altercation and the referral was based on Nawara's subsequent behavior, any allegedly deleted recordings would have had no bearing on the issues in this case. Allowing Nawara and his counsel to reference non-existent video footage could mislead the jury into making an improper adverse inference which cannot be supported by the record.

Nawara and his former counsel abandoned the theory that there is some missing video in this case over a year ago. There is no evidence of wrongful or knowing destruction of relevant video evidence by any defendant. Nawara and his counsel should be barred from referring to any purported video recordings not produced in this case or implying that any defendant spoliated or in any other way destroyed video evidence in this case.

**9. DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO EXCLUDE ANY REFERENCE TO PUNITIVE DAMAGES AND BAR RECOVERY OF SAME.**

Defendants move this Court for an order *in limine* to exclude punitive damages and bar any reference to punitive damages. Plaintiff has three claims remaining in this case: Violation of the Americans with Disabilities Act ("ADA") (Count I), Violation of the Illinois Whistleblower Act (Count IV), and Violation of due process related to the Merit Board Act (Count V). Plaintiff never included a request for punitive damages for his ADA or Merit Board Act claims in any of his three complaints. (See Dkts. 1, 22, 89.) Plaintiff did request "[p]unitive damages as allowed by law" under his Whistleblower Act claim – but the Whistleblower Act does not permit punitive damages where, as here, there is no claim of wrongful discharge. (See Dkts. 1, 22, 89.)[3]

In written discovery in this case, defendants Dart, Jones-Hayes, Burke, Reierson, and Shelby ("Certain Defendants") asked plaintiff to state with specificity the amount and category of damages he sought in this case, and for all documents in support thereof. (Plaintiff's Answers to Certain Defendants' Second Set of Interrogatories at 1-3, Ex. Y). Plaintiff's response nowhere identifies punitive damages as a category of damages – nor did he ever amend his answer to this interrogatory. Plaintiff's Rule 26 disclosures say he is seeking "[p]unitive damages against the individual Defendants" but does not explain under what theory – current or dismissed – he seeks such damages. (See 10/25/19 Supplemental Rule 26 Disclosures, Ex. Z). Plaintiff, by his own pleadings, thus confirmed that he cannot pursue punitive damages against the CCSO; and he should not be permitted to seek them against any individual defendant in this case because he failed to put them on notice of the theory under which he was doing so.

---

[3] Plaintiff sought punitive damages against Sheriff Dart, in his individual capacity, for his now dismissed § 1983 First Amendment claim (dismissed Count III). He did not seek punitive damages against any other individual or the CCSO in this dismissed count. (See Dkt. 89.) Sheriff Dart, in his individual capacity, was dismissed from this case on September 19, 2017. Despite his dismissal and the absence of any new alleged facts against the Sheriff, Plaintiff simply copied and pasted this request into his Second Amended Complaint. (See 3/28/19 Mem. Op. & Or. at 8, Dkt. 187.) Thus, the Second Amended Complaint does not specify a request for punitive damages against any individual Defendant.

To the extent Plaintiff may try to seek punitive damages in this case, as a matter of law, he cannot because punitive damages are not available against any defendant in this case.

*First*, the ADA bars punitive damages against a governmental entity defendant – and Count I is brought against the CCSO alone, *i.e.*, a governmental entity. (Dkt. #187 at 8). Specifically, 42 U.S.C. § 1981a(b)(1) provides that "A complaining party may recover punitive damages under this section against a respondent ***(other than a government, government agency or political subdivision)*** if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.") (emphasis added). *See also CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014) (recognizing that "compensatory damages are available in private causes of action under the ADA and Rehabilitation Act . . . [although] punitive damages are not") (*citing Barnes v. Gorman*, 536 U.S. 181 (2002)). Accordingly, no punitive damages can be sought under the ADA (Count I) against the CCSO, the only defendant named in that Count.

*Second*, the Illinois Whistleblower Act likewise does not provide for punitive damages as a remedy, except in cases of retaliatory discharge – and this case contains no such claim. *See* 740 ILCS 174/30 (damages limited to make whole relief and punitive damages not listed); *Brummel v. Grossman*, 2018 IL App (1st) 170516 ¶ 85 (the Whistleblower Act does not provide for punitive damages). Accordingly, plaintiff cannot as a matter of law seek punitive damages under Count IV against any defendant.

*Third*, the only count under which punitive damages is a legal possibility is Count V, the due process claim. As the Court is aware, this count originally was brought as a declaratory judgment claim only – which the Court rejected as a matter of law. (Dkt. # 185 at 26 ("The Court

will not enter a declaratory judgment here.") Instead, the Court construed this count as one for damages. *Id.* However, the Court did not propose that punitive damages could be awarded under Count V, and Plaintiff never sought to amend the complaint to add a punitive damages claim. Indeed, Plaintiff's response to the Motion to Dismiss confirms that he was seeking only declaratory and "make whole" relief under the Merit Board Act, and not punitive damages for a due process violation under § 1983. (See Resp. to Mot. To Dismiss at 25, Dkt. 154; Resp. to Mot. to Dismiss at 25, Dkt. 154 (Count V "asks for a declaratory judgment" and "that Plaintiff be *made whole* and his time, wages, and benefits be reinstated") (emphasis added)).

