**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN NAWARA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF COOK, a unit of local Government; THOMAS DART, in his individual and official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON and WINIFRED SHELBY in their individual capacities,<br><br>Defendants. | No. 17 C 2393<br><br>The Honorable Rebecca R. Pallmeyer<br>Judge Presiding |

***PLAINTIFF'S AMENDED TRIAL BRIEF***

Plaintiff, John Nawara ("Nawara"), pursuant to the Standing Order Establishing Pretrial Procedure, for his Amended Trial Brief states:

## *A. NATURE OF THE CASE*

The Cook County Sheriff's Office ("CCSO") violated the Americans with Disabilities Act by ordering Nawara to undergo a fitness for duty ("FFD") examination and by suspending and disciplining Nawara for refusing to sign medical release forms authorizing, without limitation, the release of all of Nawara's medical records and medical information to the CCSO (Pl. Ex. 1). Nawara, a correctional officer, was not permitted to work from November 18, 2016 until September 27, 2017. During this time, the CCSO repeatedly demanded that Nawara sign the unlimited releases before he would be permitted to complete the FFD process and return to work (*see*, Pl. Exs. 5 & 7). On August 18, 2017, after Nawara filed EEOC charges and the instant lawsuit, Nawara signed a limited release allowing his medical records related to his FFD exam to be

released to the CorVel Corporation (Pl. Ex. 17).

On September 11th and 12th, 2017, Nawara completed an FFD examination and on September 16, 2017, Dr. Diana Goldstein found Nawara fit to return to duty without restrictions (Pl. Ex. 19). Dr. Goldstein noted that Officer Nawara was returned to the very same assignment the day following the September 28, 2016 Jones-Hayes incident, which was the purported reason for the FFD, and given an assignment where he was required to carry a firearm. Nawara was previously was found fit for duty by Dr. Robin Kroll on March 8, 2017 (Pl. Ex. 12).

The underlying complaint by Defendant Jones-Hayes that Nawara was insubordinate, which led to the FFD, was unfounded (Pl. Ex. 90). Jones-Hayes alleged that Nawara exhibited rage on September 28, 2016. On March 7, 2018, the Sheriff's Office of Professional Review ("OPR") found insufficient evidence to support Jones-Hayes' claim that Nawara violated the Sheriff's Orders, Rules, Regulations and/or Policies related to the September 28, 2016 incident. Also, Jones-Hayes' version of the events was contradicted by Sergeant Thomas Conley and Correctional Officer James Turrise.

Nawara also asserts that the Defendants violated the Illinois Whistleblower Act (740 ILCS 174/15) related to his complaints that the medical release forms and Defendants' actions were unlawful. In addition, Nawara asserts that the Merit Board Act (55 ILCS 5-3-7001, *et seq*.) granted him a protected property interest in his job, and that his suspension, without a hearing, deprived him of due process under the Fourteenth Amendment to the United States Constitution and Article I of the Illinois Constitution.

### *B & C. THE CONTESTED FACTS THE PLAINTIFF EXPECTS THE EVIDENCE WILL ESTABLISH and THE PLAINTIFF'S THEORY OF LIABILITY BASED ON THOSE FACTS*

***ADA Claims***

**Facts:** On September 29, 2016, Defendant Burke sent a memorandum to Karyn Williams, Executive Director of HR, requesting that Nawara be evaluated for fitness for duty. Despite alleged anger management concerns, Nawara was reassigned to a position where he was required to carry a gun and continued to work until November 18, 2016. On November 18, 2016, Nawara was told to report to Human Resources, where he met with defendants Reierson and Shelby. Reierson and Shelby ordered a fitness for duty evaluation of Nawara. Reierson and Shelby provided Nawara with two forms for the release of his medical records. (Pl. Exs. 1 and 2).

