**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JOHN NAWARA,

               Plaintiff,

            v.

COUNTY OF COOK, a unit of local
Government; THOMAS DART, in his
individual and official capacity as Sheriff of
Cook County, Illinois, KAREN JONES-
HAYES, MATTHEW BURKE, REBECCA
REIERSON and WINIFRED SHELBY in their
individual capacities,

               Defendants.

Case No. 17-cv-02393

Chief Judge Rebecca R. Pallmeyer

***PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR AWARD OF
BACKPAY/LOST WAGES AND EQUITABLE RELIEF***

**JOHN NAWARA**

*s/ Richard F. Linden*
One of Plaintiff's attorneys

Richard F. Linden
312/590-0211
lindenlaw@gmail.com

Peter V. Bustamante
312/346-2072
pvbust@bustamantelaw.com

Linden & Bustamante
17 North State Street, Suite 1550
Chicago, Illinois 60602

## TABLE OF CONTENTS

1. *THE ADA PROVIDES FOR AN AWARD OF BACK PAY* ................................................1

2. *THERE IS NO BASIS FOR DEFENDANT'S CONTENTION THAT THE ADA DOES NOT PERMIT BACK PAY BECAUSE NAWARA WAS NOT SUSPENDED AND THIS IS NOT A DISCRIMINATION CASE* ......................................................................................................3

3. *SEVENTH CIRCUIT CASE LAW DOES NOT PRECLUDE BACK PAY* ....................9

4. *NAWARA PROVIDED SUFFICIENT PROOF FOR EQUITABLE RELIEF* ...........................................................................................................11

    a. *The Equitable Relief Requested would place Nawara in the Same Position but for the Discrimination* ...............................................12

5. *DEFENDANT'S MITIGATION ARGUMENT FAILS* ....................................14

    a. *The Sheriff's Office Forfeited/Waived the Failure to Mitigate* .................15

    b. *Mitigation has No Application Because Nawara was Placed on Leave* .........................................................................................15

    c. *The Sheriff's Office Failed to Sustain its Burden of Proving that Nawara failed to Mitigate his Damages* ....................................16

## TABLE OF AUTHORITIES

29 U.S.C. §§ 706.794.................................................................................................10

42 U.S.C. § 2000e-5(g)(2)(A)..................................................................3, 4, 5, 6, 7, 8

3/28/19 *Nawara v. Dart,* MTD Opinion, p. 11, Doc. 187...................................................8

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)............................................5, 12

*Arroyo v. Volvo Grp. N. Am., LLC*, 2017 WL 2985649 (N.D. Ill. July 13, 2017)..........................1

*Bradford v. Village of Lombard*, 2014 WL 4269098 (N.D. Ill. Aug. 29, 2014)......................15

*Brown v. Smith*, 827 F.3d 609 (7th Cir. 2016)...............................................................19

*Chesser v. State of Ill.*, 895 F.2d 330 (7th Cir. 1990)....................................................13

*Chriswell v. Rosewell*, 70 Ill.App.3d 320 (1st Dist. 1979)..............................................16

*Coleman v. Lane*, 949 F.Supp. 604, 608 (N.D. Ill. 1996).................................................18

*Defreitas v. United Airlines, Inc.*, 2020 WL 635970, at *3 (N.D. Ill. Feb. 11, 2020)....................1

*Diaz v. Kraft Foods Global, Inc.*, 2013 U.S. LEXIS 22296 (N.D. Ill. 2013)................................8

*E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824 (7th Cir. 2013).................................................5

*E.E.O.C. v. Costco Wholesale Corp.*, 903 F.3d 618 (7th Cir. 2018).....................................10

*E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569 (7th Cir. 1997).................................12, 14

*Gracia v. Sigmatron Int'l, Inc.*, 130 F.Supp.3d 1249 (N.D. Ill. 2015),
    *aff'd*, 842 F.3d 1010 (7th Cir. 2016) .................................................................12, 16, 18

*Fruhling v. Champaign County*, 95 Ill.App.3d 409 (4th Dist. 1981) ..................................16

*Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198 (7th Cir. 1989)..............................15, 17, 18

*Green v. Joy Cone Co.*, 278 F.Supp.2d 526 (W.D. Pa. 2003) ..........................................8

*Henderson v. Borough of Baldwin*, 2017 WL 6371361 (W.D. Pa. 12/13/2017)........................9

*Hertzberg v. SRAM Corp.*, 261 F.3d 651 (7th Cir. 2001)...............................................9, 10

*Hrobowski v. Henderson*, 2000 WL 6822673 (N.D. Ill. May 24, 2000) ...........................10, 11

*Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037 (7th Cir. 1994) ..................................12, 17

*Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016) ..................................................6

*N.L.R.B. v. Midwestern Pers. Servs., Inc.*, 508 F.3d 418 (7th Cir. 2007)......................................17

*Ortega v. Chicago Bd. of Educ.*, 280 F.Supp.3d 1072
(N.D. Ill. 2017)......................................................................1, 2, 3, 4, 5, 12, 13, 14, 15, 17

*Pals v. Schepel Buick & GMC Truck, Inc.,* 220 F.3d 495 (7th Cir. 2000)........................................2

*Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1 (1st Cir. 1999) ................................................................2

