**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN NAWARA,<br><br>Nawara,<br>v.<br><br>THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 17-cv-2393<br><br>Hon. Rebecca R. Pallmeyer |

**DEFENDANT'S SUPPLEMENTAL BRIEF ADDRESSING WHETHER VIOLATIONS OF § 12112(d)(4)(A) ARE *PER SE* PROHIBITED DISABILITY DISCRIMINATION AND CAN SUPPORT A BACKPAY AWARD WITHOUT A CLAIM OF ACTUAL DISCRIMINATION ON ACCOUNT OF DISABILITY**

# TABLE OF CONTENTS


***Introduction and Questions Presented*** ..................... **1**

**ARGUMENT** ..................... **6**

**I. The Text of the ADA makes Clear that Technical Violations of § 12112(d)(4)(A) are Not per se Discrimination Based on Disability – the Cases Cited by the Court Do Not Hold Otherwise and Do Not Speak to the Back Pay Question.** ..................... **6**

A. 42 U.S.C. § 2000e-5(g)(2)(a) precludes a back pay award where the employment action was based on any reason other than disability discrimination. ..................... 6

B. The text of the ADA separates medical examinations and inquiries of non-disabled individuals from its prohibition against discrimination against qualified individuals on the basis of disability, meaning a violation of §(d)(1). ..................... 7

C. The cases cited by the Court do not permit backpay awards for violations of (d)(4)(A) absent an additional showing of disability discrimination. ..................... 12

**II. There is no Basis in the Evidence or Jury Verdict in This Case to Conclude that the Reason for the Medical Inquiry Was Disability Discrimination.** ..................... **15**

A. The jury did not make any motivation finding at all. ..................... 15

B. In the absence of an actual claim of discriminatory motive, there cannot be a backpay award. ..................... 18

C. The FFD referral cannot have proximately caused Plaintiff's alleged pecuniary injury because the referral does not establish discrimination on account of disability. ..................... 21

D. Nawara's claim for back pay was proximately caused by his decision not to cooperate, not by discrimination. ..................... 22

**III. The *Costco* Decision Adds to the Conclusion that Back Pay Should Not be Awarded in this Case.** ..................... **25**

**CONCLUSION** ..................... **26**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Turner Indus.*,
141 F.3d 554 (5th. Cir. 1998) ........................................................................... *passim*

*Bekker v. Humana Health Plan, Inc.*,
229 F.3d 662 (7th Cir. 2000) ...............................................................................2

*Burns v. Nielson*,
456 F. Supp. 3d 807 (W.D. Tex. 2020)............................................................... *passim*

C*leveland v. Policy Mgmt. Sys. Corp.*,
526 U.S. 795 (1999).............................................................................................16

*Darchak v. City of Chi. Bd. of Educ.*,
580 F.3d 622 (7th Cir. 2009) ...............................................................................2

*E.E.O.C. v. Costco Wholesale Corp.*
903 F.3d 618 (7th Cir 2018) ...........................................................................25, 26

*EEOC v. Grane Healthcare Co.*,
No. 3:10-250, 2015 U.S. Dist. LEXIS 123133 (W.D. Pa. Sept. 15, 2015).............................24

*Fredenburg v. Contra Costa County Dep't of Health Servs.*,
172 F.3d 1176 (9th Cir. 1999) ...................................................................5, 7, 9, 14

*Germano v. Int'l Profit Ass'n*,
544 F.3d 798 (7th Cir. 2008) ...............................................................................2

*Grassel v. Dep't of Educ. of N.Y.*,
2017 U.S. Dist. LEXIS 39683 (E.D. N.Y 2017)...................................................24

*Green v. Joy Cone Co.*,
278 F. Supp. 2d 526 (W.D. Pa. 2003)..................................................................17

*Griffin v. Steeltek, Inc.*,
261 F.3d 1026 (10th Cir. 2001) ......................................................................... *passim*

*Harrison v. Benchmark Elecs. Huntsville, Inc.*,
593 F.3d 1206 (11th Cir. 2010) ......................................................................... *passim*

*Henderson v. Borough of Baldwin*,
No. 15-1011, 2017 U.S. Dist. LEXIS 204788 (W.D. Pa. 2017)...........................................24

*Hunter v. Habegger Corp.*,
No. 1:96-CV-241, 1997 U.S. Dist. LEXIS 22064 (N.D. Ind. 1997) ................................17, 24

*Hunter v. Habegger Corp.*,
No. No. 97-2133, 1998 U.S. App. LEXIS 4167 (7th Cir. 1998) ...........................................17

*Jackson v. Regal Beloit America, Inc.*,
No. 16-134, 2018 U.S. Dist. LEXIS 103682 (E.D. Ky. June 21, 2018) ..........................3, 7, 15

*James v. Goodyear Tire & Rubber Co.*,
354 Fed. Appx. 246 (6th Cir. 2009).....................................................................................24

*Kariotis v. Navistar Int'l Transp. Corp.*,
131 F.3d 672 (7th Cir. 1997) ..............................................................................................4

*Kurtzhals v. Cty. of Dunn*,
969 F.3d 725 (7th Cir. 2020) ..................................................................................1, 7, 14

*Lacy v. Cook Cty.*,
897 F.3d 847 (7th Cir. 2018) ..............................................................................................4

*Loughrin v. United States*,
573 U.S. 351 (2014).......................................................................................................9, 10

*McDonnell Douglas Corporation v. Green*,
411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).......................................................2, 3

*O'Neal v. City of New Albany*,
293 F.3d 998 ......................................................................................................................21

*Pena v. City of Flushing*,
651 Fed. Appx. 415 (6th Cir. 2016)........................................................................7, 20, 24

*Strong v. Paulson*,
249 Fed. Appx. 470 (7th Cir. 2007).......................................................................... *passim*

*Taylor v. City of Shreveport*,
798 F.3d 276 (5th Cir. 2015) .......................................................................4, 12, 13, 14

*Townsend v. Indiana*,
995 F.2d 691 (7th Cir. 1993) ............................................................................................26

*Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Trans. Auth.*,
342 F. Supp. 2d 160 (S.D.N.Y. 2004)...........................................................................4, 6, 7, 14

*White v. Town of Hurley*,
No. CIV 17-0983 JB\KRS, 2019 U.S. Dist. LEXIS 52487, *135-36 (Dist. Ct.
N.M. 2019)...................................................................................................17, 19, 20

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)....................................................................................................11

**Statutes and Regulations**

42 U.S.C. § 12112.................................................................................................... *passim*

42 U.S.C. § 2000e-2................................................................................................. *passim*

