UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN NAWARA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17 C 02393 |
| | ) |
| COUNTY OF COOK, a unit of local Government, THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, KAREN JONES-HAYES, MATTHEW BURKE, REBECCA REIERSON, and WINIFRED SHELBY, in their individual capacities, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

John Nawara was temporarily removed from his position as a correctional officer at the Cook County Sheriff's Office ("CCSO"), pending a fitness-for-duty examination. Nawara believed that CCSO's testing demand violated his rights under the Americans with Disabilities Act ("ADA") and, while on leave, he filed this lawsuit. After several months of leave, however, Nawara underwent the examination, was found fit for duty, and immediately returned to work. His case proceeded to a jury trial, and on March 5, 2020, the jury entered a general verdict for Nawara, finding that CCSO had violated the ADA [304]. This court then denied CCSO's renewed motion for judgment as a matter of law [360], but withheld judgment on whether CCSO's violation of 42 U.S.C. § 12112(d)(4) constituted discrimination on the basis of disability and thus whether Nawara was entitled to back pay. The parties have since submitted supplemental briefing [366, 371] on the issue.

The court concludes that on the facts of this case, CCSO's violation of § 12112(d)(4) did not constitute disability discrimination. Thus, Nawara is not entitled to back pay. The court also

1

denies Nawara's request for an injunction barring CCSO's continued use of the medical release forms in question.

## BACKGROUND

The court presented the facts of this case in its March 29, 2021 ruling. *See Nawara v. Cnty. of Cook*, No. 17 C 2393, 2021 WL 1172742 (N.D. Ill. Mar. 29, 2021). As relevant here, Nawara argued at trial that CCSO violated 42 U.S.C. § 12112(d)(4) by unlawfully forcing him to undergo a fitness-for-duty exam and making him sign medical disclosure forms. *Id.* at *7–8. Nawara does not claim to have an actual or perceived disability and did not seek punitive damages for his ADA claim. (*See* Second Am. Compl. [89] ¶¶ 108–117.) The jury entered a general verdict for Nawara, but awarded him no emotional distress damages [304]. This court rejected CCSO's renewed argument in its post-trial motion for judgment as a matter of law [312, 314] that no reasonable jury could have found that CCSO violated § 12112(d)(4). *See Nawara*, 2021 WL 1172742, at *12.

In that decision, the court also addressed Nawara's motion for back pay and equitable relief [305]. CCSO had argued that an enforcement provision of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-5(g)(2)(A), prohibits courts from awarding back pay in cases where a plaintiff experienced an adverse employment action "for any reason other than discrimination" on the basis of disability. (CCSO Backpay Resp. [347] at 2.) Because Nawara did not claim to have an actual or perceived disability, CCSO contended that the § 12112(d)(4) violation was not discrimination on the basis of disability and Nawara was not entitled to back pay. (*Id.*) The court concluded, however, that the parties' briefing on this issue was inadequate and declined to decide the issue of back pay. The court ordered the parties to provide supplemental briefing on "whether improper medical inquiries or examinations in violation of § 12112(d)(4) constitute discrimination under the ADA for purposes of a backpay award." *Nawara*, 2021 WL 1172742, at *14. The court now addresses that supplemental briefing.

**DISCUSSION**

**A.     Back Pay**

"A plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to backpay." *Stragapede v. City of Evanston, Ill.*, 865 F.3d 861, 868 (7th Cir. 2017), *as amended* (Aug. 8, 2017). The back pay statute contains an exception, however, barring that remedy where the employer carried out the employment action for "any reason other than discrimination on account of" disability.[1] 42 U.S.C. § 2000e-5(g)(2)(A). The jury in this case determined that CCSO had engaged in an unlawful employment action: violating the ADA—but not violating the ADA's general anti-discrimination provision, which prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability," *see* 42 U.S.C. § 12112(a), and which was not before the jury.[2] (Jury Instructions [302] at 24.)

