**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JOHN NAWARA,

               Plaintiff,

           v.

COUNTY OF COOK, a unit of local
Government; THOMAS DART, in his official
capacity as Sheriff of Cook County, Illinois,

            Defendants.

Case No. 17-cv-02393

Chief Judge Rebecca R. Pallmeyer

### _PLAINTIFF'S RULE 59 POST-TRIAL MOTION_

Richard F. Linden
312/590-0211
lindenlaw@gmail.com

Peter V. Bustamante
312/346-2072
pvbust@bustamantelaw.com

Linden & Bustamante
17 North State Street, Suite 1550
Chicago, Illinois 60602

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. THE COURT SHOULD RECONSIDER AND VACATE ITS ORDER DENYING PLAINTIFF'S MOTION FOR BACKPAY AND OTHER RELIEF ...............................................................3

A.   The Court Violated Fundamental Rules of Statutory Construction by Adding the Term "Disability" to 42 U.S.C. § 2000e-5(g)(2)(A) .........................................................3

B.   There is no Basis to Create an Exception for Backpay for Violations of the ADA ....................7

    i.   The Decision is at Odds with the Sixth Circuit's Opinion in Bates v. Dura Automotive Systems ...........................................................................................................7

    ii.   The Cases Relied on by the Court Fail to Support the Denial of Backpay.......................8

C.   When § 12112 is Considered as a Whole, there is no Question that Backpay is an Available Remedy ........................................................................................................13

D.   Evidence of a Perceived Disability was Presented at Trial.........................................14

E.   The Backpay Decision is Inconsistent with "Make Whole" Rule of the ADA and Title VII ....17

F.   The Court has a Duty to Render a Decree which will Eliminate, as far as Possible, the Discriminatory Effects of the Past and Bar Like Discrimination in the Future ........................20

G.   The Court's Denial of Backpay Weakens the Protections Afforded under the ADA for Individuals with Disabilities ....................................................................................21

H.   The Backpay Decision is Contrary to Well-Established Precedent Holding that Prevailing ADA Plaintiffs are Presumptively Entitled to Backpay..................................................23

I.   Nawara's Seniority Must be Restored as part of Plaintiff's Make-Whole-Relief .....................25

J.   The Fact that Nawara's Actions Caused the Defendant to Change the Manner of Obtaining Medical Records is a Strong Indicator that Actions by the Non-disabled Must not be Discouraged.........................................................................................................26

K.   Application of 42 U.S.C Sec. 2000e-5(g)(2)(A) in a Manner that Bars Nawara any Backpay is An Affirmative Defense Which was Waived or Forfeited by the Defendant Because it Was Never Pled in its Answer ..........................................................................................27

## TABLE OF AUTHORITIES

**CASES**

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418-19 (1975) .......................................18, 19, 21

*Armstrong v. Turner Indus.*, 141 F.3d 554 (5th Cir. 1998).......................................................11

*Awalt v. Marketti*, 2015 U.S. Dist. LEXIS 91546, *41 (N.D. Ill. 2015)...................................26

*Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp.3d 1000, 1012 (N.D. Ill. 2016) ......................24

*Barry v. Illinois Dep't of Corr.*, 2018 WL 5983553, at *2 (C.D. Ill. Nov. 14, 2018)...............24

*Bates v. Dura Automotive Systems*, 767 F.3d 566 (6th Cir. 2014) (rehearing *en banc denied*) ..............7, 8

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)....................................................4

*Best v. Shell Oil Co.*, 4 F.Supp.2d 770, 774 (N.D.Ill. 1998).....................................................25

*Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2nd Cir. 2003)............2, 5, 6

*David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003).................................................20

*E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997) ........................21, 24

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) .................................14

*Ford Motor Co. v. EEOC*, 458 U.S. 219, 230 (1982) ...............................................................19

*Franks v. Bowman Trans. Co., Inc.*, 424 U.S. 747 (1976).........................................................25

*Garlitz v. Alpena Reg'l Med. Ctr.*, 834 F.Supp.2d 668, 677 (E.D. Mich. 2011) ......................22

*Green v. Joy Cone Co.,* 278 F.Supp.2d 525 (W.D. Pa. 2003) ....................................8, 9, 10, 28

*Griffin v. Steeltek, Inc.*, 261 F.3d 1026 (10th Cir. 2001) .................................................11, 12

*Gonzales v. Sandoval County*, 2 F.Supp.2d 1442 (D.N.M. 1998)......................................12, 13

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) .........................................................4

*Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020)...............................................7, 22

*LaCroix v. Boston Police Dep't*, 454 F.Supp.3d 97, 105 (D. Mass. 2020)..................................2

*Nawara v. Cty. of Cook*, 2019 WL 1399972 (N.D. Ill. Mar. 28, 2019)................................................11, 16

*Nawara v. Cty. of Cook*, 2021 WL 1172742 (N.D. Ill. Mar. 29, 2021)..................................12, 16, 17, 19

*Ortega v. Chicago Bd. of Educ.*, 280 F.Supp.3d 1072 (N.D. Ill. 2017).............................5, 19, 20, 21, 24

*Pacourek v. Inland Steel Co.*, 916 F. Supp. 797, 800–01 (N.D. Ill. 1996) ................................................17

*Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 501 (7th Cir. 2000)........................................24

*Reed v. St. Mary's Hospital*, 915 F. 3d 473 (7th Cir. 2019) .....................................................................27

*Richardson v. Chicago Transit Authority*, 926 F.3d 881, 886 (7th Cir. 2019) ..........................................16

*Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016)................................................................16

*Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997)........................2, 23

*Smith v. Zachary*, 255 F.3d 446, 448 (7th Cir. 2001) ..............................................................................14

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017).............................................4

*Stragapede v. City of Evanston*, 125 F. Supp. 3d 818, 823 (N.D. Ill. 2015) ......................................20, 23

*Sutton v. United Airlines, Inc.*, 527 U.S. 471, 490 (1999) ........................................................................16

*Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015)......................................................................13

*Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Transit Auth.*, 342 S.Supp.2d 160 (S.D.N.Y. 2004) ......................................................................................................................................................13

*United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988)..................................................................10

*United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) ......................................................................4

*United States v. Rutherford*, 442 U.S. 544, 555 (1979) ............................................................................4

*U.S. E.E.O.C. v. Rockwell Intern, Corp.*, 23 F.Supp.2d 892, 894 (N.D.Ill. 1998) ...................................25

*Vega v. Chicago Park Dist.*, 351 F.Supp.3d 1078, 1087 (N.D. Ill. 2018), *aff'd* 954 F.3d 996 (7th Cir. 2020) ......................................................................................................................................................24

*Venters v. City of Delphi*, 123 F. 3d 956, 967-68 (7th Cir. 1997) .............................................................27

*Wicker v. Hoppock*, 6 Wall 94, 99 (1867)...............................................................................................18

*Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2073, 201 L. Ed. 2d 490 (2018) ..........................3

*Wood v. Melyard,* 566 U.S. 463, 470, n. 4 (2012) ...............................................................................28