Moreover, Plaintiff asserted that Count V was brought under only "Illinois law, and as such, Illinois (not federal) law applies." Dkt. 154 at 25-27. He did not reference due process or § 1983 at all in this Count. On this record, this Court's ruling thus at most allowed Count V to proceed as a due process claim for damages to make Plaintiff whole – not for punitive damages that had never been alleged. As a result, no punitive damages may be sought under Count V.

In any event, Plaintiff has no evidence that would support a claim for punitive damages in this case. In § 1983 suits, a jury may consider an award of punitive damages only "when the defendant's conduct is show to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Green v. Howser*, 942 F.3d 772, 781 (7th Cir. 2019). To obtain punitive damages, "conscious wrongdoing is always required." *Kolstad v. ADA*, 527 U.S. 526, 538 (1999). The Second Amended Complaint (the first time Plaintiff included Count V) comes nowhere close to alleging that any Defendant's behavior was malicious, reckless, or at all done with knowledge of its unlawfulness. No defendant was asked in deposition or written discovery if he or she even considered whether Nawara should be sent to the Merit Board for a hearing. Since Plaintiff has not established a record supporting a claim for

punitive damages, he should not be permitted to seek them or present the question to the jury in this case.

Defendants therefore request that Nawara be barred from pursuing punitive damages in this case.

**10. DEFENDANTS' MOTION *IN LIMINE* NO. 10 TO EXCLUDE ANY EVIDENCE OF DAMAGES FOR WHICH NO PROOF OF SUCH DAMAGES HAS EVER BEEN OFFERED.**

Defendants move this Court for an order *in limine* excluding any evidence of damages beyond Nawara's non-wage damages. Plaintiff never provided any estimate, let alone a method of calculation, for his non-wage damages as required by Fed. R. Civ. P. 26(1)(1)(A)(3). Plaintiff's Rule 26 Disclosures identified only the categories of damages Plaintiff seeks, but provided no method of calculation or amounts. (Ex. Z, Plaintiff's Supplemental Rule 26 Disclosures, at 9). Nor does Plaintiff identify any calculation method or amount in the damages section of the Pretrial Order, now, on the eve of trial, for any damages other than his lost wages. Because Plaintiff has no evidence to substantiate his non-age economic damages, to permit him to seek whatever amounts he may eventually assert would be premised on impermissible speculation, guess, and conjecture. *See Bob Willow Motors, Inc. v. General Motors Corp.*, 872 F.2d 788, 797-98 (7th Cir. 1989); *Saunders v. City of Chicago*, 320 F. Supp. 735, 739 (N.D. Ill. 2004).

Plaintiff seeks damages for lost pensions, health insurance, personal days, sick days, vacation days, seniority, and promotions, but he never identified a damages expert (or other witness) to testify about what these damages are, how they would be calculated, or what was "lost." Nor is there any witness in this case who could. Cook County, not the Sheriff, calculates pension and health insurance payments, and these are complicated calculations about which Plaintiff has never deposed a witness or identified any exhibits. Plaintiff likewise has offered no evidence

regarding his alleged lost seniority and promotions. There are no documents or testimony regarding what others in the "promoted" or "more senior" positions are paid, or even what such positions may have been available to Nawara. Nawara himself cannot testify to these matters since he lacks any foundation on which to do so. *Biondo v. City of Chicago*, 382 F.3d 680 (7th Cir. 2004) (compensatory damages for lost promotions are determined using the statistical "loss of chance" method, for example, "if a person would have had a 25% chance of promotion from lieutenant to captain, then preventing that person from becoming a lieutenant should lead to a remedy equal to 100% of the benefits of being a lieutenant plus 25% of the incremental benefits of being a captain"). Clearly, any such determination of a lost promotion must rely, not only on expert data, but must also take into account the salary and benefits of the promoted position.

Moreover, Plaintiff does not propose a method by which he would calculate Nawara's lost sick, vacation or personal days in the so-called itemized statement of damages in his proposed Pretrial Order, nor are there any documents or testimony identified that do so. It is Plaintiff's burden to prove his damages, and without any evidence to support these claims – or anyone qualified to provide opinions as to the amounts (and the reasoning behind) such figures – Plaintiff should not be permitted to argue that he has lost pensions, health insurance, personal days, sick days, vacation days, seniority, and promotions. To be clear, Plaintiff could have retained and disclosed an expert on damages; he could have taken a deposition of a CCSO or County witness to learn how these items are calculated; and he could have propounded interrogatories with such questions – he did none of these things. Because Plaintiff failed to disclose the above-named economic damages and has no witness, expert or otherwise, who can attest to whatever the amounts of these alleged damages may be, Plaintiff should be barred from recovering them because they are impermissibly speculative.

There is no evidence in this case to support damages for anything other than allegedly lost wages and Plaintiff should be barred from pursuing any compensatory damages beyond wages in this case.