Reierson told Nawara that he could not complete the fitness for duty process and would not be able to return to work unless he signed and returned both forms to HR. Nawara refused to sign the forms because he did not believe it was lawful for the Sheriff's Office to require him to sign forms that authorized, without limitation, the release of all of his medical records and medical information to the Sheriff's Office. One of the forms authorized the release of all of Nawara's medical information to the Sheriff's Office (Pl. Ex. 1).

On November 30, 2016, Reierson wrote Nawara stating, in part,

> On 11/18/16 you were informed by the Occupational Health Nurse for the Sheriff's Office, Winifred Shelby, that you were required to undergo a Fitness for Duty (FFD) evaluation before returning to active duty. You took the ***forms*** in order to review them prior to signing and have failed to return them to Ms. Shelby… ***These signed documents must be returned*** to Ms. Shelby by Monday, 12/5/16, so the FFD evaluation process can begin. If they are not received by that date, it will be determined that you are not participating in the process and your time off of work from 11/18/16 will be unauthorized. Further, you are not able to return to work until you have completed the FFD process.

(Pl. Ex. 5).

On December 21, 2016, Nawara, through counsel, sent Reierson and Shelby an email informing them that the release form was illegal (Pl. Ex. 8). On February 28, 2017, Reierson again wrote Nawara stating, in part,

> The signed waiver documents given to you on November 18, 2016 must be returned to Ms. Shelby by Wednesday, March 8, 2017 so the FFD evaluation process can proceed. This is the last notification you will receive. If the forms are not received by March 8, 2017, your time off work (November 18, 2016-present) will be deemed unauthorized. Further, you are not able to return to work until you have completed the FFD process.
>
> I have enclosed another copy of the forms for your convenience…

(Pl. Ex. 7).

The forms referenced in Reierson's letters are the same forms contained in Plaintiff's Trial Exhibits 1 and 2. On March 13, 2017, Nawara's counsel wrote Reierson stating, in part:

> Officer Nawara has been placed on an unpaid leave, and is burning his sick and vacation time to his detriment, which he will run out soon, because he would not sign a HIPPA medical release form for his own medical records without limitation of time, scope, or any other limitations…
>
> [T]he Sheriff's position to require Officer Nawara (or any other employee) to complete a medical release form so that the Sheriff's Office can obtain that individuals medical records is unlawful and in violation of the ADA.

(Pl. Ex. 11).

Nawara was not permitted to work from November 18, 2016 to September 27, 2017. Nawara did not receive any pay during much of this time and, for the remainder, was forced to use his own time and benefits to get paid.

**Theory of Liability:** The facts will establish that the CCSO "intentionally" violated the ADA by ordering an FFD examination and requiring him to sign medical release forms which were not ADA compliant. Nawara and his attorney repeatedly complained that the forms violated the ADA, and the Defendants did nothing except punish the Plaintiff. The unlimited releases for all of Nawara's medical records violate the ADA. There was no basis for the Defendants to require Nawara to undergo an FFD examination and sign an unlimited release for all of his medical records as a condition for his continued employment. The ADA prohibits employers from inquiring about employees' medical histories, except under certain limited circumstances:

> A covered entity shall not require a medical examination and shall not make inquires of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

(42 U.S.C. § 12112(d)(4)(A); *Wright v. Illinois Dep't of Children & Family Servs.*, 798 F.3d 513, 522 (7th Cir. 2015); Court's 3/28/19 Opinion, p. 11, Doc. 187).

The Sheriff's Office bears the burden of establishing that the inquiry is "consistent with business necessity… [and] must show that the asserted business necessity is vital to the business, as opposed to a mere expediency." *Wright*, 798 F.3d at 523. The burden of proving business necessity is high. *Id*. The above statute pertaining to requests for information protect "[a]ll employees, regardless of whether they have a qualifying disability under the ADA." *Wright*, 798 F.3d at 522; Court's 3/28/19 Opinion, p. 11.