*Stanley Gudyka Sales Co. v. Lacy Forest Prods. Co.,* 1988 WL 102061,
(N.D. Ill. Sept. 28, 1988) ....................................................................................................15

*Stewart v. Gen. Motors Corp.*, 542 F.2d 445 (7th Cir. 1976) .........................................................13

*Stragapede v. City of Evanston*, 125 F.Supp.3d 818 (N.D. Ill. 2015) ...........................2, 14, 16, 17

*Thompson v. Altheimer & Gray*, 2001 WL 1618717 ......................................................................13

*U.S. v. City of Chicago*, 853 F.2d 572 (7th Cir. 1988) ...................................................................17

*U.S. Equal Emp't Opportunity Comm'n v. Gurnee Inn Corp.*, 914 F.2d 815
(7th Cir. 1990)......................................................................................................................15

*United States v. Melvin*, 948 F.3d 848 (7th Cir. 2020) .....................................................................6

*Vega v. Chicago Park Dist.*, 351 F.Supp.3d 1078 (N.D. Ill. 2018),
*aff'd*, 954 F.3d 996 (7th Cir. 2020)......................................................................................2

*Wittman v. Koenig*, 831 F.3d 416 (7th Cir. 2016)............................................................................4

*Wheeling-Pittsburgh Steel Corp. v. Underwriters Labs., Inc.*, 81 F.R.D. 8
(N.D. Ill. 1978)....................................................................................................................12

1.   ***THE ADA PROVIDES FOR AN AWARD OF BACK PAY***

Defendant's contention that the ADA does not permit back pay is unsupported by the facts and by the law. The jury spoke and returned a verdict in favor of Plaintiff finding that Defendant violated the ADA. The jury's verdict establishes that Plaintiff was the victim of unlawful employment discrimination. Because the jury returned a general verdict, Plaintiff prevailed on both his claims, *i.e.,* that Defendant violated the ADA by (1) prohibiting him from working unless he signed unrestricted medical release forms and, (2) by having him submit to an unlawful fitness for duty evaluation and examination.[1]

It is uncontested that Plaintiff was not allowed to work for 311 days from November 18, 2016 until September 26, 2017. For the first 156 days, Plaintiff paid himself by using vacation days, personal days, sick days, and other time that he had earned throughout his 18 years of service. For the next 155 days, Plaintiff received **no pay at all**. Defendant's response glosses over these facts and instead advances arguments that have not been recognized by any court—arguments which would render the ADA toothless.

"A successful ADA plaintiff is entitled to back pay and attorneys' fees, which is usually sufficient incentive to ensure access to the courts." *Defreitas v. United Airlines, Inc.*, 2020 WL 635970, at *3 (N.D. Ill. Feb. 11, 2020). Employees who prove employment discrimination under the ADA are presumptively entitled to back pay. *Ortega v. Chicago Bd. of Educ.*, 280 F.Supp.3d 1072 (N.D. Ill. 2017) (back pay award of $430,697 for discharged teacher under the ADA in a case not involving race, color, religion, sex or national origin discrimination); *Arroyo v. Volvo Grp. N.*

---

[1] Although the jury did not find for Plaintiff's on his claim for emotional distress, the jury was tasked with two determinations, (1) did the Defendant violate the ADA, and (2) did Plaintiff prove emotional distress. In the reading of the jury instructions and in the verdict form, the jury was informed that, depending on their verdict, the Court would determine back pay. As discussed herein, a violation of the ADA triggers back pay.

*Am., LLC*, 2017 WL 2985649, at *4 (N.D. Ill. July 13, 2017) ($141,388.53 back pay award in ADA case for a discharged employee not involving race, color, religion, sex or national origin discrimination); *see also*, *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495 (7th Cir. 2000) (back pay awarded in ADA action did not count against a maximum award of compensatory damages under Civil Rights Act of 1991); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 15 (1st Cir. 1999) (a prevailing ADA claimant is presumptively entitled to all back pay which would have accrued from the termination date to the entry of judgment); *Vega v. Chicago Park Dist.*, 351 F.Supp.3d 1078, 1087 (N.D. Ill. 2018), *aff'd*, 954 F.3d 996 (7th Cir. 2020) (once the jury found that there has been employment discrimination, there is a presumption that the employee is entitled to back pay); *Stragapede v. City of Evanston*, 125 F.Supp.3d 818, 823 (N.D. Ill. 2015) (following jury verdict on ADA claims involving an FFD and city worker's termination after being placed on administrative leave, court awarded $354,070.72 in back pay). The court has broad equitable discretion to fashion back pay awards to make a plaintiff whole and once the jury finds employment discrimination, there is a presumption that the employee is entitled to back pay. *Id.*

In *Ortega v. Chicago Bd. of Educ.*, *supra*, following a jury verdict, the court awarded a teacher $430,697 in back pay under the ADA. The court stated: "Complete relief for a victim of discrimination generally will include an award of back pay, indeed such an award is presumptively proper once a violation has been shown." *Id.*, at 1078. The court summarized the available remedies under the ADA:

> Back pay and other forms of equitable relief are available in an ADA case, *see* 42 U.S.C. § 1981a(a)(2); 42 U.S.C. § 2000e-5(g)(1), but the decision of whether to award them is reserved for the trial court. *See Pals v. Schepel Buick & GMNC Truck, Inc.*, 220 F.3d 495, 500 (7th Cir. 2000). When making that decision, the trial court 'must respect the findings implied by the jury's verdict,' *id.*, but is otherwise vested 'with broad discretion to fashion a remedy for unlawful discrimination,' *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997). The guiding principle in exercising that discretion is that the court 'has not merely the

power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.' [citation omitted]. 'And where a legal injury is of an economic character, [t]he general rule is, that …[t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.' [citations omitted].