42 U.S.C § 12101(b)(1) ..................................................................................................1

***Introduction and Questions Presented***

This Court asked the parties for supplemental briefs addressing whether a violation of 42 U.S.C. 12112(d)(4) constitutes discrimination for the purposes of Nawara's motion for back pay. (Dkt. 360 at 28 ("Op." or "Opinion")). While the Seventh Circuit has held that non-disabled people may sue for unjustified medical examinations or inquiries under §(d)(4), *Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020) (§12112(d)(4)(A) "applies to all employees, with or without an actual or perceived disability"), it has never held that a violation of this section of the Americans With Disabilities Act, 42 U.S.C. § 12101 ("ADA") is in and of itself an act of disability discrimination within the meaning either of the ADA or the remedies provision it incorporates from Title VII, 42 U.S.C. § 2000e-5(g)(2)(A). That remedies provision bars the award of back pay under the ADA if an employment decision (including failure to hire, suspension, or discharge) was made for "***<u>any reason</u> other than discrimination <u>on account of</u>*** race, color, religion, sex, or national origin" or, in this case, disability. *Id.* (Emphasis added).

As detailed below, there is no basis under well-established federal discrimination law, and the circumstances of this case (where plaintiff never alleged any actual discrimination on account of disability), or in the language of the ADA itself, to find that a technical violation of §12112(d)(4) alone constitutes the type of discrimination required to award back pay. To rule otherwise would establish new law in this Circuit and create a massive loophole in the ADA, allowing non-disabled individuals to obtain backpay awards using a *lower* bar than is applied to individuals with a disability who sue for discrimination on account of disability. That cannot have been Congress's intention; the stated purpose of the ADA is to "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals *with disabilities*." 42 U.S.C § 12101(b)(1) (emphasis added). Making a special rule for people *without* disabilities that permits

them to obtain backpay awards without having to show intentional discrimination on account of a disability is not consistent with that purpose, at all.

In all federal discrimination cases, including disability discrimination cases under the ADA, in order to make out a case of discrimination, the plaintiff must prove intentional discrimination based on membership in a protected class. "Under the ADA, an employee has available two methods for establishing that her employer discriminated against her based on her disability. First, the employee may present direct or circumstantial evidence that the employment decision was motivated by the employer's discriminatory animus. Second, the employee may use the burden-shifting method set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), to prove by indirect evidence that her employer intentionally discriminated against her." *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 670 (7th Cir. 2000). *See also Germano v. Int'l Profit Ass'n*, 544 F.3d 798, 806 (7th Cir. 2008) (for an ADA discrimination claim, [Plaintiff] must show (1) **that he is disabled**; (2) that he is qualified by education and experience and could perform the essential job functions with or without reasonable accommodation; (3) that he suffered an adverse employment action; and (4) that the circumstances surrounding the adverse action support the inference that his disability was a determining factor behind the adverse action."); *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009) "Under Title VII, a plaintiff can prove discrimination either by presenting evidence of discrimination (the 'direct method' of proof), or by the *McDonnell Douglas* burden-shifting approach (the 'indirect method'.")

Under § (d)(4), by stark contrast, the only burden a plaintiff bears is establishing that the employer made an inquiry or sent the employee for an exam that might reveal a disability or the extent of a disability. The burden then shifts to the employer to prove that a medical examination

or inquiry was job-related or consistent with business necessity. There is no provision for showing non-pretextual reasons under this section of the ADA. Thus, absent an additional count for disability discrimination, there is no context for either the direct method of proving intentional discrimination or for the *McDonnell Douglas* inquiry to be applied. That explains why Defendant has been unable to find any case even considering back pay where there was not either a separate claim in the case of intentional discrimination on the basis of an actual disability or where the adverse employment action allegedly was taken based on information obtained by means of the improper examination or inquiry. *See Strong v. Paulson*, 249 Fed. Appx. 470, 472-73 (7th Cir. 2007) (disability discrimination claim failed based on non-discriminatory reasons for adverse employment action and the separate, presumptively improper, medical inquiry claim was rejected because non-discriminatory reasons cut off any claim of injury-in-fact); *Jackson v. Regal Beloit America, Inc.*, No. 16-134, 2018 U.S. Dist. LEXIS 103682 (E.D. Ky. June 21, 2018) (Plaintiff brought both ADA disability discrimination claim and medical inquiry claim and the inquiry expressly was based on the fact that plaintiff had a known disability that led to the improper inquiry).[1]

This Court itself observed that this case is "[d]efinitely not a *McDonnell Douglas* burden-shifting" matter. (3/4/20 Trial Tr. at 1847). Plaintiff presented no evidence that he ever was disabled and the jury was told that he did not need to prove he was disabled under the statute at issue. (Jury Instructions, Dkt. 302 at 24). Nor was any evidence adduced about whether Rebecca Reierson or Winifred Shelby thought Nawara was disabled or were motivated by any discriminatory animus in sending him for an FFD – because that is not the question under § (d)(4), which only permits an employer to avoid liability if it can show that the inquiry or exam was job

[1] That this case involved both an actual discrimination claim and a medical inquiry claim is confirmed by the Amended Complaint in that matter, attached here as Ex. A.

related and consistent with business necessity. There thus was no context in which to ask the jury to determine if there were non-discriminatory reasons for the decision to put Nawara on leave pending the FFD examination in this case.

To be sure, the record does show a number of potential non-discriminatory reasons explaining why Nawara was sent for an FFD (his hostility, his refusal to answer questions, the lack of belief that he was disabled), but those reasons never were subjected to the sort of examination a real disability discrimination case would have required. *See Lacy v. Cook Cty.*, 897 F.3d 847, 856-857 (7th Cir. 2018) (in order to collect damages, an ADA plaintiff must "prove the *intentional* nature of the defendants' discrimination.") (emphasis in original); *Kariotis v. Navistar Int'l Transp. Corp*., 131 F.3d 672, 679 (7th Cir. 1997) ("Under Title VII, the ADA, the ADEA, and ERISA, an employer's honest belief is critical; it is not liable under a disparate treatment framework because its decisions (and suspicions) happen to work to the disadvantage of a member of a protected group. Liability results only if the employer *intends* to disadvantage an individual precisely *because he belongs to a protected group*.") (emphasis in original and added).

The Court raises in its Opinion two cases, *Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015) and *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Trans. Auth.*, 342 F. Supp. 2d 160, 162-63 (S.D.N.Y. 2004) in which, for standing purposes, courts outside this Circuit found that a violation of the medical examinations and inquiries section "***may*** constitute a form of employment discrimination under the ADA." *Taylor*, 798 F.3d at 282 (emphasis added). Neither case reaches a conclusion about whether the conduct in those cases could trigger a back pay award, and Defendant submits that they do not establish any basis to award back pay here.