Rather, the jury found that CCSO had violated § 12112(d)(4), which prohibits employers from "requir[ing] a medical examination . . . [or] mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). An employer can "make inquiries into the ability of an employee to perform job-related functions," *see id.* § 12112(d)(4)(B), and other provisions in

---

[1] Subsection 2000e-5(g)(2)(A) is an enforcement provision of the Civil Rights Act of 1964, and it only refers to discrimination on account of "race, color, religion, sex, or national origin." However, a provision of the ADA "mak[es] § 2000e-5(g) applicable to the ADA." *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013) (citing 42 U.S.C. § 12117(a)). The statute's legislative history and caselaw suggest it applies to disability discrimination as well. *Nawara*, 2021 WL 1172742, at *14 n.9.

[2] Under § 12112(a), a plaintiff must establish that (1) "he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019) (citation omitted). The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." *Id.* (quoting 42 U.S.C. § 12102(1)).

subsection (d) prohibit certain inquiries and examinations in the preemployment and employment entrance contexts. *Id.* §§ 12112(d)(2), (3). To establish a violation of § 12112(d)(4)(A), Nawara did not need to offer evidence that he had an actual or perceived disability or that anybody at CCSO subjected him to the fitness-for-duty process because of that disability. *See Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020) ("[Subsection 12112(d)(4)(A)] applies to all employees, with or without an actual or perceived disability."). And Nawara offered no such evidence of a disability. Thus, this case now presents a single question: does a violation of § 12112(d)(4) constitute discrimination on the basis of a disability, even when the plaintiff has not alleged that he has an actual or perceived disability?

In addressing this question, Nawara begins with the language of the ADA as codified in Title 41. Subsection 12112(a), entitled "General rule," states:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Subsection 12112(d) is entitled "Medical examinations and inquiries," and its subsection (d)(1) (entitled "In general") states, "The prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries." Nawara interprets this language to mean that all unlawful medical examinations and inquiries constitute "discrimin[ation] against a qualified individual on the basis of disability" as outlawed in subsection (a), regardless whether the plaintiff has an actual or perceived disability. Defendant, on the other hand, interprets it to mean that while medical examinations are included in the list of subsection (a) employment practices, they constitute unlawful discrimination only when done in such a way as to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The court agrees with Defendant.

Subsection (a) lists a number of employment actions that will be unlawful if carried out in such a way as to "discriminate against a qualified individual on the basis of disability." 42 U.S.C.

4

§ 12112(a). By "includ[ing] medical examinations and inquiries" in this "prohibition against discrimination as referred to in subsection (a)," subsection (d)(1) intends to include medical examinations and inquiries on this list—or, alternatively, to include them under the umbrella of "other terms, conditions, and privileges of employment." And because medical examinations and inquiries belong on the subsection (a) list, they are discriminatory only if they "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). So, while an employer may *unlawfully* require a medical examination or inquiry if those actions are not "job-related" or "consistent with business necessity" under § 12112(d)(4)(A), those unlawful actions are not inherently *discriminatory* under § 1211(d)(1).³

Subsection 12112(b) lends further support to this interpretation. Subsection (b), entitled "Construction," states that subsection (a)'s term "discriminate against a qualified individual on the basis of disability" includes certain practices, including practices that have a disparate impact on persons with disabilities or practices that fail to make reasonable accommodations. Nawara's interpretation of subsection (d)(1) suggests that, like the practices listed in subsection (b), unlawful medical examinations and inquiries are inherently a form of "discriminat[ion] against a qualified individual on the basis of disability." But the statute states that each employment practice listed in subsection (b) is unlawful when done "because of" or "on the basis of" the individual's disability, *see* §§ 12112(b)(1), (3)–(4), or when it has an adverse effect on an employee "with" or "who has"

---

³ The court notes that in an unpublished opinion, the Seventh Circuit similarly construed subsection (d) in reference to subsection (a), explaining: "[I]t seems clear that in order to assert that one has been discriminated against because of an improper medical inquiry, that person must also have been otherwise qualified [under the ADA]." *Hunter v. Habegger Corp.*, No. 97-2133, 1998 WL 104635, at *13 (7th Cir. Mar. 5, 1998). The Seventh Circuit also determined that the defendant's wrongful inquiry into an applicant's workers' compensation history did not automatically entitle him to back pay and damages; rather, the court concluded that in order to receive any non-injunctive relief, plaintiff needed to show he would have been hired, but for the wrongful inquiry. *Id.* And the *Hunter* plaintiff could not establish this, because while the court assumed he was disabled, the record did not support that he was otherwise qualified. *Id.* at *14. The court notes, however, that to the extent *Hunter* holds that plaintiffs must be qualified individuals with a disability to bring § 12112(d) claims, it does not appear to survive more recent caselaw. *See Kurtzhals*, 969 F.3d at 730.