*Wragge v. Boeing Co.*, 2021 WL 1209157, at *4 (N.D. Ill. Mar. 31, 2021) ................................4

*Wright v. Illinois Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 522, n. 24 (7th Cir. 2015) ................8, 24

## STATUTES

29 C.F.R. 1630.2(g) .............................................................................................................................5

42 U.S.C. § 2000-e-5 ...........................................................................................................................8

42 U.S.C. § 2000e-5(g)(2)(A) ..............................................................................................................3

42 U.S.C. § 12102 ...............................................................................................................................15

42 U.S.C. § 12102(3)(A) ......................................................................................................................16

42 U.S.C. § 12112(a)(1) .......................................................................................................................14

42 U.S.C. § 12112(d) ................................................................................................................1, 3, 7

42 U.S.C. § 12112(d)(1) .......................................................................................................................14

42 U.S.C. § 12112(d)(4)(A) ..............................................................................................................2, 7

42 U.S.C. § 12117(a) ............................................................................................................................8

## RULES

Fed. R. Evid. 407 ................................................................................................................................26

Fed. R. Civ. P 8(c) .............................................................................................................................27

## MISCELLANEOUS

136 Cong. Rec. E1913-01, 136 Cong. Rec. E1913-01, E1915, 1990 WL 80290.....................................22

136 Cong. Rec. H2599-01, H2632, 1990 WL 67606 ............................................................................23

136 Cong. Rec. H4614-02, 136 Cong. Rec. H4614-02, H4626, 1990 WL 97270 ....................................22

EEOC Report regarding Amendments to the ADA, 2011 WL 1060575, p.10............................................6

*Enforcement Guidance on Disability–Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act,* p. 6 (EEOC, July 27, 2000) .................................................................6

H.R. REP. 101-485, 44, 1990 U.S.C.C.A.N. 445, 467 ......................................................................22

*Nawara v. County of Cook*, 17 C 2393, Def Motion to Dismiss Doc. 165-1, pp. 6, 7, & 8 ....................28

*Nawara v. County of Cook*, 17 C 2393, Answer Doc. 188, pp. 35-42......................................................27

*Nawara v. County of Cook*, 17 C 2393, Def. Mtn. in Limine #20, Doc. 241-1 ........................................26

*Nawara v. County of Cook*, 17 C 2393, Jury Instructions, Doc. 302 p. 25.........................................16, 19

*Nawara v. County of Cook*, 17 C 2393, Motion for Award of Backpay, p. 4 [Doc. 305] .........................25

*Nawara v. County of Cook*, 17 C 2393, Order Denying Judgment as a Matter of Law [Doc. 360]..........19

*Nawara v. County of Cook*, 17 C 2393, Stipulation #1 pursuant to Court's March 29, 2021 Order [Doc. 362] ...........................................................................................................................................................24

*Nawara v. County of Cook*, 17 C 2393, 11/4/21 Opinion p. 3 (Doc. 373) ...................4, 5, 6, 8, 12, 13, 23

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN NAWARA, | |
| Plaintiff, | |
| v. | Case No. 17-cv-02393 |
| COUNTY OF COOK, a unit of local Government; THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois, | Chief Judge Rebecca R. Pallmeyer |
| Defendants. | |

## *PLAINTIFF'S RULE 59 POST-TRIAL MOTION*

Plaintiff, John Nawara ("Nawara" or "John"), by his attorneys, pursuant to Federal Rule of Civil Procedure 59, moves this Honorable Court to reconsider and vacate its November 4, 2021 decision (Docs. 372 and 373) denying Plaintiff's motion for back pay and other equitable relief and to order the relief requested in Plaintiff's motion for backpay and other equitable relief (Doc. 305), and states:

## I. *INTRODUCTION*

If persons like John, who are treated by their employer as if they have a disability, refuse to acquiesce to the employer's discriminatory conduct, bring a claim fully permitted by the ADA[1] and are denied recovery of make-whole relief, then those persons will have no reason or motivation to pursue such an action. Employers will be emboldened to subject employees to unlawful medical exams/inquiries and the protections for the disabled will be extinguished or eroded.

---

[1] The ADA provides that the prohibition against "discrimination" includes medical examinations and inquiries. (42 U.S.C. § 12112(d)).

1

The ADA was enacted to protect persons with disabilities, irrespective of whether those disabilities can be objectively perceived by others or whether they are hidden. Unless a "disability" impacts an employees' ability to perform his/her job, the employer has no right to learn about an employee's "disability." The Court's decision adversely impacts this core principle behind 42 U.S.C. § 12112(d)(4)(A).

Based on the Court's order, to receive backpay for a loss caused by an unlawful medical exam/inquiry, an employee will now be required to prove he/she has a "disability" or a perceived "disability" thus exposing their "disability" and hence thwarting the purpose of the statute. "It makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." *Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997); *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2nd Cir. 2003), (*quoting Roe*,  "[w]e agree with the Tenth Circuit that '[i]t makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability to prevent his employer from inquiring as to whether or not he has a disability.'"; *see also*, *LaCroix v. Boston Police Dep't*, 454 F.Supp.3d 97, 105 (D. Mass. 2020) (agreeing with long line of cited cases that it would be inconsistent with the purpose of the medical examination and inquiry prohibitions to require that an employee demonstrate a disability before challenging an employer's inquiry into whether the individual has a disability).

If, as part of his case, John had to prove that he had an actual or perceived disability, a jury could find that the Sheriff's FFD referral and inquiry into John's medical records were job related and consistent with business necessity. The Court's ruling puts John, and every ADA plaintiff facing an illegal medical exam/inquiry in an untenable position. The Court's statement that only

2

people who have disabilities are entitled to make a claim for back wages is contrary to public policy, well-established precedent and contrary to the ADA's stated purpose to protect persons with disabilities by preventing unlawful inquiries into employees' actual or perceived disabilities.

## II. THE COURT SHOULD RECONSIDER AND VACATE ITS ORDER DENYING PLAINTIFF'S MOTION FOR BACKPAY AND OTHER RELIEF

### A. The Court Violated Fundamental Rules of Statutory Construction by Adding the Term "Disability" to 42 U.S.C. § 2000e-5(g)(2)(A)

The Court's denial of backpay rests on 42 U.S.C. § 2000e-5(g)(2)(A). But the Court added a word that is not contained in the statute, "Disability." The statute actually reads:

> No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for *any reason other than discrimination on account of race, color, religion, sex, or national origin* or in violation of section 2000e-3(a) of this title.

42 U.S.C.A. § 2000e-5(g)(2)(A) (emphasis added).

The statute is clear and unambiguous. The word "disability" is not there. The ADA provides that the prohibition against "discrimination" includes medical examinations and inquiries. (42 U.S.C. § 12112(d)).