### 11. DEFENDANTS' MOTION *IN LIMINE* NO. 11 TO EXCLUDE REFERENCE TO INDEMNIFICATION BY COOK COUNTY AND REFERENCE TO DEFENSE COUNSEL AS "STATE'S ATTORNEYS"

Defendants move this Court for an order *in limine* barring any references to whether Defendants may be indemnified by the County of Cook for any compensatory damages returned against them. Whether the County of Cook provides indemnity is irrelevant to determining whether any of the defendants are liable to Plaintiff. Accordingly, all such references must be barred.

Defendants further move this Court for an order *in limine* barring any references to the Defendants' attorneys as "Assistant State's Attorneys"; "County Lawyers"; "County"; "State"; or "Government." All such references must be barred.

The clear purpose of such references will be to place in the jury's mind the inference that the County will pay any judgment that may be entered. Such an inference would be highly prejudicial in that the jury may believe the County has "deep pockets," thereby allowing the jury to award money to Plaintiff regardless of the facts. *Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill. 2003) (granting Defendants' motion *in limine* barring mention of the indemnification of Defendants by the City because the information was too prejudicial to survive the Rule 403 balancing test); *see also Walker v. Saenz*, U.S. Dist. LEXIS 16454, at *3 (N.D. Ill. Oct. 27, 1992) (same); and FED. R. EVID. 411.

Finally, since there are no issues that need to be resolved relating to any indemnification claims, and the County does not dispute that it will be required to pay any compensatory damages

award, if any, the County should not be included on the caption, verdict form, jury instructions, or in argument before the jury. *See Martinez v. City of Chicago*, 2016 US Dist. LEXIS 84231 at *48 (N.D. Ill. 2016).

**12. DEFENDANTS' MOTION *IN LIMINE* NO. 12 TO BAR PLAINTIFF FROM CALLING SHERIFF DART AS A WITNESS.**

Defendants move to bar Plaintiff from calling Sheriff Dart as a witness at trial. As the Seventh Circuit has recognized in the deposition context, "depositions of public officials create unique concerns." *Cannon v. Burge,* No. 05-2192, 2007 WL 2410392, at *2 (N.D. Ill. Aug. 20, 2007) (citing *Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir.1999)); see also *Crawford-El v. Britton*, 523 U.S. 574, 597-98, (1998) (a court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome *discovery or trial proceedings*."). (emphasis added). Public officials "should not have to spend their time giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence." *Olivieri v. Rodriguez*, 122 F.3d 406, 409-10 (7th Cir. 1997); *Hobley v. Burge*, No 03-c-3678, 2007 WL 551569, at *2 (N.D. Ill. Feb. 22, 2007) ("the deposition of a high-ranking public official creates unique concerns; it should not be a routine part of civil litigation."). A party seeking to depose a high ranking official "must first demonstrate that there is some reason to believe that the deposition will produce or lead to admissible evidence." *Id*.

Here, the same considerations applicable to depositions should be applied to bar calling Sheriff Dart as a witness at trial. Sheriff Dart, named in his official capacity only, possesses no unique or firsthand knowledge about the facts of this case. Indeed, Sheriff Dart was never deposed in this case, and he was dismissed from the case in his individual capacity. (See 3/28/19 Mem.

Op. & Or., Dkt. 187). There are no allegations that Sheriff Dart has any personal knowledge about or involvement in any of the remaining claims, accordingly any testimony by him would be completely irrelevant and he should not be called as a witness for any purpose. FED. R. EVID. 402. There is zero record evidence he has any personal knowledge of or involvement in the FFD process, the only process at issue in this case.

**13. DEFENDANT'S MOTION *IN LIMINE* NO. 13 TO BAR ANY ARGUMENT OR INFERENCE THAT DEFENDANT ALLEGEDLY FAILED TO CALL ANY WITNESSES.**

Defendants move to bar Plaintiff from arguing or implying that Defendant failed to call any particular witness or a sufficient number of witnesses at trial in this case. Although this concern is addressed by Seventh Circuit Pattern Jury Instruction 1.18, Defendant seeks an order *in limine* to this effect.

Plaintiff bears the burden of proving his case by the preponderance of the evidence. Therefore, any suggestion, implication, or argument that heightens the obligations or seeks to impose an improper burden on Defendants should be barred. Defendants have no obligation to put forth any witnesses and can rely on the insufficiency of Plaintiff's case in sending the case to the jury. Any argument to the contrary would suggest a burden that is improper under the law and the Federal Rules.

However, Federal Rules 401 through 404 do not prohibit Defendants from referring to or commenting on Plaintiff's failure to call any witness, as Plaintiff bears the burden of proof in this case. These Rules do not shift the burden of proof in civil litigation from Plaintiff to Defendant, thus the Rules do not bar Defendants from pointing out that Plaintiff has failed to present relevant witness testimony. For this reason, Defendants seeks an order *in limine* to bar any attempt by Plaintiff to argue Defendants' failure to call witnesses during trial is relevant or at all.