The CCSO will not be able to demonstrate that ordering Nawara to undergo an FFD examination was job-related and consistent with business necessity. For example, the FFD Log for the CCSO contains an entry: "Complainant would not provide more detailed information. Not enough in write up to justify FFD (Pl. Ex. 32)." Jones-Hayes' description of what transpired on September 28, 2016 was contradicted by her own witnesses. For example, Correctional Officer Barbie Gannon testified *inter alia* that Jones-Hayes repeatedly poked Nawara in the chest; that Nawara did not say anything which would cause Jones-Hayes to poke Nawara; that she never observed Nawara lose his temper; that he never yelled or raised his voice at Jones-Hayes; and that she never saw Nawara do anything improper (Gannon Dep., pp. 55-64). The absence of business necessity is underscored by the CCSO's admission that the real cause of the FFD referral was not the September 28, 2016 Jones-Hayes incident but Nawara's alleged behavior more than a month later at HR on November 18, 2016 (Def's Response to Motions *in limine*, pp. 3-4, Doc. 255).

"The EEOC's stated position on the scope of medical inquiry is that an employer may not request an employee's complete medical records under the disguise of job-relatedness and business necessity." *Farmiloe v. Ford Motor Co.*, 277 F. Supp.2d 778, 782–83 (N.D. Ohio 2002); *Jackson v. Regal Beloit America, Inc.*, 2018 WL 3078760, at *9 (E.Dist.Ky. June 21, 2018). The Seventh Circuit relies on EEOC Enforcement Guidance in deciding cases under the ADA. *Wright*, 798 F.3d 522-24 and footnote 25; *O'Neal v. City of New Albany*, 293 F.3d 998, 1009 (7th Cir.2002) ("We previously have recognized that, "[a]lthough not binding on this court, such administrative interpretations do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.").

The EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA shows that the forms are unlawful. It provides:

> How much medical information can an employer obtain about an employee when it reasonably believes that an employee's ability to perform the essential functions of his/her job will be impaired by a medical condition or that she/he will pose a direct threat due to a medical condition?
>
> **An employer is entitled only to the information necessary to determine whether the employee can do the essential functions of the job or work without posing a direct threat. *This means that, in most situations, an employer cannot request an employee's complete medical records because they are likely to contain information unrelated to whether the employee can perform his/her essential functions or work without posing a direct threat.***

(EEOC Enforcement Guidance: Disability–Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act, Question 13 (July 27, 2000) (emphasis added).

This case is analogous to *Jackson v. Regal Beloit America, Inc.*, 2018 WL 3078760 (E.Dist.Ky. June 21, 2018), where the court granted the employee partial summary judgment as to liability under the ADA. The court noted that an employee's unlawful medical examination/inquiry claim reduces to two essential inquiries: (1) whether the employer performed or authorized a

medical examination or disability inquiry; and if so, (2) whether the exam/inquiry was job-related and consistent with business necessity. *Jackson*, 2018 WL 3078760, at *6. The Court found that the employee carried her burden with respect to the first element noting:

> It is undisputed that Regal required Jackson to submit to a medical examination. During that medical examination and afterwards, Regal also made a 'disability-related inquiry' by requesting Jackson's medical records related to her colon-cancer surgery. Therefore, the burden shifts to Regal to 'prov[e] that [the] medical examination' and disability inquiry were 'job-related and consistent with business necessity.'"

*Jackson*, 2018 WL 3078760, at *7, *citing Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014).