*Ortega*, 280 F.Supp.3d at 1077-78.

Defendant's contention that the ADA prohibits an award of back pay is simply false. Not awarding back pay would circumvent the ADA. First, it would violate the rule and intent of the ADA to make the victim of discrimination whole. Back pay is required to place Plaintiff in the same position he would be in, absent the discrimination. Defendant continues to argue that Plaintiff is responsible for his damages because he refused to participate in its FFD process—a process the jury found unlawful. The argument is nonsensical because Plaintiff was not required to acquiesce to Defendant's unlawful demands and Nawara had the right to seek redress under the ADA.

Second, a court is duty bound to render a decree which will so far as possible eliminate the discriminatory effects of the past and deter like discrimination in the future. There must be consequences for Defendant's violations of the ADA. Without consequences, Defendant, and other employers, will have no incentive to refrain from unlawful practices.

**2.     *THERE IS NO BASIS FOR DEFENDANT'S CONTENTION THAT THE ADA DOES NOT PERMIT BACK PAY BECAUSE NAWARA WAS NOT SUSPENDED AND THIS IS NOT A DISCRIMINATION CASE***

Defendant argues that under 42 U.S.C. § 2000e-5(g)(2)(A) Plaintiff is not entitled to back pay because he was not suspended and because this is not a discrimination case. (Resp., pp. 2-5). In addition to misreading the statute, Defendant's argument is fundamentally flawed.

The first flaw is that this is an employment discrimination case under the ADA. The second flaw is that the argument directly conflicts with the ADA and well-established precedent, as cited

3

in the preceding section, that employees who prove employment discrimination under the ADA are presumptively entitled to back pay.

The third flaw is that 42 U.S.C. § 2000e-5(g)(2)(A) was never intended to prohibit an award of back pay for employment discrimination under the ADA. When Congress enacted the ADA, it did not create specific statutory remedy provision contained within the ADA. Rather, the ADA incorporates the remedies available to a plaintiff in a Title VII discrimination action. *Ortega*, 280 F.Supp.3d at 1077.

If it is Defendant's argument that back pay is not available because Plaintiff was not a victim of race, color, religion, sex, or national origin discrimination, then, there would be no remedy and/or no make whole relief for many types of discrimination prohibited under the ADA. Disabilities and handicaps affect everyone across the board. If Defendant's argument is that Plaintiff was "not suspended," the very language of § 2000e-5(g)(2)(A) supports Plaintiff's claim for back pay. If Defendant's argument is that only those people who are suspended based on racial, religious, sexual or national origin discrimination are entitled to back pay, then employers could circumvent the ADA by putting different labels on a suspension.

Statutory language is interpreted in the context in which it is used, not in isolation, but as part of a whole in relation to the language of surrounding or closely-related statutes, and reasonably, to avoid absurd or unreasonable results. *Wittman v. Koenig*, 831 F.3d 416, 422 (7th Cir. 2016). Defendant's construction of the ADA, particularly in relation to § 2000e-5(g)(2)(A), would circumvent and thwart the purpose of the ADA. "District courts have wide discretion to fashion a complete remedy, which may include injunctive relief, in order to make whole victims of employment discrimination." *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013) (internal quotations omitted). As noted above, the guiding principle in exercising this discretion is

to render a decree which will so far as possible eliminate the discriminatory effects of the past, as well as, bar like discrimination in the future. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); *Ortega*, 280 F.Supp.3d at 1078. The injured party is to be placed, as nearly as possible, in the situation he would have occupied if the wrong had not been committed. *Albemarle*, 422 U.S. 418-19; *Ortega*, 280 F.Supp.3d at 1078.

Defendant's construction of the ADA is illogical; it would violate the intent of the statute and would render the ADA toothless. It would provide an incentive for employers to violate and circumvent the protections under the ADA. There must be consequences for violations of the ADA. Equally important, Defendant's construction of the statute would deny Nawara make-whole relief. Nawara, through no fault of his own, was not allowed to work for 311 days. For 156 days he used up accrued benefits, which were never replaced, and for 155 of these days, he received **no** pay from Defendant.

The fourth flaw is Defendant's argument directly conflicts with the express and unambiguous language of 42 U.S.C. § 2000e-5(g)(2)(A). The statute does not say what Defendant claims it says. Defendant's argument rests on the fact that Plaintiff was not "suspended." The court so stated and Plaintiff agrees that he was never suspended. Either Defendant is misreading the statute and/or it is misrepresenting the meaning of the statute. Removing superfluous language, the statute reads:

> **No order of the court shall require … the payment … of any back pay, if such individual was** … **suspended … for any reason other than discrimination …**

42 U.S.C. § 2000e-5(g)(2)(A) (emphasis added).[2]

---

[2] In its entirety, the statute reads: "No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any backpay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement, or was suspended or

This does not mean that a person must be suspended in order to be entitled to back pay. If this were the case, no one in Plaintiff's position would ever be made whole, despite intentional discrimination by the employer. This was never the intent of the ADA or 42 U.S.C. § 2000e-5(g)(2)(A).