Indeed, later cases and cases from other jurisdictions strongly counsel against applying *Taylor* or *Transp. Workers* outside of the standing setting – finding that § (d)(1) does not eliminate

the obligation to establish actual disability to prove prohibited discrimination. *See Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1213 (11th Cir. 2010) (in medical inquiry case, "***to maintain an action for discrimination itself, a plaintiff must be disabled*** under the ADA") (emphasis added)); *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999) ("Subsection (d)(1) states a general principle – medical examinations may not be used to discriminate against qualified persons with a disability – and categorically directs courts to treat medical examinations as *possible* evidence of discriminatory conduct. Within this context, only qualified individuals with a disability have a cause of action.") (emphasis added); *Burns v. Nielson*, 456 F. Supp. 3d 807, 819-20 (W.D. Tex. 2020) ("an employer may be liable for making medical inquiries directed at employees under either § 12112(d)(4)(A) or § 12112(d)(1). Whereas § 12112(d)(4)(A) does not require plaintiff to assert that he has a disability to contest an allegedly improper medical inquiry or medical examination, § 12112(d)(1) does."). This case was brought under § 12112(d)(4)(A) only. (2d Am. Cplt., Dkt. 89).

No Court has ever held that a violation of § 12112(d)(4)(A) alone allows an employee to obtain back pay for discrimination, and the fundamental principles precluding such recovery are straightforward and supported by the text and the case law. Both establish, Defendant submits, that a technical violation of § 12112(d)(4)(A) does not and cannot support a claim of discrimination (at least for backpay claims) without more. Plaintiff did not establish the "more" in this case: either that his referral for an FFD was an act of discrimination or that discrimination was the motivation for that referral. Nor can he show that the request for him to take an FFD exam and/or the forms he was asked to sign were the proximate and legal cause of his alleged harm, precluding back pay for this reason, too. *See Armstrong v. Turner Indus.*, 141 F.3d 554, 560-62 (5th. Cir. 1998) ("This Court has been unable to find any indication either in the text of the ADA or in its

legislative history that a violation of the prohibition against preemployment medical examinations and inquiries, in and of itself, was intended to give rise to damages liability.")

In short, there was and remains no basis to award back pay in this case.

## ARGUMENT

### I. The Text of the ADA makes Clear that Technical Violations of § 12112(d)(4)(A) are Not per se Discrimination Based on Disability – the Cases Cited by the Court Do Not Hold Otherwise and Do Not Speak to the Back Pay Question.

#### A. 42 U.S.C. § 2000e-5(g)(2)(a) precludes a back pay award where the employment action was based on any reason other than disability discrimination.

The plain language of the ADA's enforcement provision (adopted from Title VII), precludes recovery of back pay for employment decisions based on "*any reason* other than discrimination on account of [disability]." 42 U.S.C. § 2000e-5(g)(2)(A) (emphasis added). This, of course, is why it is necessary to determine whether violation of the medical examinations and inquiries section of the ADA is, in and of itself, a finding of discrimination on account of disability. That is especially true here, where there was no claim of disability discrimination and indeed no showing at all that the sole motivation for sending Nawara for an FFD was disability discrimination within the meaning of the ADA.

Without analyzing the language of the ADA or any case law addressing the issue raised in Defendant's response, Nawara's Reply Brief made the bald assertion that the jury in this case found that Defendant engaged in unlawful discrimination. (Dkt. 351 at 10). The Court questions the authorities cited by the Defendant by pointing to two cases that found that medical inquiries may constitute discrimination for purposes of standing under Title II of the ADA.[2] (Op. at 27-28).

[2] As discussed below, *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Transit Auth.*, 342 F. Supp. 2d 160, 162–63 (S.D.N.Y. 2004) states that the ADA defines discrimination as including medical examinations and inquiries. However, the provision it relies on for this statement is not definitional and

Defendant does not dispute that Plaintiff had standing to pursue his claims in this case despite the fact he was not disabled, and the parties repeatedly have identified cases addressing disability discrimination claims separately from technical violations of Sections 12112(d)(2)-(4). *See, e.g.*, *Kurtzhals*, 969 F.3d at 730; *Jackson*, 2018 U.S. Dist. LEXIS 103682; *Pena v. City of Flushing*, 651 Fed. Appx. 415, 419 (6th Cir. 2016). Furthermore, the issue presented now is not whether medical examinations *might* be used to discriminate (of course they could) but whether technical violations raised by a non-disabled individual where the inquiry does not cause an actual discriminatory injury *necessarily* fall within the ADA's prohibition on discrimination, justifying an award of back pay. The text of the relevant statutes shows that they do not, and the treatment of these provisions in the case law supports that textual view.

### B. The text of the ADA separates medical examinations and inquiries of non-disabled individuals from its prohibition against discrimination against qualified individuals on the basis of disability, meaning a violation of §(d)(1).

Section 12112(a) states that "[n]o covered entity shall *discriminate* against a qualified individual *on the basis of disability* in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (Emphasis added). Section 12112(b) defines conduct included within the term "discriminate against a qualified individual on the basis of disability." While lengthy, it is worth considering the list:

> **§ 12112(b): Construction.** As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—

simply clarifies that qualified and disabled individuals may bring a discrimination claim where they are singled-out for medical inquiries because of a disability. Other decisions demonstrate the inaccuracy of this statement in *Transp. Workers*. *See, e.g.*, *Harrison*, 593 F.3d at 1213; *Fredenburg*, 172 F.3d at 1182; *Burns v. Nielson*, 456 F. Supp. 3d at 819-20.

(1) **limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability** of such applicant or employee;

(2) **participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this title** (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);

**(3)** utilizing standards, criteria, or methods of administration—
**(A) that have the effect of discrimination on the basis of disability**;
or
**(B) that perpetuate the discrimination of others** who are subject to common administrative control;

**(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association**;

**(5)**
**(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability** who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity;
or
**(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability**, if such denial is **based on the need of such covered entity to make reasonable accommodation** to the physical or mental impairments of the employee or applicant;

**(6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability** or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity; and

**(7) failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability** that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such

> employee or applicant (except where such skills are the factors that the test purports to measure).

(Emphasis added).

All of the conduct listed in subsection (b) addresses conduct towards qualified individuals with, or on the basis of their, disabilities. Medical examinations and inquiries are not included at all in this definition of what it means to "discriminate against a qualified individual on the basis of disability." Instead, Congress opted to address that conduct separately, in subsection (d), without any reference at all to discrimination "on the basis of disability." This omission takes subsection (d) out of the ambit of § 12112's definition of discrimination on the basis of disability. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("when Congress includes particular language in one section of a statute but omits it in another" – let alone in the very next provision – this Court presumes that Congress intended a difference in meaning.")