a disability.  See §§ 12112(b)(2), (5)–(7).  In other words, this subsection provides no support for the contention that an unlawful action against a person who has not alleged a disability constitutes disability discrimination under the ADA.

The limited case authority also supports this court's conclusion.  The Seventh Circuit has not yet decided whether a violation of § 12112(d)—without plaintiff alleging a disability— constitutes discrimination.  As already noted, like other circuits, our Court of Appeals has held that a plaintiff may sue for violations of § 12112(d) without claiming or proving a disability.[4]  See *Wright v. Ill. Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 522 & n.24 (7th Cir. 2015); *O'Neal v. City of New Albany*, 293 F.3d 998, 1007 (7th Cir. 2002).  But none of these courts have held that such violations constitute discrimination on the basis of disability, even where the plaintiff has not shown an actual or perceived disability.  And some cases suggest the opposite.  In *Harrison v. Benchmark Elecs. Huntsville, Inc.*, a job applicant without a qualifying disability sued the defendant under § 12112(d)(2) for asking follow-up questions in response to a positive drug test. 593 F.3d 1206, 1209–11 (11th Cir. 2010).  Interpreting subsection (d)(1), the Eleventh Circuit explained that it "incorporates § 12112(a)'s general rule that to maintain an *action for discrimination itself*, a plaintiff must be disabled under the ADA," but it does not bar non-disabled plaintiffs from bringing claims under § 12112(d)(2).  *Id.* at 1213 (emphasis added).  Similarly, in *Frendenburg v. Contra Costa Cnty. Dep't of Health Servs.*, the Ninth Circuit held that the plaintiff could sue her employer under § 12112(d)(4)(A) for forcing her to undergo fitness-for-duty examinations.  172 F.3d 1176, 1180–82 (9th Cir. 1999).  The Ninth Circuit rejected the district court's conclusion that subsection (d)(1)'s reference to subsection (a) meant that plaintiff had to

---

[4] The Seventh Circuit has also held that an involuntary medical examination— allegedly a violation of § 12112(d)(4)—did not warrant punitive damages (which require a malicious or reckless "discriminatory practice"), because, given the novelty of plaintiff's legal theory, defendant did not have the requisite state of mind.  See *EEOC v. Flambeau, Inc.*, 846 F.3d 941, 947–48 (7th Cir. 2017).  That case concerned whether plaintiff had a personal stake in the litigation, and was decided on mootness grounds.  See *id.* at 946.  The court did not discuss or determine whether violating § 12112(d)(4) constitutes disability discrimination.

establish she was a "qualified individual with a disability" to bring suit, explaining that subsection (d)(1) does not apply to subsection (d)(2), (3), or (4); rather, subsection (d)(1) "directs courts to treat medical examinations as *possible evidence* of discriminatory conduct. Within this context, *only qualified individuals with a disability* have a cause of action." *Id.* at 1181–82 (emphasis added).

Despite several opportunities, Nawara has not identified (nor has the court found) a single case in which a court awarded back pay to a plaintiff in response to a § 12112(d) violation, where the plaintiff did not assert that the defendant discriminated against her on the basis of an actual or perceived disability. To the court's knowledge, *Green v. Joy Cone Co.* is the only case that deals with this question, and *Green* supports this court's decision. 278 F. Supp. 2d 526 (W.D. Pa. 2003). There, a job applicant brought a § 12112(d)(2) claim and sought back pay after her prospective employer required her to provide access to her medical records. *Id.* at 529–30. The plaintiff did not bring a claim for discrimination on behalf of a disability, nor did the court identify her as having a disability. *Id.* at 538. The Western District of Pennsylvania found that the plaintiff was not entitled to pecuniary relief, including back pay. *Id.* at 544–45. The court explained that § 2000e-5(g)(2)(A) prohibits courts from granting back pay to individuals who are "refused employment . . . for any reason other than discrimination" and found that "[s]ince Ms. Green [by raising only a § 12112(d)(2) claim] is not claiming to have been discriminated against on account of disability, the issuance of back pay is inappropriate under the law."[5] *Id.* at 544.