If Congress intended for the term "disability" to be part of the statute and a requirement for backpay under the ADA for unlawful medical exams/inquiries, it would have so stated. It is not a court's function to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have intended. *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2073, 201 L. Ed. 2d 490 (2018). Congress chose not to, and it is improper for the Court to rewrite

the statute by inserting the term "disability."[2]

The general rule is that courts presume that the language of a statute manifests Congressional intent. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009); *Wragge v. Boeing Co.*, 2021 WL 1209157, at *4 (N.D. Ill. Mar. 31, 2021). All questions of statutory interpretation start with the text of the statute to ascertain its plain meaning. *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020). If the statutory language's plain meaning is unambiguous, the court's inquiry ends there. *Melvin*, 948 F.3d at 852; *see also*, *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' [citation omitted]. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous").

It is axiomatic that where the language of the statute is plain and unambiguous, courts must give effect to the clear meaning of the statute as written. *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017); *Wragge*, 2021 WL 1209157, at *4. "Under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy." *United States v. Rutherford*, 442 U.S. 544, 555 (1979). It is only when a literal construction of a statute yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied. *Rutherford*, 442 U.S. at 555.

---

[2] The Court quoted the statute as follows: "The back pay statute contains an exception, however, barring that remedy where the employer carried out the employment action for *'any reason other than discrimination on account of 'disability*." (11/4/21 Opinion, p. 3 [Doc. 373]) (emphasis added).

There is no basis for the Court to depart from the unambiguous language of 42 U.S.C. § 2000e-5(g)(2)(A) and the basic tenet that employees who prove employment discrimination under the ADA are presumptively entitled to back pay. *Ortega v. Chicago Bd. of Educ.*, 280 F.Supp.3d 1072 (N.D. Ill. 2017). This Court recognized that a "plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to backpay." (11/4/21 Opinion, p. 3 [Doc. 373]). Congress could have easily inserted the term "disability" into the statute if this were Congress' intent.

Congress' decision not to amend the statute by adding the term "disability" is consistent with the purpose and legislative history of 42 U.S.C. § 12112(d)(4)(A). In contrast to other parts of the ADA, the statutory language contained in § 12112(d)(4)(A) "does not refer to qualified individuals with disabilities, but instead merely to 'employees.'" *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94–95 (2d Cir. 2003).

> We agree with our sister circuits that a plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112(d)(4)(a). In contrast to other parts of the ADA, the statutory language does not refer to qualified individuals with disabilities, but instead merely to "employees." 42 U.S.C. § 12112(d)(4)(A). Moreover, we agree with the Tenth Circuit that **"[i]t makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability."** *Roe,* 124 F.3d at 1229.

*Conroy*, 333 F.3d at 94–95 (emphasis added); *See also* 29 C.F.R. 1630.2(g) including the following within the regulatory definition of "disability:"

> Being regarded as having such an impairment as described in paragraph (l) of this section. This means that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both "transitory and minor. . ."

> (l) Is regarded as having such an impairment" The following principles apply under the "regarded as" prong of disability (paragraph (g)(l)(i)):

> . . . (A)n individual is "regarded as having such an impairment" if the individual is subjected to a prohibited action because of an actual or perceived physical or mental

5

impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity.

*See also,* EEOC Report regarding Amendments to the ADA, 2011 WL 1060575, p.10

regarding Section 1630(l):

As noted in the appendix, while a person must show, both for coverage under the "regarded as" prong and for ultimate liability, that he or she was subjected to a prohibited action because of an actual or perceived impairment, this showing need only be made once.

The EEOC's Enforcement Guidance on Disability-Related Inquires and Medical

Examinations[3] provides:

This statutory language makes clear that the ADA's restrictions on inquiries and examinations apply to all employees, not just those with disabilities. Unlike other provisions of the ADA which are limited to qualified individuals with disabilities, the use of the term 'employee' in this provision reflects Congress's intent to cover a broader class of individuals and to prevent employers from asking questions and conducting medical examinations that serve no legitimate purpose [citation and footnote omitted]. Requiring an individual to show that s/he is a person with a disability in order to challenge a disability-related inquiry or medical examination would defeat this purpose [citation and footnote omitted]. Any employee, therefore, has a right to challenge a disability-related inquiry or medical examination that is not job related and consistent with business necessity.

(*Enforcement Guidance on Disability–Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act,* p. 6 (EEOC, July 27, 2000), a copy is attached hereto as Exhibit 1).

There is no discernable reason why employees who prove employment discrimination

under other provisions of the ADA are presumptively entitled to backpay while employees who

prove an unlawful medical examination/inquiry but fail to prove a "disability" in connection

therewith are barred from recovering backpay especially when the ADA provides that the

---

[3] Even when they are not formally promulgated as regulations, such agency publications are a body of experience and informed judgment to which courts and litigants may properly resort for guidance. *Conroy*, 333 F.3d at 95.

prohibition against *"discrimination" "shall include medical examinations and inquiries."* (42 U.S.C. § 12112(d)) (emphasis added).

To require employees to prove they are "disabled" in order to recover backpay for improper medical examinations and inquiries defeats the purpose of the statute. As discussed *supra*, the purpose of § 12112(d)(4)(A) is to prevent employers from inquiring into whether an employee has a "disability" through a medical examination/inquiry unless the examination/inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020).

Moreover, requiring Nawara to prove a disability would have placed him in an untenable position. The alleged "perceived disability" was some type of anger management condition that caused Nawara to blow up at Superintendent Jones-Hayes and explode at HR during an interview with Reierson and Shelby. Nawara did not have such a disability and proved that the above allegations were false. Not only would have it been untrue, but if Nawara contended that he had such a disability that caused the complained of conduct, the Sheriff's Office likely would have been justified in sending him for a fitness for duty evaluation ("FFD"). The Court's decision on backpay puts Nawara in a "can't win" situation.

The Court erred in requiring Nawara to prove that he had a disability to be awarded backpay. The fact that Congress did not include "disability" in the statute demonstrates that a "disability" is not required for backpay for violations under 42 U.S.C. § 12112(d)(4)(A).

**B.    *There is no Basis to Create an Exception for Backpay for Violations of the ADA***

**i.    *The Decision is at Odds with the Sixth Circuit's Opinion in Bates v. Dura Automotive Systems***

The Court's decision denying backpay conflicts with the decision in *Bates v. Dura Automotive Systems*, 767 F.3d 566 (6th Cir. 2014) (rehearing *en banc denied*). The *Bates* Court

rejected the employer's contention that an employee must have a disability to be awarded statutory damages. *Id.*, p. 582. In *Bates*, **non-disabled employees** sued their former employer challenging its drug testing policy under the ADA and specifically § 12112(d)(4). After a jury verdict in favor of the employees, the employer moved for judgment as a matter of law or a new trial. The employer contested the availability of damages under the ADA's damages provision, 42 U.S.C. § 12117(a), "arguing that the non-disabled plaintiffs-appellees do not qualify under the statute as 'person[s] alleging discrimination on the basis of disability.'" 767 F.3d at 582. The Sixth Circuit disagreed:

> We reject this argument because § 12112(d)(1) clarifies that the ADA "prohibition against discrimination referred to in [§ 12112(a)] ... include[s] medical examinations and inquiries," and subsection (d)(4) extends this protection to all employees. 42 U.S.C. § 12112(d)(1), (d)(4). The ADA ban of "discriminat[ion] ... on the basis of disability" thus encompasses medical examinations and disability inquiries involving employees. Because the damages provision does not exclude (d)(4) claims, we affirm the district court's judgment that plaintiffs-appellees qualify for statutory damages should they prevail on their (d)(4) claim.