**14. DEFENDANTS' MOTION *IN LIMINE* NO. 14 TO BAR ALL NON-PARTY WITNESSES FROM THE COURTROOM FOR OPENING STATEMENTS AND DURING TRIAL TESTIMONY.**

Defendants move this Court for an order *in limine* to exclude all witnesses (other than the parties) from the courtroom during the opening statements and testimony of any and all other witnesses. Once a witness has completed testimony and is off the stand, the witness may observe the remainder of the trial.

**15. DEFENDANTS' MOTION *IN LIMINE* NO. 15 TO LIMIT TESTIMONY AND TO BAR PORTIONS OF REPORT OF FFD EXAMINER DIANA GOLDSTEIN.**

In September 2017, nearly a year after Nawara originally was ordered to undergo a fitness for duty exam, Diana Goldstein, PhD was retained by CorVel, Cook County's outside vendor, to determine whether Nawara was fit for duty – *i.e.* safe to return to work (Goldstein Dep. 55:9-15, Ex. AA). Dr. Goldstein was not retained or disclosed as an expert by any party to this case and was deposed as a fact, not an expert, witness. (Goldstein Dep. 45:18-20, "Q. And you understand you're a fact witness in this case? A. I do.")

Goldstein found Plaintiff Nawara fit for duty (a fact to which the parties have stipulated) and issued a report. (Ex. BB under seal). The report lays out questions Goldstein was asked by non-party CorVel (*see* Corvel Ltr., Ex. CC (part of Ex. 5 to dep)), identifies the background information she was provided (including a referral form from the CCSO, a statement from Jones-Hayes, and medical records obtained from Nawara's primary physician) summarizes her interview of Nawara, provides an assessment of his mental state and some of the traits he displayed to her, and concludes that he was fit for duty. (Ex. BB under seal). Both in her report and in her testimony, however, Goldstein also offers opinions (a) about whether "administration" at the CCSO "perceived" the altercation between Nawara and Jones-Hayes "as an anger management problem" at the time; (b) about Jones-Hayes's state of mind; (c) that the CCSO should have disciplined

Nawara for the altercation; and (d) as to facts she was unaware of, "discounted," or finds "irrelevant" in reaching these unasked-for opinions. Goldstein testified that she had no contact with anyone at the CCSO, including the CCSO's HR department, that might have formed a foundation for these views. Pursuant to FED. R. EVID. 702, FED. R. EVID. 703, FRCP 26, and FED. R. EVID. 403, those portions of Goldstein's report should not be presented to the jury, nor should any testimony from her be elicited on these subjects.

In her deposition, Goldstein acknowledged that there were two reasons for the CCSO's FFD referral – the "intimidating and inappropriate behavior directed towards his superior officer in response to a routine directive" and "weeks later, employee presented as aggressive and hostile in the human resources department." (Goldstein Dep. 33:10-34:3, Ex. AA) Goldstein never had any direct communication with anyone at the Sheriff's office (*id.* 42:8-10) and noted that when "we don't have access. It limits us a little bit." (*Id.* 69:17-70:8). Goldstein also never spoke to Supt. Jones-Hayes (*id.* 70:14-71:15) or to the two HR professionals who made the decision to refer Nawara for an FFD – Defendants Reierson and Shelby – and who experienced the aggression and hostility that led to the FFD referral order (*id.* 15:15-16:10), nor does she have any knowledge of what the CCSO's procedures are for FFD referrals. (*Id.* 75:3-19). Goldstein concedes that how to do FFD referrals is "not my role." (*Id.* 59:1-60:24). Goldstein likewise has no certificates or training in disciplinary procedures at jails, explaining "I'm a psychologist, no." (*Id.* 74:17-20).

Goldstein also confirmed that her role is not to be a fact-finder: "I was very clear in this report that I have no way to confirm one way or another what he said versus what she said. It's not my role, either." (*Id.* 81:18-82:2). Furthermore, Goldstein was unaware that there was a lawsuit at the time she prepared her report: "I specifically stayed away from that because the

question before me was **simply a fitness for duty**." (*Id.* 84:22-85:5)[4]. And Goldstein understands that the factual questions are to be left to the jury: **"Q. You weren't there, and the jury will end up deciding that. A. Absolutely."** (*Id.* 91:2-8). Goldstein admits that she has no basis to know whether Supt. Jones-Hayes or anyone in HR even knew that Nawara had filed a complaint against Jones-Hayes (*id.* 99:19-22 ("Not at all.")) nor did she know that Nawara was told in November 2016 that he was being referred for the FFD based on his behavior in HR: "I cannot know one way or another." (*Id.* 103:5-11). Notably, Goldstein testified unequivocally that she regarded the FFD referral in this case as "a good referral":

> I will accept a fitness for duty examination if I think that the prompting question is relevant and appropriate, it is some kind of mental health or cognitive issue where there has been some disruption at the workplace and somebody's been pulled off work as a result of that, and there may be a question of whether there is a personality, mental health, substance use, or cognitive problem prompting the issue that may be treatable, and that there is a question of safety effectiveness, you know, within the workplace. **So in this particular case I felt it was a good referral, and I accepted it.**

(*Id.* 76:1-14).