The Court rejected Regal's business necessity defense:

> Moreover, even if Regal had provided a sufficient justification for its request for a medical examination or disability inquiry, which it has not, the scope of the examination and the inquiry 'must remain appropriately narrow.' *James v Goodyear Tire & Rubber Co.*, 354 Fed.Appx. 246, 249 (6th Cir. 2009) …Therefore, 'an employer may not request an employee's complete medical records under the disguise of job-relatedness and business necessity.' *Farmiloe v. Ford Motor Co.*, 277 F.Supp.2d 778, 782-83 (N.D. Ohio 2002); *see also*, *EEOC Guidance*, Part B. 10.
>
> Here, any appropriate scope was far surpassed…Regal has put forth no rationale supporting its broad request.
>
> Put simply, Regal has failed to carry its 'burden of proving that' the medical examination or inquiry was 'job-related and consistent with business necessity.' [citation omitted] …By failing to limit the scope of the medical examination and inquiry and failing to put forth a legally valid justification for demanding it, Regal violated the ADA…
>
> Accordingly, Jackson is entitled to partial summary judgment in her favor on her unlawful-medical examination claim under the ADA and the KCRA. 'In order to prevail on this claim, however, [Jackson] must still establish that [she] suffered cognizable injury in fact of which the violation is a legal and proximate cause.' [Citations omitted]. Therefore, the matter of damages is best left for a jury.

*Jackson*, 2018 WL 3078760, at *9-10.

In this case, the CCSO cannot, as a matter of law, carry its burden of demonstrating "business necessity" and that the asserted business necessity is vital to the business to justify an

FFD examination and the release of Nawara's complete medical records. Under the ADA, the Sheriff's Office had no right to demand and obtain Nawara's entire medical records, and to order an FFD examination.

***Illinois Whistleblower Act Claims***

**Facts:** On December 21, 2016 and on March 13, 2017, Nawara, through counsel, informed Reierson and Shelby that the release form was illegal (Pl. Exs. 8, 11). On March 24, 2017, Nawara filed a charge of discrimination with the EEOC, claiming in part, that the forms he was requested to sign violate the ADA (Pl. Ex. 28). On March 23, 2017, Nawara, through counsel, sent a copy of the EEOC charge to Defendant Reierson, Kramer (counsel for the Sheriff's Office) and Sheriff Dart (Pl. Ex. 48). On March 29, 2017, Nawara filed his Complaint in this case (Doc. 1).

**Theory of Liability:** The facts will establish the CCSO and the individual Defendants' personal liability under the Illinois Whistleblower Act ("IWA"). The IWA prohibits an employer from retaliating against an employee who discloses "information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal law, rule, or regulation." *Wheeler v. Piazza*, 364 F.Supp.3d 870, 884 (N.D. Ill. 2019); 740 Ill. Comp. Stat. 174/15(b). As amended in 2008, the IWA defines "employer" to include "any person acting within the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." *Id*.

The *Piazza* Court, citing *Mack v. City of Chicago*, 2017 WL 951369, (N.D. Ill. Mar. 10, 2017, *Hower v. Cook County Sheriff's Office*, 2016 WL 612862 (N.D. Ill. Feb. 16, 2016), and *Bello v. Village. of Skokie*, 2014 WL 4344391 (N.D. Ill. Sep. 2, 2014), ruled that "'when an individual interacts with an employee on behalf of the employer—and * * * [supervisors] surely meet this

requirement * * *—that person may himself be considered an employer within the meaning of the statute.'" *Piazza*, 364 F.Supp.3d at 884, *quoting Mack*, 2017 WL 951369, at *6.

The facts will show that each of the individual defendants satisfy the definition of employer under the IWA and are liable under the IWA. Defendants Jones-Hayes, Burke and Reierson were supervisors. Reierson was an HR manager; Burke was chief of staff and Jones-Hayes was a superintendent. Defendant Shelby was an HR nurse, who along with Reierson, had final decision making authority related to FFD matters. Each of the Defendants had final decision making authority.