As with all questions of statutory interpretation, the court starts with the text of the statute to ascertain its plain meaning. *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020); *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016). If the statutory language's plain meaning is unambiguous, the court's inquiry ends there. *Melvin*, 948 F.3d at 852. Even under Defendant's construction of the statute, the plain and unambiguous language of the statute shows that 42 U.S.C. § 2000e-5(g)(2)(A) prohibits back pay if the individual was suspended for reasons other than discrimination. In this case, because the jury found discrimination and because Plaintiff was not suspended (as stated by the Court and the Defendant), this purported prohibition has no application.

Plaintiff's counsel may have unartfully used the word "suspension" to describe Plaintiff's employment status during the course of the nine-day trial. There is no question that, although Plaintiff was never suspended, he suffered damages in terms of lost benefits and lost wages. Defendant's own documents establish that he was not suspended. Rebecca Reierson's November 30, 2016 letter to Plaintiff states:

> …The time you have been off of work since 11/18/16 is only authorized if you are participating in the FFD process… If [the signed medical releases] are not received by [12/5/16], it will be determined that you are not participating in the process and **your time off of work from 11/18/16 will be <u>unauthorized.</u>** Further, you are not able to return to work until you have completed the FFD process.

---

discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin, in violation of section 2000e-3(a) of this title."

6

(Plaintiff's Trial Exhibit 5) (emphasis added).

Ms. Reierson's February 28, 2017 letter to Plaintiff contains similar language:

…You were referred for a fitness for duty based on an interaction you had with Superintendent Jones in which you were alleged to have acted in an overly aggressive and threatening manner…The signed waiver documents given to you on November 18, 2016 must be returned to Ms. Shelby by Wednesday, March 8, 2017 to the FFD evaluation process can proceed… **If the forms are not received by March 8, 2017, your time off work (November 18, 2016-present) will be deemed unauthorized.** Further, you are not able to return to work until you have completed the FFD process.

(Plaintiff's Trial Exhibit 7) (emphasis added).[3]

The box checked for the reason for Plaintiff's absence on Defendant's "Release for Duty Authorization" dated September 26, 2017, allowing Plaintiff to return to full duty states "Non-Duty Illness." (Plaintiff's Trial Exhibit 21). The release for duty contains a box for "Suspension" which is not checked. *Id.* The record establishes that Plaintiff was never suspended and therefore Defendant is wrong, even under its own construction, that § 2000e-5(g)(2)(A) bars an award of back pay.

Defendant makes a bold assertion that "courts in this district and elsewhere confirm that § 2000e-5 does not permit an award of back pay where no discrimination has been alleged or proved." (Resp., p. 4). According to the Jury, Nawara proved employment discrimination under the ADA. This argument also fails because it is dependent on Defendant's unsustainable construction of 42 U.S.C. § 2000e-5(g)(2)(A).

Moreover, the authorities cited by Defendant do not support the claim that Nawara is not entitled to back pay. Defendant's reliance on *Green v. Joy Cone Co.*, 278 F.Supp.2d 526 (W.D.

---

[3] In her February 28, 2017 letter, Reierson's stated reason for the FFD referral was Plaintiff's interaction with Supt. Jones-Hayes. She makes no mention of Plaintiff's alleged conduct at HR on November 18, 2016 which provides additional compelling evidence that the FFD referral had nothing to do with what allegedly occurred at HR.

Pa. 2003) is misplaced. This Court has already examined *Green* and found it "unpersuasive." (3/28/19 MTD Opinion, p. 11, Doc. 187). The Court discussed differences between the two cases, including the fact that the cases are governed by different sections of the ADA. *Id*., at 11-12. *Green* involved "pre-offer medical inquiries," which are covered by 42 U.S.C.A. § 12112(d)(2)(A), as opposed to 42 U.S.C.A. § 12112(d)(4)(A), which applies to employees.

Green, a job applicant, filed a class action alleging that the employer violated the ADA in its job application process. Included in the application materials was an authorization to allow access to the applicant's medical records. *Green*, 278 F.Supp.2d at 529. Green alleged a *per se* violation of the ADA's prohibition against "pre-offer" medical inquiries. *Id*. at 530. The medical release form, however, made clear that a medical inquiry would take place only after an offer of employment, which is expressly authorized under the ADA. *Id*.

The *Green* court granted summary judgment to the employer based on Green's failure to establish an injury-in-fact, causation, and lack of standing. *Id*. The *Green* Court stated that "[i]n accordance with 42 U.S.C. § 2000e-5(g)(2)(A), the Court generally may not order the grant of back pay to an individual who was refused employment … for any reason other than discrimination." *Id*. at 544. Thus, *Green* is readily distinguishable from this case and provides no support for Defendant's claim that the ADA prohibits back pay for Nawara.