Section 12112(d)(1) states that "[t]he prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries." In contrast to subsection (b), this provision does not attempt to define "discrimination against a qualified individual on the basis of disability," but rather clarifies that the existing protections under subsection (a) *may* apply when an employer orders medical examinations or inquiries *due to* an individual's disability. In order, then, for a violation of subsection (d)(1) to be an act of discrimination for purposes of a backpay award, the plaintiff must show he had a disability, was ordered to submit to medical examinations or inquiries because of it and/or suffered discrimination based on the results of the examination or inquiry.

Courts consistently have confirmed this reading of subsection (d)(1) and require a plaintiff to establish that they are both a "qualified individual" and have an actual or perceived "disability" to establish a claim of discrimination. *Fredenburg* 172 F.3d at 1182 ("Subsection (d)(1) states a

general principle – medical examinations may not be used to discriminate against qualified persons with a disability – and categorically directs courts to treat medical examinations as *possible evidence* of discriminatory conduct. Within this context, only qualified individuals with a disability have a cause of action [for discrimination].") (emphasis added); *see also Burns*, 456 F. Supp. 3d at 819-20 ("an employer may be liable for making medical inquiries directed at employees under either § 12112(d)(4)(A) or § 12112(d)(1). Whereas § 12112(d)(4)(A) does not require plaintiff to assert that he has a disability to contest an allegedly improper medical inquiry or medical examination, § 12112(d)(1) does."); *Harrison* 593 F.3d at 1213 (in medical inquiry case, "to maintain an action for discrimination itself, a plaintiff must be disabled under the ADA").

If Congress intended *all* unjustified medical examinations and inquiries to be *per se* prohibited discrimination on the basis of disability, subsection (d)(1) would be superfluous and Congress would not have separated it from the other sections of the statute. But that is not how statutes are interpreted. *See Loughrin*, 573 U.S. at 358 ("courts must give effect, if possible, to every clause and word of a statute"). As noted by the courts above, the only way the drafting decision here makes any sense is if the provision *allows* claims for discrimination based on prohibited medical exams and inquiries, but does not make *all* such inquiries discrimination in fact discrimination.

The remainder of subsection (d) goes on to describe situations where an employer may and may not require medical examinations or conduct medical inquiries of employees and applicants. None of these parts state that prohibited medical examinations and inquiries are *per se* discrimination on the basis of disability or that non-disabled individuals may assert discrimination claims as opposed to claims simply for violation of this provision. In particular, 12112(d)(4)(A) states that "[a] covered entity shall not require a medical examination and shall not make inquiries

of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." Notably absent is any reference to "discrimination." Nonetheless, Nawara tries to bootstrap his claim of a technical violation of this provision into a claim for discrimination on account of disability in order to recover back pay. To date, Nawara has not cited a single case or reference to the legislative history supporting this departure from the ADA's requirement that unlawful discrimination must be based on disability, let alone permitting back pay for violations of (d)(4)(A). *See Armstrong* 141 F.3d at 560-62 ("This Court has been unable to find any indication either in the text of the ADA or in its legislative history that a violation of the prohibition against preemployment medical examinations and inquiries, in and of itself, was intended to give rise to damages liability.")

Since the text of the ADA itself requires that discrimination be against individuals in a protected class, much more is needed to turn protections for non-disabled individuals into a prohibition on discrimination. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions – it does not, one might say, hide elephants in mouseholes."). Doing so here would eliminate the fundamental requirement of unlawful motivation from the analysis in favor of strict liability for monetary damages; that could not have been Congress's intent. *See Armstrong*, 141 F.3d at n.16 (dismissing claim for damages for violation of subsection (d) for refusal to hire where the plaintiff did not show an "unlawful discriminatory motive"); *Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028-29 (10th Cir. 2001) ("*Compensatory damages are available under the ADA, however, only if the plaintiff establishes that the employer* ***not only technically violated § 12112(d)(2)(A) by asking a prohibited question, but also that by doing so it actually***

***'engaged in unlawful intentional discrimination***.'") (emphasis added); *see also Strong*, 249 Fed. Appx. at 473 (7th Cir. 2007) (summary judgment for employer for violation of subsection (d)(2) where refusal to hire was based at least in part on non-discriminatory reasons and was not solely based on disability or medical information revealed through the improper inquiry).

### C. The cases cited by the Court do not permit backpay awards for violations of (d)(4)(A) absent an additional showing of disability discrimination.

Despite Nawara's failure to cite any relevant case law on the issue or offer more than conclusory assertions, the Court's Opinion cites to two cases in the standing context for the proposition that a violation of subsection (d)(4)(A) might constitute discrimination. That does not, however, mean that a mere violation of (d)(4)(A) falls within the definition of "discriminat[ion] against a qualified individual on the basis of disability" or otherwise automatically falls within the meaning of a subsection (a) discrimination case. At issue in this case is whether the ADA permits a non-disabled individual to recover back pay for refusing to participate in an FFD process absent a showing of discriminatory motive. The two cases cited by the Court to address these questions do not hold that a violation of (d)(4)(A) is *per se* discrimination on account of disability, or that a non-disabled individual is entitled to back pay for his response to such violations. These cases do not refute the plain reading of the text described above as it applies to Nawara.

In *Taylor v. City of Shreveport*, the Fifth Circuit addressed whether police officers had standing to bring a claim that aspects of a sick leave policy violated Section 12112(d)(4)(A) under either Title II[3] of the ADA or the Rehabilitation Act. 798 F.3d 276, 282-83 (5th Cir. 2015). Relying on subsection (d)(1), the court found that prohibited medical examinations and inquiries

[3] Because the plaintiffs failed to exhaust administrative remedies, they were unable to pursue their claims under Title I of the ADA – the section at issue in this lawsuit.

"*may* constitute a form of employment discrimination under the ADA." *Id.* (emphasis added).[4] The court concluded, however, that the plaintiffs could not avoid the exhaustion requirements in Title I by bringing a medical inquiry claim under Title II – and therefore they did not have standing for their claims under Title II. *Id.* The court nonetheless permitted the plaintiffs' claims to proceed under the Rehabilitation Act, but limited recovery to declaratory and injunctive relief because they did not allege an injury-in-fact proximately caused by an unlawful inquiry. *Id.* at 283, 287. *Taylor* does not address whether back pay is available to non-disabled individuals under the ADA or whether a plaintiff can establish back pay damages resulting from an employment decision that was made before conducting the medical examination or inquiry.