Other courts have similarly declined to award damages for violations of § 12112(d) to plaintiffs who provide no evidence of discrimination on the basis of disability. *See Armstrong v.*

---

[5] Nawara argues that the court cannot rely on *Green* in this decision because the court previously considered *Green* in its March 28, 2019 Motion to Dismiss opinion [187] and found the case "unpersuasive," as it dealt with subsection (d)(2) instead of subsection (d)(4). *Nawara v. Cnty. of Cook*, No. 17 C 2393, 2019 WL 1399972, at *6 (N.D. Ill. Mar. 28, 2019). There, however, the issue was whether the medical release forms constituted an "inquiry" and thus fell within the scope of subsection (d)(4). The distinction between subsections (d)(2) and (d)(4) is immaterial to the issue of back pay, as Nawara's argument assumes that subsection (d)(1) applies to all medical inquiries under § 12112(d).

*Turner Indus.*, 141 F.3d 554, 560 (5th Cir. 1998) ("The magistrate judge determined that there was no evidence indicating the employment action in question was tainted by disability discrimination, and consequently it does not constitute a compensable injury."); *see also Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028–29 (10th Cir. 2001) ("Compensatory damages are available under the ADA, however, only if the plaintiff establishes that the employer not only technically violated § 12112(d)(2)(A) by asking a prohibited question, but also that by doing so it actually engaged in unlawful intentional discrimination." (internal quotations omitted)).

The caselaw Nawara does cite in support of his argument is not persuasive. First, he points to the two cases that this court identified in its March 29, 2021 decision: *Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015), and *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Transit Auth.*, 342 F. Supp. 2d 160 (S.D.N.Y. 2004). In *Taylor*, police officers filed a putative class action against the city alleging, among other things, that the department's sick leave policy violated § 12112(d)(4)(A). In discussing this claim, the Fifth Circuit stated, "[A] prohibited medical examination or inquiry may constitute a form of employment discrimination under the ADA." *Taylor*, 798 F.3d at 282. Similarly, in *Transport Workers*, labor unions representing municipal mass-transit workers sued New York City and alleged, among other things, that the transit authority's sick leave policy violated § 12112(d)(4)(A). *Transp. Workers*, 342 F. Supp. 2d at 162. There, the Southern District of New York explained, "Peculiar to [ADA] Article I's definition of discrimination is that it include[s] medical examinations and inquiries." *Id.* at 164 (citing 42 U.S.C. §§ 12112(a), (d)(4)(A).)

That "a prohibited medical examination or inquiry *may* constitute a form of employment discrimination under the ADA," *Taylor*, 798 F.3d at 282 (emphasis added), does not mean that it *is* employment discrimination. An employer-imposed medical examination—like an employer's act of hiring, advancing, discharging, or taking any other action listed in § 12112(a)—constitutes employment discrimination only where the adverse action was taken on the basis of the employee's disability. Thus, the court's holding today in no way prevents future litigants from

securing an award of back pay following an employer's violation of § 12112(d). But such a successful plaintiff must show—as Nawara cannot—that they were discriminated against on the basis of their disability.