*Bates*, 767 F.3d at 582.

The ADA's damage provision, 42 U.S.C. § 12117(a), specifically includes the statutory backpay remedy contained in 42 U.S.C. § 2000-e-5. The Seventh Circuit in *Wright v. Illinois Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 522, n. 24 (7th Cir. 2015), cited *Bates* for the rule of law that all employees, regardless of whether they have a qualifying disability under the ADA, are protected under § 12112(d)(4)(A). *Bates* establishes Nawara's right to backpay.

### ii. *The Cases Relied on by the Court Fail to Support the Denial of Backpay*

According to the Court, "*Green v. Joy Cone Co.,* 278 F.Supp.2d 525 (W.D. Pa. 2003), is the only case that deals with this question, and *Green* supports this court's decision." (11/4/21 Opinion, p. 7 [Doc. 373]). Plaintiff submits that *Green* neither "deals with this question" nor does it support the Court's decision.

8

*Green* is inapposite to this case and lends no support for the denial of backpay. Unlike this case, *Green* is a pre-employment case governed by a different section of the ADA with respect to medical inquires/exams, *i.e.,* 42 U.S.C. § 12112(d)(2) as opposed current employees under § 12112(d)(4). Green was never offered employment by Joy Cone. Green alleged that Joy Cone's employment policy requiring job applicants to execute an authorization to release their medical records as part of the initial paperwork was a *per se* violation of the ADA's policy against pre-offer medical inquiries. *Green*, 278 F.Supp.2d at 530. Because the form indicated that medical records would not be obtained pre-offer and in fact medical records were not obtained pre-offer, the *Green* Court ruled that the release form was not a pre-offer medical inquiry under the ADA and alternatively that Green lacked standing.

The court found that Green failed to establish that Joy Cone made an unlawful pre-offer inquiry under the ADA ruling that the release form did not fit under the definition of a prohibited medical inquiry. *Id.*, p. 539-40. The court therefore held that there was no violation of the ADA. *Id.*, p. 542. While the court dismissed the case on the merits, it held, in the alternative, that the plaintiff did not have standing. *Id.* The court found as a matter of law that Green "cannot show an injury-in-fact." *Id.*, p. 543. The release form stated on its face that it would not be executed until after an offer of employment—which was never made. *Id.* at 544. The court ruled that "the injury alleged by Ms. Green is 'conjectural' or 'hypothetical' since there is no evidence that Joy Cone accessed Ms. Green's medical records, or even attempted to access them." *Id.*

The court also found that Green could not establish causation both regarding her claim for an injunction and also for her request for money damages. *Id.*, p. 545. Joy Cone offered an affidavit attesting that Green was not chosen to advance in the hiring process beyond an initial screening of her employment application. *Id.*, p. 544. The court found that even if Joy Cone's use of the form

was a *per se* violation of the ADA, Green could not show that such a violation gave rise to any injury because Green was never chosen for hiring. *Id.*, p. 545.

The following is the only portion of the *Green* opinion that even mentions backpay:

In accordance with 42 U.S.C. § 2000e–5(g)(2)(A), the Court generally may not order the grant of back pay to an individual who "**was refused employment** ... for any reason other than discrimination." Since Ms. Green is not claiming to have been discriminated against on account of a disability, the issuance of back pay is inappropriate under the law. Furthermore, if the defendant can show that it would have taken the same action despite the violation, the court "may grant declaratory relief, injunctive relief ... and attorney's fees and costs ... and shall not award damages or issue an order requiring ... payment." 42 U.S.C. § 2000e–5(g)(2)(B)(i) and (ii).

(*Id.*, p. 544) (emphasis added).

Nawara submits that the aforementioned passage is at most *dicta* because § 2000e–5(g)(2)(A) had no bearing on the Court's decisions that the forms did not violate the ADA or Green's lack of standing to bring suit. *Dictum* is "any statement made by a court for use in argument, illustration, analogy, or suggestion ... concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication." *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988). Courts are generally free to reject *dicta* found in otherwise precedential opinions because passages in opinions that are *dicta* have not been "refined by the fires of adversary presentation." *Id.*, p. 293.

The *Green* opinion is devoid of any analysis of § 2000e–5(g)(2)(A). It does not speak to whether "employees" who prove a violation of § 12112(d)(4) have to demonstrate a "disability" or a "perceived disability." The *Green* Court did not address 42 U.S.C. § 12112(d)(1) which states that "[t]he prohibition against **discrimination** as referred to in subsection (a) shall include medical examinations and inquiries."

10

Green lost because the court found that asking for a medical authorization pre-employment with the condition that it would not be used unless a job was offered to the applicant, did not violate the ADA and because Green could not show any damages proximately caused by her not signing the form. Because Green could not show that she would have been hired but for her signing the release, she was unable to demonstrate that the alleged conduct caused her to lose any pay.

This Court, at least with respect to the forms at issue in this case, previously found *Green* "unpersuasive." *Nawara v. Cty. of Cook*, 2019 WL 1399972, at *6 (N.D. Ill. Mar. 28, 2019). Aside from being from the Western District of Pennsylvania and non-precedential, *Green* provides no support for the Court's decision that the ADA precludes an award of backpay.

The other cases cited by the Court in support of its decision, *Armstrong v. Turner Indus.*, 141 F.3d 554 (5th Cir. 1998) and *Griffin v. Steeltek, Inc.*, 261 F.3d 1026 (10th Cir. 2001), also lend no support for the denial of backpay. Unlike this case, *Armstrong* and *Griffin* are pre-employment cases where the plaintiffs had no damages.

*Armstrong* dealt with a job applicant alleging that his employer subjected him to a pre-offer medical examination and inquiry in violation of the ADA. The Tenth Circuit upheld summary judgment holding that the applicant lacked standing. The court held: "Because Armstrong has not identified a cognizable and compensable injury arising out of the medical examination and inquiry, or any corresponding damages, he has completely failed to demonstrate any entitlement to a damages remedy." *Armstrong*, 141 F.3d at 562.

Furthermore, the *Armstrong* Court, quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975), reiterated the rule that in "crafting remedies for employment discrimination individuals injured by such discrimination are 'to be placed, as near as may be, in the situation [they] would have occupied if the wrong had not been committed.'" *Armstrong*, 141 F.3d at 560. *Armstrong*

11

supports John's claim to backpay. In upholding the jury's verdict, this Court held that "the evidence supports a finding that requiring Nawara to submit to an FFD before returning to work was the but-for cause of Nawara's unpaid leave." *Nawara*, 2021 WL 1172742, at *13 (N.D.Ill. Mar. 29, 2021. Thus, "make-whole-relief" for the Sheriff's Office's violations of the ADA must include backpay.