Despite this clear testimony, Goldstein's report includes passages that cross the line into unsubstantiated speculation about what unnamed "administration" at the CCSO perceived about Nawara at the time of the 9/28/16 incident and raises "concerns" about the timing of the FFD referral being made six weeks after the 9/28/16 incident with Jones Hayes – despite having no knowledge of what accounted for the timing, and ignoring the intervening cause of the FFD referral: Nawara's hostile and aggressive behavior at HR on November 18, 2016. (Report, Ex. BB under seal, at 7). The report also raises a "concern" about the timing of the FFD coming after Nawara having filed a "formal complaint" against Jones-Hayes – something she only heard from Nawara. (*Id.*). And the report concludes that "[d]iscipline is the best course of action going

[4] All emphasis added in this motion *in limine*.

forward should such behavior [by Nawara] recur." (*Id.* at 8). The problematic and inadmissible passages are these:

> I have similarly **been presented with no evidence that the 9/29/16 *[sic]* incident was perceived as an anger management problem by administration *at the time*;** Officer Nawara was no subjected to discipline, nor was he pulled from working or sent for a fitness for duty examination; **it is reasonable to infer** that had concerns about Officer Nawara's emotional state been significant at the time, one or both would have occurred. Yet Officer Nawara was returned to the very same assignment the next day, and worked two other units before ultimately being sent to a fourth assignment, where he would be interacting with both detainees and the general public, and required to carry a firearm. It is my understanding (**and I have been presented no evidence to the contrary**) that Officer Nawara worked all assignments following the 9/29/16 *[sic]* incident, without difficulty, for another approximately six weeks before being mandated for a fitness for duty examination on 11/18/16.
>
> As a fitness examiner, this set of facts places me in a difficult position; the County's own actions suggest Officer Nawara was not deemed a threat to the safety of coworkers, detainees, or the general public. **The only reasonable alternative explanation—**if in fact the incident occurred as Supt. Jones-Hayes described (it is not my role to fact-find and settle this apparent *he said/she said*—**is that management failed to discipline or otherwise act appropriately at the time of the incident**, and this was simply a missed opportunity for intervention. **Finally, I would be remiss if I did not express my concerns about the timing of this examination being requested on 11/18/16, not only so remotely in time from the incident itself on 9/29/16 *[sic]*, but following a formal complaint being filed by Officer Nawara in the interim**. * * * *
>
> As described above, unfortunately **I cannot accept as fact what was summarized by Human Resources seven weeks after the 9/29/16** *[sic]* **incident**. Notwithstanding this issue, **if indeed the incident transpired as Supt. Jones-Hayes described, such transgressions of the code of conduct ought to be addressed through discipline**, as it is my opinion that Officer Nawara was not suffering from any mental illness or other condition in need of treatment at the time of the 9/29/16 *[sic]* incident that would account for such behavior. That is to say, if he in fact conducted himself disrespectfully and threateningly to Supt. Hayes on 9/29/16 *[sic]*, treatment would not have been relevant in his particular case. Discipline is the best course of action going forward should any such behavior recur.

(Ex. BB under seal at 7, 8).

Just because Goldstein wasn't presented evidence on these topics does not mean there is no evidence that those involved in the aftermath of the 9/28/16 altercation between Jones-Hayes and Nawara had sincere concerns about Nawara's behavior. (See emails between Jones-Hayes

and her superiors, DX 5-10, attached hereto as Ex. DD). It simply means that CorVel did not provide such evidence to Goldstein – nor did she ask for it. Under no circumstances should Goldstein's ill-informed conclusions be presented to the jury, whose role it is to make the factual determinations Goldstein chose to include in her report. *See Hall v. Hall*, 2018 U.S. Dist. LEXIS 70149 at *8 (N.D. Ill. 2018) ("no expert may testify regarding what [a party] (or anyone else) believed, understood, or intended, as these are inappropriate subjects for expert testimony.") Moreover, because Goldstein did no investigation of the facts about the circumstances of the Jones-Hayes incident or the FFD referral, she has no basis to offer any testimony on these topics at all. *Id.* 2018 U.S. Dist. LEXIS 70149 at *9-10 (witness had "no qualifications, let alone an adequate basis in what he has reviewed, to testify as a matter of fact or opinion" regarding the timing of a transfer "no expert may testify in a manner that suggests that these are matters of fact or that they [have] personal knowledge in this regard . . . . they have made no investigation or inquiry themselves, but are rather relying on what others have said.")

The Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. When considering Rule 403, courts use "a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). "Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *Morgan v. City of Chicago*, 822 F.3d 317, 339 (7th Cir. 2016). Here, these considerations require exclusions of Goldstein's opinions about timing and state of mind.