The facts will demonstrate that Nawara repeatedly complained that it was unlawful and in violation of the ADA for the Defendants to require him to sign the medical releases. The facts will further establish that the Defendants retaliated against him for complaining about the releases and requiring him to undergo an FFD examination. For example, on December 21, 2016, Nawara, through his attorney, complained about the Defendants' unlawful conduct. On March 13, 2017, Nawara's attorney complained, *inter alia*, that the release forms, without limitation in time, scope or any other limitation is unlawful and in violation of the ADA. On March 24, 2017, Nawara filed a charge of discrimination with the EEOC complaining about being required to sign the release forms which he reasonably believed violated the ADA. On June 23, 2017, Nawara filed his first amended complaint adding Jones-Hayes, Reierson, Shelby and Burke as additional defendants again complaining that the forms violated the ADA as well with other causes of action (Doc. 22).

The facts will show numerous instances of retaliation after Nawara complained about the unlawful release forms and the FFD evaluation. Plaintiff was subjected to disciplinary action; he was placed on unauthorized status, denied pay, lost benefits and promotion opportunities and subjected to OPR investigations.

**Nawara's Procedural Due Process Claims**

**Facts:** Pursuant to the Cook County Sheriff's Merit Board Act, Nawara has a property interest in continued employment with the CCSO. Section 3-7012 of the Merit Board Act provides that "no deputy sheriff in the County Police Department, [and] no full-time deputy sheriff not employed as a county police officer or county corrections officer ... shall be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board [formed to hear such issues under the Act]." 55 ILCS 5/3-7012. Plaintiff never received any type of a hearing prior to his unlawful suspension.

**Theory of Liability:** As the Court noted in its March 28, 2019 opinion, prior to August 17, 2018, § 5/3-7011 of the Merit Board Act provided that the Sheriff could only suspend an officer as a "disciplinary measure" for "a reasonable period, not exceeding 30 days" without a Board hearing. Sheriffs—Disciplinary Proceedings—Cook County, 2018 Ill. Legis. Serv. P.A. 100-912 (H.B. 5303); (Memorandum Opinion & Order, 3/28/13, Doc. #187, p. 26).

"Procedural due process in constitutional law generally involves a familiar line of inquiry: (1) is there a property or liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?" *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017). To state a Fourteenth Amendment claim for the deprivation of a property interest without due process, a plaintiff must demonstrate that (1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law. *Moss v. Martin*, 473 F.3d 694 (7th Cir. 2007).

The facts will establish each of the aforementioned elements. Nawara's suspension violated due process under both the United States and the Illinois Constitutions. Plaintiff had a

constitutionally protected property under the Merit Board Act. He suffered a loss of that interest amounting to a deprivation of his livelihood. The deprivation occurred without due process. Plaintiff was never provided with a meaningful opportunity to be heard and to contest his suspension for refusing to sign the unlawful releases in violation of due process.

***D. PLAINTIFF'S THEORY OF DAMAGES OR OTHER RELIEF***

As to each of Plaintiff's causes of action, Nawara seeks make-whole relief including the lost wages and benefits from on or about November 18, 2016 to September 27, 2017. Lost wages total $64,653.36. Plaintiff is entitled to damages for emotional distress in an amount to be determined by the jury. Depending on the evidence presented, Plaintiff's counsel anticipates requesting $300,000.00 or less as and for emotional distress. He is entitled to all the benefits he would have otherwise received, but for Defendants' unlawful and wrongful conduct, including prejudgment interest. Plaintiff seeks a permanent injunction requiring the Defendants to restore Plaintiff to the position where he would have been, absent the Defendants' wrongful conduct, including a restoration of benefits and seniority. Plaintiff is also entitled to attorneys' fees and costs under the ADA, the Illinois Whistleblower Act and, for the denial of due process. Plaintiff intends to seek punitive damages against the individual defendants on his due process claims. If punitive damages are allowed by the Court, depending on the evidence presented, Plaintiff's counsel anticipates requesting $15,000.00 or less as and for punitive damages.