Defendant asks the Court to "see" *Diaz v. Kraft Foods Global, Inc.*, 2013 U.S. LEXIS 22296 (N.D. Ill. 2013)[4] for the unsupported claim that "Courts in this district and elsewhere confirm that § 2000e-5 does not permit an award of back pay where no discrimination has been alleged or proved." (Resp., p. 4). First, this statement does not apply here because Nawara in fact proved employment discrimination under the ADA. Second, *Diaz* lends no support to Defendant's

---

[4] The February 19, 2013 *Diaz* order is not available on Westlaw.

argument that Nawara is not entitled to back pay. *Diaz* is not even an ADA case. The Diaz plaintiffs alleged Kraft violated Title VII for refusing to hire them as technicians because they were Hispanic. They did not allege that they applied for the position. The Court held that plaintiffs can obtain an award of back pay, only if they proved that Kraft would have hired them as technicians. Unlike *Green* and *Diaz*, this is not a refusal to hire case, and these cases provide no support to deny Nawara back pay.

Defendant's reliance on *Henderson v. Borough of Baldwin*, 2017 WL 6371361 (W.D. Pa. 12/13/2017) is equally misplaced. *Henderson* dealt with a police officer who applied for a promotion to lieutenant. Two other police officers received the promotion, both of whom, were more qualified than the plaintiff. The court found a "technical violation" of the ADA by "conducting a pre-promotion medical examination" in violation of § 12112(d). The court ruled that there was no factual basis, from which, it could reasonably infer that the defendant's decision to promote the other officers was "causally related to the medical examinations that plaintiff took and passed." *Id.* at *3. Plaintiff's claims failed because he could not demonstrate a cognizable injury in fact from the violation and that it was a legal and proximate cause. *Id.*

In short, there is no basis for Defendant's claim that 42 U.S.C. § 2000e-5(g)(2)(A) prohibits an award of back pay. Defendant's argument is directly at odds with decades of well-established precedent and common sense.

### 3.    *SEVENTH CIRCUIT CASE LAW DOES NOT PRECLUDE BACK PAY*

Defendant fails to cite any authority supporting its claim that Seventh Circuit case law bars back pay (Resp., pp. 5-9). *Hertzberg v. SRAM Corp.*, 261 F.3d 651 (7th Cir. 2001) is inapposite and did not even involve the ADA. Hertzberg sued her former employer for sexual harassment and retaliatory discharge under Title VII. The plaintiff claimed that she was subjected to a hostile work

environment and retaliated against after she complained about sexual harassment. Her complaint did not include a discriminatory discharge claim, and constructive discharge was not submitted to the jury or proven. *Id*. at 656-57.

The court noted that a victim of discrimination that leaves his or her employment as a result of the discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement, or back and front pay. *Id*. at 659. The Seventh Circuit held that the requirement that a plaintiff establish a discriminatory discharge for lost pay precluded such a recovery for Hertzberg. *Id*. at 660. Her failure to plead or prove that she had been constructively discharged prevented a lost pay award. *Id*.

*Hertzberg* is not relevant to the claims herein. The Seventh Circuit explained the application of *Hertzberg* in *E.E.O.C. v. Costco Wholesale Corp.*, 903 F.3d 618, 628 (7th Cir. 2018), where it stated:

> The district court misinterpreted our precedent, however, when it stated that backpay is unavailable to remedy wages lost during unpaid leave. The district court reached that conclusion based on *Hertzberg v. SRAM Corp.*, which holds that '[a] victim of discrimination [who] leaves his or her employment must show either an actual or constructive discharge in order to receive the equitable remedy of [backpay].'

*Hrobowski v. Henderson*, 2000 WL 6822673 (N.D. Ill. May 24, 2000) is not analogous to the case at bar. *Hrobowski* is a failure to accommodate a disability case under the Rehabilitation Act (29 U.S.C. §§ 706. 794). The employer's right to demand that the employee undergo an FFD was not disputed. *Id*. at *1. As the court stated that "the real issue here is whether Defendant's obligation to make an accommodation to Plaintiff's alleged disability required some other action in response to her refusal to sign the purported release." *Id*. at *4. In denying defendant's motion for summary judgment, the court rejected "Plaintiff's implicit suggestion that she is necessarily entitled to back pay for any period of time during which she was on unpaid leave while negotiating

10

with the Postal Service concerning the medical release." *Id*. at \*5. It noted that "[t]here is no suggestion of any bad faith in the Postal Service's request that Plaintiff undergo a fitness-for-duty examination." *Id*.

Unlike *Hrobowski*, this is not a failure to accommodate case or a case under the Rehabilitation Act. Also, unlike *Hrobowski*, a jury in this case found that the Sheriff's Office acted in bad faith when it found it guilty of unlawful employment discrimination under the ADA. Finally, the court in *Hrobowski* merely stated that the plaintiff was not necessarily entitled to back pay during the time she was on unpaid leave—it did not find that Hrobowski was not entitled to back pay. *Id*. at \*5.

Here, in defiance of the jury verdict, Defendant asserts: "Nawara's authorized leave—which allowed him to collect pay—was due to his own actions, not some discriminatory conduct by his employer. And that leave was extended by several months, again by his own choices." (Resp., pp. 7-8). Defendant cannot ignore that it was found to have engaged in unlawful discrimination under the ADA. Nawara was not required to accede to Defendant's unlawful demands to sign unrestricted medical releases and submit to an FFD. Nawara was unlawfully prevented from working for 311 days through no fault of his own.