Given the issues presented in *Taylor*, that court's rulings are unsurprising and do not refute Defendant's position that to recover back pay under the ADA, Nawara needed to establish that he suffered discrimination on account of disability. Indeed, since the decision in *Taylor*, a lower court in the Fifth Circuit clarified that *Taylor* did *not* reject the requirement that a plaintiff be disabled for medical examinations to fall within the ADA's prohibition on discrimination – as opposed to technical violations of (d)(4)(A). *See Burns*, 456 F. Supp. 3d at 819-20 ("an employer may be liable for making medical inquiries directed at employees under either § 12112(d)(4)(A) or § 12112(d)(1). Whereas § 12112(d)(4)(A) does not require plaintiff to assert that he has a disability to contest an allegedly improper medical inquiry or medical examination, § 12112(d)(1) does.") (internal quotations and citations omitted) (citing *Taylor*, 798 F.3d at 284); *see also Harrison* 593 F.3d at 1213 (11th Cir. 2010) ("to maintain an action for discrimination itself, a plaintiff must be disabled under the ADA")). This separation of claims for violations of medical inquiry provisions on the one hand and discrimination claims on the other aligns directly with the Defendant's

[4] Defendant did not raise this particular standing issue because it never considered this to be a case of actual employment discrimination.

arguments addressing *Kurtzhals* and other courts' efforts to avoid comingling these two distinct causes of action. (Mot. for Leave re *Kurtzhals* at 4-5, Dkt. 353; Reply re *Kurtzhals* at 10-13, Dkt. 357-1). Importantly, it shows that to recover back pay under § 2000e-5(g) for "discrimination on account of [disability]," the plaintiff must first establish that he is disabled and prove his claim under § 12112(a) or (d)(1).

The other decision cited by the Court, *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Transit Auth.*, 342 F. Supp. 2d 160, 162–63 (S.D.N.Y. 2004), also addresses standing based on the pleadings – this time for a union – to bring medical inquiry claims under Title II of the ADA. Unlike *Taylor*, the court concluded that Title II includes employment conduct prohibited under Title I – and the union therefore had standing. *See id.* As part of this analysis, the court confusingly stated that the "definition of discrimination" under Title I includes medical examinations and inquiries – relying on § 12112(d)(1). *Id.* at 164; *cf. Fredenburg*, 172 F.3d at 1182 ("Subsection (d)(1) provides a general prohibition against using medical examinations to discriminate" against qualified individuals with disabilities). The *Transp. Workers* simply got it wrong – subsection (d)(1) provides a cause of action – not a definition. Only subsection (b) purports to be definitional. *See, e.g.*, *Harrison*, 593 F.3d at 284; *Burns*, 456 F. Supp at 819-20.

Even if *Transp. Workers's* characterization of (d)(1) could be credited, there is nothing in the opinion that vitiates a plaintiff's obligation to prove discrimination on account of a disability in order to recover back pay. In enacting the Civil Rights Act, Congress used the word "discriminate" to refer to employment conduct without making the sweeping generalization that all such conduct is actionable discrimination absent a showing of membership in a protected class. For example, under Title VII, discrimination includes the failure to hire any individual. 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer— (1) to fail or

refuse to hire or to discharge any individual, *or otherwise to discriminate* against *any individual*….") (emphasis added). But Title VII only prohibits such discrimination if it occurs "because of such individual's race, color, religion, sex, or national origin." *Id.* This interpretation is consistent with courts segregating medical inquiry violations from discrimination claims under the ADA – permitting suits by non-disabled individuals in the former but not in the latter. Like the failure to hire under Title VII, medical examinations and inquiries, even if considered "discrimination," still do not fall within the ADA's prohibition of disability discrimination absent a showing that they were premised on a plaintiff's actual disability. *See, e.g.*, *Jackson*, 2018 U.S. Dist. LEXIS 103682 at *3-8 (the reason plaintiff was sent for additional exams was because of her known disability).

In sum, based on the plain language of the statute and the case law cited above, there is no basis to find that a violation of § 12112(d)(4)(A) suffices to establish the type of discrimination required to obtain a back pay award under § 2000e-5(g).

## II. There is no Basis in the Evidence or Jury Verdict in This Case to Conclude that the Reason for the Medical Inquiry Was Disability Discrimination.

### A. The jury did not make any motivation finding at all.

Even if the medical inquiry or examination in this case could be deemed discriminatory in some abstract way, the effort to obtain back pay also must fail under 42 U.S.C. § 2000e-5(g)(2)(A) because there is no basis in fact, and the jury did not find (indeed was never asked to find), that the Defendant was motivated by discriminatory animus at all. While the Court observes that the jury may not have believed that the people who made the referral decision – Nurse Winfred Shelby and Rebecca Reierson – had a sufficient basis to send him for an FFD, the jury never was asked to determine their actual motivation for sending Nawara for an FFD.

As Nawara himself testified, the meeting started with Shelby saying "We are here to see how you are doing" – hardly a disability-related inquiry or one that betrayed any belief that he was disabled. (Tr. at 1016:15-1017:4). Nawara's testimony confirms that he was not forthcoming in the meeting – he described it as "kind of dancing" back and forth for "a very good uncomfortable five to ten minutes." (Tr. at 1018:12-14). There was no testimony whatsoever that Shelby or Reierson said anything in the meetings on that day to indicate they had any discriminatory motive at all in interviewing Nawara or in sending him for an FFD. The FFD could have revealed a disability, or it could have revealed entirely non-disability-related issues such as family problems, loss of a loved one, or work-related stress that he was unwilling to share with HR.[5]

As detailed in the Introduction and Questions Presented section above, motive is absolutely central to actual disability discrimination claims. This is why in many cases, where an employer can show a legitimate non-discriminatory reason for an adverse action, the claim fails. Here, the jury never was asked to consider that question, so there is no finding in this case one way or the other that the reason for sending Plaintiff to the FFD was discriminatory based on disability. Moreover, where, as here, such a record was not developed by Plaintiff and the question was not put to the jury, permitting a finding of discrimination for back pay purposes would open a strange new door. It would allow non-disabled people who never suffered actual discrimination based on disability to obtain damages that might well be unavailable to disabled people – who have to prove motive *and* overcome the non-discriminatory explanations an employer might offer.

This cannot have been intended under the statute, whose obvious and primary purpose is to protect the disabled. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) ("The

[5] Moreover, there was unrebutted testimony that other employees brought into HR for reports of concerning behavior in the workplace readily discussed non-disability-related issues that accounted for the behavior, for which HR provided them resources. (Tr. at 1358:5-25).