Neither is the court persuaded by the ruling of the District of New Mexico in *Gonzales v. Sandoval Cnty.*, 2 F. Supp. 2d 1442 (D.N.M. 1998). There, the court awarded back pay to a plaintiff who had succeeded on his claim under § 12112(d)(4)(A). *Id.* at 1446. In a portion of the decision that did not concern back pay, the court stated that "the prohibited [medical] inquiry [was] itself a form of discrimination under the ADA." *Id.* (citing 42 U.S.C. § 12112(d)(1)). Notably, this conclusory statement was not necessary for the court to award the plaintiff back pay; the jury in that case had specifically found that the defendant discriminated against the plaintiff on the basis of the plaintiff's disability. *Id.* at 1444. Therefore, the precise issue in this case—whether to award a non-disabled plaintiff back pay following a successful claim under § 12112(d)(4)(A)—was not before the court. Regardless, to the extent the court in *Gonzales* would have made that statement even had the jury not found disability discrimination (independent of the unlawful medical inquiry), this court respectfully disagrees.[6]

Finally, Nawara argues that without the threat of back pay as a remedy, § 12112(d) is rendered "toothless." (Pl.'s Suppl. Brief [366] at 7.) The court disagrees. A successful § 12112(d) claim brought by an employee who is a qualified individual with a disability—the class of persons ordinarily protected by the ADA—would merit the court's consideration of an award of back pay. Even in the unusual case such as this one, where a non-disabled, non-discriminated against

---

[6] Other cases that Nawara cites are of little relevance. *See U.S. EEOC v. Gulf Logistics Operating, Inc.*, 299 F. Supp. 3d 832, 835 (E.D. La. 2018) (refusing to grant a motion to dismiss a § 12112(d)(4)(A) claim only because "Defendant fail[ed] to request dismissal of the two claims actually pleaded in the complaint"); *see also Buchanan v. City of San Antonio*, 85 F.3d 196, 198–200 (5th Cir. 1996) (reversing, for reasons unrelated to the district court's decision to award back pay, a district court's mid-trial decision to grant a plaintiff's motion for judgment as a matter of law as to a § 12112(d)(2) claim).

employee alleges a violation of § 12112(d), the employee may still seek monetary remedies such as punitive and emotional distress damages, so long as the facts support them.

The court concludes, from the language and structure of § 12112 and relevant caselaw, that an unlawful medical examination as occurred here does not constitute discrimination on the basis of disability where the plaintiff has neither claimed nor proven any perceived or actual disability. As Nawara has not provided any other reason that CCSO's violation of § 12112(d)(4) should constitute discrimination on the basis of disability, the court concludes he is not entitled to back pay. The court likewise denies Plaintiff's request that CCSO should restore the vacation days, holidays, and sick days that he used and the seniority that he would have accrued during the period in question.[7]

**B.      Enjoining CCSO from future use of forms**

Finally, in his motion for back pay and equitable relief, Nawara also asked the court to enjoin CCSO from continuing to engage in this type of behavior in the future. In deciding whether to grant an injunction the court "must consider whether the employer's [unlawful] conduct could possibly persist in the future." *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013). Nawara's request alleges other instances in which CCSO's Human Resources department unlawfully refers employees for fitness-for-duty exams, but he has provided little evidence that this problem persists. And to the extent that Nawara's request refers to the medical release forms

---

[7] Defendant makes additional arguments that do not change the outcome of this case. Defendant cites *Armstrong*, where the Fifth Circuit mentioned in a footnote that a § 12112(d)(2) violation must be not only the but-for cause of a plaintiff's injury, but also the "legal or proximate cause." 141 F.3d at 560 n.16. But the Fifth Circuit was concerned about an attenuated causal chain: in that case, the unlawful medical inquiry prevented plaintiff from gaining employment because it ultimately led to questioning that revealed that he had lied on his written application. *Id.* at 560 n.16, 556–57. The link between Nawara's lost wages and the fitness-for-duty exam is not so attenuated. Defendant additionally revisits arguments that this court rejected in its earlier opinion, including an argument surrounding *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618 (7th Cir. 2018), and an argument that Nawara's injury is not cognizable because it arose from a mere order to undergo an unlawful fitness-for-duty exam, rather than from the exam itself. The court need not address these arguments again.

in question, the record shows that neither form is still in use. (Trial Tr. [321–332] at 294:2–302:13, 1536:3–10.) The request for injunctive relief is thus denied.

## **CONCLUSION**

For the foregoing reasons, the court rejects in full Plaintiff's motion for back pay and other equitable relief [305].

ENTER:

Dated: November 4, 2021

_____
REBECCA R. PALLMEYER
United States District Judge