*Griffin* also fails to support the denial of backpay. There, a non-disabled job applicant alleged that his prospective employer violated the ADA by asking questions about his medical history or condition on a job application. Following a jury trial, the district court entered judgment for the employer. The employer presented testimony that the questions played no part in its hiring decision; that Griffin was never even interviewed because the face of his application showed that he did not have the requisite experience for the job; and the employer rehired an experienced individual who had been recently laid off. *Griffin*, 261 F.3d at 1028. Based on this evidence, the jury found that Griffin suffered no injury. *Id*.

The cases relied on by the Court, *Green*, *Armstrong* and *Griffin*, all share a common theme. They are each pre-employment cases where the employee was unable to demonstrate any cognizable injury based on the employer's alleged misconduct. This is a stark difference from this case where the jury found misconduct by the CCSO, and it cannot be reasonably disputed that John suffered cognizable damages proximately caused by the Sheriff's Office's violation of the ADA.

Additionally, the Court erred in giving curt treatment to *Gonzales v. Sandoval County*, 2 F.Supp.2d 1442 (D.N.M. 1998). (11/4/21 Opinion, p. 9 [Doc. 373]. The Court recognized that the district court awarded backpay to a plaintiff who was successful under § 12112(d)(4) and the court's statement that "the prohibited [medical] inquiry [was] itself a form of discrimination under

12

the ADA." *Id*. The *Gonzales* Court expressly rejected the same argument advanced by the Sheriff's Office:

> First, Defendant argues that insufficient evidence supported Plaintiff's claim that he was terminated due to his disability. Defendant is not entitled to relief on this basis because, as discussed below, there was sufficient evidence to support the jury verdict on the prohibited inquiry claim, which supports all damages that shall ultimately be awarded.

*Gonzales*, 2 F.Supp.2d at 1444.

The *Gonzales* Court rejected Defendant's second argument that "there was insufficient evidence that Plaintiff was 'a qualified individual with a disability'. . . because Plaintiff was not 'disabled' within the meaning of the ADA." *Gonzales*, 2 F.Supp.2d at 1444. This argument was rejected because a plaintiff "need not establish disability to state a claim for a prohibited inquiry under the ADA." *Id*.

Nawara also disagrees with the Court dismissing the *Gonzales* Court's decision to award backpay as *dicta*. It was the court's decision to award backpay—not the jury's. The court recognized that backpay is an "authorized form of damages under the ADA." *Id*., p. 1446. The decision to award Gonzales backpay was well-reasoned, consistent with the ADA and not *dicta*. *Gonzales* is analogous to this case and fully supports an award of backpay.

The Court erred in not giving appropriate weight to *Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015) and *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Transit Auth.*, 342 S.Supp.2d 160 (S.D.N.Y. 2004). Both of these cases stand for the proposition that a prohibited medical examination may constitute a form of employment discrimination under the ADA, and that the ADA's definition of discrimination includes medical examinations and inquiries. (11/4/21 Opinion, p. 8 [Doc. 373]). These cases provide solid grounds for backpay.

**C.    When § 12112 is Considered as a Whole, there is no Question that Backpay is an Available Remedy**

13

§ 12112(d)(1) of the ADA provides:

> The prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquires.

§ 12112(a)(1) of the ADA further provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

A fundamental canon of statutory construction is that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *Smith v. Zachary*, 255 F.3d 446, 448 (7th Cir. 2001). Here, when the words of the statute are read in their context with a view to their place in the overall statutory scheme, it is evident that backpay cannot be exempted based on a failure to demonstrate a "disability" or a "perceived disability."

Under § 12112(d)(1), the unlawful medical examination and medical inquiries are "discrimination" and by § 12112(d)(1) referencing subsection (a), such violations are also discrimination on the "basis of disability" under the ADA. Thus, when the statutory scheme is read as a whole, it is apparent that John has the right to backpay.

**D.      *Evidence of a Perceived Disability was Presented at Trial***

The Court ruled that backpay is not available for violations of 42 U.S.C. § 12112(d)(4)(A) absent evidence of an actual or perceived disability. Nawara maintains that he was not required to show an actual or perceived disability for backpay. *See*, discussion *supra*.

Yet, even if Nawara was required to prove disability, the definition of "disability" in the ADA shows that the Court's analysis is incorrect and will cause substantial harm to everyone the ADA is intended to protect, including Nawara. The Act provides, in part:

**(1) Disability**

The term "disability" means, with respect to an individual--

**(A)** a physical or mental impairment that substantially limits one or more major life activities of such individual;

**(B)** a record of such an impairment; or

**(C)** being regarded as having such an impairment (as described in paragraph (3).

. . .

**(3) Regarded as having such an impairment**

For purposes of paragraph (1)(C):

**(A)** An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

. . .

**(4) Rules of construction regarding the definition of disability**

The definition of "disability" in paragraph (1) shall be construed in accordance with the following:

**(A)** The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.

42 U.S.C. § 12102.

Thus, for purposes of establishing a "disability," all that John had to demonstrate was that the CCSO discriminated on the basis that John was "**regarded as having such an impairment**" in that John was "**subjected to a prohibited action because of an actual or perceived physical or mental impairment.**" The question of whether or not the CCSO discriminated on the basis of a disability was answered by the jury with a resounding "Yes." [4]

---

[4] The jury was instructed that "To succeed in this case, plaintiff must first prove by a preponderance of the evidence that the Cook County Sheriff's Office made a **disability-related examination or inquiry** by requiring a fitness-for-duty assessment or by requesting plaintiff's medical records.

Moreover, as the Court noted in its motion to dismiss decision, "Nawara was individually suspected of having a disability that impacted his ability to perform his job (thus, the referral for the FFD examination), . . ." *Nawara v. Cty. of Cook*, 2019 WL 1399972, at *6 (N.D. Ill. Mar. 28, 2019). There was substantial evidence adduced at trial that reasonably supports the inference that the CCSO perceived John as having a disability.[5]

The following is some of the evidence presented at trial to support the claim that the Sheriff's Office required Nawara to submit to an FFD and sign the medical release form(s) based on a perceived disability:

- Reierson testified that the FFD process was meant for individuals "having some kind of personal or medical issue that's preventing them from [properly] performing the[ir] job. . ." (Trial transcript at 381:12-19; *Nawara v. Cty. of Cook*, 2021 WL 1172742, at *3 (N.D. Ill. Mar. 29, 2021).

- Dr. Goldstein, the FFD examiner, agreed that one of the reasons offered by the Sheriff's Office for the FFD referral was because the "employer has concerns about anger management including his ability to manage a detainee population without losing his temper."

- The referral to CorVel noted the Sheriff's Office's concerns about "anger management." *Nawara*, 2021 WL 1172742, at *6.

---

Plaintiff may then prevail only if that examination or inquiry is prohibited by the ADA. (Doc. 302 p. 25) (emphasis added).

[5] Unlike 42 U.S.C. § 12112(d)(4)(A), the general discrimination provision of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a); *Richardson v. Chicago Transit Authority*, 926 F.3d 881, 886 (7th Cir. 2019). To succeed on a typical ADA claim, an employee must show: "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) the adverse job action was caused by his disability. *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). The employee is required to establish that he/she was subject to a prohibited employment action 'because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" 42 U.S.C. § 12102(3)(A); *Richardson*, 926 F.3d at 886-87. "An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, . . ." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 490 (1999).