Goldstein has no foundation for any of these arguments or opinions, as she herself admits. As detailed above, she did no investigation into why there was a delay between the request for an FFD referral meeting and the actual meeting; she never spoke to anyone at the CCSO, let alone anyone in the HR department; and she has no understanding at all about how the CCSO manages FFD referrals. Moreover, in reaching her unfounded conclusions, Goldstein made a judgment about what she deemed the reduced importance of the HR meeting – a judgment that steps squarely into the province of the jury and, again, for which she has utterly no foundation: "**I don't put a lot of stock into what happened in HR**. . . **that was not something I considered to have happened on the job**". (*Id.* 131:12-18). When pressed on her lack of any knowledge of who in "management" she believes didn't actually perceive Nawara as having an anger management problem – and when provided the facts that Defendants believe explain away her concerns – Goldstein stepped even further over the line, presuming to decide what is relevant and what is not and making wholly improper judgments about Jones-Hayes's state of mind in September of 2016:

> **Let me say none of that is relevant, frankly.** The bottom line is that he has an interaction that is concerning to a supervisor . . . to Jones-Hayes. Had she been so concerned about his conduct that day in the basement of Cermak, she would have made sure he got pulled [that day]. **The fact that she had trouble communicating with HR, I don't know what to say about that other than they better get their shit together. You know? That's crap. If he had been so unsafe, do you really think that she would have said, "Hmmm. You know, maybe it's just me."** If she had been so concerned about his ability to interact normally with everybody, not just her, . . . she had a responsibility I would say to pull him. **So I don't care whether she had trouble connecting with or whatever. . . .**[5]

(*Id.* 137:19-138:15); *see also Id.* 142:18-143:7 (**Q. Okay. I mean, you're applying basically your general experience, not anything you specifically know about this case, when you say**

[5] This is a remarkable statement since both the email from Jones-Hayes to her supervisor that led to the request that HR decide whether to send Nawara for a FFD exam and the statement from Jones-Hayes to HR explicitly stated that Jones-Hayes was unsure if Nawara's problem was specific to her or more general, and Goldstein testified there "[a]bsolutely" can be cases of workplace violence where people are not necessarily potentially violent to everybody, but they have specific targets that they're angry at." (*Id.* 67:10-21; see Ex. LL (referral form and email) and Ex. MM under seal (Jones-Hayes statement provided to Goldstein).)

**that [their own behavior can reasonably be inferred to show that they themselves did not have fitness concerns or he would have been pulled]. You didn't speak to any of the people who made the decisions. A. I can tell you it is irrelevant.**") Despite that diatribe, Goldstein returned to the conclusion that the referral for an FFD still was "appropriate" (*id.* 140:4-141:11) and eventually conceded that "**it's a perfectly fine referral based on what happened at HR, like what I said, or what happened in September**." (*Id.* 144:8-11).

Because Goldstein is not a disclosed expert by any party in this case, her report should not be admissible for any non-factual purpose – *e.g.* anything other than the admissions by Nawara reflected in the report and the findings Goldstein made about Nawara's mental condition and fitness for duty. *Mt. Funding, Inc. v. Frontier Ins. Co.*, 2004 U.S. Dist. LEXIS 6915, *11 (N.D. Ill.) ("Fact witnesses intended to give expert opinions also must be disclosed as experts, although they need not submit an expert report."); *see also Hall*, 2018 U.S. Dist. LEXIS 70149 at *8-10 (barring testimony as to defendant's state of mind and as to facts about which witness had no personal knowledge). Had Goldstein been named as an expert by Plaintiff, Defendants would have been entitled to bar her opinions under FED. R. EVID. 702 and 703; *see also* Daubert *v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). As it is, Goldstein herself admits that she was unaware that this litigation even was pending at the time she wrote her report. This, her gratuitous opinions and conclusions are inadmissible hearsay under FED. R. EVID. 801.

Even if Plaintiff could identify some means to admit Goldstein's gratuitous commentary, the prejudicial nature of these passages far outweighs their probative value. *See Williams v. Schwartz*, 2018 U.S. Dist. LEXIS 92754, *27-28 (N.D. Ill. 2018) (expert witnesses "must avoid unnecessary, conclusory and pejorative characterizations of the evidence and the credibility of witnesses . . . since the probative value of the testimony is substantially outweighed by the danger

of unfair prejudice and essentially transforms the expert into an advocate.") They invade the province of the jury by finding facts without any basis to do so, and if presented with a putative – albeit undisclosed – "expert," the jury could well defer to Goldstein's judgments rather than making their own, on a much more complete record that Goldstein had. *Id.* at *28 ("Thus type [of] testimony also invades the province of the jury which is charged with, and capable of making, its own determinations as to the credibility of witnesses and the weight of the evidence.") Unlike Goldstein, the jury will have an opportunity to hear the facts from the witnesses who were present both at the 9/28/16 incident and at the 11/18/16 HR meeting; the jury also will be provided with documentary evidence of the deliberations made by Jones-Hayes and her superiors; the reasons why there was a delay in calling Nawara into HR; and the reasons HR decided to send Nawara for an FFD. (See Ex. G, Reierson Dep., at 179:20-180:24; Ex. I, Shelby Dep. at 67:2-70:9; DX 5-10, attached hereto as Ex. DD).