***Damages under the ADA***

Under the ADA, Nawara is entitled to compensatory damages. *See, Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018). Because this is not a public accommodation case, Plaintiff is not required to prove intent. However, intentional discrimination under the ADA does not mean

discrimination motivated by hostility or contempt for people with disabilities. *Martin v. Emmanuel*, 2019 WL 4034506, at *5 (N.D. Ill. Aug. 27, 2019). A plaintiff can establish intentional discrimination by showing deliberate indifference. *Lacy*, 897 F.3d at 863. The Seventh Circuit applies a two-part standard for deliberate indifference: (1) knowledge that a harm to a federally protected right is substantially likely; and (2) a failure to act upon that likelihood. *Id*.; *Reyes v. Dart*, 2019 WL 1897096, at *5 (N.D. Ill. Apr. 29, 2019). Under the ADA, attorneys' fees are to be awarded to prevailing plaintiffs as a matter of course. *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 520 (7th Cir. 2003).

***Damages under the Illinois Whistleblower Act***

Section 30 of the Illinois Whistleblower Act provides:

> Damages. If an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole, including but not limited to the following, as appropriate:
>
> > (1) reinstatement with the same seniority status that the employee would have had, but for the violation;
> >
> > (2) back pay, with interest; and
> >
> > (3) compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees.

740 ILCS 174/30.

Under the Whistleblower Act, Nawara is entitled to make-whole relief including back pay, with interest, compensatory damages including damages for emotional distress, and an award of attorneys' fees and costs.

***Procedural Due Process Damages***

A plaintiff who succeeds on a procedural due process claim is entitled to those damages

that are caused by the denial of the process required by the Constitution. *Carey v. Piphus*, 435 U.S. 247, 263 (1978); *Alston v. King*, 231 F.3d 383, 386 (7th Cir. 2000). These damages may include damages for emotional distress caused by the denial of due process. *Alston*, 231 F.3d at 386. Nawara will prove that he is entitled to damages for emotional distress, lost earnings and damages for lost benefits. Plaintiff is also entitled to an award of attorneys' fees and costs.

Plaintiff also seeks punitive damages against the Defendants for the denial of procedural process. *See*, *Redding v. Fairman*, 717 F.2d 1105, 1118 (7th Cir.1983) *cert. denied*, 465 U.S. 1007 (1984) (noting that punitive damages and injunctive relief may be available where plaintiff's procedural due process rights have been violated even if there are no actual damages).

***E. PLAINTIFF'S THEORY OF ANTICIPATED MOTION FOR DIRECTED VERDICT***

Plaintiff anticipates moving for a directed verdict, at least as to liability, on his ADA and due process claims. Nawara asserts that the release forms authorizing the release of all of Plaintiff's medical records violates the ADA on its face. *See*, *Jackson*, 2018 WL 3078760; Court's 3/28/19 Opinion, p. 11, Doc. 187. The CCSO may not request Nawara's complete medical records under the disguise of job-relatedness and business necessity. *Farmiloe v. Ford Motor Co.*, 277 F.Supp.2d 778, 782-83 (N.D. Ohio 2002); *Jackson*, 2018 WL 3078760, at *9. The CCSO cannot meet its affirmative burden that all of Plaintiff's medical records was a business necessity and job-related for any fitness for examination. CCSO will also be unable to meet its burden showing that an FFD examination was job related and a business necessity.

Additionally, Nawara anticipates that he will be entitled to a directed verdict on his procedural due process claims. There can be no dispute that Nawara has a protected property interest under the Merit Board Act. The evidence will show that Plaintiff suffered a loss of that interest amounting to a deprivation, and that the deprivation occurred without due process of law.

It is undisputed that Plaintiff was suspended in excess of thirty (30) days and that he was not provided with a hearing before the Merit Board or given any other meaningful opportunity to be heard.

**JOHN NAWARA**

*s/ Richard F. Linden*
One of Plaintiff's attorneys

Richard F. Linden
312/590-0211
lindenlaw@gmail.com

Peter V. Bustamante
312/346-2072
pvbust@bustamantelaw.com

Linden & Bustamante
17 North State Street, Suite 1550
Chicago, Illinois 60602