### 4. *NAWARA PROVIDED SUFFICIENT PROOF FOR EQUITABLE RELIEF*

Defendant offers no evidence to dispute the make-whole relief sought by Nawara. Plaintiff testified that he lost money from November 18, 2016 to September 26, 2017. He testified that from November 18, 2016 to April 25, 2017, he used his earned benefit time including vacation days, personal days and sick days in order to get paid. Plaintiff offered unrebutted testimony that in 2016, his yearly salary was $75,394.49. Nawara testified that the money lost is equal to his yearly salary divided by 365 days and multiplied by 311 days, which equals $64,240.23.

11

Defendant chose not to call its payroll witness(es) listed in the final pretrial order (Doc. 248-4) to dispute Nawara's lost earnings, or the fact that he was forced to use his benefit time including vacation time, sick time, personal days, etc. for 156 days, and that he received no pay for another 155 days.

The fact that Nawara used payroll records produced by Defendant to refresh his recollection as to his exact salary in 2016 does not undermine his testimony. Federal Rule of Evidence 612 codifies the settled doctrine for writings used to refresh the recollection of a witness while testifying. *Wheeling-Pittsburgh Steel Corp. v. Underwriters Labs., Inc.*, 81 F.R.D. 8, 10 (N.D. Ill. 1978). In addition, defense counsel did not object to Nawara refreshing his recollection and hence waived any objection.

It is appropriate to use the most recent payroll records to establish back pay. *See Gracia v. Sigmatron Int'l, Inc.*, 130 F.Supp.3d 1249, 1257 (N.D. Ill. 2015), *aff'd*, 842 F.3d 1010 (7th Cir. 2016). Once a plaintiff has established the amount of damages he or she claims resulted from the employer's conduct, the burden shifts to the defendant to show that the plaintiff failed to mitigate damages or that damages were in fact less than the plaintiff asserts. *Hutchison*, 42 F.3d at 1044. This Defendant did not do.

### a. The Equitable Relief Requested would place Nawara in the Same Position but for the Discrimination

As is set forth in the instant motion, where the legal injury is of an economic character, the general rule is, that the injured party is to be placed, as near as may be, in the situation he or she would have occupied if the wrong had not been committed. *Albemarle Paper Co.*, 422 U.S. at 418-19; *Ortega*, 280 F.Supp.3d at 1078. A court is vested with broad discretion to fashion a complete remedy for unlawful discrimination. *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997).

"Complete relief for a victim of discrimination generally will include an award of back pay; indeed, such an award is presumptively proper once a violation has been shown." *Id*.

When faced with "uncertainty which clouds the task" of computing a back pay award, the Seventh Circuit has "set down three general rules: (1) unrealistic exactitude is not required; (2) ambiguities in what an employee ... would have earned but for discrimination should be resolved against the discriminating employer; [and] (3) the district court, far closer to the facts of the case than [the Court of Appeals] can ever be, must be granted wide discretion in resolving ambiguities." *Stewart v. Gen. Motors Corp.*, 542 F.2d 445, 452 (7th Cir. 1976); *Ortega*, 280 F.Supp.3d at 1092-93. The calculation of back pay is not an exact science. *Thompson v. Altheimer & Gray*, 2001 WL 1618717, at *2.

Nawara's back pay for the period of April 25, 2017 to September 26, 2017 is a simple calculation for the time he did not receive any compensation from Defendant. This amount totals $32,016.84 (155 days at $206.56 per day).[5] Defendant is wrong that expert testimony is required for pension or any other contributions/deductions. All that is needed is for Defendant to issue a normal payroll check for the $32,016.84 which would include all the necessary deductions and contributions to the pension. Defendant, under the Court's equitable powers, should be required to make its corresponding pension contributions.

---

[5] Plaintiff asserts that no amounts should be deducted from a back pay award. Defendant failed to plead a set-off and has waived the same. In addition, "interim earnings" includes the earnings from jobs that "**could not have been worked**" had no discrimination occurred. *Chesser v. State of Ill.*, 895 F.2d 330, 338 (7th Cir. 1990). In 2017, Plaintiff worked secondary employment as a security guard and at Amazon. His gross wages from secondary employment totaled $4,715.57 (Defendant's Ex. 58). The $12,831.70 (Form 1099-R), page 1 of Ex. 58 represents withdrawals from Plaintiff's retirement/investment account and not wages. No evidence was introduced to support the claim that Plaintiff could not have worked these jobs had no discrimination occurred.

For the period of November 18, 2016 to April 24, 2017, the simplest way to make Nawara whole is to order Defendant to restore all of Nawara's benefit time. If this cannot be done, a money/back pay award should be awarded for this time frame. The back pay for this time period totals $32,223.39 (156 days multiplied by $206.56). Reierson testified that that when employees leave the Sheriff's Office, they get paid for vacation and compensatory time. Defendant did not offer any evidence that the benefit time Plaintiff was forced to use should have a lesser value.