ADA seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity.") *See also Green v. Joy Cone Co.*, 278 F. Supp. 2d 526, 544 (W.D. Pa. 2003) ("Since [the plaintiff] is not claiming to have been discriminated against *on account of a disability*, the issuance of back pay is inappropriate under the law.") (emphasis added; *Strong*, 249 Fed. Appx. At 472-73 (summary judgment where plaintiff offered evidence that refusal to hire was based on interview answers and plaintiff could not show they instead were based on his disability or answers to improper medical inquiry); *Griffin*, 261 at 1028-29 (10th Cir. 2001) (plaintiff could not establish damages because the adverse employment action – refusal to hire – was based on deficiencies on the plaintiff's application and not information disclosed through an improper medical inquiry) (citing § 2000e-5); *White v. Town of Hurley*, No. CIV 17-0983 JB\KRS, 2019 U.S. Dist. LEXIS 52487, *135-36 (Dist. Ct. N.M. 2019) (summary judgment because refusal to hire based on interviewers' perception about plaintiff – that he was a "hot head, with temper issues, who would not be able to work courteously with Town of Hurley citizens as the position requires" – were reasons other than plaintiff's disability and allegedly improper medical inquiry); *Hunter v. Habegger Corp.*, No. 1:96-CV-241, 1997 U.S. Dist. LEXIS 22064, *30-35 (N.D. Ind. 1997) ("'When an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'") (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)), *aff'd Hunter v. Habegger Corp.*, No. No. 97-2133, 1998 U.S. App. LEXIS 4167 (7th Cir. 1998). Put simply, a decision to send a non-disabled person for an FFD may not be justified under the two options set

out in the statute at issue in this case, but that does not establish that the decision was motivated by disability discrimination.

**B. In the absence of an actual claim of discriminatory motive, there cannot be a backpay award.**

The case law from this circuit and elsewhere confirms that a plaintiff cannot show injury-in-fact or damages where the plaintiff has not established intentional discrimination on account of disability. In *Strong*, for example, the Seventh Circuit rejected a medical inquiry claim where the employer's proffered reasons for refusing to hire the plaintiff did not relate to information obtained from the inquiry or a disability. 249 Fed. Appx. at 472-73. Based on the plaintiff's resume and self-assessment, he was advanced to the next step in the hiring process, a communications test. *Id.* at 471. Unlike here, there was evidence that the employer knew or believed the plaintiff was disabled – the plaintiff told an employee that he "had suffered a stroke," that employee told the communication testers that the plaintiff "was disabled in some manner." *Id.* During the test, one of the examiners asked "what is wrong with [plaintiff's] arm … which [he] answered;" the tester responded "[l]ong as it doesn't affect your mental coherency." *Id.* After the test, the examiners noted that the plaintiff's responses were "unorganized and repetitive and that his 'comments lacked substance.'" *Id.* In any event, they advanced the plaintiff to the final interview. *Id.* During that interview, the interviewers noted the plaintiff's responses to questions "lacked substance, were not responsive, and were rambling, unfocused, repetitious, and generally unprofessional" and appeared inconsistent with his application. *Id.* Notably, all of these observations could have been due to his disability. The interviewers recommended that the plaintiff not be hired. *Id.*

Following the refusal to hire him, the plaintiff filed suit, alleging, separately, disability discrimination and violation of ADA's medical inquiry provision, 42 U.S.C. 12112(d)(2)(A), based on the inquiries about the plaintiff's arm injury. *Id.* The Seventh Circuit affirmed summary

judgment on the disability discrimination claim because the employer based its decision on the plaintiff's unprofessional and unresponsive responses during the interview – not on account of a perceived disability. *Id.* at 472. The court then assumed there was a violation of the medical inquiry provision but ruled in favor of the employer for the same reason it rejected the disability discrimination claim – decisions based on the interviewers' characterization of plaintiff's interview responses were not discriminatory. *Id.* at 473.

In *Griffin*, the Tenth Circuit rejected the argument that damages under Section 2000e-5 were appropriate absent a showing of *both* "unlawful intentional discrimination" and an unlawful medical inquiry. 261 F.3d at 1028-29. There, after refusing to answer an unlawful disability-related inquiry on his application, the plaintiff was not hired. *Id.* at 1028. As in this case, the jury found that the plaintiff suffered no injury as to both emotional distress for having to answer the questions or the refusal to hire him. *Id.* The lower court affirmed the verdict because "merely being asked the impermissible question is not sufficient, by itself, to inflict a cognizable injury," and the Tenth Circuit agreed. *Id.* The court also found that damages under Section 2000e-5 were unavailable because the employer's proffered reason for its refusal to hire was not discriminatory or based on answers to the improper inquiry – the reason was plaintiff's lack of experience. *Id.* at 1028-29.

*White* likewise found that a plaintiff could not establish damages from a medical inquiry where the adverse employment action was based on reasons other than an unwarranted disclosure of medical information. 2019 U.S. Dist. LEXIS 52487 at *101-03, 133-36 (analyzing whether the plaintiff had shown injury-in-fact through his alleged damages). During the interview process, the employer asked the plaintiff about his injury and recovery. *Id.* at 134-35. Since, shortly thereafter, the employer refused to hire him, the court found that the plaintiff established that his answers to

the improper question caused the adverse employment action. *Id.* at 136. However, the plaintiff still could not establish damages because the employer's based its decision on the interviewers' perception that the plaintiff was a "hot head, with temper issues, who would not be able to work courteously with Town of Hurley citizens as the position requires." *Id.* at 136-37. Despite acknowledging discrepancies in the testimony from the interviewers, the court held that no issue of fact remained as to whether the decision was discriminatory – these reasons were not based on disability. *Id.* at 137-38. Thus, the plaintiff could not show injury-in-fact or damages. *Id.*

Here, unlike those three cases, there is no evidence that anyone thought Nawara had a disability, made an unlawful examination or inquiry *prior to* putting him on leave, or extended his leave after he provided the requested medical information and submitted to the examination. Rather, as in *Strong* and *White*, reports and observations of Nawara's conduct in the workplace raised concerns that he was unable to meet the expectations required for correctional officers. (2/25/20 Trial Tr. at 384:17-409:16 (Reierson); 3/2/20 Tr. (Shelby) at 1381:1-1399:10:10; 3/4/20 Tr. (Reierson) 1766:12-1782:22; *see* Rule 50 Memo. at 3-5, 9-10, Dkt. 333 (discussing testimony)). Reierson and Shelby testified how Jones-Hayes's and their observations of Nawara's behavior demonstrated deficiencies in meeting specific requirements from his job description. (2/25/20 Trial Tr. at 404:21-405:21 (Reierson); 3/2/20 Trial Tr. at 1404:10-1406:20 (Shelby); 3/4/20 Trial Tr. at 1780:11-1782:22 (Reierson); *see also* DX 1 (job description); Dkt. 333 at 5). Nawara may have disagreed, but he offered no evidence showing any discriminatory animus in the referral.[6] *See Armstrong* 141 F.3d at n.16 ("the ADA 'cannot protect…employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.'")