- Based on a review of Nawara's documents and a "psychological and neurocognitive examination," Dr. Goldstein issued her report finding Nawara "fit to return to duty, without restrictions." *Nawara*, 2021 WL 1172742, at *7.

- Dr. Goldstein's testimony that the purpose of the FFD is to assess whether there is any kind of mental health disorder, neurocognitive disorder or other condition that might impact employees' ability to do their job.

- Nawara's FFD consisted of a 3 hour clinical diagnostic interview, 4 hours of cognitive testing and 3 ½ hours of psych testing over two days.

- Dr. Goldstein's testimony that Nawara had obsessive compulsive personality and narcissistic traits.

- Dr. Goldstein's testimony that, in general, when there have been concerns about someone's anger management, it is an appropriate referral because the question then is there anything about the person's presentation that we should be concerned about that comes from a mental health order.

- Reierson's testimony that at HR, Nawara's "fists were clenched," "his jaw was tight"; it was "like he was just trying to keep himself in the chair. *Nawara*, 2021 WL 1172742, at *4.

- Shelby's testimony that Nawara "was so mad and so enraged, it was like . . . looking at a bulldog just ready to attack." (*Id.*, *4).

- Shelby's testimony that no one had ever showed this type of rage. (*Id.*, *4).

- Shelby's testimony (shared by Reierson) that the decision to refer Nawara was based on "his behavior, his lack of self-control, his rage." (*Id.*, *4).

Thus, even though not necessary, there was evidence presented at trial that should have satisfied the Court's requirement of an actual or perceived disability. According to the Sheriff's Office, John was an out-of-control lunatic just waiting to explode. Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities." *Pacourek v. Inland Steel Co.*, 916 F. Supp. 797, 800–01 (N.D. Ill. 1996). Accordingly, there is evidence in the record that John was perceived as having a mental or physical impairment.

## E.     The Backpay Decision is Inconsistent with "Make Whole" Rule of the ADA and Title VII

The Court's backpay decision must be reversed based on the "make-whole" principle found in the ADA and in Title VII. Not permitting backpay for the Sheriff's Office's violations of § 12112(d)(4)(A) denies Nawara a remedy, denies Nawara make-whole relief and fails to compensate Nawara for the damages he sustained as a result of the Sheriff's Office's discrimination. Nawara missed 311 days of work and received no pay for 155 of those days on account of the Sheriff's Office demanding that he sign medical releases and submit to a fitness for duty examination in violation of the ADA.

In *Albemarle Paper Company*, a Title VII case involving backpay, the United States Supreme Court reiterated the long established rule:

> The general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.'

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418-19 (1975), *quoting Wicker v. Hoppock*, 6 Wall 94, 99 (1867).

The Supreme Court elaborated on the legislative history of Title VII's backpay provision:

> The 'make whole' purpose of Title VII is made evident by the legislative history. The backpay provision was expressly modeled on the backpay provision of the National Labor Relations Act. Under that Act, '(m)aking the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces. We may assume that Congress was aware that the Board, since its inception, has awarded backpay as a matter of course—not randomly or in the exercise of a standardless discretion, and not merely where employer violations are peculiarly deliberate, egregious, or inexcusable. Furthermore, in passing the Equal Employment Opportunity Act of 1972, Congress considered several bills to limit the judicial power to award backpay. These limiting efforts were rejected, and the backpay provision was re-enacted substantially in its original form. A Section-by-Section Analysis introduced by Senator Williams to accompany the Conference Committee Report on the 1972 Act strongly reaffirmed the 'make whole' purpose of Title VII.
> …

18

*Albemarle Paper Co.*, 422 U.S. at 419–21 (1975) (citations omitted)[6]; *see also*, *Ford Motor Co. v. EEOC*, 458 U.S. 219, 230 (1982) (the statutory aim is "to make the victims of unlawful discrimination whole by restoring them, so far as possible...to a position where they would have been were it not for the unlawful discrimination"). This "make whole" principle is why complete relief for victims of discrimination generally includes an award of backpay and is why a backpay award is "presumptively proper once a violation has been shown." *Ortega v. Chicago Bd. of Educ.*, 280 F. Supp. 3d 1072, 1078 (N.D. Ill. 2017).

In this case, the jury, by returning a general verdict, found that the Sheriff's Office violated the ADA by making a disability-related examination or inquiry when it required Nawara to undergo a fitness-for-duty exam and/or when it required Nawara to sign the medical release forms in question. *Nawara*, 2021 WL 1172742, at *8, jury instructions, Doc. 302, p. 25. This Court denied the Sheriff's Office's motion for judgment as a matter of law finding that there was sufficient evidence to support Nawara's claims that the Sheriff's Office violated 42 U.S.C. § 12112(d)(4)(A) [Doc. 360].

An award of backpay is required to make Nawara whole. The evidence at trial was uncontested that Nawara was not permitted to work unless he succumbed to the Sheriff's Office's illegal demands of completing a fitness for duty examination, being found fit for duty and signing a medical release form authorizing, without limitation, the release of his complete medical information to the Sheriff's Office. As Nawara set forth in his motion for backpay [Doc. 305], the uncontested evidence at trial was that he was not permitted to work from November 18, 2016 through September 26, 2017, a total of 311 days. For 155 days, April 26, 2017 to September 26,

---

[6] § 706 of the Civil Rights Act of 1964 as amended 42 U.S.C.A. § 2000e–5. *See*, Gen. *Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318 (1980).

2017, Nawara received zero pay. From November 18, 2016 to April 26, 2017, (156 days), Nawara used accumulated vacation days, personal days, sick days, and other time that he had earned through his employment.

The amount of backpay is not disputed. The parties stipulated that Nawara's gross pay from April 26, 2017 to September 26, 2017 would have been $30,773.93. *See*, Plaintiff's Additional Evidence on the Issue of Lost Pay [Doc. 364] and the filed stipulation [Docs. 362, 364, 364-1]. From November 19, 2016 to April 26, 2017, the parties stipulated that Nawara was paid by him using 3 days of personal time, 26 vacation days, 10 accrued holidays, 1 floating holiday, 10 days of compensatory time and 42 sick days [Docs. 362, 364, 364-1]. To simplify matters, the parties stipulated that if Nawara is entitled to any form of backpay during this time period, he should be restored the 88-days that he was forced to use to collect a paycheck. *Id.*

The Court's decision regarding backpay is at odds with the make-whole purpose of the ADA and Title VII. The decision leaves Nawara without a remedy for a wrong committed by the Sheriff's Office. Once the jury finds employment discrimination, there is a presumption that the employee is entitled to an award of backpay. *Stragapede v. City of Evanston*, 125 F. Supp. 3d 818, 823 (N.D. Ill. 2015); *see also*, *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003) ("there was a strong presumption that Ms. David was entitled to a back pay award on the basis of what she would have earned absent the discrimination."). The Court's decision denies Nawara make whole relief and prevents Nawara from being placed in the same position he would have occupied absent the discrimination. This is in contravention of the ADA.