This leads to a final reason not to permit the problematic passages from the report or testimony related thereto into evidence – waste of time and confusion under FED. R. EVID. 403. Having to show all of the reasons why the jury should disregard Goldstein's unfounded and improper views of the facts and what should have been done in this case will unnecessarily extend the trial. *See Smith v. Garcia*, 2018 U.S. Dist. LEXIS 7953, *22 (N.D. Ill.) (excluding evidence of "other misconduct because "[t]hese sideshows raise a risk of confusion and waste of juror time out of proportion to any probative value they might have").

Attached hereto is a redacted version of Goldstein's report, removing material that should not be presented to the jury in any form, either in the document or through testimony. (Ex. EE under seal). Defendants ask that this version of the report, if it is to be presented to the jury at all,

be the only version permitted in this case, and for an order instructing Goldstein and the parties not to elicit testimony relating to these passages and the opinions therein in any way.

**16. DEFENDANTS' MOTION *IN LIMINE* NO. 16 TO BAR EVIDENCE OF OFFERS OF COMPROMISE/SETTLEMENT IN THIS OR ANY OTHER LAWSUIT, OF FINAL DISPOSITIONS OF OTHER LAWSUITS, OR OF OTHER LAWSUITS BROUGHT AGAINST ANY OF THE DEFENDANTS.**

Defendants move this Court to bar Plaintiff from offering any witnesses, testimony, or evidence of settlement discussions in this matter, settlement of other CCSO cases, or final disposition of any other lawsuits involving the CCSO. Rule 408 plainly prohibits Plaintiff from offering evidence, asking for testimony about, or referencing any settlement discussions in this case or others to infer liability in the part of any defendant. It is a matter of public record that other lawsuits have been filed against the CCSO and its employees. Evidence about the fact that any defendant has been sued, as well as the disposition of such cases, whether by settlement or otherwise, is irrelevant and has no probative value in this case. FED. R. EVID. 401, 403.

The policy of encouraging settlement of disputed claims means that any efforts to settle disputes are inadmissible as a means of proving liability. *See In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 (7th Cir. 1979). Accordingly, neither efforts outside this case, nor efforts in this case, to compromise a legal dispute may be used against any defendant in this case. A signal example is the HIPAA form that Plaintiff ultimately agreed to sign so that his FFD exam could proceed. (PX 17). Plaintiff cannot argue that this document shows that any defendant conceded that the forms presented to Nawara in November 2016 were improper in any way. Likewise, no evidence of the mediation efforts in this case or of information provided therein should be permitted in this case for any purpose.

**17. DEFENDANTS' MOTION *IN LIMINE* NO. 17 TO BAR UNDISCLOSED WITNESSES.**

Defendants request that the Court bar any undisclosed witnesses from testifying at trial. Fed. R. Civ. P. 37(c)(1) excludes undisclosed witnesses unless the failure to disclose was justified or harmless. *Musser v. Gentiva Health Services*, 356 F.3d 751 (7th Cit. 2004). Here, Plaintiff has included OPR investigators on his witness list who he never adequately disclosed before. For this reason, and because the details and findings of the OPR investigation are irrelevant, Plaintiff should be barred from calling such witnesses to testify in this case.

**18. DEFENDANTS' MOTION *IN LIMINE* NO. 18 TO BAR EVIDENCE OF DISCIPLINE AGAINST ANY DEFENDANT IN THIS CASE.**

Defendants request an order *in limine* barring any reference to discipline against any individual defendant that is unrelated to this case. No discipline ever was issued against any defendant with respect to any aspect of this case, and any other discipline would be irrelevant and prejudicial under FED. R. EVID. 401 and 403. It also would constitute other "bad acts" evidence, barred by FED. R. EVID. 404(b). *See Huddleston v. U.S.* 485 U.S. 681, 685 (1988); *U.S. v. Shriver*, 842 F.2d 968, 974 (7th Cir. 1998).

**19. DEFENDANTS' MOTION *IN LIMINE* NO. 19 TO BAR REFERENCE TO THE ECONOMIC LAYOFF OF DEFENDANT SHELBY OR TO SUGGEST THAT SHE LEFT HER EMPLOYMENT FOR ANY PERFORMANCE-RELATED REASON.**

Defendant Winifred Shelby worked as an Occupational Health Nurse for the CCSO for three years, until December 2017. (Shelby Dep. 18:23-20:8, Ex. I). Through no fault of her own, Nurse Shelby was laid off due to budget cuts that followed revocation of the Cook County "sugar tax." (*Id.* 20:9-13). The "sugar tax" was and remains a hotly debated subject, and has no bearing on any facts in this case. And because Nurse Shelby's lay-off had nothing to do with her performance, the reasons for her departure likewise have no relevance to this case. Moreover, the risk of prejudice from reference to the sugar tax far outweighs the probative value of permitting

the Plaintiff to elicit such testimony. Pursuant to FED. R. EVID. 401 and 403, defendants ask that the Court bar any testimony or argument concerning her lay-off and the reasons therefor.