Defendant's assertion that Nawara waived any right to seek an injunction restoring time and benefits is without merit. Nawara's revised Schedule G Itemized Damages includes: "A permanent injunction enjoining Defendant to restore Plaintiff to the position where he would have been absent Defendant's wrongdoing, including restoration of benefits and seniority." (Doc. 272). The revised schedule also lists: "All benefits Plaintiff would have received but for the discrimination, including prejudgment interest." *Id*. These same items were also included in Nawara's original Schedule G (Doc. 248-7).

Nawara's revised Schedule G lists lost earnings of $64,653.36 (Doc. 272). This figure should be $64,240.23 because the Schedule inadvertently used 313 days instead of the 311 days, in which, Nawara was off work. Thus, Defendant's waiver argument is unfounded.

Further, if the Court deems it necessary, it can take additional evidence on the issue of equitable relief. Courts have routinely held such hearings. *See*, *Ortega*, 280 F.Supp.3d at 1077; *Stragapede v. City of Evanston*, 125 F.Supp.3d 818, 821 (N.D. Ill. 2015).

## 5. ***DEFENDANT'S MITIGATION ARGUMENT FAILS***

The burden of proving lack of mitigation is on the employer. *E.E.O.C. v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1581 (7th Cir. 1997); *Ortega v. Chicago Bd. of Educ.*, 280 F.Supp.3d 1072, 1081 (N.D. Ill. 2017). To prevail on a failure to mitigate defense, Defendant must prove **both** that Nawara was not reasonably diligent in seeking other employment, **and** with the exercise of

14

reasonable diligence, there was a reasonable chance that he would have found comparable employment. *U.S. Equal Emp't Opportunity Comm'n v. Gurnee Inn Corp.*, 914 F.2d 815, 818 (7th Cir. 1990) (emphasis added); *Ortega*, 280 F.Supp.3d at 1081.

### a. *The Sheriff's Office Forfeited/Waived the Failure to Mitigate*

Defendant argues that Nawara should be denied back pay for the failure to mitigate his damages (Resp., pp. 13-14).[6] Defendant, however, failed to plead mitigation as an affirmative defense.[7] Defendant's answer to the second amended complaint contains six (6) affirmative defenses and the failure to mitigate is not one of them (Doc. 188).

Failure to mitigate damages is an affirmative defense that must be pled, or it is waived. *Bradford v. Village of Lombard*, 2014 WL 4269098, at *3 (N.D. Ill. Aug. 29, 2014), vacated (Jan. 12, 2015); *Stanley Gudyka Sales Co. v. Lacy Forest Prods. Co.,* 1988 WL 102061, at *1 (N.D. Ill. Sept. 28, 1988). Defendant's failure to plead mitigation prejudiced Plaintiff. Had Defendant pled it as an affirmative defense, Nawara would have presented counter evidence. Defendant waived/forfeited this defense by failing to plead it as an affirmative defense.

### b. *Mitigation has No Application Because Nawara was Placed on Leave*

Mitigation has no application to this case because Plaintiff was placed on leave and never discharged. Plaintiff was on leave for 311 days for the disproven allegation that he failed to cooperate in Defendant's FFD process. The general rule is that "a *discharged employee* must mitigate damages by using reasonable diligence in finding other suitable employment."

---

[6] The failure to mitigate, even if proven, would only reduce Plaintiff's recovery of back pay.

[7] At page 35 of Doc. 188, Defendant previews, by way of a list, the six affirmative defenses that it will plead. Number 3 in that list, at page 36, is: "Any damages that Plaintiff could recover must be eliminated or reduced by his failure to mitigate damages." Defendant then pleads its affirmative defenses 1 through 6. It fails, however, to plead mitigation of damages or any facts that form the basis for that defense. (*See*, Doc. 188, pp. 36-42).

*Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1202 (7th Cir. 1989); *see also*, *Stragapede v. City of Evanston*, 125 F.Supp.3d 818, 824 (N.D. Ill. 2015); *Gracia v. Sigmatron Int'l, Inc.*, 130 F.Supp.3d 1249, 1256 (N.D. Ill. 2015), *aff'd,* 842 F.3d 1010 (7th Cir. 2016).

Nawara was never discharged, but instead continued as an employee of the Sheriff's office until he was finally allowed back to work. Plaintiff had every reasonable expectation that he would be allowed to continue his career as a correctional officer. During the 311 days, Nawara tried to persuade Defendant to drop its demand that he sign unrestricted medical releases and/or submit to an FFD exam, all in violation of the ADA. Nawara was not required to submit to Defendant's unlawful demands. The duty to mitigate did not require Nawara to find alternative employment because he was still employed by the Sheriff's Office.

*Chriswell v. Rosewell*, 70 Ill.App.3d 320, 324 (1st Dist. 1979) and *Fruhling v. Champaign County*, 95 Ill.App.3d 409, 416 (4th Dist. 1981) are instructive on this issue. Both cases hold that an employee who has been unlawfully suspended is entitled to recover the salary lost during the period of suspension where the suspending officer is without authority, or having exerted lawful power, exerts it in a manner in contravention of statute. The cases hold that it is no defense that the employee has not done the work, because, if the suspension is unlawful, the suspension "is a mere enforced vacation for which the board must pay him as if he had never been suspended." *Id*. While Officer Nawara was not suspended, the same reasoning applies. Nawara was not permitted to work in contravention of statute, the ADA.