[6] The fact of the FFD referral here does not bear on whether there were reasons other than disability that motivated it. *See Pena*, 651 Fed. Appx. at 420 ("a request that an employee obtain a medical exam may signal that an employee's job performance is suffering, but that cannot itself prove perception of a disability

### C. The FFD referral cannot have proximately caused Plaintiff's alleged pecuniary injury because the referral does not establish discrimination on account of disability.

Nawara's back pay claim also suffers from serious causation problems. In the Rule 50 context, the Court recognizes that a "non-disabled plaintiff must show 'some tangible injury-in-fact caused by the § 12112 violation' and concluded that it was unclear whether "the forms Nawara was asked to sign produced any such injury." (Op. at 23-24). The Court concluded for Rule 50 purposes that the referral itself could have been the basis for the jury's verdict in this case.[7] As for the back pay issue, the Court found that the "evidence supports a finding that requiring Nawara to submit to an FFD before returning to work was the but-for cause of Nawara's unpaid leave." *O'Neal v. City of New Albany*, 293 F.3d 998, 1007-08 ("the courts have required that a nondisabled plaintiff at least show some tangible injury-in-fact caused by the § 12112(d) violation.").

That alleged but-for causation, however, is not sufficient to permit an award of back pay in this case. Nawara must establish that an unwarranted disclosure of medical information was the legal and proximate cause of his harm. "[V]iolation of a statute will not give rise to liability for resulting injuries unless, *inter alia,* the plaintiff was a member of the class of individuals the statute was intended to protect, and the injury was of the type contemplated by the statute and resulted from the hazard against which the statute was intended to protect." *Armstrong*, 141 F.3d at 560-

because it does not prove that the employer perceives the employee to have an impairment that substantially limits one or more of the employee's major life activities."). The testimony in this case establishes that FFD referrals are to determine whether an employee can perform the functions of the job regardless of whether the employee is disabled. (*See* 3/3/20 Trial Tr. at 1491:19-23). Examinations can even proceed without medical records or where the employee revokes medical releases. (3/3/20 Trial Tr. at 1492:6-1499:5 (Sarocka).) The eventual referral in this case also makes no reference to disability and does not ask the examiner to determine whether Nawara has a disability.

[7] The Court also suggests that perhaps the circumstances about the forms and the fact that Nawara was returned to work almost immediately after he finally agreed to cooperate in the FFD process "explain the jury's determination that he suffered no emotional distress damages." (Op. at 24). According to at least one juror who approached Defendants' counsel immediately after the verdict was rendered, this was not the explanation for the outcome in this case.

62, n.16. Thus, where an adverse employment action did not result from a particular hazard the ADA protects, such as disability-based employment discrimination, the plaintiff cannot show proximate cause or a compensable injury. As the *Armstrong* court explained, "although the medical inquiry may be construed as having been, in a purely mechanistic sense, a cause of Turner's refusal to employ Armstrong, it was not, in the general tort sense, *a legal or proximate cause* of Turner's decision and thus does not constitute a compensable injury." *Id.* (emphasis added). The same conclusion is compelled here – while the order to participate in an FFD exam was the initial trigger of the dispute in this case, it was not in and of itself discrimination on account of disability.

Nawara's claim for back pay does not satisfy the proximate causation inquiry. The jury already found that the FFD referral did not cause any emotional distress damages. Thus, the only "injury" for which Nawara seeks recovery is his alleged lost benefit time while he was on paid leave and the alleged lost pay when his benefit time ran out. While it certainly is true that had Nawara not been placed on leave in order to undergo an FFD in the first place, he would not have had any damage claims at all, the fact that Plaintiff cannot tie his lost pay to intentional disability discrimination should preclude a backpay award in this case.

### D. Nawara's claim for back pay was proximately caused by his decision not to cooperate, not by discrimination.

At the outset of this case, and until immediately before trial, Nawara consistently took the position that he had no issue taking an FFD evaluation and that he refused to cooperate in the FFD process because of the release forms alone. (*See, e.g.*, 10/22/19 Nawara Declaration at ¶ 17, Dkt. 222 ("I would have submitted to a fitness for duty exam with a provider chosen by CorVel in November 2016 had the Sheriff's Office not required me to sign the release forms."); Pltfs. Proposed Mot. for Summary Judgment at 7, Dkt. 220-1 ("Nawara would have voluntarily

submitted himself for a fitness for duty exam with a provider chosen by CorVel in November 2016 had the Sheriff's Office not required him to sign the release forms" (citing proposed statement of uncontested facts, Dkt. 220-2 at ¶ 47)); SAC ¶¶ 108-117, Dkt. 89 (basing ADA claim entirely on the release forms with no allegation that the FFD referral or examination were improper); Op. on Mot. to Dismiss at 14 n.11, Dkt. 187 ("Plaintiff Nawara does not contest the propriety of the FFD itself").

Then, the week before trial – over Defendant's objection – Nawara amended his claim by means of a trial brief to include the FFD referral. (2/19/20 Tr. at 6:8-7:25; Pltf.'s Am. Trial Br., Dkt. 278). During trial, however, Nawara reverted to his original theory and statement from his October 22, 2019 Declaration, stating that he refused to cooperate because of the forms and not the FFD evaluation itself. Indeed, he made this statement during his direct examination:

**Q: What was your concern at that time?**

**A: That I was being ordered to sign two blank forms.**

**Q: Did you have any concerns or worries about the fitness-for-duty evaluation itself?**

**A: No.**

(Trial Tr. at 1032:25-1033:4, emphasis added)). It was this refusal to sign the forms, by Nawara's own admission, that prolonged his leave. Thus, the proximate cause of Nawara's alleged losses for which he seeks back pay was his own decision not to sign the forms, not the referral by HR for an FFD. Furthermore, as the Court recognizes, Nawara would have lost no pay at all had he agreed earlier to submit to the FFD examination – "once Nawara gave in and participated in an FFD, he was almost immediately cleared to return to work." (Op. at 24).