**F.     *The Court has a Duty to Render a Decree which will Eliminate, as far as Possible, the Discriminatory Effects of the Past and Bar Like Discrimination in the Future***

Case law makes clear that backpay and other forms of equitable relief are available under the ADA. *See, e.g., Ortega*, 280 F.Supp.3d at 1077. When making that decision, the trial court

"must respect the findings implied by the jury's verdict but is otherwise vested with broad discretion to fashion a remedy for unlawful discrimination. *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997); *Ortega*, 280 F.Supp.3d at 1077-78. The guiding principle in exercising that discretion is that the court "has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); *Ortega*, 280 F.Supp.3d at 1078.

The Court violated its duty to enter an order which will as far as possible bar like discrimination in the future. The decision provides employers with a license to subject employees to unwarranted and illegal medical exams and inquiries. Without make-whole-relief including backpay, employers will have no incentive to comply with § 12112(d)(4)(A). If the decision is permitted to stand, employees, like Nawara, face a dilemma when an employer demands its employees submit to an unlawful medical exam/inquiry. If they refuse, they will not be able to work, will not be paid and will not have any prospects of being made whole. Employees will have no incentive to bring a claim under the ADA and the decision will erode the protections of the ADA.

G.      **The Court's Denial of Backpay Weakens the Protections Afforded under the ADA for Individuals with Disabilities**

Denying Nawara backpay for failing to prove a "disability" or a "perceived disability" circumvents the ADA by significantly weakening the protections afforded to individuals with "disabilities." The legislative history of § 12112(d)(4)(A) shows that a primary purpose for requiring medical inquires/exams to be job related and consistent with business necessity is to protect individuals with disabilities by preventing employers from learning about the "disability" through illegal medical inquiries and exams.

21

This is why Congress broadened the scope of the statute by using "employees" rather than "qualified individuals with a disability" found in the other sections of the ADA, and the reason the provision applies to all employees, with or without an actual or perceived disability. *See*, *Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020). The legislative history set forth below demonstrates that the statute is intended to protect individuals with disabilities by affording ADA protections and remedies to all employees who are subjected to illegal medical exams/inquiries. *See*, *Garlitz v. Alpena Reg'l Med. Ctr.*, 834 F.Supp.2d 668, 677 (E.D. Mich. 2011) ("The obvious purpose of subsection (d) is to limit the gathering and use of medical information as one of the ways to reduce the possibility of discrimination.")

> [T]he ADA clearly sets forth the requirements with regard to medical testing of current employees: such exams must be job related and consistent with business necessity. ***The purpose of this provision is to ensure that employees are not unnecessarily subjected to tests that would expose their disabilities.***

136 Cong. Rec. H4614-02, 136 Cong. Rec. H4614-02, H4626, 1990 WL 97270 (emphasis added).

> ***An inquiry or medical examination that is not job-related serves no legitimate employer purpose, but simply serves to stigmatize the person with a disability.*** For example, if an employee starts to lose a significant amount of hair, the employer should not be able to require the person to be tested for cancer unless the testing is job-related. While the employer may argue that it does not intend to penalize the person, the person with cancer may object merely to being identified, independent of the consequences. Being identified as having a disability often carries both blatant and subtle stigma.

H.R. REP. 101-485, 44, 1990 U.S.C.C.A.N. 445, 467 (emphasis added).

> . . . the section ensures that employees on the job are not unnecessarily identified as people with disabilities through a medical examination if there is no job-related reason to conduct such an examination.

136 Cong. Rec. E1913-01, 136 Cong. Rec. E1913-01, E1915, 1990 WL 80290.

> ***An inquiry or medical examination that is not job-related serves no legitimate employer purpose, and stigmatizes the individual with a disability.***

136 Cong. Rec. H2599-01, H2632, 1990 WL 67606 (emphasis added).

Limiting backpay for violations of § 12112(d)(4)(A) to individuals with "disabilities" will adversely affect "disabled" employees. Individuals with actual disabilities will exposed by being subjected to unlawful inquiries and examinations. The intent of the statute will be circumvented and without the fear of monetary repercussions, employers will be free to inquire and learn of employees' disabilities, without worry, because there will be no damages if the employee is not disabled or if the disability is not apparent.

Hypothetically, Nawara could have had a disability that had no relation to his ability to perform essential job functions, but which he did not want revealed to the Sheriff's Office. This hypothetical disability would have been revealed to the Sheriff's Office through the medical examination/inquiry. The Court's backpay decision not only adversely affects employees without disabilities but also affects the disabled by exposing their disabilities through unwarranted medical inquiries/exams. As discussed *supra*, it circumvents the purpose of the ADA to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability. *See*, *Roe*, 124 F.3d at 1229.

## H. The Backpay Decision is Contrary to Well-Established Precedent Holding that Prevailing ADA Plaintiffs are Presumptively Entitled to Backpay

The Court's decision precluding backpay conflicts with long-established precedent. This Court recognized, citing *Stragapede v. City of Evanston, Ill.*, 865 F.3d 861, 868 (7th Cir. 2017), that "[a] plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to backpay." (11/4/21 Opinion, p. 3, [Doc. 373]). There is no authority that the back pay statute contains an exception barring backpay where the employer carried out the employment action for any reason other than discrimination on account of "disability."

Moreover, the Seventh Circuit held that "[a]ll employees, regardless of whether they have a qualifying disability under the ADA, are protected under this subsection." *Wright*, 798 F.3d at 522. Thus, although the Seventh Circuit had the opportunity in *Wright* to carve out an exception for back pay, it did not do so.

Backpay for violations of the ADA and Title VII has been universally recognized. *See*, *Vega v. Chicago Park Dist.*, 351 F.Supp.3d 1078, 1087 (N.D. Ill. 2018), *aff'd* 954 F.3d 996 (7th Cir. 2020) ("Once the jury has found that there has been employment discrimination, there is a presumption that the employee is entitled to an award of back pay."); *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997) ("Complete relief for a victim of discrimination generally will include an award of back pay; indeed, such an award is presumptively proper once a violation has been shown."); *Ortega v. Chicago Bd. of Educ.*, 280 F.Supp.3d 1072, 1078 (N.D.Ill. 2017); *Pals v. Schepel Buick & GMC Truck, Inc.,* 220 F.3d 495, 501 (7th Cir. 2000) ("back pay under the ADA is very similar to "lost wages . . ."); *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1012 (N.D. Ill. 2016) ("Plaintiff is entitled to an award of $43,229.28 in pre-judgment interest on his ADA back pay and benefits."); *Barry v. Illinois Dep't of Corr.*, 2018 WL 5983553, at *2 (C.D. Ill. Nov. 14, 2018) ("In ADA cases, back pay and other forms of equitable relief are available to prevailing plaintiffs.")