**20. DEFENDANTS' MOTION *IN LIMINE* NO. 20 TO BAR SUBSEQUENT REMEDIAL MEASURE EVIDENCE, INCLUDING COMMUNICATIONS FROM KARYN WILLIAMS.**

As this Court is aware, Karyn Williams, the former Executive Director of HR at the CCSO has been a source of significant controversy and legal arguments in this case. Dana Kurtz's decision to represent her while Williams still was an employee of the CCSO ultimately led to Kurtz's withdrawal as Plaintiff's counsel here, and to significant sanctions for her misconduct with respect to that representation and to the motion practice that ensued. (Of note, Kurtz has paid the entirety of the sanction and therefore the Court's judgment on these matters will not be the subject of any appeal by Kurtz).

In the course of the disqualification and sanctions motion practice, Kurtz, Williams, and later Plaintiff's new counsel repeatedly argued that Williams did not have any involvement with the Nawara lawsuit or with FFD policy at the CCSO. (See Resp. to Motion to Disqualify, Dkt. 108-1 and Williams Declaration thereto, Dkt. 108-5; Motion to Supplement the Record on Motion for Sanctions, Dkt. 216; Defendants' Response, Dkt. 218; and 10/9/19 Hrg. Tr. at 2-4, Ex. FF). Time and again, Defendants pointed out that this was not the case, hence the prejudice to them from the improper engagement with Kurtz. The most recent example was on October 4, 2019, when Plaintiff's new counsel sought to supplement the record on the sanctions motion, arguing that they should be permitted to meet with Williams because two of the defendants allegedly testified that they didn't consult with Williams regarding Nawara or FFDs. The Court granted the motion to supplement, but concluded based on Nawara's counsel's motion and statements that

they should not be permitted to confer with Williams. (10/9/19 Hrg. Tr. at 6-7, Ex. FF). Discovery now is closed and Williams has not been named by any party as a trial witness in the Pretrial Order.

Quite surprisingly given this record, Plaintiff has included several documents drafted by Karyn Williams on his Exhibit List in the Pretrial Order. These include an April 19, 2017 email from Williams to Rebecca Reierson proposing that they discuss changes to the FFD process, and saying "we should no longer request employee to sign off to allow the sheriff access to their medical records. Let's have corvel handle that process." (PX 51, Ex. GG under seal). Reierson responded the same day. (PX. 52, Ex. HH under seal). A similar email was sent by Williams to Shelby on April 21, 2017. (PX 53, Ex. II under seal). None of these documents should be permitted in evidence in this case as all are evidence of subsequent remedial measures and are barred under FED. R. EVID. 407. *See also Awalt v. Marketti*, 2015 U.S. Dist. LEXIS 91546, *41 (N.D. Ill. 2015) ("The point of Rule 407 is to allow parties to make changes in conditions for the better without worrying about it being used against them later at trial.") These documents obviously fall within Rule 407 and must be barred.

That conclusion only is underscored by the unfair prejudice of seeking to use documents drafted by Karyn Williams in light of the extensive effort by Nawara's counsel to convince this Court that Williams knows nothing related to this case. There is no basis now to change that tune, and Nawara should not be permitted to introduce evidence created by Ms. Williams at this late date.

Other exhibits on Plaintiff's list also should be barred under Rule 407 – specifically, new "Management Guidelines for Fitness for Duty Concerns" that were issued on May 17, 2017, long after Nawara was referred for an FFD and well after this lawsuit was filed on March 29, 2017. (PX 55, Ex. JJ). These guidelines also are irrelevant to this case, since they did not apply at the

time of Nawara's FFD referral. *See* FED. R. EVID. 401. Likewise, the HIPAA form that Nawara finally executed on August 17, 2017 (PX 17, Ex. KK under seal) cannot be deemed an admission of liability by any defendant in this case.

**21. DEFENDANTS' MOTION *IN LIMINE* NO. 21 TO BAR USE OF PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS.**

Plaintiff has included three proposed exhibits in his Pretrial Order exhibit list that inadvertently were produced in this case. All three reflect privileged attorney-client communications with Rebecca Reierson concerning matters that themselves are subject to motions *in limine* – communications with Nawara's union and videos of Cermak on the day of the 9/28/19 incident. Moreover, the communications themselves were prepared by counsel based on hearsay, and those counsel have not been named as witnesses in this case and therefore no foundation can be laid for admission of their communications. FED. R. EVID 401, 801. Upon discovering these documents inadvertently had been produced, Defendants' counsel asked Nawara's counsel to destroy them, in accordance with well-established law. To the extent that Plaintiff's counsel refuses to do so, Defendants seek an order *in limine* to bar these exhibits and any reference thereto: PX 108, 113 and 117.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motions *in Limine* be GRANTED.

Respectfully submitted,

THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, MATTHEW BURKE, REBECCA REIERSON, and WINIFED. R. EVID.D SHELBY,

/s/ Sarah R. Marmor

Sarah R. Marmor
Suzanne Milne Alexander
Morgan G. Churma
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Ph. 312-726-6000
smarmor@scharfbanks.com
salexander@scharfbanks.com
mchurma@scharfbanks.com