### c. The Sheriff's Office Failed to Sustain its Burden of Proving that Nawara failed to Mitigate his Damages

Even assuming *arguendo* that the Court considers the merits of Defendant's purported defense, Defendant failed to sustain its burden of proof at trial. To establish the affirmative defense of a plaintiff's failure to mitigate damages, Defendant was required to prove that: (1) Nawara failed

to exercise reasonable diligence to mitigate his damages, and (2) there was a reasonable likelihood that he might have found comparable work by exercising reasonable diligence. *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994).

A wrongfully discharged plaintiff is required to "mitigate damages by using ***reasonable diligence*** in finding other ***suitable employment.***" *Graefenhain,* 870 F.2d at 1202 (emphasis added). Thus, a plaintiff is not required to go into another line of work, accept a demotion, or take a demeaning position. *Id.*; *Stragapede*, 125 F.Supp.3d at 825. Plaintiffs need only "seek interim employment that is substantially equivalent to their previous positions." *N.L.R.B. v. Midwestern Pers. Servs., Inc.*, 508 F.3d 418, 423 (7th Cir. 2007); *see also U.S. v. City of Chicago*, 853 F.2d 572, 578-79 (7th Cir. 1988) (plaintiff in Title VII discrimination case was justified in quitting the purchasing department to search for a job substantially equivalent to that of police officer).

Defendant did not prove that Nawara failed to exercise "reasonable diligence" to mitigate his damages. "Reasonable diligence" does not require a correctional officer, wrongfully placed on leave and prohibited from working at his job, to search for alternative employment, especially when he had a reasonable basis to believe that he would be returning to work. Once Nawara's earned time ran out after 156 days, during which time, his attorney was trying to persuade Defendant to drop its demand that he sign medical releases which violated the ADA, he obtained temporary employment as a security guard and worked for Amazon to make ends meet. Nawara acted reasonably and Defendant failed to prove that Nawara did not exercise "reasonable diligence."

Defendant also failed to meet its burden of proof on the second issue of whether it was reasonably likely that Nawara would have obtained another position as a correctional officer. *See, Ortega v. Chicago Bd. of Educ.,* 280 F.Supp.3d at 1085. The Court can take judicial notice under

17

Federal Rule of Evidence 201 that the Cook County Sheriff's Office was the only employer in Cook County that employed sworn correctional officers.[8] Even though it was Defendant's burden, Nawara had no realistic chance at obtaining a job as a correctional officer until he was cleared to work in September 2017.

In addition, if Nawara would have secured comparable employment, he would have been forced to resign from his position with the Sheriff's Office, where he had worked for 18 years. This would have meant giving up his pension, other earned benefits, and nullifying 18 years of seniority. Moreover, common sense dictates that **no** Sheriff's Department or law enforcement agency would have hired Nawara with the allegations hanging over his head about concerns for his fitness for duty.

A plaintiff's duty to mitigate does not require him to "go into another line of work, accept a demotion, or take a demeaning position." *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1202 (7th Cir. 1989); *Coleman v. Lane*, 949 F.Supp. 604, 608 (N.D. Ill. 1996). Nor does that duty require the employee to seek employment which is not consonant with his particular skills, background, and experience or which involves conditions that are substantially more onerous that his previous position. *Id.*

In this case, Defendant did not present **any evidence** that there were other correctional officer positions available in which Nawara had a reasonable likelihood of being hired. Defendant's failure to offer evidence that comparable employment as a correctional officer was available to Nawara during the 311-day period dooms its mitigation defense. *Gracia v. Sigmatron Int'l, Inc.*, 130 F.Supp.3d 1249, 1257 (N.D. Ill. 2015), *aff'd*, 842 F.3d 1010 (7th Cir. 2016).

---

[8] Unlike ordinary jail guards, correctional officers with the Sheriff's Office are sworn Deputy Sheriffs. *Herrera v. Chisox Corp.*, 1995 WL 599065 (N.D. Ill. Oct. 6, 1995).

*Brown v. Smith*, 827 F.3d 609 (7th Cir. 2016) is closely analogous to this case. The plaintiff prevailed on his ADA claim after being terminated from his position as a bus driver supervisor. The defendant argued failure to mitigate by failing to seek any employment at any local transit company, despite defendant's admission at oral argument that it had the only bus company in town. *Id.*, at 616. The *Brown* Court held that the defendant failed to meet its burden based on its admission that it was the only bus company in town and noting that it failed to show that any other transit company was within a reasonable driving distance of plaintiff's residence. *Id.*

The Court must reject Defendant's assertion that Nawara is not entitled to back pay based on a failure to mitigate.

## CONCLUSION

In its verdict, the jury spoke decisively: "On plaintiff, John Nawara's claim that the Cook County Sheriff's Office violated the Americans with Disabilities Act, we, the jury, find for plaintiff." The Defendant cannot escape the fact that it violated the law and John Nawara must be made whole.

**WHEREFORE,** Plaintiff, John Nawara, requests that the Court award back pay, equitable relief, prejudgment interest and grant him any other relief the Court deems appropriate.

**JOHN NAWARA**

*s/ Richard F. Linden*
One of Plaintiff's attorneys

19