Adding to the causation problem, injury-in-fact must stem from examinations or inquiries actually conducted – not the order to undergo the examination itself. *See, e.g.*, *Griffin*, 261 F.3d

at 1028-29 (affirming district court's ruling that "merely being asked the impermissible question is not sufficient, by itself, to inflict a cognizable injury" based on claim that decision not to hire was due to a refusal to answer improper inquiries); *Henderson v. Borough of Baldwin*, No. 15-1011, 2017 U.S. Dist. LEXIS 204788, *8-9 (W.D. Pa. 2017) ("Specifically, Plaintiff 'must show, in addition to the fact that the medical examinations *occurred*, that he suffered an injury in the form of emotional, pecuniary or compensative damages, *and that such damages are causally related to the medical examination*.'") (emphasis added); *EEOC v. Grane Healthcare Co.*, No. 3:10-250, 2015 U.S. Dist. LEXIS 123133, *112, 178 (W.D. Pa. Sept. 15, 2015) (judgment for employer because employee could not show an injury since she did not undergo the allegedly improper medical examination); *accord Hunter*, 1997 U.S. Dist. LEXIS 22064 at *30-35 ("It is illogical to assume that an individual was not hired because of an improper inquiry where the inquiry did not disclose anything adverse to the individual."); *see also Grassel v. Dep't of Educ. of N.Y.*, 2017 U.S. Dist. LEXIS 39683, *14, 16 (E.D. N.Y 2017) (distinguishing between *ordering* a medical exam and the scope of the exam itself because ordering the exam could be proper even if the exam itself was not); *Pena*, 651 Fed. Appx. at 422 (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810-13 (6th Cir. 1999) ("Since Sullivan never submitted to the examinations, he precluded himself from being able to establish a genuine issue of material fact as to whether the exams were related to his job, or were too broad in scope."); *James v. Goodyear Tire & Rubber Co.*, 354 Fed. Appx. 246, 249 (6th Cir. 2009) ("Evidence in the record that may allow us to predict what the exam might have shown does not suffice to raise a genuine issue as to the exam's actual scope. Had James taken the FCE, he could challenge its scope, but he cannot do so now."). Therefore, because Nawara cannot show that his leave and lost pay were the result of anything

uncovered by the FFD evaluation or the examiner's access to his medical information, he is not entitled to back pay.

### III. The *Costco* Decision Adds to the Conclusion that Back Pay Should Not be Awarded in this Case.

A final case is instructive in this regard – *E.E.O.C. v. Costco Wholesale Corp.* 903 F.3d 618, 629 (7th Cir 2018). As a threshold matter, while the Court's Opinion says that Defendant's brief opposing back pay "ignores" *Costco*, Defendant did address the *Costco* holding, and argued that *Costco* does not apply to the facts of this case. (*Compare* Dkt. 347, at 7, n.2 *to* Dkt. 360, at 25). The holding in *Costco* remains distinguishable from this case and underscores the requirement that in order to get back pay for an employment discrimination claim, the lost pay must be the proximate result of discrimination on account of membership in a protected class.

In *Costco*, the employee was stalked at work by a customer for over a year, creating an intolerable hostile work environment. *Id.* at 621. "Things got so bad at the end that [the employee] secured a plenary no-contact order from an Illinois state court. Traumatized by the experience, she also took an unpaid medical leave, and when she didn't come back, Costco terminated her employment." *Id.* The EEOC secured a victory for the employee at trial. On appeal, the Seventh Circuit agreed with the district court that the employee could not recover back pay for the period of time after Costco fired her. *Id.* But the Seventh Circuit held that the district court should have considered whether the employee was entitled to back pay for some or all of her time on unpaid medical leave. *Id.*

In considering this issue, the Seventh Circuit addressed whether the district court erred in denying the motion for back pay "covering the period during which emotional distress rendered [the employee] unable to work." *Id.* at 628. Looking to its prior caselaw, the court held that the EEOC could recover back pay on the employee's behalf if it could show that "the work

environment was so hostile that she was 'forced to take unpaid leave.'" *Id.* at 629 (quoting *Townsend v. Indiana*, 995 F.2d 691, 693 (7th Cir. 1993). No such finding was, or could be made, here.

The *Townsend* case is similar to *Costco* – the plaintiff took unpaid leave after being sexually assaulted at work. *Townsend*, 995 F.2d at 693. Townsend was in fact twice sexually assaulted by her supervisor, and thereafter experienced symptoms of acute psychological distress. *Id.* She took an unpaid medical leave of absence and was diagnosed with posttraumatic stress disorder induced by the sexual assaults. *Id.* The court found that "if the assaults caused *severe psychological distress that in turn caused her to lose work and as a result wages*, she is entitled to recover those wages." *Id.* (emphasis added).

The key, therefore, to both *Townsend* and *Costco* is that the missed work and wages must be tied to some type of "psychological distress" as stated in *Townsend*, or some "emotional distress," – related to the prohibited discrimination on account of membership in a protected class – that forced the unpaid medical leave, as stated in *Costco.* As was made abundantly clear by the jury verdict here, Nawara suffered no psychological or emotional distress whatsoever as a result either of the FFD referral or of the requirement that he sign a release form, much less any type of distress that would have forced him to miss work. Nawara chose to remain on leave for months because he would not cooperate with the FFD process, not because he was the victim of disability discrimination.

**CONCLUSION**

For the foregoing reasons, and those stated in Defendant's Rule 50 Briefs and Response to Plaintiff's Motion for Back Pay, this Court should find that Nawara has not established entitlement to back pay or proved injury-in-fact under the ADA.

Respectfully submitted,

/s/ Sarah R. Marmor

Sarah R. Marmor
Suzanne M. Alexander
Morgan G. Churma
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Ph. 312-726-6000
smarmor@scharfbanks.com
salexander@scharfbanks.com
mchurma@scharfbanks.com

*Counsel for THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois.*

## CERTIFICATE OF SERVICE

I certify that on April 21, 2021, I caused the foregoing **Defendant's Supplemental Brief Addressing Whether Violations of § 12112(D)(4)(A) Are *Per Se* Prohibited Disability Discrimination and Can Support a Backpay Award Without a Claim of Actual Discrimination or Proximate Cause** to be filed using the Court's CM/ECF system, which will send e-mail notification of the filing to all counsel of record. These documents are available for viewing and downloading via the CM/ECF system.

/s/ Sarah R. Marmor

Sarah R. Marmor
Suzanne M. Alexander
Morgan G. Churma
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Ph. 312-726-6000
smarmor@scharfbanks.com
salexander@scharfbanks.com
mchurma@scharfbanks.com

*Counsel for THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois.*