Backpay is required in this case to make Nawara whole and to prevent an injustice. It offends the fundamental principles of the ADA and Title VII not to place Nawara in the same position he would have occupied but for the discrimination. The parties stipulated that Nawara received "no pay . . . from April 26, 2017 to September 26, 2017. and that his gross pay during this time period would have been $30,773.93 (Stipulation #1 pursuant to Court's March 29, 2021 Order [Doc. 362]). Excluding backpay in this case will encourage employers to subject workers

24

(including the "disabled") to unlawful medical inquiries and permit employers to discriminate against employees with "disabilities" by unlawfully exposing their "disabilities." Neither Nawara nor any other employee should be penalized for having the courage to resist an employer's unlawful demand in violation of § 12112(d)(4)(A).

## I.       *Nawara's Seniority Must be Restored as part of Plaintiff's Make-Whole-Relief*

Nawara's motion for backpay requested *inter alia* "the restoration of all benefits that he lost because of the Sheriff's unlawful discrimination." (Motion for Award of Backpay, p. 4 [Doc. 305]). The request included all seniority that was not credited to Nawara from November 18, 2016 through September 29, 2017. *Id*. He was prevented from working for 156-days because of the Sheriff's Office's violations of the ADA. The Court's November 4, 2021 decision does not address the restoration of seniority (Docs. 372 and 373).

Retroactive seniority is an available remedy under the ADA. *U.S. E.E.O.C. v. Rockwell Intern, Corp.*, 23 F.Supp.2d 892, 894 (N.D.Ill. 1998); *Best v. Shell Oil Co.*, 4 F.Supp.2d 770, 774 (N.D.Ill. 1998). In *Franks v. Bowman Trans. Co., Inc.*, 424 U.S. 747 (1976), the United States Supreme Court held that Title VII plaintiffs may seek, and a court may award, retroactive seniority in addition to monetary damages.

The restoration of Nawara's lost seniority is required to make Nawara whole and is authorized under the ADA. Because of the Sheriff's Office's unlawful actions, Nawara was not credited with the seniority he would have otherwise received had he not been unlawfully prevented from working. This loss of seniority affects Nawara's pension and retirement date.

**J.      The Fact that Nawara's Actions Caused the Defendant to Change the Manner of Obtaining Medical Records is a Strong Indicator that Actions by the Non-disabled Must not be Discouraged**

The Court stated that declaratory relief is not available to Nawara because the Sheriff's Office changed its medical authorization forms and no longer requires that employee medical records come to the Sheriff's Office. Yet, what is overlooked is that Nawara's complaint caused these changes and served to protect all persons covered by the ADA, disabled or not.

As a result of Nawara's litigation, the CCSO changed its illegal practice of having employee's medical records come directly to the CCSO and discontinued its use of one of its forms in dispute. In April of 2017, it was decided that medical records should only go to Corvel, the CCSO's third-party provider. *See*, Plaintiff's Trial Exhibits 51, 52 and 53, filed under seal by the Defendant as part of its motions in limine. (Doc. 241).

The CCSO moved in *limine* to keep out evidence of this change in practice on the basis that it constituted a subsequent remedial measure. (Def. Mtn. in Limine #20, Doc. 241-1). Defendant argued that these documents should not be permitted in evidence "as all are evidence of subsequent remedial measures and are barred under FED. R. EVID. 407. *See also Awalt v. Marketti*, 2015 U.S. Dist. LEXIS 91546, *41 (N.D. Ill. 2015)." The CCSO thus recognizes and admits that Nawara caused it to take remedial measures to correct an illegal practice and policy.

While the Court barred the Plaintiff from using those Exhibits at trial or introduce them in evidence pursuant to the Defendant's motion in *limine*, the Plaintiff did establish through the testimony of Michelle Sarocka, the Corvel representative, that at one time medical records were collected by the Sheriff's Office, but that this changed at a later time. Reierson also testified to the change in procedure.

26

Though the Court refused to enjoin the CCSO from using the medical records request form because they no longer use it, Nawara's efforts in accomplishing that change must be recognized as protecting the rights of the disabled and non-disabled alike. The fact that a non-disabled individual can challenge an employer's illegal acts or policies and accomplish change is a strong reason for making that non-disabled individual whole.

**K.** **Application of 42 U.S.C Sec. 2000e-5(g)(2)(A) in a Manner that Bars Nawara any Backpay is An Affirmative Defense Which was Waived or Forfeited by the Defendant Because it Was Never Pled in its Answer**

Even if this Court's construction of the law is correct, this issue is an affirmative matter, which must be asserted in the Defendant's Answer. Fed. R. Civ. P 8(c); *Venters v. City of Delphi,* 123 F. 3d 956, 967-68 (7th Cir. 1997). The Defendant, however, never asserted this defense in its Answer. (*See,* Doc. 188, pp. 35-42). Therefore, this Court should not consider it.

*Reed v. St. Mary's Hospital,* 915 F. 3d 473 (7th Cir. 2019), makes this clear. Reed sued the hospital asserting that she suffered discrimination due to her disabilities while she was a patient. The hospital's answer contained affirmative defenses but did not assert the religious exemption to the ADA. The hospital asserted the religious exemption for the first time in a motion for summary judgment, which was granted. The trial court acknowledged that the affirmative defense was not asserted earlier but granted summary judgment because the defense was not listed in F. R. Civ. P. 8(c). *Reed,* 915 F. 3d at 475-77.

In reversing, the Seventh Circuit noted that it does not matter whether an affirmative defense is specifically listed in Fed. R. Civ. P. 8(c) because precedent can determine what is an affirmative defense. It ruled that a defendant's failure to plead an affirmative defense results in a waiver of the defense if the defendant relinquished it knowingly and intelligently. A defendant forfeits an affirmative defense if that defendant merely failed to preserve it by pleading it, *citing*

27

*Wood v. Melyard,* 566 U.S. 463, 470, n. 4 (2012). In so ruling, the Seventh Circuit commented that pleadings shape the litigation, including the scope and cost of discovery and that many efficiencies are lost when claims or defenses are left out of the pleadings and then, a party attempts to assert them at later stages. (*Id.* at 478-79).

Assuming, *arguendo*, that *Green v. Joy Cone Co.,* 278 F. Supp. 2d 526, 544 (W.D. Penn. 2003) stands for the proposition that Sec. 5(g)(2)(A) of the ADA bars recovery of back wages, such an assertion would constitute an affirmative defense. The Sheriff's Office knew of *Green* early on in this matter. The Defendant cited *Green* in its motion to dismiss, which was denied by this Court. (*See, e.g.,* Doc. 165-1, pp. 6, 7, & 8). Because the Defendant never asserted this affirmative defense and did not offer proof in support of this affirmative defense, the same was waived.

**WHEREFORE,** Plaintiff, John Nawara, requests that the Court award back pay, equitable relief, including restoration of seniority, prejudgment interest and any other relief the Court deems appropriate.

**JOHN NAWARA**

*s/ Richard F. Linden*
One of Plaintiff's attorneys

Richard F. Linden
312/590-0211
lindenlaw@gmail.com

Peter V. Bustamante
312/346-2072
pvbust@bustamantelaw.com

Linden & Bustamante
17 North State Street, Suite 1550
Chicago, Illinois 60602

28